ORIGINAL FILED

06 JUN 13 AM 9: 02
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  ALSCHULER GROSSMAN STEIN & KAHAN LLP
2  Marshall B. Grossman (No. 35958)
   William J. O'Brien (No. 99526)
   Tony D. Chen (No. 176635)
3  The Water Garden
   1620 26th Street
4  Fourth Floor, North Tower
   Santa Monica, CA  90404-4060
5  Telephone:  310-907-1000
   Facsimile:  310-907-2000
6  Email:  mgrossman@agsk.com
          wobrien@agsk.com
7          tchen@agsk.com

8  Attorneys for Defendant and Counterclaimant,
   Blockbuster Inc.

9
                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11

12
   NETFLIX, INC., a Delaware           CASE NO. C 06 2361 WHA
13 corporation,
                                       **ANSWER TO COMPLAINT;**
14              Plaintiff,             **COUNTERCLAIMS**

15      vs.                            **DEMAND FOR JURY TRIAL**

16 BLOCKBUSTER INC., a Delaware        Complaint Filed: April 4, 2006
17 corporation, DOES 1-50,

                Defendants.
18

19                        **ANSWER**

20      Blockbuster Inc. ("Blockbuster") responds as follows to the Complaint

21 for Patent Infringement ("Complaint") filed against it by Netflix, Inc. ("Netflix").

22      1.      Answering paragraph 1, Blockbuster admits the allegations about

23 Netflix's corporate status and principal place of business, as well as Netflix's

24 website address and that it has for some time been renting DVDs on a subscription

25 basis.  Except as expressly admitted, Blockbuster lacks knowledge or information

26 sufficient to form a belief as to the truth of the allegations of paragraph 1 and

27 thereon generally and specifically denies the allegations thereof.

28      2.      Answering paragraph 2, Blockbuster admits that it is a Delaware

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

ANSWER TO COMPLAINT; COUNTERCLAIMS;
DEMAND FOR JURY TRIAL
C 06 2361 WHA

1  corporation; that its principal place of business is in Dallas, Texas; that it has a

2  registered agent for service as stated in paragraph 2; that Blockbuster launched

3  Blockbuster Online in 2004; that it has described Blockbuster Online in words

4  similar to those in paragraph 2; that it is registered to do business in the State of

5  California; and that it has conducted business in California and in this District.

6  Except as expressly admitted, Blockbuster lacks knowledge or information

7  sufficient to form a belief as to the truth of the allegations of paragraph 2 and

8  thereon generally and specifically denies the allegations thereof.

9         3.     Answering paragraph 3, Blockbuster admits that this action

10  arises under 35 U.S.C. § 101 *et seq.* and that this Court has subject-matter

11  jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). Blockbuster denies that Netflix

12  has any meritorious claims against Blockbuster. Except as expressly admitted and

13  denied, Blockbuster generally and specifically denies the allegations of

14  paragraph 3.

15         4.     Answering paragraph 4, Blockbuster admits that this Court has

16  personal jurisdiction over Blockbuster and that Blockbuster regularly conducts

17  business in this District. Blockbuster denies that it has committed any act of patent

18  infringement. Except as expressly admitted and denied, Blockbuster generally and

19  specifically denies the allegations of paragraph 4.

20         5.     Answering paragraph 5, Blockbuster does not contest venue in

21  this case and admits that it regularly conducts business in this District. Blockbuster

22  denies that it has committed any act of patent infringement. Except as expressly

23  admitted and denied, Blockbuster generally and specifically denies the allegations

24  of paragraph 5.

25         6.     Answering paragraph 6, Blockbuster admits the allegations

26  thereof.

27  #

28  #

2

1

2

## ANSWER TO FIRST CAUSE OF ACTION

### (Alleging Infringement of U.S. Patent No. 7,024,381)

3    7.    Answering paragraph 7, Blockbuster admits that Netflix is listed

4    on the '381 patent as its assignee; that the number, title, and issuance date of the

5    patent are as stated in paragraph 7; and that a copy of the '381 patent was attached

6    as Exhibit A to the copy of the Complaint served on Blockbuster. Blockbuster

7    lacks knowledge or information sufficient to form a belief as to the truth of the

8    allegation that Netflix is the "sole and exclusive owner" of the '381 patent, and

9    Blockbuster thereon denies that allegation. Blockbuster admits and alleges that the

10    scope of each of the numbered claims of the '381 patent is as stated in those

11    respective claims, and Blockbuster denies that paragraph 7 accurately sets forth the

12    scope of the patent. Except as expressly admitted and denied, Blockbuster

13    generally and specifically denies the allegations of paragraph 7.

14    8.    Answering paragraph 8, Blockbuster generally and specifically

15    denies the allegations thereof. Without limiting the generality of the foregoing

16    denial, Blockbuster denies that it has violated 35 U.S.C. § 271(a) and denies that it

17    has infringed any rights of Netflix under the '381 patent, whether under § 271(a) or

18    any other provision of the patent laws.

19    9.    Answering paragraph 9, Blockbuster denies generally and

20    specifically the allegations thereof. Without limiting the generality of the foregoing

21    denial, Blockbuster denies that it has violated 35 U.S.C. § 271(b) or (c) and denies

22    that it has infringed any rights of Netflix under the '381 patent, whether under

23    § 271(b), § 271(c), or any other provision of the patent laws.

24    10.    Answering paragraph 10, Blockbuster denies generally and

25    specifically the allegations thereof. Without limiting the generality of the foregoing

26    denial, Blockbuster denies that Netflix has suffered or will suffer any injury

27    whatsoever – whether irreparable or otherwise – due to any infringement by

28    Blockbuster, and Blockbuster denies that Netflix is entitled to an injunction or to

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

3

1    any other relief, order, or judgment against Blockbuster.

2    ## ANSWER TO SECOND CAUSE OF ACTION

3    ### (Alleging Infringement of U.S. Patent No. 6,584,450)

4        11.    Answering paragraph 11 of the Complaint, Blockbuster repeats

5    its foregoing responses to paragraphs 1 through 10.

6        12.    Answering paragraph 12 of the Complaint, Blockbuster admits

7    that Netflix is listed on the '450 patent as its assignee; that the number, title, and

8    issuance date of the patent are as stated in paragraph 12; and that a copy of the '450

9    patent was attached as Exhibit B to the copy of the Complaint served on

10   Blockbuster. Blockbuster lacks knowledge or information sufficient to form a

11   belief as to the truth of the allegation that Netflix is the "sole and exclusive owner"

12   of the '450 patent and, on that basis, Blockbuster denies that allegation. Answering

13   the remainder of paragraph 12, Blockbuster admits and alleges that the scope of

14   each of the numbered claims of the '450 patent is as stated in those respective

15   claims, and Blockbuster denies that paragraph 12 accurately sets forth the scope of

16   the patent. Except as expressly admitted and denied, Blockbuster generally and

17   specifically denies the allegations thereof.

18       13.    Answering paragraph 13, Blockbuster denies generally and

19   specifically the allegations thereof. Without limiting the generality of the foregoing

20   denial, Blockbuster denies that it has violated 35 U.S.C. § 271(a) and denies that it

21   has infringed any rights of Netflix under the '450 patent, whether under § 271(a) or

22   any other provision of the patent laws.

23       14.    Answering paragraph 14, Blockbuster denies generally and

24   specifically the allegations thereof. Without limiting the generality of the foregoing

25   denial, Blockbuster denies that it has violated 35 U.S.C. § 271(b) or (c) and denies

26   that it has infringed any rights of Netflix under the '450 patent, whether under

27   § 271(b), § 271(c), or any other provision of the patent laws.

28       15.    Answering paragraph 15, Blockbuster admits that it knew of the

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

4

1  '450 patent before Netflix commenced this case. Except as expressly admitted and

2  denied, Blockbuster generally and specifically denies the allegations of

3  paragraph 15. Without limiting the generality of the foregoing denial, Blockbuster

4  further denies that it has infringed or is infringing the '450 patent, whether

5  willfully, deliberately, or in any manner whatsoever; denies that Netflix has

6  suffered or will suffer any injury whatsoever – whether irreparable or otherwise –

7  due to any infringement by Blockbuster, and denies that Netflix is entitled to an

8  injunction or to any other relief, order, or judgment against Blockbuster

9  whatsoever.

10

11  ## ALLEGATIONS COMMON TO BLOCKBUSTER'S AFFIRMATIVE

12  ## DEFENSES AND COUNTERCLAIMS

13  ### BACKGROUND

14  16.    In its Complaint, Netflix alleges that Blockbuster's online DVD

15  rental service infringes two U.S. patents, Nos. 6,584,450 (the '450 patent)

16  and 7,024,381 (the '381 patent). Blockbuster denies Netflix's allegations of

17  infringement, as set forth herein. In addition, Blockbuster sets forth affirmative

18  defenses that both the '450 patent and the '381 patent are invalid and unenforceable

19  and that Netflix's Complaint is barred by patent misuse, laches, and estoppel.

20  Blockbuster also counterclaims against Netflix, under federal antitrust laws, for

21  monopolizing and attempting to monopolize the DVD rental market through

22  fraudulent patenting and sham litigation. Additionally, Blockbuster counterclaims

23  for a Court judgment declaring that Blockbuster has not violated any patent rights

24  of Netflix.

25  17.    The patents asserted by Netflix fail to describe any technology

26  that was not already widely known and in general use well before any purported

27  inventions of Netflix. Instead, the patents merely describe use of existing

28  technology to practice business methods for renting movies and other items to

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

5

1    customers. The business of renting movies, as well as renting other items, was

2    widely known long before any purported invention by Netflix. So was renting on a

3    subscription basis. From at least the mid-1990s, it was obvious to adapt "brick-

4    and-mortar" businesses to the Internet – as Netflix did with Blockbuster's highly

5    popular movie rental business. The advent of the DVD format in the late 1990s

6    provided the opportunity to send and receive video disks by mail at a far lower cost

7    than VHS videotapes, which increased the economic feasibility of renting movies

8    over the Internet. Netflix merely exploited an obvious market opportunity created

9    by developments in Internet and DVD technology, which had been entirely the

10    work of others. Netflix is not entitled to monopolize the resulting opportunities to

11    rent DVDs over the Internet.

12        18.    The '450 patent asserted by Netflix is particularly broad and is

13    not even limited to DVD or movie rental. It purports to cover stated methods for

14    renting any and all "items" whatsoever. Nor are the '450 patent claims limited to

15    online rentals. They could cover in-store rentals having nothing to do with the

16    Internet.

17        19.    While the claims of the later '381 patent require rental of

18    "movies" and use of the Internet, along with other limitations, they too are directed

19    to rental business methods and, like the claims of the '450 patent, are overbroad and

20    invalid, as set forth below.

21        20.    Various claims of the '450 and '381 patents recite additional

22    features related to subscription rental and to implementing online subscription –

23    such as a "queue" of desired items. However, none of the claims is properly

24    patentable in view of the business methods that others had already used before

25    Netflix and the teachings of publications, products, and patents that predated

26    Netflix's purported inventions (all as defined in 35 U.S.C. § 102 and collectively

27    referred to as "prior art"). Blockbuster is informed and believes and thereon alleges

28    that the '450 and '381 patents mostly or entirely claim subject matter that was

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP
6
ANSWER TO COMPLAINT; COUNTERCLAIMS;
DEMAND FOR JURY TRIAL
C 06 2361 WHA

1   already known and used by others before Netflix.  Such "anticipation" by prior art

2   renders some or all of Netflix's patent claims invalid because they lack the novelty

3   required by 35 U.S.C. § 102.  Blockbuster is informed and believes and thereon

4   alleges that the patent claims are also invalid because the matter claimed was

5   obvious under 35 U.S.C. § 103, as well as for other reasons alleged below.

6          21.    Blockbuster is in the process of identifying and locating prior art

7   that illustrates and contributes to the invalidity of the patents asserted by Netflix.

8   Examples include:

9          a.    Prior art subscription methods, systems, and publications,

10   ranging from libraries for the blind and other subscription libraries to cable

11   and satellite television services and pay television services such as HBO and

12   Showtime, as well as TiVo and other video and film subscription services;

13          b.    Prior art video rental stores and related methods, systems,

14   and publications, including long-standing and widely-known practices in the

15   video rental industry, such as the use of waiting or reservation lists for out-of-

16   stock videos;

17          c.    Prior art e-commerce businesses and related methods,

18   systems, and publications, including prior art related to the digital display,

19   selection, and ordering of items over Internet;

20          d.    Prior art patents on the foregoing and on other material

21   subjects, including, for example, U.S. Patent No. 5,699,526 (the '526 patent),

22   assigned to NCR Corporation, entitled "Ordering and Downloading

23   Resources from Computerized Repositories," and issued on December 16,

24   1997, which disclosed, among other things, online search and retrieval based

25   on item attributes in digital form and permitting a customer to establish an

26   "interest list" of desired items; and

27          e.    Blockbuster's own prior art U.S. Patent No. 5,459,306,

28   entitled "Method and System for Delivering On Demand, Individually

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

7

ANSWER TO COMPLAINT; COUNTERCLAIMS;
DEMAND FOR JURY TRIAL
C 06 2361 WHA

1  Targeted Promotions," and issued on October 17, 1995. This prior art patent

2  disclosed, among other things, computer-implemented automatic selection of

3  movies for potential rental to individual customers.

4  22.    As is detailed below, Netflix obtained the '450 and '381 patents

5  without disclosing to the Patent Office prior art that Netflix knew about and that

6  was material to Netflix's patent applications. Blockbuster is informed and believes

7  and thereon alleges that, by failing to disclose such prior art, Netflix violated its

8  duty of "candor and good faith" to the Patent Office (as explained further below)

9  and that, as a result, the '450 and '381 patents are not only invalid but also

10  unenforceable based on inequitable conduct.

11  ### HISTORY OF NETFLIX'S PATENTS

12  23.    Netflix applied for the '450 patent on April 28, 2000. The

13  application for the '450 patent was designated by Serial No. 09/561,041 and was

14  filed in the names of W. Reed Hastings, Marc B. Randolph, and Neil Duncan Hunt

15  (collectively, the "Named Inventors").

16  24.    One of the Named Inventors, Reed Hastings, is the Chief

17  Executive Officer and President of Netflix, another, Marc Randolph, is former CEO

18  and President of Netflix or its predecessor entity, and the third, Neil Duncan Hunt,

19  is Netflix's Chief Product Officer.

20  25.    The '450 patent was issued on June 24, 2003. The patent

21  purports to broadly cover stated methods for rental of any "items" as alleged above.

22  Blockbuster is informed and believes and thereon alleges that the '450 patent is

23  blatantly over-broad, anticipated, obvious, and otherwise invalid, as well as

24  unenforceable, as is described in detail below.

25  26.    Blockbuster began publicly operating its online video rental

26  service ("Blockbuster Online") in August 2004. Although Netflix was well aware

27  of Blockbuster Online from that time forward, and was aware that Blockbuster was

28  investing millions of dollars developing and promoting Blockbuster Online, Netflix

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

8

ANSWER TO COMPLAINT; COUNTERCLAIMS;
DEMAND FOR JURY TRIAL
C 06 2361 WHA

1  did not assert the '450 patent against Blockbuster at that time or for the next

2  eighteen months. Throughout that time and up through the date on which it filed

3  this lawsuit, Netflix provided no notice or warning to Blockbuster that Netflix

4  believed Blockbuster was infringing the '450 patent. Blockbuster is informed and

5  believes and thereon alleges that Netflix also failed to assert any infringement

6  claims during this time against any other companies then operating online DVD

7  rental business, such as Wal-Mart.

8          27.     Unbeknownst to Blockbuster and to the public at large, Netflix

9  had applied for the '381 patent on May 14, 2003, some five weeks before the '450

10  patent was issued. Netflix filed the application for the '381 patent, Serial

11  No. 10/438,727, in the names of the Named Inventors, as a purported and sham

12  "continuation" of the application for the '450 patent.

13          28.     Information about the second application was not available to

14  Blockbuster or the public at large until April 4, 2006. It was on that date that the

15  '381 patent was issued and this very lawsuit was filed.

16          29.     Blockbuster is informed and believes and thereon alleges that

17  the '381 patent, like the '450 patent, is invalid and unenforceable for the reasons

18  alleged below.

19          30.     The following timeline illustrates key events described above:

20  #

21  #

22  #

23  #

24  #

25  #

26  #

27  #

28  #

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

9

ANSWER TO COMPLAINT; COUNTERCLAIMS;
DEMAND FOR JURY TRIAL
C 06 2361 WHA

## Time Line: *Applications for and Issuance of the '450 and '381 Patents*

*April 28, 2000: Netflix files application for '450 patent*

*May 14, 2003: Netflix files application for '381 patent*

*June 24, 2003: '450 patent issues*

*August 11, 2004: Blockbuster launches "Blockbuster Online" and subsequently invests millions promoting online DVD rental*

*For 33 months, Netflix does not disclose information about pending '381 patent and takes no action to enforce '450 patent*

*April 4, 2006: '381 patent issues; Netflix sues Blockbuster the same day*

## NETFLIX'S DUTY OF CANDOR TO THE PATENT OFFICE

31.     Netflix's officers, employees, attorneys, assignors, and agents involved for applying for and obtaining the '450 and '381 patents (collectively, "Netflix's Applicants and Representatives") owed a legal and ethical "duty of candor and good faith" to the Patent Office under the decisional law of the United States and the regulations and procedures of the Patent Office, including 37 C.F.R.

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

10

ANSWER TO COMPLAINT; COUNTERCLAIMS;
DEMAND FOR JURY TRIAL
C 06 2361 WHA

1 § 1.56(a).

2        32.    This "duty of candor and good faith" extended to all

3 "[i]ndividuals associated with the filing and prosecution of" the patent applications

4 that resulted in the '450 and 381 patents," 37 C.F.R. § 1.56(a), including, as to each

5 application:

6                 "(1) Each inventor named in the application;

7                 (2) Each attorney or agent who prepare[d] or

8                 prosecute[d] the application; [and]

9                 (3) Every other person who [was] substantively involved

10                 in the preparation or prosecution of the application and

11                 who [was] associated with the inventor, with the

12                 assignee or with anyone to whom there [was] an

13                 obligation to assign the application."

14 37 C.F.R. § 1.56(c).

15        33.    Netflix's Applicants and Representatives who were under a duty

16 of candor and good faith to the Patent Office in applying for and obtaining the '450

17 and 381 patents included the Named Inventors, the patent attorneys acting on behalf

18 of the Named Inventors and Netflix in applying for and prosecuting the applications

19 (the "Patent Attorneys").

20        34.    The duty of candor and good faith owed by Netflix's Applicants

21 and Representatives' included a continuing obligation, at all times during the

22 pendency of either of the applications for the '450 and '381 patents, to disclose to

23 the Patent Office all prior art known to be material to a pending application.

24        35.    Netflix's Applicants and Representatives submitted a

25 declaration and power of attorney (the "Declaration") to the Patent Office in

26 support of both the application for the '450 patent and the application for the '381

27 patent. The Declaration states that it was signed by Named Inventor W. Reed

28 Hastings on September 28, 2000, by Neil Duncan Hunt on September 29, 2000, and

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

11

ANSWER TO COMPLAINT; COUNTERCLAIMS;
DEMAND FOR JURY TRIAL
C 06 2361 WHA

1  by Marc B. Randolph on October 3, 2000.

2        36.   In the Declaration, each of the Named Inventors expressly

3  "acknowledge[d] the duty to disclose information which is known to me to be

4  material to patentability in accordance with Title 37, Code of Federal Regulations,

5  Section 1.56."

6        37.   Each Named Inventor also stated in the Declaration:

7               "I hereby declare that all statements made herein of my

8               own knowledge are true and that all statements made on

9               information and belief are believed to be true; and

10              further that these statements were made with the

11              knowledge that willful false statements and the like so

12              made are punishable by fine or imprisonment, or both,

13              under Section 1001 of Title 18 of the United States Code

14              and that such willful false statements may jeopardize the

15              validity of the application or any patent issued thereon."

16              **NETFLIX'S VIOLATIONS OF THE DUTY OF CANDOR**

17        38.   Blockbuster is informed and believes and thereon alleges that

18  Netflix's Applicants and Representatives violated their legal and ethical duties of

19  candor and good faith in applying for, prosecuting applications for, and obtaining

20  the '450 and '381 patents, by engaging in inequitable and deceptive conduct as

21  alleged below.

22        39.   Blockbuster is informed and believes and thereon alleges that

23  Netflix obtained the '450 and '381 patents by means of a scheme in which some or

24  all of Netflix's Applicants and Representatives manipulated and distorted the patent

25  process by inequitable conduct including:

26              a.   Obtaining an absurdly broad and invalid patent (the '450

27  patent) without proper and meaningful examination by concealing and failing

28  to disclose any prior art before the '450 patent was issued, in violation of the

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

12    ANSWER TO COMPLAINT; COUNTERCLAIMS;
DEMAND FOR JURY TRIAL
C 06 2361 WHA

1    duty of candor that was owed by Netflix's Applicants and Representatives

2    and that the Named Inventors had acknowledged under penalty of perjury;

3            b.        Failing to disclose any prior art in applying for and

4    obtaining the '450 patent, despite being aware of multiple items of prior art,

5    as alleged below, and despite their acknowledged and well-established duty

6    to disclose all known material prior art to the Patent Office;

7            c.        Prior to the issuance of the '450 patent, filing a

8    "continuation" patent application to pursue claims narrower than – and

9    therefore possibly more defensible in litigation than – the blatantly over-

10   broad claims of the '450 patent, although still broader than permitted under

11   the patent laws;

12           d.        During the pendency of the continuation application

13   (which resulted in the '381 patent), flooding the Patent Office with such a

14   large volume of prior art or possible prior art (more than 100 references) that

15   the examiners would be overwhelmed and overtaxed in their attempt to

16   examine the application;

17           e.        Under cover of its belatedly large submissions, still

18   withholding certain known and material prior art throughout the pendency of

19   the application for the '381 patent, as alleged below;

20           f.        Withholding information about the continuation

21   application from the public and from competitors until issuance of the '381

22   patent;

23           g.        Foregoing assertion or enforcement of the '450 patent

24   pending issuance of the '381 patent despite actual knowledge of competitive

25   online DVD rental businesses, including Blockbuster Online;

26           h.        Deceptively lulling and enticing competitors, including

27   Blockbuster, into entering into and remaining in the online DVD rental

28   market after they reviewed the '450 patent and reasonably concluded that

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

13        ANSWER TO COMPLAINT; COUNTERCLAIMS;
          DEMAND FOR JURY TRIAL
          C 06 2361 WHA

1   Netflix lacked any valid and enforceable patent rights that would prevent
2   their entry into the market;

3       i.      Benefiting from the promotion of the online DVD rental
4   market by Blockbuster and other competitors and their creation of an
5   expanded group of customers interested in or accustomed to renting DVDs
6   online; and

7       j.      On the very day that the '381 patent was issued, suing
8   Blockbuster, without warning, for alleged infringement of both the '381 and
9   '450 patents.

10      40.     In January 2005, Netflix CEO and Named Inventor Reed
11  Hastings met with Blockbuster's then-Executive Vice President and General
12  Counsel, Edward Stead. Hastings praised Blockbuster's competitive position in the
13  online rental business and asked Stead when he had figured out that Netflix's '450
14  patent was a "joke."

15      41.     It was only after having wrongfully obtained issuance of the
16  '450 patent that Netflix's Applicants and Representatives began submitting prior art
17  to the Patent Office in connection with the application for the '381 patent.
18  Ultimately, Netflix's Applicants and Representatives submitted more than 100
19  references to prior art or possible prior art in connection with the '381 patent
20  application. Netflix's Applicants and Representatives disclosed none of these
21  references in obtaining the '450 patent, even though at least 100 of them predated
22  that patent and therefore could have been submitted in connection with it.

23      42.     Even after having submitted more than 100 prior art references
24  to the Patent Office, Netflix's Applicants and Representatives withheld and failed
25  to disclose other material prior art that they knew about, as alleged below.

26      43.     Blockbuster is informed and believes and thereon alleges that, in
27  engaging in all their conduct alleged herein, the Applicants and Representatives
28  were acting on behalf of Netflix and that Netflix directed, controlled, and ratified

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

14

ANSWER TO COMPLAINT; COUNTERCLAIMS;
DEMAND FOR JURY TRIAL
C 06 2361 WHA

1   their conduct.

2                **PRIOR ART CONCEALED BY NETFLIX**

3         44.   In addition to failing to disclose any of more than 100 prior art

4   references described above during the pendency of the '450 patent application,

5   Netflix's Applicants and Representatives knew about other prior art but failed to

6   disclose it to the Patent Office in connection with either of the two patent

7   applications. Such prior art included some or all of the following:

8         a.   Certain prior art United States patents purportedly owned

9   by NCR Corporation (the "NCR Patents"), which Netflix knew about while

10   both the application for the '450 patent and the application for the '381 patent

11   were pending, but which Netflix never submitted to the Patent Office;

12         b.   Certain prior art video rental stores and related methods,

13   systems, and publications, including long-standing and widely-known

14   practices in the video rental industry, such as the use of waiting or reservation

15   lists for out-of-stock videos;

16         c.   Certain prior art subscription methods, systems, and

17   publications, including cable and satellite television services and pay

18   television services such as HBO and Showtime, as well as TiVo and other

19   video and film subscription services; and

20         d.   Certain prior art e-commerce businesses and related

21   methods, systems, and publications, including prior art related to the digital

22   display, selection, and ordering of items over Internet.

23         45.   The NCR Patents include, without limitation:

24         a.   The '526 patent, entitled "Ordering and Downloading

25   Resources from Computerized Repositories," which names as inventor David

26   M. Siefert, issued December 16, 1997, on an application filed August 21,

27   1996;

28         b.   U.S. Patent No. 5,951,643 (the '643 patent), entitled

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

15

ANSWER TO COMPLAINT; COUNTERCLAIMS;
DEMAND FOR JURY TRIAL
C 06 2361 WHA

1     "Mechanism for Dependably Organizing and Managing Information for Web

2     Synchronization and Tracking Among Multiple Browsers," which names as

3     inventors James A. Shelton, Michael I. Ingrassia, Jr., and Thomas M. Roland,

4     issued September 14, 1999, on an application filed October 6, 1997;

5           c.      U.S. Patent No. 5,991,791 (the '791 patent), entitled

6     "Security Aspects of Computer Resource Repositories," which names as

7     inventor David M. Siefert, issued November 23, 1999, on an application filed

8     January 10, 1997;

9           d.      U.S. Patent No. 6,026,403 (the '403 patent), entitled

10     "Computer System for Management of Resources," which names as inventor

11     David M. Siefert, issued February 15, 2000, on an application filed

12     March 24, 1994;

13           e.      U.S. Patent No. 6,169,997 (the '997 patent), entitled

14     "Method and Apparatus for Forming Subject (Context) Map and Presenting

15     Internet Data According to the Subject Map," which names as inventors

16     Karen A. Papierniak, James E. Thaisz, Luo-Jen Chiang, and Paresh B. Shah,

17     issued January 2, 2001, on an application filed April 29, 1998;

18           f.      U.S. Patent No. 6,253,203 (the '203 patent), entitled

19     "Privacy-Enhanced Database," which names as inventors Kenneth W.

20     O'Flaherty, Richard G. Stellwagen, Jr., Todd A. Walter, Reid M. Watts,

21     David A Ramsey, Adriaan W. Veldhuisen and Renda K. Ozden, issued

22     June 26, 2001, on an application filed October 2, 1998;

23           g.      U.S. Patent No. ,6,480,855 entitled "Managing a

24     Resource on a Network Where Each Resource Has an Associated Profile with

25     an Image," which names as inventor David M. Siefert, issued November 12,

26     2002, on an application filed August 22, 2000;

27           h.      U.S. Patent No. 6,502,096, entitled "Computerized Asset

28     Management System," which names as inventor David M. Siefert, issued

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

16

ANSWER TO COMPLAINT; COUNTERCLAIMS;
DEMAND FOR JURY TRIAL
C 06 2361 WHA

1  December 31, 2002, on an application filed August 22, 2000; and

2     i.  U.S. Patent No. 6,714,931 (the "'931 patent"), entitled

3 "Method and Apparatus for Forming User Sessions and Presenting Internet

4 Data According to the User Sessions," which names as inventors Karen A.

5 Papierniak, James E. Thaisz, Luo-Jen Chiang, Anjali M. Diwekar, issued

6 March 30, 2004, on an application filed April 29, 1998.

7    46.  The '526 patent is prior art to both the '450 and '381 patents

8 under 35 U.S.C. § 102(b). Blockbuster is informed and believes and thereon

9 alleges that the subject matter disclosed in each of the NCR Patents is prior art to

10 both the '450 and '381 patents under, without limitation, 35 U.S.C. § 102(a) and

11 (e).

12    47.  Netflix's own admissions in a case pending in this Court,

13 *Netflix, Inc. v. NCR Corporation*, Case No. C 06 1892 ("*Netflix v. NCR*") show that

14 Netflix was well aware of the NCR Patents during the pendency and prosecution of

15 the applications for both the '450 and '381 patents. Netflix filed *Netflix v. NCR*, on

16 March 10, 2006, seeking a declaratory judgment with respect to the same NCR

17 Patents listed above. That complaint shows that, since on or about January 17,

18 2003, Named Inventor Reed Hastings, who is also the Chief Executive Officer and

19 President of Netflix, has been aware, not only that the prior art NCR Patents exist,

20 but also that NCR claims that they cover the very same online rental service

21 claimed in Netflix's patents.

22    48.  Netflix's allegations in *Netflix v. NCR* include each of the

23 following admissions showing its knowledge of the NCR Patents:

24    a.  "On January 7, 2003, Bruce A. Langos, Vice President of

25 Business Operations and Intellectual Property Management at NCR, wrote to

26 Reed Hastings, the Chief Executive Officer of Netflix claiming notice [sic]

27 'that various Netflix.com offerings infringe at least the following patents

28 owned by NCR Corporation.'" (*Netflix v. NCR* Compl., ¶ 22.)

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

17   ANSWER TO COMPLAINT; COUNTERCLAIMS;
DEMAND FOR JURY TRIAL
C 06 2361 WHA

1         b.    Mr. Langos's letter "identified ten separate patents that

2    NCR claimed were infringed, and enclosed several exemplary claim charts,

3    each of which accused Netflix of infringing the claims described therein."

4    (*Id.*) These ten patents evidently included the nine NCR Patents listed above,

5    which are identified in the paragraphs immediately preceding the above-

6    quoted paragraph of Netflix's complaint in *Netflix v. NCR*. (*Id.* ¶ 22; *see id.*

7    ¶¶ 12-21.)

8         c.    NCR "even threatened to sue for an injunction should

9    Netflix not license NCR's technology . . . ." (*Id.* ¶ 22.)

10         d.    "On August 1, 2005, Mr. Langos once again wrote to

11    Mr. Hastings of Netflix concerning '[Netflix's] infringements of NCR

12    patents . . . '" and, on this occasion, Mr. Langos "enclosed updated claim

13    charts that again accused Netflix of infringing the claims described therein,

14    and threatened that should Netflix refuse to license the technology NCR was

15    'prepared to pursue other options.'" (*Id.* ¶ 23.)

16         e.    "NCR continued to press its allegations of infringement"

17    thereafter. (*Id.* ¶ 24.) NCR's counsel met with Netflix's counsel on

18    November 28, 2005, "during which meeting NCR's counsel once again

19    asserted that Netflix infringed the NCR patents, and that NCR was prepared

20    to file suit against Netflix to enforce its patents." (*Id.*)

21         f.    "[O]n January 11, 2006, counsel for NCR sent via email

22    to San Francisco revised charts purporting to show that Netflix was currently

23    infringing the claims described therein." (*Id.*)

24         49.    Netflix's own complaint in *Netflix v. NCR* shows that the letter

25    bringing the prior art NCR Patents to Netflix's attention was addressed to Netflix

26    CEO and Named Inventor Reed Hastings more than six months before the '450

27    patent issued. Although NCR expressly described its prior art patents as

28    encompassing the same online video rental service that Netflix was attempting to

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

18

ANSWER TO COMPLAINT; COUNTERCLAIMS;
DEMAND FOR JURY TRIAL
C 06 2361 WHA

1    patent, Netflix's Applicants and Representatives failed to disclose any of the NCR
2    Patents to the Patent Office.

3         50.    On March 10, 2006, prior to the issuance of the '381 patent,
4    Netflix had even filed suit against NCR over the NCR Patents, alleging that, "[b]y
5    virtue of NCR's actions, Netflix has a reasonable apprehension that NCR intends to
6    sue it for infringing the NCR patents" (*id.* ¶ 25) and that "[a]n actual and judiciable
7    controversy exists between Netflix and NCR concerning whether Netflix infringes
8    any valid claim of the NCR patents." (*Id.* ¶ 27.)

9         51.    Despite all of these alleged communications and notices from
10   NCR about the NCR Patents, the ongoing controversy alleged by Netflix over the
11   NCR Patents, and Netflix's expressed apprehension that it would be sued for
12   infringement of those patents, Netflix and its Applicants and Representatives failed
13   to disclose any of the NCR Patents to the Patent Office at any time up through and
14   including the date of issuance of the '381 patent on April 4, 2006.

15        52.    Regardless of whether the claims of the NCR Patents do in fact
16   cover online DVD rental services like those operated by Netflix and Blockbuster,
17   and regardless of whether those claims are legally valid, NCR's assertion of its
18   patents against Netflix's online rental service provided Netflix with ample notice
19   that the patents were material prior art and should be disclosed to the Patent Office
20   for its consideration in deciding whether Netflix's then-pending applications for
21   patents on that service met the statutory requirements of novelty and
22   nonobviousness. Instead, even after Netflix had sued NCR over the issue of
23   whether the NCR Patents cover the same rental service Netflix was engaged in
24   patenting, Netflix and its Applicants and Representatives failed to submit the NCR
25   Patents to the Patent Office.

26        53.    Blockbuster is informed and believes and thereon alleges that
27   the NCR Patents and all of the other prior art that Netflix's Applicants and
28   Representatives knew about and failed to disclose to the Patent Office, as described

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP
                                     19                    ANSWER TO COMPLAINT; COUNTERCLAIMS;
                                                                DEMAND FOR JURY TRIAL.
                                                                       C 06 2361 WHA

1    above, was material to both the '450 and '381 patents.

2    54.    Blockbuster is informed and believes and thereon alleges that

3    the deceptive and inequitable conduct of Netflix and its Applicants and

4    Representatives as alleged herein occurred at locations including, without

5    limitation, Netflix's principal place of business in Los Gatos, California, and the

6    offices of Netflix's patent attorneys in San Jose, California, as well as being

7    reflected in, and implemented through, documents transmitted to the Patent Office

8    in Alexandria, Virginia.

9    55.    Blockbuster is informed and believes and thereon alleges that

10    the deceptive and inequitable conduct of Netflix and its Applicants and

11    Representatives as alleged herein occurred at times including the entire period from

12    April 28, 2000 through June 24, 2003, during which the application for the '450

13    patent was pending, and the entire period from May 14, 2003 through April 4,

14    2006, during which the application for the '381 patent was pending.

15    **NETFLIX'S DECEPTIVE INTENT**

16    56.    Blockbuster is informed and believes and thereon alleges that

17    Netflix's Applicants and Representatives knew of the materiality of the prior art

18    that they failed to disclose to the Patent Office as alleges above.

19    57.    Blockbuster is informed and believes and thereon alleges that, in

20    engaging in the deceptive and inequitable conduct alleged above, including their

21    failures to disclose material prior art, Netflix's Applicants and Representatives

22    intended to deceive the Patent Office.

23    58.    The conduct demonstrating such deceptive intent has included,

24    without limitation, the acts and omissions by Netflix's Applicants and

25    Representatives as alleged above and as illustrated by the following time line:

26    #

27    #

28    #

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP                                    20                    ANSWER TO COMPLAINT; COUNTERCLAIMS;
                                                                  DEMAND FOR JURY TRIAL
                                                                  C 06 2361 WHA

# Time Line: *Illustrative Circumstances of Netflix's Deceptive Intent*

*April 28, 2000: Netflix files its application for the '450 patent*

*Sept. 28-Oct. 3, 2000: Netflix inventors acknowledge, under oath, their duty to disclose prior art to the Patent Office*

*January 7, 2003: NCR notifies Netflix of claim that NCR Patents cover the system Netflix is patenting; Netflix does not disclose NCR Patents to the Patent Office*

*April 7, 2003: Patent Office mails Netflix notice of allowance of '450 patent*

*May 14, 2003: Netflix files application for '381 patent*

*June 24, 2003:'450 patent issues; Netflix takes no action to assert it*

*Netflix submits no prior art to the Patent Office until after issuance of the '450 patent*

*August 11, 2004: Blockbuster launches "Blockbuster Online" and subsequently invests millions promoting online DVD rental*

*August 1, 2005: NCR again asserts that the NCR Patents cover Netflix.*

*March 10, 2006: Netflix files suit against NCR over the NCR Patents, but still does not disclose them to the Patent Office*

*April 4, 2006: '381 patent issues; Netflix sues Blockbuster the same day*

*Netflix continues to withhold other prior art (including the NCR Patents) from the Patent Office*

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

21

ANSWER TO COMPLAINT; COUNTERCLAIMS;
DEMAND FOR JURY TRIAL
C 06 2361 WHA

## BLOCKBUSTER'S AFFIRMATIVE DEFENSES TO NETFLIX'S COMPLAINT

### FIRST AFFIRMATIVE DEFENSE

#### (Invalidity)

59.    Blockbuster repeats all allegations of paragraphs 16 through 58 above.

60.    Either or both of the '450 and '381 patents are invalid for failure to satisfy one or more of the conditions of Title 35 of the United States Code, including, without limitation, Sections 101, 102, 103, and 112 thereof.

61.    The reasons for the invalidity of the patents include that they claim subject matter that was and is unpatentable because it had already been conceived of by others, was already publicly known, and was otherwise within one or more of the categories of prior art established by 35 U.S.C. § 102.

62.    The reasons for the invalidity of the patents also include that they claim subject matter that was and is unpatentable because it was obvious under 35 U.S.C. § 103.

63.    Blockbuster is informed and believes and thereon alleges that either or both of the '450 and '381 patents fail to set forth what the inventors regarded as the best mode for practicing the claimed inventions, in violation of 35 U.S.C. § 112, and fail to fulfill the written description requirement of §112.

64.    Blockbuster is informed and believes and thereon alleges that, depending on the constructions of the claims of the '450 and '381 patents as ultimately determined in this litigation, some or all of those claims may also fail to fulfill the definiteness requirement of 35 U.S.C. § 112.

#

#

#

#

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

22

ANSWER TO COMPLAINT; COUNTERCLAIMS;
DEMAND FOR JURY TRIAL
C 06 2361 WHA

## SECOND AFFIRMATIVE DEFENSE

### (Unenforceability)

65.     Blockbuster repeats all allegations of paragraphs 16 through 58 above and of Blockbuster's First and Second Counterclaims below.

66.     Blockbuster is informed and believes and thereon alleges that the '450 and '381 patents are unenforceable because of inequitable conduct in obtaining the patents. Blockbuster's grounds for this defense include, without limitation, the failure of Netflix's Applicants and Representatives to disclose material prior art as alleged above.

67.     Blockbuster is informed and believes and thereon alleges that, in failing to disclose material prior art, Netflix's Applicants and Representatives knew of the prior art and knew of its materiality to either or both of the applications for the '450 patent and the '381 patent.

68.     Blockbuster is informed and believes and thereon alleges that, in failing to disclose material prior art, Netflix's Applicants and Representatives intended to deceive the Patent Office.

## THIRD AFFIRMATIVE DEFENSE

### (Patent Misuse)

69.     Blockbuster repeats all allegations of paragraphs 16 through 58 above and of Blockbuster's First and Second Counterclaims below.

70.     Blockbuster is informed and believes and thereon alleges that Netflix has misused each of the '450 and '381 patents and, as a result, is barred from asserting either of them against Blockbuster.

## FOURTH AFFIRMATIVE DEFENSE

### (Laches)

71.     Blockbuster repeats all allegations of paragraphs 16 through 58 above and of Blockbuster's First and Second Counterclaims below.

72.     Netflix has unreasonably and inexcusably delayed its assertion

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

23

ANSWER TO COMPLAINT; COUNTERCLAIMS;
DEMAND FOR JURY TRIAL
C 06 2361 WHA

1   of the '450 patent against Blockbuster, causing material prejudice to Blockbuster.
2   Such prejudice has included Blockbuster's expenditure of millions of dollars on its
3   Blockbuster Online system.

4       73.   As a result of its delay in asserting the '450 patent, Netflix is
5   barred from asserting some or all of its claims against Blockbuster and from
6   obtaining any of the relief that it has requested.

7       74.   Blockbuster is informed and believes and thereon alleges that
8   Netflix unreasonably and inexcusably delayed its filing and prosecution of a patent
9   application for the subject matter claimed in the '381 patent, as part of the deceptive
10  and manipulative scheme alleged above and that Netflix's unreasonable and
11  unexplained delay constituted an egregious misuse of the patent system.

12      75.   Netflix's delay in filing and prosecuting a patent application for
13  the subject matter claimed in the '381 patent has caused material prejudice to
14  Blockbuster including Blockbuster's expenditure of millions of dollars on its
15  Blockbuster Online system without notice of Netflix's claims to such subject matter
16  or an opportunity to contest such claims. As a result of this delay, Netflix is barred
17  from asserting some or all of its claims against Blockbuster and from obtaining any
18  of the relief that it has requested.

19  **FIFTH AFFIRMATIVE DEFENSE**

20  **(Estoppel)**

21      76.   Blockbuster repeats all allegations of paragraphs 16 through 58
22  and 72 through 75 above and of Blockbuster's First and Second Counterclaims
23  below.

24      77.   Blockbuster is informed and believes and thereon alleges that
25  Netflix is estopped by its conduct alleged herein from asserting some or all of its
26  claims against Blockbuster and from obtaining any of the relief that it has
27  requested. Such conduct includes Netflix's deceptive and manipulative scheme
28  alleged above and the statement by Netflix's CEO to Blockbuster's Executive Vice

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP                                        24                    ANSWER TO COMPLAINT; COUNTERCLAIMS;
                                                                       DEMAND FOR JURY TRIAL
                                                                       C 06 2361 WHA

1    President as alleged above.

2         78.    By its conduct alleged herein, Netflix led Blockbuster to

3    reasonably infer that Netflix did not intend to enforce the '450 patent or any related

4    patent against Blockbuster.  Blockbuster reasonably relied on Netflix's conduct in,

5    without limitation, expending millions of dollars on its Blockbuster Online system

6    without notice of Netflix's claims to such subject matter or an opportunity to

7    contest such claims.  As a result, Blockbuster would be materially prejudiced by

8    enforcement of Netflix's patents against it.

9                              **COUNTERCLAIMS**

10        Blockbuster, for its counterclaims against Netflix, alleges and avers as

11   follows:

12                               **JURISDICTION**

13        79.    Blockbuster's First and Second Counterclaims assert

14   monopolization and attempted monopolization by Netflix in violation of federal

15   antitrust laws, including Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2.

16   Blockbuster seeks injunctive, monetary, and equitable relief under Sections 15 and

17   16 of the Clayton Act, 15 U.S.C. §§ 25-26.

18        80.    Blockbuster brings its Third and Fourth Counterclaims under the

19   Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, seeking declaratory

20   judgments under the patent laws of the United States, United States Code Title 35,

21   that Blockbuster has not violated and is not violating patent rights of Netflix and

22   that the '450 and '381 patents asserted by Netflix are invalid and unenforceable.

23        81.    This Court has jurisdiction over the Counterclaims under 28

24   U.S.C. §§ 1331 and 1337(a) and 15 U.S.C. § 26.

25                                 **VENUE**

26        82.    This Judicial District is a proper venue for adjudication of the

27   counterclaims under 15 U.S.C. § 22 and 28 U.S.C. § 1391(b) because Netflix

28   transacts business, is found, and has agents in this District and because a substantial

1   portion of the affected trade and commerce described below has been carried out in
2   this District.

### INTRADISTRICT ASSIGNMENT

4       83.    This is an Intellectual Property Action subject to district-wide
5   assignment under Civil Local Rule 3-2(c).

### THE PARTIES

7       84.    Blockbuster is a Delaware corporation with its principal place of
8   business in Dallas, Texas. Blockbuster is duly registered and authorized to conduct
9   business in the State of California. Blockbuster owns and operates an online DVD
10  rental service known as "Blockbuster Online," which is accessible from
11  Blockbuster's website, www.blockbuster.com. Blockbuster Online rents DVDs on
12  a subscription basis to customers throughout the United States.

13      85.    Netflix is a Delaware corporation with its principal place of
14  business in Los Gatos, California. Netflix owns and operates a DVD rental
15  business through its website, www.netflix.com, renting DVDs on a subscription
16  basis to customers throughout the United States.

### INTERSTATE COMMERCE

18      86.    Netflix has substantially affected interstate commerce by
19  illegally monopolizing, and attempting to monopolize, the relevant market, as
20  alleged below.

21      87.    Throughout the period from at least April 28, 2000, through the
22  present (the "relevant time period"):

23          a.    Netflix rented and distributed substantial numbers of
24      DVDs in a continuous and uninterrupted flow of commerce across state lines
25      and throughout the United States;

26          b.    Netflix distributed rental DVDs and received returns of
27      rental DVDs across state lines and through the United States mails;

28          c.    Netflix solicited and entered into DVD rental contracts,

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

26

ANSWER TO COMPLAINT; COUNTERCLAIMS;
DEMAND FOR JURY TRIAL
C 06 2361 WHA

1    obtained DVD rental orders, received payments for DVD rentals, and

2    promoted its online DVD rental service over the Internet, across state lines,

3    and using interstate telephone lines; and

4          d.    Netflix employed the Internet, interstate telephone lines,

5    and the United States mails in furtherance of its monopolization and attempt

6    to monopolize the relevant market, as alleged below.

## RELEVANT MARKET

8        88.    The relevant product market with respect to Blockbuster's First

9    and Second Counterclaims is the market for online DVD rentals and related

10    subscription services. The relevant geographical market is the United States and its

11    territories as a whole.

12        89.    Blockbuster is informed and believes and thereon alleges that,

13    throughout the relevant time period up to and including the present, Netflix has had

14    market power in the relevant product and geographical markets.

15        90.    Blockbuster is informed and believes and thereon alleges that

16    Netflix's share of the relevant product and geographical markets exceeds 65%.

17        91.    Following Blockbuster Online's entry into the relevant product

18    and geographical markets, Netflix lowered its online DVD rental prices.

19    Blockbuster is informed and believes and thereon alleges that Netflix's price

20    reduction was in response to Blockbuster Online's own prices, which were lower

21    than Netflix's prices. Blockbuster is informed and believes and thereon alleges

22    that, should Netflix succeed in inducing Blockbuster Online to exit the relevant

23    market, Netflix would again be without significant competition in that market.

24    #

25    #

26    #

27    #

28    #

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP
    27    ANSWER TO COMPLAINT; COUNTERCLAIMS;
DEMAND FOR JURY TRIAL
C 06 2361 WHA

**FIRST COUNTERCLAIM**

**(Monopolization in Violation of Section 2 of the Sherman Antitrust Act)**

92.     Blockbuster repeats all allegations of paragraphs 16 though 91 above.

93.     Blockbuster is informed and believes and thereon alleges that Netflix has engaged in monopolization in the relevant market during the relevant time period, in violation of Section 2 of the Sherman Antitrust Act. Blockbuster is informed and believes and thereon alleges that Netflix's acts of unlawful monopolization have included procuring either or both of the '450 and '381 patents by knowing and willful fraud and baselessly asserting them in bad faith in sham litigation against Blockbuster.

94.     Blockbuster is informed and believes and thereon alleges that the knowing and willful fraud by Netflix and its Applicants and Representatives in procuring the '450 and '381 patents has included all of their deceitful conduct alleged above, including:

    a.     The Named Inventors' representations to the Patent Office in applying for the '450 and '381 patents that the Named Inventors were aware of their duty to disclose known material prior art, implicitly also representing that they had complied with or would comply with this duty;

    b.     The intentional and fraudulent concealment from the Patent Office by Netflix's Applicants and Representatives that, despite their well-established and acknowledged duty of candor and good faith, they had no intention of disclosing, and had not disclosed, all known material prior art;

    c.     The intentional and fraudulent concealment from the Patent Office by Netflix's Applicants and Representatives of known, material prior art, as alleged above; and

    d.     Their intentional and fraudulent concealment from the Patent Office of the deceptive scheme in which they were engaged in

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

28

ANSWER TO COMPLAINT; COUNTERCLAIMS;
DEMAND FOR JURY TRIAL
C 06 2361 WHA

1      applying for and obtaining the '450 and '381 patents, as alleged above.

2      95.    Blockbuster is informed and believes and thereon alleges that

3      Netflix and its Applicants and Representatives, in applying for the '450 patent and

4      at all times thereafter through the issuance of the '381 patent, intentionally,

5      fraudulently and materially deceived the Patent Office in knowing violation of their

6      legal and ethical duties of candor and good faith to the Patent Office as alleged

7      above.

8      96.    For example, despite the Named Inventors' express

9      acknowledgment of their obligation to disclose material prior art, they disclosed no

10      prior art whatsoever to the Patent Office during the pendency of the application for

11      the '450 patent.

12      97.    Having obtained issuance of the '450 patent, Netflix's

13      Applicants and Representatives thereafter began submitting prior art to the Patent

14      Office in connection with the application for the '381 patent and ultimately

15      submitted a total of more than 100 references.  Blockbuster is informed and

16      believes and thereon alleges that Netflix's Applicants and Representatives

17      submitted this plethora of prior art or purported prior art for the purpose and with

18      the intention of confusing, distracting, misleading, and overtaxing the Patent Office

19      personnel charged with examining the application for the '381 patent.

20      98.    Throughout the pendency of the application for the '381 patent,

21      even after having submitted more than 100 prior art references to the Patent Office,

22      Netflix's Applicants and Representatives from the Office withheld other material

23      prior art that they knew about, as alleged above.

24      99.    Blockbuster is informed and believes and thereon alleges that, in

25      making and submitting the declarations and representations referred to above, and

26      in concealing and failing to disclose the material prior art and other material facts

27      referred to above, Netflix's Applicants and Representatives intended to deceive the

28      Patent Office and intended, by such fraud and deception, to obtain a patent to which

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP                                    29                    ANSWER TO COMPLAINT; COUNTERCLAIMS;
                                                                      DEMAND FOR JURY TRIAL
                                                                      C 06 2361 WHA

1   they were not otherwise entitled. In the alternative, Blockbuster is informed and
2   believes and thereon alleges that Netflix's Applicants and Representatives
3   intentionally disregarded their obligations to the Patent Office with a state of mind
4   so reckless with respect to the consequences of their conduct that it was the legal
5   equivalent of expressly fraudulent intent.

6          100.   Blockbuster is informed and believes and thereon alleges that, in
7   issuing the '450 and '381 patents, the Patent Office justifiably relied on the
8   foregoing misrepresentations, concealment, and omissions of material prior art and
9   other material facts by Netflix's Applicants and Representatives and that the Office
10  would not otherwise have issued those patents.

11         101.   Blockbuster is informed and believes and thereon alleges that
12  Netflix knows of the fraudulent origin, invalidity, and unenforceability of the '450
13  and '381 patents and that, in asserting the patents against Blockbuster – as well as
14  in any other past, present or future attempts to enforce the patents – Netflix has
15  been, is, and will be acting with full knowledge of the patents' fraudulent origin,
16  invalidity, and unenforceability.

17         102.   Blockbuster is informed and believes and thereon alleges that
18  Netflix's infringement lawsuit against Blockbuster is a sham and is both objectively
19  and subjectively baseless for reasons including the suit's lack of any reasonable
20  merit, and Netflix's lack of any probable cause for bringing it, in view of, without
21  limitation, the clear invalidity and unenforceability of the patents as alleged above,
22  all of which is known to Netflix.

23         103.   Blockbuster is informed and believes and thereon alleges that
24  Netflix, in filing this lawsuit, in prosecuting this lawsuit up to the present date, and
25  in any and all prosecution of this lawsuit hereafter, has acted, is acting, and will be
26  acting in bad faith, as a mere sham, and without belief in the merits of its claims.
27  Blockbuster is informed and believes and thereon alleges that Netflix, has been, is,
28  and, in any and all prosecution of this lawsuit hereafter, will be using this lawsuit to

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP                                        30                    ANSWER TO COMPLAINT; COUNTERCLAIMS;
                                                                              DEMAND FOR JURY TRIAL
                                                                                    C 06 2361 WHA

1    conceal an attempt to directly interfere with Blockbuster's business relationships
2    and business, to monopolize the relevant market, and to conceal by deceit Netflix's
3    maintenance of that monopoly.

4             104.  As examples of Netflix's bad faith, Blockbuster is informed and
5    believes and thereon alleges that, at the time of filing this lawsuit, Netflix knew,
6    and now knows:

7             a.      That the blatantly over-broad '450 patent was and is
8    invalid because its claims were anticipated by – and obvious in view of –
9    prior art that Netflix had failed to disclose to the Patent Office during the
10   pendency of the application for the '450 patent;

11            b.      The '450 patent was and is unenforceable because
12   Netflix's Applicants and Representatives had withheld known, material prior
13   art from the Patent Office in prosecuting the application that resulted in the
14   '450 patent; and

15            c.      As alleged above, even Netflix's own CEO, Reed
16   Hastings, who is also a Named Inventor on the patent, described the '450
17   patent as a "joke."

18            105.  Netflix has market power in the relevant market as alleged
19   above.

20            106.  Blockbuster is informed and believes and thereon alleges that
21   Netflix has used and is using its '450 and '381 patents and its sham infringement
22   litigation against Blockbuster to restrain competition by, without limitation,
23   attempting to induce Blockbuster to leave the relevant market, attempting to
24   damage Blockbuster's ability to compete in the relevant market, and attempting to
25   deter other potential competitors from entering the market.

26            107.  Blockbuster is informed and believes and thereon alleges that
27   Netflix has succeeded in restraining competition in the relevant market during the
28   relevant time period by fraudulently obtaining and asserting the '450 and '381

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

31

ANSWER TO COMPLAINT; COUNTERCLAIMS;
DEMAND FOR JURY TRIAL
C 06 2361 WHA

1   patents and by filing and prosecuting its sham infringement litigation against

2   Blockbuster. Netflix's monopolistic conduct as alleged herein is already harming

3   competition by causing Blockbuster to devote substantial resources to the defense

4   of this patent infringement action. Blockbuster is informed and believes and

5   thereon alleges that Netflix's monopolistic conduct is further harming, or will

6   further harm, competition by deterring other potential competitors from entering the

7   relevant market.

8          108. As a direct and proximate result of Netflix's acts of

9   monopolization, Blockbuster has suffered damages including attorneys' fees and

10  litigation expenses required to defend against Netflix's infringement lawsuit.

11  Blockbuster is informed and believes and thereon alleges that other damages

12  directly and proximately resulting from Netflix's monopolistic conduct include lost

13  profits and lost goodwill sustained or to be sustained by Blockbuster as well as

14  harm to other competitors or would-be competitors in the relevant market and to

15  online DVD rental consumers. Blockbuster is informed and believes and thereon

16  alleges that it and others will suffer additional such damages in the future suffer if

17  Netflix continues its monopolistic conduct, including its assertion of fraudulently

18  obtained patents and its sham litigation.

19  #

20  #

21  #

22  #

23  #

24  #

25  #

26  #

27  #

28  #

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

32

ANSWER TO COMPLAINT; COUNTERCLAIMS;
DEMAND FOR JURY TRIAL
C 06 2361 WHA

## SECOND COUNTERCLAIM
### (Attempted Monopolization in Violation of Section 2
of the Sherman Antitrust Act)

109.   Blockbuster repeats all allegations of paragraphs 16 though 108 above.

110.   Blockbuster is informed and believes and thereon alleges that Netflix has attempted to monopolize the relevant market during the relevant time period, in violation of Section 2 of the Sherman Antitrust Act.  Blockbuster is informed and believes and thereon alleges that Netflix's acts of attempted monopolization have included procuring either or both of the '450 and '381 patents by knowing and willful fraud and baselessly asserting them in bad faith in sham litigation against Blockbuster.

111.   Blockbuster is informed and believes and thereon alleges that, in fraudulently obtaining and asserting the '450 and '381 patents as alleged herein, Netflix has acted with the specific intent to monopolize the relevant market.

112.   Blockbuster is informed and believes and thereon alleges that, in filing and prosecuting its sham infringement litigation against Blockbuster as alleged herein, Netflix has acted with the specific intent to monopolize the relevant market.

113.   Blockbuster is informed and believes and thereon alleges that Netflix's attempts to monopolize the relevant market, as alleged herein, have had and now have a dangerous probability of success.

114.   Blockbuster is informed and believes and thereon alleges that Netflix has had market power in the relevant product and geographical markets, throughout the relevant time period or, in the alternative, that Netflix has a dangerous probability of success of obtaining such market power.

115.   Blockbuster is informed and believes and thereon alleges that, if successful, Netflix's monopolistic conduct as alleged herein would harm

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

33

ANSWER TO COMPLAINT; COUNTERCLAIMS;
DEMAND FOR JURY TRIAL
C 06 2361 WHA

1   competition in the relevant market by depriving consumers of the increased output,
2   broader choice, and lower prices that would result from competition on the merits.

3   116. Blockbuster is informed and believes and thereon alleges that, if
4   Netflix succeeded in its attempt to cause Blockbuster Online to exit from the
5   relevant market because of fraudulently-obtained patents and sham litigation,
6   Netflix would obtain a virtually complete monopoly in the relevant market.

7   117. As a direct and proximate result of Netflix's acts of attempted
8   monopolization, Blockbuster has suffered damages including, without limitation,
9   attorneys' fees and litigation expenses required to defend against Netflix's
10  infringement lawsuit. Blockbuster is informed and believes and thereon alleges that
11  other damages directly and proximately resulting from Netflix's acts of attempted
12  monopolization include lost profits and lost goodwill sustained or to be sustained
13  by Blockbuster as well as harm to other competitors or would-be competitors in the
14  relevant market and to online rental consumers. Blockbuster is informed and
15  believes and thereon alleges that it and others will suffer additional such damages in
16  the future suffer if Netflix continues its acts of attempted monopolization, including
17  its assertion of fraudulently obtained patents and its sham litigation.

18                          **THIRD COUNTERCLAIM**

19                  **(Declaratory Judgment as to the '450 Patent)**

20  118. Blockbuster repeats all allegations of paragraphs 16 though 116
21  above.

22  119. A case and actual controversy exists between Blockbuster and
23  Netflix with regard to infringement, validity, and enforceability of the '450 patent
24  as a result of Netflix's filing of this case against Blockbuster, contending that
25  Blockbuster's Blockbuster Online service infringes the '450 patent and seeking an
26  injunction and monetary award based on that contention.

27  120. Blockbuster contends that it and its Blockbuster Online service
28  do not infringe and have not infringed any valid claim of the '450 patent as properly

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

                                    34

1    construed, whether directly or through inducement of infringement or contributory
2    infringement.

3         121.  Blockbuster contends that the '450 patent is invalid for reasons
4    including, without limitation, each of the reasons alleged above.

5         122.  Blockbuster contends that the '450 patent is unenforceable for
6    the each of the reasons alleged above and in view of the conduct of Netflix and its
7    Applicants and Representatives as alleged above including, without limitation, their
8    failures to disclose known, material prior art to the Patent Office.

9         123.  Blockbuster has no adequate remedy at law.

10        **FOURTH COUNTERCLAIM**

11        **(Declaratory Judgment as to the '381 Patent)**

12         124.  Blockbuster repeats all allegations of paragraphs 16 though 116
13    above.

14         125.  A case and actual controversy exists between Blockbuster and
15    Netflix with regard to infringement, validity, and enforceability of the '381 patent
16    as a result of Netflix's filing of this case against Blockbuster, contending that
17    Blockbuster's Blockbuster Online service infringes the '381 patent and seeking an
18    injunction and monetary award based on that contention.

19         126.  Blockbuster contends that it and its Blockbuster Online service
20    do not infringe and have not infringed any valid claim of the '381 patent as properly
21    construed, whether directly or through inducement of infringement or contributory
22    infringement.

23         127.  Blockbuster contends that the '381 patent is invalid for reasons
24    including, without limitation, each of the reasons alleged above.

25         128.  Blockbuster contends that the '381 patent is unenforceable for
26    the each of the reasons alleged above and in view of the deceptive conduct of
27    Netflix and its Applicants and Representatives as alleged above including, without
28    limitation, their failures to disclose known, material prior art to the Patent Office.

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP
    35    ANSWER TO COMPLAINT; COUNTERCLAIMS;
DEMAND FOR JURY TRIAL
C 06 2361 WHA

129. Blockbuster has no adequate remedy at law.

## **PRAYER FOR RELIEF**

Blockbuster respectfully requests judgment as follows:

1.     That Netflix recover nothing by its Complaint;

2.     For a declaratory judgment determining and declaring:

a.     That Blockbuster has not violated, and is not violating, any rights of Netflix under the '450 patent or '381 patent;

b.     That each claim of the '450 and '381 patents is invalid; and

c.     That the '450 and '381 patents are unenforceable;

3.     For compensatory damages according to proof;

4.     Determining that this is an "exceptional" case and awarding Blockbuster its attorneys' fees and expenses under 35 U.S.C. § 285 or on any other applicable ground;

5.     For costs of suit;

6.     For pre-and post-judgment damages on all amounts awarded to Blockbuster; and

7.     For general relief.


DATED: June 13, 2006          ALSCHULER GROSSMAN STEIN & KAHAN LLP


By _____
Marshall B. Grossman
Attorneys for Defendant and Counterclaimant,
Blockbuster Inc.

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

36

ANSWER TO COMPLAINT; COUNTERCLAIMS;
DEMAND FOR JURY TRIAL
C 06 2361 WHA

1    **DEMAND FOR JURY TRIAL**

2        Under Rule 38(b) of the Federal Rules of Civil Procedure and Civil

3    Local Rule 3-6 of the United States District Court for the Northern District of

4    California, Blockbuster hereby demands a trial by jury of all issues properly triable

5    by jury.

6    DATED: June 13, 2006        ALSCHULER GROSSMAN STEIN & KAHAN LLP

7

8    By _____

9        Marshall B. Grossman
        Attorneys for Defendant and Counterclaimant,
10       Blockbuster Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP                37        ANSWER TO COMPLAINT; COUNTERCLAIMS;
                                        DEMAND FOR JURY TRIAL
                                        C 06 2361 WHA

1      **CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

2              Pursuant to Civil L.R. 3-16, the undersigned certifies that the

3      following listed persons, association of persons, firms, partnerships, corporations

4      (including parent corporations) or other entities (i) have a financial interest in the

5      subject mater in controversy or in a party to the proceeding, or (ii) have a non-

6      financial interest in that subject matter or in a party that could be substantially

7      affected by the outcome of this proceeding:

8              Blockbuster Inc.

9              Netflix, Inc.

10     DATED: June 13, 2006          ALSCHULER GROSSMAN STEIN & KAHAN LLP

11

12                                   By

13                                      Marshall B. Grossman
                                        Attorneys for Defendant and Counterclaimant,
14                                      Blockbuster Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Alschuler Grossman Stein & Kahan LLP, The Water Garden, 1620 26th Street, Fourth Floor, North Tower, Santa Monica, California 90404-4060. On June 13, 2006, I served a true copy of the within documents:

### ANSWER TO COMPLAINT; COUNTERCLAIMS; DEMAND FOR JURY TRIAL

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

The above transmission was reported as complete and without error. Attached hereto is a copy of the respective transmission report, which was properly issued by the transmitting facsimile machine.

☑ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Santa Monica, California, addressed as set forth below.

☐ by placing the document(s) listed above in a sealed envelope, with the overnight delivery charge prepaid, addressed as set forth below, and deposited in a box or facility regularly maintained by the overnight delivery service carrier, Federal Express.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

Jeffrey R. Chanin, Esq.          Tel:   415.391.5400
Daralyn J. Durie, Esq.           Fax:   415.397.7188
Asim M. Bhansali, Esq.
Kevin T. Reed, Esq.              Attorneys for Plaintiff
Keker & Van Nest, LLP           Netflix, Inc.
710 Sansome Street
San Francisco, CA 94111-1704

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 13, 2006.

_____
Dale Pippo

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

39

ANSWER TO COMPLAINT; COUNTERCLAIMS;
DEMAND FOR JURY TRIAL
C 06 2361 WHA