KEKER & VAN NEST, LLP
JEFFREY R. CHANIN - #103649
DARALYN J. DURIE - #169825
KEVIN T. REED - #240799
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Plaintiff
NETFLIX, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NETFLIX, INC., a Delaware corporation, | Case No. C 06 2361 WHA |
| Plaintiff, | **PLAINTIFF NETFLIX'S NOTICE OF MOTION AND MOTION TO DISMISS OR, ALTERNATIVELY, TO BIFURCATE AND STAY DEFENDANT BLOCKBUSTER'S ANTITRUST COUNTERCLAIMS AND TO STRIKE AFFIRMATIVE DEFENSES OF UNENFORCEABILITY AND PATENT MISUSE** |
| v. | |
| BLOCKBUSTER, INC., a Delaware corporation, DOES 1-50, | |
| Defendant. | |

Date:     August 17, 2006
Time:     8:00 a.m.
Judge:    Hon. William Alsup

NETFLIX'S MOTION TO DISMISS OR, ALTERNATIVELY, TO
BIFURCATE AND STAY BLOCKBUSTER'S ANTITRUST COUNTERCLAIMS
Case No. C 06 2361 WHA

376442.02

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................2

II.   ARGUMENT .....................................................................................................3

A.   BLOCKBUSTER HAS FAILED TO ALLEGE FACTS SUFFICIENT TO STATE A CLAIM FOR *WALKER PROCESS* FRAUD OR "SHAM LITIGATION" ........................................3

     1.    Blockbuster Fails to Allege *Walker Process* Fraud With the Requisite Particularity........................................................................................3

          a.    Blockbuster's "Flooding" Allegation Fails....................................6

          b.    Blockbuster's Allegations Regarding the Failure to Disclose Prior Art Fail ...........................................................................7

               (i)    Blockbuster's Allegation that Netflix Failed to Disclose the 100 References in Connection with the '450 Application Fails ................................................................7

               (ii)   Blockbuster's Accusatory Assertions that Netflix Failed to Disclose Unspecified Prior Art Are Insufficient.....................8

               (iii)  Blockbuster Does Not (And Could Not) Allege that the NCR Patents are Invalidating Prior Art ................................8

               (iv)  Blockbuster Does Not Adequately Allege that the Nondisclosure of Any Prior Art Was Intentional ...........................9

     2.    Without a Sufficient Allegation of Fraud, Blockbuster's "Sham Litigation" Claim Cannot Survive ........................................................10

     3.    Blockbuster's Second Affirmative Defense of Unenforceability and Third Affirmative Defense of Patent Misuse Must Be Stricken For Failure to Allege Inequitable Conduct with Sufficient Particularity ...................11

          a.    The "Inequitable Conduct" Defense Cannot Survive ...............................12

          b.    The "Patent Misuse" Defense Fails .........................................................13

B.   IN THE ALTERNATIVE, THIS COURT SHOULD BIFURCATE AND STAY DEFENDANT'S ANTITRUST CLAIMS...........................................................14

     1.    Bifurcation is Necessary to Effectuate Netflix's Constitutionally Protected Interests...........................................................................14

     2.    Bifurcation And A Stay Of Discovery On Antitrust Claims Will Minimize The Cost And Burden On The Parties And Third Parties And Will Also Promote Efficiency .........................................16

          a.    This Court Has Broad Discretion To Order Bifurcation And A Stay Of Discovery ........................................................................16

i

376442.02

# TABLE OF CONTENTS
## (cont'd)

**Page**

    b.    Bifurcation Will Allow For The Early Determination Of Issues That May Dispose Of The Antitrust Claims ..............................................17

    c.    Bifurcation Will Simplify the Case, Avoid Confusion, and Minimize Cost And the Burden of Antitrust Discovery ..........................18

    d.    There Will Be No Prejudice To Blockbuster, And Bifurcation Will Lead To A Just, Final Determination Of Litigation..........................19

III.    CONCLUSION..........................................................................................20

376442.02

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ASM America, Inc. v. Genus, Inc.*,
No. 01-2190 EDL, 2002 WL 24444, at *6 (N.D. Cal. Jan. 9, 2002) ..................12, 17, 18, 19

*Advanced Cardiovascular System v. Medtronic, Inc.*,
1996 WL. 467273 (N.D. Cal. 1996) ........................................8, 9, 11, 13

*American Hoist & Derrick Co. v. Sowa & Sons, Inc.*,
725 F.2d 1350 (Fed. Cir. 1984)..........................................................7

*In re Benedictin Litigation*, 857 F.2d 290 (6th Cir. 1988), *cert. denied*,
488 U.S. 1006, 109 S. Ct. 788, 102 L. Ed. 2d 779 ....................................16

*C.R. Bard v. M3 Systems*,
157 F.3d 1340 (Fed. Cir. 1998)........................................................10

*Carlisle Corp. v. Hayes*,
635 F. Supp. 962 (S.D. Cal. 1986)...................................................19

*Cataphote v. De Soto Chemical Coatings*,
450 F.2d 769 (9th Cir. 1972) ......................................................10, 11

*Chip-Mender, Inc. v. Sherwin-Williams Co.*,
2006 WL. 13058 (N.D. Cal. Jan. 3, 2006) .........................................4, 8

*Components, Inc. v. Western Electric Co.*,
318 F. Supp. 959 (D. Me. 1970) .....................................................18

*Computer Associate International v. American Fundware*,
831 F. Supp. 1516 (D. Colo. 1993)..................................................15

*County of Santa Clara v. Astra U.S., Inc.*,
428 F. Supp. 2d 1029 (N.D. Cal. 2006) ..............................................4

*Dentsply International v. New Technology Co.*,
1996 WL. 756766 (D. Del. 1996) ...................................................15

*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961)...................................................................14

*Ecrix Corp. v. Exabyte Corp.*,
191 F.R.D. 611 (D. Colo. 2000) ...................................................15, 19

*Erie Technological Products, Inc. v JFD Electronics Components Corp.*,
198 U.S.P.Q. 179 (E.D.N.Y. 1978).....................................................8

*Ferguson Beauregard/Logic Controls v. Mega Systems, LLC*,
350 F.3d 1327 (Fed. Cir. 2003)......................................................12

iii

376442.02

# TABLE OF AUTHORITIES
## (cont'd)

**Page(s)**

*FilmTec v. Hydranautics*,
    67 F.3d 931 (Fed. Cir. 1995)..................................................................15

*Forsyth v. Humana, Inc.*,
    114 F.3d 1467 (9th Cir. 1997) ................................................................3

*Glaverbel S.A. v. Northlake Marketing & Supply, Inc.*,
    45 F.3d 1550 (Fed. Cir. 1995)................................................................13

*Hunter Douglas, Inc. v. Comfortex Corp.*,
    44 F. Supp. 2d 145 (N.D.N.Y. 1999).....................................................18

*Hydranautics v. FilmTec*,
    70 F.3d 533 (9th Cir. 1995) ...................................................................15

*Implant Innovations, Inc v. Nobelpharma AB*,
    1996 WL. 568791 (N.D. Ill. 1996) ........................................................15

*In re Innotron Diagnostics*,
    800 F.2d 1077 (Fed. Cir. 1986)........................................................16, 17

*Jinro Am*,
    266 F.3d at 998 ......................................................................................17

*Landis v. North American Co.*,
    299 U.S. 248 (1936)...............................................................................17

*Liberty Lake Investments v. Magnuson*,
    12 F.3d 155 (9th Cir. 1993) ...................................................................15

*MedImmune, Inc. v. Genentech, Inc.*,
    427 F.3d 958 (Fed. Cir. 2005)............................................................4, 7

*Molins PLC v. Textron*,
    48 F.3d 1172 (Fed. Cir. 1995)................................................................10

*Music Center v. Prestini Musical Instruments Group*,
    873 F. Supp. 543 (S.D.N.Y. 1995).........................................................15

*Nobelpharma AB v. Implant Innovations, Inc.*,
    141 F.3d 1059 (Fed. Cir. 1998).....................................................3, 7, 9, 10

*PB Farradyne, Inc. v. Peterson*,
    2006 WL. 132182 (N.D. Cal. Jan. 17, 2006) .........................................12

*Pharmacia, AB v. Hybritech, Inc.*,
    224 U.S.P.Q. (BNA) 975 (S.D. Cal. 1984) .......................................17, 18

*Professional Real Estate Investors v. Columbia Pictures Industries, Inc.*,
    508 U.S. 49 (1993)............................................................................14, 15

iv

376442.02

**TABLE OF AUTHORITIES**
(cont'd)

**Page(s)**

*SNK Corp. of America v. Atlus Dream Ent. Co.*,
    188 F.R.D. 566 (N.D. Cal. 1999)........................................................15

*Schreiber Distributing Co. v. Serv-Well Furniture Co.*,
    806 F.2d 1393 (9th Cir. 1986) ...........................................................4

*Scioto County Regional Water District v. Scioto Water Inc.*,
    916 F. Supp. 692 (S.D. Ohio 1995) ...................................................15

*Semiconductor Energy Laboratories Co., Ltd. v. Samsung Electrics Co., Ltd.*,
    204 F.3d 1368 (Fed. Cir. 2000)..........................................................12

*Slaven v. BP America, Inc.*,
    190 F.R.D. 649 (C.D. Cal. 2000) .......................................................16

*Stoddard v. Ling-Temco-Vought, Inc.*,
    513 F. Supp. 314 (C.D. Cal. 1980) .....................................................16

*Syncsort Inc. v. Sequential Software, Inc.*,
    50 F. Supp. 2d 318 (D.N.J. 1999) ......................................................11

*U.S. v. 1,071.08 Acres of Land*,
    564 F.2d 1350 (9th Cir. 1977) ...........................................................16

*United Mine Workers of America v. Pennington*,
    381 U.S. 657 (1965)..........................................................................14

*Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*,
    373 F.3d 1341 (Fed. Cir. 2004)  (reversed, in part, on other grounds)...................9

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ...........................................................4

*Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*,
    382 U.S. 172 (1965)............................................................................3

*In re Warfarin Sodium Antitrust Litigation*,
    1998 WL. 883469 (D. Del. 7 Dec. 1998).............................................11

*In re Worlds of Wonder Sec. Litigation*,
    694 F. Supp. 1427 (N.D. Cal. 1988) ...................................................4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

376442.02

# TABLE OF AUTHORITIES
### (cont'd)

<u>**Page(s)**</u>

# STATUTES

35 U.S.C. § 271(d)(3) ...........................................................................................13

Fed. R. Civ. P. 9(b) ...................................................................................... passim

Fed. R. Civ. P. 12(b)(6)............................................................................................2

Fed. R. Civ. P. 42(b) ...............................................................................................16

Civil Local Rule 7-4(a)(3)) ......................................................................................2

NETFLIX'S MOTION TO DISMISS OR, ALTERNATIVELY, TO
BIFURCATE AND STAY BLOCKBUSTER'S ANTITRUST COUNTERCLAIMS
Case No. C 06 2361 WHA

376442.02

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE, that on August 17, 2006, at 8:00 a.m. before the Honorable William Alsup, United States District Court, San Francisco, California, Plaintiff Netflix, Inc. ("Netflix") will, and hereby does, move the Court pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) for an Order dismissing, or in the alternative, bifurcating and staying discovery and proceedings on Blockbuster, Inc.'s ("Blockbuster") Antitrust Counterclaims, and striking Blockbuster's affirmative defenses of patent unenforceability and patent misuse.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points of Authorities below; all pleadings and papers filed herein; oral argument of counsel; and any other matter that may be submitted at the hearing.

**ISSUES TO BE DECIDED (Civil Local Rule 7-4(a)(3))**

1. Whether Blockbuster's antitrust counterclaims should be dismissed for Blockbuster's failure to plead with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure;

2. Whether, if not dismissed, Blockbuster's antitrust counterclaims should be bifurcated, with discovery and all related proceedings stayed, pending resolution of the underlying patent claims.

3. Whether Blockbuster's affirmative defenses of unenforceability and patent misuse should be stricken.

376442.02

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Netflix sued Blockbuster for infringement of two Netflix patents.  In response, Blockbuster filed boilerplate antitrust counterclaims (which it immediately trumpeted with a press release).  Blockbuster's antitrust counterclaims allege that Netflix has restrained or attempted to restrain trade by (1) defrauding the Patent and Trademark Office ("PTO") in the course of obtaining its patents ("*Walker Process* fraud"), and (2) bringing this patent infringement action, which Blockbuster characterizes as a "sham."

These claims fail as a matter of law because Blockbuster has not plead any underlying fraud with the particularity required by Federal Rule of Civil Procedure 9(b).  For the most part, Blockbuster simply asserts, in the most conclusory terms, that Netflix withheld prior art from the PTO.  Courts have routinely found such allegations to be insufficient.  Blockbuster does identify one group of patents, which it asserts should have been cited as prior art—a series of patents issued to NCR with titles such as "Security Aspects of Computer Resource Repositories", "Privacy-Enhanced Database", and "Method and Apparatus for Forming Subject (Context) Map"— but Blockbuster fails to plead that the NCR patents have anything to do with the inventions claimed in the patents at issue in this case.

Blockbuster's claim that this litigation is actionable because it is a sham fares no better.  Blockbuster's sham litigation claim is entirely derivative of its *Walker Process* claim, and thus fails for the same reasons.  Blockbuster's affirmative defenses of unenforceability and patent misuse are also insufficiently pled for the same reasons as the *Walker Process* claim, and thus likewise should be stricken.

If the Court does not dismiss Blockbuster's counterclaims outright, those counterclaims should be bifurcated and stayed pending the disposition of the underlying patent infringement action.  First, under the *Noerr-Pennington* doctrine, Netflix is immune from antitrust liability based upon the filing of this lawsuit unless this Court makes a threshold determination that the lawsuit is a sham.  The predicate to any such finding is that Blockbuster prevail on the patent claims.  Second, the *Walker Process* claims are predicated on the assertion that Netflix engaged

376442.02

in fraud on the PTO, an issue which will be resolved in the patent case.  For these reasons, this Court should, at a minimum, bifurcate and stay antitrust counterclaims as a means to simplify the case, avoid unnecessary confusion, and minimize the burden of antitrust-related discovery.

## II.    ARGUMENT

### A.    BLOCKBUSTER HAS FAILED TO ALLEGE FACTS SUFFICIENT TO STATE A CLAIM FOR *WALKER PROCESS* FRAUD OR "SHAM LITIGATION"

Blockbuster's antitrust counterclaims must be dismissed because: (1) Blockbuster has failed to plead *Walker Process* fraud with the particularity required under Fed. R. Civ. P. 9(b); and (2) without a sufficient allegation of fraud, Blockbuster's "sham litigation" claim cannot survive.  The same pleading deficiencies also require this Court to strike Blockbuster's affirmative defenses of unenforceability and patent misuse, because those defenses are predicated on the same insufficient allegations of fraud.

#### 1.    Blockbuster Fails to Allege *Walker Process* Fraud With the Requisite Particularity

Although a patentee is generally immune from antitrust liability for any anticompetitive consequences resulting from obtaining and enforcing a patent, the courts have carved out a narrow exception to that broad rule where the patentee obtained its patent by defrauding the PTO.  *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.,* 382 U.S. 172, 177 (1965).  In order to establish such a *Walker Process* claim, a claimant must allege that: (1) the patentee "obtained the patent by knowingly and willfully misrepresenting facts to the [PTO]"; (2) the "party enforcing the patent was aware of the fraud when bringing suit"; (3) "independent and clear evidence of deceptive intent," (4) "a clear showing of reliance, i.e., that the patent would not have issued but for the misrepresentation or omission"; and (5) the "necessary additional elements of a [underlying] violation of the antitrust laws." *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068-69, 1071 (Fed. Cir. 1998) (quoting *Walker Process*, 82 U.S. at 177). [1]

---

[1] To prevail on a claim of monopolization under section 2 of the Sherman Act, a plaintiff must allege: "(1) [p]ossession of monopoly power in the relevant submarket; (2) willful acquisition or

376442.02

1    Like all fraud-based claims, "Walker Process allegations are subject to the pleading

2    requirements of Fed. R. Civ. P. 9(b)." *MedImmune, Inc. v. Genentech, Inc.*, 427 F.3d 958, 967

3    (Fed. Cir. 2005); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir.

4    2003).  Fed. R. Civ. P. 9(b) requires that "[i]n all averments of fraud or mistake, the

5    circumstances constituting fraud or mistake shall be stated with particularity."  The "pleader

6    must state the time, place, and specific content of the false representations as well as the

7    identities of the parties to the misrepresentation." *County of Santa Clara v. Astra U.S., Inc.*, 428

8    F. Supp. 2d 1029, 1036 (N.D. Cal. 2006) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture*

9    *Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986)).  Where the defendant in a patent infringement suit has

10   failed to satisfy their obligations under Rule 9(b), the appropriate remedy is to dismiss the

11   *Walker Process* claim.  *See, e.g., Chip-Mender, Inc. v. Sherwin-Williams Co.*, 2006 WL 13058,

12   at *6 (N.D. Cal. Jan. 3, 2006) (dismissing antitrust claim because defendant failed to sufficiently

13   specify which references were concealed or allege the patents would not have been issued "but

14   for" the concealment).

15       As a general matter, Blockbuster's counterclaims recite conclusions, not facts from which

16   conclusions might be drawn.  "Mere conclusory allegations of fraud are insufficient." *County of*

17   *Santa Clara,*  428 F. Supp. 2d at 1036 (citing *Moore v. Kayport Package Express, Inc.*, 885 F.2d

18   531, 540 (9th Cir. 1989)).  For example, nearly all of Blockbuster's fraud allegations are made

19   on information and belief.  Answer and Counterclaims ¶¶ 93-95, 97, 99-104, 106-108, 110-117.

20   It is well established that "[a]llegations based on 'information and belief' do not satisfy the

21   requirement of [Rule 9(b)] unless the complaint sets forth the facts on which the belief is

22   founded." *In re Worlds of Wonder Sec. Litig.*, 694 F. Supp. 1427, 1432-33 (N.D. Cal. 1988).

23       When Blockbuster does plead facts, those facts often have no relevance to the asserted

24   claims.  Despite Blockbuster's best efforts to fill its Answer and Counterclaims with impressive-

25   looking lists and timelines, much of the conduct upon which Blockbuster relies simply is not

26   actionable:

27

28   maintenance of that power; and (3) causal antitrust injury." *Forsyth v. Humana, Inc.*, 114 F.3d
     1467, 1475 (9th  Cir. 1997).

NETFLIX'S MOTION TO DISMISS OR, ALTERNATIVELY, TO
BIFURCATE AND STAY BLOCKBUSTER'S ANTITRUST COUNTERCLAIMS
Case No. C 06 2361 WHA

376442.02

1    *First,* Blockbuster complains that, before the '450 patent issued, Netflix filed a

2    continuation application in order to get narrower claims to issue.  Answer and Counterclaims

3    ¶ 39(c).  That is irrelevant:  filing a continuation application in order to pursue additional (or

4    narrower) claims is a permissible (and indeed commonplace) practice.  *See* Manual of Patent

5    Examining Procedure ["MPEP"] § 201.07 (8th ed. 2005).

6    *Second*, Blockbuster complains that Netflix did not publicly disclose that Netflix was

7    prosecuting the continuation application that led to the issuance of the '381 patent.  Answer and

8    Counterclaims ¶ 39(f).  No rule required Netflix to make any such disclosure.[2]

9    *Third*, Blockbuster complains that Netflix did not assert the '450 patent when

10   Blockbuster first launched Blockbuster Online, instead waiting for the '381 patent to issue. *Id.*

11   ¶ 39(g).  But no rule required Netflix to bring suit as soon as it obtained one patent, instead of

12   waiting to assert multiple, related patents together in the same case.

13   *Fourth*, Blockbuster complains that Netflix "lull[ed] and entic[ed]" its competitors to

14   enter the online market in some entirely unspecified way.  *Id.* ¶ 39(h). No rule required Netflix

15   to warn off its competitors.  (And it makes little sense that Netflix would want to encourage

16   Blockbuster to enter the market so that it could spend money on attorneys' fees in order to

17   recoup its losses.)  In any event, Blockbuster was and remains free to compete in the online DVD

18   rental market so long as it does so without infringing Netflix's patents.

19   *Fifth*, Blockbuster complains that Netflix sued Blockbuster for patent infringement

20   "without warning."  *Id.* ¶ 39(j). No rule required Netflix to send Blockbuster a cease and desist

21   letter before bringing this infringement action.

22   Blockbuster is left with only three allegations pertaining (however tangentially) to its

23   *Walker Process* claim: (1) Netflix "flooded" the PTO with around 100 prior art references in

24   connection with prosecuting the '381 patent application; (2) Netflix did not disclose these same

25   100 references when prosecuting the '450 patent application; and (3) Netflix did not disclose the

26

27   _____

     [2] Moreover, none of the issues raised in points 2 through 5 has anything to do with fraud on the

28   PTO.  The allegations thus do not have any relevance to a claim of *Walker Process* fraud for that
     additional reason.

5

376442.02

NCR patents in connection with prosecuting either patent application. *Id.* ¶ 39(b), (d), (e). These allegations all fail as the predicate for a *Walker Process* claim because none is pled with the particularity required by Rule 9(b).

### a.  Blockbuster's "Flooding" Allegation Fails

Blockbuster first points to Netflix's submission of "over 100 references" of prior art in connection with the '381 patent as supposed evidence of fraud.  But Blockbuster never alleges (let alone with any particularity) how submitting these references could constitute fraud on the PTO.  There is no magic "rule of 100" when it comes to prior art: many patents issue with far more cited references.[3]  The applicant's duty is to submit all prior art that the applicant considers to be potentially material to patentability, not to cut off the list at some arbitrary number. *See* MPEP §§ 2001.04-05 (8th ed., 2005).

Indeed, far from pleading fraud with particularity, Blockbuster sets forth no factual basis for concluding that Netflix's disclosures were anything but proper.  Blockbuster does not allege that any particular reference should not have been submitted because it was not material to patentability.  Indeed, to the contrary, Blockbuster alleges that all the cited prior art in fact was material to patentability, and thus properly was disclosed to the PTO.  Answer and Counterclaims ¶ 53 (all prior art allegedly not disclosed in connection with the '450 patent application --which includes all the art cited in connection with the '381 prosecution--"was material to both the '450 and '381 patents.")  Nor does Blockbuster allege that Netflix believed that a particular reference should not have been disclosed, but disclosed it anyway in order to "overwhelm" the PTO.

Even to the extent that Blockbuster had pled that Netflix deliberately "buried" relevant references among irrelevant ones—which Blockbuster has not done—that allegation still would not suffice to make out a claim of *Walker Process* fraud.  The *MedImmune* case is instructive.

---

[3] *See, e.g.,* Systems and Methods for Secure Transaction Management and Electronic Rights Protection, U.S. Patent No. 7,069,451 (issued June 27, 2006) (citing over 1250 references); Lockbox Imaging System, U.S. Patent No. 7,068,832 (issued June 27, 2006) (citing nearly 300 references); Portable Shopping and Order Fulfillment System, U.S. Patent No. 7,040,541 (issued May 9, 2006) (citing over 100 references).

376442.02

1    *See* Exhibit A (*MedImmune, Inc. v. Genentech, Inc.*, 03-CV-02567 (C.D. Cal. Dec. 24, 2003).

2    There, MedImmune alleged that Genentech had buried allegedly anticipatory prior art references

3    "in the voluminous documents that comprised its submission."  *Id.* at *20; see also* U.S. Patent

4    No. 6,331,415 (issued Dec. 18, 2001) (the patent at issue contained over 340 prior art

5    references).  The district court explained that such a "burying" claim could not serve as the

6    predicate for *Walker Process* fraud because "the PTO is presumed to be aware of the references

7    before it, which would include ... the other prior art that was submitted, even if it was buried."

8    *Id.* (*citing American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir.

9    1984).  By definition, MedImmune could not show that the patent would not have issued but for

10   the submission of the "extra" references, and thus could not state a claim.  *Id.*  The Federal

11   Circuit affirmed.  *MedImmune, Inc. v. Genentech, Inc.*, 427 F.3d 958, 967 (Fed. Cir. 2005).

12   Blockbuster simply cannot predicate a *Walker Process* claim on the allegation that Netflix

13   "flooded" the PTO with 100 prior art references.

14              **b.    Blockbuster's Allegations Regarding the Failure to Disclose Prior Art Fail**

15              **(i)    Blockbuster's Allegation that Netflix Failed to Disclose the 100 References in Connection with the '450 Application Fails**

16

17        After accusing Netflix of committing fraud by disclosing around 100 references in

18   connection with the prosecution of the '381 application, Blockbuster turns around and accuses

19   Netflix of committing fraud by **not** disclosing those same references in connection with the '450

20   application.  These allegations of fraud fail for reasons other than their internal inconsistency.

21        First, Blockbuster fails to allege that Netflix even knew about these references at the time

22   that the '450 patent application was pending.  Blockbuster does allege that some of the

23   references predated the issuance of the '450 patent, but whether the references existed, and

24   whether Netflix knew about them, are different questions.

25        Second, Blockbuster does not allege with particularity that, had a particular reference

26   been disclosed to the PTO in connection with the '450 application, the '450 patent would not

27   have issued.  *See Nobelpharma,* 41 F.3d at 1071 ("*Walker Process* claim requires a clear

28   showing of that the patent would not have issued *but for* the misrepresentation or omission.")

7

NETFLIX'S MOTION TO DISMISS OR, ALTERNATIVELY, TO
BIFURCATE AND STAY BLOCKBUSTER'S ANTITRUST COUNTERCLAIMS
Case No. C 06 2361 WHA

1  (emphasis added)  Blockbuster's conclusory assertions that all prior art "was material to both the

2  '450 and '381 patents" and that "Blockbuster is informed and believes that . . .  the Patent Office

3  justifiably relied on the . . . omissions of material prior art" are simply inadequate under Fed. R.

4  Civ. P. 9(b).  *See, e.g., Chip-Mender, Inc.*, 2006 WL 13058 *6;  *Erie Technological Products,*

5  *Inc. v JFD Electronics Components Corp.*, 198 U.S.P.Q. 179, 185-86 (E.D.N.Y. 1978) (holding

6  that the antitrust claimant had not stated a claim for relief under the antitrust laws where claim

7  failed to specify the nature of the misrepresentation allegedly made nor showed that the patent

8  would not have issued but for the fraud.).

9   **(ii)   Blockbuster's Accusatory Assertions that Netflix Failed to
     Disclose Unspecified Prior Art Are Insufficient**

10

11        Blockbuster alleges that Netflix withheld three general categories of prior art—video

12  rental industry standards; video and film subscription methods; and e-commerce business

13  methods—without further elaboration.  Answer and Counterclaims ¶¶ 44(b)-(d).  These general

14  categories fail to identify any prior art with any specificity, let alone whether any such art was

15  cumulative of art already offered, otherwise already contemplated by the PTO, or whether the

16  PTO would have relied on this prior art to reject Netflix's patent—and thus cannot substantiate

17  the antitrust counterclaims. *See Advanced Cardiovascular Sys. v. Medtronic, Inc.*, 1996 WL

18  467273, at *17 (N.D. Cal. 1996) (defendant's reference to the alleged misconduct as simply a

19  "failure to disclose pertinent material prior art of which [the patent holder] was aware" did not

20  sufficiently identify the particulars of what the patentee failed to disclose).

21   **(iii)   Blockbuster Does Not (And Could Not) Allege that the NCR
      Patents are Invalidating Prior Art**

22        The only pieces of prior art that Blockbuster identifies with any particularity are the

23  "NCR Patents" (NCR is the former National Cash Register Corporation).  *Id.* ¶¶ 44(a), 45-47.

24  The NCR patents have titles such as "Security Aspects of Computer Resource Repositories",

25  "Privacy-Enhanced Database"; and "Method and Apparatus for Forming Subject (Context)

26  Map . . ."[4]  Blockbuster itself notes that the NCR Patents may not "in fact cover online DVD

27

28  ---
    [4] *See* Netflix's Request for Judicial Notice, July 6, 2006, Exhibits A-I.

NETFLIX'S MOTION TO DISMISS OR, ALTERNATIVELY, TO
BIFURCATE AND STAY BLOCKBUSTER'S ANTITRUST COUNTERCLAIMS
Case No. C 06 2361 WHA

376442.02

1   rental services like those operated by Netflix and Blockbuster." *Id.* ¶ 52.  It is thus unsurprising

2   that Blockbuster fails to allege that any of the NCR patents anticipates or renders obvious any

3   claim of the '381 patent.  Blockbuster thus fails to allege that the PTO would have relied on the

4   NCR patents to reject the claims.  *See Nobelpharma*, 141 F.3d at 1071 (*Walker Process* claims

5   require a "clear showing of reliance, i.e. that the patent would not have issued but for the

6   misrepresentation or omission.")

7           Instead of alleging with particularity that the NCR patents invalidate the claims of the

8   '381 patent, Blockbuster simply asserts that the NCR patents must be relevant because NCR at

9   one time asserted these patents against Netflix.  This is apples and oranges.  Whether NCR's

10  patents cover Netflix's operations has nothing to do with whether those patents anticipate or

11  render obvious the claims of Netflix's patents.  Netflix could (hypothetically) get sued for patent

12  infringement by Intel for using (unlicensed) microprocessors, or by Oracle for using (unlicensed)

13  database software.  But so what?  Whether Netflix's operations do or don't infringe someone

14  else's patents simply has nothing to do with whether Netflix committed fraud in failing to

15  disclose those patents to the PTO when prosecuting patent applications covering its own

16  inventions.

17          **(iv)    Blockbuster Does Not Adequately Allege that the**
                       **Nondisclosure of Any Prior Art Was Intentional**

18          In addition to failing to plead that Netflix failed to disclose invalidating prior art, the

19  counterclaims also fail to adequately allege the third prong of *Walker Process* fraud: deceptive

20  intent.  *Nobelpharma*, 141 F.3d at 1070-71 (a finding of *Walker Process* fraud "must be based on

21  independent and clear evidence of deceptive intent.").

22          In analyzing the intent prong of *Walker Process* fraud, the Federal Circuit has observed:

23          "[G]iven the ease with which a relatively routine act of patent prosecution can be
24          portrayed as intended to mislead or deceive, clear and convincing evidence of
            conduct sufficient to support an inference of culpable intent is required . . . .
25          While intent to deceive the PTO may be found as a matter of inference from
            circumstantial evidence, circumstantial evidence cannot indicate merely gross
26          negligence . . . . [C]lear and convincing evidence must prove that an applicant had
            the specific intent to accomplish an act that the applicant ought not to have
27          preformed, viz., misleading or deceiving the PTO.

28

NETFLIX'S MOTION TO DISMISS OR, ALTERNATIVELY, TO
BIFURCATE AND STAY BLOCKBUSTER'S ANTITRUST COUNTERCLAIMS
Case No. C 06 2361 WHA

376442.02

*Unitherm Food Systems, Inc.  v. Swift-Eckrich, Inc.*, 373 F.3d 1341, 1360 (Fed. Cir. 2004) (reversed, in part, on other grounds) (citing *Molins PLC v. Textron*, 48 F.3d 1172, 1180-81 (Fed. Cir. 1995)).

Blockbuster fails to allege any *facts* showing that Netflix failed to disclose any prior art with a deceptive intent.  Blockbuster similarly fails to plead any facts supporting an inference that Netflix believed that the NCR patents invalidated the claims of the '381 patent.

The mere failure to cite a reference will not support a claim for *Walker Process* fraud. *Nobelpharma,* 141 F.3d at 1071; *see also*, *C.R. Bard v. M3 Systems*, 157 F.3d 1340, 1365 (Fed. Cir. 1998) ("[d]eceptive intent is not inferred simply because information was in existence that was not presented to the examiner").  Rather "deceptive intent" requires a showing of a "deliberately planned and carefully executed scheme to defraud."  *Cataphote v. De Soto Chemical Coatings,* 450 F.2d 769, 772 (9th Cir. 1972).

For example, in the *MedImmune* case, MedImmune alleged that Genentech knew about and failed to disclose certain allegedly anticipatory references. *See* Exhibit A.  The district court rejected these allegations as a predicate for a *Walker Process* fraud claim because "omissions cannot be fraudulent absent evidence of fraudulent intent," *id.* at 22.  Thus, the court concluded: "MedImmune cannot base a *Walker Process* claim on the omission of references without alleging independent evidence of deceptive intent.  Even if such allegations . . . were true, they would be insufficient to support a claim of *Walker Process* fraud." *Id.* at 23.  Because Blockbuster has similarly failed to allege any independent evidence of deceptive intent, its counterclaims must be dismissed.

> **2.     Without a Sufficient Allegation of Fraud, Blockbuster's "Sham Litigation" Claim Cannot Survive**

Blockbuster alleges that this patent infringement action is a "sham" because Netflix filed the underlying patent infringement case with "full knowledge of the patent's fraudulent origin, invalidity, and unenforceability." Answer and Counterclaim ¶ 101.  In order to prove that a lawsuit fits within *Noerr's* "sham" exception, an antitrust plaintiff must prove that the suit was "both *objectively* baseless and "*subjectively* motivated by a desire to impose collateral, anti-

10

competitive injury rather than to obtain a justifiable remedy." *See Nobelpharma*, 141 F.3d at 1071 (citing *Professional Real Estate Investors ["PREI"] v. Columbia Pictures, Inc.,* 508 U.S. 49, 60-61 (1993)). A lawsuit is "objectively baseless" if "no reasonable litigant could realistically expect success on the merits." *Id*. (quoting *PREI*, 506 U.S. at 60). In determining whether a litigant meets the second, subjective prong, "the court should focus on whether the baseless lawsuit conceals 'an attempt to interfere *directly* with the business relationships of a competitor, ' through the 'use [of] governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon.'" *Id*. at 1071-72 (quoting *PREI*, 506 U.S. at 61).

Blockbuster's sham litigation claim is entirely derivative of its *Walker Process* claim. Blockbuster cites no basis for asserting that this litigation is a sham apart from its allegation that the Netflix patents are unenforceable by reason of Netflix's alleged fraud on the PTO.[5] Because Netflix has not met it obligation under Rule 9(b) to plead this supposed fraud with particularity, the court must also dismiss Defendant's counterclaim for sham litigation. *See, e.g., Advanced Cardiovascular Sys.,* 1996 WL 467273 *6 (dismissing patent misuse defense and antitrust claim because defendant had failed to provide a sufficient factual basis for alleging that plaintiff knew patent was invalid or unenforceable at the time it filed the action); *Syncsort Inc. v. Sequential Software, Inc.*, 50 F. Supp. 2d 318, 334-5 (D.N.J. 1999) (dismissing counterclaims where antitrust plaintiff did not plead facts revealing defendant acted with an improper or malicious purpose); *In re Warfarin Sodium Antitrust Litig.*, 1998 WL 883469, at *7 (D. Del. 7 Dec. 1998) (granting motion to dismiss where antitrust plaintiff merely alleged "conclusory allegations that defendant's petition lacked evidentiary support [and] offer[ed] no basis for its assertion that defendant initiated [its petition to the court] without any 'realistic expectation of success on the merits'").

**3.    Blockbuster's Second Affirmative Defense of Unenforceability and Third Affirmative Defense of Patent Misuse Must Be Stricken For Failure to Allege Inequitable Conduct with Sufficient Particularity**

Blockbuster alleges in its Second Affirmative Defense that Netflix's patents are

---

[5] The throw-away line attributed to Netflix's CEO could at most be relevant to the subjective portion of the inquiry, but not to whether the lawsuit objectively lacks merit.

1   unenforceable as a result of Netflix's inequitable conduct.  Blockbuster's Third Affirmative

2   Defense alleges patent misuse based upon Netflix's assertion of its patents against Blockbuster.

3   Because these defenses are entirely based upon the same insufficient allegations as the *Walker*

4   *Process* claim, this Court should strike these defenses for the reasons set forth above.

5           **a.**      <u>The "Inequitable Conduct" Defense Cannot Survive</u>

6         Inequitable conduct requires "affirmative misrepresentation of a material fact, failure to

7   disclose material information, or submission of false material information, coupled with an intent

8   to deceive." *Semiconductor Energy Lab. Co., Ltd. v. Samsung Elecs. Co., Ltd.*, 204 F.3d 1368,

9   1373 (Fed. Cir. 2000).  The defense of inequitable conduct is subject to the same heightened

10  pleading requirements of Fed. R. Civ. P. 9(b).  *See PB Farradyne, Inc. v. Peterson*,  2006 WL

11  132182, at *4 (N.D. Cal. Jan. 17, 2006) (citing *Ferguson Beauregard/Logic Controls v. Mega*

12  *Systems, LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003)).  Just as with *Walker Process* fraud,

13  materiality and intent to deceive must be specifically pleaded. *See Semiconductor Energy Lab.*

14  *Co., Ltd.*, 204 F.3d at 1373.

15        In *ASM America, Inc. v. Genus, Inc.*, No. 01-2190 EDL, 2002 WL 24444, at *6 (N.D.

16  Cal. Jan. 9, 2002), the defendant levied strikingly similar allegations: "inventors . . . were aware

17  of prior art that was material . . . , including without limitation, an article entitled "Atomic layer

18  epitaxy of Si using atomic H," . . .  but withheld this prior art from the U.S. Patent and

19  Trademark Office, materially misrepresenting the state of the art, with an intent to deceive that

20  Office.  *Id.* at *3.  In striking the defense, the court held that the defendant's reference to general

21  prior art lacked specificity, particularly because the reference to prior art was prefaced with the

22  phrase "including, without limitation." *Id*. at *4.  The court  demanded defendants "provide

23  greater specificity about [plaintiff's] failure to comply with the requirements of applicable

24  sections of the patent regulations and [plaintiff's] intent to mislead the PTO thereby." *Id*.  See

25  also *Advanced Cardiovascular Sys. v. Medtronic, Inc.*, 1996 WL 467273, at *6 (N.D. Cal. July

26  24, 1996).

27        Here, as in *ASM*, Blockbuster prefaces its listing of the NCR patents by noting "such

28  prior art included some or all of the following," and blindly refers to the "NCR Patents *and all*

12

1   *the other prior art* Netflix . . . knew about and failed to disclose to the Patent Office" without

2   identifying what that prior art is.  Moreover, as set forth above, Blockbuster has also failed to

3   allege facts demonstrating the materiality of the patents it does identify, as well as to plead facts

4   from which one could infer Netflix's intent to deceive.  Blockbuster's "inequitable conduct"

5   defense must be stricken.

6               **b.        The "Patent Misuse" Defense Fails**

7          Blockbuster's one-sentence patent misuse defense fails to identify any factual allegations

8   substantiating it, instead incorporating the pleading in its entirety.  Answer and Counterclaims

9   ¶ 70.  Netflix is unable to discern upon what grounds Blockbuster asserts the defense, and can

10  only speculate that Blockbuster alleges misuse in connection with its "sham litigation" theory.

11         As a general rule, a patent holder cannot be deemed guilty of misuse for seeking to

12  enforce its rights against patent infringement.  *See* 35 U.S.C. § 271(d)(3); *Advanced*

13  *Cardiovascular Sys.* 1996 WL 467273, at *6.  Interpreting patent misuse in the enforcement

14  context, the Federal Circuit has treated the defense in the same way it treats similar antitrust

15  claims, requiring that the underlying patent suit be objectively baseless and improperly

16  motivated.  *See Glaverbel S.A. v. Northlake Marketing & Supply, Inc.*, 45 F.3d 1550, 1558 (Fed.

17  Cir. 1995) (enforcement of patent rights "does not of itself constitute violation of the anti-trust

18  laws or patent misuse; there must be bad faith and improper purpose in bringing the suit, in

19  implementation of an illegal restraint of trade); *Eastman Kodak v. Goodyear Tire & Rubber*, 114

20  F.3d 1547, 1558 (Fed. Cir. 1997) ("acquisition and enforcement of a patent do not in themselves

21  constitute patent misuse").

22         Thus, for the same reasons that Blockbuster's "sham litigation" pleading was deficient,

23  its patent misuse defense must be stricken.  *See Advanced Cardiovascular Sys.,* 1996 WL

24  467273, at *6 (striking misuse defense grounded entirely on allegation of "sham litigation"

25  where defendant had failed to plead adequate basis for "sham litigation").

26

27

28

NETFLIX'S MOTION TO DISMISS OR, ALTERNATIVELY, TO
BIFURCATE AND STAY BLOCKBUSTER'S ANTITRUST COUNTERCLAIMS
Case No. C 06 2361 WHA

376442.02

**B.**    **IN THE ALTERNATIVE, THIS COURT SHOULD BIFURCATE AND STAY DEFENDANT'S ANTITRUST CLAIMS**

If the antitrust issues raised in Blockbuster's counterclaim merit any attention at all, they should be tried separately and discovery into those claims should be stayed.

### 1.    Bifurcation is Necessary to Effectuate Netflix's Constitutionally Protected Interests

Netflix has a First Amendment right to petition the PTO for a patent and to seek enforcement of its intellectual property rights through the courts. The *Noerr-Pennington* doctrine, first articulated in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965), provides antitrust immunity for individuals "petitioning" government, whether through lobbying, administrative processes, patent application, or litigation. As stated in *Noerr* itself, "the Sherman Act does not prohibit ... persons from associating together in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly." *Id.* at 136; *see also Professional Real Estate Investors v. Columbia Pictures Industries, Inc.,* 508 U.S. 49, 56 (1993) ("*PREI*") (petitioning courts). Thus, under the *Noerr-Pennington* doctrine, Netflix is categorically immune from Blockbuster's antitrust claims unless Blockbuster can show that Netflix's litigation is itself a sham. See PREI, 508 U.S. at 60.

Courts have made clear that the two steps of the *Noerr-Pennington* inquiry are to be taken in order, first determining whether the suit is objectively baseless before considering subjective intent. *Id.* ("Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation.") And only if both objective baselessness and improper motivation are proven may the court proceed to consider the merits of the antitrust claim. This step-by-step analysis is necessary to effectuate the defendant's constitutional rights. *See* 1 Herbert Hovenkamp et al., IP and Antitrust § 11.3b6(C), at 11-32 (2003 Supplement) ("*Noerr* immunity issues must be resolved before the substantive merits of the antitrust claim can be reached."). Determining whether Netflix's suit is objectively baseless will require this Court to analyze the underlying patent issues. Thus, bifurcating the claims to allow initial consideration of

14

376442.02

1   the patent claims makes sense. *Accord Hydranautics v. FilmTec*, 70 F.3d 533 (9th Cir. 1995);

2   *FilmTec v. Hydranautics,* 67 F.3d 931 (Fed. Cir. 1995); *Liberty Lake Investments v. Magnuson,*

3   12 F.3d 155 (9th Cir. 1993).[6]

4   　　This bifurcation should be accompanied by a stay of discovery:  to permit discovery and

5   litigation of the merits of an antitrust claim to proceed before objective baselessness has been

6   shown would render the *Noerr-Pennington* doctrine a mere defense, not an immunity from suit.

7   And, as one treatise has concluded, "it should be clear that the overwhelming majority of

8   intellectual property lawsuits are immune from antitrust scrutiny under the objective prong."  1

9   Herbert Hovenkamp et al., *IP and Antitrust* § 11.3b2, at 11-20 (2003 Supplement); *see also id*. at

10  11-23-24 (finding that 79 cases as of 2000 had rejected such claims as a matter of law, and no

11  case had found antitrust liability since *PREI*).  In *PREI,* the court refused to permit discovery into

12  improper motivation, much less the underlying merits of the antitrust claim, unless the antitrust

13  plaintiff could first prove objective baselessness.  *PREI,* 508 U.S. at 65.  A number of district

14  courts have followed suit.  *See Scioto County Regional Water Dist. v. Scioto Water*, 916 F. Supp.

15  692 (S.D. Ohio 1995); *Music Center v. Prestini Musical Instruments Group*, 873 F. Supp. 543

16  (S.D.N.Y. 1995);[7] *accord Hovenkamp et al*., supra, at 11-32 ("It makes sense to defer discovery

17  in those cases in which objective baselessness can likely be determined early in the litigation.

18  Further, if the court agrees to bifurcate the case, it may make sense to defer all antitrust

19  discovery until after the infringement dispute is resolved.").

20  　　Because Blockbuster's antitrust counterclaims implicate Netflix's constitutional right to

21  petition the government, this court should bifurcate the antitrust issues and stay discovery on

22  those counterclaims until the question of Netflix's constitutional rights is resolved.

23

---

24  [6]  Numerous district courts have bifurcated such claims.  See, e.g., *Ecrix Corp. v. Exabyte Corp.*,
25  191 F.R.D. 611, 613 (D. Colo. 2000); *Dentsply Int'l v. New Technology Co.*, 1996 WL 756766
     (D. Del. 1996); *Implant Innovations, Inc v. Nobelpharma AB*, 1996 WL 568791 (N.D. Ill. 1996);
26  *Scioto County Regional Water Dist. v. Scioto Water Inc.,* 916 F. Supp. 692 (S.D. Ohio 1995);
     *Computer Assoc. Int'l v. American Fundware*, 831 F. Supp. 1516 (D. Colo. 1993).

27  [7]  One district court has permitted discovery before ruling on objective baselessness, but only
     into improper motivation, not into the myriad issues that must be decided in the substantive
28  antitrust claim.  *SNK Corp. of Am. v. Atlus Dream Ent. Co.*, 188 F.R.D. 566 (N.D. Cal. 1999).

2.    **Bifurcation And A Stay Of Discovery On Antitrust Claims Will Minimize The Cost And Burden On The Parties And Third Parties And Will Also Promote Efficiency**

Alternatively, whether or not Netflix is constitutionally entitled to bifurcation and a stay of discovery, this Court should grant Netflix's motion to bifurcate in the exercise of its discretion and in the interests of judicial economy.

a.    **This Court Has Broad Discretion To Order Bifurcation And A Stay Of Discovery**

This Court has broad discretion to bifurcate this case and stay discovery and proceedings regarding Blockbuster's antitrust claims. This power to bifurcate is rooted in Federal Rule of Civil Procedure 42:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim . . .

Fed. R. Civ. P. 42(b). Rule 42 has consistently been applied in recognition of the district court's broad discretion to order bifurcation. *See, e.g., In re Benedictin Litig.*, 857 F.2d 290 (6th Cir. 1988), *cert. denied*, 488 U.S. 1006, 109 S. Ct. 788, 102 L. Ed. 2d 779 ("Rule 42(b) is sweeping in its terms and allows the courts, in its discretion, to grant a separate trial of any kind of issue in any kind of case."); *U.S. v. 1,071.08 Acres of Land*, 564 F.2d 1350, 1351 (9th Cir. 1977) ("the district court had broad discretion to order separate trials"); *Slaven v. BP America, Inc.*, 190 F.R.D. 649, 658 (C.D. Cal. 2000) ("The decision to bifurcate a trial rests within the sound discretion of the trial court.").

The "principal goal of Rule 42(b) is efficient judicial administration." *Stoddard v. Ling-Temco-Vought, Inc.*, 513 F. Supp. 314, 327 (C.D. Cal. 1980). Courts managing cases with both patent and antitrust issues, as here, have described bifurcation of these claims as "standard practice." *See In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986) (describing the "now-standard practice of separating for trial patent issues and those raised in an antitrust counterclaim").[8]

---

[8] In *In re Innotron*, the Federal Circuit found that bifurcation of patent and antitrust claims is often appropriate because: (1) Economy is served because issues of patent validity and

16

NETFLIX'S MOTION TO DISMISS OR, ALTERNATIVELY, TO
BIFURCATE AND STAY BLOCKBUSTER'S ANTITRUST COUNTERCLAIMS
Case No. C 06 2361 WHA

1    The power to bifurcate claims under Rule 42(b) includes the power to stay pretrial

2    proceedings and discovery in order to effectuate the bifurcation.  *See ASM America, Inc. v.*

3    *Genus, Inc.*, No. 01-2190 EDL, 2002 WL 24444, at *6 (N.D. Cal. Jan. 9, 2002) (bifurcating

4    patent claims and staying antitrust claims and related discovery).  The power to bifurcate under

5    Rule 42(b) is reinforced by this Court's inherent equitable powers to control and manage the

6    cases on its docket to meet the needs of judicial economy and efficiency. *See, e.g., Landis v.*

7    *North American Co.*, 299 U.S. 248, 254-55 (1936) ("[T]he power to stay proceedings is

8    incidental to the power inherent in every court to control the disposition of the causes on its

9    docket with economy of time and effort for itself, for counsel, and for litigants.").

**b.    Bifurcation Will Allow For The Early Determination Of Issues That May Dispose Of The Antitrust Claims**

12    Bifurcation will allow the Court to make factual determinations relating to Netflix's

13    patent claims that may resolve issues relevant to the antitrust claims.  Rule 42(b) gives this Court

14    broad discretion to "bifurcate a trial to permit deferral of costly and possibly unnecessary

15    proceedings pending resolution of potentially dispositive preliminary issues." *Jinro Am*, 266

16    F.3d at 998 (finding bifurcation "was a reasonable way to promote clarity and judicial economy"

17    because resolution of one issue "informed the resolution of the other claims").  Courts have

18    recognized that cases involving antitrust claims are particularly appropriate for bifurcation

19    because antitrust claims often involve massive discovery and can be narrowed by addressing

20    them following the resolution of other claims in the case.  *See Pharmacia, AB v. Hybritech, Inc.*,

21    224 U.S.P.Q. (BNA) 975 (S.D. Cal. 1984) (staying antitrust claims achieved an "advantageous

22    result" because of "the extensive and protracted discovery inherent in trial of the antitrust

23    issues"); s*ee also Manual for Complex Litigation*, Third § 33.62, at 461 (2001) ("Discovery and

25    affirmative defenses will be established and will not need to be retried in a subsequent
antitrust trial; (2) Convenience of all is served by trying less complex patent issues first;
26    (3) Judicial expedience results because patent issues will be ready for trial substantially
earlier than antitrust issues; and (4) Prejudice and confusion can be avoided by trying patent
27    issues first without injecting different proof and witnesses related only to antitrust
counterclaims.  *In re Innotron*, 800 F.2d at 1085.

28

17

1  trial with respect to claims of unfair competition and antitrust counterclaims frequently are

2  deferred until resolution of the patent issues, at which time these claims are often resolved by

3  voluntary dismissal or settlement.").

4      Here, Blockbuster's antitrust counterclaims all rest on the allegation that Netflix

5  committed fraud on the PTO.  A Netflix victory with respect to the patent validity issues would

6  resolve the antitrust counterclaims as well.  In *ASM America*, for example, the Northern District

7  bifurcated the patent and antitrust claims because the antitrust claims were based on allegations

8  of sham litigation and fraudulent procurement and thus would be simplified if the patents were

9  found valid.  *See ASM America*, 2002 WL 24444, *6 (N.D. Cal. Jan. 9, 2002) (stay of antitrust

10  claims "would promote an efficient resolution" of "patent invalidity issues" and "substantially

11  narrow or eliminate antitrust claims"); *see also Hunter Douglas, Inc. v. Comfortex Corp.*, 44 F.

12  Supp. 2d 145, 151-52 (N.D.N.Y. 1999) (explaining benefits of a stay to determine patent validity

13  because *Noerr* can provide immunity on a sham litigation antitrust claim).  Given the enormous

14  delay and expense traditionally associated with antitrust litigation, it makes sense to delay

15  litigation of the antitrust claims where, as here, they will likely be resolved on immunity grounds

16  without the need for any inquiry into the antitrust merits.  *Accord Pharmacia*, 224 U.S.P.Q. at

17  975 ("Thus trial of most of the antitrust counterclaims may be obviated.  In view of the extensive

18  and protracted discovery inherent in trial of the antitrust issues, this is a particularly

19  advantageous result.")

20      **c.    <u>Bifurcation Will Simplify the Case, Avoid Confusion, and Minimize</u>
       <u>Cost And the Burden of Antitrust Discovery</u>**

21

22      Antitrust counterclaims involve a host of complex issues that are not raised in the

23  underlying suit for patent infringement—the definition of the relevant market, determination of

24  market shares, proof of specific intent, anticompetitive conduct, dangerous probability of

25  achieving monopoly power, causal antitrust injury, etc.  Patent cases are complex enough

26  standing alone; interjecting the antitrust issues invites jury confusion and prejudice.  *See*

27  *Components, Inc. v. Western Electric Co.*, 318 F. Supp. 959, 966-67 (D. Me. 1970) (bifurcating

28  the trial and staying discovery on antitrust counterclaims).  Furthermore, lengthy and expensive

18

1    discovery proceedings are inherent in any antitrust case.  *See ASM America,* 2002 WL 24444, at

2    *6 (granted bifurcation and a stay of antitrust claims, finding that it would likely "simplify the

3    case, avoid confusion, and reduce the burden and costs imposed on the Court, the attorneys, and

4    the parties by deferring the burdensome and expensive discovery that would necessarily arise

5    from litigation of the antitrust claims, and possibly avoiding it altogether."); *Carlisle Corp. v.*

6    *Hayes*, 635 F. Supp. 962, 967 (S.D. Cal. 1986) (separate trial of antitrust counterclaims in patent

7    infringement suit is particularly advantageous in view of extensive and protracted discovery

8    inherent in trial of antitrust issues).

9         Blockbuster's antitrust counterclaims will require extensive inquiry into various

10   entertainment-related markets (including online DVD rental), whether Netflix has monopoly

11   power in those markets, whether Netflix is guilty of anticompetitive conduct, whether

12   Blockbuster has suffered causal antitrust injury, and so on.  Protracted and costly discovery,

13   involving not only the parties but also third party suppliers of movies and consumers, will be

14   required, as well as extensive expert discovery.  Thus, separation of these issues for trial and

15   stayed discovery will further the interests of judicial economy and help to avoid prejudice.

16              **d.     There Will Be No Prejudice To Blockbuster, And Bifurcation Will
                         Lead To A Just, Final Determination Of Litigation**

17

18         Finally, this Court should grant bifurcation of the patent and antitrust claims because

19   there will be no prejudice to Blockbuster.  In a case of this potential magnitude, bifurcation can

20   ultimately help streamline the relevant issues and reduce the overall size and burden to all

21   parties.  *See, e.g., ASM America*, 2002 WL 24444, at *7 ("a stay at this time will not necessarily

22   delay the ultimate determination of the antitrust claims significantly longer than no stay at all,

23   because of the added complexity of proceeding on a variety of fronts simultaneously.").

24         Bifurcation will also serve the ends of promoting a just, final determination of this

25   litigation because it will insure that Netflix will have a fair chance to defend the validity of the

26   '450 and '381 Patents without the distraction and prejudice that could be engendered by

27   Blockbuster's antitrust allegations.  *See Ecrix Corp. v. Exabyte Corp.*, 191 F.R.D. 611, 613-14

28   (D. Colo. 2000) (granting bifurcation to prevent the use of antitrust and unfair competition

19

NETFLIX'S MOTION TO DISMISS OR, ALTERNATIVELY, TO
BIFURCATE AND STAY BLOCKBUSTER'S ANTITRUST COUNTERCLAIMS
Case No. C 06 2361 WHA

claims as an "expensive litigation sword" to dissuade patent owner from trying to enforce its

patent rights).

### III.    <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff's request that the Court dismiss with prejudice

Defendant's First and Second Counterclaims in their entirety, or in the alternative, bifurcate and

stay discovery and proceedings on the First and Second Counterclaims.


Dated:  July 6, 2006                                           KEKER & VAN NEST, LLP



                                          By:  /s/ Daralyn J. Durie
                                               DARALYN J. DURIE
                                               Attorneys for Plaintiff
                                               NETFLIX, INC.

NETFLIX'S MOTION TO DISMISS OR, ALTERNATIVELY, TO
BIFURCATE AND STAY BLOCKBUSTER'S ANTITRUST COUNTERCLAIMS
Case No. C 06 2361 WHA

376442.02