1   ALSCHULER GROSSMAN STEIN & KAHAN LLP
    Marshall B. Grossman (No. 35958)
2   William J. O'Brien (No. 99526)
    Tony D. Chen (No. 176635)
3   Dominique N. Thomas (No. 231464)
    The Water Garden
4   1620 26th Street
    Fourth Floor, North Tower
5   Santa Monica, CA 90404-4060
    Telephone: 310-907-1000
6   Facsimile: 310-907-2000
    Email: mgrossman@agsk.com
7          wobrien@agsk.com
           tchen@agsk.com
8          dthomas@agsk.com

9   Attorneys for Defendant and Counterclaimant,
    Blockbuster Inc.

10
                    UNITED STATES DISTRICT COURT
11
                   NORTHERN DISTRICT OF CALIFORNIA
12

13
    NETFLIX, INC., a Delaware corporation,        CASE NO. C 06 2361 WHA
14
                    Plaintiff,                     **BLOCKBUSTER'S OPPOSITION TO
15                                                 NETFLIX'S MOTION TO DISMISS
            vs.                                    OR, ALTERNATIVELY, TO
16                                                 BIFURCATE AND STAY ANTITRUST
    BLOCKBUSTER INC., a Delaware corporation,      COUNTERCLAIMS AND TO STRIKE
17  DOES 1-50,                                     AFFIRMATIVE DEFENSES OF
                                                   UNENFORCEABILITY AND PATENT
18                  Defendants.                    MISUSE**

19                                                 Hearing Date:    August 17, 2006
                                                   Time:            8:00 a.m.
20                                                 Judge:           William Alsup

21                                                 Complaint Filed: April 4, 2006
    AND RELATED COUNTER ACTION.
22

23

24

25

26

27

28

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP
                                          BLOCKBUSTER'S OPPOSITION TO NETFLIX'S
                                                        MOTION TO DISMISS
                                                          C 06 2361 WHA

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

I.    ISSUES TO BE DECIDED ................................................................................. 1

II.   INTRODUCTION ............................................................................................... 1

III.  BLOCKBUSTER ADEQUATELY PLEADS ANTITRUST COUNTERCLAIMS
      ON EACH OF TWO GROUNDS ....................................................................... 3

      A.    Blockbuster Sufficiently Alleges Fraudulent Patenting Under Walker
            Process. ..................................................................................................... 3

            1.    Blockbuster Specifically Alleges Fraudulent Withholding of Prior
                  Art ................................................................................................... 4

            2.    Blockbuster Sufficiently Alleges Deceptive Intent ........................ 6

            3.    Blockbuster Sufficiently Alleges Materiality ................................. 9

                  a.    Blockbuster Pleads the Materiality Required by Walker
                        Process ................................................................................. 9

                  b.    Netflix's Denial of the Materiality of the NCR Patents Is
                        Both Procedurally Improper and Factually Inaccurate ........ 10

      B.    Blockbuster States a Claim for "Sham Litigation." ................................. 13

IV.   BLOCKBUSTER ADEQUATELY ALLEGES INEQUITABLE CONDUCT ............... 14

V.    BLOCKBUSTER SUFFICIENTLY PLEADS PATENT MISUSE ........................... 16

VI.   IF THE COURT FINDS ANY INADEQUACY IN BLOCKBUSTER'S
      PLEADING, LEAVE TO AMEND IS REQUESTED ............................................ 16

VII.  BIFURCATION WOULD BE HIGHLY INAPPROPRIATE ................................... 16

      A.    Efficiency and the Interests of Justice Will Be Advanced by *Denying*
            Bifurcation ................................................................................................ 16

            1.    Because of the Extensive Overlap and Interrelationships Between
                  the Patent and Antitrust Issues in this Case, Bifurcation Would Be
                  Highly *In*efficient as Well as Unjust ............................................. 17

            2.    Separate Trials of Such "Interwoven" Issues Would Impair the
                  Right to Trial by Jury ...................................................................... 19

            3.    Netflix's Rote Arguments for Bifurcation Fail to Reach the Merits
                  of this Case ...................................................................................... 21

                  a.    Bifurcation should depend on the details of each case – not
                        generalities .......................................................................... 21

                  b.    Netflix has not shown that bifurcation is needed to prevent
                        jury confusion ..................................................................... 22

                  c.    Netflix has not shown that bifurcation will promote judicial
                        economy .............................................................................. 22

      B.    A Decision to Bifurcate Would Be Premature ......................................... 23

      C.    Regardless of How the Court Rules on Bifurcation, It Should Not Stay
            Discovery on Blockbuster's Antitrust Claims ......................................... 24

VIII. CONCLUSION ................................................................................................. 25

i

1

**TABLE OF AUTHORITIES**

2

Page

3

**FEDERAL CASES**

4

*ACS Communications, Inc. v. Plantronics, Inc.,*
No. Civ. 95-20294, 1995 WL 743726 (N.D. Cal. Dec. 1, 1995) ...................................... 17, 24

5

*Advanced Cardiovascular Sys. v. Medtronic Inc.,*
No. C-96-0942, 1996 WL 467273 (N.D. Cal., July 24, 1996) ............................................. 5, 15

6

*Agere Sys. Guardian Corp. v. Proxim, Inc.,*
190 F. Supp. 2d 726 (D. Del. 2002) .................................................................................. 15

7

*ASM America v. Genus, Inc.,*
No. 01-2190, 2002 WL 24444 (N.D. Cal. Jan. 9, 2002) ........................................................ 15

8

*Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.,*
394 F.3d 1348 (Fed. Cir. 2005) ............................................................................................. 8

9

*C.R. Bard, Inc. v. M3 Systems, Inc.,*
157 F.3d 1340 (Fed. Cir. 1998) ................................................................................... 7, 13, 16

10

11

*Cataphote v. De Soto Chem. Coatings,*
450 F.2d 769 (9th Cir. 1971) ............................................................................................. 7, 8

12

*Chip-Mender, Inc. v. Sherwin-Williams Co.,*
2006 WL 13048 (N.D. Cal. Jan. 3, 2006) ............................................................................ 10

13

*Climax Molybdenum Co. v. Molychem, L.L.C.,*
414 F. Supp. 2d 1007 (D. Colo. 2005) .................................................... 17, 19, 21, 23

14

*Competitive Tech v. Fujitsu,*
286 F.Supp 2d 1118 (N.D. Cal. 2003) .................................................................................. 7

15

16

*DataQuill Ltd. v. Handspring, Inc.,*
No. 01 C 4635, 2001 WL 1183290 (N.D. Ill. Oct. 4, 2001) .......................................... 5, 15

17

*Davis & Cox v. Summa Corp.,*
751 F.2d, 1507 (9th Cir. 1985) ........................................................................................... 17

18

*Ecrix Corp. v. Exabyte Corp.,*
191 F.R.D. 611 (D. Colo. 2000) ................................................................................. 21, 24, 25

19

*Elk Corp. v. GAF Building Materials Corp.,*
168 F.3d 28 (Fed. Cir. 1999) ............................................................................................... 19

20

21

*Eminence Capital, LLC v. Aspeon, Inc.,*
316 F.3d 1048 (9th Cir. 2003) ............................................................................................ 16

22

*Erie Technological Prods., Inc. v. JFD Elecs. Components Corp.,*
198 U.S.P.Q. (BNA) 179 (E.D.N.Y. 1978) .......................................................................... 10

23

*FilmTec v. Hydranautics,*
67 F.3d 931 (Fed. Cir. 1995) ............................................................................................... 21

24

25

*Gasoline Products Co. v. Champlin Refining Co.,*
283 U.S. 494 (1931) ............................................................................................................ 19, 20

26

*Grain Processing Corp. v. American Maize Prods. Co.,*
185 F.3d 1341 (Fed. Cir. 1999) ........................................................................................... 18

27

*Grid Sys. Corp. v. Texas Instruments Inc.,*

28

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

ii

BLOCKBUSTER'S OPPOSITION TO NETFLIX'S
MOTION TO DISMISS
C 06 2361 WHA

**TABLE OF AUTHORITIES**
(continued)

Page

771 F. Supp. 1033 (N.D. Cal. 1991) ........................................................................... 7, 15

*Hydranautics v. FilmTec,*
70 F.3d 533 (9th Cir. 1995)...................................................................................... 21

*In re GlenFed, Inc. Sec. Litig.,*
42 F.3d 1541 (9th Cir. 1994) .................................................................................... 7

*In re Innotron Diagnostics,*
800 F.2d 1077 (Fed. Cir. 1986)............................................................................... 21

*In re Theodor Groz & Sohne,*
No. 92M-338, 1992 WL 188908 (Fed. Cir. (N.Y.), May 18, 1992) ........................ 21

*Intel Corp. v. Via Techs., Inc.,*
No. C 99-03062, 2001 WL 777085 (N.D. Cal. Mar. 20, 2001)..................... 17, 23, 24

*Liberty Lake Investments v. Magnuson,*
12 F.3d 155 (9th Cir. 1993)...................................................................................... 21

*Lis v. Robert Packer Hosp.,*
579 F.2d 819 (3d Cir. 1978)..................................................................................... 21

*Lubrizol Corp. v. Exxon Corp.,*
696 F. Supp. 302 (N.D. Ohio 1988)........................................................................ 10

*Mars Inc. v. JCM American Corp.,*
No. 05-3165, 2006 WL 1704469 (D.N.J. June 14, 2006)................................. 4, 9, 14

*McKesson Info. Solutions, Inc. v. Bridge Med., Inc.,*
No. Civ. SO 22669, 2006 WL 1652518 (E.D. Cal. June 13, 2006)........................... 8

*McKesson Info. Solutions, LLC v. The Trizetto Group, Inc.,*
No. Civ. 04-1258, 2005 WL 914776 (D. Del. Apr. 20, 2005) ................................. 4

*MedImmune, Inc. v. Genentech, Inc.,*
427 F.3d 958 (Fed. Cir. 2005)........................................................................ 7, 9, 14

*MedImmune, Inc. v. Centocor,*
271 F. Supp. 2d 762 (D. Md. 2003) .................................................................... 9, 14

*Merck & Co., Inc. v. Danbury Pharmacal, Inc.,*
873 F.2d 1418 (Fed. Cir. 1989)................................................................................ 8

*Molins PLC v. Textron,*
48 F.3d 1172 (Fed. Cir. 1995).......................................................................... 7, 14

*Morton Grove Pharm., Inc. v. Par Pharm. Cos., Inc.,*
No. 04C 7007, 2006 WL 850873 (N.D. Ill. Mar. 28, 2006) ................................... 7

*Neubronner v. Milken,*
6 F.3d 666 (9th Cir. 1993)....................................................................................... 4

*Nobelpharma AB v. Implant Innovations,*
141 F.3d 1059 (Fed. Cir. 1998)........................................................... 3, 4, 5, 6, 7, 13

*Nortel Networks Ltd. v. Kyocera Wireless Corp.,*
No. CIV.A.3:02-CV-0032-D, 2002 WL 31114077 (N.D. Tex. Sep. 20, 2002) ....... 15

*Overend Techs., LLC v. Invista S.À.R.L.,*
431 F. Supp. 2d 925 (E.D. Wis. 2006)...................................................................... 5

iii

**TABLE OF AUTHORITIES**
(continued)

Page

*Papst Motoren GMbH & Co. v. Kanematsu-Goshu (U.S.A.) Inc.,*
    629 F. Supp. 864 (S.D.N.Y. 1986) ................................................................. 9

*Professional Real Estate Investors v. Columbia Pictures Industries, Inc.,*
    508 U.S. 49 (1993) ......................................................................... 1, 13

*Ronconi v. Larkin,*
    253 F.3d 423 (9th Cir. 2001) ......................................................................... 7

*Semiconductor Energy Lab. Co., Ltd. v. Samsung Elec. Co., Ltd.,*
    204 F.3d 1368 (Fed. Cir. 2000) ............................................................. 14, 15

*SNK Corp. of Am. v. Atlus Dream Entm't Co.,*
    188 F.R.D. 566 (N.D. Cal. 1999) ................................................................ 24

*Synopsys, Inc. v. Magma Design Automation,*
    No. CIVA 05-701, 2006 WL 1452803 (D. Del. 2006) ............................. 17, 21, 22

*Tesseron, Ltd. v. GMC Software,*
    No. 1:04CV2182, 2006 WL 840365 (N.D. Ohio Mar. 30, 2006) ...................... 4, 10

*TruePosition, Inc. v. Allen Telecom, Inc.,*
    No. C.A. 01-823, 2003 WL 151227 (D. Del. Jan. 21, 2003) .............................. 10

*United Air Lines, Inc. v. Wiener,*
    286 F.2d 302 (9th Cir. 1961) ....................................................................... 20

*Unitherm Food Sys. v. Swift-Eckrich, Inc.,*
    375 F.3d 1341 (Fed. Cir. 2004) ..................................................................... 7

*Vess v. Ciba-Geigy Corp.,*
    317 F.3d 1097 (9th Cir. 2003) ....................................................................... 4

*Videojet Sys. Int'l, Inc. v. Eagle Inks, Inc.,*
    14 F. Supp. 2d 1046 (N.D. Ill. 1998) .............................................................. 4

*Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.,*
    382 U.S. 172 (1965) .................................. 1, 2, 3, 5, 6, 7, 9, 12, 13, 18, 19, 20, 22, 23

*Weatherford Int'l, Inc. v. Casetech Int'l, Inc.,*
    No. CIV. A.H.-03-5383, 2005 WL 1745457 (S.D. Tex., July 25, 2005) .............. 5, 9, 14

*Xilinx, Inc. v. Altera Corp.,*
    33 U.S.P.Q. 2d (BNA) 1149, 1994 WL 782236, (N.D. Cal. Feb. 8, 1994) ............... 15

**FEDERAL STATUTES**

Fed. R. Civ. P. 15(a) ................................................................................. 16

Fed. R. Civ. P. 42(b) ................................................................................. 16

Fed. R. Civ. P. 9 .................................................................................... 2, 7

Fed. R. Civ. P. 9(b) ....................................................... 1, 2, 4, 5, 6, 7, 14, 15

Fed. R. Evid. 801(d)(2) ............................................................................... 14

Sherman Antitrust Act, Section 2, 15 U.S.C. §2 ................................................ 3, 22

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

iv

BLOCKBUSTER'S OPPOSITION TO NETFLIX'S
MOTION TO DISMISS
C 06 2361 WHA

I.      **ISSUES TO BE DECIDED**

      1.      Do Blockbuster's antitrust counterclaims alleging fraudulent patenting adequately plead fraud, deceptive intent, and materiality?

      2.      Do Blockbuster's antitrust counterclaims adequately allege the independent ground of sham litigation?

      3.      Has Blockbuster adequately pleaded a defense of inequitable conduct?

      4.      Has Blockbuster adequately pleaded a defense of patent misuse?

II.     **INTRODUCTION**

Netflix's motion should be denied. Blockbuster has properly pleaded its antitrust counterclaims and its defenses of unenforceability and patent misuse. Additionally, bifurcation of the antitrust counterclaims – or a stay of discovery on them – would lead to duplication, confusion, and delay.

The antitrust counterclaims are well pleaded on each of two independent grounds: fraudulent patenting under *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 173-77 (1965), and sham litigation under *Professional Real Estate Investors v. Columbia Pictures Industries, Inc.,* 508 U.S. 49, 60-62 (1993).

With respect to *Walker Process*, Netflix ignores or mischaracterizes Blockbuster's specific allegations of fraud, while misstating the applicable pleading requirements. Netflix dismisses as "boilerplate" and "conclusory" Blockbuster's specific and highly substantive allegations, which include timelines of Netflix's fraudulent conduct, judicial admissions by Netflix of undisclosed NCR prior art, and the admission by Netflix's own CEO that its asserted '450 patent is a "joke." (Mot. at 2; Answer & Countercl. ¶¶ 16-117.)[1]

The Netflix fraud is alleged with great particularity. Numerous cases hold that identifying fraudulently withheld prior art is sufficient to satisfy Federal Rule of Civil Procedure 9(b) in a *Walker Process* claim. The counterclaims specifically identify nine patents owned by NCR that Netflix knew about but failed to disclose to the Patent Office in obtaining the

---

[1] The antitrust counterclaims include paragraphs 92 through 117 and also incorporate all of the allegations of paragraphs 16 through 91 of the Answer and Counterclaims. (*See id.* ¶¶ 92, 118.)

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

1

BLOCKBUSTER'S OPPOSITION TO NETFLIX'S
MOTION TO DISMISS
C 06 2361 WHA

1   asserted '450 and '381 patents. The counterclaims also provide specificity about the prior-art

2   status of the NCR patents, Netflix's admitted knowledge of them, and about its knowledge that

3   they were asserted to cover the same online DVD rental service that Netflix was engaged in

4   patenting, as well as identifying other prior art that Netflix failed to disclose. (*See* Answer &

5   Countercl. ¶¶ 41, 44-55; *infra* Part III A 1.)

6           Also alleged is Netflix's fraudulent intent. Netflix's argument that intent must be

7   specifically pleaded ignores Rule 9(b)'s express statement that "intent . . . may be averred

8   generally." Even if Rule 9 could be disregarded, there are abundant, particular allegations of

9   Netflix's fraudulent intent. (*See infra* Part III A 2.)

10          Blockbuster has also properly alleged the materiality of the prior art that Netflix

11  fraudulently withheld from the Patent Office. Materiality may be generally alleged. Blockbuster

12  has done so and more, also providing specific allegations of materiality of some of the withheld

13  art. (*See infra* Part III A 3.) What Netflix is really questioning is the materiality of the prior art

14  as a factual matter, not the sufficiency of Blockbuster's pleading. In any event, the NCR patents

15  were highly material, as is explained in Part III A 3 b, *infra*.

16          In attacking Blockbuster's allegations of materiality and intent, Netflix relies

17  heavily on cases that discuss what is needed to ***prove*** antitrust violations and not what is needed

18  to ***plead*** them. Blockbuster is confident that it will prove its allegations when the time comes.

19  For now, it is enough that Blockbuster has adequately pleaded them – which it has.

20          With respect to the second ground for Blockbuster's antitrust counterclaims, sham

21  litigation, Netflix merely asserts – wrongly – that "Blockbuster's sham litigation claim is entirely

22  derivative of its *Walker Process* claim, and thus fails for the same reason." (Mot. at 2.) In fact,

23  sham litigation is distinct from fraudulent patenting and provides an alternative basis for antitrust

24  liability. Blockbuster has alleged each of the two required elements of sham litigation – objective

25  baselessness and improper purpose. (*See infra* Part III B.)

26          The motion to strike Blockbuster's defenses of inequitable conduct and patent

27  misuse echoes Netflix's attack on Blockbuster's *Walker Process* allegations and fails for the same

28  reason. Indeed, the requirements for pleading the defenses are less stringent, so the motion to

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP                                    2              BLOCKBUSTER'S OPPOSITION TO NETFLIX'S
                                                                          MOTION TO DISMISS
                                                                              C 06 2361 WHA

1   strike is ill-founded in any event. (*See infra* Parts IV-V.)

2           Finally, Netflix's alternative motion to bifurcate its patent claims from

3   Blockbuster's antitrust counterclaims (and stay antitrust discovery) should also be denied. Netflix

4   has failed to show that bifurcation would promote efficiency or serve the interests of justice. In

5   fact, it would have the opposite effect. The patent and antitrust issues are so interwoven that

6   bifurcation would multiply proceedings and create a risk of inconsistent results – requiring two

7   different juries to decide interrelated and largely similar issues and requiring that much of the

8   same evidence be presented twice. (*See infra* Part VII A.) Certainly, bifurcation is inappropriate

9   at this early stage of the case. (*See infra* Part VII B.) It would also be inefficient and unjust to

10  stay discovery on antitrust issues while proceeding with closely related discovery on patent

11  issues, thus requiring witnesses to be deposed twice and inviting ongoing disputes about the

12  nebulous boundary between closely related patent and antitrust discovery. (*See infra* Part VII C.)

13  ## III.   BLOCKBUSTER ADEQUATELY PLEADS ANTITRUST COUNTERCLAIMS ON
14         EACH OF TWO GROUNDS.

15          Each antitrust counterclaim asserts two separate types of unlawful conduct by

16  Netflix: fraudulent patenting in violation of *Walker Process* and sham litigation in violation of

17  *Professional Real Estate Investors*. (*See* Answer & Countercl. ¶¶ 93-108, 110-117; *see also id.*

18  ¶¶ 16-92.)

19          ### A.   Blockbuster Sufficiently Alleges Fraudulent Patenting Under *Walker Process*.

20          "[T]he maintenance and enforcement of a patent obtained by fraud on the Patent

21  Office may be the basis of an action under § 2 of the Sherman Act . . . ." *Walker Process*, 382

22  U.S. at 173-77. In each antitrust counterclaim, Blockbuster alleges all the elements required to

23  hold a party liable for fraudulent patenting: (1) knowing and willful misrepresentation of facts to

24  the Patent Office (or fraudulently omitting to disclose them); (2) an intent to deceive;

25  (3) materiality of the misrepresentation or omission, in that the patent would not otherwise have

26  issued; (4) the patentee's awareness of the fraud when bringing suit; and (5) the other standard

27  elements to establish an antitrust violation. *See Nobelpharma AB v. Implant Innovations*, 141

28  F.3d 1059, 1069-70 (Fed. Cir. 1998). (*See* Answer & Countercl. ¶¶ 16-117.)

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

3                    BLOCKBUSTER'S OPPOSITION TO NETFLIX'S
                              MOTION TO DISMISS
                                C 06 2361 WHA

1          **1.     Blockbuster Specifically Alleges Fraudulent Withholding of Prior Art.**

2                  A "fraudulent omission" to disclose known, material prior art supports liability

3  under *Walker Process. Nobelpharma*, 141 F.3d at 1070. Indeed, "[a] fraudulent omission can be

4  just as reprehensible as a fraudulent misrepresentation." *Id.* Allegations of fraud are insufficient

5  only if they fail "to give defendants notice of the particular misconduct which is alleged to

6  constitute the fraud." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993). "A pleading is

7  sufficient under Fed. R. Civ. P. 9(b) if it identifies the circumstances constituting fraud so that the

8  defendant can prepare an adequate answer from the allegations." *Id.* at 671-72 (internal quotation

9  marks omitted). The "circumstances" required to be pleaded with particularity are such things as

10  the time, place, and content of the fraud. *See Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th

11  Cir. 2003).

12                  Netflix claims that "nearly all of Blockbuster's fraud allegations are made on

13  information and belief." (Mot. at 4:18-19.) Netflix is simply wrong. The gravamen of the fraud

14  is set forth in highly specific allegations. (*See, e.g.*, Answer & Countercl. ¶¶ 30-37, 40-42, 44-45,

15  47-52, 96, 98.) Where allegations are made on information and belief, they are backed up with

16  specific facts on which the information and belief are founded. (*See, e.g.*, *id.* ¶ 39; *see also id.* ¶¶

17  30, 37, 44-55, 58, 94, 96, 98.)

18                  These allegations are more than sufficient. *See Videojet Sys. Int'l, Inc. v. Eagle

19  Inks, Inc.*, 14 F. Supp. 2d 1046, 1049 (N.D. Ill. 1998) (allegations made upon information and

20  belief satisfied Rule 9(b) where defendant stated grounds for the suspicion of inequitable conduct,

21  namely the inventor's false representations to the Patent Office). "Pleadings that 'disclose the

22  name of the relevant prior art [fraudulently withheld from the Patent Office] fulfill the

23  requirements of Rule 9(b).'" *McKesson Info. Solutions, LLC v. The Trizetto Group, Inc.*, No.

24  Civ. 04-1258, 2005 WL 914776, at *2 (D. Del. Apr. 20, 2005); *accord Mars Inc. v. JCM

25  American Corp.*, No. 05-3165, 2006 WL 1704469, at *8-9 (D.N.J. June 14, 2006) (holding that

26  alleging the name of the withheld art satisfied Rule 9(b)); *Tesseron, Ltd. v. GMC Software*,

27  No. 1:04CV2182, 2006 WL 840365, at *2 (N.D. Ohio Mar. 30, 2006) (holding that identifying

28  two specific prior-art patents satisfied the heightened pleading requirement). Blockbuster has

                                    4                    BLOCKBUSTER'S OPPOSITION TO NETFLIX'S
                                                         MOTION TO DISMISS
                                                         C 06 2361 WHA

1   provided such a disclosure. As Netflix admits, Blockbuster's pleading specifically identifies the

2   NCR patents as fraudulently withheld prior art. (Answer & Countercl. ¶¶ 44(a), 45, 51; *see* Mot.

3   at 8:22-23.) Blockbuster also quotes judicial admissions *by Netflix* in its case against NCR,

4   which show that "Netflix was well aware of the NCR Patents during the pendency and

5   prosecution of the applications for both the '450 and '381 patents." (*Id.* ¶ 47.) Blockbuster's

6   Answer and Counterclaims detail that that Netflix had even sued NCR for declaratory relief in

7   this very Court – contesting whether the NCR patents covered the very online DVD rental service

8   that Netflix was engaged in patenting – but still failed to tell the Patent Office about the patents.

9   (*Id.* ¶¶ 47-51.)

10          The allegations relating to the NCR patents alone are sufficient to satisfy the

11  requirements of Rule 9(b) and provide ample grounds for rejecting Netflix's erroneous contention

12  that Blockbuster has failed to sufficiently allege fraud. *See Nobelpharma*, 141 F.3d at 1072 n.9

13  ("Because we consider the conduct relating to [failure to disclose] the 1977 Book sufficient to

14  uphold the jury's finding of fraud, we need not discuss [other] allegations . . . ."). In addition,

15  Blockbuster identified other specific prior art supporting liability under *Walker Process*. (*See*

16  Answer & Countercl. ¶ 44c (identifying "TiVo," "HBO," and "Showtime" as prior-art

17  subscription services that Netflix knew about but failed to disclose).) Like the NCR patents, these

18  prior art references are identified by name, satisfying the particularity requirement of Rule 9(b).

19  *See Overend Techs., LLC v. Invista S.ÀR.L.*, 431 F. Supp. 2d 925, 931 (E.D. Wis. 2006) (holding

20  that it was sufficient to allege failure to disclose the over-end takeoff devices of two specified

21  disposable diaper producers); *DataQuill Ltd. v. Handspring, Inc.*, No. 01 C 4635, 2001 WL

22  1183290, at *3 (N.D. Ill. Oct. 4, 2001) (holding that it was sufficient to identify the EO Personal

23  Communicator by AT&T and a Texas Instrument patent); *see also Weatherford Int'l, Inc. v.*

24  *Casetech Int'l, Inc.*, No. CIV. A.H.-03-5383, 2005 WL 1745457, at *2 (S.D. Tex., July 25, 2005)

25  ("Weatherford has sufficient notice of the misconduct alleged so that it can defend against the

26  charge, and in fact, that is what Weatherford begins to do in its Motion to Dismiss.").[2]

---

27  [2] In contrast, *Advanced Cardiovascular Sys. v. Medtronic Inc.*, No. C-96-0942, 1996 WL 467273,
    at *17 (N.D. Cal., July 24, 1996)(*cited in* Mot. at 8:17-20), involved a defendant that merely

28  referred to "pertinent, material prior art" without identifying a single example.

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP                                      5                    BLOCKBUSTER'S OPPOSITION TO NETFLIX'S
                                                                           MOTION TO DISMISS
                                                                               C 06 2361 WHA

1    Even the 100 items of purported prior art that Netflix disclosed for the '381 patent

2    but not the '450 patent, while not individually named by Blockbuster, are surely known to

3    Netflix, and they are readily ascertainable from Netflix's patent files and the public record. (*See*

4    Netflix's Req. for Judicial Notice at 2 (patent file histories are judicially noticeable as public

5    records).) Pending Blockbuster's receipt of requested discovery, only Netflix knows when it

6    learned of each item, but a strong inference of concealment is created by Netflix's failure to

7    disclose *any prior art at all* in obtaining the '450 patent, its failure to disclose prior art that it

8    demonstrably knew about, its own CEO's concession that the '450 patent was a "joke," and

9    Netflix's unexplained failure to assert any claimed patent rights until after it flooded the Patent

10   Office with prior art not disclosed for the '450 patent and thereafter obtained the '381 patent.

11   (*See* Answer & Countercl. ¶¶ 26-28, 39-42, 44-52, 58, 96.)

12                    **2.    Blockbuster Sufficiently Alleges Deceptive Intent.**

13   Rule 9(b) states that "*intent*, knowledge, and other condition of mind of a person

14   *may be averred generally*." Fed. R. Civ. P. 9(b) (emphasis added). Blockbuster expressly alleges

15   "deceptive intent," "knowing and willful fraud," "deceitful conduct," "intentional and fraudulent

16   concealment," a "deceptive scheme," and that Netflix and its involved personnel "intentionally,

17   fraudulently and materially deceived the Patent Office in knowing violation of their legal and

18   ethical duties of candor and good faith . . . ." (Answer & Countercl. ¶¶ 22, 57-58, 93-95, 99.)

19   Blockbuster also goes beyond general averments. It alleges and graphically presents detailed

20   facts supporting Netflix's fraudulent intent. (*See id.* ¶ 58; *see also id.* ¶¶ 30-37, 40-42, 44-55, 58,

21   94, 96, 98.)

22                    Netflix truncates its quotation of Rule 9(b), omitting the portion that contradicts its

23   attack on the sufficiency of these allegations. (*See* Mot. at 4:4-5.) In support of its attempt to

24   rewrite Rule 9(b) , Netflix misleadingly cites decisions that describe the *evidence* necessary to

25   *prove* fraudulent intent at trial or on summary judgment, *not* the requirements for pleading

26   *Walker Process* fraud.[3] Regardless of the requirements for ultimately *proving* fraudulent intent,

---

[3] Netflix cites *Nobelpharma*, 141 F.3d at 1070-71 (on "*evidence*" required for a "*finding of Walker Process* fraud); *Unitherm Food Sys. v. Swift-Eckrich, Inc.*, 375 F.3d 1341, 1360 (Fed. Cir.

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP
                    6                    BLOCKBUSTER'S OPPOSITION TO NETFLIX'S
                                         MOTION TO DISMISS
                                         C 06 2361 WHA

1  the standard at the ***pleading*** stage is governed by Rule 9(b)'s provision that "intent . . . may be

2  averred generally." In *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994), the

3  Ninth Circuit held that, under Rule 9(b), a securities fraud plaintiff could allege "scienter in

4  conclusory fashion, and be in compliance with Rule 9(b)." The same rule applies to allegations

5  of intent in *Walker Process* claims. *Grid Sys. Corp. v. Texas Instruments Inc.*, 771 F. Supp. 1033,

6  1040 (N.D. Cal. 1991); *see MedImmune, Inc. v. Genentech, Inc.*, 427 F.3d 958, 967 (Fed. Cir.

7  2005) ("Like all fraud-based claims, *Walker Process* allegations are subject to the pleading

8  requirements of Fed. R. Civ. P. 9(b)."); *Morton Grove Pharm., Inc. v. Par Pharm. Cos., Inc.*,

9  No. 04C 7007, 2006 WL 850873, at *4, 6 (N.D. Ill. Mar. 28, 2006) (applying Rule 9(b)'s

10  standard for generally alleging deceptive intent to *Walker Process* fraud); *Competitive Tech. v.*

11  *Fujitsu Ltd.*, 286 F. Supp. 2d 1118, 1149 (N.D. Cal. 2003) ("Rule 9(b) provides that intent may be

12  averred generally . . . . [I]t is the 'circumstances' constituting the fraud that must be alleged with

13  specificity . . . rather than the intent requirement.").

14        Netflix argues, in effect, that the Court should ignore Rule 9(b)'s mandate. (*See*

15  Mot. at 10:4-6.) The Ninth Circuit has held otherwise, cautioning that courts "cannot make

16  Rule 9(b) carry more weight than it was meant to bear." *GlenFed*, 42 F.3d at 1554. Departing

17  from Rule 9(b) requires Congressional action, which is why legislation was required to raise the

18  standard for pleading intent in securities fraud cases. *See Ronconi v. Larkin*, 253 F.3d 423, 429

19  n.6 (9th Cir. 2001). To the extent that the District Court in *MedImmune* could be read as

20  suggesting a heightened standard for pleading intent (*see* Mot. at 10:13-21 & Ex. A), its view –

21  which is of course not binding on this Court – is contradicted by both the Federal Rules and the

22  Ninth Circuit, as well as by decisions of numerous other district courts. (*See infra* Part III.)[4]

23  2004)(on "***evidence*** . . . sufficient to support an ***inference*** [***on summary judgment***]"); *Molins*
   *PLC v. Textron*, 48 F.3d 1172, 1180-81 (Fed. Cir. 1995)(on ***evidence sufficient to support a***
24  ***judgment*** after a bench trial); *C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1368-69 (Fed.
   Cir. 1998) (on ***evidence*** sufficient to "infer[]" fraud for a ***jury verdict***); and *Cataphote v. De Soto*
25  *Chem. Coatings*, 450 F.2d 769, 772 (9th Cir. 1971)(on whether ***findings*** in a bench trial were
   "clearly erroneous"). (*See* Mot. at 9:18-10:3 (emphases added).)
26  [4] *MedImmune* involved a "disingenuous[] assertion that what the parties and [the] court were told
   was an inequitable conduct claim has morphed into a fraud claim." (Mot., Ex. A at 20.) The
27  District Court rejected this maneuver on multiple grounds and in the course of doing so, mistook
   *Nobelpharma's* discussion of the "evidence" required for a "finding" of deceptive intent as an
28  indication of the pleading requirement – without recognizing Rule 9's dictate to the contrary.

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP                                        7                    BLOCKBUSTER'S OPPOSITION TO NETFLIX'S
                                                                            MOTION TO DISMISS
                                                                            C 06 2361 WHA

1   What is more, while not required to do so, Blockbuster has indeed detailed a

2   "deliberately planned and carefully executed scheme to defraud." *Cataphote*, 450 F.2d at 772.

3   Blockbuster provides a detailed description of such a "scheme" and supports these allegations

4   with specific facts and a timeline providing powerful allegations of Netflix's fraudulent intent.

5   (Answer & Countercl. ¶ 39; *see, e.g., id.* ¶¶ 30-37, 40-42, 44-45, 47-52, 96, 98.) "Intent need not,

6   and rarely can, be proven by direct evidence." *Merck & Co., Inc. v. Danbury Pharmacal, Inc.*,

7   873 F.2d 1418, 1422 (Fed. Cir. 1989). "[I]n the absence of a credible explanation, intent to

8   deceive is generally inferred from the facts and circumstances surrounding a knowing failure to

9   disclose material information." *Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*, 394

10  F.3d 1348, 1354 (Fed. Cir. 2005). Blockbuster's allegations provide a cogent presentation of

11  Netflix's deceptive intent, including Netflix's failure to submit ***even a single item*** of prior art in

12  obtaining the '450 patent, Netflix's subsequent "flooding" of the Patent Office with purported

13  prior art for the '381 patent application – including at least 100 items that predated the '450 patent

14  application – while still withholding highly material prior art that was being actively asserted

15  against Netflix by NCR at the same time.[5]   (Answer & Countercl. ¶¶ 35-36, 39, 41-42, 44-53,

16  58.) Such conduct is highly probative of Netflix's deceptive intent. *See, e.g., McKesson Info.*

17  *Solutions, Inc. v. Bridge Med., Inc.*, No. Civ. SO 22669, 2006 WL 1652518, *15 (E.D. Cal.

18  June 13, 2006) (patent owner's failure to disclose particular prior art reference tended to show

19  deceptive intent where patent owner's disclosure practices were otherwise "over inclusive" and

20  showed he "ben[t] over backwards to make sure [he] got everything into the case").[6]

21   And there is more. Netflix's own CEO and named inventor told Blockbuster that

---

23  (*See id.* at 20-21.) In affirming the result, the Federal Circuit in no way endorsed a heightened
    standard for pleading fraudulent intent. *See MedImmune*, 427 F.3d at 967.
    [5] Netflix contends that its online DVD rental business practices every claim of the '450 and '381
24  patents. (Preliminary Infringement Contentions at 3 (filed July 13, 2006).) This is the same
    business that NCR accused Netflix of infringing the NCR patents. (Answer & Countercl. ¶¶ 48-
25  50.) Despite this controversy – ongoing during the pendency of ***both*** Netflix patent applications –
    Netflix failed to disclose the NCR patents to the Patent Office at any time. (*Id.*)
26  [6] Netflix argues that flooding the Patent Office with prior art does not in itself constitute fraud.
    (*See* Mot. at 20:16-19 & Ex. A.) Blockbuster has not alleged that it was. But Blockbuster has
27  properly included it among the "conduct demonstrating [Netflix's] deceptive intent . . . ."
    (Answer & Countercl. ¶ 58.) *See McKesson*, 2006 WL 1652518, at *15.

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP                    8          BLOCKBUSTER'S OPPOSITION TO NETFLIX'S
                                               MOTION TO DISMISS
                                                 C 06 2361 WHA

the '450 patent is a "joke." (Answer & Countercl. ¶ 40.) Netflix cannot evade this important

allegation merely by calling it a "throw-away line." (Mot. at 11 n.5.)

### 3.    Blockbuster Sufficiently Alleges Materiality.

a.    Blockbuster Pleads the Materiality Required by *Walker Process*.

In *MedImmune, Inc. v. Centocor, Inc.*, 271 F. Supp. 2d 762, 772 (D. Md. 2003),

the court held that a complaint "sufficiently allege[d] materiality" by stating that "the '715 patent

would not have issued but for these misrepresentations and/or omissions." *Id.* Similarly,

Blockbuster alleges that, if not for its "reli[ance] on the foregoing misrepresentations,

concealment, and omission of material prior art . . . by Netflix's Applicants and

Representatives . . . the [Patent] Office would not otherwise have issued [the '450 and '381]

patents." (Answer & Countercl. ¶ 100; *see also id.* ¶ 53 (alleging that the NCR patents and the

other undisclosed items of prior art were "material to both the '450 and '381 patents").) The

adequacy of such allegations of materiality has been repeatedly upheld. *See Papst Motoren*

*GMbH & Co. v. Kanematsu-Goshu (U.S.A.) Inc.*, 629 F. Supp. 864, 870 (S.D.N.Y. 1986) (*Walker*

*Process* fraud counterclaim stated "the materiality of the nondisclosed information" by alleging

that "the Examiner would not have allowed the '897 patent to issue had the Examiner considered

the Brailsford '637 patent at the time."); *Mars Inc.*, 2006 WL 1704469, at *8-9 (concluding that

it was sufficient to identify prior art and allege that plaintiff was "aware of the materiality of the

named prior art" and "failed to advise the PTO of those material references during the patent

prosecution process"); *Weatherford*, 2005 WL 1745457, at *2 (rejecting a contention that

materiality allegations were "insufficient and conclusory").[7]

Netflix argues that "Blockbuster does not allege with particularity that, had a

particular reference been disclosed to the PTO in connection with the '450 application, the '450

patent would not have issued." (Mot. at 7:25-27.) It is difficult to divine the level of particularity

[7] Netflix grouses that Blockbuster has not alleged "that any of the NCR patents anticipates or renders obvious any claim of the '381 patent," without citing any authority that such an allegation is required (Mot. at 9:2-3.) Contrary to Netflix's assertions, Blockbuster has alleged that, but for the fraud, neither the '450 nor the '381 patent would have issued. (*See* Answer & Countercl. ¶¶ 53, 100; *see* Mot. at 9:3-6.) In doing so, Blockbuster has sufficiently alleged materiality with respect to both patents.

1 desired by Netflix. Apparently nothing short of an affidavit from the Patent Examiner about his

2 thought process would satisfy Netflix, but no such level of pleading is required.[8]

3              b.    Netflix's Denial of the Materiality of the NCR Patents Is Both
                    Procedurally Improper and Factually Inaccurate.

4

5              Netflix departs from the issues now properly before the Court at this stage by

6 arguing that, as a factual matter, the NCR patents are not material to Netflix's claimed inventions.

7 (*See* Mot. at 8.) Materiality is a question of fact, which cannot be resolved on a motion to

8 dismiss. *Tesseron*, 2006 WL 840365, at *2 (declining to determine materiality on a motion to

9 dismiss by comparing the art practiced in the patents in suit, the "face of the allegations" in the

10 counterclaim, and the face of the allegedly withheld patents); *TruePosition, Inc. v. Allen Telecom,*

11 *Inc.*, No. C.A. 01-823, 2003 WL 151227, at *5 (D. Del. Jan. 21, 2003) ("The court declines,

12 however, to weigh the relevance and materiality of the allegedly withheld prior art for purposes of

13 this motion [to dismiss or strike].").

14              In making its argument, Netflix is compelled to depart sharply from the facts as

15 pleaded, as another litigant tried to do in *Lubrizol Corp. v. Exxon Corp.*, 696 F. Supp. 302, 324

16 n.3 (N.D. Ohio 1988). That court rejected a similar effort to obtain factual findings about the

17 content of a patent based merely on judicial notice of the patent. The court stated that, while it

18 had "***no objection to taking judicial notice of the existence of the patent, it is entirely improper***

19 ***that any such notice be taken of the teachings of this patent.***" *Id.* (emphasis added). However,

20 if this Court cares to review the NCR patents submitted by Netflix, it will see that they are replete

21 with disclosures of features that are the same as or similar to features Netflix has claimed in the

22 subject patents. To provide only a few examples:

23              ▪       Netflix's asserted patents are directed to a computer-implemented method and

---

24 [8] Netflix is not assisted by its citations to *Chip-Mender, Inc. v. Sherwin-Williams Co.*, 2006 WL
13048, at *6 (N.D. Cal. Jan. 3, 2006), and *Erie Technological Prods., Inc. v. JFD Elecs.*

25 *Components Corp.*, 198 U.S.P.Q. (BNA) 179, 185-86 (E.D.N.Y. 1978), because neither case
suggests that materiality must be pleaded more than generally. *Chip-Mender* turned on other

26 deficiencies, including a failure to allege that the patent owners were attempting to enforce a
patent that had been obtained by "knowing and willful fraud," *Chip-Mender*, 2006 WL 13058, at

27 *7, an allegation Blockbuster ***has*** made. (*See* Answer & Countercl. ¶¶ 93, 94 (alleging "knowing
and willful fraud").) *Erie* turned on a "wholesale omission" to specify any misrepresentations

28 allegedly made to the Patent Office. *Erie*, 198 U.S.P.Q. at 186.

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP                                    10              BLOCKBUSTER'S OPPOSITION TO NETFLIX'S
                                                                         MOTION TO DISMISS
                                                                            C 06 2361 WHA

1    system for renting items – or sometimes, more specifically, movies – to customers.

2    (*See* Compl. ¶¶ 7, 12 & Exs. A-B.)  Similarly, NCR patents cited in Blockbuster's

3    Answer and Counterclaims disclose a computer-implemented method for

4    distributing items including movies and video tapes to customers.  (*See* Netflix's

5    Req. for Judicial Notice, Exs. A, C, D, G, H (NCR's '526, '403, '791, '855, and

6    '096 patents); *e.g.*, '526 patent, col. 2:55-57, 5:10-15 & Fig. 1B.)[9]

7    ▪    Ninety-five claims of Netflix's '450 patent include "receiving one or more item

8    selection criteria that indicates one or more items that a customer desires to

9    rent . . . ."  (Compl., Ex. B ('450 patent), Claims 1-95.)  NCR's '526, '403, '791,

10   '855, and '096 patents disclose use of item selection criteria – for example, a

11   "display [that] prompts the user to request a search based on three criteria (or

12   less)."  (*E.g.*, '526 patent, col. 10:57-58 & Figs. 9-11.)

13   ▪    All fifty-one claims of Netflix's '381 patent include "providing electronic digital

14   information that causes one or more attributes of movies to be displayed . . . ."

15   (Compl., Ex. A ('381 patent), Claims 1-51.)  The NCR patents disclose just such a

16   process.  Electronic digital information is provided that allows resources (including

17   movies) to be selected.  This causes display of "an associated PROFILE, which

18   contains descriptive information about the RESOURCE."  (*E.g.*, '526 patent,

19   col. 4:42-43.)[10]

20   ▪    All claims of the '381 patent, and several claims of the '450 patent, include an

21   "item rental queue" or "movie rental queue" containing items desired by a

22   customer.  ('381 patent, Claims 1-51; '450 patent, Claims 7, 22, 42, 57, 72, 87.)  In

23   the claims of the '381 patent, the queue is "establish[ed] in electronic digital form,

24   from electronic digital information received over the Internet . . . ."  ('381 patent,

25   Claims 1, 14, 24, 34, 44.)  NCR's '526, '791, '403, '855, and '096 patents all

26   

[9] All nine of the NCR patents disclose computer-implemented methods and systems for online
27   management and provision of resources.  (*See id.*, Exs. A-I.)
[10] "For example, each PROFILE contains a descriptive title."  (*Id.*, col. 4:47.)  Similarly, the
28   movie "attributes" in Netflix's '381 patent "include "titles.""  ('381 patent, col. 8:45-46.)

disclose a process of establishing in electronic digital form, from electronic digital information received over a computer network, a list associated with a customer that indicates his or her interests in searching for resources. (*E.g.*, '526 patent, col. 18:48-49.)

- ■ All independent claims of the '381 patent provide for electronically updating a movie rental queue in response to electronic digital information received from a customer over the Internet. ('381 patent, Claims 1, 14, 24, 34, 44.) This ability to update the list is what makes it a so-called "dynamic queue" as touted by Netflix. (Compl. ¶ 7.) Numerous claims of the '381 patent specifically recite updating the queue by adding or deleting items. ('381 patent, Claims 3, 4, 16, 17, 26, 27, 36, 37, 46, 47.) Similarly, NCR's '526, '799, '403, '855, and '096 patents all disclose updating a customer's interest list via a computer network, including the ability to "add or delete interests in your current listing." (*E.g.*, '526 patent, col. 18:49-51.)

- ■ Claims of both the '450 and '381 patents include the step of delivering items to a customer by mail or via a "delivery agent." ('450 patent, Claims 12, 13, 27, 28, 34, 35, 62, 64, 77, 78; '381 patent, Claims 7, 20, 30, 40, 48.) NCR's '526, '791, '403, '855, and '096 patents disclose delivery of items electronically selected by a customer via an organization's "internal mail service," or a "public, common carrier . . . ." (*E.g.*, '526 patent, col. 15:23-27.)

If we assume a modicum of awareness on the part of Netflix concerning its own business, of the threatening letters it was receiving from NCR, and of its own lawsuit against NCR, it is difficult to find an *innocent* explanation for Netflix's failure to disclose this prior art to the Patent Office in obtaining its patents. Even if it were appropriate for the Court to attempt to evaluate the materiality of the NCR patents as a factual matter at the pleading stage of the case, the result surely would be to bolster Blockbuster's allegations of materiality and Netflix's violation of *Walker Process*.

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

12

BLOCKBUSTER'S OPPOSITION TO NETFLIX'S
MOTION TO DISMISS
C 06 2361 WHA

1

B.    **Blockbuster States a Claim for "Sham Litigation."**

2       The antitrust counterclaims are also supported by a separate ground; sham

3  litigation in violation of *Professional Real Estate Investors*, 508 U.S. at 60-62; *see also C.R.*

4  *Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1368-69 (Fed. Cir. 1998). (*See, e.g.*, Answer &

5  Countercl. ¶¶ 102-04.) Blockbuster properly alleges such sham litigation. Netflix attacks these

6  allegations only indirectly and bases its attack on two fallacious premises. First, Netflix

7  erroneously assumes that Blockbuster must allege fraud to state a claim for sham litigation. (*See*

8  Mot. at 10:22-23.) Second, Netflix relies on its foregoing arguments against Blockbuster's

9  allegations of *Walker Process* fraud – arguments that are wrong for the reasons explained above.

10  (*See supra* Part III A.)

11       "Sham litigation" provides an independent ground for antitrust liability where a

12  patent infringement suit is "both ***objectively*** baseless and ***subjectively*** motivated by a desire to

13  impose collateral, anti-competitive injury rather than to obtain a justifiable remedy."

14  *Nobelpharma*, 141 F.3d at 1071 (emphasis in original). It is sufficient that a suit is "based on a

15  theory of either infringement or validity that is objectively baseless" and that the suit was

16  "subjectively brought in bad faith." *Id.* at 1072. Blockbuster alleges both of these elements,

17  including specifically that "Netflix's infringement lawsuit against Blockbuster . . . is both

18  objectively and subjectively baseless," that Netflix "has acted . . . in bad faith . . . and without

19  belief in the merit of its claims," and that Netflix "is using its . . . sham infringement litigation

20  against Blockbuster to restrain competition by . . . attempting to induce Blockbuster to leave the

21  relevant market, attempting to damage Blockbuster's ability to compete in the relevant market

22  and attempting to deter other potential competitors from entering the market." (Answer &

23  Countercl. ¶¶ 102-103, 106.)

24       Netflix repeatedly mischaracterizes Blockbuster's sham litigation allegations,

25  incorrectly arguing that "Blockbuster's sham litigation claim is entirely derivative of its *Walker*

26  *Process* claim" and that "Blockbuster cites no basis for asserting that this litigation is a sham

27  apart from its allegation that the Netflix patents are unenforceable by reason of Netflix's alleged

28  fraud on the PTO." (Mot. at 11:9-11.) In fact, Blockbuster's allegations of the objective

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

13

BLOCKBUSTER'S OPPOSITION TO NETFLIX'S
MOTION TO DISMISS
C 06 2361 WHA

1    baselessness and subjective bad faith of Netflix's litigation are separate from the fraud allegations

2    and have multiple bases besides Netflix's fraud. (*See id.* ¶¶ 102, 104.) Blockbuster's specific

3    allegations, apart from Netflix's fraud, are that it was objectively baseless for Netflix to sue

4    Blockbuster on patents that were "clear[ly] invalid[]," "blatantly over-broad," and (in the words

5    of Netflix's own CEO) a "joke." (*Id.*) With the sole exception of the allegations of fraud

6    governed by Rule 9(b), all Blockbuster's bases for claiming sham litigation may be alleged

7    generally – although Blockbuster does significantly more than that. (*See, e.g.*, Answer &

8    Countercl. ¶¶ 17-21, 26, 40, 101-07.)[11]

9    ## IV.    BLOCKBUSTER ADEQUATELY ALLEGES INEQUITABLE CONDUCT.

10           "Inequitable conduct includes affirmative misrepresentation of a material fact,

11   failure to disclose material information, or submission of false material information, coupled with

12   an intent to deceive." *Semiconductor Energy Lab. Co., Ltd. v. Samsung Elec. Co., Ltd.*, 204 F.3d

13   1368, 1373 (Fed. Cir. 2000) (*quoting Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir.

14   1995)). Blockbuster properly alleges all the elements of an inequitable conduct defense.

15   Netflix's argument rests on the false premise that materiality and intent to deceive must be

16   pleaded with particularity. As explained above, Rule 9(b) says otherwise. Moreover,

17   Blockbuster *has* alleged compelling facts of fraud, materiality, and intent to deceive. (*See supra*

18   Part II.)

19           This Court and numerous other district courts have rejected arguments like

20   Netflix's. *See Mars Inc.*, 2006 WL 1704469, at *6-9 (surveying cases and rejecting argument that

21   a specific allegation of "intent to deceive" is necessary to satisfy Rule 9's pleading requirements

22   for inequitable conduct defense); *Weatherford*, 2005 WL 1745457, at *2 (finding that claimant

23   met the heightened pleading requirements of Rule 9(b) even though it did not plead "intent to

24   deceive" with particularity); *MedImmune, Inc. v. Centocor, Inc.*, 271 F. Supp. 2d at 772

25

26   ---
     [11] Netflix implicitly concedes that its CEO's admission is evidence of the "subjective" element of
     sham litigation, but spuriously denies that his calling the patent a "joke" is relevant to whether his
27   company's lawsuit asserting that patent "objectively lacks merit." (Mot. at 11:27-28.) Netflix's
     admission goes to prove the truth of the matter asserted in addition to Netflix's subjective belief.
28   (Fed. R. Evid. 801(d)(2).)

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP                    14          BLOCKBUSTER'S OPPOSITION TO NETFLIX'S
                                         MOTION TO DISMISS
                                         C 06 2361 WHA

1  ("Furthermore, Rule 9(b) allows intent to deceive to be averred generally, which MedImmune has

2  done."); *Nortel Networks Ltd. v. Kyocera Wireless Corp.*, No. CIV.A.3:02-CV-0032-D, 2002 WL

3  31114077, at *8 (N.D. Tex. Sep. 20, 2002) (same); *DataQuill*, 2001 WL 1183290, at *3 (same);

4  *Grid Sys.*, 771 F. Supp. at 1040 (same).

5          In support of a different standard, Netflix relies primarily on a Magistrate-Judge

6  opinion, *ASM America v. Genus, Inc.*, No. 01-2190, 2002 WL 24444, at *2, 6 (N.D. Cal. Jan. 9,

7  2002)(*cited in* Mot. at 12:15-24), which overlooked the governing provision of Rule 9(b) and

8  relied on two decisions that said nothing to support the court's conclusion. Indeed, the first of

9  those decisions, *Semiconductor Energy Lab. Co., v. Samsung Elecs. Co.*, 204 F.3d 1368, 1373,

10  (Fed. Cir. 2000), *cited in ASM* at *2, addressed findings after a bench trial and said nothing at all

11  about pleading requirements.[12]  The second decision, *Xilinx, Inc. v. Altera Corp.*, 33 U.S.P.Q. 2d

12  (BNA) 1149, 1994 WL 782236, at *2-3 (N.D. Cal. Feb. 8, 1994) (Whyte, J.), actually contradicts

13  *ASM* (and Netflix), because Judge Whyte did ***not*** require that deceptive intent be alleged with

14  particularity. He merely required that a ***general*** allegation of intent be correctly framed to allege

15  "intent to deceive the PTO," rather than merely "intentionally failing to cite prior art to the PTO."

16  *Id.* at *3. Blockbuster meets this standard by expressly alleging that Netflix's personnel and

17  representatives involved in obtaining the '450 and '381 patents "intended to deceive the Patent

18  Office" – as well as alleging abundant facts to support that allegation. (Answer & Countercl.

19  ¶¶ 57, 68; *see id.* ¶¶ 31-56, 58.)

20          The Court should also reject Netflix's contention that Blockbuster's occasional use

21  of the phrases "included some or all*"* and "NCR Patents and all the other prior art" is improper

22  because the phrases fail to identify the allegedly withheld prior art with particularity. Once

23  Blockbuster has identified sufficient facts – ***as it has*** – "nothing about the particularized pleading

24  requirement acts as a bar to further supplementing those facts, as they are uncovered." *Agere Sys.*

25  *Guardian Corp. v. Proxim, Inc.*, 190 F. Supp. 2d 726, 734 (D. Del. 2002) (rejecting plaintiff's

26  objection to defendant's reference to "other" unspecified items of prior art in its inequitable

---

27  [12] In addition to *ASM* and *Semiconductor Energy*, Netflix inappositely cites *Advanced
   *Cardiovascular*, 1996 WL 467273, at *17, which involved a failure to identify any prior art. (*See*
28  Mot. at 12:6-26; *supra* n.2.)

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP                                    15              BLOCKBUSTER'S OPPOSITION TO NETFLIX'S
                                                                    MOTION TO DISMISS
                                                                    C 06 2361 WHA

1   conduct claim).

2   ## V.    BLOCKBUSTER SUFFICIENTLY PLEADS PATENT MISUSE.

3               Blockbuster properly alleges its patent misuse defense. (*See, e.g.*, Answer &

4   Countercl. ¶¶ 69-70; *see also id.* ¶¶ 17-68.) Netflix's sole argument for striking that defense is

5   the misguided claim that "Blockbuster's 'sham litigation' pleading was deficient." (Mot. at

6   13:22.) Not only are Blockbuster's allegations of sham litigation wholly adequate (*see supra* Part

7   III B), but Netflix's argument is a *non sequitur*, because the requirements for a patent-misuse

8   defense are not the same as those for pleading an antitrust counterclaim based on sham litigation.

9   *See, e.g., C.R. Bard*, 157 F.3d at 1572 (patent misuse is "a broader wrong than antitrust violation"

10  and "may arise when the conditions of antitrust violation are not met."). Netflix's attempt to

11  strike the patent misuse defense should be rejected.

12  ## VI.   IF THE COURT FINDS ANY INADEQUACY IN BLOCKBUSTER'S PLEADING,
13          LEAVE TO AMEND IS REQUESTED.

14              If the Court determines that any of the allegations are deficient, Blockbuster

15  requests leave to amend. Federal Rule of Civil Procedure 15(a) provides that "leave shall be

16  freely given when justice so requires." In the Ninth Circuit, "[t]his policy is 'to be applied with

17  extreme liberality.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)

18  (reversing district court's denial of leave to amend).

19  ## VII.  BIFURCATION WOULD BE HIGHLY *IN*APPROPRIATE.

20      ### A.   Efficiency and the Interests of Justice Will Be Advanced by *Denying*
                 Bifurcation.
21

22              Netflix argues, without authority, that bifurcation and a stay are necessitated by its

23  "First Amendment" rights to apply for patent and pursue infringement claims against

24  Blockbuster. (Mot. at 14:6-7.) Of course, there is no reason why Netflix has any more right than

25  Blockbuster to pursue legal claims. The only Constitutional interest implicated in Netflix's

26  motion is *Blockbuster's* right to a jury trial. (*See infra* Part VII A 2.) The Federal Rules of Civil

27  Procedure make it clear that bifurcation is wholly discretionary so long as the right to right to trial

28  by jury is preserved. Fed. R. Civ. P. 42(b); *see Davis & Cox v. Summa Corp.*, 751 F.2d, 1507,

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP                          16          BLOCKBUSTER'S OPPOSITION TO NETFLIX'S
                                               MOTION TO DISMISS
                                               C 06 2361 WHA

1517 (9th Cir. 1985).

Courts can and should deny bifurcation absent a showing that it would advance interests of economy and justice, or where it is premature to make such a determination. For example, in *Intel Corp. v. Via Techs., Inc.*, No. C 99-03062, 2001 WL 777085 (N.D. Cal. Mar. 20, 2001)(Alsup, J.), this Court, in conjunction with denying a motion to dismiss an antitrust counterclaim in a patent infringement case, also denied a motion to bifurcate the antitrust issues and stay related discovery. Other courts have done the same. *See, e.g., ACS Communications, Inc. v. Plantronics, Inc.*, No. Civ. 95-20294, 1995 WL 743726, at *2 (N.D. Cal. Dec. 1, 1995); *Climax Molybdenum Co. v. Molychem, L.L.C.*, 414 F. Supp. 2d 1007 (D. Colo. 2005); *Synopsys, Inc. v. Magma Design Automation*, No. CIVA 05-701, 2006 WL 1452803, at *5 (D. Del. 2006) (denying bifurcation of counterclaims similar to those of Blockbuster's). The same result is appropriate here.

### 1. Because of the Extensive Overlap and Interrelationships Between the Patent and Antitrust Issues in this Case, Bifurcation Would Be Highly *In*efficient as Well as Unjust.

Bifurcation would result in extensive duplication and create a risk of inconsistent results, prejudicing Blockbuster and impeding the interests of justice. Indeed, the key evidence for Blockbuster's antitrust counterclaims is also crucial to Blockbuster's infringement defenses of invalidity and unenforceability, as well as to other patent issues such as damages. In a separate antitrust trial, the jury would be required to hear most of the same testimony presented in a patent infringement case, read most of the same documents, make largely the same decisions about witness credibility and inferences from circumstantial evidence, and decide issues closely related to those in the patent infringement case. Examples of the extensive overlap and interrelationships between the patent and antitrust issues include:

- Determining whether Netflix committed fraud under *Walker Process* in withholding known prior art from the Patent Office is closely related to determining the validity of Netflix's patents in view of that prior art. Equipping the jury to draw sound inferences about Netflix's conduct and its fraudulent intent will require that the jury understand in detail the subject matter of the Netflix

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

17

BLOCKBUSTER'S OPPOSITION TO NETFLIX'S
MOTION TO DISMISS
C 06 2361 WHA

1  patent claims, the history of its prosecution of its patent applications, the nature and

2  content of the prior art known to Netflix, and the nature and content of the prior art

3  cited by the Patent Office or disclosed by Netflix.

4  ▪ The facts and evidence related to Netflix's fraudulent patenting are also closely

5  related to Blockbuster's patent defense of unenforceability based on inequitable

6  conduct. Blockbuster's allegations of fraudulent patenting under *Walker Process*

7  are based in large part on the same withholding of known, material prior art on

8  which Blockbuster bases its inequitable conduct defense. (*See* Answer &

9  Countercl. ¶¶ 31-58, 65-68.)

10  ▪ The facts and evidence related to materiality under *Walker Process* are closely

11  related to Blockbuster's invalidity defenses. For example, as part of the patent

12  case, the jury will be required to decide whether the claims of Netflix's patents

13  were obvious in view of prior art including the art withheld by Netflix. (*See*

14  Answer & Countercl. ¶¶ 20-21, 62.) This issue is closely related to the antitrust

15  issue of whether the patents would not have issued "but for" fraudulent

16  withholding of prior art, and the evidence and analysis required to resolve both

17  issues are largely the same. (*See*, *e.g.*, *id.* ¶ 100.)

18  ▪ The issue of materiality of Netflix's fraud under *Walker Process* is also closely

19  related to the issue of materiality of the same withheld prior art for purposes of

20  Blockbuster's inequitable conduct defense.

21  ▪ Antitrust issues of Netflix's market power are closely related to aspects of Netflix's

22  likely damage claim for lost profits.[13] Part of Netflix's required proof will be a

23  hypothetical reconstruction of the market to show what additional profits Netflix

24  would have received "but for" the alleged infringement. *See Grain Processing*

25  *Corp. v. American Maize Prods. Co.*, 185 F.3d 1341, 1350-51 (Fed. Cir. 1999).

26  The related facts – and the required judgments about what alternatives consumers

27  

28  [13] To date, Netflix has provided no information about its damage claims, saying that it is "without sufficient information at this time."

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP                    18                    BLOCKBUSTER'S OPPOSITION TO NETFLIX'S
MOTION TO DISMISS
C 06 2361 WHA

1    would have adopted if they had not subscribed to Blockbuster's online service –

2    are closely related to questions about the definition of the relevant market, the

3    extent of Netflix's power in that market, and the monopolistic affect of Netflix's

4    fraudulent patenting and sham litigation.[14]

5    Importantly, this overlap and the resulting redundancy cannot be eliminated by

6 obtaining a special verdict in a patent infringement trial that would then be binding on a jury in

7 the antitrust trial, because the patent and antitrust issues, although closely related, also subtly

8 differ. Although the issues are similar and involve the same facts, witnesses, and documents, they

9 are not identical. For example, a finding that Netflix's patents are invalid in the light of prior art

10 including the NCR patents would not be exactly the same as a finding under *Walker Process* that

11 the patents would not have issued but for Netflix's fraudulent withholding of the NCR patents.

12 Similarly, "[a]lthough there is considerable overlap between the issues of inequitable conduct and

13 the fraud necessary to establish a *Walker Process* antitrust claim, the elements are not identical."

14 *Climax*, 414 F. Supp. 2d at 1014 (*citing Nobelpharma,* 141 F.3d at 1069); *see also Elk Corp. v.*

15 *GAF Building Materials Corp.*, 168 F.3d 28, 31 (Fed. Cir. 1999) (for inequitable conduct,

16 "[i]nformation is 'material' when there is a substantial likelihood that a reasonable examiner

17 would have considered the information important in deciding whether to allow the application to

18 issue as a patent.").

19        **2.    Separate Trials of Such "Interwoven" Issues Would Impair the Right
                 to Trial by Jury.**

20    Bifurcation would also prejudice Blockbuster's right to a trial by jury. (*See*

21 Answer & Countercl. at 37:2-5 (jury trial demand).) Both the United States Supreme Court and

22 the Ninth Circuit have rejected bifurcation where issues are "interwoven" like those of the patent

23 and antitrust portions of this case. In *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S.

24 494, 499 (1931), the Supreme Court held that it was improper to grant a new trial on counterclaim

25

26  [14] Separate trials on these issues also present a risk of inconsistent arguments. For example,
    Netflix might argue for damage purposes that all or nearly all of Blockbuster Online's subscribers
27  would otherwise have subscribed to Netflix but then argue for antitrust purposes that its conduct
    did not constitute monopolization or attempted monopolization because consumers unable to
28  continue with Blockbuster Online would chose between multiple other options.

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP                                    19                    BLOCKBUSTER'S OPPOSITION TO NETFLIX'S
                                                                   MOTION TO DISMISS
                                                                   C 06 2361 WHA

1  damages without also conducting a new trial on liability. Even though "[t]he verdict on the

2  counterclaim may be taken to have established the existence of a contract and its breach," the

3  Court still held that a new trial should encompass "all of the issues raised by the counterclaim."

> 4  Nevertheless, upon the new trial, the jury cannot fix the amount of
> 5  damages unless also advised of the terms of the contract; and the
>    dates of formation and breach may be material, since it will be open
> 6  to petitioner to insist upon the duty of respondent to minimize
>    damages.

7  *Id.* The court concluded that "the question of damages on the counterclaim is so interwoven with

8  that of liability that the former cannot be submitted to a jury independently of the latter of without

9  confusion and uncertainty, which ***would amount to a denial of a fair trial***." *Id.* (emphasis

10  added); *see also United Air Lines, Inc. v. Wiener*, 286 F.2d 302, 304-06 (9th Cir. 1961) (holding

11  that exemplary damages for an airline crash could not be determined by a different jury from the

12  one that tried liability, because, in the trial on exemplary damages, the defendant would be

13  "entitled to show all the facts surrounding the collision"). Similarly, in our case, even if the jury

14  in a separate antitrust trial could consider a prior verdict establishing that Netflix's patents were

15  invalid over prior art and that Netflix intentionally withheld material prior art with an intent to

16  deceive the Patent Office, the jury could not appropriately determine antitrust issues such as

17  fraudulent intent and materiality under *Walker Process*, as well as market power and

18  monopolistic effect, without hearing most if not all of the same evidence presented in the patent

19  trial and duplicating most of the analysis required of the previous jury. In a separate antitrust

20  trial, both Blockbuster and Netflix would be entitled to show all the facts surrounding Netflix's

21  patents, the nature of its claimed inventions, the prior art, Netflix's knowledge of the prior art,

22  Netflix's failure to disclose prior art, and the subsequent issuance of the patents – all matters that

23  will also have to be proven in the trial of the patent case. These antitrust and patent issues are so

24  "interwoven" that to try them separately to different juries would be not only extremely

25  inefficient but unjust and impermissible under *Gasoline Products Co* and *United Air Lines*.

26
27
28

GROSSMAN
STEIN &
KAHAN LLP

20    BLOCKBUSTER'S OPPOSITION TO NETFLIX'S
MOTION TO DISMISS
C 06 2361 WHA

1
2

       **3.**    **Netflix's Rote Arguments for Bifurcation Fail to Reach the Merits of this Case.**

3

         a.    <u>Bifurcation should depend on the details of each case – not generalities.</u>

4

Netflix fails to sustain its burden of showing, as moving party, that bifurcation is

5

appropriate in this case – let alone justifying a stay of all proceedings on Blockbuster's

6

counterclaims. Instead, Netflix skirts the true issues by relying on generalities about bifurcation

7

and antitrust counterclaims. (*See* Mot. at 15-19.)  However, a decision whether to bifurcate

8

should be made on a "case-by-case basis" and "only as a result of an informed exercise of

9

discretion *on the merits of each case*," not based on a "general policy" of bifurcating all cases of

10

a certain type. *Lis v. Robert Packer Hosp.*, 579 F.2d 819-823 (3d Cir. 1978), *quoted in Synopsys*,

11

2006 WL 1452803, at *4 (emphasis added in *Synopsys*).  Accordingly, the court in *Synopsys*

12

appropriately rejected an argument – like Netflix's – that it "should bifurcate the antitrust claims

13

from the infringement claims because other courts routinely do so." *Id.*

14

Moreover, even the generalities advanced by Netflix are highly questionable.  For

15

example, the statement quoted by Netflix from *In re Innotron Diagnostics*, 800 F.2d 1077, 1084

16

(Fed. Cir. 1986) (*quoted in* Mot. at 16:23-26), is "dictum." *Ecrix Corp. v. Exabyte Corp.*, 191

17

F.R.D. 611, 613 (D. Colo. 2000) (*cited in* Mot. at 15, 19).[15]  "Generally . . . overlap between

18

patent infringement and antitrust claims is found where there is a claim that the patent was

19

fraudulently procured." *Id.* at 614.[16]  In *Climax Molybdenum*, the court decided that *Innotron* was

20

***not*** a sufficient basis for bifurcating the trial of the defendant's antitrust counterclaims or staying

21

antitrust discovery.

22
23

         Bifurcation of patent and antitrust claims . . . is not mandated. *See In re Theodor Groz & Sohne*, No. 92M-338, 1992 WL 188908 (Fed. Cir. (N.Y.), May 18, 1992) (upholding trial court's denial of

24

---

25

[15] Netflix relies on circuit court opinions that did not decide bifurcation issues and are therefore

26

dictum if not entirely irrelevant. (*See* Mot. at 15:1-3 (*citing Hydranautics v. FilmTec*, 70 F.3d 533 (9th Cir. 1995); *FilmTec v. Hydranautics*, 67 F.3d 931 (Fed. Cir. 1995); *Liberty Lake Investments v. Magnuson*, 12 F.3d 155 (9th Cir. 1993).)  Indeed, *Liberty Lake* does not even mention bifurcation in passing.

27

[16] The court in *Ecrix* ordered bifurcation only because, ***unlike in this case***, "Ecrix has not claimed

28

Exabyte fraudulently procured the patents at issue and so the patent infringement and antitrust claims are not interwoven to the same degree." *Id.*

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

21

BLOCKBUSTER'S OPPOSITION TO NETFLIX'S
MOTION TO DISMISS
C 06 2361 WHA

1    bifurcation).

2    In this case, *a single trial of the patent and antitrust issues would
     promote the objectives of efficiency and fairness*.

3

4    *Climax*, 414 F. Supp. 2d at 1014 (emphasis added).

                 b.    <u>Netflix has not shown that bifurcation is needed to prevent jury</u>
5                      <u>confusion.</u>

6            Netflix makes a rote recitation about the complexities of antitrust claims, without

7    providing any particularized analysis or compelling reasoning to support the bare conclusion that

8    bifurcation is necessary to prevent confusion. (*See* Mot. at 18:13-26.) In *Synopsys*, the court

9    rejected a similar argument, because the court was "not convinced that bifurcation of the antitrust

10   claims from the infringement claims [was] necessary to prevent jury confusion." *Synopsys*, 2006

11   WL 1452803, at *4.

12                c.    <u>Netflix has not shown that bifurcation will promote judicial</u>
                        <u>economy.</u>
13

14           Netflix fails to provide any specific showing that bifurcation would enhance

15   judicial economy in *this* case, and it ignores multiple reasons why bifurcation would necessitate

16   duplicative and less efficient proceedings. (*See supra* Parts VI A 1-2.) Under similar

17   circumstances, the court in *Synopsys* denied bifurcation because, in that case as here, the

18   "antitrust claims are based in part on the allegation that [the patent owner] fraudulently obtained

19   two of its patents and asserted them . . . in violation of Section 2 of the Sherman Act" and the

20   "alleged fraud is also a centerpiece of [the] invalidity claims." Thus, "were the court to bifurcate,

21   the evidentiary presentation in one case would likely be substantially duplicative of the

22   evidentiary presentation in the other." Additionally, "bifurcation would likely create further

23   duplication of evidence because both juries would need to be educated in the same relevant

24   technology." Based on these considerations, the court in *Synopsys* "conclude[d] that neither jury

25   confusion nor efficiency weigh in favor of bifurcating the antitrust claims from the infringement

26   claims." *Id.* The same conclusion follows in this case.

27           In addition to this overlap between Blockbuster's invalidity defenses and its

28   *Walker Process* antitrust counterclaims, there is tremendous overlap between Blockbuster's

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP                    22        BLOCKBUSTER'S OPPOSITION TO NETFLIX'S
                                       MOTION TO DISMISS
                                       C 06 2361 WHA

1    antitrust claims and its inequitable conduct defense. This is similar to the overlap that led the

2    court in *Climax Molybdenum* to deny bifurcation because "[the] commonality between

3    Molychem's defense of inequitable conduct and its *Walker Process* antitrust claim weigh[ed]

4    against bifurcation." *Climax* 414 F. Supp. 2d at 1014.

5           Molychem's defense of inequitable conduct is based on its
             allegation that Climax failed to disclose material information to the
6            Patent Office during the prosecution of the patents. Molychem's
             *Walker Process* antitrust claim is predicated on the same allegation
7            of fraud on the Patent Office. ***Where an accused infringer has
             asserted a Walker Process counterclaim, a single trial may be***
8            ***more efficient use of judicial resources.*** *See In re Theodor Groz &*
             *Sohne*, 972 F.2d 1352, 1992 WL 188908, at *2.
9

10   *Id.* (emphasis added).

11          Netflix seems to argue that an antitrust trial, if deferred, will never be needed.

12   (*See* Mot. at 18:4-6.) Wishful thinking does not provide factual support for such a conclusion.

13   And, in this case, it is a wish shorn of substance. Netflix fails to provide any basis for expecting

14   that the validity and enforceability of the '450 and '381 patents will be upheld. This omission is

15   particularly glaring in light of Blockbuster's compelling allegations, including Netflix's failure to

16   submit any prior art in obtaining the '450 patent, Netflix's implicit admission of the patent's

17   weakness by failing to assert it for a period of 33 months, the admission by Netflix's CEO that the

18   patent is a "joke," and Netflix's failure to disclose known and highly material prior art in

19   obtaining either of the two patents – even after entering into litigation over the prior art in

20   question. (*See* Answer & Countercl. ¶¶ 17-58; *supra* Part III A 2.)[17]

21          **B.    A Decision to Bifurcate Would Be Premature.**

22          In *Intel v. Via*, 2001 WL 777085, at *7, this Court denied, at the pleading stage, a

23   motion for bifurcation of an antitrust counterclaim to a patent infringement suit. The Court said

24   that it "will decide later whether the trial will include both the patent and antitrust claims [and]

25   whether (or to what extent) there will be any bifurcation for purposes of trial . . . ." *Id.* Similarly,

26

27   _____
     [17] In the light of these allegations, fairness as well as prudence dictate that, at a minimum, a
28   decision about bifurcation be deferred until the Court has more of a basis on which to assess the
     merits. (*See infra* Part VII B.)

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP                                    23          BLOCKBUSTER'S OPPOSITION TO NETFLIX'S
                                                               MOTION TO DISMISS
                                                               C 06 2361 WHA

1   in *ACS Communications*, another judge of this Court declined to order bifurcation at an early

2   stage because it was too early to tell whether it would be more appropriate to try the infringement

3   and the antitrust claims together or separately:

4   > Since no discovery has taken place, it is difficult to ascertain the
5   > complexity of the claims. . . . [S]eparating the issues at this point
    > may cause unnecessary expenses and delay in conducting
6   > discovery. If it becomes apparent after further discovery that
    > separate trials are more convenient and economical, the Court can
    > bifurcate the patent infringement and antitrust issues at that time.
7

8   *ACS*, 1995 WL 743726, at *2. The same is true here.

9       **C.    Regardless of How the Court Rules on Bifurcation, It Should Not Stay
               Discovery on Blockbuster's Antitrust Claims.**
10

11      As pointed out in *ACS Communications*, even cases that "provide some support for

12  separating antitrust claims from patent infringement claims . . . do not support separating or

13  staying discovery." *ACS*, 1995 WL 743726 at *1. In *Intel v. Via*, 2001 WL 777085 at *7, this

14  Court declined a request to stay discovery on an antitrust counterclaim, citing, among other

15  considerations, concern that "future passage of time may prejudice the ability of counsel to pin

16  down the recollections of party witnesses." Even in *Ecrix*, where bifurcation was granted because

17  there was no antitrust claim based on fraudulent patenting as there is in this case (*see* 191 F.R.D.

18  at 615), the court held that "[d]iscovery of information related to the antitrust claims [would] not

19  be stayed." *Id.* Similarly, in *SNK Corp. of Am. v. Atlus Dream Entm't Co.*, 188 F.R.D. 566, 573-

20  74 (N.D. Cal. 1999)(*cited in* Mot. at 15n.7), the court declined to interfere with discovery into the

21  "subjective intent" in bringing an infringement suit.[18]

22      It is not realistic to imagine that, as Netflix implies, staying antitrust discovery

23  would eliminate the need for inquiry into "various entertainment-related markets (including

24  online DVD rental)" or into Netflix's role in such markets, both of which are important to

25  damages and other patent issues. (Mot. at 19:9-12; *see supra* Part VII A 1.) Because the facts of

26  Netflix's "anticompetitive conduct" and Blockbuster's "causal antitrust injury" are important to

27  patent defenses such as invalidity, inequitable conduct, patent misuse, laches, and estoppel,

28  ---
    [18] Discovery into objective baselessness was not before the court. *See id.*

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP                                                    24          BLOCKBUSTER'S OPPOSITION TO NETFLIX'S
                                                                              MOTION TO DISMISS
                                                                                C 06 2361 WHA

1  extensive discovery into such facts will be required regardless of any stay. (*Id.*; *see* Answer &
2  Countercl. ¶¶ 59-78.)

3          Given the close interrelationship between patent and antitrust issues in this case
4  (*see supra* Part VII A 1), the biggest effect of staying discovery on patent issues would be to
5  prevent the completion of many – perhaps most – depositions, requiring them to be reconvened
6  just so that counsel can ask a few additional questions identified as being related solely to the
7  antitrust side of the case. A stay of antitrust discovery would likely necessitate second
8  depositions of Netflix's named inventors, other Netflix officers and employees (past and present),
9  Netflix's patent attorneys, members of Netflix's board of directors, witnesses from NCR, and
10  probably Blockbuster witnesses as well, as well as others. Moreover, a stay would require the
11  Court – or the assigned Magistrate Judge – to become "the mediator in disputes over what
12  information relates to antitrust violation and what information relates to patent infringement . . . ."
13  *Ecrix*, 191 F.R.D. at 615. Netflix posits no realistic benefit sufficient to justify such delay and
14  disruption. Discovery should proceed on all issues.

15  **VIII.   CONCLUSION**

16          The Court should deny Netflix's motion to dismiss the antitrust counterclaims and
17  to strike the affirmative defenses of inequitable conduct and patent misuse, and the Court should
18  also deny Netflix's alternative motion for bifurcation.

19

20  DATED: July 27, 2006                    ALSCHULER GROSSMAN STEIN & KAHAN LLP
21
22                                          By_____/s/_____
23                                             William J. O'Brien
                                             Attorneys for Defendant and Counterclaimant,
24                                           Blockbuster Inc.
25
26
27
28