KEKER & VAN NEST, LLP
JEFFREY R. CHANIN - #103649
DARALYN J. DURIE - #169825
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Plaintiff
NETFLIX, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETFLIX, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>BLOCKBUSTER, INC., a Delaware corporation, DOES 1-50,<br><br>Defendant. | Case No. C 06 2361 WHA<br><br>**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL**<br><br>Complaint filed:       April 4, 2006 |

Plaintiff Netflix, Inc. (Netflix) for its First Amended Complaint for patent infringement against Defendant Blockbuster, Inc. (Blockbuster) alleges upon knowledge with respect to its own acts, and upon information and belief as to other matters, as follows:

## THE PARTIES

1.      Netflix is a Delaware corporation with its principal place of business in Los Gatos, California.  Netflix has rented out DVDs on a subscription basis through its website, www.netflix.com, since 1999.

2.      Defendant Blockbuster is a Delaware corporation with its principal place of business in Dallas, Texas.  Blockbuster may be served with a Summons and this Complaint through its registered agent, Corporation Service Company, 2711 Centerville Road, Wilmington, Delaware 19808.  Blockbuster launched Blockbuster Online, which it describes as its "U.S. online subscription program," in 2004.  Defendant Blockbuster has, at all times material hereto, been registered to do business and has conducted business in the State of California and this

376365.01

Dockets.Justia.com

1  District.

2  **JURISDICTION AND VENUE**

3  3.  This is an action arising under the laws of the United States, including 35 U.S.C.

4  § 101 *et seq.* (patent laws).  This Court has subject-matter jurisdiction over this action under 28

5  U.S.C. §§ 1331 and 1338(a).

6  4.  This Court has personal jurisdiction over Blockbuster because Blockbuster

7  regularly conducts business in this District and/or because Blockbuster has committed acts of

8  patent infringement in this District.

9  5.  Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) and/or

10  1400(b) because Blockbuster regularly conducts business in this District and/or because

11  Blockbuster has committed acts of patent infringement in this District.

12  **INTRADISTRICT ASSIGNMENT**

13  6.  This is an Intellectual Property Action subject to district-wide assignment under

14  Local Rule 3-2(c).

15  **FIRST CAUSE OF ACTION**

16  **(Infringement of U.S. Patent No. 7,024,381)**

17  7.  Netflix is the sole and exclusive owner of U.S. Patent No.  7,024,381 (the "'381

18  Patent" attached as Exhibit A), entitled "Approach for Renting Items to Customers" issued on

19  April 4, 2006.  Among other things, the Patent covers a method for subscription-based online

20  DVD rental that allows subscribers to keep the DVDs they rent for as long as they wish without

21  incurring any late fees, to obtain new DVDs upon return of those they have already watched

22  without incurring additional charges, and to prioritize and reprioritize their own personal list—a

23  dynamic queue—of DVDs to be rented.

24  8.  In violation of 35 U.S.C. § 271(a), Blockbuster has sold and/or offered for sale in

25  the United States a service that infringes one or more claims of the '381 Patent, by copying

26  Netflix's patented business method, including but not limited to copying Netflix's dynamic

27  queue; copying Netflix's method of sending DVDs to subscribers based on ranked order of titles

28  in their queue; and copying Netflix's method of allowing subscribers to update and reorder their

2

376365.01

1  queue among other acts of infringement.

2      9.     Blockbuster has also actively induced and/or contributed to others' infringement

3  of the '381 Patent in violation of 35 U.S.C. §§ 271(b) and (c).

4      10.    Blockbuster has had actual or constructive knowledge of the '381 Patent, and

5  Blockbuster's infringement of the '381 Patent has been and is willful and deliberate.  Netflix has

6  suffered and will continue to suffer irreparable injury unless Blockbuster's infringement of the

7  '381 Patent is enjoined by this Court.

8                    **SECOND CAUSE OF ACTION**

9              **(Infringement of U.S. Patent No. 6,584,450)**

10     11.    Netflix's incorporates paragraphs 1-10 above by reference.

11     12.    Netflix is the sole and exclusive owner of U.S. Patent No. 6,584,450 (the "'450

12 Patent," attached as Exhibit B), entitled "Method and Apparatus for Renting Items," issued on

13 June 24, 2003.

14     13.    In violation of 35 U.S.C. § 271(a), Blockbuster has sold and/or offered for sale in

15 the United States a service that infringes one or more claims of the '450 Patent.

16     14.    Blockbuster has also actively induced and/or contributed to others' infringement

17 of the '450 Patent in violation of 35 U.S.C. §§ 271(b) and (c).

18     15.    Blockbuster has had actual or constructive knowledge of the '450 Patent, and

19 Blockbuster's infringement of the '450 Patent has been and is willful and deliberate.  Netflix has

20 suffered and will continue to suffer irreparable injury unless Blockbuster's infringement of the

21 '450 Patent is enjoined by this Court.

22                    **PRAYER FOR RELIEF**

23     Netflix respectfully requests the following relief:

24     1.     A judgment that Blockbuster has infringed the asserted patents in violation of 35

25 U.S.C. §§ 271 (a), (b) and (c);

26     2.     A judgment that Blockbuster's infringement of the '381 and '450 patents has been

27 willful and deliberate;

28     3.     Preliminary and permanent injunction, pursuant to 35 U.S.C. § 283, enjoining

---

3

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL
Case No. C 06 2361 WHA

Blockbuster, and all persons in active concert of participation with Blockbuster, from any further acts of infringement, inducement of infringement, or contributory infringement of the asserted patents;

4.      An order, pursuant to 35 U.S.C. § 284, awarding Netflix damages adequate to compensate Netflix for Blockbuster's infringement of the asserted patents, in an amount to be determined at trial, but in no event less than a reasonable royalty;

5.      An order, pursuant to 35 U.S.C. § 284, and based on Blockbuster's willful and deliberate infringement of the '381 and '450 patents, trebling all damages awarded to Netflix;

6.      An order, pursuant to 35 U.S.C. § 284, awarding Netflix interest on the damages and its costs incurred in this action;

7.      An order, pursuant to 35 U.S.C. § 285, finding that this is an "exceptional" case and awarding to Netflix its reasonable attorneys' fees, expenses and costs incurred in this action; and

8.      All such other relief that the Court deems just and proper.


Dated:  July 26, 2006                                    KEKER & VAN NEST, LLP


                                                         By:    /s/ Jeffrey R. Chanin
                                                         JEFFREY R. CHANIN
                                                         Attorneys for Plaintiff
                                                         NETFLIX, INC.

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL
Case No. C 06 2361 WHA

376365.01

1

**DEMAND FOR JURY TRIAL**

2        Under Rule 38(b) of the Federal Rules of Civil Procedure and Local Rule 3-6 of the

3  United States District Court for the Northern District of California, Plaintiff hereby demands a

4  trial by jury of all issues properly triable by jury.

5

6  Dated:  July 26, 2006                          KEKER & VAN NEST, LLP

7

8

                                     By:    /s/ Jeffrey R. Chanin
9                                            JEFFREY R. CHANIN
                                             Attorneys for Plaintiff
10                                           NETFLIX, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL
Case No. C 06 2361 WHA

376365.01

**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

Pursuant to Civil L.R. 3-16, the undersigned certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

Netflix, Inc.

Blockbuster, Inc.

.

Dated:  July 26, 2006                                KEKER & VAN NEST, LLP


By:   /s/ Jeffrey R. Chanin
JEFFREY R. CHANIN
Attorneys for Plaintiff
NETFLIX, INC.

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL
Case No. C 06 2361 WHA

376365.01

# EXHIBIT A



US007024381B1

(12) **United States Patent**
Hastings et al.

(10) Patent No.: **US 7,024,381 B1**
(45) Date of Patent: **Apr. 4, 2006**

(54) **APPROACH FOR RENTING ITEMS TO CUSTOMERS**

(75) Inventors: **W. Reed Hastings**, Santa Cruz, CA (US); **Marc B. Randolph**, Santa Cruz, CA (US); **Neil Duncan Hunt**, Mountain View, CA (US)

(73) Assignee: **Netflix, Inc.**, Los Gatos, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 89 days.

(21) Appl. No.: **10/438,727**

(22) Filed: **May 14, 2003**

**Related U.S. Application Data**

(63) Continuation of application No. 09/561,041, filed on Apr. 28, 2000, now Pat. No. 6,584,450.

(51) **Int. Cl.**
*G06F 15/16* (2006.01)
*G06F 17/60* (2006.01)
*H04N 7/173* (2006.01)

(52) **U.S. Cl.** .......................... 705/26; 381/77; 709/206; 725/60; 725/104

(58) **Field of Classification Search** .................. 705/26; 709/206, 212, 219, 222; 725/60, 104; 381/77, 381/81, 86
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,095,195 A | | 3/1992 | Harman et al. |
| 5,664,110 A | | 9/1997 | Green et al. |
| 5,704,017 A | | 12/1997 | Heckerman et al. |
| 5,752,160 A | * | 5/1998 | Dunn .......................... 725/93 |
| 5,790,426 A | | 8/1998 | Robinson |
| 5,842,199 A | | 11/1998 | Miller et al. |

| | | | |
|---|---|---|---|
| 5,861,906 A | * | 1/1999 | Dunn et al. .................... 725/87 |
| 5,884,282 A | | 3/1999 | Robinson |
| 5,918,014 A | | 6/1999 | Robinson |
| 5,918,213 A | | 6/1999 | Bernard et al. |
| 5,945,987 A | * | 8/1999 | Dunn .......................... 345/718 |
| 5,959,945 A | * | 9/1999 | Kleiman ....................... 381/81 |
| 6,012,052 A | | 1/2000 | Altschuler et al. |

(Continued)

FOREIGN PATENT DOCUMENTS

| JP | 2001243285 A | 9/2001 |
|---|---|---|

OTHER PUBLICATIONS

Kenton County Public Library, Covington, KY 41011, The Talking Book Library at the Kenton County Public Library, "http://web.archive.org/web/19980130051137/www.kenton.lib.ky.us/talking.html," 3 pages.*

(Continued)

*Primary Examiner*—Andrew Joseph Rudy
(74) *Attorney, Agent, or Firm*—Hickman Palermo Truong & Becker, LLP

(57) **ABSTRACT**

According to a computer-implemented approach for renting items to customers, customers specify what items to rent using item selection criteria separate from deciding when to receive the specified items. According to the approach, customers provide item selection criteria to a provider provides the items indicated by the item selection criteria to customer over a delivery channel. The provider may be either centralized or distributed depending upon the requirements of a particular application. A "Max Out" approach allows up to a specified number of items to be rented simultaneously to customers. A "Max Turns" approach allows up to a specified number of item exchanges to occur during a specified period of time. The "Max Out" and "Max Turns" approaches may be used together or separately with a variety of subscription methodologies.

**51 Claims, 7 Drawing Sheets**



**US 7,024,381 B1**

Page 2

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 6,016,475 A | | 1/2000 | Miller et al. |
| 6,029,161 A | | 2/2000 | Lang et al. |
| 6,041,311 A | | 3/2000 | Chislenko et al. |
| 6,049,777 A | | 4/2000 | Sheena et al. |
| 6,065,042 A | * | 5/2000 | Reimer et al. .............. 709/203 |
| 6,067,562 A | * | 5/2000 | Goldman ..................... 709/206 |
| 6,092,049 A | | 7/2000 | Chislenko et al. |
| 6,108,493 A | | 8/2000 | Miller et al. |
| 6,112,186 A | | 8/2000 | Bergh et al. |
| 6,236,985 B1 | | 5/2001 | Aggarwal et al. |
| 6,286,139 B1 | | 9/2001 | Decinque |
| 6,289,389 B1 | * | 9/2001 | Kikinis ....................... 709/239 |
| 6,308,168 B1 | | 10/2001 | Dovich et al. |
| 6,321,179 B1 | | 11/2001 | Glance et al. |
| 6,321,221 B1 | | 11/2001 | Bieganski |
| 6,334,127 B1 | | 12/2001 | Bieganski et al. |
| 6,389,372 B1 | | 5/2002 | Glance et al. |
| 6,412,012 B1 | | 6/2002 | Bieganski et al. |
| 6,484,123 B1 | | 11/2002 | Srivastava |
| 6,487,539 B1 | | 11/2002 | Aggarwal et al. |
| 6,487,541 B1 | | 11/2002 | Aggarwal et al. |
| 6,496,816 B1 | | 12/2002 | Thiesson et al. |
| 2001/0036271 A1 | * | 11/2001 | Javed .......................... 380/217 |
| 2005/0086127 A1 | | 4/2005 | Hastings et al. |

#### OTHER PUBLICATIONS

The Library of Congress, Requests Proposals on Behalf of the National Library Service for the Blind and Physically Handicapped for the Software Support Services for Library □□Owned Software Knonw as "Reads" Reader Enrollment and Delivery System.*

Library of Congress, Washington, DC; Solicitation No. RFP 87-16; 17 (seventeen) pages; Sep. 1, 1987.*

Matsuyama, Toshnori, Rental Video Tape Order System, Pub. No. 09-231279 (JP 9231279 A), Application No. 08-057043 JP 9657043).*

Glenn Miller, Letter from Glen Miller, Director of Orange County Library System, Unabashed Librarian, No. 82, p. 3, 1991.*

Business Wire, "Netflix.com transforms DVD Business Eliminating Late Fees and Due Dates From Movie Rentals; NetFlix.com's New Marquee Program Creates Near DVD-on-Demand," New York, Sep. 28, 1999, 3 pgs.*

Billboard, "NetFlix launches DVd subcription club; Blockbuster set to stock up on formate" [sic] Billboard, New York, Oct. 16, 1999, vol. 111, iss. 42, p. 77.*

Brad Dick, Editor, "The Future of Television," Broadcast Engineering, NA, Dec. 1999, 1 page.

"About Us" web page from www.netflix.com, 1 page.

Web page printout for http://www.netflix.com/ on Jan. 17, 1999, at http://web.archive.org/web/19990117080920/http://www.netflix.com, 5 pages.

"Facts About the Library," a section of book entitled "Oh! Say. Can You See . . . " 1992 American Action Fund for Blind Children and Adults, retrieved from http://web.archive.org/web/20000104114940/www.actionfund.org/saysee09.htm, 2 pages.

Application for Library Services for the Kenneth Jernigan Library for Blind-Children, last updated May 27, 1999, retrieved from http://web.archive.org/web/19991103190509/www.actionfund.org/kjlib.htm, 3 pages.

Audio Diversions Home Page, last updated Mar. 8, 1999 [online] retrieved on Feb. 26, 2004 from http://web.archive.org/web/19990508140319/www.audiodiversions/audiodiversions-cgi/home.cgi; 2 pages.

Literature for Listening Club of Audio Diversions, last updated Mar. 12, 1999 [online] retrieved on Aug. 31, 2003 from http://web.archive.org/web/19990308120905/www.audiodiversions.com/audiodiversions-cgi/listening.cgi?id=0508075008; 2 pages.

Audiobook Search of Audio Diversions [online] retrieved on Aug. 31, 2003 from http://web.archive.org/web/19990908104726/www.audiodiversions.com/audiodiversions-cgi/catalog.cgi?id=0508075008, 2 pages.

Books On Tape Home page, Apr. 22, 1999 [online] retrieved on Aug. 31, 2003 from http://web.archive.org/web/19990424061355/http://www.booksontape.com/, 2 pages.

More About B-O-T® & Frequently Asked Questions, [online] retrieved on Aug. 31, 2003 from http://web.archive.org/web/19990508223402/http://www.booksontape.com/i/help.htm, 11 pages.

America's Online Door to Door Rental Store, 1999 copyright [online] retrieved from http://web.archive.org/web/19990922160527/http://www.dvdovernight.com/; 2 pages.

Getting Started, 1999 copyright [online] retrieved from http://web.archive.org/web/2000030411243/www.dvdovernight.com/started.html; 7 pages.

Top DVD Rentals, DVD Overnight store Policies & Frequently Asked Questions, 1999 copyright [online] retrieved from http://web.archive.org/web/19991123014901/www.dvdovernight.com/service.html; 8 pages.

Customer Service Questions & Answers, 2000 copyright [online] retrieved from http://web.archive.org/web/20001109071400/www.dvdovernight.com/dvd/custservice.html; 5 pages.

DVD Cache Frequently Asked Questions, [online] retrieved from http://web.archive.org/web/20000512001209/www.dvdcache.com/store/customer__service.html; 5 pages.

Libraries [online] retrieved on Feb. 26, 2004 from http://www.archives.mcgill.ca/resources/guide/vol1/rg40.htm; 8 pages.

Fastlane Video & Records—Rental Prices [online] retrieved from http://web.archive.org/web/19990506190744/members.aol.com/atfastlane/video/rental.htm; 1 page.

5 Day Rental [online] retrieved from http://web.archive.org/web/19990210101315/members.aol.com/atfastlane/video/index.htm; 13 pages.

Fastlane Video & Records [online] retrieved from http://web.archive.org/web/19990209181937/members.aol.com/atfastlane/; 2 pages.

Fastlane Vidoe & Records—Payment on Account [online] retrieved from http://web.archive.org/web/19990504102814/members.aol.com/atfastlane/video/payment.htm; 1 page.

"Try Before You Buy Program" [online] retrieved from http://web.archive.org/web/19990922040420/www.gametradersclub.com/gametradersclub/tryb.html; 2 pages.

Trade or Sell Your Games! [online] retrieved from http://web.archive.org/web/19991010012624/www.gametradersclub.com/gametradersclub/tradorselyou.html; 2 pages.

"Try Before You Buy Program" [online] retrieved from http://web.archive.org/web/19991012021059/gametradersclub.com/gametradersclub/tryb.html; 2 pages.

Print Culture and English Speaking Quebec [online] retrieved on Feb. 26, 2004 from http://www.hbic.library.utoronto.ca/fconfmcnally__fr.htm; 5 pages.

Welcome to Home Film [online] retrieved from http://web.archive.org/web/1996110600054/2/http://www.homefilmfestival.com/index.html; 3 pages.

Membership [online] retrieved from http://web.archive.org/web19961106001054/www.homefilmfestival.com/membership.html; 2 pages.

It's Easy! Ordering info [online] retrieved from http://web.archive.org/web/19961106001006/www.homefilmfestival.com/infopack.html; 2 pages.

Online Video Rentals Multiple Rental Order Form [online] retrieved on Jul. 2, 2003 from http://web.archive.org/web/19990420045928/www.homefilmfestival.com/1rgordr.html; 3 pages.

Online Video Rentals Individual Rental Order [online] retrieved on Jul. 2, 2003 from http://web.archive.org/web/19990127160422/www.homefilmfestival.com/indordr.html; 3 pages.

Magic Disc Entertainment [online] retrieved on Feb. 27, 2004 from http://web.archive.org/web/19981206142316/http://www.magicdisc.com/; 2 pages.

Rental Program [online] retrieved from http://web.archive.org/web/19990503073644/www.magicdisc.com/rentals/rentalprogram.htm; 3 pages.

Featured DVDs for Saturday, Jan. 16, 1999, 1997-1999 copyright [online] retrieved on Jul. 3, 2003 from http://web.archive.org/web/19990117011532/http://www.netflix.com/; 5 pages.

DVD Favorites, 1997-1999 copyright [online] retrieved on Jul. 3, 2003 from http://web.archive.org/web/19991204131346/www.netflix.com/sf/favorites.asp?sid=14; 4 pages.

Future Reflections, Barbara Cheadle, vol. 12, No. 1 Winter, 1993 [online] retrieved on Aug. 23, 2003 from http://www.nfb.org/fr/fr1/93win.htm; pp. 1-2; 70-72.

Hear Ye! Hear Ye! National Federation of the Blind archived in Feb. 1999 retrieved from http://web.archive.org/web/19991112190729/www.nfb.org/fr98ws20.htm, 7 pages.

E-mail posting: Newgroups: alt.games.video.sony-playstation from:David Esposito (cooldej@home.com) with subject: Need Cheep Games; Date: Feb. 7, 1999; 1 page.

E-mail posting: Newgroups: alt.games.video.sony-playstation from:ramon (ramon@theriver.com) with subject: Need Cheep Games; Date: Feb. 8, 1999; 1 page (same page as Esposito posting).

E-mail posting: Newgroups: alt.games.video.sony-playstation from:ramon (ramon@theriver.com) with subject: 100'S of Games for about a Buck a Day . . . (Incredible Deal); Date: Feb. 6, 1999; 1 page.

E-mail posting: Newgroups: alt.games.video.sony-playstation from: ramon (ramon@theriver.com) with subject: Best Deal Around 100's of games for about a buck a day; Date; Feb. 8, 1999; 1 page.

E-mail posting: Newgroups: alt.games.video.sony-playstation from: ramon (ramon@theriver.com) with subject: Best Deal I've Ever Seen . . . 100's of games for about a buck a day; Date: Feb. 8 1999; 1 page.

E-mail posting: Newgroups: alt.games.video.sony-playstation from: ramon (ramon@theriver.com) with subject: Best Deal Ever!! Choose from 100's of games for about a buck a day . . . Plus a Free Playstation; Date: Feb. 9, 1999; 1 page.

E-mail postings of 6 messages in a thread from the following message: Newsgroups: alt.games.video.sony-playstation from: ramon (ramon@theriver.com) with subject: Best Deal Ever..All the N-64 Games You Want for About a Buck a Day; Date: Feb. 10, 1999; 3 pages.

E-mail posting: Newsgroups: alt.games.video.sony-playstation from: ramon (ramon@theriver.com) with subject: All the New Playstation Games are Yours for About a Buck a Day; Date: Feb. 10, 1999; 1 page.

E-mail posting: Newsgroups: alt.games.video.sony-playstation from: ramon (ramon@theriver.com) with subject: Check Out the New Web Site (Best Deal I've Seen); Date: Jul. 11, 1999; 1 page.

E-mail posting: Newsgroups: alt.games.video.sony-playstation from: ramon (ramon@theriver.com) with subject: How Many Games Can You Beat In A Month?; Date: Jul. 11, 1999; 1 page.

"A New Way to Avoid Exercise", Newsweek Mar. 15, 1999; 1 page.

Additional Information from Sally Fry, Community Relations Coordinator Unabashed Librarian, No. 82, p. 3 1991.

Mailbox Access to Your Library (MAYL), Florida Libraries, Unabashed Librarian, No. 82, p. 3 1991.

Brass, Kevin, "Company Town: Rental Control; Video Distributor Takes Industry Down Controversial Path", Los Angeles Times, Nov. 28, 1997; 4 pages.

Mary L. Daniels, A Love for Libraries; Whether Large or Small, They are Special Places, Editorial; p. A19, Orlando Sentinel, Nov. 11, 1994; 2 pages.

DeJong, Jennifer, "Securing Your Site for the Age of E-Commerce", VAR Business Strategy Guide Supplement Nov. 16, 1998; 3 pages.

"Door-to-Door Service", High Points, Feb. 1999; vol. 6, No. 2, p. 50, 2 pages.

Greenemeier, Larry, "Manna Rises Above Conventional", Net Marketing; Manna Network Technologies Midrange Systems, Dec. 18, 1998; No. 18, vol. 11; p. 41; 2 pages.

Hilda M. Hamlyn, "Eighteenth-century circulating libraries in England," The Library, pp. 197-222, Dec. 1946.

Horowitz, Alan, S., "PC Leasing Gains Ground—Shorter life spans polarize practice", Information Week, May 25, 1998, 3 pages.

Ingram, Bob, "Boston Bears Watching" Supermarket Business Mar. 1, 1999; 5 pages.

Kim, Nancy J., "Nordstrom seen Net gains with Streamline", Puget Sound Business Journal Oct. 30, 1998; 2 pages.

Alan Donald McKillop, "English circulating libraries, 1725-50" The Library, pp. 477:-485, Mar. 1934.

Memmott, Carol, "Web Site Streamlines Your Errands", USA Today Nov. 16, 1998; 2 pages.

"News Briefs", Video Store Mar. 21, 1999; 1 page.

"Nordstrom Announces Partnership With Streamline", PR NewsWire Oct. 8, 1998; 2 pages.

Said, Carolyn, "Chips and Flicks On Your Doorstep", Business, p. B1, The San Francisco Chronicle, Oct. 18, 1999, 4 pages.

Shrieves, Linda, "Now Library Books Just Show Up at Your Door", Orlando Sentinel, Dec. 7, 1990; 2 pages.

"Streamline" DSN SuperCenter Club Business Mar. 29, 1999; 1 page.

Hal R. Varian, "Buying, renting, and sharing information goods," Technical report, School of Information Management and Systems, UC Berkeley, Dec. 1994; 20 pages.

Hal R. Varian, "Circulating Libraries and Video Rental Stores," Dec. 1996, retrieved from http://web.archive.org; pp. 1-14.

Hal R. Varian, et al., "Circulating Libraries and Video Rental Stores," University of Michigan, Dearborn, University of California, Berkeley, http://www.sims.berkeley.edu/~hal/

# US 7,024,381 B1

Page 4

Papers/history/history.html, Mar. 2000; pp. 1-13.

Griest, Guinevere L.: Mudie's Circulating Library and the Victorian Novel. Bloomington and London, Indiana, Univ. Press, 1970, 282 pages.

*Books by Mail, a handbook for libraries* (1977) by Choong H. Kim. In the Quebec section at p. 394, the *McLennan Traveling Libraries of McGill University* were reviewed, 2 pages.

James Lardner, *Fast Forward: Hollywood, the Japanese and the Onslaught of the VCR* by, Chapter 12 Wilbur & Orville & Tom, Dick, & Harry and Chapter 13 The Rental Wars, pp. 168-202 (1987).

Abigail A. Loomis, "Subscription libraries," in Wayne A. Wiegand and Jr. Donald G. Davis, editors, Encyclopedia of Library History, pp. 608-610. Garland Publishing, Inc., New York & London, 1994.

Glenn Miller *Customer Service & Innovation in Libraries* pp. 73-90, Highsmith Press 1996. ("Book").

* cited by examiner

**FIG. 1**



100

102 CUSTOMER

104 PROVIDER

106

108

**FIG. 2**



200

START — 202

CUSTOMER CREATES ITEM SELECTION CRITERIA — 204

CUSTOMER PROVIDES ITEM
SELECTION CRITERIA TO PROVIDER — 206

PROVIDER PROVIDES ITEMS INDICATED BY
THE ITEM SELECTION CRITERIA TO CUSTOMER — 208

END — 210

## FIG. 3



**FIG. 4**



**FIG. 5**



**FIG. 6**





FIG. 7

US 7,024,381 B1

**1**

# APPROACH FOR RENTING ITEMS TO CUSTOMERS

## RELATED APPLICATION AND PRIORITY INFORMATION

This application is a continuation of and claims benefit of U.S. Non Provisional application entitled "Method and Apparatus for Renting Items", Ser. No. 09/561,041, filed Apr. 28, 2000 now U.S. Pat. No. 6,584,450. The entire contents of this prior application are hereby incorporated by reference in its entirety for all purposes.

## FIELD OF THE INVENTION

The present invention relates to inventory rental, and more specifically, to an approach for renting movies to customers.

## BACKGROUND OF THE INVENTION

Conventional inventory rental models are typically based upon renting items for fixed rental periods and charging late fees for keeping rented items beyond a specified return date. These types of inventory models suffer from several significant limitations. First, conventional rental models require customers to make the decision of what items to rent at substantially the same time as the decision of when to rent the items. An example that illustrates this limitation is a video rental business. Customers go to a video rental store and select particular movies to rent at that time. The customers take the movies home and must return them by a particular due date or be charged a late fee. In this situation, the customers cannot decide what movies to rent before actually renting them. The customers may have a particular movie in mind, but there is no guarantee that the video rental store has the particular movie in stock. Moreover, due dates are inconvenient for customers, particularly for "new release" movies that are generally due back the next day.

Given the current demand for inventory rental and the limitations in the prior approaches, an approach for renting items to customers that does not suffer from limitations associated with conventional inventory rental models is highly desirable. In particular, an approach for renting inventory items to customers that allows separation of customers' decisions of what items to rent from when to rent the items is highly desirable.

There is a further need for an approach for renting items to customers on a continuous basis that avoids the use of fixed due dates or rental "windows" appurtenant to conventional rental models.

There is yet a further need for an approach for renting movies, games and music to customers that is more convenient and flexible to customers than conventional approaches.

## BRIEF DESCRIPTION OF THE DRAWINGS

Embodiments of the invention are illustrated by way of example, and not by way of limitation, in the figures of the accompanying drawings and in which like reference numerals refer to similar elements and in which:

FIG. 1 is a diagram depicting an approach for renting items to customers according to an embodiment.

FIG. 2 is a flow diagram depicting an approach for renting items to customers according to an embodiment.

**2**

FIG. 3 is a flow diagram depicting a "Max Out" approach for renting items to customers according to an embodiment.

FIG. 4 is a flow diagram depicting a "Max Turns" approach for renting items to customers according to an embodiment.

FIG. 5 is a diagram depicting an approach for renting audio/video items to customers over the Internet according to an embodiment.

FIG. 6 is a flow diagram illustrating an approach for renting audio/video items to customers over the Internet using both "Max Out" and "Max Turns" according to an embodiment; and

FIG. 7 is a block diagram of a computer system upon which embodiments of the invention may be implemented.

## DETAILED DESCRIPTION OF THE INVENTION

In the following description, for the purposes of explanation, specific details are set forth in order to provide a thorough understanding of the invention. However, it will be apparent that the invention may be practiced without these specific details. In other instances, well-known structures and devices are depicted in block diagram form in order to avoid unnecessarily obscuring the invention.

Various aspects and features of example embodiments of the invention are described in more detail hereinafter in the following sections: (1) functional overview; (2) item selection criteria; (3) item delivery; (4) "Max Out"; (5) "Max Turns"; (6) inventory management; and (7) implementation mechanisms.

### 1. Functional Overview

FIG. 1 is a block diagram 100 that illustrates an approach for renting items to customers according to various embodiments described herein. As used herein, the term "item" refers to any commercial goods that can be rented to customers. Examples of items include movies, music and games stored on a non-volatile memory such as a tape, other magnetic medium, optical medium, read-only memory or the like, and the invention is not limited to any particular type of item. In general, the decision of what items to rent is separated from the decision of when to rent the items. Customers may specify what items to rent using one or more item selection criteria separate from deciding when to receive the specified items. Furthermore, customers are not constrained by conventional rental "windows" and instead can have continuous, serialized rental of items.

According to one embodiment, a customer 102 provides one or more item selection criteria to a provider 104 over a link 106. Link 106 may be any medium for transferring data between customer 102 and provider 104 and the invention is not limited to any particular medium. Examples of link 106 include, without limitation, a network such as a LAN, WAN or the Internet, a telecommunications link, a wire or optical link or a wireless connection.

The item selection criteria indicate items that customer 102 desires to rent from provider 104. In response to receiving the item selection criteria from customer 102, provider 104 provides the items indicated by the item selection criteria to customer 102 over a delivery channel 108. Delivery channel 108 may be implemented by any mechanism or medium that provides for the transfer of items from provider 104 to customer 102 and the invention is not limited to any particular type of delivery channel. Examples of delivery channel 108 include, without limitation, mail delivery, courier delivery or delivery using a delivery agent.

US 7,024,381 B1

3

Provider **104** may be centralized or distributed depending upon the requirements of a particular application.

According to an embodiment, a "Max Out" approach allows up to a specified number of items to be rented simultaneously to customer **102** by provider **104**. According to another embodiment, a "Max Turns" approach allows up to a specified number of item exchanges to occur during a specified period of time. The "Max Out" and "Max Turns" approaches may be used together or separately with a variety of subscription methodologies.

The approach just described for renting items to customers is now described with reference to a flow diagram **200** of FIG. **2**. After starting in step **202**, in step **204**, customer **102** creates item selection criteria. In step **206**, customer **102** provides the item selection criteria to provider **104**. In step **208**, in response to provider **104** receiving the item selection criteria from customer **102**, provider **104** provides one or more items indicated by the item selection criteria to customer **102**. The process is complete in step **210**.

### 2. Item Selection Criteria

The one or more item selection criteria provided by customer **102** to provider **104** indicate the particular items that customer **102** desires to rent from provider **104**. Thus, the item selection criteria define a customer-specific order queue that is fulfilled by provider **104**. According to one embodiment, the item selection criteria specify attributes of items to be provided by provider **104** to customer **102**. Item selection criteria may specify any type of item attributes and the invention is not limited to particular item attributes. Examples of item attributes include, without limitation, identifier attributes, type attributes and cost attributes. Item selection criteria may be changed at any time to reflect changes in items that customers desire to rent from a provider.

### 3. Item Delivery

According to one embodiment, items are delivered by provider **104** to customer **102** over delivery channel **108** based upon item delivery criteria. More specifically, the delivery of items from provider **104** to customer **102** is triggered by item delivery criteria being satisfied. The item delivery criteria may include a wide range of criteria and the invention is not limited to any particular item delivery criteria. Examples of item delivery criteria include, without limitation, customer request/notification, customer notification that an item is being returned, customer return of an item, the occurrence of a specified date, the elapsing of a specified period of time or a customer payment.

The item delivery criteria may be specified by customer **102** to provider **104** or negotiated by customer **102** and provider **104** as part of a subscription service. For example, a particular subscription service may include item delivery criteria that specifies that a particular number of items are to be delivered monthly. As another example, item delivery criteria may specify that an initial set of items is to be delivered by provider **104** to customer **102** upon initiation of a subscription service and that additional items are to be delivered to customer **102** upon return of items to provider **104**. Item delivery criteria may be applied uniformly to all items to be delivered to a customer, or may be item specific. For example, item delivery criteria may specify a particular date, i.e., the third Wednesday of every month, for all item deliveries. Alternatively, separate item delivery dates may be assigned to each item.

### 4. "Max Out"

4

According to one embodiment, a "Max Out" approach is used to manage the number of items that may be simultaneously rented to customers. According to the "Max Out" approach, up to a specified number of items may be rented simultaneously to a customer. Thus, the "Max Out" approach establishes the size of an inventory of items that may be maintained by customers. The specified number of items may be specific to each customer or may be common to one or more customers. In the present example, if the specified number of items is three, then up to three items may be rented simultaneously by provider **104** to customer **102**. If the specified number of items are currently rented to customer **102** and the specified item delivery criteria triggers the delivery of one or more additional items, then those items are not delivered until one or more items are returned by customer **102** to provider **104**.

According to one embodiment, in situations where the specified number of items are currently rented to customer **102** and the specified item delivery criteria triggers the delivery of one or more additional items, then the one or more additional items are delivered to customer **102** and customer **102** and a surcharge is applied customer **102**. The specified number of items may then be increased thereafter to reflect the additional items delivered to customer **102** and increase the size of the inventory maintained by customer **102**. Alternatively, the specified number of items may remain the same and number of items maintained by customer **102** returned to the prior level after items are returned to provider **104** by customer **102**. When used in conjunction with the "Max Turns" approach described hereinafter, the specified number of items may be unlimited.

The "Max Out" approach for managing the number of items that may be simultaneously rented to customers is now described with reference to a flow diagram **300** of FIG. **3**. After starting in step **302**, one or more initial items are delivered to customer **102** to establish the inventory maintained by customer **102**. Note that an initial delivery of items is not required and according to one embodiment, the inventory of customer **102** is incrementally established over time.

In step **306**, a determination is made whether the item delivery criteria have been satisfied. If not, then the determination continues to be made until the item delivery criteria are satisfied. As described previously herein, the delivery criteria may include customer notification generally, customer notification that an item is being returned, the actual return of an item, the occurrence of a specific date, or that a specified amount of time has elapsed.

Once the item delivery criteria are satisfied, then in step **308**, a determination is made whether the specified number of items have been delivered. If not, then control returns to step **304** and one or more additional items are delivered by provider **104** to customer **102**. If however, in step **308**, the specified number of items have been delivered, then in step **310**, a determination is made whether the specified number of items, i.e., the "Max Out" limit, is to be overridden. As previously described, the specified number of items may be overridden by increasing the specified number of items, i.e., the "Max Out" limit, to allow additional items to be delivered to customer **102** and charging a fee to customer **102**. Alternatively, the specified number of items is not changed and a surcharge applied to customer **102**. This process continues for the duration of the subscription and is then complete in step **312**.

### 5. "Max Turns"

US 7,024,381 B1

5

According to one embodiment, a "Max Turns" approach is used to rent items to customers. According to the "Max Turns" approach, up to a specified number of item exchanges may be performed during a specified period of time. For example, referring to FIG. 1, suppose that provider **104** agrees to rent items to customer **102** with a "Max Turns" limit of three items per month. This means that customer **102** may make up to three item exchanges per month. This approach may be implemented independent of the number of items that a customer may have rented at any given time under the "Max Out" approach. The approach is also independent of the particular item delivery criteria used.

According to one embodiment, the "Max Turns" approach is implemented in combination with the "Max Out" approach to rent items to customers. In this situation, up to a specified number of total items are simultaneously rented to customer **102** and up to a specified number of item exchanges may be made during a specified period of time. Thus, using the "Max Out" and the "Max Turns" approaches together essentially establishes a personal item inventory for customer **102** based upon the "Max Out" limit that may be periodically refreshed based upon the "Max Turns" limit selected.

In some situations, customer **102** may wish to exchange more than the specified number of items during a specified period. According to one embodiment, in this situation, provider **104** agrees to rent additional items above the specified number to customer **102** and to charge customer **102** for the additional items. For example, suppose that provider **104** agrees to rent items to customer **102** with up to three item turns (exchanges) per month. If, in a particular month, customer **102** requires two additional turns, then the two additional items are provided to customer **102** and a surcharge is applied to customer **102** for the additional two items.

In other situations, customer **102** may not use all of its allotted turns during a specified period. According to one embodiment, customers lose unused turns during a subscription period. For example, if customer **102** has a "Max Turns" limit of four item exchanges per month and only makes two item exchanges in a particular month, then the two unused exchanges are lost and cannot be used. At the start of the next month, customer **102** would be entitled to four new item exchanges.

According to another embodiment, customers are allowed to carry over unused turns to subsequent subscription periods. For example, if customer **102** has a "Max Turns" limit of four item exchanges per month and only makes two item exchanges in a particular month, then the two unused exchanges are lost and cannot be used. At the start of the next month, customer **102** would be entitled to six new item exchanges, two from the prior month and four for the current month.

The "Max Turns" approach for renting items to customers is now described with reference to a flow diagram **400** of FIG. 4. After starting in step **402**, in step **404**, customer **102** and provider **104** agree upon the terms of the "Max Turns" agreement. Specifically, customer **102** and provider **104** agree at least upon the maximum number of turns that are allowed in a specified period of time.

In step **406**, in response to one or more item delivery criteria being satisfied, provider **104** provides one or more items to customer **102** over delivery channel **108**. Any type of item delivery criteria may be used with the "Max Turns" approach and the invention is not limited to any particular delivery criteria. For example, the initial one or more items may be delivered to customer **102** in response to a subscrip-

6

tion payment made by customer **102** to provider **104**, the initiation of a specified subscription period, or by request of customer **102** for the initial rental items. The number of initial one or more items must not exceed the terms of the "Max Turns" agreement.

In step **408**, in response to one or more delivery criteria being satisfied, a determination is made whether additional items can be provided to customer **102** within the terms of the "Max Turns" agreement. For example, if the number of items rented to customer in the current subscription period is less than the agreed-upon "Max Turns," then additional items can be rented to customer **102** within the terms of the "Max Turns" agreement. In this situation, this determination may be made in response to customer **102** returning one or more items to provider **104**, or by customer **102** requesting additional items.

If, in step **408**, a determination is made that additional items can be rented to customer **102** within the terms of the "Max Turns" agreement, then control returns to step **406** where one or more additional items are rented to customer **102**. If however, in step **408**, a determination is made that additional items cannot be rented to customer **102** within the terms of the "Max Turns" agreement, then in step **410**, a determination is made whether to override the current agreement terms. If so, then in step **412**, the agreement terms are changed to allow for a larger number of terms and customer **102** is charged accordingly, or the terms are left unchanged and a surcharge is applied for the additional items to be delivered. Control then returns to step **406**, where one or more additional items are delivered to customer **102**.

If in step **410**, a determination is made that the current agreement is not to be overridden, then in step **414**, no items are delivered to customer **102** until the next subscription period. For example, the request for additional items may be received at the end of a subscription period and instead of renting the additional items immediately, they are instead delivered during the subsequent subscription period. Control then returns to step **406** where one or more additional items are rented to customer or the process is complete in step **416**.

The approach for renting items described herein is now described in the context of renting to customers audio/video (A/V) items, such as movies, games and music, stored on various media. FIG. 5 is a diagram **500** that depicts a set of customers **502** that desire to A/V items from a provider **504**. Customers **502** communicate with provider **504** over links **506**, the global packet-switched network referred to as the "Internet," and a link **510**.

Links **506** and **510** may be any medium for transferring data between customers **502** and the Internet **508** and between the Internet **508** and provider **504**, respectively, and the invention is not limited to any particular medium. In the present example, links **506** and **510** may be connections provided by one or more Internet Service Providers (ISPs) and customers **502** are configured with generic Internet web browsers. Links **506** and **510** may be secure or unsecured depending upon the requirements of a particular application.

In accordance with an embodiment, customers **502** enter into a rental agreement with provider **504** to rent audio/video (A/V) items **512** from provider **504** according to the "Max Out" and/or "Max Turns" approaches described herein. The invention is not limited to any particular approach for entering into the rental agreement. For example, customers **502** and provider **504** may enter into a rental agreement by mail, telephone or over the Internet, by customers **502** logging into a web site associated with provider **504**.

Customers **502** create and provide item selection criteria to provider **504** over links **506** and **510** and the Internet **508**.

US 7,024,381 B1

7

The invention is not limited to any particular approach for specifying and providing item selection criteria to provider 504. For example, according to one embodiment, customers 502 provide item selection criteria to provider 504 in one or more data files. According to another embodiment, customers 502 log onto a web site of provider 504 and use a graphical user interfaced (GUI) to specify attributes of the movies and music that customers desire to rent from provider 504.

The item selection attributes may include any attributes that describe, at least in part, movies, games or music that customers 502 desire to rent. For movies, example attributes include, without limitation, title, category, director name, actor name and year of release. For games, example attributes include, without limitation, title and category. For music, example attributes include, without limitation, title, category, artist/group name and year of release. Customers 502 may identify specific movies or music by the item selection criteria, or may provide various attributes and allow provider 504 to automatically select particular movies and music that satisfy the attributes specified. For example, customers 502 may specify item selection criteria that include horror movies released in 1999 and let provider 504 automatically select horror movies that were release in 1999. As another example, customers 502 may specify item selection criteria that include adventure movies starring Harrison Ford. Customers 502 may also specify an order or priority for the specified item selection criteria. For example, customers 502 may specify specific movie titles and the order in which they want to receive them. As another example, customers 502 may specify that they want to receive a particular number of movies of different types.

Once customers 502 and provider 504 have entered into a rental agreement and customers 502 have provided item selection criteria to provider 504, then A/V items 512 are rented to customers 502 over delivery channels 514 in accordance with the terms of the rental agreement. Specifically, according to the "Max Out" approach described herein, an initial set of A/V items 512, such as movies, games and music, are delivered to customers 502 over delivery channels 514 according to the terms of the rental agreement. Subsequent A/V items 512 are delivered whenever the specified item delivery criteria are satisfied. For example, additional A/V items 512 may be delivered upon the return of one or more A/V items 512 to provider, a request from customers 502, the arrival of a particular date, e.g., a specific day of the month, or the expiration of a specified period of time, e.g., fifteen days.

In accordance with the "Max Out" approach described herein, once the maximum number of A/V items 512 have been rented to a particular customer 502, then no additional A/V items 512 are rented until one or more rented A/V items 512 are returned to provider 504, or unless a surcharge is applied to the particular customer 502. Alternatively, the rental agreement between the particular customer 502 and provider 504 may be modified to increase the maximum number of A/V items 512 that may be rented simultaneously to the particular customer 502.

The rental agreement between customers 502 and provider 504 may also specify a maximum number of turns in combination with the "Max Turns" approach. In this situation, a maximum number of turns restricts how quickly customers 502 may refresh their A/V item 512 inventories. For example, suppose that a particular customer 502 agrees with provider 504 to rent up to four movies with a maximum of four turns per month. Under this agreement, the particular customer 502 may maintain a personal inventory of up to

8

four movies and rent four new movies per month. Thus, the particular customer 502 can completely "replace" his personal inventory once per month. If the particular customer 502 agreed to a maximum of up to eight turns per month, then the particular customer 502 would be able to completely replace his personal inventory twice per month.

Provider 504 is illustrated as a single entity for purposes of explanation only. Provider 504 may be centralized or distributed depending upon the requirements of a particular application. For example, provider 504 may be a central warehouse from which all A/V items 512 are provided. Alternatively, provider 504 may be implemented by a network of distributed warehouses.

FIG. 6 is a flow diagram that illustrates an approach for renting A/V items 512, e.g., movies, to customers over a communications network such as the Internet using both "Max Out" and "Max Turns" according to an embodiment. Referring also to FIG. 5, after starting in step 602, in step 604, a customer 502 enters into a rental agreement with provider 504. In the present example, customer 502 uses a generic web browser to access an Internet web site associated with provider 504 and enter into a rental agreement that specifies that customer 502 may maintain a personal inventory of four movies ("Max Out" of four) and receive up to four new movies per month ("Max Turns" of four). Furthermore, the rental agreement specifies that new movies will be delivered upon return of a rented movie from customer 502, i.e., the delivery criteria is a return of a movie by the customer.

In step 606, customer 502 creates and provides movie selection criteria to provider 504 that indicates movies that customer 502 desires to rent. For example, the movie selection criteria may specify particular movie titles that customer 502 desires to rent. The movie selection criteria may also specify an order or priority in which customer 502 wishes to rent the movies. Instead of identifying particular movie titles, the movie selection criteria may specify movie preferences for customer 502, e.g., types of movies, directors, actors, or any other movie preferences or attributes. In this situation, provider 504 automatically selects particular titles that satisfy the movie selection criteria. For example, the movie selection criteria may specify a preference for action movies starring a particular actor, with a preference for "new release" movies. Provider 504 attempt to provide movies to customer 502 that best satisfy the preferences indicated by the movie selection criteria.

In step 608, one or more initial movies 512 are delivered to customer 502 over delivery channel 514. The one or more initial movies 512 may be delivered to customer 502 via mail, courier, delivery agent or any other suitable means negotiated between customer 502 and provider and the invention is not limited to any particular type of delivery mechanism. For purposes of explanation only, is presumed in the present example that movies are mailed between customer 502 and provider 504.

The one or more initial movies 512 establish the personal movie inventory of customer 502. Customer 502 may choose to receive any number of movies up to the "Max Out" limit of four movies. Typically, customer 502 will choose to initially receive four movies in the initial delivery.

Once the one or more initial movies 512 have been mailed to customer 502, then in step 610, a determination is made whether any movies 512 have been returned by customer 502 to trigger another movie delivery. In the present example, the delivery of additional movies is triggered by the receipt, e.g., via mail, of one or more movies from customer 502. In the situation where customer 502 elects to

US 7,024,381 B1

9

not receive the maximum number of movies 512 in the initial delivery, then the delivery of additional movies 512 may also be triggered by a request from customer 502 for additional movies 512. For example, customer 502 may notify provider 504 via telephone, email or by accessing the web site associated with provider 504.

If, in step 610, a determination is made that one or more movies 512 were received from customer 502, then in step 612, a determination is made whether the maximum number of turns ("Max Turns") limit has been reached for the current cycle. In the present example, a determination is made whether four or more movies have been mailed in the current month. If not, then control returns to step 608, where one or more additional movies 512 are mailed to customer 502 via delivery channel 514 up to the "Max Out" limit of four.

If, in step 612, a determination is made that the "Max Turns" limit has been met for the current cycle, i.e., in the present example, four movies 512 have been mailed to customer 502 in the current month, then in step 614 a determination is made whether to override the current "Max Turns" limit. If so, then in step 616, a surcharge is applied to customer 502 and control returns to step 608 where the additional movies 514 are mailed to customer 502. If not, then in step 618, a determination is made whether to continue the subscription service. If so, then no additional movies are mailed to customer 502 during the current cycle, e.g., the current month, and the control returns to step 610. If, in step 618, a determination is made that service is not to be continued, then the process is complete in step 620.

In some situations, customer 502 may desire to increase or decrease the size of customer's 502 personal movie inventory by changing the current "Max Out" limit. According to one embodiment, customer 502 notifies provider 504, e.g., by telephone, mail, email or by accessing the web site associated with provider 504, that customer 502 wishes to change the "Max Out" limit. The movie rental agreement between customer 502 and provider 504 is then modified to reflect the change of the "Max Out" limit. In the situation where the "Max Out" limit is increased, then additional movies 512 may be immediately mailed to customer 502.

6. Inventory Management

The approach described herein for renting items to customers provides superior inventory management to prior approaches. Specifically, the use of item selection criteria provides for efficient inventory management by allowing the greatest number of items to be rented at any given time. Moreover, the greatest number of customers are provided with their most preferred items. For example, customers may specify priorities for the items indicated by the item selection criteria. Thus, if a particular customer's first choice is not available, or already rented, then the item having the next highest priority can be rented to the particular customer. According to one embodiment, customers may indicate items that are not yet available for rent. Then, the items are delivered to customers when they become available.

For example, referring again to FIG. 5, suppose that a particular customer 502 desires to rent an as-yet-unreleased movie entitled "ABC." The particular customer 502 indicates this movie to provider 504 by the item selection criteria. Since the movie ABC is not yet available, it cannot be delivered to the particular customer 502. However, when the movie ABC does become available, it can be shipped immediately to the particular customer 502, as well as other customers 502 who may have also requested the movie. This allows provider 504 to maximize the number of items rented

10

while ensuring that customers 502 are able to rent the highest priority items that they requested.

According to another embodiment, as yet unknown items may also be rented by specifying attributes of the unknown items. For example, the particular customer 502 may request to rent the next new movie of a particular director, for which the exact name is unknown to the particular customer. As another example, the particular customer 502 may request to rent the next album of a particular group that is currently in process and does not yet have a title.

7. Implementation Mechanisms

The approach described herein for renting items to customers is applicable to any type of rental application and (without limitation) is particularly well suited for Internet-based rental applications for renting movies and music to customers. The invention may be implemented in hardware circuitry, in computer software, or a combination of hardware circuitry and computer software and is not limited to a particular hardware or software implementation.

FIG. 7 is a block diagram that illustrates a computer system 700 upon which an embodiment of the invention may be implemented. Computer system 700 includes a bus 702 or other communication mechanism for communicating information, and a processor 704 coupled with bus 702 for processing information. Computer system 700 also includes a main memory 706, such as a random access memory (RAM) or other dynamic storage device, coupled to bus 702 for storing information and instructions to be executed by processor 704. Main memory 706 also may be used for storing temporary variables or other intermediate information during execution of instructions to be executed by processor 704. Computer system 700 further includes a read only memory (ROM) 708 or other static storage device coupled to bus 702 for storing static information and instructions for processor 704. A storage device 710, such as a magnetic disk or optical disk, is provided and coupled to bus 702 for storing information and instructions.

Computer system 700 may be coupled via bus 702 to a display 712, such as a cathode ray tube (CRT), for displaying information to a computer user. An input device 714, including alphanumeric and other keys, is coupled to bus 702 for communicating information and command selections to processor 704. Another type of user input device is cursor control 716, such as a mouse, a trackball, or cursor direction keys for communicating direction information and command selections to processor 704 and for controlling cursor movement on display 712. This input device typically has two degrees of freedom in two axes, a first axis (e.g., x) and a second axis (e.g., y), that allows the device to specify positions in a plane.

The invention is related to the use of computer system 700 for renting items to customers. According to one embodiment of the invention, the renting of items to customers is provided by computer system 700 in response to processor 704 executing one or more sequences of one or more instructions contained in main memory 706. Such instructions may be read into main memory 706 from another computer-readable medium, such as storage device 710. Execution of the sequences of instructions contained in main memory 706 causes processor 704 to perform the process steps described herein. One or more processors in a multi-processing arrangement may also be employed to execute the sequences of instructions contained in main memory 706. In alternative embodiments, hard-wired circuitry may be used in place of or in combination with software instructions to implement the invention. Thus, embodiments of the

US 7,024,381 B1

11

invention are not limited to any specific combination of hardware circuitry and software.

The term "computer-readable medium" as used herein refers to any medium that participates in providing instructions to processor 704 for execution. Such a medium may take many forms, including but not limited to, non-volatile media, volatile media, and transmission media. Non-volatile media includes, for example, optical or magnetic disks, such as storage device 710. Volatile media includes dynamic memory, such as main memory 706. Transmission media includes coaxial cables, copper wire and fiber optics, including the wires that comprise bus 702. Transmission media can also take the form of acoustic or light waves, such as those generated during radio wave and infrared data communications.

Common forms of computer-readable media include, for example, a floppy disk, a flexible disk, hard disk, magnetic tape, or any other magnetic medium, a CD-ROM, any other optical medium, punch cards, paper tape, any other physical medium with patterns of holes, a RAM, a PROM, and EPROM, a FLASH-EPROM, any other memory chip or cartridge, a carrier wave as described hereinafter, or any other medium from which a computer can read.

Various forms of computer readable media may be involved in carrying one or more sequences of one or more instructions to processor 704 for execution. For example, the instructions may initially be carried on a magnetic disk of a remote computer. The remote computer can load the instructions into its dynamic memory and send the instructions over a telephone line using a modem. A modem local to computer system 700 can receive the data on the telephone line and use an infrared transmitter to convert the data to an infrared signal. An infrared detector coupled to bus 702 can receive the data carried in the infrared signal and place the data on bus 702. Bus 702 carries the data to main memory 706, from which processor 704 retrieves and executes the instructions. The instructions received by main memory 706 may optionally be stored on storage device 710 either before or after execution by processor 704.

Computer system 700 also includes a communication interface 718 coupled to bus 702. Communication interface 718 provides a two-way data communication coupling to a network link 720 that is connected to a local network 722. For example, communication interface 718 may be an integrated services digital network (ISDN) card or a modem to provide a data communication connection to a corresponding type of telephone line. As another example, communication interface 718 may be a local area network (LAN) card to provide a data communication connection to a compatible LAN. Wireless links may also be implemented. In any such implementation, communication interface 718 sends and receives electrical, electromagnetic or optical signals that carry digital data streams representing various types of information.

Network link 720 typically provides data communication through one or more networks to other data devices. For example, network link 720 may provide a connection through local network 722 to a host computer 724 or to data equipment operated by an Internet Service Provider (ISP) 726. ISP 726 in turn provides data communication services through the world wide packet data communication network now commonly referred to as the "Internet" 728. Local network 722 and Internet 728 both use electrical, electromagnetic or optical signals that carry digital data streams. The signals through the various networks and the signals on network link 720 and through communication interface 718,

12

which carry the digital data to and from computer system 700, are exemplary forms of carrier waves transporting the information.

Computer system 700 can send messages and receive data, including program code, through the network(s), network link 720 and communication interface 718. In the Internet example, a server 730 might transmit a requested code for an application program through Internet 728, ISP 726, local network 722 and communication interface 718. In accordance with the invention, one such downloaded application provides for the renting of items to customers as described herein.

The received code may be executed by processor 704 as it is received, and/or stored in storage device 710, or other non-volatile storage for later execution. In this manner, computer system 700 may obtain application code in the form of a carrier wave.

The novel approach described herein for renting items to customers provides several advantages over prior approaches for renting items to customers. First, the decision of what items to rent may be separated from the decision of when to rent the items. Customers may specify what items to rent using the item selection criteria and receive the items at a future point in time, without having to go to the provider to pick up the items. The selection criteria may be user specific and may indicate a desired fulfillment sequence. Furthermore, customers are not constrained by conventional due dates and instead may establish continuous, serialized rental streams of items. The approach also allows more efficient inventory management.

The "Max Out" approach for inventory management allows users to maintain their own inventory of items that are periodically replaced by other items according to specified event criteria. The event criteria that trigger sending another item to a customer are very flexible and may be tailored to the requirements of a particular application. For example, as described herein, the event criteria may include a return of any of the items currently in use by the customer or merely customer notification. This is very convenient in the context of movie rentals since a the return of a movie to the provider automatically triggers the sending of another movie to the customer. The "Max Turns" approach for inventory management, when used alone or in combination with "Max Out," provides even greater flexibility for customers and providers. The max number of turns can be selected individually for particular customers depending upon their particular needs.

The "Max Out" and "Max Turns" approaches provide great flexibility in establishing subscription models to satisfy the needs of a particular application. Specifically, the size and replacement frequency of customer inventories can be tailored to each customer with individualized subscription plans.

In the foregoing specification, the invention has been described as applicable to an implementation anticipating Internet based ordering and mail or other long-distance delivery of the items, where the special advantages of the method are very attractive. However the same invention may be applied in a more conventional video, games, or music rental-store setting, where subscription customers may be allowed rentals of a specified number of movies, games, or music selections at any time, and/or in one subscription period, without rental return due dates, in exchange for a periodic rental subscription fee.

In the foregoing specification, the invention has been described with reference to specific embodiments thereof. However, various modifications and changes may be made

US 7,024,381 B1

13

14

thereto without departing from the broader spirit and scope of the invention. The specification and drawings are, accordingly, to be regarded in an illustrative sense rather than a restrictive sense.

The invention claimed is:

1. A computer-implemented method for renting movies to customers, the method comprising:

providing electronic digital information that causes one or more attributes of movies to be displayed;

establishing, in electronic digital form, from electronic digital information received over the Internet, a movie rental queue associated with a customer comprising an ordered list indicating two or more movies for renting to the customer;

causing to be delivered to the customer up to a specified number of movies based upon the order of the list;

in response to one or more delivery criteria being satisfied, selecting another movie based upon the order of the list and causing the selected movie to be delivered to the customer; and

in response to other electronic digital information received from the customer over the Internet, electronically updating the movie rental queue.

2. A computer-implemented method as recited in claim 1, wherein updating the movie rental queue comprises changing the order of the two or more movies for renting to the customer.

3. A computer-implemented method as recited in claim 1, wherein updating the movie rental queue comprises indicating an additional movie in the ordered list.

4. A computer-implemented method as recited in claim 1, wherein updating the movie rental queue comprises removing an indication of one or more of the movies from the ordered list.

5. A computer-implemented method as recited in claim 1, wherein the two or more movies for renting to the customer are selected by the customer.

6. A computer-implemented method as recited in claim 1, further comprising determining the order of the two or more movies based upon one or more preferences of the customer.

7. A computer-implemented method as recited in claim 1, wherein the delivery of the selected movie comprises delivery by mail.

8. A computer-implemented method as recited in claim 1, wherein the delivery of the selected movie comprises delivery by mail on one or more optical media.

9. A computer-implemented method as recited in claim 1, wherein the delivery criteria comprises receipt of the movie by mail.

10. A computer-implemented method as recited in claim 1, wherein a number of movies delivered to the customer and not yet returned does not exceed the specified number.

11. A method as recited in claim 1, wherein the other electronic digital information indicates one or more delivery criteria being satisfied.

12. A method as recited in claim 1, wherein the other electronic digital information comprises one or more selection criteria.

13. A method as recited in claim 1, wherein the movies comprise any of motion pictures, television series, documentaries, cartoons, music videos, video recordings of concert performances, instructional programs, and educational programs.

14. A computer-implemented method for renting movies to customers, the method comprising:

providing electronic digital information that causes one or more attributes of movies to be displayed;

establishing, in electronic digital form, from electronic digital information received over the Internet, a movie rental queue associated with a customer comprising an ordered list indicating two or more movies for renting to the customer;

causing to be delivered to the customer up to a specified number of movies based upon the order of the list, wherein the customer is not required to return the movies within a specified time associated with delivery;

in response to one or more delivery criteria being satisfied, selecting another movie based upon the order of the list and causing the selected movie to be delivered to the customer; and

in response to other electronic digital information received from the customer over the Internet, electronically updating the movie rental queue.

15. A computer-implemented method as recited in claim 14, wherein updating the movie rental queue comprises changing the order of the two or more movies for renting to the customer.

16. A computer-implemented method as recited in claim 14, wherein updating the movie rental queue comprises indicating an additional movie in the ordered list.

17. A computer-implemented method as recited in claim 14, wherein updating the movie rental queue comprises removing an indication of one or more of the movies from the ordered list.

18. A computer-implemented method as recited in claim 14, wherein the two or more movies for renting to the customer are selected by the customer.

19. A computer-implemented method as recited in claim 14, further comprising determining the order of the two or more movies based upon one or more preferences of the customer.

20. A computer-implemented method as recited in claim 14, wherein the delivery of the selected movie comprises delivery by mail.

21. A computer-implemented method as recited in claim 14, wherein the delivery of the selected movie comprises delivery by mail on one or more optical media.

22. A computer-implemented method as recited in claim 14, wherein the delivery criteria comprises receipt of the movie by mail.

23. A computer-implemented method as recited in claim 14, wherein a number of movies delivered to the customer and not yet returned does not exceed the specified number.

24. A computer-implemented method for renting movies to customers, the method comprising:

providing electronic digital information that causes one or more attributes of movies to be displayed;

establishing, in electronic digital form, from electronic digital information received over the Internet, a movie rental queue associated with a customer comprising an ordered list indicating two or more movies for renting to the customer;

causing to be delivered to the customer up to a specified number of movies based upon the order of the list, wherein the customer is not charged a fee for retaining one or more movies beyond a specified time associated with delivery;

in response to one or more delivery criteria being satisfied, selecting another movie based upon the order of the list and causing the selected movie to be delivered to the customer; and

US 7,024,381 B1

15

in response to other electronic digital information received from the customer over the Internet, electronically updating the movie rental queue.

25. A computer-implemented method as recited in claim 24, wherein updating the movie rental queue comprises changing the order of the two or more movies for renting to the customer.

26. A computer-implemented method as recited in claim 24, wherein updating the movie rental queue comprises indicating an additional movie in the ordered list.

27. A computer-implemented method as recited in claim 24, wherein updating the movie rental queue comprises removing an indication of one or more of the movies from the ordered list.

28. A computer-implemented method as recited in claim 24, wherein the two or more movies for renting to the customer are selected by the customer.

29. A computer-implemented method as recited in claim 24, further comprising determining the order of the two or more movies based upon one or more preferences of the customer.

30. A computer-implemented method as recited in claim 24, wherein the delivery of the selected movie comprises delivery by mail.

31. A computer-implemented method as recited in claim 24, wherein the delivery of the selected movie comprises delivery by mail on one or more optical media.

32. A computer-implemented method as recited in claim 24, wherein the delivery criteria comprises receipt of the movie by mail.

33. A computer-implemented method as recited in claim 24, wherein a number of movies delivered to the customer and not yet returned does not exceed the specified number.

34. A computer-implemented method for renting movies to customers, the method comprising:

establishing over the Internet a rental agreement with a customer that provides for charging the customer a periodic fee;

providing electronic digital information that causes one or more attributes of movies to be displayed;

establishing, in electronic digital form, from electronic digital information received over the Internet, a movie rental queue associated with a customer comprising an ordered list indicating two or more movies for renting to the customer;

causing to be delivered to the customer up to a specified number of movies based upon the order of the list;

in response to one or more delivery criteria being satisfied, if the customer is current on the periodic fee, selecting another movie based upon the order of the list and causing the selected movie to be delivered to the customer; and

in response to other electronic digital information received from the customer over the Internet, electronically updating the movie rental queue.

35. A computer-implemented method as recited in claim 34, wherein updating the movie rental queue comprises changing the order of the two or more movies for renting to the customer.

36. A computer-implemented method as recited in claim 34, wherein updating the movie rental queue comprises indicating an additional movie in the ordered list.

37. A computer-implemented method as recited in claim 34, wherein updating the movie rental queue comprises removing an indication of one or more of the movies from the ordered list.

16

38. A computer-implemented method as recited in claim 34, wherein the two or more movies for renting to the customer are selected by the customer.

39. A computer-implemented method as recited in claim 34, further comprising determining the order of the two or more movies indicated by the movie rental queue based upon preferences of the customer.

40. A computer-implemented method as recited in claim 34, wherein the delivery of the selected movie comprises delivery by mail.

41. A computer-implemented method as recited in claim 34, wherein the delivery of the selected movie comprises delivery by mail on one or more optical media.

42. A computer-implemented method as recited in claim 34, wherein the receipt of the movie previously delivered to the customer comprises receipt by mail.

43. A computer-implemented method as recited in claim 34, wherein a number of movies delivered to the customer and not yet returned does not exceed the specified number.

44. A computer system for renting movies to customers, comprising:

a computer that is coupled to a digital telecommunications network by a digital telecommunications link;

an electronic digital memory in the computer;

one or more sequences of computer program instructions stored in the electronic digital memory which, when executed, cause the computer to perform the steps of:

providing electronic digital information that causes one or more attributes of movies to be displayed;

establishing, in electronic digital form, from electronic digital information received over the Internet, a movie rental queue associated with a customer comprising an ordered list indicating two or more movies for renting to the customer;

causing to be delivered to the customer up to a specified number of movies based upon the order of the list;

in response to one or more delivery criteria being satisfied, selecting another movie based upon the order of the list and causing the selected movie to be delivered to the customer; and

in response to other electronic digital information received from the customer over the Internet, electronically updating the movie rental queue.

45. A computer system as recited in claim 44, wherein the other electronic digital information specifies changing the order of the two or more movies for renting to the customer.

46. A computer system as recited in claim 44, wherein the other electronic digital information specifies an additional movie to add to the ordered list.

47. A computer system as recited in claim 44, wherein the other electronic digital information specifies removing an indication of one or more of the movies from the ordered list.

48. A computer system as recited in claim 44, wherein the delivery of the selected movie comprises delivery by mail.

49. A computer system as recited in claim 44, wherein the delivery of the selected movie comprises delivery by mail on one or more optical media.

50. A computer system as recited in claim 44, wherein delivery criteria comprise receipt by mail.

51. A computer system as recited in claim 44, wherein a number of movies delivered to the customer and not yet returned does not exceed the specified number.

*  *  *  *  *

# EXHIBIT B

US006584450B1

| (12) **United States Patent**<br>Hastings et al. | (10) Patent No.: **US 6,584,450 B1**<br>(45) Date of Patent: **Jun. 24, 2003** |

---

(54) **METHOD AND APPARATUS FOR RENTING ITEMS**

(75) Inventors: **W. Reed Hastings**, Santa Cruz, CA (US); **Marc B. Randolph**, Santa Cruz, CA (US); **Neil Duncan Hunt**, Mountain View, CA (US)

(73) Assignee: **Netflix.com, Inc.**, Los Gatos, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/561,041**

(22) Filed: **Apr. 28, 2000**

(51) Int. Cl.$^7$ .............................................. G06F 17/60
(52) U.S. Cl. ........................................................ 705/26
(58) Field of Search ............................................. 705/26

(56) **References Cited**

U.S. PATENT DOCUMENTS

5,664,110 A * 9/1997 Green et al. ................... 705/26
5,918,213 A * 6/1999 Bernard et al. ................ 705/26

FOREIGN PATENT DOCUMENTS

JP       2001-243285    * 9/2001

OTHER PUBLICATIONS

"The Future of Television," Brad Dick, Editor, Broadcast Engineering, NA, Dec., 1999.*
Web page printout for http://www.netflix.com on Jan. 17, 1999, at http://web.archive.org/web/19990117080920/http://www.netflix.com/.*

"About Us" web page from www.netflix.com.*

* cited by examiner

*Primary Examiner*—Kenneth R. Rice
(74) *Attorney, Agent, or Firm*—Hickman Palermo Truong & Becker LLP; Edward A. Becker

(57) **ABSTRACT**

According to a computer-implemented approach for renting items to customers, customers specify what items to rent using item selection criteria separate from deciding when to receive the specified items. According to the approach, customers provide item selection criteria to a provider provides the items indicated by the item selection criteria to customer over a delivery channel. The provider may be either centralized or distributed depending upon the requirements of a particular application. A "Max Out" approach allows up to a specified number of items to be rented simultaneously to customers. A "Max Turns" approach allows up to a specified number of item exchanges to occur during a specified period of time. The "Max Out" and "Max Turns" approaches may be used together or separately with a variety of subscription methodologies.

**100 Claims, 7 Drawing Sheets**



**FIG. 1**



100

**FIG. 2**



## FIG. 3



**FIG. 4**



400

START ⟶ 402

CUSTOMER AND PROVIDER NEGOTIATE TERMS OF
"MAX TURNS" AGREEMENT ⟶ 404

INITIAL/NEXT ITEMS DELIVERED TO CUSTOMER ⟶ 406

CAN
ADDITIONAL ITEMS
BE PROVIDED WITHIN
TERMS OF "MAX TURNS"
AGREEMENT? ⟶ 408

YES

NO

CHANGE AGREEMENT
TERMS AND/OR
APPLY SURCHARGE ⟶ 412

YES

OVERRIDE
CURRENT AGREEMENT
TERMS? ⟶ 410

NO

WAIT UNTIL NEXT
RENTAL PERIOD ⟶ 414

END ⟶ 416

## FIG. 5



**FIG. 6**

600





**FIG. 7**

US 6,584,450 B1

**1**

# METHOD AND APPARATUS FOR RENTING ITEMS

## FIELD OF THE INVENTION

The present invention relates to inventory rental, and more specifically, to an approach for renting items to customers.

## BACKGROUND OF THE INVENTION

Conventional inventory rental models are typically based upon renting items for fixed rental periods and charging late fees for keeping rented items beyond a specified return date. These types of inventory models suffer from several significant limitations. First, conventional rental models require customers to make the decision of what items to rent at substantially the same time as the decision of when to rent the items. An example that illustrates this limitation is a video rental business. Customers go to a video rental store and select particular movies to rent at that time. The customers take the movies home and must return them by a particular due date or be charged a late fee. In this situation, the customers cannot decide what movies to rent before actually renting them. The customers may have a particular movie in mind, but there is no guarantee that the video rental store has the particular movie in stock. Moreover, due dates are inconvenient for customers, particularly for "new release" movies that are generally due back the next day.

Given the current demand for inventory rental and the limitations in the prior approaches, an approach for renting items to customers that does not suffer from limitations associated with conventional inventory rental models is highly desirable. In particular, an approach for renting inventory items to customers that allows separation of customers' decisions of what items to rent from when to rent the items is highly desirable.

There is a further need for an approach for renting items to customers on a continuous basis that avoids the use of fixed due dates or rental "windows" appurtenant to conventional rental models.

There is yet a further need for an approach for renting movies, games and music to customers that is more convenient and flexible to customers than conventional approaches.

## SUMMARY OF THE INVENTION

According to one aspect of the invention, a method is provided for renting items to customers on a subscription basis. Up to a specified number of items are provided to the customer. In response to one or more item delivery criteria being satisfied (such a return of one or more previously rented items), one or more other items are provided to the customer, wherein a total current number of items provided to the customer does not exceed the specified number.

According to another of the invention, a method is provided for renting items to customers. According to the method, one or more item selection criteria are received that indicate one or more items that a customer desires to rent. Up to a specified number of the one or more items indicated by the one or more item selection criteria are provided to the customer. In response to one or more item delivery criteria being satisfied, one or more other items indicated by the one or more item selection criteria are provided to the customer, wherein a total current number of items provided to the customer does not exceed the specified number.

**2**

According to another of the invention, a computer-implemented method is provided for renting items to customers. According to the method, one or more item selection criteria are received that indicate one or more items that a customer desires to rent. Up to a specified number of the one or more items indicated by the one or more item selection criteria are provided to the customer. In response to one or more item delivery criteria being satisfied, one or more other items indicated by the one or more item selection criteria are provided to the customer, wherein a total current number of items provided to the customer does not exceed the specified number.

According to another aspect of the invention, a computer-implemented method is provided for renting items to customers. According to the method, one or more item selection criteria are received that indicate one or more items that a customer desires to rent. Up to a specified number of the one or more items indicated by the one or more item selection criteria are provided to the customer. In response to one or more item delivery criteria being satisfied, one or more other items indicated by the one or more item selection criteria are provided to the customer, wherein a total number of items provided to the customer within a specified period of time does not exceed a specified limit.

According to another aspect of the invention, a method is provided for renting movies to customers. Up to a specified number of movies are provided to the customer. In response to a return of any of the movies provided to the customer, one or more other movies are provided to the customer, wherein a total current number of movies provided to the customer does not exceed the specified number.

According to another aspect of the invention, a method is provided for renting movies to customers. Up to a specified number of movies are provided to the customer. In response to a return of any of the movies provided to the customer, one or more other movies are provided to the customer, wherein a total current number of movies provided to the customer does not exceed the specified number and wherein a total number of movies provided to the customer within a specified period of time does not exceed a specified limit.

According to another aspect of the invention, a computer-implemented method is provided for renting movies to customers. According to the method, one or more movie selection criteria are received from a customer that indicates one or more movies that the customer desires to rent. Up to a specified number of the one or more movies indicated by the one or more movie selection criteria are provided to the customer. In response to a return of any of the movies provided to the customer, one or more other movies indicated by the one or more movie selection criteria are provided to the customer, wherein a total current number of movies provided to the customer does not exceed the specified number and wherein a total number of movies provided to the customer within a specified period of time does not exceed a specified limit.

According to another aspect of the invention, an apparatus for renting items to customers is provided. The apparatus comprises one or more processors and a memory communicatively coupled to the one or more processors. The memory includes one or more sequences of one or more instructions which, when executed by the one or more processors, cause the one or more processors to perform several steps. First, one or more item selection criteria are received that indicate one or more items that a customer desires to rent. Up to a specified number of the one or more items indicated by the one or more item selection criteria are

US 6,584,450 B1

3

provided to the customer. Finally, in response to one or more item delivery criteria being satisfied, one or more other items indicated by the one or more item selection criteria are provided to the customer, wherein a total current number of items provided to the customer does not exceed the specified number.

According to another aspect of the invention, an apparatus is provided for renting items to customers. The apparatus comprises an item rental mechanism configured to receive one or more item selection criteria that indicate one or more items that a customer desires to rent. The item rental mechanism is also configured to provide to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria. Finally, the item rental mechanism is configured to in response to one or more item delivery criteria being satisfied, provide to the customer one or more other items indicated by the one or more item selection criteria, wherein a total current number of items provided to the customer does not exceed the specified number.

## BRIEF DESCRIPTION OF THE DRAWINGS

Embodiments of the invention are illustrated by way of example, and not by way of limitation, in the figures of the accompanying drawings and in which like reference numerals refer to similar elements and in which:

FIG. 1 is a diagram depicting an approach for renting items to customers according to an embodiment.

FIG. 2 is a flow diagram depicting an approach for renting items to customers according to an embodiment.

FIG. 3 is a flow diagram depicting a "Max Out" approach for renting items to customers according to an embodiment.

FIG. 4 is a flow diagram depicting a "Max Turns" approach for renting items to customers according to an embodiment.

FIG. 5 is a diagram depicting an approach for renting audio/video items to customers over the Internet according to an embodiment.

FIG. 6 is a flow diagram illustrating an approach for renting audio/video items to customers over the Internet using both "Max Out" and "Max Turns" according to an embodiment; and

FIG. 7 is a block diagram of a computer system upon which embodiments of the invention may be implemented.

## DETAILED DESCRIPTION OF THE INVENTION

In the following description, for the purposes of explanation, specific details are set forth in order to provide a thorough understanding of the invention. However, it will be apparent that the invention may be practiced without these specific details. In other instances, well-known structures and devices are depicted in block diagram form in order to avoid unnecessarily obscuring the invention.

Various aspects and features of example embodiments of the invention are described in more detail hereinafter in the following sections: (1) functional overview; (2) item selection criteria; (3) item delivery; (4) "Max Out"; (5) "Max Turns"; (6) inventory management; and (7) implementation mechanisms.

### 1. FUNCTIONAL OVERVIEW

FIG. 1 is a block diagram 100 that illustrates an approach for renting items to customers according to various embodi-

4

ments described herein. As used herein, the term "items" refers to any commercial goods that can be rented to customers. Examples of items include movies, music and games stored on a non-volatile memory such as a tape, other magnetic medium, optical medium, read-only memory or the like, and the invention is not limited to any particular type of item. In general, the decision of what items to rent is separated from the decision of when to rent the items. Customers may specify what items to rent using one or more item selection criteria separate from deciding when to receive the specified items. Furthermore, customers are not constrained by conventional rental "windows" and instead can have continuous, serialized rental of items.

According to one embodiment, a customer 102 provides one or more item selection criteria to a provider 104 over a link 106. Link 106 may be any medium for transferring data between customer 102 and provider 104 and the invention is not limited to any particular medium. Examples of link 106 include, without limitation, a network such as a LAN, WAN or the Internet, a telecommunications link, a wire or optical link or a wireless connection.

The item selection criteria indicate items that customer 102 desires to rent from provider 104. In response to receiving the item selection criteria from customer 102, provider 104 provides the items indicated by the item selection criteria to customer 102 over a delivery channel 108. Delivery channel 108 may be implemented by any mechanism or medium that provides for the transfer of items from provider 104 to customer 102 and the invention is not limited to any particular type of delivery channel. Examples of delivery channel 108 include, without limitation, mail delivery, courier delivery or delivery using a delivery agent. Provider 104 may be centralized or distributed depending upon the requirements of a particular application.

According to an embodiment, a "Max Out" approach allows up to a specified number of items to be rented simultaneously to customer 102 by provider 104. According to another embodiment, a "Max Turns" approach allows up to a specified number of item exchanges to occur during a specified period of time. The "Max Out" and "Max Turns" approaches may be used together or separately with a variety of subscription methodologies.

The approach just described for renting items to customers is now described with reference to a flow diagram 200 of FIG. 2. After starting in step 202, in step 204, customer 102 creates item selection criteria. In step 206, customer 102 provides the item selection criteria to provider 104. In step 208, in response to provider 104 receiving the item selection criteria from customer 102, provider 104 provides one or more items indicated by the item selection criteria to customer 102. The process is complete in step 210.

### 2. ITEM SELECTION CRITERIA

The one or more item selection criteria provided by customer 102 to provider 104 indicate the particular items that customer 102 desires to rent from provider 104. Thus, the item selection criteria define a customer-specific order queue that is fulfilled by provider 104. According to one embodiment, the item selection criteria specify attributes of items to be provided by provider 104 to customer 102. Item selection criteria may specify any type of item attributes and the invention is not limited to particular item attributes. Examples of item attributes include, without limitation, identifier attributes, type attributes and cost attributes. Item selection criteria may be changed at any time to reflect changes in items that customers desire to rent from a provider.

US 6,584,450 B1

5

### 3. ITEM DELIVERY

According to one embodiment, items are delivered by provider 104 to customer 102 over delivery channel 108 based upon item delivery criteria. More specifically, the delivery of items from provider 104 to customer 102 is triggered by item delivery criteria being satisfied. The item delivery criteria may include a wide range of criteria and the invention is not limited to any particular item delivery criteria. Examples of item delivery criteria include, without limitation, customer request/notification, customer notification that an item is being returned, customer return of an item, the occurrence of a specified date, the elapsing of a specified period of time or a customer payment.

The item delivery criteria may be specified by customer 102 to provider 104 or negotiated by customer 102 and provider 104 as part of a subscription service. For example, a particular subscription service may include item delivery criteria that specifies that a particular number of items are to be delivered monthly. As another example, item delivery criteria may specify that an initial set of items is to be delivered by provider 104 to customer 102 upon initiation of a subscription service and that additional items are to be delivered to customer 102 upon return of items to provider 104. Item delivery criteria may be applied uniformly to all items to be delivered to a customer, or may be item specific. For example, item delivery criteria may specify a particular date, i.e., the third Wednesday of every month, for all item deliveries. Alternatively, separate item delivery dates may be assigned to each item.

### 4. "MAX OUT"

According to one embodiment, a "Max Out" approach is used to manage the number of items that may be simultaneously rented to customers. According to the "Max Out" approach, up to a specified number of items may be rented simultaneously to a customer. Thus, the "Max Out" approach establishes the size of an inventory of items that may be maintained by customers. The specified number of items may be specific to each customer or may be common to one or more customers. In the present example, if the specified number of items is three, then up to three items may be rented simultaneously by provider 104 to customer 102. If the specified number of items are currently rented to customer 102 and the specified item delivery criteria triggers the delivery of one or more additional items, then those items are not delivered until one or more items are returned by customer 102 to provider 104.

According to one embodiment, in situations where the specified number of items are currently rented to customer 102 and the specified item delivery criteria triggers the delivery of one or more additional items, then the one or more additional items are delivered to customer 102 and customer 102 and a surcharge is applied customer 102. The specified number of items may then be increased thereafter to reflect the additional items delivered to customer 102 and increase the size of the inventory maintained by customer 102. Alternatively, the specified number of items may remain the same and number of items maintained by customer 102 returned to the prior level after items are returned to provider 104 by customer 102. When used in conjunction with the "Max Turns" approach described hereinafter, the specified number of items may be unlimited.

The "Max Out" approach for managing the number of items that may be simultaneously rented to customers is now described with reference to a flow diagram 300 of FIG. 3. After starting in step 302, in step 304, one or more initial

6

items are delivered to customer 102 to establish the inventory maintained by customer 102. Note that an initial delivery of items is not required and according to one embodiment, the inventory of customer 102 is incrementally established over time.

In step 306, a determination is made whether the item delivery criteria have been satisfied. If not, then the determination continues to be made until the item delivery criteria are satisfied. As described previously herein, the delivery criteria may include customer notification generally, customer notification that an item is being returned, the actual return of an item, the occurrence of a specific date, or that a specified amount of time has elapsed.

Once the item delivery criteria are satisfied, then in step 308, a determination is made whether the specified number of items have been delivered. If not, then control returns to step 304 and one or more additional items are delivered by provider 104 to customer 102. If however, in step 308, the specified number of items have been delivered, then in step 310, a determination is made whether the specified number of items, i.e., the "Max Out" limit, is to be overridden. As previously described, the specified number of items may be overridden by increasing the specified number of items, i.e., the "Max Out" limit, to allow additional items to be delivered to customer 102 and charging a fee to customer 102. Alternatively, the specified number of items is not changed and a surcharge applied to customer 102. This process continues for the duration of the subscription and is then complete in step 312.

### 5. "MAX TURNS"

According to one embodiment, a "Max Turns" approach is used to rent items to customers. According to the "Max Turns" approach, up to a specified number of item exchanges may be performed during a specified period of time. For example, referring to FIG. 1, suppose that provider 104 agrees to rent items to customer 102 with a "Max Turns" limit of three items per month. This means that customer 102 may make up to three item exchanges per month. This approach may be implemented independent of the number of items that a customer may have rented at any given time under the "Max Out" approach. The approach is also independent of the particular item delivery criteria used.

According to one embodiment, the "Max Turns" approach is implemented in combination with the "Max Out" approach to rent items to customers. In this situation, up to a specified number of total items are simultaneously rented to customer 102 and up to a specified number of item exchanges may be made during a specified period of time. Thus, using the "Max Out" and the "Max Turns" approaches together essentially establishes a personal item inventory for customer 102 based upon the "Max Out" limit that may be periodically refreshed based upon the "Max Turns" limit selected.

In some situations, customer 102 may wish to exchange more than the specified number of items during a specified period. According to one embodiment, in this situation, provider 104 agrees to rent additional items above the specified number to customer 102 and to charge customer 102 for the additional items. For example, suppose that provider 104 agrees to rent items to customer 102 with up to three item turns (exchanges) per month. If, in a particular month, customer 102 requires two additional turns, then the two additional items are provided to customer 102 and a surcharge is applied to customer 102 for the additional two items.

US 6,584,450 B1

7

In other situations, customer 102 may not use all of its allotted turns during a specified period. According to one embodiment, customers lose unused turns during a subscription period. For example, if customer 102 has a "Max Turns" limit of four item exchanges per month and only makes two item exchanges in a particular month, then the two unused exchanges are lost and cannot be used. At the start of the next month, customer 102 would be entitled to four new item exchanges.

According to another embodiment, customers are allowed to carry over unused turns to subsequent subscription periods. For example, if customer 102 has a "Max Turns" limit of four item exchanges per month and only makes two item exchanges in a particular month, then the two unused exchanges are lost and cannot be used. At the start of the next month, customer 102 would be entitled to six new item exchanges, two from the prior month and four for the current month.

The "Max Turns" approach for renting items to customers is now described with reference to a flow diagram 400 of FIG. 4. After starting in step 402, in step 404, customer 102 and provider 104 agree upon the terms of the "Max Turns" agreement. Specifically, customer 102 and provider 104 agree at least upon the maximum number of turns that are allowed in a specified period of time.

In step 406, in response to one or more item delivery criteria being satisfied, provider 104 provides one or more items to customer 102 over delivery channel 108. Any type of item delivery criteria may be used with the "Max Turns" approach and the invention is not limited to any particular delivery criteria. For example, the initial one or more items may be delivered to customer 102 in response to a subscription payment made by customer 102 to provider 104, the initiation of a specified subscription period, or by request of customer 102 for the initial rental items. The number of initial one or more items must not exceed the terms of the "Max Turns" agreement.

In step 408, in response to one or more delivery criteria being satisfied, a determination is made whether additional items can be provided to customer 102 within the terms of the "Max Turns" agreement. For example, if the number of items rented to customer in the current subscription period is less than the agreed-upon "Max Turns," then additional items can be rented to customer 102 within the terms of the "Max Turns" agreement. In this situation, this determination may be made in response to customer 102 returning one or more items to provider 104, or by customer 102 requesting additional items.

If, in step 408, a determination is made that additional items can be rented to customer 102 within the terms of the "Max Turns" agreement, then control returns to step 406 where one or more additional items are rented to customer 102. If however, in step 408, a determination is made that additional items cannot be rented to customer 102 within the terms of the "Max Turns" agreement, then in step 410, a determination is made whether to override the current agreement terms. If so, then in step 412, the agreement terms are changed to allow for a larger number of terms and customer 102 is charged accordingly, or the terms are left unchanged and a surcharge is applied for the additional items to be delivered. Control then returns to step 406, where one or more additional items are delivered to customer 102.

If in step 410, a determination is made that the current agreement is not to be overridden, then in step 414, no items are delivered to customer 102 until the next subscription period. For example, the request for additional items may be

8

received at the end of a subscription period and instead of renting the additional items immediately, they are instead delivered during the subsequent subscription period. Control then returns to step 406 where one or more additional items are rented to customer or the process is complete in step 416.

The approach for renting items described herein is now described in the context of renting to customers audio/video (A/V) items, such as movies, games and music, stored on various media. FIG. 5 is a diagram 500 that depicts a set of customers 502 that desire to A/V items from a provider 504. Customers 502 communicate with provider 504 over links 506, the global packet-switched network referred to as the "Internet," and a link 510.

Links 506 and 510 may be any medium for transferring data between customers 502 and the Internet 508 and between the Internet 508 and provider 504, respectively, and the invention is not limited to any particular medium. In the present example, links 506 and 510 may be connections provided by one or more Internet Service Providers (ISPs) and customers 502 are configured with generic Internet web browsers. Links 506 and 510 may be secure or unsecured depending upon the requirements of a particular application.

In accordance with an embodiment, customers 502 enter into a rental agreement with provider 504 to rent audio/video (A/V) items 512 from provider 504 according to the "Max Out" and/or "Max Turns" approaches described herein. The invention is not limited to any particular approach for entering into the rental agreement. For example, customers 502 and provider 504 may enter into a rental agreement by mail, telephone or over the Internet, by customers 502 logging into a web site associated with provider 504.

Customers 502 create and provide item selection criteria to provider 504 over links 506 and 510 and the Internet 508. The invention is not limited to any particular approach for specifying and providing item selection criteria to provider 504. For example, according to one embodiment, customers 502 provide item selection criteria to provider 504 in one or more data files. According to another embodiment, customers 502 log onto a web site of provider 504 and use a graphical user interfaced (GUI) to specify attributes of the movies and music that customers desire to rent from provider 504.

The item selection attributes may include any attributes that describe, at least in part, movies, games or music that customers 502 desire to rent. For movies, example attributes include, without limitation, title, category, director name, actor name and year of release. For games, example attributes include, without limitation, title and category. For music, example attributes include, without limitation, title, category, artist/group name and year of release. Customers 502 may identify specific movies or music by the item selection criteria, or may provide various attributes and allow provider 504 to automatically select particular movies and music that satisfy the attributes specified. For example, customers 502 may specify item selection criteria that include horror movies released in 1999 and let provider 504 automatically select horror movies that were release in 1999. As another example, customers 502 may specify item selection criteria that include adventure movies starring Harrison Ford. Customers 502 may also specify an order or priority for the specified item selection criteria. For example, customers 502 may specify specific movie titles and the order in which they want to receive them. As another example, customers 502 may specify that they want to receive a particular number of movies of different types.

Once customers 502 and provider 504 have entered into a rental agreement and customers 502 have provided item

US 6,584,450 B1

9

10

selection criteria to provider **504**, then A/V items **512** are rented to customers **502** over delivery channels **514** in accordance with the terms of the rental agreement. Specifically, according to the "Max Out" approach described herein, an initial set of A/V items **512**, such as movies, games and music, are delivered to customers **502** over delivery channels **514** according to the terms of the rental agreement. Subsequent A/V items **512** are delivered whenever the specified item delivery criteria are satisfied. For example, additional A/V items **512** may be delivered upon the return of one or more A/V items **512** to provider, a request from customers **502**, the arrival of a particular date, e.g., a specific day of the month, or the expiration of a specified period of time, e.g., fifteen days.

In accordance with the "Max Out" approach described herein, once the maximum number of A/V items **512** have been rented to a particular customer **502**, then no additional A/V items **512** are rented until one or more rented A/V items **512** are returned to provider **504**, or unless a surcharge is applied to the particular customer **502**. Alternatively, the rental agreement between the particular customer **502** and provider **504** may be modified to increase the maximum number of A/V items **512** that may be rented simultaneously to the particular customer **502**.

The rental agreement between customers **502** and provider **504** may also specify a maximum number of turns in combination with the "Max Out" approach. In this situation, a maximum number of turns restricts how quickly customers **502** may refresh their A/V item **512** inventories. For example, suppose that a particular customer **502** agrees with provider **504** to rent up to four movies with a maximum of four turns per month. Under this agreement, the particular customer **502** may maintain a personal inventory of up to four movies and rent four new movies per month. Thus, the particular customer **502** can completely "replace" his personal inventory once per month. If the particular customer **502** agreed to a maximum of up to eight turns per month, then the particular customer **502** would be able to completely replace his personal inventory twice per month.

Provider **504** is illustrated as a single entity for purposes of explanation only. Provider **504** may be centralized or distributed depending upon the requirements of a particular application. For example, provider **504** may be a central warehouse from which all A/V items **512** are provided. Alternatively, provider **504** may be implemented by a network of distributed warehouses.

FIG. 6 is a flow diagram that illustrates an approach for renting A/V items **512**, e.g., movies, to customers over a communications network such as the Internet using both "Max Out" and "Max Turns" according to an embodiment. Referring also to FIG. 5, after starting in step **602**, in step **604**, a customer **502** enters into a rental agreement with provider **504**. In the present example, customer **502** uses a generic web browser to access an Internet web site associated with provider **504** and enter into a rental agreement that specifies that customer **502** may maintain a personal inventory of four movies ("Max Out" of four) and receive up to four new movies per month ("Max Turns" of four). Furthermore, the rental agreement specifies that new movies will be delivered upon return of a rented movie from customer **502**, i.e., the delivery criteria is a return of a movie by the customer.

In step **606**, customer **502** creates and provides movie selection criteria to provider **504** that indicates movies that customer **502** desires to rent. For example, the movie selection criteria may specify particular movie titles that

customer **502** desires to rent. The movie selection criteria may also specify an order or priority in which customer **502** wishes to rent the movies. Instead of identifying particular movie titles, the movie selection criteria may specify movie preferences for customer **502**, e.g., types of movies, directors, actors, or any other movie preferences or attributes. In this situation, provider **504** automatically selects particular titles that satisfy the movie selection criteria. For example, the movie selection criteria may specify a preference for action movies starring a particular actor, with a preference for "new release" movies. Provider **504** attempt to provide movies to customer **502** that best satisfy the preferences indicated by the movie selection criteria.

In step **608**, one or more initial movies **512** are delivered to customer **502** over delivery channel **514**. The one or more initial movies **512** may be delivered to customer **502** via mail, courier, delivery agent or any other suitable means negotiated between customer **502** and provider and the invention is not limited to any particular type of delivery mechanism. For purposes of explanation only, is presumed in the present example that movies are mailed between customer **502** and provider **504**.

The one or more initial movies **512** establish the personal movie inventory of customer **502**. Customer **502** may choose to receive any number of movies up to the "Max Out" limit of four movies. Typically, customer **502** will choose to initially receive four movies in the initial delivery.

Once the one or more initial movies **512** have been mailed to customer **502**, then in step **610**, a determination is made whether any movies **512** have been returned by customer **502** to trigger another movie delivery. In the present example, the delivery of additional movies is triggered by the receipt, e.g., via mail, of one or more movies from customer **502**. In the situation where customer **502** elects to not receive the maximum number of movies **512** in the initial delivery, then the delivery of additional movies **512** may also be triggered by a request from customer **502** for additional movies **512**. For example, customer **502** may notify provider **504** via telephone, email or by accessing the web site associated with provider **504**.

If, in step **610**, a determination is made that one or more movies **512** were received from customer **502**, then in step **612**, a determination is made whether the maximum number of turns ("Max Turns") limit has been reached for the current cycle. In the present example, a determination is made whether four or more movies have been mailed in the current month. If not, then control returns to step **608**, where one or more additional movies **512** are mailed to customer **502** via delivery channel **514** up to the "Max Out" limit of four.

If, in step **612**, a determination is made that the "Max Turns" limit has been met for the current cycle, i.e., in the present example, four movies **512** have been mailed to customer **502** in the current month, then in step **614** a determination is made whether to override the current "Max Turns" limit. If so, then in step **616**, a surcharge is applied to customer **502** and control returns to step **608** where the additional movies **514** are mailed to customer **502**. If not, then in step **618**, a determination is made whether to continue the subscription service. If so, then no additional movies are mailed to customer **502** during the current cycle, e.g., the current month, and the control returns to step **610**. If, in step **618**, a determination is made that service is not to be continued, then the process is complete in step **620**.

In some situations, customer **502** may desire to increase or decrease the size of customer's **502** personal movie

<table>
<tr><td>11</td><td>12</td></tr>
</table>

inventory by changing the current "Max Out" limit. According to one embodiment, customer **502** notifies provider **504**, e.g., by telephone, mail, email or by accessing the web site associated with provider **504**, that customer **502** wishes to change the "Max Out" limit. The movie rental agreement between customer **502** and provider **504** is then modified to reflect the change of the "Max Out" limit. In the situation where the "Max Out" limit is increased, then additional movies **512** may be immediately mailed to customer **502**.

### 6. INVENTORY MANAGEMENT

The approach described herein for renting items to customers provides superior inventory management to prior approaches. Specifically, the use of item selection criteria provides for efficient inventory management by allowing the greatest number of items to be rented at any given time. Moreover, the greatest number of customers are provided with their most preferred items. For example, customers may specify priorities for the items indicated by the item selection criteria. Thus, if a particular customer's first choice is not available, or already rented, then the item having the next highest priority can be rented to the particular customer. According to one embodiment, customers may indicate items that are not yet available for rent. Then, the items are delivered to customers when they become available.

For example, referring again to FIG. 5, suppose that a particular customer **502** desires to rent an as-yet-unreleased movie entitled "ABC." The particular customer **502** indicates this movie to provider **504** by the item selection criteria. Since the movie ABC is not yet available, it cannot be delivered to the particular customer **502**. However, when the movie ABC does become available, it can be shipped immediately to the particular customer **502**, as well as other customers **502** who may have also requested the movie. This allows provider **504** to maximize the number of items rented while ensuring that customers **502** are able to rent the highest priority items that they requested.

According to another embodiment, as yet unknown items may also be rented by specifying attributes of the unknown items. For example, the particular customer **502** may request to rent the next new movie of a particular director, for which the exact name is unknown to the particular customer. As another example, the particular customer **502** may request to rent the next album of a particular group that is currently in process and does not yet have a title.

### 7. IMPLEMENTATION MECHANISMS

The approach described herein for renting items to customers is applicable to any type of rental application and (without limitation) is particularly well suited for Internet-based rental applications for renting movies and music to customers. The invention may be implemented in hardware circuitry, in computer software, or a combination of hardware circuitry and computer software and is not limited to a particular hardware or software implementation.

FIG. 7 is a block diagram that illustrates a computer system **700** upon which an embodiment of the invention may be implemented. Computer system **700** includes a bus **702** or other communication mechanism for communicating information, and a processor **704** coupled with bus **702** for processing information. Computer system **700** also includes a main memory **706**, such as a random access memory (RAM) or other dynamic storage device, coupled to bus **702** for storing information and instructions to be executed by processor **704**. Main memory **706** also may be used for storing temporary variables or other intermediate informa-

tion during execution of instructions to be executed by processor **704**. Computer system **700** further includes a read only memory (ROM) **708** or other static storage device coupled to bus **702** for storing static information and instructions for processor **704**. A storage device **710**, such as a magnetic disk or optical disk, is provided and coupled to bus **702** for storing information and instructions.

Computer system **700** may be coupled via bus **702** to a display **712**, such as a cathode ray tube (CRT), for displaying information to a computer user. An input device **714**, including alphanumeric and other keys, is coupled to bus **702** for communicating information and command selections to processor **704**. Another type of user input device is cursor control **716**, such as a mouse, a trackball, or cursor direction keys for communicating direction information and command selections to processor **704** and for controlling cursor movement on display **712**. This input device typically has two degrees of freedom in two axes, a first axis (e.g., x) and a second axis (e.g., y), that allows the device to specify positions in a plane.

The invention is related to the use of computer system **700** for renting items to customers. According to one embodiment of the invention, the renting of items to customers is provided by computer system **700** in response to processor **704** executing one or more sequences of one or more instructions contained in main memory **706**. Such instructions may be read into main memory **706** from another computer-readable medium, such as storage device **710**. Execution of the sequences of instructions contained in main memory **706** causes processor **704** to perform the process steps described herein. One or more processors in a multi-processing arrangement may also be employed to execute the sequences of instructions contained in main memory **706**. In alternative embodiments, hard-wired circuitry may be used in place of or in combination with software instructions to implement the invention. Thus, embodiments of the invention are not limited to any specific combination of hardware circuitry and software.

The term "computer-readable medium" as used herein refers to any medium that participates in providing instructions to processor **704** for execution. Such a medium may take many forms, including but not limited to, non-volatile media, volatile media, and transmission media. Non-volatile media includes, for example, optical or magnetic disks, such as storage device **710**. Volatile media includes dynamic memory, such as main memory **706**. Transmission media includes coaxial cables, copper wire and fiber optics, including the wires that comprise bus **702**. Transmission media can also take the form of acoustic or light waves, such as those generated during radio wave and infrared data communications.

Common forms of computer-readable media include, for example, a floppy disk, a flexible disk, hard disk, magnetic tape, or any other magnetic medium, a CD-ROM, any other optical medium, punch cards, paper tape, any other physical medium with patterns of holes, a RAM, a PROM, and EPROM, a FLASH-EPROM, any other memory chip or cartridge, a carrier wave as described hereinafter, or any other medium from which a computer can read.

Various forms of computer readable media may be involved in carrying one or more sequences of one or more instructions to processor **704** for execution. For example, the instructions may initially be carried on a magnetic disk of a remote computer. The remote computer can load the instructions into its dynamic memory and send the instructions over a telephone line using a modem. A modem local to computer

US 6,584,450 B1

13

system **700** can receive the data on the telephone line and use an infrared transmitter to convert the data to an infrared signal. An infrared detector coupled to bus **702** can receive the data carried in the infrared signal and place the data on bus **702**. Bus **702** carries the data to main memory **706**, from which processor **704** retrieves and executes the instructions. The instructions received by main memory **706** may optionally be stored on storage device **710** either before or after execution by processor **704**.

Computer system **700** also includes a communication interface **718** coupled to bus **702**. Communication interface **718** provides a two-way data communication coupling to a network link **720** that is connected to a local network **722**. For example, communication interface **718** may be an integrated services digital network (ISDN) card or a modem to provide a data communication connection to a corresponding type of telephone line. As another example, communication interface **718** may be a local area network (LAN) card to provide a data communication connection to a compatible LAN. Wireless links may also be implemented. In any such implementation, communication interface **718** sends and receives electrical, electromagnetic or optical signals that carry digital data streams representing various types of information.

Network link **720** typically provides data communication through one or more networks to other data devices. For example, network link **720** may provide a connection through local network **722** to a host computer **724** or to data equipment operated by an Internet Service Provider (ISP) **726**. ISP **726** in turn provides data communication services through the world wide packet data communication network now commonly referred to as the "Internet" **728**. Local network **722** and Internet **728** both use electrical, electromagnetic or optical signals that carry digital data streams. The signals through the various networks and the signals on network link **720** and through communication interface **718**, which carry the digital data to and from computer system **700**, are exemplary forms of carrier waves transporting the information.

Computer system **700** can send messages and receive data, including program code, through the network(s), network link **720** and communication interface **718**. In the Internet example, a server **730** might transmit a requested code for an application program through Internet **728**, ISP **726**, local network **722** and communication interface **718**. In accordance with the invention, one such downloaded application provides for the renting of items to customers as described herein.

The received code may be executed by processor **704** as it is received, and/or stored in storage device **710**, or other non-volatile storage for later execution. In this manner, computer system **700** may obtain application code in the form of a carrier wave.

The novel approach described herein for renting items to customers provides several advantages over prior approaches for renting items to customers. First, the decision of what items to rent may be separated from the decision of when to rent the items. Customers may specify what items to rent using the item selection criteria and receive the items at a future point in time, without having to go to the provider to pick up the items. The selection criteria may be user specific and may indicate a desired fulfillment sequence. Furthermore, customers are not constrained by conventional due dates and instead may establish continuous, serialized rental streams of items. The approach also allows more efficient inventory management.

14

The "Max Out" approach for inventory management allows users to maintain their own inventory of items that are periodically replaced by other items according to specified event criteria. The event criteria that trigger sending another item to a customer are very flexible and may be tailored to the requirements of a particular application. For example, as described herein, the event criteria may include a return of any of the items currently in use by the customer or merely customer notification. This is very convenient in the context of movie rentals since a return of a movie to the provider automatically triggers the sending of another movie to the customer. The "Max Turns" approach for inventory management, when used alone or in combination with "Max Out," provides even greater flexibility for customers and providers. The max number of turns can be selected individually for particular customers depending upon their particular needs.

The "Max Out" and "Max Turns" approaches provide great flexibility in establishing subscription models to satisfy the needs of a particular application. Specifically, the size and replacement frequency of customer inventories can be tailored to each customer with individualized subscription plans.

In the foregoing specification, the invention has been described as applicable to an implementation anticipating Internet based ordering and mail or other long-distance delivery of the items, where the special advantages of the method are very attractive. However the same invention may be applied in a more conventional video, games, or music rental-store setting, where subscription customers may be allowed rentals of a specified number of movies, games, or music selections at any time, and/or in one subscription period, without rental return due dates, in exchange for a periodic rental subscription fee.

In the foregoing specification, the invention has been described with reference to specific embodiments thereof. However, various modifications and changes may be made thereto without departing from the broader spirit and scope of the invention. The specification and drawings are, accordingly, to be regarded in an illustrative sense rather than a restrictive sense.

What is claimed is:

1. A method for renting items to customers, the method comprising the computer-implemented steps of:

receiving one or more item selection criteria that indicates one or more items that a customer desires to rent;

providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria; and

in response to receiving any of the items provided to the customer, providing to the customer one or more other items indicated by the one or more item selection criteria, wherein a total current number of items provided to the customer does not exceed the specified number.

2. A method as recited in claim 1, wherein a total number of items provided to the customer within a specified period of time does not exceed a specified limit.

3. A method as recited in claim 2, further comprising if the total number of items provided to the customer within the specified period of time is less than the specified limit, then increasing the specified limit for another specified period of time.

4. A method as recited in claim 1, wherein

the one or more item selection criteria indicates a desired order for the one or more items that a customer desires to rent,

US 6,584,450 B1

15

the step of providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria includes providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria in the desired order indicated by the item selection criteria, and

the step of providing to the customer one or more other items indicated by the one or more item selection criteria includes providing to the customer one or more other items indicated by the one or more item selection criteria in the desired order indicated by the one or more item selection criteria.

5. A method as recited in claim 4, further comprising if a particular item from the one or more items indicated by the one or more item selection criteria is not available, then providing another item from the one or more items based upon the desired order indicated by the one or more item selection criteria.

6. A method as recited in claim 1, wherein

the one or more item selection criteria specifies one or more preferred item attributes,

the step of providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria includes automatically selecting and providing to the customer up to a specified number of one or more items that have one or more of the one or more preferred item attributes specified by the one or more item selection criteria, and

the step of providing to the customer one or more other items indicated by the one or more item selection criteria includes automatically selecting and providing to the customer one or more other items that have one or more of the one or more preferred item attributes specified by the one or more item selection criteria.

7. A method as recited in claim 1,

further comprising:

establishing, based upon the one or more item selection criteria, an item rental queue for the customer, wherein the item rental queue contains one or more entries that specify the one or more items that the customer desires to rent; and

in response to receiving back any of the items provided to the customer, selecting the one or more other items from the item rental queue.

8. A method as recited in claim 1,

further comprising in response to receiving a customer notification, providing to the customer a second set of one or more other items indicated by the one or more item selection criteria.

9. A method as recited in claim 1,

further comprising in response to expiration of a specified amount of time, providing to the customer a second set of one or more other items indicated by the one or more item selection criteria.

10. A method as recited in claim 1,

further comprising in response to a specified date being reached, providing to the customer a second set of one or more other items indicated by the one or more item selection criteria.

11. A method as recited in claim 1,

further comprising in response to a specified fee being received, providing to the customer a second set of one or more other items indicated by the one or more item selection criteria.

12. A method as recited in claim 1, wherein items are provided to the customer by mail.

16

13. A method as recited in claim 1, wherein items are provided to the customer by a delivery agent.

14. A method as recited in claim 1, wherein:

the one or more items are one or more movies,

the one or more item selection criteria are one or more movie selection criteria,

the step of receiving one or more item selection criteria that indicates one or more items that a customer desires to rent includes receiving one or more movie selection criteria that indicates one or more movies that a customer desires to rent,

the step of providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria includes providing to the customer up to a specified number of the one or more movies indicated by the one or more movie selection criteria, and

the step of in response to receiving any of the items provided to the customer, providing to the customer one or more other items indicated by the one or more item selection criteria, wherein a total current number of items provided to the customer does not exceed the specified number includes in response to receiving any of the movies provided to the customer, providing to the customer one or more other movies indicated by the one or more movie selection criteria, wherein a total current number of movies provided to the customer does not exceed the specified number.

15. A method as recited in claim 1, wherein:

the one or more items are one or more games,

the one or more item selection criteria are one or more game selection criteria,

the step of receiving one or more item selection criteria that indicates one or more items that a customer desires to rent includes receiving one or more game selection criteria that indicates one or more games that a customer desires to rent,

the step of providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria includes providing to the customer up to a specified number of the one or more games indicated by the one or more game selection criteria, and

the step of in response to receiving any of the items provided to the customer, providing to the customer one or more other items indicated by the one or more item selection criteria, wherein a total current number of items provided to the customer does not exceed the specified number includes in response to receiving any of the games provided to the customer, providing to the customer one or more other games indicated by the one or more game selection criteria, wherein a total current number of games provided to the customer does not exceed the specified number.

16. A method for renting items to customers, the method comprising the computer-implemented steps of:

receiving one or more item selection criteria that indicates one or more items that a customer desires to rent;

providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria; and

in response to receiving any of the items provided to the customer, providing to the customer one or more other items indicated by the one or more item selection criteria, wherein a total number of items provided to the

US 6,584,450 B1

**17**

customer within a specified period of time does not exceed a specified limit.

17. A method as recited in claim 16, wherein the total current number of items provided to the customer does not exceed the specified number.

18. A method as recited in claim 16, further comprising if the total number of items provided to the customer within the specified period of time is less than the specified limit, then increasing the specified limit for another specified period of time.

19. A method as recited in claim 16, wherein

the one or more item selection criteria indicates a desired order for the one or more items that a customer desires to rent,

the step of providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria includes providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria in the desired order indicated by the one or more item selection criteria, and

the step of providing to the customer one or more other items indicated by the one or more item selection criteria includes providing to the customer one or more other items indicated by the one or more item selection criteria in the desired order indicated by the one or more item selection criteria.

20. A method as recited in claim 19, further comprising if a particular item from the one or more items indicated by the one or more item selection criteria is not available, then providing another item from the one or more items based upon the desired order indicated by the one or more item selection criteria.

21. A method as recited in claim 16, wherein

the one or more item selection criteria specifies one or more preferred item attributes,

the step of providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria includes automatically selecting and providing to the customer up to a specified number of one or more items that have one or more of the one or more preferred item attributes specified by the one or more item selection criteria, and

the step of providing to the customer one or more other items indicated by the one or more item selection criteria includes automatically selecting and providing to the customer one or more other items that have one or more of the one or more preferred item attributes specified by the one or more item selection criteria.

22. A method as recited in claim 16,

further comprising:

establishing, based upon the one or more item selection criteria, an item rental queue for the customer, wherein the item rental queue contains one or more entries that specify the one or more items that the customer desires to rent; and

in response to receiving back any of the items provided to the customer, selecting the one or more other items from the item rental queue.

23. A method as recited in claim 16,

further comprising in response to receiving a customer notification, providing to the customer a second set of one or more other items indicated by the one or more item selection criteria.

24. A method as recited in claim 16,

further comprising in response to expiration of a specified amount of time, providing to the customer a second set

**18**

of one or more other items indicated by the one or more item selection criteria.

25. A method as recited in claim 16,

further comprising in response to a specified date being reached, providing to the customer a second set of one or more other items indicated by the one or more item selection criteria.

26. A method as recited in claim 16,

further comprising in response to a specified fee being received, providing to the customer a second set of one or more other items indicated by the one or more item selection criteria.

27. A method as recited in claim 16, wherein items are provided to the customer by mail.

28. A method as recited in claim 16, wherein items are provided to the customer by a delivery agent.

29. A method as recited in claim 16, wherein:

the one or more items are one or more movies,

the one or more item selection criteria are one or more movie selection criteria,

the step of receiving one or more item selection criteria that indicates one or more items that a customer desires to rent includes receiving one or more movie selection criteria that indicates one or more movies that a customer desires to rent,

the step of providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria includes providing to the customer up to a specified number of the one or more movies indicated by the one or more movie selection criteria, and

the step of in response to receiving any of the items provided to the customer, providing to the customer one or more other items indicated by the one or more item selection criteria, wherein a total number of items provided to the customer within a specified period of time does not exceed a specified limit includes in response to receiving any of the movies provided to the customer, providing to the customer one or more other movies indicated by the one or more movie selection criteria, wherein a total number of items provided to the customer within a specified period of time does not exceed a specified limit.

30. A method as recited in claim 16, wherein:

the one or more items are one or more games,

the one or more item selection criteria are one or more game selection criteria,

the step of receiving one or more item selection criteria that indicates one or more items that a customer desires to rent includes receiving one or more game selection criteria that indicates one or more games that a customer desires to rent,

the step of providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria includes providing to the customer up to a specified number of the one or more games indicated by the one or more game selection criteria, and

the step of in response to receiving any of the items provided to the customer, providing to the customer one or more other items indicated by the one or more item selection criteria, wherein a total number of items provided to the customer within a specified period of time does not exceed a specified limit includes in response to receiving any of the games provided to the

US 6,584,450 B1

19

customer, providing to the customer one or more other games indicated by the one or more game selection criteria, wherein a total number of items provided to the customer within a specified period of time does not exceed a specified limit.

**31.** A method for renting movies to customers, the method comprising the computer-implemented steps of:

receiving one or more movie selection criteria from a customer that indicates one or more movies that the customer desires to rent;

providing to the customer up to a specified number of the one or more movies indicated by the one or more movie selection criteria; and

in response to a return of any of the movies provided to the customer, providing to the customer one or more other movies indicated by the one or more movie selection criteria, wherein a total current number of movies provided to the customer does not exceed the specified number.

**32.** A method as recited in claim 31, wherein

the one or more movie selection criteria specifies an order in which the customer desires to receive the movies,

the step of providing to the customer up to a specified number of the one or more movies indicated by the one or more movie selection criteria includes providing to the customer up to a specified number of the one or more movies indicated by the move selection criteria in the order specified by the one or more movie selection criteria, and

the step of providing to the customer one or more other movies specified by the one or more movie selection criteria includes providing to the customer one or more other movies specified by the one or more movie selection criteria in the order specified by the one or more movie selection criteria.

**33.** A method as recited in claim 31, wherein

the one or more movie selection criteria specifies movie attributes preferred by the customer,

the step of providing to the customer up to a specified number of the one or more movies indicated by the one or more movie selection criteria includes automatically selecting and providing to the customer up to a specified number of the one or more movies that have the specified movie attributes preferred by the customer, and

the step of providing to the customer one or more other movies specified by the one or more movie selection criteria includes automatically selecting and providing to the customer one or more other movies that have the specified movie attributes preferred by the customer.

**34.** A method as recited in claim 31, wherein movies are provided to the customer by mail.

**35.** A method as recited in claim 31, wherein movies are provided to the customer by a delivery agent.

**36.** A computer-readable medium for renting items to customers, the computer-readable medium carrying one or more sequences of one or more instructions which, when executed by one or more processors, cause the one or more processors to perform the computer-implemented steps of:

receiving one or more item selection criteria that indicates one or more items that a customer desires to rent;

providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria; and

in response to receiving any of the items provided to the customer, providing to the customer one or more other

20

items indicated by the one or more item selection criteria, wherein a total current number of items provided to the customer does not exceed the specified number.

**37.** A computer-readable medium as recited in claim 36, wherein the total number of items provided to the customer within a specified period of time does not exceed a specified limit.

**38.** A computer-readable medium as recited in claim 37, further comprising one or more sequences of one or more instructions which, when executed by the one or more processors, cause the one or more processors to perform the step of if the total number of items provided to the customer within the specified period of time is less than the specified limit, then increasing the specified limit for another specified period of time.

**39.** A computer-readable medium as recited in claim 36, wherein

the one or more item selection criteria indicates a desired order for the one or more items that a customer desires to rent,

the step of providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria includes providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria in the desired order indicated by the one or more item selection criteria, and

the step of providing to the customer one or more other items indicated by the one or more item selection criteria includes providing to the customer one or more other items indicated by the one or more item selection criteria in the desired order indicated by the one or more item selection criteria.

**40.** A computer-readable medium as recited in claim 39, further comprising one or more sequences of one or more instructions which, when executed by the one or more processors, cause the one or more processors to perform the step of if a particular item from the one or more items indicated by the one or more item selection criteria is not available, then providing another item from the one or more items based upon the desired order indicated by the one or more item selection criteria.

**41.** A computer-readable medium as recited in claim 36, wherein

the one or more item selection criteria specifies one or more preferred item attributes,

the step of providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria includes automatically selecting and providing to the customer up to a specified number of one or more items that have one or more of the one or more preferred item attributes specified by the one or more item selection criteria, and

the step of providing to the customer one or more other items indicated by the one or more item selection criteria includes automatically selecting and providing to the customer one or more other items that have one or more of the one or more preferred item attributes specified by the one or more item selection criteria.

**42.** A computer-readable medium as recited in claim 36, further comprising:

establishing, based upon the one or more item selection criteria, an item rental queue for the customer, wherein the item rental queue contains one or more entries that specify the one or more items that the customer desires to rent; and

US 6,584,450 B1

in response to receiving back any of the items provided to the customer, selecting the one or more other items from the item rental queue.

43. A computer-readable medium as recited in claim 36, further comprising in response to receiving a customer notification, providing to the customer a second set of one or more other items indicated by the one or more item selection criteria.

44. A computer-readable medium as recited in claim 36, further comprising in response to expiration of a specified amount of time, providing to the customer a second set of one or more other items indicated by the one or more item selection criteria.

45. A computer-readable medium as recited in claim 36, further comprising in response to a specified date being reached, providing to the customer a second set of one or more other items indicated by the one or more item selection criteria.

46. A computer-readable medium as recited in claim 36, further comprising in response to a specified fee being received, providing to the customer a second set of one or more other items indicated by the one or more item selection criteria.

47. A computer-readable medium as recited in claim 36, wherein items are provided to the customer by mail.

48. A computer-readable medium as recited in claim 36, wherein items are provided to the customer by a delivery agent.

49. A computer-readable medium as recited in claim 36, wherein:

the one or more items are one or more movies,

the one or more item selection criteria are one or more movie selection criteria,

the step of receiving one or more item selection criteria that indicates one or more items that a customer desires to rent includes receiving one or more movie selection criteria that indicates one or more movies that a customer desires to rent,

the step of providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria includes providing to the customer up to a specified number of the one or more movies indicated by the one or more movie selection criteria, and

the step of in response to receiving any of the items provided to the customer, providing to the customer one or more other items indicated by the one or more item selection criteria, wherein a total current number of items provided to the customer does not exceed the specified number includes in response to receiving any of the movies provided to the customer providing to the customer one or more other movies indicated by the one or more movie selection criteria, wherein a total current number of movies provided to the customer does not exceed the specified number.

50. A computer-readable medium as recited in claim 36, wherein:

the one or more items are one or more games,

the one or more item selection criteria are one or more game selection criteria,

the step of receiving one or more item selection criteria that indicates one or more items that a customer desires to rent includes receiving one or more game selection criteria that indicates one or more games that a customer desires to rent,

the step of providing to the customer up to a specified number of the one or more items indicated by the one

or more item selection criteria includes providing to the customer up to a specified number of the one or more games indicated by the one or more game selection criteria, and

the step of in response to receiving any of the items provided to the customer, providing to the customer one or more other items indicated by the one or more item selection criteria, wherein a total current number of items provided to the customer does not exceed the specified number includes in response to receiving any of the games provided to the customer, providing to the customer one or more other games indicated by the one or more game selection criteria, wherein a total current number of games provided to the customer does not exceed the specified number.

51. An apparatus for renting items to customers comprising:

one or more processors; and

a memory communicatively coupled to the one or more processors, the memory including one or more sequences of one or more instructions which, when executed by the one or more processors, cause the one or more processors to perform the steps of:

receiving one or more item selection criteria that indicates one or more items that a customer desires to rent;

providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria; and

in response to receiving any of the items provided to the customer, providing to the customer one or more other items indicated by the one or more item selection criteria, wherein a total current number of items provided to the customer does not exceed the specified number.

52. An apparatus as recited in claim 51, wherein the total number of items provided to the customer within a specified period of time does not exceed a specified limit.

53. An apparatus as recited in claim 52, wherein the memory further includes one or more sequences of one or more instructions which, when executed by the one or more processors, cause the one or more processors to perform the step of if the total number of items provided to the customer within the specified period of time is less than the specified limit, then increasing the specified limit for another specified period of time.

54. An apparatus as recited in claim 51, wherein

the one or more item selection criteria indicates a desired order for the one or more items that a customer desires to rent,

the step of providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria includes providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria in the desired order indicated by the one or more item selection criteria, and

the step of providing to the customer one or more other items indicated by the one or more item selection criteria includes providing to the customer one or more other items indicated by the one or more item selection criteria in the desired order indicated by the one or more item selection criteria.

55. An apparatus as recited in claim 54, wherein the memory further includes one or more sequences of one or more instructions which, when executed by the one or more

US 6,584,450 B1

23

processors, cause the one or more processors to perform the step of if a particular item from the one or more items indicated by the one or more item selection criteria is not available, then providing another item from the one or more items based upon the desired order indicated by the one or more item selection criteria.

56. An apparatus as recited in claim 51, wherein

the one or more item selection criteria specifies one or more preferred item attributes,

the step of providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria includes automatically selecting and providing to the customer up to a specified number of one or more items that have one or more of the one or more preferred item attributes specified by the one or more item selection criteria, and

the step of providing to the customer one or more other items indicated by the one or more item selection criteria includes automatically selecting and providing to the customer one or more other items that have one or more of the one or more preferred item attributes specified by the one or more item selection criteria.

57. An apparatus as recited in claim 51,

further comprising:

establishing, based upon the one or more item selection criteria, an item rental queue for the customer, wherein the item rental queue contains one or more entries that specify the one or more items that the customer desires to rent; and

in response to receiving back any of the items provided to the customer, selecting the one or more other items from the item rental queue.

58. An apparatus as recited in claim 51,

further comprising in response to receiving a customer notification, providing to the customer a second set of one or more other items indicated by the one or more item selection criteria.

59. An apparatus as recited in claim 51,

further comprising in response to expiration of a specified amount of time, providing to the customer a second set of one or more other items indicated by the one or more item selection criteria.

60. An apparatus as recited in claim 51,

further comprising in response to a specified date being reached, providing to the customer a second set of one or more other items indicated by the one or more item selection criteria.

61. An apparatus as recited in claim 51,

further comprising in response to a specified fee being received, providing to the customer a second set of one or more other items indicated by the one or more item selection criteria.

62. An apparatus as recited in claim 51, wherein items are provided to the customer by mail.

63. An apparatus as recited in claim 51, wherein items are provided to the customer by a delivery agent.

64. An apparatus as recited in claim 51, wherein:

the one or more items are one or more movies,

the one or more item selection criteria are one or more movie selection criteria,

the step of receiving one or more item selection criteria that indicates one or more items that a customer desires to rent includes receiving one or more movie selection criteria that indicates one or more movies that a customer desires to rent,

24

the step of providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria includes providing to the customer up to a specified number of the one or more movies indicated by the one or more movie selection criteria, and

the step of in response to receiving any of the items provided to the customer, providing to the customer one or more other items indicated by the one or more item selection criteria, wherein a total current number of items provided to the customer does not exceed the specified number includes in response to receiving any of the movies provided to the customer, providing to the customer one or more other movies indicated by the one or more movie selection criteria, wherein a total current number of movies provided to the customer does not exceed the specified number.

65. An apparatus as recited in claim 51, wherein:

the one or more items are one or more games,

the one or more item selection criteria are one or more game selection criteria,

the step of receiving one or more item selection criteria that indicates one or more items that a customer desires to rent includes receiving one or more game selection criteria that indicates one or more games that a customer desires to rent,

the step of providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria includes providing to the customer up to a specified number of the one or more games indicated by the one or more game selection criteria, and

the step of in response to receiving any of the items provided to the customer, providing to the customer one or more other items indicated by the one or more item selection criteria, wherein a total current number of items provided to the customer does not exceed the specified number includes in response to receiving any of the games provided to the customer, providing to the customer one or more other games indicated by the one or more game selection criteria, wherein a total current number of games provided to the customer does not exceed the specified number.

66. An apparatus for renting items to customers comprising an item rental mechanism configured to:

receive one or more item selection criteria that indicates one or more items that a customer desires to rent;

provide to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria; and

in response to receiving any of the items provided to the customer, providing to the customer one or more other items indicated by the one or more item selection criteria, wherein a total current number of items provided to the customer does not exceed the specified number.

67. An apparatus as recited in claim 66, wherein the total number of items provided to the customer within a specified period of time does not exceed a specified limit.

68. An apparatus as recited in claim 67, wherein the item rental mechanism is further configured to if the total number of items provided to the customer within the specified period of time is less than the specified limit, then increase the specified limit for another specified period of time.

69. An apparatus as recited in claim 66, wherein

the one or more item selection criteria indicates a desired order for the one or more items that a customer desires to rent,

US 6,584,450 B1

25                                                                26

the step of providing to the customer up to a specified
number of the one or more items indicated by the one
or more item selection criteria includes providing to the
customer up to a specified number of the one or more
items indicated by the one or more item selection 5
criteria in the desired order indicated by the one or
more item selection criteria, and

the step of providing to the customer one or more other
items indicated by the one or more item selection
criteria includes providing to the customer one or more 10
other items indicated by the one or more item selection
criteria in the desired order indicated by the one or
more item selection criteria.

70. An apparatus as recited in claim 69, wherein the item
rental mechanism is further configured to if a particular item 15
from the one or more items indicated by the one or more
item selection criteria is not available, then providing
another item from the one or more items based upon the
desired order indicated by the one or more item selection
criteria. 20

71. An apparatus as recited in claim 66, wherein

the one or more item selection criteria specifies one or
more preferred item attributes;

the step of providing to the customer up to a specified
number of the one or more items indicated by the one 25
or more item selection criteria includes automatically
selecting and providing to the customer up to a speci-
fied number of one or more items that have one or more
of the one or more preferred item attributes specified by
the one or more item selection criteria, and 30

the step of providing to the customer one or more other
items indicated by the one or more item selection
criteria includes automatically selecting and providing
to the customer one or more other items that have one
or more of the one or more preferred item attributes 35
specified by the one or more item selection criteria.

72. An apparatus as recited in claim 66,

further comprising:

establishing, based upon the one or more item selection
criteria, an item rental queue for the customer, 40
wherein the item rental queue contains one or more
entries that specify the one or more items that the
customer desires to rent; and

in response to receiving back any of the items provided 45
to the customer, selecting the one or more other items
from the item rental queue.

73. An apparatus as recited in claim 66,

further comprising in response to receiving a customer
notification, providing to the customer a second set of 50
one or more other items indicated by the one or more
item selection criteria.

74. An apparatus as recited in claim 66,

further comprising in response to expiration of a specified
amount of time, providing to the customer a second set 55
of one or more other items indicated by the one or more
item selection criteria.

75. An apparatus as recited in claim 66,

further comprising in response to a specified date being
reached, providing to the customer a second set of one 60
or more other items indicated by the one or more item
selection criteria.

76. An apparatus as recited in claim 66,

further comprising in response to a specified fee being
received, providing to the customer a second set of one 65
or more other items indicated by the one or more item
selection criteria.

77. An apparatus as recited in claim 66, wherein items are
provided to the customer by mail.

78. An apparatus as recited in claim 66, wherein items are
provided to the customer by a delivery agent.

79. An apparatus as recited in claim 66, wherein:

the item rental mechanism is a movie rental mechanism,

the one or more items are one or more movies,

the one or more item selection criteria are one or more
movie selection criteria,

the movie rental mechanism is further configured to
receive one or more movie selection criteria that indi-
cates one or more movies that a customer desires to
rent,

the movie rental mechanism is further configured to
provide to the customer up to a specified number of the
one or more movies indicated by the one or more movie
selection criteria, and

the movie rental mechanism is further configured to in
response to receiving any of the movies provided to the
customer, provide to the customer one or more other
movies indicated by the one or more movie selection
criteria, wherein a total current number of movies
provided to the customer does not exceed the specified
number.

80. An apparatus as recited in claim 66, wherein:

the one or more items are one or more games,

the one or more item selection criteria are one or more
game selection criteria,

the movie rental mechanism is further configured to
receive one or more game selection criteria that indi-
cates one or more games that a customer desires to rent,

the movie rental mechanism is further configured to
provide to the customer up to a specified number of the
one or more games indicated by the one or more game
selection criteria, and

the movie rental mechanism is further configured to in
response to receiving any of the games provided to the
customer, provide to the customer one or more other
games indicated by the one or more game selection
criteria, wherein a total current number of games pro-
vided to the customer does not exceed the specified
number.

81. A computer-readable medium for renting items to
customers, the computer-readable medium carrying one or
more sequences of one or more instructions which, when
executed by one or more processors, cause the one or more
processors to perform the computer-implemented steps of:

receiving one or more item selection criteria that indicates
one or more items that a customer desires to rent;

providing to the customer up to a specified number of the
one or more items indicated by the one or more item
selection criteria; and

in response to receiving any of the items provided to the
customer, one or more item delivery criteria being
satisfied, providing to the customer one or more other
items indicated by the one or more item selection
criteria, wherein a total current number of items provided to the
customer within a specified period of time does not
exceed a specified limit.

82. A computer-readable medium as recited in claim 81,
wherein the total current number of items provided to the
customer does not exceed the specified number.

83. A computer-readable medium as recited in claim 81,
further comprising if the total number of items provided to
the customer within the specified period of time is less than

US 6,584,450 B1

27

the specified limit, then increasing the specified limit for another specified period of time.

84. A computer-readable medium as recited in claim 81, wherein

the one or more item selection criteria indicates a desired order for the one or more items that a customer desires to rent,

the step of providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria includes providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria in the desired order indicated by the one or more item selection criteria, and

the step of providing to the customer one or more other items indicated by the one or more item selection criteria includes providing to the customer one or more other items indicated by the one or more item selection criteria in the desired order indicated by the one or more item selection criteria.

85. A computer-readable medium as recited in claim 84, further comprising if a particular item from the one or more items indicated by the one or more item selection criteria is not available, then providing another item from the one or more items based upon the desired order indicated by the one or more item selection criteria.

86. A computer-readable medium as recited in claim 81, wherein

the one or more item selection criteria specifies one or more preferred item attributes,

the step of providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria includes automatically selecting and providing to the customer up to a specified number of one or more items that have one or more of the one or more preferred item attributes specified by the one or more item selection criteria, and

the step of providing to the customer one or more other items indicated by the one or more item selection criteria includes automatically selecting and providing to the customer one or more other items that have one or more of the one or more preferred item attributes specified by the one or more item selection criteria.

87. A computer-readable medium as recited in claim 81, further comprising:

establishing, based upon the one or more item selection criteria, an item rental queue for the customer, wherein the item rental queue contains one or more entries that specify the one or more items that the customer desires to rent; and

in response to receiving back any of the items provided to the customer, selecting the one or more other items from the item rental queue.

88. A computer-readable medium as recited in claim 81, further comprising in response to receiving a customer notification, providing to the customer a second set of one or more other items indicated by the one or more item selection criteria.

89. A computer-readable medium as recited in claim 81, further comprising in response to expiration of a specified amount of time, providing to the customer a second set of one or more other items indicated by the one or more item selection criteria.

90. A computer-readable medium as recited in claim 81, further comprising in response to a specified date being reached, providing to the customer a second set of one

28

or more other items indicated by the one or more item selection criteria.

91. A computer-readable medium as recited in claim 81, further comprising in response to a specified fee being received, providing to the customer a second set of one or more other items indicated by the one or more item selection criteria.

92. A computer-readable medium as recited in claim 81, wherein items are provided to the customer by mail.

93. A computer-readable medium as recited in claim 81, wherein items are provided to the customer by a delivery agent.

94. A computer-readable medium as recited in claim 81, wherein:

the one or more items are one or more movies,

the one or more item selection criteria are one or more movie selection criteria,

the step of receiving one or more item selection criteria that indicates one or more items that a customer desires to rent includes receiving one or more movie selection criteria that indicates one or more movies that a customer desires to rent,

the step of providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria includes providing to the customer up to a specified number of the one or more movies indicated by the one or more movie selection criteria, and the step of in response to receiving any of the items provided to the customer, providing to the customer one or more other items indicated by the one or more item selection criteria, wherein a total number of items provided to the customer within a specified period of time does not exceed a specified limit includes in response to receiving any of the movies provided to the customer, providing to the customer one or more other movies indicated by the one or more movie selection criteria, wherein a total number of items provided to the customer within a specified period of time does not exceed a specified limit.

95. A computer-readable medium as recited in claim 81, wherein:

the one or more items are one or more games,

the one or more item selection criteria are one or more game selection criteria,

the step of receiving one or more item selection criteria that indicates one or more items that a customer desires to rent includes receiving one or more game selection criteria that indicates one or more games that a customer desires to rent,

the step of providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria includes providing to the customer up to a specified number of the one or more games indicated by the one or more game selection criteria, and

the step of in response to receiving any of the items provided to the customer, providing to the customer one or more other items indicated by the one or more item selection criteria, wherein a total number of items provided to the customer within a specified period of time does not exceed a specified limit includes in response to receiving any of the games provided to the customer, providing to the customer one or more other games indicated by the one or more game selection criteria, wherein a total number of items provided to the customer within a specified period of time does not exceed a specified limit.

US 6,584,450 B1

29

30

**96.** A computer-readable medium for renting movies to customers, the computer-readable medium carrying one or more sequences of one or more instructions which, when executed by one or more processors, cause the one or more processors to perform the computer-implemented steps of:

receiving one or more movie selection criteria from a customer that indicates one or more movies that the customer desires to rent;

providing to the customer up to a specified number of the one or more movies indicated by the one or more movie selection criteria; and

in response to a return of any of the movies provided to the customer, providing to the customer one or more other movies indicated by the one or more movie selection criteria, wherein a total current number of movies provided to the customer does not exceed the specified number.

**97.** A computer-readable medium as recited in claim **96**, wherein

the one or more movie selection criteria specifies an order in which the customer desires to receive the movies,

the step of providing to the customer up to a specified number of the one or more movies indicated by the one or more movie selection criteria includes providing to the customer up to a specified number of the one or more movies indicated by the move selection criteria in the order specified by the one or more movie selection criteria, and

the step of providing to the customer one or more other movies specified by the one or more movie selection criteria includes providing to the customer one or more other movies specified by the one or more movie selection criteria in the order specified by the one or more movie selection criteria.

**98.** A computer-readable medium as recited in claim **96**, wherein

the one or more movie selection criteria specifies movie attributes preferred by the customer,

the step of providing to the customer up to a specified number of the one or more movies indicated by the one or more movie selection criteria includes automatically selecting and providing to the customer up to a specified number of the one or more movies that have the specified movie attributes preferred by the customer, and

the step of providing to the customer one or more other movies specified by the one or more movie selection criteria includes automatically selecting and providing to the customer one or more other movies that have the specified movie attributes preferred by the customer.

**99.** A computer-readable medium as recited in claim **96**, wherein movies are provided to the customer by mail.

**100.** A computer-readable medium as recited in claim **96**, wherein movies are provided to the customer by a delivery agent.

\* \* \* \* \*

# UNITED STATES PATENT AND TRADEMARK OFFICE
# **CERTIFICATE OF CORRECTION**

PATENT NO.    : 6,584,450 B1                     Page 1 of 4
DATED         : June 24, 2003
INVENTOR(S)   : Hastings et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is
hereby corrected as shown below:

Title page,
Item [57], **ABSTRACT**,
Line 6, before "provides", insert -- that --.

Column 1,
Line 53, change "a" to -- as --.
Line 57, after "another", insert -- aspect --.

Column 2,
Line 1, after "another", insert -- aspect --.

Column 10,
Line 42, change "provider.504" to -- provider 504 --.

Column 14,
Line 10, after "since," delete "a".
Lines 46, 48 and 66, "one or more items" should be -- two or more items --;

Column 15,
Lines 2, 4, 15, 17, 24, 27 and 41, "one or more items" should be -- two or more items --;

Column 16,
Lines 4, "the one or more items are one or more movies" should be -- the two or more
items are two or more movies --;
Lines 8, 13, 34, 39, 58 and 60, "one or more items" should be -- two or more itmes --;
Lines 10 and 15, "one or more movies" should be -- two or more movies --;
Line 30, "the one or more items are one or more games" should be -- the two or more
items are two or more games --;
Lines 36 and 41, "one or more games" should be -- two or more games --;

Column 17,
Lines 13, 16, 18, 29, 31, 38, 41 and 55, "one or more items" should be -- two or more
items --;

Column 18,
Line 18, "the one or more items are one or more movies" should be -- the two or more
items are two or more movies --;
Lines 22, 27, 49 and 54, "one or more items" should be -- two or more items --;
Lines 24 and 29, "one or more movies" should be -- two or more movies --;

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.    : 6,584,450 B1                                    Page 2 of 4
DATED         : June 24, 2003
INVENTOR(S)   : Hastings et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is
hereby corrected as shown below:

Column 18 (cont'd),
Line 45, "the one or more items are one or more games" should be -- the two or more
items are two or more games --;
Lines 51 and 56, "one or more games" should be -- two or more games --;

Column 19,
Lines 9, 12, 24, 26, 40 and 43, "one or more movies" should be -- two or more
movies --;
Lines 61 and 63, "one or more items" should be -- two or more items --;

Column 20,
Lines 20, 23, 25, 39, 41, 49, 52 and 66, "one or more items" should be -- two or more
items --;

Column 21,
Line 31, "the one or more items are one or more movies" should be -- the two or more
items are two or more movies --;
Lines 35, 40, 62 and 67, "one or more items" should be -- two or more items --;
Lines 37 and 42, "one or more movies" should be -- two or more movies --;
Line 58, "the one or more items are one or more games" should be -- the two or more
items are two or more games --;
Line 64, "one or more games" should be -- two or more games --;

Column 22,
Line 2, "one or more games" should be -- two or more games --;
Lines 25, 28, 49, 52 and 54, "one or more items" should be -- two or more items --;

Column 23,
Lines 2, 4, 11, 14, 28 and 62, "one or more items" should be -- two or more items --;
Line 58, "the one or more items are one or more movies" should be -- the two or more
items are two or more movies --;
Line 64, "one or more movies" should be -- two or more movies --;

Column 24,
Lines 2, 23, 28, 47, 49 and 67, "one or more items" should be -- two or more items --;
Line 4, "one or more movies" should be -- two or more movies --;
Line 19, "the one or more items are one or more games" should be -- the two or more
items are two or more games --;
Lines 25 and 30, "one or more games" should be -- two or more games --;

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.    : 6,584,450 B1                                    Page 3 of 4
DATED         : June 24, 2003
INVENTOR(S)   : Hastings et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is
hereby corrected as shown below:

Column 25,
Lines 2, 4, 16, 18, 25, 28 and 42, "one or more items" should be -- two or more items --;

Column 26,
Line 7, "the one or more items are one or more movies" should be -- the two or more
items are two or more movies --;
Lines 12 and 16, "one or more movies" should be -- two or more movies --;
Line 26, "the one or more items are one or more games" should be -- the two or more
items are two or more games --;
Lines 31 and 34, "one or more games" should be -- two or more games --;
Lines 49 and 51, "one or more items " should be -- two or more items --;

Column 27,
Lines 6, 9, 11, 22, 24, 32, 35 and 49, "one ore more items" should be -- two or more
items --;

Column 28,
Line 15, "the one or more items are one or more movies" should be -- the two or more
items are two or more movies --;
Lines 19, 24, 47 and 52, "one or more items" should be -- two or more items --;
Lines 21 and 26, "one or more movies" should be -- two or more movies --;
Line 43, "the one or more items are one or more games" should be -- the two or more
items are two or more games --;
Lines 49 and 54, "one or more games" should be -- two or more games --;

Column 29,
Lines 7, 10, 23 and 25, "one or more movies" should be -- two or more movies --;

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.    : 6,584,450 B1                                    Page 4 of 4
DATED         : June 24, 2003
INVENTOR(S)   : Hastings et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is
hereby corrected as shown below:

<u>Column 30,</u>
Lines 12 and 15, "one or more movies" should be -- two or more movies --;

Signed and Sealed this

Thirteenth Day of April, 2004

JON W. DUDAS
*Acting Director of the United States Patent and Trademark Office*

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.   : 6,584,450 B1                          Page 1 of  4
DATED         : June 24, 2003
INVENTOR(S) : Hastings et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Title page,
Item [57], **ABSTRACT**,
Line 6, before "provides", insert -- that --.

Column 1,
Line 53, change "a" to -- as --.
Line 57, after "another", insert -- aspect --.

Column 2,
Line 1, after "another", insert -- aspect --.

Column 10,
Line 42, change "provider.504" to -- provider 504 --.

Column 14,
Line 10, after "since," delete "a".
Lines 46,48 and 66, "one or more items" should be -- two or more items --;

Column 15,
Lines 2, 4, 15, 17, 24, 27 and 41, "one or more items" should be -- two or more items --;

Column 16,
Line 4, "the one or more items are one or more movies" should be -- the two or more items are two or more movies --'
Lines 8, 13, 34, 39, 58 and 60, "one or more items" should be -- two or more items --;
Lines 10 and 15, "one or more movies" should be -- two or more movies --;
Line 30, "the one or more items are one or more games" should be -- the two or more items are two or more games --;
Lines 36 and 41, "one or more games" should be -- two or more games --;

Column 17,
Lines 13, 16, 18, 29, 31, 38, 41 and 55, "one or more items" should be -- two or more items --;

Column 18,
Line 18, "the one or more items are one or more movies" should be -- the two or more items are two or more movies --;
Lines 22, 27, 49 and 54, "one or more items" should be -- two or more movies --;
Lines 24 and 29, "one or more movies" should be -- two or more movies --;

# UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.     : 6,584,450 B1                                    Page 2 of 4
DATED          : June 24, 2003
INVENTOR(S)    : Hastings et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Column 18 (cont'd),
Line 45, "the one or more items are one or more games" should be -- the two or more items are two or more games --;
Lines 51 and 56, "one or more games" should be -- two or more games --;

Column 19,
Lines 9, 12, 24, 26, 40 and 43, "one or more movies" should be -- two or more movies --;
Lines 61 and 63, "one or more items" should be -- two or more items --;

Column 20,
Lines 20, 23, 25, 39, 41, 49, 52 and 66, "one or more items" should be -- two or more items --;

Column 21,
Line 31, "the one or more items are one or more movies" should be -- the two or more items are two or more movies --;
Lines 35, 40, 62 and 67, "one or more items" should be -- two or more items --;
Lines 37 and 42, "one or more movies" should be -- two or more movies --;
Line 58, "the one or more items are one or more games" should be -- the two or more items are two or more games --;
Line 64, "one or more games" should be -- two or more games --;

Column 22,
Line 2, "one or more games" should be -- two or more games --;
Lines 25, 28, 49, 52 and 54, "one or more items" should be -- two or more items --;

Column 23,
Lines 2, 4, 11, 14, 28 and 62, "one or more items" should be -- two or more items --;
Line 58, "the one or more items are one or more movies" should be -- the two or more items are two or more movies --;
Line 64, "one or more movies" should be -- two or more movies --;

Column 24,
Lines 2, 23, 28, 47, 49 and 67, "one or more items" should be -- two or more items --;
Line 4, "one or more movies" should be -- two or more movies --;
Line 19, "the one or more items are one or more games" should be -- the two or more items are two or more games --;
Lines 25 and 30, "one or more games" should be -- two or more games --;

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.    : 6,584,450 B1                          Page 3 of 4
DATED         : June 24, 2003
INVENTOR(S)   : Hastings et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Column 25,
Lines 2, 4, 16, 18, 25, 28 and 42, "one or more items" should be -- two or more items --;

Column 26,
Line 7, "the one or more itmes are one or more movies" should be -- the two or more items are two or more movies --;
Lines 12 and 16, "one or more movies" should be -- two or more movies --;
Line 26, "the one or more items are one or more games" should be -- the two or more items are two or more games --;
Lines 31 and 34, "one or more games" should be -- two or more games --;
Lines 49 and 51, "one or more items" should be -- two or more items --;

Column 27,
Lines 6, 9, 11, 22, 24, 32, 35, and 49, "one or more items" should be -- two or more items --;

Column 28,
Line 15, "the one or more items are one or more movies" should be -- the two or more items are two or more movies --;
Lines 19, 24, 47 and 52, "one or more items" should be -- two or more items --;
Lines 21 and 26, "one or more movies" should be -- two or more movies --;
Line 43, "the one or more items are one or more games" should be -- the two or more items are two or more games --;

Column 29,
Lines 7, 10, 23 and 25, "one or more movies" should be -- two or more movies --;

# UNITED STATES PATENT AND TRADEMARK OFFICE
## CERTIFICATE OF CORRECTION

PATENT NO.   : 6,584,450 B1          Page 4 of 4
DATED       : June 24, 2003
INVENTOR(S) : Hastings et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is
hereby corrected as shown below:

<u>Column 30,</u>
Lines 12 and 15, "one or more movies" should be -- two or more movies --;

This certificate supersedes Certificate of Correction issued April 13, 2004.

Signed and Sealed this

Tenth Day of May, 2005

JON W. DUDAS
*Director of the United States Patent and Trademark Office*