1　KEKER & VAN NEST, LLP
　　JEFFREY R. CHANIN - #103649
2　DARALYN J. DURIE - #169825
　　LEO L. LAM - #181861
3　KEVIN T. REED - #240799
　　710 Sansome Street
4　San Francisco, CA 94111-1704
　　Telephone: (415) 391-5400
5　Facsimile: (415) 397-7188

6　Attorneys for Plaintiff
　　NETFLIX, INC.

7

8　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT

9　　　　　　　　　　　　　　　NORTHERN DISTRICT OF CALIFORNIA

10

11　NETFLIX, INC., a Delaware corporation,　　　Case No. C 06 2361 WHA

12　　　　　　　　　　　　　　　Plaintiff,　　　**NETFLIX'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS OR, ALTERNATIVELY, TO BIFURCATE AND STAY BLOCKBUSTER'S ANTITRUST COUNTERCLAIMS AND TO STRIKE AFFIRMATIVE DEFENSES**
13　　　　v.

14　BLOCKBUSTER, INC., a Delaware
　　corporation, DOES 1-50,

15　　　　　　　　　　　　　　　Defendant.　　　Date:　　August 17, 2006
　　　　　　　　　　　　　　　　　　　　　　　　　Time:　　8:00 a.m.
16　　　　　　　　　　　　　　　　　　　　　　　　Judge:　　Hon. William Alsup

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...........................................................................................................1

II. DISCUSSION ................................................................................................................1

    A. Blockbuster Has Failed To State A Claim For *Walker Process* Fraud....................1

        1. Blockbuster has failed to identify the undisclosed prior art with particularity. ........................................................................................................2

        2. Blockbuster's allegations with respect to the only prior art it does specifically identify—the NCR Patents—does not sufficiently plead materiality. ..................................................................................4

        3. Blockbuster's allegations fail adequately to allege deceptive intent. ........................................................................................................6

    B. Blockbuster's Sham Litigation Claim Is Derivative And Fails Sufficiently To Allege Subjective Bad Faith. ..........................................................8

    C. Blockbuster's Second And Third Affirmative Defenses Should Be Stricken For Failure Adequately To Allege Inequitable Conduct And Patent Misuse ................................................................................................9

    D. Should Blockbuster's Antitrust Counterclaims Not Be Dismissed, They Should Be Bifurcated And Discovery Stayed, As The Counterclaims Depend Upon The Outcome Of Netflix's Claims And Will Greatly Expand This Litigation ..................................................................10

        1. Resolution of the threshold and underlying patent issues will likely obviate the antitrust counterclaims. .................................................10

        2. Bifurcation will simplify the case, avoiding the cost and burden of antitrust discovery, reducing prejudice and confusion. .........................11

        3. A subsequent antitrust trial, should one ever occur, would neither necessitate the retrial of patent-liability issues, nor impair Blockbuster's right to trial by jury. ..............................................13

        4. Should the Court decide not to stay Blockbuster's antitrust counterclaims until resolution of the patent trial, discovery regarding antitrust issues should be phased. .............................................14

III. CONCLUSION.............................................................................................................15

i

NETLIX'S REPLY I/S/O MOTION TO DISMISS OR, ALTERNATIVELY, TO BIFURCATE AND STAY
BLOCKBUSTER'S ANTITRUST COUNTERCLAIMS AND TO STRIKE AFFIRMATIVE DEFENSES
Case No. C 06 2361 WHA

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Ackerman v. Northwester Mutual Life Insurance Co.*,
172 F.3d 467 (7th Cir. 1999) ..................................................................................................5

*C.R. Bard, Inc. v. M3 System, Inc.*,
157 F.3d 1340 (Fed. Cir. 1998)...........................................................................................3, 10

*Carlisle Corp. v. Hayes*,
635 F. Supp. 962 (S.D. Cal. 1986).........................................................................................12

*Cataphote v. De Soto Chemical Coatings*,
450 F.2d 769 (9th Cir. 1972) ................................................................................................2, 8

*Climax Molybdenum Co. v. Morychem, L.L.C.*,
414 F. Supp. 2d 1007 (D. Colo. 2005)...................................................................................13

*Competitive Tech v. Fujitsu*,
286 F. Supp. 2d 1118 (N.D. Cal. 2003) ...................................................................................5

*Ferguson Beauregard/Logic Controls v. Mega Systems, LLC*,
350 F.3d 1327 (Fed. Cir. 2003)................................................................................................9

*Gardco Manufacturing, Inc. v. Herst Lighting Co.*,
820 F.2d 1209 (Fed. Cir. 1987)..............................................................................................14

*Handgards, Inc. v. Ethicon, Inc.*,
601 F.2d 989 (9th Cir. 1979) ................................................................................................2, 8

*Hunter Douglas, Inc. v. Comfortex Corp.*,
44 F. Supp. 2d 145 (N.D.N.Y. 1999).....................................................................................10

*In re Innotron Diagnostics*,
800 F.2d 1077 (Fed. Cir. 1986)...................................................................................10, 13, 14

*Intel Corp. v. VIA Technologies, Inc.*,
174 F. Supp. 2d 1038 (N.D. Cal. Nov. 20, 2001) ..................................................................15

*Intel Corporation v. VIA  Technologies, Inc.*,
176 F. Supp. 2d 991 (N.D. Cal. Dec. 5, 2001).......................................................................14

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002) .................................................................................................4

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
437 F.3d 588 (7th Cir. 2006) ...................................................................................................4

*MedicalImmune, Inc. v. Centocor, Inc.*,
271 F. Supp. 2d 762 (D. Md. 2003) .........................................................................................4

*MedicalImmune, Inc. v. Genentech, Inc.*,
427 F.3d 958 (Fed. Cir. 2005).................................................................................................2, 3, 6

*Overend Techs., LLC v. Invista S..R.L*,
431 F. Supp. 2d 925 (E.D. Wis. 2006)...............................................................................................4

*Papst Motoren GMbH & Co. v. Kanematsu-Goshu (U.S.A.) Inc.*,
629 F. Supp. 864 (S.D.N.Y. 1986)......................................................................................................5

*Semiconductor Energy Laboratories Co., Ltd. v. Samsung Electrics Co., Ltd.*,
204 F.3d 1368 (Fed. Cir. 2000)...........................................................................................................9

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .......................................................................................................2, 4

*Walker Process Equip., Inc. v. Food Machine & Chemical Corp.*,
382 U.S. 172 (1965).............................................................................................................................2

**STATE CASES**

*ACS Communications, Inc. v. Plantronics, Inc.*,
No. Civ. 95-20294, 1995 WL. 743726 (N.D. Cal. Dec, 1, 1995) ....................................................13

*ASM America, Inc. v. Genus, Inc.*,
No. 01-2190 EDL, 2002 WL 24444, at *2, 3 (N.D. Cal. Jan. 9, 2002) ............................................2

*Advanced Cardiovascular System v. Medtronic, Inc.*,
1996 WL. 467273 (N.D. Cal. July 24, 1996)..........................................................................2, 6, 10

*Chip-Mender, Inc. v. Sherwin-Williams Co.*,
2006 WL. 13048 (N.D. Cal. Jan. 3, 2006) ....................................................................................6, 7

*DataQuill Ltd v. Handspring, Inc.*,
No. 01 C 4635, 2001 WL 1183290, at *3 (N.D. III. Oct. 4, 2001)....................................................4

*Implant Innovations, Inc. v. Nobelpharma AB*,
1996 WL. 568791 (N.D. Ill., Oct. 2, 1996)..............................................................................3, 8, 14

*Intel Corp. v. VIA Techs., Inc.*
No.. C 99-03062, 2001 WL. 777085 (N.D. Cal. Mar. 20,2001) ................................................5, 12

*Maritimes Inc. v. JCM American Corp.*,
No. 05-3165, 2006 WL. 1704469 (D.N.J. June 14, 2006).................................................................3

*McKesson Information Solutions, Inc. v. Bridge Medical, Inc*,
2006 WL. 1652518 (E.D. Cal. June 13, 2006) ..................................................................................7

*McKesson Information Solutions, LLC v. The Trizetto Group, Inc.*,
No. Civ. 04-1258, 2005 WL. 914776 (D. Del. Apr. 20, 2005) .........................................................3

*PB Farradyne, Inc. v. Peterson*,
2006 WL. 132182 (N.D. Cal. Jan. 17, 2006) .....................................................................................9

*Regents of University of California v. Micro Therapists, Inc.*,

NETLIX'S REPLY ISO MOTION TO DISMISS OR, ALTERNATIVELY, TO BIFURCATE AND STAY
BLOCKBUSTER'S ANTITRUST COUNTERCLAIMS AND TO STRIKE AFFIRMATIVE DEFENSES
Case No. C 06 2361 WHA

*No. C 03-05669 JW*, 2006 WL. 905324 (N.D. Cal. Apr. 7, 2006) ..................................................5

*Synopsys, Inc. v. Magma Design Automation*
*No. CIVA 05-701*, 2006 WL. 1452803 (D. Del. 2006) ............................................................11, 13

*Tesseron, Ltd. v. GMC Software*,
2006 WL. 840365 ......................................................................................................................3, 5

*Weatherford International, Inc. v. Casetech International, Inc.*
 *No. Civ. A.H.-03-5383*, 2005 WL. 1745457 (S.D. Tex., July 25, 2005) ........................................4

**FEDERAL STATUTES**

35 U.S.C. § 271(d)(3) ......................................................................................................................10

Federal Rule of Civil Procedure 9(b)................................................................................................4

## I. INTRODUCTION

Blockbuster has adopted the increasingly kneejerk tactic of responding to a patent infringement complaint with antitrust counterclaims and assertions of unenforceability and misuse. Whatever its motivations—whether to try to create leverage for settlement, defame Netflix, or ultimately deflect jury attention from the infringement and validity issues at the heart of the case—Blockbuster's allegations, even if true, fail to accomplish either of the following:

- establish *Walker Process*'s narrow exception to the general rule that patentees are not subject to antitrust liability for obtaining and enforcing a patent; or
- provide any independent basis, that does not derive entirely from its *Walker Process* claim, for sustaining its claim of sham litigation or its defenses of unenforceability and misuse.

Nothing in Blockbuster's opposition cures its pleading defects. Accordingly, the Court should dismiss Blockbuster's antitrust counterclaims and strike its affirmative defenses of unenforceability and patent misuse.

In the alternative, the Court should exercise its discretion to bifurcate proceedings and stay discovery with respect to Blockbuster's antitrust counterclaims. As a matter of law, these counterclaims are conditioned on the outcome of the patent issues in this case. Blockbuster says nothing in its opposition to the contrary. Further, nothing in Blockbuster's opposition counters the fact that proceeding with the antitrust issues would greatly increase the cost, burden, and complexity of this case. Because the antitrust issues may be altogether mooted depending on the outcome of the patent issues in the case, a bifurcation and discovery stay will promote judicial economy and efficiency while reducing cost, confusion, and prejudice.

## II. DISCUSSION

**A. Blockbuster Has Failed To State A Claim For *Walker Process* Fraud.**

*Walker Process* carved a narrow exception to the general rule that patentees are not subject to antitrust liability for obtaining and enforcing a patent. Indeed, in *Walker Process*, Justice Harlan wrote a separate concurrence specifically to "allay possible misapprehension as to

the possible reach of this decision," which sanctioned an antitrust action, predicated in part upon fraud on the PTO in procuring the patent. *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.,* 382 U.S. 172, 179 (1965) (Harlan concurring). Justice Harlan explained that this exception must be severely limited and applied only to cases of knowing and deliberate fraud, lest the threat of countersuit "impinge upon the policy of the patent laws to encourage inventions and their disclosure." *Id.* at 179-80; *see also Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 989, 996 (9th Cir. 1979) (*Walker Process* fraud is "extremely circumscribed" and limited to "a deliberately planned and executed scheme to defraud"); *Cataphote v. De Soto Chem. Coatings,* 450 F.2d 769, 772 (9th Cir. 1972) ("technical fraud" or "honest mistakes which are caused neither by fraudulent intent or design" do not support *Walker Process* fraud). And as with all fraud claims, *Walker Process* claims are subject to Rule 9(b)'s heightened pleading standard. *See, e.g.*, *MedImmune, Inc. v. Genentech, Inc.*, 427 F.3d 958, 967 (Fed. Cir. 2005); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

### 1. Blockbuster has failed to identify the undisclosed prior art with particularity.

Blockbuster's *Walker Process* counterclaim hinges entirely on its allegations that Netflix committed fraud on the PTO by failing to disclose assorted prior art. For such a claim, Rule 9(b)'s heightened pleading standards first require that Blockbuster specifically identify any prior art that Blockbuster maintains Netflix deliberately withheld. But Blockbuster's claim avers that Netflix deliberately withheld "prior art that included some or all of the following," and "all of the other prior art [Netflix] … knew about." Answer and Counterclaims ¶¶ 44, 53.

In *ASM America, Inc. v. Genus, Inc.*, No. 01-2190 EDL, 2002 WL 24444, at *2, 3 (N.D. Cal. Jan. 9, 2002), Magistrate Judge Laporte struck for lack of particularity under Rule 9(b) a *Walker Process* claim that relied, in part, on allegations that the patentee withheld prior art "including without limitation" other unnamed prior art. Similarly, in *Advanced Cardiovascular Sys. v. Medtronic, Inc.*, 1996 WL 467273, at *6 (N.D. Cal. July 24, 1996), the court struck from the pleadings a general reference to "pertinent, material prior art," precisely because the claimant did not "provide[] the particulars of what [the patentee] failed to disclose." These holdings

1  accord with the Rule 9(b) case law, including Blockbuster's own cited cases, which require that

2  prior art be identified specifically.  *See Tesseron, Ltd. v. GMC Software*, 2006 WL 840365, at

3  *1-2 (identifying two prior art patents by number); *McKesson Info. Solutions*, *LLC v. The

4  Trizetto Group, Inc.*, No. Civ. 04-1258, 2005 WL 914776, at *3 (D. Del. Apr. 20, 2005)

5  (identifying omitted prior art publications by name); *Mars Inc. v. JCM American Corp.*, No. 05-

6  3165, 2006 WL 1704469, at *4 (D.N.J. June 14, 2006) (same).[1]

Blockbuster also alleges that Netflix withheld three general *categories* of prior art—(1) video rental industry standards, (2) video and film subscription methods, and (3) e-commerce business methods—without further elaboration.  Answer and Counterclaims ¶¶ 44(b)-(d).  Blockbuster does not even purport to argue that such general allegations of "long-standing and widely known widely known practices in the video rental industry" or "e-commerce business methods … related to the selection and ordering of items" meet the particularity standard.  Adding a few corporate names (*e.g.*, HBO, Showtime, Tivo) to the second general category of prior art hardly satisfies the requirement that Blockbuster identify with specificity the prior art it claims Netflix deliberately withheld.  Blockbuster Opposition to Netflix Motion to Dismiss ("Opp.") at 5.  Netflix cannot hazard a guess as to what Blockbuster is asserting was withheld regarding these subscription TV services here.[2]  The three cases that Blockbuster cites to support

---

[1] Blockbuster cites *Tesseron*, *McKesson, and Mars*, each of which considered pleading inequitable conduct, to support its arguments about the requirements for pleading fraud.  But it is well settled that inequitable conduct is a "broader more inclusive concept than the common law fraud needed to support a *Walker Process* counterclaim." *Nobelpharma AB*, 141 F.3d at 1069-70; *see also C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1365 (Fed. Cir. 1998) (*Walker Process* fraud requires "greater showing of scienter and materiality" than inequitable conduct); *Mars Inc. v. JCM American Corp.*, No. 05-3165, 2006 WL 1704469 * 4 (D.N.J. June 14, 2006) ("inequitable conduct is substantively different than a common law fraud claim"); *accord MedImmune, Inc. v. Genentech, Inc.*, 03-CV-02567, at 19-23 (C.D. Cal. Dec. 24, 2003).

[2] HBO and Showtime are premium cable channels that transmit premium programming for a monthly price higher than that paid by "basic cable" viewers.  To Netflix's knowledge, neither channel allows individual viewers to compile a list of desired programming, update that list, and receive desired programming according to the order of the list subject to viewing maximums.  Further, Tivo provides hardware that allows customers to digitally record television programming, and provides an added service that automatically updated recording times to accord with channel scheduling changes.  How their products relate to the patents at issue, Netflix cannot tell.

3
NETFLIX'S REPLY I/S/O MOTION TO DISMISS OR, ALTERNATIVELY, TO BIFURCATE AND STAY
BLOCKBUSTER'S ANTITRUST COUNTERCLAIMS AND TO STRIKE AFFIRMATIVE DEFENSES
Case No. C 06 2361 WHA

the sufficiency of its categorical allegations (Opp. at 5) in fact contradict its position.[3]

Accordingly, the Court should dismiss Blockbuster's *Walker Process* claim for lack of particularity, or alternatively strike these allegations from Blockbuster's pleading. *See Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1105 (9th Cir. 2003) (averments of fraud that are insufficiently pleaded should be stripped from the claim in considering adequacy of pleading); *ASM America*, 2002 WL 24444, at *2 (striking defense of inequitable conduct where insufficiently pleaded).

### 2. Blockbuster's allegations with respect to the only prior art it does specifically identify—the NCR Patents—does not sufficiently plead materiality.

Materiality, as an integral element of fraud, must be pleaded with particularity; it is not sufficient to allege generally that undisclosed prior art was "material" or that Netflix's patents would not have issued "but for" the omission of the NCR Patents. *See* Fed. R. Civ. P. 9(b) (excepting only intent, not materiality, from heightened pleading); *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 594 (7th Cir. 2006) (pleading must "support with particularity" the falsity of the statement of fact or the omission, and its materiality, and it is insufficient "simply to allege in general that the defendant's statement was false and material").[4]

While Blockbuster argues that it has sufficiently pleaded materiality by making two general averments—that the prior art "was material to both the '450 and '381 patents" and "the Patent Office justifiably relied on the … omissions … and that the Office would not otherwise have issued those patents" (Opp. at 9:7-12)—Blockbuster's own cases refute its position. Opp. at 9:5-21. *MedImmune, Inc. v. Centocor, Inc.*, 271 F. Supp. 2d 762, 772 (D. Md. 2003), applied Rule 9(b)'s pleading requirements to the elements of fraud, including materiality, singling out

---

[3] *Cf. Overend Techs., LLC v. Invista S.À.R.L*, 431 F. Supp. 2d 925, 931 (E.D. Wis. 2006) (claimant alleged a *specific* false statement made to the PTO); *DataQuill Ltd v. Handspring, Inc.*, No. 01 C 4635, 2001 WL 1183290, at *3 (N.D. III. Oct. 4, 2001) (alleging a *particular* device and a prior-art patent by name); *Weatherford Int'l, Inc. v. Casetech Int'l, Inc.*, No. Civ. A.H. 03-5383, 2005 WL 1745457, at *2 (S.D. Tex., July 25, 2005) (identifying *specific* drawings that deviated from those submitted to the PTO).

[4] Though *Makor* is a securities case subject to pleading requirements of the PSLRA, the PSLRA superseded the requirements of Rule 9(b) in securities fraud cases, only with respect to scienter, not materiality. *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1034 n.12 (9th Cir. 2002).

1  only intent as subject to general pleading. And in *Competitive Tech v. Fujitsu*, 286 F. Supp. 2d
2  1118, 1149 (N.D. Cal. 2003), the court found materiality was adequately alleged because the
3  claimant "alleges specific facts in support of its allegation that it justifiably relied on the alleged
4  misrepresentations." Blockbuster's claim that greater particularity would require "nothing short
5  of an affidavit from the Patent Examiner about his thought process" is silly. Opp. at 10:1-2. For
6  one, "but for" materiality is determined by an objective standard, not the patent examiners'
7  subjective thoughts. *See Regents of University of California v. Micro Therapists, Inc.*, No. C
8  03-05669 JW, 2006 WL 905324, at *9 (N.D. Cal. Apr. 7, 2006) (describing different tests for
9  materiality in patent claims). Second, before alleging *Walker Process* fraud, Blockbuster was
10 required to undertake a pre-pleading investigation to assure that the charge is responsible and
11 supported. *See Ackerman v. Northwester Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999).
12 Blockbuster must plead the objective facts, based on a pre-pleading investigation, that render the
13 NCR patents material to the PTO's determination of the validity of Netflix's patent claims.
14 Thus, to plead materiality with particularity, Blockbuster must allege facts that, if true, would
15 have led the patent examiner to conclude that each of the NCR patents discloses the claimed
16 invention. This Court's decision, in *Intel Corp. v. VIA Techs., Inc.*, No. C 99-03062, 2001 WL
17 777085 (N.D. Cal. Mar. 20, 2001) is instructive. In that case, the antitrust claimant, VIA,
18 adequately pleaded the materiality of the omitted prior art to Intel's claimed AGP invention by
19 alleging:

20  1.  The prior-art patent "purports to disclose and claim a scheme for implementing
        high-priority read and write commands that are necessary in order to comply with
21      the AGP 1.0 and 2.0 bus interface standards."

22  2.  The title of the prior-art patent "is a shorthand description of the AGP standard."

23  3.  The prior-art patent "purports to cover a key feature of the AGP 2.0
        specification."
24

25 *Id*. at *4.[5] These are the kinds of specific allegations required. By contrast, Blockbuster's

26 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
   [5] Blockbuster's cases support this minimal requirement. In *Tesseron, Ltd. v. GMC Software*, No.
27 1:04 CV2182, 2006 WL 840365, at *2 (N.D. Ohio Mar. 30, 2006), which Blockbuster cites for
   the proposition that the Court ought not inquire into the adequacy of their allegations at all, the
28

5

NETFLIX'S REPLY I/S/O MOTION TO DISMISS OR, ALTERNATIVELY, TO BIFURCATE AND STAY
BLOCKBUSTER'S ANTITRUST COUNTERCLAIMS AND TO STRIKE AFFIRMATIVE DEFENSES
Case No. C 06 2361 WHA

1  allegation that NCR sent a litigation threat letter to Netflix CEO Reed Hastings (NCR never
2  actually filed a complaint) is insufficient.

3  Indeed, under Blockbuster's reasoning, a *Walker Process* claimant could survive a
4  motion to dismiss merely by naming any patent asserted against Netflix, regardless of whether it
5  has anything to do with the patent claims at issue in the case.  Blockbuster has simply identified
6  a series of patents that NCR asserted Netflix should consider licensing, without identifying how
7  any of those patents would have been a material, prior art reference for the *Netflix patents*
8  asserted in this case.[6]  Blockbuster's general allegations simply do not meet the requirements of
9  Rule 9(b) to plead materiality with particularity.

10    **3.    Blockbuster's allegations fail adequately to allege deceptive intent.**

11  Contrary to Blockbuster's contentions, Netflix does not argue that intent must be pleaded
12  with the exacting particularity required for other elements of a *Walker Process* fraud claim.
13  Rather, as Judge Jensen found when striking an inequitable conduct defense in *Advanced*
14  *Cardiovascular Sys. v. Medtronic, Inc.*, Netflix's position is that Blockbuster has "failed to
15  disclose the circumstances indicating [the patentee's] intent to mislead the PTO."  1996 WL
16  467273, at *6; *see also MedImmune, Inc. v. Genentech, Inc.*, 03-CV-02567, at *23 (C.D. Cal.
17  Dec. 24, 2003) (requiring that claimant "alleg[e] independent evidence of deceptive intent");
18  *Chip-Mender, Inc. v. Sherwin-Williams Co.*, 2006 WL 13048, at *6 (N.D. Cal. Jan. 3, 2006),

---

court found that materiality was sufficiently pleaded largely because the counterclaimant also "alleged that one PTO examiner cited the [specified omitted patent] as pertinent prior art to at least one of the patents-in-suit."  Here, Blockbuster does not allege the PTO cited the NCR patents against Netflix.  *Papst Motoren GMbH & Co. v. Kanematsu-Goshu (U.S.A.) Inc.*, 629 F. Supp. 864 (S.D.N.Y. 1986), also detracts from Blockbuster's position.  Rather than finding a general averment of materiality sufficient as Blockbuster suggests, the court in *Pabst* noted that the claimant specifically alleged that (1) a patent examiner working on a companion patent application had discussed the omitted prior-art patent with prosecution counsel, and (2) prosecution counsel in fact referred to the omitted prior-art patent in an amendment while prosecuting the companion application.  *Id.* at 870 n.2.

[6] Blockbuster's bullet-point list of similarities to selected sub-elements of claims in its opposition brief is no replacement for particularized averments of materiality that are absent from its counterclaim. Though even if alleged, they would be insufficient, as a matter of law, to cause the PTO to reject a patent application—the standard required for "but for" materiality in pleading *Walker Process* fraud.

(dismissing a *Walker Process* claim for failure to "properly [plead] the element of intent"). The Court in *Chip-Mender* noted that, to properly plead intent, a claimant "must allege more than inequitable conduct" and must "*state facts* showing that the alleged fraud was 'knowing' and 'willful.'" *Id.* (emphasis added). Blockbuster fails to allege any evidence of such intent independent of the allegation that prior art was withheld, and its deficient pleading is not cured by merely reciting the "knowing and willful" catchphrase.

*McKesson Info Solutions, Inc. v. Bridge Med., Inc*, 2006 WL 1652518, at *15 (E.D. Cal. June 13, 2006), a case cited by Blockbuster, elaborates on the kind of "independent" facts that Blockbuster must allege. In *McKesson*, the plaintiff's patent attorney had prosecuted co-pending applications for the '716 and '009 Patents. The examiner of the '009 Patent rejected several of its claims as being obvious in light of a prior-art patent by Baker, which the examiner noted was material. *Id.* Without ever protesting the examiner's conclusion, the patent attorney himself cited the Baker prior art in yet a third related application, and proceeded to prosecute the '716 patent for another 22 months without disclosing the Baker prior art. *Id.*

The "facts" that Blockbuster has culled from its counterclaim in support of its allegations of deceptive intent, in contrast, do not give rise to an inference of intent to deceive the PTO by knowingly withholding material prior art. Blockbuster first alleges Netflix's failure to submit any prior art in support of the original, '450 application, in contrast with its subsequent disclosure of over 100 references in support of the '381 application. But, it falls to allege that Netflix knew of any of the 100 references during prosecution of the earlier '450 patent, let alone that it believed them to be material to the '450 application. Blockbuster does allege that Netflix knew of the NCR patents when prosecuting the '450 patent, but does not allege that Netflix analyzed the NCR patents in relation to the '450 or '381 applications, or believed that any of the NCR patents were material to either patent application. The only other "fact" alleged by Blockbuster is a purported remark by Netflix's CEO that the '450 patent was a "joke," a remark allegedly made *after* the '450 issued and which, even if true, would not cause any reasonable person to infer that Netflix's CEO believed that material prior art had been withheld from the

7

NETFLIX'S REPLY I/S/O MOTION TO DISMISS OR, ALTERNATIVELY, TO BIFURCATE AND STAY
BLOCKBUSTER'S ANTITRUST COUNTERCLAIMS AND TO STRIKE AFFIRMATIVE DEFENSES
Case No. C 06 2361 WHA

PTO during prosecution of the patent.

In sum, Blockbuster's *Walker Process* claim is insufficient for any and all of the following defects: (1) it fails to identify with particularity the prior art that Netflix allegedly withheld, including which of the NCR patents Blockbuster alleges should have been disclosed; (2) it fails to sufficiently allege facts regarding the materiality of any allegedly withheld reference; and (3) it fails to allege facts which, if true, would support an inference of a "deliberately planned and executed scheme to defraud" the PTO, as opposed to "honest mistakes which are caused neither by fraudulent intent or design." *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 996 (9th Cir. 1979); *Cataphote v. DeSoto Chemical Coatings, Inc.*, 450 F.2d 769, 779 (9th Cir. 1972).

**B.    Blockbuster's Sham Litigation Claim Is Derivative And Fails Sufficiently To Allege Subjective Bad Faith.**

To state a claim for sham litigation, an antitrust plaintiff must prove that the suit was both "*objectively* baseless" and "*subjectively* motivated by a desire to impose collateral, anti-competitive injury, rather than to obtain a justifiable remedy." *See Nobelpharma*, 141 F.3d at 1071 (emphases added). A lawsuit is "objectively baseless" if "no reasonable litigant could realistically expect success on the merits." *Id*.

Netflix pointed out in its opening brief how Blockbuster's claim for sham litigation derives entirely from its allegations of fraud, and thus fails for the same reasons as its *Walker Process* claim. Blockbuster maintains, however, that it alleges facts independent from fraud, claiming that Netflix's suit is objectively baseless because the Netflix patents are (1) clearly invalid and (2) "blatantly overbroad," and (3) the '450 patent was called a "joke" by Netflix's CEO. Opp. at 14:2-5. Plainly, this allegation of objective baselessness is derivative. Blockbuster asserts no facts supporting its claim of invalidity apart from its insufficient allegations of deliberately withheld prior art. Blockbuster's second and third allegations of blatant overbreadth and an alleged belief that the '450 patent was a "joke" are not grounds, objective or otherwise, for declaring a patent to be invalid, or a suit for infringement of those patents to be *objectively baseless*.

8

NETFLIX'S REPLY I/S/O MOTION TO DISMISS OR, ALTERNATIVELY, TO BIFURCATE AND STAY
BLOCKBUSTER'S ANTITRUST COUNTERCLAIMS AND TO STRIKE AFFIRMATIVE DEFENSES
Case No. C 06 2361 WHA

Further, Blockbuster fails adequately to plead Netflix's subjective bad faith in pursuing the current lawsuit, *i.e.*, that Netflix believed, either in the past or at the time it filed this suit, that the asserted patents were invalid. At best, Blockbuster alleges Netflix's CEO's statement that the '450 patent, not the '381 patent, was a joke. For the reasons stated above, this does not allege any belief by Netflix that the '450 patent is invalid, let alone that Netflix's suit based upon both the '450 and '381 patent is baseless. *Id*. Thus, Blockbuster's allegations of sham litigation are both derivative, and thus deficient, and also fail to allege subjective bad faith.

### C. Blockbuster's Second And Third Affirmative Defenses Should Be Stricken For Failure Adequately To Allege Inequitable Conduct And Patent Misuse

Like *Walker Process* fraud, it is well settled that a defense of inequitable conduct is subject to the heightened pleading requirements of Rule 9(b). *See PB Farradyne, Inc. v. Peterson*, 2006 WL 132182, at *4 (N.D. Cal. Jan. 17, 2006) (citing *Ferguson Beauregard/Logic Controls v. Mega Systems, LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003)). Inequitable conduct requires "… failure to disclose material information … coupled with an intent to deceive." *Semiconductor Energy Lab. Co., Ltd. v. Samsung Elecs. Co., Ltd.*, 204 F.3d 1368, 1373 (Fed. Cir. 2000). Although the intent component of inequitable conduct may be averred generally, the other failure to disclose material information elements on which Blockbuster relies must be pleaded with particularity. *See* supra at 1-4. For the reasons discussed above, Blockbuster neither identifies with particularity the material information allegedly withheld by Netflix, including which of the NCR patents Blockbuster contends Netflix should have disclosed, nor does it sufficiently allege the materiality of the NCR patents or any other withheld prior art. The Court should therefore strike Blockbuster's inequitable conduct claim.

With respect to patent misuse, even in its Opposition Blockbuster still fails to identify any facts to support its one-sentence patent misuse defense, instead opting to bulk-cite all its factual allegations from its Answer. Opp at 16:3-4 (citing Answer and Counterclaims ¶¶ 17-70). Patent misuse typically involves a patentee's efforts to extend the economic effect of its patent beyond the scope of the granted claims. *See C.R. Bard*, 157 F.3d at 1372. However, Blockbuster's Answer contains no such allegations with respect to Netflix, nor does Blockbuster

1  identify any other conduct on which it relies to support this defense.  Netflix can only speculate

2  that Blockbuster bases its misuse defense on its sham litigation allegations, in which case the

3  defense should be stricken for the same reasons.  *See Advanced Cardiovascular Sys.,* 1996 WL

4  467273, at *6 (striking misuse defense grounded entirely on inadequately pleaded sham litigation

5  defense).  Moreover, the patent statute expressly provides that a misuse claim cannot be based

6  upon a patentee seeking to enforce its patent rights.  *See* 35 U.S.C. § 271(d)(3).

**D.  Should Blockbuster's Antitrust Counterclaims Not Be Dismissed, They Should Be Bifurcated And Discovery Stayed, As The Counterclaims Depend Upon The Outcome Of Netflix's Claims And Will Greatly Expand This Litigation**

This is precisely the kind of case calling for the "standard practice" of bifurcating antitrust counterclaims, in order substantially to narrow the issues and promote clarity and judicial economy.  *See In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986).  Blockbuster's cases present exceptions that do not apply here.  Indeed, Blockbuster cannot escape the simple and undeniable logic that, *unless the patents-in-suit are found to be invalid or unenforceable*, Blockbuster's antitrust counterclaims cannot proceed.

**1.  Resolution of the threshold and underlying patent issues will likely obviate the antitrust counterclaims.**

Blockbuster overlooks the primary reason why *Walker Process and* sham litigation counterclaims are typically bifurcated and stayed:  Patentholders have qualified immunity from antitrust counterclaims, an immunity that would be compromised were they forced prematurely and unnecessarily to mount an antitrust defense and bear the burden of antitrust discovery and trial as the price for asserting their patent rights.  *See ASM America*, 2002 WL 24444, at *6 (sham litigation and fraudulent procurement theories fail if the patents are not invalidated); *Hunter Douglas, Inc. v. Comfortex Corp.*, 44 F. Supp. 2d 145, 151-52 (N.D.N.Y. 1999) (explaining benefits of a stay to determine patent validity based on *Noerr-Pennington* immunity to antitrust claims).

Blockbuster ignores this fundamental principle, arguing that Netflix is engaging in "wishful thinking" that validity and enforceability will be upheld.  But Netflix relies on far more than "wishful thinking;" Netflix patents are legally presumed to be valid, and the overwhelming

1 majority of *Walker Process* or sham litigation claims either are never tried or are rejected.
2 Netflix is aware of only two appellate cases that have ever affirmed a finding of *Walker Process*
3 fraud, and not one reported decision since 1993 has found a patent holder liable for sham
4 litigation.  *See* Herbert Hovenkamp et al., *IP and Antitrust* §§11.2f 11.3b3, at 11-11-14.1 &
5 n.54.1, 11-24 (2006 Supplement).

### 2. Bifurcation will simplify the case, avoiding the cost and burden of antitrust discovery, reducing prejudice and confusion.

In its attempt to portray the patent-liability claims and its antitrust counterclaims as "interwoven," Blockbuster focuses only on the overlapping issue of materiality of allegedly withheld prior art.  Blockbuster simply ignores all the other elements of its antitrust claims that will necessitate far broader discovery—for example, the definition of the relevant market, the determination of market share, probability of achieving monopoly power, and causal antitrust injury.  Not surprisingly, Blockbuster also ignores the issues of intent to deceive and subjective bad faith, which may well require unnecessary discovery into attorney-client privileged communications, and the mental impressions of the attorneys who prosecuted the Netflix patents.  Without question, avoiding discovery and litigation regarding these unnecessary, intrusive, and far-reaching subject areas will promote judicial economy and efficiency, while reducing the likelihood of prejudice and confusion that will occur should the claims and counterclaims be tried together.[7]

What Blockbuster also cannot deny is the additional cost and burden that antitrust discovery always imposes upon the parties, and oftentimes third parties.  *See ASM America*, 2002 WL 24444, at *6 (finding that bifurcation and a stay of antitrust claims, would likely "simplify the case, avoid confusion, and reduce the burden and costs imposed on the Court, the attorneys, and the parties by deferring the burdensome and expensive discovery that would

---

[7] Blockbuster complains that Netflix provides no in-depth analysis to this clear and generally accepted point on jury confusion, but offers no analysis in response.  Opp. at 22:6-10.  It cites only to *Synopsys, Inc. v. Magma Design Automation*, No. CIVA 05-701, 2006 WL 1452803, at *4 (D. Del. 2006), an opinion that fails to cite any precedent, or even to offer a case-specific basis for its conclusion that jurors will not be confused when confronted with additional antitrust issues.

1  necessarily arise from litigation of the antitrust claims, and possibly avoiding it altogether"); *see*
2  *also Carlisle Corp. v. Hayes*, 635 F. Supp. 962, 967 (S.D. Cal. 1986) (separate trial of antitrust
3  counterclaims in patent infringement suit is particularly advantageous in view of extensive and
4  protracted discovery inherent in trial of antitrust issues).

5        Blockbuster argues that the Court should allow antitrust discovery to proceed as it did in
6  *Intel v. Via*, 2001 WL 777085 (N.D. Cal. 2001), but there are material differences in that case
7  from the mine-run counterclaims that Blockbuster asserts here. First, the antitrust claim in *Intel*
8  *v. Via* was based on conduct "prior in time" to the patent claims in suit. The Court noted that
9  Intel had drastically changed its patent allegations ("Intel abandoned its initial battery of patents
10 and refilled an amended complaint with a new battery of patents") over a *year* after the antitrust
11 counterclaims were filed (*Id*. at *2, *7), and that the antitrust issues "were in play already" for
12 quite some time, having been specifically contemplated in negotiating a prior settlement
13 agreement, *and* thus the antitrust claim had "at least equal priority" to the subsequently filed
14 patent claims. *Id*. at 7. Here, Netflix's patent claims are prior in time, the antitrust counterclaims
15 are dependent on the outcome of those claims, and there has been no prior negotiation of the
16 antitrust issues between the parties.

17       Second, *Intel* involved a specific admission by a named inventor that he *could not recall*
18 *whether he had intended to defraud the PTO*. Thus, this Court found further passage of time
19 might prejudice the antitrust claimant.

20       Finally, the antitrust allegations in *Intel* were predicated on an entire set of patent-related
21 facts beyond fraudulent sections of the patents—namely, an alleged pattern of practice by Intel
22 that involved a longstanding effort to lure industry participants into adopting Intel's proposed
23 standards and licensing its patents thereto, only to be subsequently sued by Intel for infringement
24 of different patents. There are no comparable allegations in this case.

25       Blockbuster's other citations to cases denying bifurcation and a stay (Opp. at 17:7-12) are
26 clearly inapposite:

27
28

12
NETFLIX'S REPLY I/S/O MOTION TO DISMISS OR, ALTERNATIVELY, TO BIFURCATE AND STAY
BLOCKBUSTER'S ANTITRUST COUNTERCLAIMS AND TO STRIKE AFFIRMATIVE DEFENSES
Case No. C 06 2361 WHA

- In *Climax Molybdenum Co. v. Morychem, L.L.C.*, 414 F. Supp. 2d 1007, 1014 (D. Colo. 2005), the court had already stayed the action for 14 months due to ITC proceedings. But more importantly, the ITC had *already adjudicated all the patent issues*, and, in fact had already found that the patentholder had defrauded the PTO! As the court noted, "this case is unusual because there has already been an evidentiary proceeding in the ITC." *Id.* at 1014.

- The court in *ACS Communications, Inc. v. Plantronics, Inc.*, No. Civ. 95-20294, 1995 WL 743726, *2 (N.D. Cal. Dec, 1, 1995) did not reject bifurcation, instead it deferred its decision. The case is also distinguishable as (1) there was a second plaintiff advancing the original antitrust claim that was not asserting a patent, and thus its claim would not be unaffected by resolution of the patent issues; and (2) the antitrust claim was filed before the patent claim, thus having "first priority."

- *Synopsys, Inc. v. Magma Design Automation*, No. CIVA 05-701, 2006 WL 1452803, *5 (D. Del. 2006) an admittedly contrarian opinion in which the court fails to mention a single case supporting its analysis. Nor could it. It based its decision not to bifurcate by (1) presuming that astute lawyering could make the antitrust issues easy for the jury and (2) and suggesting that the elimination of the antitrust issues would not save the court time because moving party failed "to propose to shorten the number of days allocated for trial in the event that a stay is granted."

   **3.   A subsequent antitrust trial, should one ever occur, would neither necessitate the retrial of patent-liability issues, nor impair Blockbuster's right to trial by jury.**

Blockbuster crafts a lengthy argument that bifurcation would lead to inconsistent results for "closely related" yet "subtly differ[ing]" patent and antitrust issues predicated on similar facts, requiring redundant consideration by different juries. Opp. at 17-19. But the Federal Circuit has rejected this very type of argument as "self-defeating," because the issues tried in the patent case would be given preclusive effect in a subsequent antitrust trial, should one ever be required. *See In re Innotron Diagnostics*, 800 F.2d 1077, 1085 (Fed. Cir. 1986) ("Economy is served because in the trial of the patent issues the validity of the patent and [the antitrust claimant's] affirmative defenses will be determined and will become law of the case and thus removed from trial on … antitrust issues").

The following description of Innotron's argument applies equally to Blockbuster here:

> Innotron blows hot and cold … that most of the facts and issues in the patent trial are overwhelmingly intertwined and overlapping with those in its antitrust counterclaim. Innotron put identical charts in each of its two memoranda to illustrate the substantial identity of its affirmative defenses and many of the allegations in its antitrust counterclaim. Innotron's entire and extended argument, insisting on the substantial identity of the facts and evidence supporting its affirmative defenses and its antitrust

13
NETLIX'S REPLY I/S/O MOTION TO DISMISS OR, ALTERNATIVELY, TO BIFURCATE AND STAY
BLOCKBUSTER'S ANTITRUST COUNTERCLAIMS AND TO STRIKE AFFIRMATIVE DEFENSES
Case No. C 06 2361 WHA

1  counterclaim, is thus self-defeating.
2  *Id.* at 1085.
3  Blockbuster's related contention that bifurcation will impair its right to trial by jury is
4  meritless and has been soundly rejected by the Federal Circuit.[8]  Finding no support in patent
5  cases, Blockbuster instead relies on case discussing the need for a single jury to try both liability
6  and damages contract and tort actions.  Opp. at 20.  Blockbuster's analogy runs counter to the
7  decisions in patent cases that find no impairment of the right to a jury trial from the bifurcation
8  of patent and antitrust claims.  *See, e.g., Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209,
9  1212 (Fed. Cir. 1987); *In re Innotron Diagnostics*, 800 F.2d 1077, 1085; *Implant Innovations,*
10 *Inc. v. Nobelpharma AB*, 1996 WL 568791, at *3 (N.D. Ill., Oct. 2, 1996).

**4.    Should the Court decide not to stay Blockbuster's antitrust counterclaims until resolution of the patent trial, discovery regarding antitrust issues should be phased.**

13  Blockbuster's assertion that this Court in *Intel* "denied a motion to bifurcate . . . and to
14  stay related discovery," though technically true, is misleading.  Opp. at 17:5-7.   To be clear, this
15  Court did not refuse bifurcation of the patent and antitrust issues—it merely delayed
16  consideration. *Id*. at *7.  And though it did not stay all discovery, it did prioritize and limit
17  discovery to issues regarding the scope of a prior related settlement and licenses, "so that a
18  partial summary judgment motion thereon may be brought [and heard]" with due haste.
19  Netflix has been unable to discern whether the Court eventually allowed antitrust
20  discovery to proceed, but the Court opted to hear motions for partial summary judgment on
21  invalidity and materiality of various prior art references, after which the case settled.  Neither
22  motion involved consideration of any broad antitrust issues.  *See Intel Corporation v. VIA*
23  *Technologies, Inc.*, 176 F. Supp. 2d 991 (N.D. Cal. Dec. 5, 2001); *Intel Corp. v. VIA*
24  *Technologies, Inc.*, 174 F. Supp. 2d 1038 (N.D. Cal. Nov. 20, 2001)  Here, if Blockbusters'
25  counterclaims are permitted to proceed, and if they are not bifurcated and stayed pending the

---

[8] And its reliance on Supreme Court and Ninth Circuit cases that rejected bifurcation falters on the incorrect and unsupported premise that those were cases "where issues are 'interwoven' *like those of the patent and antitrust portions of this case*." Opp. at 19:22-23.

1  outcome of Netflix's patent claims, antitrust discovery should at least be stayed pending a partial
2  summary judgment motion regarding the materiality of any properly identified, withheld prior
3  art.

### III.  CONCLUSION

For the foregoing reasons and as set forth in Netflix's opening papers, the Court should dismiss Blockbuster's First and Second Counterclaims and Second and Third Affirmative Defenses, or in the alternative, bifurcate proceedings and stay discovery with respect to the First and Second Counterclaims.

Dated:  August 3, 2006                                         KEKER & VAN NEST, LLP


                                                               By:  /s/ Jeffrey R. Chanin
                                                                    JEFFREY R. CHANIN
                                                                    DARALYN J. DURIE
                                                                    Attorneys for Plaintiff
                                                                    NETFLIX, INC.