United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETFLIX, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>BLOCKBUSTER, INC.,<br><br>    Defendant.<br>_____/ | No. C 06-02361 WHA<br><br>**ORDER DENYING NETFLIX'S MOTION TO DISMISS; MOTION TO STRIKE; AND MOTION TO BIFURCATE** |

### INTRODUCTION

In this patent-infringement action, plaintiff Netflix, Inc. moves to dismiss antitrust counterclaims by defendant Blockbuster, Inc., and moves to strike Blockbuster's affirmative defenses of inequitable conduct and patent misuse. In the alternative, Netflix moves to bifurcate proceedings on Blockbuster's counterclaims and to stay discovery on the counterclaims pending resolution of Netflix's patent-infringement claims. This order holds that Blockbuster adequately pled its antitrust counterclaims and affirmative defenses for purposes of surviving dismissal and striking. Furthermore, given the relationship between the issues presented by Netflix's claims and Blockbuster's counterclaims, this order finds that neither bifurcation nor a discovery stay is warranted at this time. Accordingly, Netflix's motions are **DENIED**.

### STATEMENT

Netflix is the holder of the two patents in suit, which described methods for renting items, in particular for ordering digital video discs via the Internet (but not transmitting them

via the Internet). Netflix's first patent, U.S. Patent No. 6,584,450 ("the '450 patent"), issued on June 23, 2003. Its second patent, U.S. Patent No. 7,024,381 ("the '381 patent"), issued on April 4, 2006. The same inventors and prosecuting lawyers were involved with both patents, and both patents were assigned to Netflix.

Since 1999, Netflix has rented movies on DVDs on a subscription basis through its website, www.netflix.com. Blockbuster has also rented DVDs for many years. Until 2004, Blockbuster's rentals were conducted in traditional brick-and-mortar stores. On August 11, 2004, Blockbuster launched "Blockbuster Online," which provided for the rental of DVDs over the Internet through its website www.blockbuster.com (Answer ¶ 30).

Netflix filed its application for the '450 patent on April 28, 2000. According to Blockbuster, Netflix did not disclose *any* prior art in conjunction with the application (Answer ¶ 39(b)). On May 14, 2003, while the '450 application was still pending, Netflix filed a continuation application that ultimately became the '381 patent. At first, Netflix allegedly still did not disclose any prior art in conjunction with the '381 application.

On June 14, 2003, the '450 patent issued. The '450 patent described a "method and apparatus for inventing items." The patent stated 100 claims. Claim 1 of the patent described (col. 14, lines 43–55):

> A method for renting items to customers, the method comprising the computer-implemented steps of:
> receiving one or more item selection criteria that indicates one or more items that a customer desires to rent;
> providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria; and
> in response to receiving any of the items provided to the customer, providing to the customer one or more other items indicated by the one or more item selection criteria, wherein a total current number of items pro-vided to the customer does not exceed the specified number.

Claims 14, 29, 49, 65, 79, 94, and 96 of the '450 patent all described iterations of the claimed method adjusted to the rental of movies.

After the '450 patent issued, Netflix allegedly flooded the PTO with over 100 prior-art references in support of the '381 application, none of which had been disclosed during the prosecution of the '450 patent (Answer ¶¶ 39(d), 44).

Moreover, according to Blockbuster, Netflix omitted certain material references in conjunction with *both* patent applications (*id*. at ¶¶ 44–45). Most notably, Netflix purportedly omitted reference to certain patents owned by NCR Corporation, four of which were issued before the '450 application, describing methods on topics such as "Ordering and Downloading Resources from Computerized Repositories" (*id*. ¶ 45).[*] These NCR patents were not included in the one hundred prior art references submitted with the '450 application. Netflix has initiated litigation against NCR in this district court, seeking a declaratory judgment for non-infringement of NCR's patents. *Netflix, Inc. v. NCR Corp.*, CV No. 06-1892 EDL. According to Blockbuster, the pleadings in that litigation show that Netflix was on notice of the existence of NCR's patents since at least 2003, when NCR sent Netflix a request to cease infringement (Answer ¶ 48) (citing complaint in *Netflix v. NCR*).

As stated, Blockbuster launched its own online-movie-rental service in August 2004, after the issuance of the '450 patent but during the pendency of the '381 application. Thereafter, in January 2005, Netflix's chief executive officer Reed Hastings and Blockbuster's then executive vice president Edward Stead purportedly met (Answer ¶ 40). During that meeting, Hastings allegedly "praised Blockbuster's competitive position in the online rental business and asked Stead when he had figured out that Netflix's '450 patent was a 'joke'" (*ibid*.).

On April 4, 2006, the '381 patent issued. This second patent described "approach for renting items to customers." Claim 1 of 51 claims described (col. 13, lines 6–23):

> A computer-implemented method for renting movies to customers, the method comprising:
>   providing electronic digital information that causes one or more attributes of movies to be displayed;
>   establishing, in electronic digital form, from electronic digital information received over the Internet, a

---

[*] This order takes judicial notice of the nine NCR patents submitted by Netflix (RJN Exhs. A–I). *See* Fed. R. Evid. 201.

3

>    movie rental queue associated with a customer
>    comprising an ordered list indicating two or more
>    movies for renting to the customer;
> causing to be delivered to the customer up to a specified
>    number of movies based upon the order of the list;
> in response to one or more delivery criteria being satis-
>    fied, selecting another movie based upon the order of
>    the list and causing the selected movie to be delivered
>    to the customer; and
> in response to other electronic digital information
>    received from the customer over the Internet, electroni-
>    cally updating the movie rental queue.

On the very day that the '381 patent issued, April 4, 2006, Netflix filed the instant lawsuit alleging infringement by Blockbuster of the two patents in issue. On June 13, Blockbuster filed its answer and counterclaims. Blockbuster counterclaimed that Netflix violated Section 2 of the Sherman Antitrust Act by committing knowing willful fraud on the Patent and Trademark Office when applying for the two patents in issue, and by asserting these patents in bad faith in sham litigation. Among Blockbuster's affirmative defenses, Blockbuster listed the defenses of inequitable conduct and patent misuse.

**ANALYSIS**

Netflix now moves to dismiss Blockbuster's counterclaims for violation of the Sherman Act. Netflix also moves to strike Blockbuster's affirmative defenses of inequitable conduct and patent misuse. In the alternative, Netflix moves to bifurcate its patent claims from Blockbuster's antitrust counterclaims for all purposes including discovery and trial.

1. **MOTION TO DISMISS.**

A motion to dismiss under FRCP 12(b)(6) tests for legal sufficiency of the claims alleged in the complaint. A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). On the other hand, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

   A. ***Walker Process* Claim.**

"As a general rule, behavior conforming to the patent laws oriented towards procuring or enforcing a patent enjoys immunity from the antitrust laws." *Unitherm Food Sys., Inc. v.*

4

*Swift Eckrich, Inc.*, 375 F.3d 1341, 1356 (Fed. Cir. 2004), *rev'd in part on other grounds*, 126 S. Ct. 980 (2006). "But this immunity is hardly absolute. Nearly forty years ago, the Supreme Court recognized that an inventor who obtains a patent by defrauding the patent office deserves no immunity." Such antitrust claims are known as *Walker Process* claims, referring to the Supreme Court's decision in *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 176 (1965). In order to "'achiev[e] a suitable accommodation in this area between the differing policies of the patent and antitrust laws,' a distinction must be maintained between patents procured by 'deliberate fraud' and those rendered invalid or unenforceable for other reasons." *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1069 (Fed. Cir. 1998) (quoting *Walker Process*, 382 U.S. 178–79 (Harlan, J., concurring)).

In order to succeed on a claim of *Walker Process* fraud, the antitrust claimant must demonstrate:

> (1) obtained the patent by knowingly and willfully misrepresenting facts to the PTO;
>
> (2) the party enforcing the patent was aware of the fraud when bringing suit;
>
> (3) independent and clear evidence of deceptive intent;
>
> (4) a clear showing of reliance, *i.e.*, that the patent would not have issued but for the misrepresentation or omission; and
>
> (5) the necessary additional elements of an underlying violation of the antitrust laws.

*Nobelpharma*, 141 F.3d at 1068–71.

"Like all fraud-based claims, *Walker Process* allegations are subject to the pleading requirements of Fed. R. Civ. P. 9(b)." *Medimmune, Inc. v. Genentech, Inc.*, 427 F.3d 958, 967 (Fed. Cir. 2005). "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. Proc. 9(b); *see also Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003).

The parties dispute the standard for pleading materiality in the *Walker Process* context. It is clear from the Federal Circuit's precedent, however, that a party claiming *Walker Process*

fraud, must plead with particularity the materiality of the references which the patent applicant omitted, by presenting particularized allegations that "but for" the omissions, the PTO would not have granted the patent.

Netflix cites *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588 (7th Cir. 2006), for the proposition that materiality must be pled with exacting particularity. *Makor* is neither controlling nor persuasive. That opinion addressed the pleading requirements under the Private Securities Litigation Reform Act of 1995, not under FRCP 9(b). As *Makor* made clear, "the PSLRA essentially returns the class of cases it covers to a very specific version of fact pleading — one that exceeds even the particularity requirement of Federal Rule of Civil Procedure 9(b)." *Id*. at 594.

In contrast, as the Federal Circuit noted, "[w]e have consistently explained that *Walker Process* fraud is a variant of common law fraud." *Unitherm*, 375 F.3d at 1358. What *Walker Process* and FRCP 9(b) require, accordingly, is that Blockbuster identify with particularity the reference or group of references that, but for their omission from Netflix's patent applications, the PTO would not have granted the applications. *See, e.g.*, *Grid Sys. Corp. v. Texas Instruments Inc.*, 771 F. Supp. 1033, 1039 (N.D. Cal. 1991) (for *Walker Process* claim, party must allege that "but for the fraud the affected patents would not have issued").

A party need not plead the intent element of its *Walker Process* claim with particularity. Instead, "it is the 'circumstances' constituting the fraud that must be alleged with specificity." *Competitive Techs. v. Fujitsu Ltd.*, 286 F. Supp. 2d 1118, 1149 (N.D. Cal. 2003).

\*        \*        \*

With these principles in mind, this order holds that Blockbuster sufficiently pled its *Walker Process* claim for purposes of surviving the motion to dismiss. Blockbuster alleged with particularity that Netflix knew of certain material prior-art references prior to its two patent applications, but nevertheless failed to disclose the references. The circumstances allow for an inference of fraudulent intent and that, but for these material omissions, the patents would not have issued.

6

*First*, Blockbuster adequately alleged that Netflix failed to identify the NCR patents during the prosecution of either patent in suit. The misrepresentation underlying a *Walker Process* claim may be "either a fraudulent misrepresentation or a fraudulent omission." *Nobelpharma*, 141 F.3d at 1070.

*Second*, Blockbuster also properly pled, for purposes of this motion to dismiss, that Netflix was aware of the existence of the NCR patents, but nevertheless failed to point the references out to the PTO examiner. Three of these patents issued before the '450 application. Netflix had a duty to investigate the relevant prior art for purposes of its applications. Beyond this, Netflix's statements during its currently pending litigation against NCR suggest that Netflix knew of these NCR patents by 2003, before the '450 patent issued.

*Third*, Blockbuster adequately alleged that but for the omission of the NCR patents from Netflix's patent applications, the patents in suit would not have issued.

Netflix tries to isolate one paragraph from Blockbuster's counterclaims to conclude that Blockbuster failed to meet the materiality requirement. In paragraph 53 of its answer, Blockbuster alleged:

> Blockbuster is informed and believes and thereon alleges that the NCR Patents and all of the other prior art that Netflix's Applicants and Representatives knew about and failed to disclose to the Patent Office, as described above was material to both the '450 and '381 patents.

Standing alone this allegation would be too pithy to satisfy FRCP 9(b). But this is only a portion of the other detailed allegations contained in Blockbuster's answer. In paragraph 45, Blockbuster described in detail the subject matter of the nine NCR patents omitted from Netflix's applications for the two patents in suit. Blockbuster adequately identified the links between the technology claimed in the NCR patents and the Netflix patents. As stated, Netflix's patents are directed to a computer-implemented method of renting items. Similarly, NCR's patents were directed to similar computer-implemented methods. For example, NCR's U.S. Patent No. 5,699,526, issued on December 16, 1997, summarized the invention as follows (RJN Exh. A, col. 2, lines 55–67):

> The present invention discloses a system for managing resources, comprised of multiple servers and one or more PCs coupled to the

7

> servers. The servers are grouped into local servers and regional
> servers, wherein each of the local servers stores resources, and
> each of the regional servers stores profiles of the resources. The
> profiles contain descriptive information about the resources stored
> on the local servers. The local and regional servers are linked
> together so that profiles and resources can electronically
> transferred there between. A PC coupled to server can view
> profiles stored in the regional servers, and then electronically
> order delivery of any resource described in a profile viewed by
> the PC.

Just as Netflix's patents described methods for selecting preferred items (in particular DVDs) to be delivered to a computer user, so too NCR's above patent described a system of selecting preferred resources that would then be delivered to a computer user. Accordingly, Blockbuster has adequately identified, for purposes of this motion to dismiss, prior art that the PTO examiner could have found to anticipate or render obvious the purported inventions disclosed in Netflix's patents.

Blockbuster also alleged that Netflix is currently seeking a declaratory judgment of non-infringement with respect to the NCR patents articulated above, further suggesting that the NCR patents were potentially invalidating references (Answer at ¶¶ 47, 48(c)–(d)). "[E]ven after Netflix had sued NCR over the issue of whether the NCR Patents cover the same rental service Netflix was engaged in patenting, Netflix and its Applicants and Representatives failed to submit the NCR Patents to the Patent Office" (*id.* at ¶ 52). Although Netflix's declaratory-relief action against NCR does not automatically mean that the NCR patents are invalidating-prior art, the controversy lends support for finding that NCR's patents could have rejected Netflix's patent applications had the PTO examiner known about the NCR patents.

Moreover, Netflix disclosed absolutely *no* prior art in applying for the '450 patent. Shortly after that patent issued, Netflix suddenly bombarded the PTO examiner with over one hundred references in support of the '381 patent (but not the NCR patents). This is so even though the same law firm prosecuted both patent applications, and even though the same named inventors were responsible for both applications. For Netflix's later patent, the PTO examiner would have needed to swim through a morass of references and then go beyond that morass to find the NCR patents.

8

Accordingly, Blockbuster concluded that "in issuing the '450 and '381 patents, the Patent Office justifiably relied on the foregoing misrepresentations, concealment, and omissions of material prior art and other material facts by Netflix's Applicants and Representatives and that the Office would not otherwise have issued those patents" (Answer at ¶ 100). The total weight of these allegations cumulatively satisfies the requirement under FRCP 9(b) that Blockbuster plead with particularity the "but for" causation underlying its *Walker Process* claim.

*Fourth*, Blockbuster sufficiently alleged circumstances constituting Netflix's fraudulent intent, consistent with the dictates of FRCP 9(b). Blockbuster alleged, as a non-exhaustive list: That Netflix failed to disclose the NCR patents to the PTO examiner despite knowing of their existence; that Netflix failed to disclose any prior-art materials until after the issuance of the '450 patent; that Netflix thereafter filed a barrage of prior-art references with the '381 application only months later; and that Netflix's own CEO referred to the '450 patent as a "joke." This is more than sufficient particularity at this point in the litigation.

Netflix relies heavily on *MedImmune Inc. v. Genentech Inc.*, CV 03-2567 MRP (C.D. Cal. Dec. 24, 2003) (Br. Exh. A), in which our sister district found that MedImmune failed to sufficiently plead fraudulent intent for its *Walker Process* claim. The *Genentech* decision, of course, is not controlling. It is also not persuasive. At least for purposes of this dismissal motion, Blockbuster has alleged independent facts giving rise to an inference of Netflix's fraudulent intent to omit and thereby deceive the PTO examiner. In contrast, in *Genentech*, MedImmune simply alleged that there was an omission without other supporting circumstances of fraud. Not so here.

*Finally*, there appears to be no contest that, having found that Blockbuster adequately alleged the above elements, Blockbuster has also sufficiently alleged the components of an underlying antitrust violation under Section 2 of the Sherman Act. A claim of monopolization under Section 2 of the Sherman Act, requires that a plaintiff allege: "(1) [p]ossession of monopoly power in the relevant submarket; (2) willful acquisition or maintenance of that

9

1  power; and (3) causal antitrust injury." *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir.
2  1997).

3  Blockbuster alleged that "Netflix's share of the relevant product and geographical
4  markets exceeds 65%" (Answer ¶ 90). Blockbuster also alleged that Netflix has sought to
5  maintain its market power by lowering its online DVD rental prices. Allegedly, "Netflix's price
6  reduction was in response to Blockbuster Online's own prices, which were lower than Netflix's
7  prices" (*id*. at ¶ 91). As a result of Netflix's purported monopolistic conduct, Blockbuster may
8  be forced out of the market, which would cede to Netflix virtually complete control of the
9  online-DVD market.

### B. Sham Litigation.

Blockbuster also sufficiently pled "sham litigation" as an independent basis for its antitrust counterclaims. "Conduct prohibited under antitrust law includes bringing suit to enforce a patent with knowledge that the patent is invalid or not infringed, and the litigation is conducted for anti-competitive purposes. In such events the antitrust immunity of *Noerr-Pennington* . . . does not apply to those who seek redress through judicial process." *C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1368 (Fed. Cir. 1998) (internal citations omitted). Where, as here, the alleged anti-competitive behavior consists of bringing a single sham lawsuit, the two findings necessary are that: "(1) the lawsuit must be objectively meritless such that 'no reasonable litigant could expect success on the merits' and (2) it must be found that 'the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor.'" *Ibid*. (quoting *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993)); *see also Kottle v. N.W. Kidney Centers*, 146 F.3d 1056, 1060 (9th Cir. 1998); *Cal. Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 512–13 (1972). "[T]o invoke 'sham' exception the claimant must show 'some abuse of process,' and requiring clear and convincing evidence of bad faith[], sham litigation requires more than a failed legal theory." *C.R. Bard*, 157 F.3d at 1368 (quoting *Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282, 1288 (9th Cir. 1984)).

10

The objective component of Blockbuster's sham-litigation claim is that Netflix purportedly brought this action on the basis of clearly invalid and overbroad patents. If the above allegations about omitted prior-art references, flooding, and withholding prior art from the PTO examiner are proven, plaintiff may demonstrate the requisite abuse of process to succeed on a sham-litigation claim.

Moreover, Blockbuster has adequately identified potential bad faith on the part of Netflix. Blockbuster alleged that Netflix's own CEO considered the '450 patent a "joke." Blockbuster also identified with particularity material prior art in the NCR patents, which Netflix apparently knew about but failed to disclose during either patent-application process. Again, if proven, these allegations could amount to an antitrust violation.

Blockbuster pled enough facts at this point to overcome dismissal on its *Walker Process* and sham-litigation claims. Netflix will, of course, be entitled to raise its arguments again on summary judgment. Resolution of the claims at this juncture, however, is premature.

**2.     MOTION TO STRIKE AFFIRMATIVE DEFENSES.**

Netflix also moves to strike Blockbuster's affirmative defenses of inequitable conduct and patent misuse. Pursuant to a motion under FRCP 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FRCP 12(f) is a vehicle by which to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Motions to strike are viewed negatively because of the limited import of the pleadings under the Federal Rules. Accordingly, "motions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991) (citations omitted).

**A.     Inequitable Conduct.**

"Patent applicants are required to prosecute patent applications with candor, good faith, and honesty." *Semiconductor Energy Lab. Co., Ltd. v. Samsung Elecs. Co., Ltd.*, 204 F.3d 1368, 1373 (Fed. Cir. 2000) (citing *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir.

11

1995)). "[I]nequitable conduct includes affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Ibid*. (internal citation omitted). "The alleged infringer, whether a defendant in a patent infringement suit or a declaratory judgment plaintiff, must demonstrate by clear and convincing evidence both that the information was material and that the conduct was intended to deceive."

The defense of inequitable conduct is subject to the heightened pleading requirements for fraud claims under FRCP 9(b). *See Ferguson Beauregard/Logic Controls v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003) ("inequitable conduct, while a broader concept than fraud, must be pled with particularity").

As stated above, Blockbuster pled with sufficient particularity that Netflix withheld material prior-art references from the PTO, despite being aware of the existence of those references. Those allegations are also sufficient to support Blockbuster's affirmative defense of inequitable conduct. As Netflix concedes, Blockbuster need only plead fraudulent intent with respect to the inequitable conduct claim generally. Blockbuster has done so.

### B. Patent Misuse.

Likewise, Blockbuster adequately alleged patent misuse as an affirmative defense to infringement. As the Federal Circuit has explained:

> The defense of patent misuse arises from the equitable doctrine of unclean hands, and relates generally to the use of patent rights to obtain or to coerce an unfair commercial advantage. Patent misuse relates primarily to a patentee's actions that affect competition in unpatented goods or that otherwise extend the economic effect beyond the scope of the patent grant.

*C.R. Bard*, 157 F.3d at 1372 (citing *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 703–04 (Fed. Cir. 1992)). "Patent misuse is viewed as a broader wrong than antitrust violation because of the economic power that may be derived from the patentee's right to exclude." Accordingly, "misuse may arise when the conditions of antitrust violation are not met."

Given that Blockbuster adequately alleged *Walker Process* fraud and sham litigation for purposes of surviving dismissal, it follows that Blockbuster has satisfied the lower standard for pleading patent misuse. At this juncture, striking the defense is unwarranted.

12

### 3. **BIFURCATION AND DISCOVERY STAY.**

Netflix argues that even if dismissal is inappropriate, the Court should bifurcate this litigation into two phases. Netflix accordingly moves to proceed on its claims for patent infringement and defer all proceedings on Blockbuster's antitrust claims. Netflix argues the Court should postpone not only trial on Blockbuster's counterclaims, but also stay all discovery on the antitrust counterclaims until resolution of the infringement claims. This order rejects Netflix's request to bifurcate and stay discovery.

Courts have broad discretion under FRCP 42(b) to bifurcate trials. The rule provides:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

"One of the purposes of Rule 42(b) is to permit deferral of costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues." *Ellingson Timber Co. v. Great N. Ry. Co.*, 424 F.2d 497, 499 (9th Cir. 1970). "It is the interest of efficient judicial administration that is to be controlling under the rule, rather than the wishes of the parties." WRIGHT & MILLER, *Federal Practice and Procedure*, § 2388 (2d ed. pocket part 2006). "With respect to both discovery and trial," the moving party has the "burden of proving that the bifurcation will promote judicial economy and avoid inconvenience or prejudice to the parties." *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 101 (N.D. Cal. 1992).

It will be more efficient in this action to conduct discovery and pretrial proceedings together. The issues overlap greatly. A determination on Blockbuster's *Walker Process* fraud counterclaim is closely related to a determination as to the validity of the patents in suit. The prosecution history and the omitted prior-art references will be relevant to both inquiries. The same evidence will also be pertinent to Blockbuster's affirmative defenses of inequitable conduct and patent misuse.

Netflix has not demonstrated that it will suffer prejudice if the proceedings go forward together. Conducting discovery on overlapping issues in tandem will ultimately reduce the expenses and time of this litigation for both parties. So will consolidating pretrial proceedings. Allowing both side's cases to go forward now will preserve the option of both being tried together. To rule the other way would foreclose this option.

Netflix relies on *In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986), for the proposition that there is a "now-standard practice of separating for trial patent issues and those raised in an antitrust counterclaim." Of course, we are a long way from trial now. The immediate task is discovery. By allowing both sides to develop their cases we will be in a better position later to decide the extent to which both cases should be tried to a jury.

Although this order finds bifurcation unwarranted at this juncture, this ruling is without prejudice to either side to seek bifurcation of the trial at the pretrial conference. It may be that the evidence discovered ultimately justifies handling the trial by chapters. For purposes of pretrial proceedings, however, Netflix's claims and Blockbuster's counterclaims are to proceed in tandem.

**CONCLUSION**

For the foregoing reasons, Netflix's motion to dismiss, motion to strike, and motion to bifurcate are all **DENIED**.

**IT IS SO ORDERED.**

Dated: August 22, 2006.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE