Alan Himmelfarb
LAW OFFICES OF ALAN HIMMELFARB
2757 Leonis Blvd
Los Angeles, CA 90058
Telephone: (323) 585-8696
Fax: (323) 585-8198
consumerlaw1@earthlink.net

Scott A. Kamber
Ethan Preston
KAMBER & ASSOCIATES, LLC
19 Fulton Street, Suite 400
New York, NY 10038
Telephone: (877) 773-5469
Fax: (212) 202-6364
skamber@kolaw.com
epreston@kolaw.com

*Counsel for proposed intervenor,*
*Dennis Dilbeck*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| NETFLIX, INC. a Delaware corporation, | No. C 06 2361 WHA JCS |
| Plaintiff, | Judge William Alsup |
| | **NOTICE OF MOTION FOR LEAVE TO INTERVENE; MOTION FOR LEAVE TO INTERVENE AND SUPPORTING BRIEF** |
| v. | |
| BLOCKBUSTER INC., a Delaware corporation, and DOES 1-50, | Date: November 16, 2006 |
| Defendants. | Time: 8:00 a.m. |
| | Location: Courtroom 9, 19th Floor |

### DENNIS DILBECK'S MOTION FOR LEAVE TO INTERVENE

**NOTICE OF MOTION FOR LEAVE TO INTERVENE**

NOTICE IS HEREBY GIVEN that Dennis Dilbeck ("Dilbeck"), will move the Court for leave to intervene in the above referenced proceedings, pursuant to Federal Rule of Civil Procedure 24(a)(2) and 24(b)(2) on November 16, 2006, at 8:00 a.m., or as soon thereafter as counsel may be heard by the above-entitled Court, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, CA 94102, in Courtroom 9, before the Honorable William Alsup.

Through this Motion, Dilbeck seeks to intervene and become a party in the above-titled action as an intervening plaintiff against Netflix, Inc., and to file the proposed Complaint in Intervention submitted to the Court with this Motion. Dilbeck's Motion to Intervene comports with Federal Rule of Civil Procedure 24's standards for intervention. Dilbeck is a direct consumer and has just as much standing to bring a *Walker Process* claim against Netflix, Inc. as Blockbuster Inc. However, Dilbeck's damages are completely independent of Blockbuster Inc.'s damages. As a competitor, Blockbuster Inc.'s damages are measured from the profits it lost, while Dilbeck's damages are measured from the monopoly profits Netflix unlawfully extracted from its patents. Further, judicial economy supports this Motion: Dilbeck's delay in seeking to intervene in this case has been *de minimus* will not materially delay or prejudice the current parties. This Motion is based on this Notice of Motion and Motion, the Brief in Support of the Motion to Intervene and the authorities cited therein, oral argument of counsel, and any other matter that may be submitted at the hearing.

**DILBECK'S MOTION FOR LEAVE TO INTERVENE
AND SUPPORTING BRIEF**

Dennis Dilbeck, respectfully files this Motion for Leave to Intervene under Federal Rule of Civil Procedure 24 in the above-titled proceeding between Netflix and Blockbuster and in support thereof states as follows:

## I.    Blockbuster's Antitrust Counterclaim In the Instant Litigation

Netflix's complaint, filed on April 4, 2006, alleges that Blockbuster's online move rental service infringed on U.S. Patent Nos. 6,584,450 (the '450 patent) and 7,024,381 (the '381 patent). Blockbuster filed its answer and counterclaim on June 13, 2006. Blockbuster's counterclaim alleges, *inter alia*, that Netflix sought to suppress competition in the online DVD rental market by 1) obtaining the '450 and '381 patents through deliberate fraud on the Patent Office and 2) bringing and maintaining the instant sham litigation. Blockbuster alleged that the these anticompetitive acts violated Section 2 of the Sherman Antitrust Act (15 U.S.C. § 2). The counterclaim alleges damages to Blockbuster in the form of "attorneys' fees and litigation expenses required to defend against Netflix's infringement lawsuit [and] lost profits and lost goodwill sustained." (Def's Countercl. ¶¶ 108, 117.) The counterclaim further alleges that Netflix's damages "to other competitors or would-be competitors in the relevant market and to online DVD rental consumers." (*Id*.) The Court recently denied Netflix's motion to dismiss the counterclaim. *Netflix, Inc. v. Blockbuster Inc.*, No. C 06 02361 WHA (N.D. Cal. Aug. 22, 2006). The Court specifically noted allegations that "Netflix's purported monopolistic conduct" could force Blockbuster out of the market, "which would cede to Netflix virtually complete control of the online-DVD market." *Id*. at 10.

## II.    Dilbeck's Proposed Antitrust Claim in Intervention

Dilbeck seeks to bring antitrust claims arising from precisely the same anticompetitive acts Blockbuster alleges. (A copy of the proposed class complaint in intervention is attached as Exhibit A.) Dilbeck seeks to intervene because, while Blockbuster and Dilbeck's antitrust claims arise from the same anticompetitive acts, they seek separate and distinct forms of damage. Blockbuster seeks to recoup the defense costs of this action and profits lost to Netflix's patent abuse. On the other hand, Dilbeck seeks to recoup the monopoly profits Netflix extracted from

the class while it deterred and delayed competition in the online DVD rental market through

fraudulent patents. Although Blockbuster and Dilbeck's claims arise from the same misconduct,

the distinction between the relief sought causes their interests not only to diverge but to compete

with each other (*see* section III.C, *infra*). The conflict between Dilbeck and Blockbuster gives

this motion to intervene its great urgency.

## III.    Federal Rule of Civil Procedure 24 Provides for Dilbeck's Permissive Intervention, If Not His Intervention Of Right

The Court should allow Dilbeck to intervene and file the proposed complaint in

intervention because Dilbeck comports with Federal Rule of Civil Procedure 24's standards,

which govern permissive intervention in federal courts. Permissive intervention can be granted

where 1) the motion to intervene is *timely*, 2) the applicant for intervention shows *independent*

*grounds for jurisdiction*, and 3) the applicant's claim or defense, and the main action, have *a*

*question of law or a question of fact in common. See S. Cal. Edison Co. v. Lynch*, 307 F.3d 794,

803 (9th Cir. 2002), *modified on other grounds*, 353 F.3d 648 (9th Cir. 2003); Fed. R. Civ. P.

24(b)(2). However, "[e]ven if an applicant satisfies those threshold requirements, the district

court has discretion to deny permissive intervention." *Lynch*, 307 F.3d at 803. "[T]he

requirements for intervention are broadly interpreted in favor of intervention." *Prete v. Bradbury*,

438 F.3d 949, 954 (9th Cir. 2006). As shown below, Dilbeck's intervention is fully comports with

Rule 24(b).

### A.    Although Based on the Same Misconduct Blockbuster Alleges, Dilbeck's Sherman Act Claims Are Independent From Blockbuster's Claims

Dilbeck bases his Sherman Act claims on the same allegations made by Blockbuster: that

Netflix fraudulently obtained the '381 and '450 patents and brought patent claims it knew to be

baseless against Blockbuster and thereby violated the Sherman Act. *Cf.* 15 U.S.C. 2 (2000);

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993); *Walker*

*Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965).  Patents effectively

provide a statutory monopoly,[1] and Netflix used its patents to deter competitors and delay the

---
[1] "A patentee has the exclusive right to manufacture, use, and sell his invention. . . . The heart of
his legal monopoly is the right to invoke the State's power to prevent others from utilizing his

introduction of competition into the market. Whenever a monopoly effectively restrains

competition, "it is economically reasonable to conclude that this has the effect of raising or

maintaining prices for all purchasers in the market above what they would have been otherwise."

*Bradburn Parent/Teacher Store v. 3M*, No. 02-7676, 2004 U.S. Dist. LEXIS 16193, at *44-45

(E.D. Pa. Aug. 17, 2004).[2] The Court's prior holding that these allegations state a viable antitrust

claim constitutes law of the case. *Netflix, Inc. v. Blockbuster Inc.*, No. C 06 02361 WHA (N.D.

Cal. Aug. 22, 2006); *Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc.*, 365 F. Supp.

235, 254 (N.D. Cal.1972).

However, Blockbuster and Dilbeck's damages spring from an entirely different sources.

Blockbuster seeks to recovery lost profits and the costs of defending Netflix's patent suit, while

Dilbeck seeks to recover the monopoly profits Netflix extracted from the class while Netflix

delayed and deterred competition with its bogus patents. Consequently, Dilbeck's Sherman Act

claims assert grounds for jurisdiction which are wholly independent of Blockbuster's claims.

### 1.    Dilbeck Has Standing to Recover Netflix's Monopolistic Overcharges; Blockbuster Does Not

Direct consumers[3] have just as much standing to bring *Walker Process*-related claims as

competitors. *Molecular Diagnostics Labs. v. Hoffmann-La Roche, Inc.*, 402 F. Supp. 2d 276,

278-82 (D.D.C. 2005) (direct consumer of patented material had standing to recover

monopolistic overcharge on antitrust claim that patent was obtained by *Walker Process*

violation); *see also Abbott Labs. v. Teva Pharms. USA, Inc.*, 432 F. Supp. 2d 408 (D. Del. 2006);

*In re Buspirone Patent & Antitrust Litig.*, 185 F. Supp. 2d 363, 373 (S.D.N.Y. 2002).

---

discovery without his consent." *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 135
(1969).
[2]  As Blockbuster alleges, introduction of competition into the relevant market immediately
caused Netflix to lower its prices and to reduce or eliminate the monopolistic overcharge it
derived from its bogus patents:

> Following Blockbuster Online's entry into the relevant . . . market[], Netflix
> lowered its online DVD rental prices. Blockbuster . . .alleges that Netflix's price
> reduction was in response to Blockbuster Online's own prices, which were lower
> than Netflix's prices.

(Def.'s Countercl. ¶ 91.) *See also Netflix, Inc. v. Blockbuster Inc.*, No. C 06 02361 WHA, at *10
(N.D. Cal. Aug. 22, 2006).
[3] *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) does not apply. Dilbeck rents movies directly
from Netflix, so no intermediary will create any difficulty in apportioning damages or a risk of
multiple liability. *Id.* at 730-31, 737-38.

However, a consumer's damages in such a claim are measured from the overcharge the patentee extracts by deterring the entry of competition with its patent, while the competitor's damages are measured from the profits lost from the denial of an opportunity to compete in the market. *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 374-75 (3d Cir. 2005). *See also In re Relafen Antitrust Litig.*, 218 F.R.D. 337, 344 (D. Mass. 2003) (measure of damages in purchasers' antitrust claim against drug manufacturer arising from invalid patent lawsuits was monopolistic overcharge); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 309-11 (E.D. Mich. 2001) (measure of damages in purchasers' antitrust claim arising from pharmaceutical manufacturers' manipulation of Hatch-Waxman procedure was overcharge). Conversely, a competitor does not have standing to recover monopolistic overcharges. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 582-83 (1986) (competitors cannot recover damages for "any conspiracy . . . to charge higher than competitive prices"); *Atl. Richfield Co. v. U.S. Petrol. Co.*, 495 U.S. 328, 336-37 (1990) (same); *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1102 (9th Cir. 1999) (plaintiffs could recovery monopoly profits from price-fixing as to transactions they were direct consumers, but not to transactions to they were competitors); *Stewart Glass & Mirror v. U.S.A. Glas*, 940 F. Supp. 1026, 1035-36 (E.D. Tex. 1996) (competitors do not have standing to recover overcharges arising from price-fixing scheme).

Simply put, Dilbeck has standing to recover Netflix's monopoly profits from its *Walker Process* violation; Blockbuster does not.

### 2.    Dilbeck's Damages Do Not Duplicate Blockbuster's Damages

The antitrust laws permit both competitors and consumers to simultaneously prosecute their antitrust claims for the same violations, because they seek two different forms of damage. *See In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395, 396-402 (3d Cir. 2000); *Abbott Labs*; *In re Buspirone Patent & Antitrust Litig.*, 185 F. Supp. 2d at 365-66.

In particular, *Andrx Pharmaceuticals, Inc. v. Biovail Corp. International*, 256 F.3d 799, 817 (D.C. Cir. 2001), supports granting this Motion. In *Andrx*, the defendants (a drug patentee and generic drug manufacturer) effectively foreclosed other generic drug manufacturers from

competing in the pharmaceutical dilitiazem hydrochloride market by manipulating the Hatch-Waxman amendments to the FDA's approval process for generic drugs. Biovail, a competing generic drug manufacturer, alleged that the defendant's conduct excluded it from the market and brought an antitrust claim. The district court dismissed the claim on the grounds that, in the presence of ongoing consumer antitrust litigation, *see In re Cardizem CD Antitrust Litigation*, *supra*, Biovail's claim would create the complex damage apportionment and multiple recovery issues eschewed in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). *Cf. Andrx* rejected this holding on appeal:

> Biovail's injuries are neither derived from nor measured by injuries consumers may have suffered. *Any injury to consumers would result from paying a supracompetitive price for Cardizem CD. Biovail's injury, on the other hand, is the result of foregone profits*, i.e., the difference between the competitive market price it would have charged had it been in the market and its total costs.

*Andrx*, 256 F.3d at 817 (emphasis supplied); *see id.* (overcharge paid by consumers in noncompetitive market is "distinct injury" from excluded competitor lost sales). *Andrx* found that Biovail's antitrust claim could proceed if Biovail alleged that it was prepared to enter the relevant market. *Id.* at 807, 819. *Andrx* supports the proposition that competitors' antitrust claims are independent of consumer's antitrust claims, but as a matter of rhetorical logic it must also support the reverse proposition. As a direct consumer, Dilbeck has the status of a "preferred plaintiff" in private antitrust actions:

> Because protecting consumers from monopoly prices is the central concern of antitrust, *buyers have usually been preferred plaintiffs in private antitrust litigation*. As a result, consumer standing to recover for an overcharge paid directly to an illegal cartel or monopoly is seldom doubted.

*Molecular Diagnostics*, 402 F. Supp. 2d at 281 (quoting 2 Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law, ¶ 345 (2d ed. 2000)) (emphasis supplied). Even without reference to Dilbeck's preferred plaintiff status, it stands to reason that Dilbeck's claims are just as distinct and separable from Blockbuster's claims as Blockbuster's claims are distinct Dilbeck's. Nothing in the antitrust laws prohibits Dilbeck from pursuing his claim along with Blockbuster.

In intervention, Dilbeck will bring presumptively viable claims under the Sherman Act, but which assert an entirely independent basis of damages. Although Dilbeck claims are premised

on the self-same factual and legal allegations made by Blockbuster, his claims nonetheless provide an independent grounds of jurisdiction. *Cf. Lynch*, 307 F.3d at 803; Fed. R. Civ. P. 24(a)(2).

## B.    The Instant Motion to Intervene Is Timely

The factors used when analyzing timeliness of intervention are: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302, 1308 (9th Cir. 1997). Dilbeck's delay in this case has been *de minimus*: only six months has passed since Netflix filed its original complaint. Even if the delay were greater, "mere lapse of time alone is not determinative in deciding the timeliness of a motion to intervene." *Smith v. Marsh*, 194 F.3d 1045, 1051 (9th Cir. 1999). *See also Officers for Justice v. Civil Service Comm.*, 934 F.2d 1092, 1095-96 (9th Cir. 1991). "The presence or absence of prejudice to other parties in connection with the proposed intervention" is the more important factor. *Smith*, 194 F.3d at 1051.

Dilbeck's intervention will not materially delay or prejudice the current parties to this proceeding. Specifically, Dilbeck can meet many of the deadlines proposed by Blockbuster in the Court's June 29th case management order, including:

- designating expert witnesses by April 27, 2007;
- participating in the claim construction hearing scheduled for January 31, 2007; and
- participating in the trial in September 19, 2007.

Dilbeck contends that, depending on when this motion to intevene is granted, he can complete discovery by June 30, 2007. Dilbeck concedes that the deadlines for Rule 26(a) disclosure and Rule 26(f) conference have passed. However, the Court should consider 1) that the parties completed their initial disclosures but two months ago and 2) the extent to which Dilbeck's discovery overlaps the discovery already produced by the parties. Because the overlap between Blockbuster and Dilbeck's theories of antitrust liability is so great, the need for additional discovery specific to Dilbeck's claims (and, hence, the prejudice to the existing parties) is

minimal.[4] Dilbeck is prepared to make his Rule 26(a) disclosures and complete a Rule 26(f) conference on the Court's order after the Motion to intervene is granted.

Finally, Dilbeck's delay can only be measured from the time he *learned* of the instant proceeding. Rule 24's "timeliness clock [does not] begin[] ticking" until after the proposed intervenor has actual notice of the litigation *and* should have recognized his interests were not protected by existing parties. *Wilson*, 131 F.3d at 1307. *Cf. Legal Aid Soc'y v. Dunlop*, 618 F.2d 48, 50 (9th Cir. 1980); *Officers for Justice*, 934 F.2d at 1095. Dilbeck's counsel did not learn of this proceeding until September 8, 2006, when counsel read an article in the legal press. (A copy of this article is attached as Exhibit B.) Neither Dilbeck nor his counsel were aware of either the '381 and '450 patents or this proceeding before then. (Copies of Dilbeck and his counsel's declarations are attached as Exhibits C and D, respectively.) Here, Dilbeck's counsel recognized that the present parties would not (indeed, could not) adequately represent Dilbeck's interests the instant counsel learned of the suit, and so Dilbeck's timeliness clock did not begin to run until September 8.

## C. Dilbeck's Interests Diverge and Compete with Blockbuster's Interests

Dilbeck has established that this Motion to Intervene was timely, and that his antitrust claims provide an independent basis of jurisdiction, but nonetheless overlap almost entirely with the legal and factual allegations in Blockbuster's antitrust claims. This is sufficient for permissive intervention. Dilbeck acknowledges the Court nonetheless has the discretion to deny his motion to intervene, *Lynch*, 307 F.3d at 803, but Dilbeck urges that judicial economy and interests of ensuring competitive markets nonetheless favor the motion to intervene.[5]

As demonstrated below, the interests of Dilbeck and the class diverge and even compete with the interests of Blockbuster. Although this factor is not a required element of permissive

---

[4] *Cf., e.g., League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297 (9th Cir. 1997) (intervention denied where plaintiff filed motion "a full twenty-seven months after the original actions . . . were commenced," and where, e.g., four other parties had previously intervened successfully, the court certified a plaintiff class, judgment was entered on motions for summary judgment, and discovery had been conducted for nine months before it was suspended).

[5] If the Court denies this motion, Dilbeck will be obliged to file a separate case whose factual and legal issues would sufficiently overlap those of the instant case such that they would be "related cases" under the Northern District's local rules. N.D. Cal. Civil L.R. 3-12(a).

intervention under Rule 24(a), counsel urges the Court that it is nonetheless relevant to any consideration of this Motion.[6]

Blockbuster's theory of antitrust damages hinges on the profits it would have made in a competitive market during the time Netflix's bogus patents delayed its entry into the market. *Andrx*, 256 F.3d at 817 (competitor's antitrust damages are "foregone profits"). Under this theory, Blockbuster's incentive is to prove that the competitive price was *higher* during that delay. Conversely, Dilbeck advances the interests of the proposed class by proving that the competitive price was *lower*. Dilbeck's theory of damages is that Netflix's prices prior to Blockbuster's entry into the market incorporated a monopolistic overcharge – if the competitive price was lower, there is a larger difference between Netflix's rates and the competitive price and a greater overcharge, and the class's antitrust damages are greater. As a competitor, Blockbuster's incentives on the issue of the competitive price must diverge and compete with Dilbeck's interest. Competitors "stand to benefit from the fact that prices [in non-competitive market] are inflated." *Big Bear Lodging*, 182 F.3d at 1102 (9th Cir. 1999). S*ee also Matsushita Elec.*, 475 U.S. at 583 (competitors benefit from supra-competitive pricing); *Atl. Richfield*, 495 U.S. at 337 (same).

Finally, collusive settlements are a subtle danger to competition which lurk in the depths of any patent litigation. Recent antitrust jurisprudence is rife with patent litigation settlements that restrict competition outside the scope of admittedly legitimate patents and allocate markets

---

[6] Dilbeck further asserts that his antitrust claims could meet the elements of mandatory intervention under Rule 24(a). Rule 24(a) recognizes a right of intervention where the motion is timely made, the movant has a significant protectable interest relating to the action, and the disposition of the action may, as a practical matter, impair or impede the movant's ability to protect its interest, and the existing parties may not adequately represent the applicant's interest. *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006). *See also* Fed. R. Civ. P. 24(a)(2). Dilbeck has an interest in a competitive market for online DVD rental services. Until Netflix's patents are eliminated, it is unlikely any other rental services will bear significant competitive pressure to bear on Netflix. As a practical matter, the adverse disposition of the instant proceeding would impair Dilbeck's interest in a competitive online DVD rental market. Further, this Motion's timeliness was demonstrated above, and the inability of Blockbuster to protect Dilbeck's interest is demonstrated below. *But see Fisher v. Gillette Co.*, No. 80 C 4415, 1981 U.S. Dist. LEXIS 10405, at *4-5 (N.D. Ill. Jan. 20, 1981) (even where intervenor's Rule 24(a) argument had "substantial force," the court granted intervention under Rule 24(b) because "intervention as serving the interests of justice and judicial economy in any event" and mandatory intervention "would not necessarily control as to all the [intervenor's] claims").

in ways that violate the antitrust laws. *See, e.g.*, *Louisiana Wholesale Drug Co. v. Hoechst Marion Roussel, Inc.*, 332 F.3d 896, 909 (6th Cir. 2003); *In re Terazosin Hydrochloride Antitrust Litig.*, 352 F. Supp. 2d 1279 (S.D. Fla. 2005) (settlement of patent litigation allocated markets outside scope of patent); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517 (D.N.J. 2004) (same). The risk of collusive settlement in this case is especially keen, because the '381 and '450 patents were fraudulently obtained and should provide *no* statutory monopoly in the online DVD rental market. Dilbeck is not aware of any settlement negotiations between Netflix and Blockbuster. Nonetheless, there is a overwhelming probability that this case – like the vast majority of federal cases – will settle.[7] If this case does settle, both Netflix and Blockbuster have an incentive to settle on terms that leave the bogus '381 and '450 patents intact, because the patents could be used to exclude other competitors from the market and allow Netflix and Blockbuster to capture cartel profits. *See Matsushita Elec.*, 475 U.S. at 583; *Atl. Richfield*, 495 U.S. at 337. Dilbeck's intervention provides him a seat at the table of any settlement talks, from which Dilbeck could deter such a collusive settlement *before* it occurs. Even if Dilbeck fails to deter a collusive settlement, he will be well-positioned to bring a Section 1 claim under the Sherman Act against both Blockbuster and Netflix. Because Dilbeck's intervention would dramatically reframe any settlement negotiations between Blockbuster and Netflix, Dilbeck cannot rely on either current party to protect its interest in a competitive online DVD rental market.

---

[7] *See* Administrative Office of the United States Courts, Federal Judicial Caseload Statistics 2005, Table C-4 (Cases Terminated, by Nature of Suit and Action Taken) (2005), *available at* http://www.uscourts.gov/caseload2005/tables/C04mar05.pdf.

1

2          WHEREFORE, Dilbeck prays that the Court enter judgment and grants Dilbeck leave to

3    intervene, to become a party in the above-titled action as an intervening plaintiff against Netflix,

     Inc., and to file the proposed Complaint in Intervention submitted to the Court with this Motion.

4    Dated: October 11, 2006

5
                                          By:/s/Alan Himmelfarb
6
                                             Alan Himmelfarb
7                                            LAW OFFICES OF ALAN HIMMELFARB
                                             2757 Leonis Blvd
8                                            Los Angeles, CA 90058
                                             Telephone: (323) 585-8696
9                                            Fax: (323) 585-8198
                                             consumerlaw1@earthlink.net
10
                                             Scott A. Kamber
11                                           Ethan Preston
                                             KAMBER & ASSOCIATES, LLC
12                                           19 Fulton Street, Suite 400
                                             New York, NY 10038
13                                           Telephone: (877) 773-5469
                                             Fax: (212) 202-6364
14                                           skamber@kolaw.com
                                             epreston@kolaw.com
15

16

17

18

19

20

21

22

23

24

25

26

27

28