1  KEKER & VAN NEST, LLP
   JEFFREY R. CHANIN - #103649
2  DARALYN J. DURIE - #169825
   ASHOK RAMANI - #200020
3  710 Sansome Street
   San Francisco, CA 94111-1704
4  Telephone: (415) 391-5400
   Facsimile: (415) 397-7188
5
   Attorneys for Plaintiff
6  NETFLIX, INC.

7
                         UNITED STATES DISTRICT COURT
8
                       NORTHERN DISTRICT OF CALIFORNIA
9

10

11 | NETFLIX, INC., a Delaware corporation, | Case No. C 06 2361 WHA (JCS) |
12 |                          Plaintiff,    | **PLAINTIFF NETFLIX, INC.'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM BLOCKBUSTER, INC.** |
13 |    v.                                  | |
14 | BLOCKBUSTER, INC., a Delaware corporation, DOES 1-50, | |
15 |                          Defendant.    | |
16 |                                        | **Date:** December 8, 2006<br>**Time:** 9:30 a.m.<br>**Judge:** Hon. Joseph C. Spero |
17 |                                        | |
18 |                                        | Complaint filed:   April 4, 2006 |

19

20

21

22

23

24

25

26

27

28

---

PLAINTIFF NETFLIX, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM BLOCKBUSTER, INC.
CASE NO. C 06 2361 WHA (JCS)

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on December 8, 2006, at 9:30 a.m. before the Honorable Joseph C. Spero, in Courtroom A, 15th Floor of the United States Court House located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff Netflix, Inc. will, and hereby does, move the Court for an order compelling further responses to its requests for production of documents from Defendant Blockbuster Inc. pursuant to Federal Rule of Civil Procedure 37.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points of Authorities below; the declaration of Eugene M. Paige in support of this motion; all pleadings and papers filed herein; oral argument of counsel; and any other matter that may be submitted at the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

By this motion, Netflix, Inc. ("Netflix") seeks, pursuant to Rule 37 of the Federal Rules of Civil Procedure, to compel discovery from Blockbuster Inc. ("Blockbuster") responsive to Netflix's First Set of Requests for the Production of Documents to Blockbuster. Blockbuster has provided inadequate responses to many of Netflix's requests.

The deficiencies in Blockbuster's responses that, if left unremedied, will serve to deprive Netflix of relevant and responsive information are laid out in detail below. By way of example, Blockbuster has refused to produce all of its responsive documents in a given category for several requests, stating instead that it will filter the documents it produces to Netflix and provide only those that it believes are necessary to "reasonably describe" the information requested. In its responses to other Requests, Blockbuster attempts to limit the production of documents relating to the hardware and software used in its infringing Blockbuster Online service to only those which relate to its website, and refuses to produce all of its documents relating to the work of the consultants that helped create Blockbuster Online.

Because Blockbuster's responses are not in compliance with its discovery obligations and efforts to resolve the disagreements between the parties informally have failed, Netflix moves for an order from the Court compelling production as set forth below.

1

PLAINTIFF NETFLIX, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM BLOCKBUSTER, INC.
CASE NO. C 06 2361 WHA (JCS)

## II.    FACTUAL BACKGROUND

Netflix rents DVDs to customers on a subscription basis over the Internet. The unique way in which Netflix facilitates movie rentals, described briefly below, is covered by two patents: U.S. Patent No. 7,024,381 ("the '381 Patent") and U.S. Patent No. 6,584,450 ("the '450 Patent"), each of which are owned by Netflix. Netflix's patented business method allows subscribers to keep DVDs for as long as they wish, incurring no late fees. The patents also describe and cover the manner in which Netflix subscribers may prioritize and reprioritize their own personal list of desired DVDs -- known as a dynamic queue -- to be rented from Netflix.

Years after Netflix pioneered this business method, Blockbuster, the 800-pound gorilla in the movie rental industry, launched a business it called "Blockbuster Online." Blockbuster Online mimics virtually every aspect of Netflix's patented business method, including the dynamic queue and the subscription service with no late fees. In so doing, Blockbuster infringed the '381 Patent and the '450 Patent. Netflix therefore sued Blockbuster for patent infringement.[1] Blockbuster brought putative antitrust counterclaims against Netflix based upon Netflix's filing of this infringement suit against it, claiming that Netflix was attempting to monopolize what Blockbuster characterized as the market for online DVD rentals.

Netflix served its First Set of Requests for the Production of Documents on Blockbuster on August 31, 2006. Declaration of Eugene M. Paige in Support of Netflix's Motion to Compel ("Paige Decl."), Ex. A. In its Requests, Netflix sought mainly to gain information about Blockbuster Online, the business that it alleges infringes its patents. Understanding the genesis of Blockbuster Online is critical to Netflix's case, as it will demonstrate how Blockbuster came to implement a business method that so closely resembles (indeed, appears to copy) Netflix's patented business methods. Netflix must discover, among other things, how Blockbuster developed its infringing Blockbuster Online service. Did a consultant refer to Netflix's website, for example, as an idea to copy? Did Blockbuster instruct its consultants to set out to duplicate the Netflix business method? Such inquiries are highly relevant to the merits of Netflix's claims:

---

[1] First Amended Complaint for Patent Infringement and Demand for Jury Trial ¶¶ 8, 9, 10, 13, 14, & 15.

1   copying is a secondary consideration that is taken into account in determining whether a patent is
2   non-obvious.  And copying is also an important factor in deciding whether infringement has been
3   willful.  Netflix has thus sought information about the creation and operation of Blockbuster
4   Online, as well as Blockbuster's interactions with the consultants that assisted in creating
5   Blockbuster Online, in its Requests for Production.  Netflix requested that Blockbuster identify
6   the consultants who aided in the design, research and operation of Blockbuster Online and that
7   Blockbuster produce the documents exchanged between Blockbuster and its consultants in that
8   regard.  In order to have a full understanding of how Blockbuster's infringing service works, and
9   so that it may demonstrate how Blockbuster infringes using Blockbuster's own documents,
10  Netflix has also requested the production of documents that will fully describe the software and
11  hardware Blockbuster uses to implement Blockbuster Online.   Netflix also sought information
12  about Blockbuster's finances, both to substantiate the damages it has suffered as a result of
13  Blockbuster's infringement and to be able to prepare a defense against Blockbuster's own
14  damages allegations flowing from its putative antitrust counterclaims.
15       Blockbuster served its objections and responses to Netflix's requests for production on
16  October 2, 2006.  Paige Decl. Ex. B.  After reviewing Blockbuster's responses and noting the
17  deficiencies, counsel for Netflix sent a detailed letter to counsel for Blockbuster on October 9,
18  2006, requesting that Blockbuster provide more fulsome responses.  Paige Decl. Ex. C.  The
19  parties met and conferred in person on these issues on October 13, 2006.  Paige Decl. ¶ 5.
20  Thereafter, Blockbuster and Netflix have held follow-up telephonic meet-and-confer sessions
21  during which a large number of the issues raised at the outset were resolved.  Letters
22  memorializing those meet-and-confer sessions are attached to the Paige Declaration as Exhibits
23  D and E.  Unfortunately, the parties were not able to reach agreement on all issues; the issues
24  that remain are outlined in a joint letter signed by both counsel for Netflix and counsel for
25  Blockbuster, a copy of which is attached to the Paige Declaration as Exhibit F.  This motion
26  addresses the issues that remain unresolved and seeks appropriate relief.
27                              **III.   ARGUMENT**
28       Discovery exists as a mechanism "for making relevant information available to the

1  litigants . . . Thus the spirit of the rules is violated when advocates attempt to use discovery tools
2  as tactical weapons rather than to expose the facts and illuminate the issues." *Burlington N. &*
3  *Santa Fe Ry. Co. v. United States Dist. Court*, 408 F.3d 1142, 1148-49 (9th Cir. 2005) (quoting
4  Fed. R. Civ. P. 26(f) advisory committee's notes).  The parties' discovery obligations in this case
5  are governed not only by the Federal Rules of Civil Procedure and the Local Rules of the United
6  States District Court for the Northern District of California, but also by Judge Alsup's
7  Supplemental Order to Order Setting Initial Case Management Conference in Civil Cases
8  ("Supplemental Order").  The Supplemental Order seeks to increase the efficiency of the
9  discovery process by requiring that the parties state affirmatively in a written response "the full
10 extent to which they will produce materials, and shall, promptly after the production, confirm in
11 writing that they have produced *all* such materials so described that are locatable after a diligent
12 search of *all* locations at which such materials might plausibly exist."  Supplemental Order at
13 ¶ 13.
14        As laid out below, Blockbuster has not complied with the letter or the spirit of the
15 relevant standards in many of its responses to Netflix's Requests for Production.  In response to
16 many of Netflix's requests, Blockbuster has failed to commit to producing the materials to which
17 Netflix is entitled, and has also failed to commit to producing all documents within a category so
18 that Netflix will know what it is getting and what it is not.  This Court should therefore enter an
19 order compelling Blockbuster to respond appropriately to Netflix's requests.

20 **A.    Blockbuster's Inadequate and Evasive Responses to Netflix's Requests for Production**
21
       **1.    Blockbuster's Unilateral Limitation on Production to Documents "Sufficient
22           To Reasonably Describe."**

23        Endeavoring to gather all information on the topics relevant to this case, Netflix has
24 requested either all documents falling within a specific category or documents sufficient to
25 describe fully such a category.  In response to some Requests, Blockbuster has simply committed
26 to producing its responsive documents.  *E.g.*, Paige Decl. Ex. B, Responses to Request Nos. 1-3.
27 In a large number of its responses, however, Blockbuster has stated that it will limit its proposed
28 production to documents that are (in its unilateral judgment) sufficient to *reasonably describe* a

4

subset of the information sought by Netflix. In Netflix's Request Number 8, for example, Netflix asked Blockbuster to produce its documents relating to research conducted by Blockbuster in connection with its design, development, implementation and operation of its infringing Blockbuster Online service. *See* Paige Decl. Ex. A, Request No. 8. Netflix requested that Blockbuster include in its production any trade research, market research, and consumer research that it possessed in that regard. In response, Blockbuster committed to produce only documents that it deemed "sufficient to reasonably describe" the research that it conducted or had conducted. *See* Paige Decl. Ex. B, Response to Request No. 8. Netflix has no way of knowing what documents Blockbuster might withhold based upon its contention that documents "sufficient to reasonably describe" a matter have otherwise been produced. For example, Blockbuster could decide that the documents it has produced reasonably describe the research it had commissioned, and therefore it need not produce a report stating that consumers thought Netflix's patented business method was the best consumer experience in the DVD rental market, concluding that Blockbuster should do what it could to emulate the Netflix business method.

Responses of this sort are antithetical to the Supplemental Order. Judge Alsup requires that each party set out the extent to which they are producing materials and confirm in writing after production that they have produced all such materials. This allows the parties to know exactly where they stand vis-à-vis their adversary's document production. Vague promises that documents "sufficient to reasonably describe" will be produced (or have been produced) frustrate the purpose of the Supplemental Order. Netflix has been (and is) willing to discuss limiting the scope of production in response to its Requests in reasonable ways, but it needs to know that Blockbuster is producing all of its documents from whatever categories are concerned, and not just those that it subjectively considers to be "enough."

### 2. Blockbuster's Refusal To Produce Certain Documents Relating To Blockbuster Online

As explained above, information about Blockbuster Online -- both how it works and how it was conceived and developed -- is critical to Netflix's patent infringement allegations. Blockbuster has sought to limit the production of several categories of its documents relating to

5

PLAINTIFF NETFLIX, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM BLOCKBUSTER, INC.
CASE NO. C 06 2361 WHA (JCS)

Blockbuster Online, however.

### a. Blockbuster's Failure To Commit To Producing Information About Its Blockbuster Online Hardware and Software

Blockbuster's refusal to produce potentially relevant information relating to the operation and structure of Blockbuster Online can be seen in Blockbuster's responses to Request Numbers 26 and 27. In Request Number 26, Netflix asks Blockbuster for documents sufficient to fully describe the software used by Blockbuster Online. *See* Paige Decl. Ex. A, Request No. 26. Blockbuster responds that it will produce only documents "sufficient to reasonably describe the software used for Blockbuster Online's website." *See* Paige Decl. Ex. B, Response to Request No. 26. There may be, however, documents that relate to certain functions of Blockbuster Online, which Blockbuster may not consider to be a part of the website, yet which could be involved in the operation of the infringing service. For example, certain patent claims call for "electronically updating" the movie rental queue. Netflix has no way of knowing whether Blockbuster's cutoff of production at the website would provide it with information on how Blockbuster Online electronically updates the queue, or whether Blockbuster will take the position that such actions take place other than as part of the website. Blockbuster's limitation of its production to documents relating to software used in its website alone may deprive Netflix of the opportunity to demonstrate, through Blockbuster's own documents, how certain portions of the software used in Blockbuster Online operate to infringe its patents.

Likewise, in response to Request Number 27, Netflix has requested documents sufficient fully to describe the hardware used to operate, support, and maintain Blockbuster Online. *See* Paige Decl. Ex. A, Request No. 27. Blockbuster has committed to provide only documents that will be "sufficient to reasonably describe the general nature of the hardware used" to operate its website. *See* Paige Decl. Ex. B, Response to Request No. 27. Once more, Netflix needs to understand how Blockbuster Online works in order fully to prepare its patent infringement case, and its workings most likely entail more than just the hardware used to run the website alone. As but one example, some of Netflix's patent claims contain an element of "causing [a] selected movie to be delivered to the customer." Netflix has no way of knowing whether Blockbuster's

6

PLAINTIFF NETFLIX, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM BLOCKBUSTER, INC.
CASE NO. C 06 2361 WHA (JCS)

1  infringing system performs that function through its website or through other means.

2  Blockbuster has taken the position that Netflix must "clarify" these Requests. But Netflix
3  has done what it can to set reasonable limitations, given its lack of intimate knowledge as to how
4  Blockbuster constructs its infringing system and utilizes its hardware and software. Netflix has
5  sought only documents sufficient to fully describe these systems, and has already stated both that
6  it does not expect Blockbuster to produce documentation of standard business software like
7  Microsoft Office and that it is willing to consider other limitations that Blockbuster proposes.
8  But unless and until Netflix can thoroughly understand the component parts of the Blockbuster
9  Online service, it is unable to accede to Blockbuster's attempts to limit its production to only
10 things that relate to one part of the Blockbuster Online service -- its website.

### b. Blockbuster's Refusal To Identify and Provide Documents From and Relating To the Consultants Who Assisted With Blockbuster Online

Netflix has sought in several of its Requests information about the consultants who were involved with Blockbuster Online. In Request Number 36, Netflix asks that Blockbuster provide documents sufficient to identify all such consultants. *See* Paige Decl. Ex. A, Request No. 36. Blockbuster initially responded that it will only provide documents that will identify employees of specific consulting firms (Accenture, IBM, and David Perkovich). *See* Paige Decl. Ex. B, Response to Request No. 36. Subsequently, Blockbuster has indicated that it would be willing to provide documents relating to more than just these three named consultants. However, it has not yet committed to providing documents relating to all such consultants, arguing that it is unclear whether, for example, photocopying vendors would be considered "consultants." Netflix has stated that Blockbuster should utilize a reasonable definition of the term consultant (which would exclude photocopying vendors) and agree to produce information for its consultants that worked on Blockbuster Online. *See* Paige Decl. Ex. E at 2.

Blockbuster has also unilaterally limited its response to Number 36 to identifying persons working for the consultants it has identified that it deems to have had "significant involvement" with Blockbuster Online. Yet this again puts the ability to determine what information Netflix receives in response to its Requests squarely in Blockbuster's hands. It is possible that an

7

1  employee of one of these consultants had only a limited role to play in the engagement with
2  Blockbuster -- and that role was advising Blockbuster to copy Netflix's business methods.
3  Blockbuster's current limitation upon its response, however, would allow it to avoid producing
4  documents relating to such a person.
5      Blockbuster's response to Request Number 34 suffers from a similar infirmity.  In
6  Request Number 34, Netflix asks for Blockbuster's documents relating to its agreements with
7  any of its consultants for consulting services or products relating to the development of its
8  infringing Blockbuster Online service.  *See* Paige Decl. Ex. A, Request No. 34.  Blockbuster
9  responds that it will produce only documents "sufficient to reasonably describe any agreements
10 by Blockbuster, Inc. for consulting services" provided by the named consultants rather than all
11 such consultants.  *See* Paige Decl. Ex. B, Response to Request No. 34.  Aside from the fact that
12 Blockbuster, as discussed above, should produce documents that relate to all of its consultants
13 (as that term is reasonably understood) rather than just the consultants about which Netflix
14 already knows, producing only documents that Blockbuster contends are sufficient to
15 "reasonably describe" such agreements is insufficient.  It could very well be that an addendum to
16 an agreement, or correspondence clarifying the scope of an engagement, would reveal that the
17 consultants had been tasked with creating a knock-off of the patented Netflix business method.
18 Yet Blockbuster could withhold that sort of subsequent correspondence on the theory that it has
19 already produced enough documents reasonably to describe the terms and conditions of the
20 consulting agreement between the parties.
21     Likewise, Netflix asks in Request Number 35 for all documents exchanged between
22 Blockbuster and its consultants in connection with their consulting engagement with Blockbuster
23 to develop or operate Blockbuster Online.  *See* Paige Decl. Ex. A, Request No. 35.  Blockbuster
24 again did not commit to provide any documents from its consultants not affiliated with the
25 named consulting companies and refuses to produce all of the documents that were exchanged
26 between itself and its consultants, offering instead to produce only "documents sufficient to
27 reasonably describe" the consulting services that were rendered.  *See* Paige Decl. Ex. B,
28 Response to Request No. 35.  Blockbuster does not explain why producing the actual documents

1  that went back and forth between itself and the consultants would be burdensome; presumably
2  such documents would be maintained by a specific group that worked with the consultants in
3  developing Blockbuster Online.  Blockbuster has claimed that it fears that routine, repetitive
4  emails going back and forth between it and IBM, the consultants who assertedly maintain the
5  website today, would have to be produced in response to this Request; Netflix has explained that
6  it is willing to exclude such repetitive communications from the scope of the Request.  Given
7  that agreement, Blockbuster should produce the actual documents that have been exchanged
8  between itself and its consultants, not merely a hand-selected subset of those documents that it
9  deems sufficient.

          **c.    Blockbuster's Refusal To Produce Documents Relating To Technology Developed By Third Parties**

Blockbuster has also refused to produce its documents related to Blockbuster Online technology that was developed by third parties.  In Request Number 31, Netflix asks for such documents, including "agreements, licenses, permissions, term sheets, memoranda of understanding, letters of intent, specifications, technical descriptions, and correspondence."  *See* Paige Decl. Ex. A, Request No. 31.  In subsequent conferences and correspondence, and in response to expressions of concern from Blockbuster, Netflix agreed to limit the documents sought by this Request to those sufficient to fully describe such technology, rather than all such documents.  However, Blockbuster has limited the documents it will produce in response to what it believes are "documents sufficient to reasonably describe the development of Blockbuster Online."  *See* Paige Decl. Ex. B, Response to Request No. 31.  But that proffered response does not address the heart of what this request seeks: information regarding the technologies developed by third parties Blockbuster has licensed or paid for as part of its Blockbuster Online service.  A decision by Blockbuster to pay for various patented or otherwise protected technologies -- rather than willfully infringe upon intellectual property as it has done with Netflix -- would show that Blockbuster knows how to license or otherwise negotiate rights to intellectual property rather than simply taking it.  Moreover, to the extent that Blockbuster takes the position that damages in this case should be set at a reasonable royalty rather than an award of lost

profits, Netflix will need to discover the range of royalties that Blockbuster has agreed to pay for other similar technologies.  Documents that only describe the development of Blockbuster Online will not provide the necessary royalty information.

### 3. Blockbuster's Refusal To Produce Documents Related To Internal Discussions of Whether To Advertise Blockbuster Online In Its Stores

Blockbuster has failed to commit to producing all of its documents relating to internal discussions that are responsive to Request Number 89.  This Request seeks documents relating to Blockbuster's decision to promote Blockbuster Online in its bricks-and-mortar stores -- discussions that could demonstrate that Blockbuster (or at least some executives of the firm) believe that Blockbuster Online competes in the same market as the bricks-and-mortar stores -- contrary to the position that Blockbuster has taken in the putative antitrust counterclaim it seeks to bring against Netflix.  There, Blockbuster has claimed that the "relevant market" for purposes of its antitrust counterclaims is "the market for online DVD rentals and other subscription services."  Answer to First Amended Complaint & Counterclaims ¶ 90 (D.I. 43) (filed 9/11/06).  Blockbuster initially committed to produce documents sufficient to show only the promotions themselves.  *See* Paige Decl. Ex. B, Response to Request No. 89.  That response omitted key documents, however, such as discussions between Blockbuster executives of whether such promotions should be undertaken and what effect they might have on overall revenues, or specifically revenues from bricks-and-mortar rentals.  Such internal discussions are highly relevant to this case; as discussed above, they could reveal Blockbuster's own belief -- contradicting the allegations it has made in its counterclaims in this litigation -- that DVD rentals from bricks-and-mortar stores compete directly with online DVD rentals.  Although Blockbuster has indicated that it may be willing to produce some internal discussions of the issues relating to advertising Blockbuster Online in its bricks-and-mortar stores, it should be required to produce all such discussions.

### 4. Blockbuster's Refusal To Produce Complete Explanations of its Accounting for Blockbuster Online

In Request Number 19, Netflix has sought documents fully describing Blockbuster's recordkeeping and accounting methods, books and records as they relate to Blockbuster Online.

1 *See* Paige Decl. Ex. A, Request No. 19.  Blockbuster at first offered only to produce its publicly
2 filed Forms 10-Q and 10-K, *see* Paige Decl. Ex. B, Response to Request No. 19, and
3 subsequently agreed to produce quarterly and annual financial statements for Blockbuster Online
4 as well.  Simply producing the reports themselves, without also producing documents that will
5 explain how the reports are constructed, does not provide Netflix with what it is seeking (and is
6 duplicative of several other Requests in response to which Blockbuster has agreed to produce
7 documents).  Request Number 19 seeks documents explaining the process Blockbuster follows to
8 get and record its numbers.  Blockbuster has agreed to produce only the numbers.  Netflix and its
9 experts need to understand the details of Blockbuster's recordkeeping and accounting methods to
10 fully appreciate the significance of what Blockbuster is producing.  Publicly filed information
11 and aggregations of figures are unlikely to give Netflix what it needs in that regard.  Without an
12 understanding of *how* Blockbuster monitors and records Blockbuster Online's finances, Netflix
13 is greatly hampered in its ability to understand the profits Blockbuster has reaped through its
14 infringement.  Netflix also may not be able to piece together how Blockbuster determines its
15 profit margins for Blockbuster Online, which is of great importance in constructing an
16 appropriate reasonable royalty analysis.
17 **B.     Blockbuster's Refusal To Commit To A Date Certain For Production of Documents.**
18         As the Court is aware, the parties took some time to negotiate the terms of a protective
19 order for the production of documents in this case, and eventually required Court intervention to
20 finalize the protective order.  Once that order was entered, counsel for Netflix requested that
21 counsel for Blockbuster propose a date certain upon which the parties would exchange the
22 confidential and attorneys' eyes only documents that each had been withholding from production
23 pending entry of a suitable protective order.  As of today, Blockbuster has not been willing to
24 commit to a date upon which the parties would engage in a mutual exchange of their documents.
25 Although Blockbuster claims in the joint letter that it has already produced documents
26 responsive to Netflix's requests, the only production it has made thus far in the case are
27 documents connected with its initial disclosures -- which were made long before Netflix even
28 served its requests for production.  Blockbuster has previously confirmed that it was withholding

documents that it deemed confidential or attorneys' eyes only from its initial disclosure production, and it has yet to produce any of those documents, despite the entry of a protective order in this case. As this case is rapidly moving toward the completion of fact discovery, with depositions remaining to be taken, Netflix respectfully requests that the Court order Blockbuster to produce its documents responsive to Netflix's document requests by a date certain.

## IV.    CONCLUSION

For the foregoing reasons, Netflix respectfully requests that this Court compel Blockbuster to produce its responsive documents, as described above and in the accompanying proposed order.

Dated: November 3, 2006                                    KEKER & VAN NEST, LLP


                                                          By:  _____/s/ Jeffrey R. Chanin_____
                                                               Jeffrey R. Chanin
                                                               ATTORNEYS FOR PLAINTIFF
                                                               NETFLIX, INC.