# EXHIBIT A

Dockets.Justia.com

1  KEKER & VAN NEST, LLP
   JEFFREY R. CHANIN - #103649
2  DARALYN J. DURIE - #169825
   LEO L. LAM - #181861
3  KEVIN T. REED - #240799
   710 Sansome Street
4  San Francisco, CA 94111-1704
   Telephone: (415) 391-5400
5  Facsimile: (415) 397-7188

6  Attorneys for Plaintiff
   NETFLIX, INC.

7

8                  UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10

11  NETFLIX, INC., a Delaware corporation,        Case No. C 06 2361 WHA

12                              Plaintiff,        **NETFLIX'S FIRST SET OF REQUESTS
                                                  FOR THE PRODUCTION OF
13           v.                                   DOCUMENTS TO BLOCKBUSTER**

14  BLOCKBUSTER, INC., a Delaware
    corporation, DOES 1-50,
15
                                Defendant.
16

17  PROPOUNDING PARTY:        PLAINTIFF NETFLIX, INC.

18  RESPONDING PARTY:         DEFENDANT BLOCKBUSTER, INC.

19  SET NO.:                  ONE

20

21

22

23

24

25

26

27

28

379754.01

1    Pursuant to Federal Rule of Civil Procedure 34, Plaintiff and Counterclaim-Defendant

2  Netflix, Inc. ("Netflix") requests that Defendant and Counterclaim-Plaintiff Blockbuster, Inc..

3  ("Blockbuster") produce for inspection and copying the documents and other tangible things

4  described below.  The documents shall be produced for inspection and copying at the offices of

5  Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111, or at such other

6  location as the parties may mutually agree, within thirty days of service of these requests.

**DEFINITIONS**

8    1.  "BLOCKBUSTER" means Blockbuster, Inc., and each of its divisions, subsidiaries,

9  departments, predecessor and successor companies, affiliates, parents, any joint venture to which

10  it may be a party, and/or each of its past and present employees, agents, officers, directors,

11  representatives, consultants, accountants and attorneys, including without limitation

12  BLOCKBUSTERONLINE as defined herein.

13    2.  "BLOCKBUSTERONLINE", as used herein refers to BLOCKBUSTER's online

14  rental service BLOCKBUSTERONLINE, and includes FilmCaddy, DVDRentalCentral, Movie

15  Caddy, Online Subscription Services, Inc., or any online rental service BLOCKBUSTER has

16  owned and operated.

17    3.  "NETFLIX" as used herein means Netflix, Inc., its subsidiaries, divisions,

18  predecessor and successor companies, affiliates, parents, any joint venture to which it may be a

19  party, and/or each of its employees, agents, officers, directors, representatives, consultants,

20  accountants and attorneys, including any person who served in any such capacity at any time.

21    4.  "ACCENTURE" as used herein means Accenture, Inc., its subsidiaries, divisions,

22  predecessor and successor companies, affiliates, parents, any joint venture to which it may be a

23  party, and/or each of its employees, agents, officers, directors, representatives, consultants,

24  accountants and attorneys, including any person who served in any such capacity at any time.

25    5.  "IBM" as used herein means International Business Machines Corporation, its

26  subsidiaries, divisions, predecessor and successor companies, affiliates, parents, any joint

27  venture to which it may be a party, and/or each of its employees, agents, officers, directors,

28  representatives, consultants, accountants and attorneys, including any person who served in any

1

1  such capacity at any time.

2      6.   "PATENTS-IN-SUIT" refers to United States Patent Nos. 7,024,381 and 6,584,450,

3  both individually and collectively.

4      7.   "NCR PATENTS" means each of the following patents:

5          a.   U.S. Patent No. 5,699,526, entitled "Ordering and Downloading Resources

6               from Computerized Repositories," which names as inventor David M. Siefert,

7               issued December 16, 1997, on an application filed August 21, 1996;

8          b.   U.S. Patent No. 5,951,643, entitled "Mechanism for Dependably Organizing

9               and Managing Information for Web Synchronization and Tracking Among

10              Multiple Browers," which names as inventors James A. Shelton, Michael I.

11              Ingrassia, Jr., and Thomas M. Roland, issued September 14, 1999, on an

12              application filed October 6, 1997;

13         c.   U.S. Patent No. 5,991,791, entitled "Security Aspects of Computer Resource

14              Repositories," which names as inventor David M. Siefert, issued

15              November 23, 1999, on an application filed January 10, 1997;

16         d.   U.S. Patent No. 6,026,403, entitled "Computer System for Management of

17              Resources," which names an inventor David M. Siefert, issued February 15,

18              2000, on an application filed March 24, 1994;

19         e.   U.S. Patent No. 6,169,997, entitled "Method and Apparatus for Forming

20              Subject (Context) Map and Presenting Internet Data According to the Subject

21              Map," which names as inventors Karen A. Papierniak, James E. Thaisz, Luo-

22              Jen Chiang, and Paresh B. Shah, issued January 2, 2001, on an application

23              filed April 29, 1998;

24         f.   U.S. Patent No. 6,253,203, entitled "Privacy-Enhanced Database," which

25              names an inventors Kenneth W. O'Flaherty, Richard G. Stellwagen, Jr.,

26              Todd A. Walter, Reid M. Watts, David A. Ramsey, Adriaan W. Veldhuisen

27              and Renda K. Ozden, issued June 26, 2001, on an application filed October 2,

28              1998;

NETFLIX'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO BLOCKBUSTER
CASE NO. C 06 2361 WHA

g.  U.S. Patent No. 6,480,855, entitled "Managing a Resource on a Network Where Each Resource Has an Associated Profile with an Image," which names as inventor David M. Siefert, issued November 12, 2002, on an application filed August 22, 2000;

h.  U.S. Patent No. 6,502,096, entitled "Computerized Asset Management System," which names as inventor David M. Siefert, issued December 31, 2002, on an application filed August 22, 2000; and

i.  U.S. Patent No. 6,714,931, entitled "Method and Apparatus for Forming User Sessions and Presenting Internet Data According to the User Sessions," which names as inventors Karen A. Papierniak, James E. Thaisz, Luo-Jen Chiang, Anjali M. Diwekar, issued March 30, 2004, on an application filed April 29, 1998.

8.  "ANSWER" refers to Blockbuster Answer to Complaint and Counterclaims, filed on June 13, 2006 in the above captioned case.

9.  "ON-LINE" means accomplished through the use of a computer or computing device that is connected to the internet.

10. "IN-STORE" means in, at, or through a store-front location at which a company maintains a physical presence and conducts a transaction with customers at that location.

11. The term "DOCUMENT(S)" is used in the broadest possible sense as interpreted under the Federal Rules of Civil Procedure and includes, without limitation, all originals and copies, duplicates, drafts, and recordings of any written, printed, graphic or otherwise recorded matter, however produced or reproduced, and all "writings" as defined in Federal Rule of Evidence 1001, including, without limitation, the following:  abstracts, advertisements, agendas, agreements, analyses of any kind, appointment calendars, articles, assignments, blueprints, books, brochures, charts, circulars, compilations, computer programs, runs and printouts, computer data files in machine readable form, contracts, diaries, letters, email, reports (including reports or notes of telephone or other conversations), memoranda, brochures, books, ledgers, drawings, photographs, specifications, drafts, catalogs, instructions, invoices, bills of materials,

3

minutes, orders, publications, purchase orders, proposals, working papers, and other writings of whatsoever nature, whether on paper, magnetic tape or other information storage means, including film and computer memory devices; all drafts prepared in connection with any such writings, whether used or not, regardless of whether the DOCUMENT still exists, and regardless of who has maintained custody of such DOCUMENTS; and where any such items contain any marking not appearing on the original or are altered from the original, then such items shall be considered to be separate original DOCUMENTS.

12. The phrase "RELATING TO" means concerning, referring to, summarizing, reflecting, constituting, containing, embodying, pertaining to, involved with, mentioning, discussing, consisting of, comprising, showing, commenting upon, evidencing, describing or otherwise RELATING TO the subject matter.

13. The term "COMMUNICATION(S)" means every manner or method of disclosure or transfer or exchange of information, whether oral or by document, and whether face-to-face, by telephone, mail, personal delivery or otherwise.

14. The words "and" and "or" shall be construed in the conjunctive or disjunctive, whichever makes the request more inclusive.

15. "Any" shall mean one or more; "each" shall mean "each and every."

## INSTRUCTIONS

1. As required by Federal Rule of Civil Procedure Rule 34(b), BLOCKBUSTER shall produce all documents (a) in the manner, form and position in which they are kept in the ordinary course of business, including, where applicable, any index tabs, file dividers, designations or information as to the location of documents, or (b) organized and labeled to correspond with the requests set forth below.

2. If BLOCKBUSTER cannot respond to a document request fully after a diligent attempt to obtain the requested information, BLOCKBUSTER must answer the document request to the extent possible, specify the portion of the document request BLOCKBUSTER is unable to answer, and provide whatever information BLOCKBUSTER has regarding the unanswered portion.

4

3.   In the event that any document called for by the requests has been destroyed, lost, discarded or is otherwise no longer in BLOCKBUSTER's possession, custody or control, BLOCKBUSTER shall identify such document as completely as possible, and shall specify the date of disposal of the document , the manner of disposal, the reason for disposal, the person authorizing the disposal, and the person disposing of the document.

4.   For any responsive documents or things withheld from production based on any ground, including privilege, BLOCKBUSTER should provide a written statement or log setting forth:

    i.    the author(s) of the document;

    ii.    the nature of the document (e.g., letter, memorandum, chart);

    iii.    the identity of all person(s) who received copies of the document;

    iv.    the date of the document;

    v.    a brief description of the subject matter of the document; and

    vi.    the legal ground upon which BLOCKBUSTER relies in withholding the document.

In addition, for each author, addressee, or recipient, BLOCKBUSTER should provide the person's full name, title, and employer or firm, and denote each attorney with an asterisk.  For each document or portion of a document withheld on the grounds of privilege, BLOCKBUSTER should state the general subject matter of each document, the number of pages of the document, and a description that, although not revealing privileged information, provides sufficiently detailed information to assess the applicability of the privilege claimed.  For each document withheld under a claim of work-product privilege, BLOCKBUSTER should state whether the document was prepared in anticipation of litigation and, if so, identify the litigation.  Any pages or portions of a document as to which no privilege is claimed should be produced, and if only portions of a document are withheld on the basis of privilege, the withheld portions should be indicated by stamp or other marking showing redaction.

5.   All documents requested are to be produced in the same file or other organizational environment in which they are maintained.  For example, a document that is part of a file,

NETFLIX'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO BLOCKBUSTER
CASE NO. C 06 2361 WHA

1   docket, or other grouping should be physically produced together with all other documents from

2   that file, docket, or grouping, in the same order or manner of arrangement as the original.

3   Alternatively, as to each document and thing produced in response hereto, BLOCKBUSTER

4   should identify the request that the document is responsive to.  In responding to these requests,

5   BLOCKBUSTER should produce documents as they are kept in their original condition (e.g.,

6   documents that were stapled, clipped, or otherwise fastened together should be produced in that

7   form).

8       6.  If BLOCKBUSTER objects to any request, BLOCKBUSTER should state with

9   specificity all grounds for the objection.

10      7.  If any document cannot be produced in full, BLOCKBUSTER should produce the

11  document to the extent possible and specify the reasons for being unable to produce the

12  remainder.

13      8.  If any responsive documents have been destroyed or lost, BLOCKBUSTER should

14  set forth the content of the document, the location of any copies of the document, and the date of

15  the destruction or loss, and BLOCKBUSTER should identify the person who ordered or

16  authorized the destruction or who is responsible for the loss.

17      9.  To the extent required by Rule 26(e) of the Federal Rules of Civil Procedure,

18  BLOCKBUSTER should promptly produce any additional documents requested herein that

19  become known to BLOCKBUSTER after BLOCKBUSTER's initial production of documents in

20  response to these requests.

21      10.  Unless otherwise specified, these Requests seek all DOCUMENTS and requested

22  materials created, modified, or reproduced since January 1, 1999 through and including the date

23  of BLOCKBUSTER's response to these Requests.

24              **REQUEST FOR PRODUCTION OF DOCUMENTS**

25  **REQUEST FOR PRODUCTION NO. 1:**

26      All DOCUMENTS RELATING TO BLOCKBUSTER's potentially engaging in, or not

27  engaging in, the business of the ON-LINE rental of DVDs, movies, video games, or other media,

28  through any means.

**REQUEST FOR PRODUCTION NO. 2:**

All DOCUMENTS RELATING TO existing or prospective competition from any source in, or with, the business of renting DVDs, movies, video games, or other media ON-LINE, including but not limited to competition from or with Netflix, or any other company that engages in or that might engage in such competition.

**REQUEST FOR PRODUCTION NO. 3:**

All DOCUMENTS RELATING to potential revenues from engaging in the business of renting DVDs, movies, video games, or other media ON-LINE, including but not limited to any assessment of gross margins, profitability, or viability of such a business.

**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS RELATING TO the delivery of DVDs, movies, video games, or other media to customers, including without limitation delivery through the U.S. Mail, by private carriers such as Federal Express, UPS, or DHL, or by any other means.

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS RELATING TO the actual or potential delivery of movies, video games, or other media to customers through broadband internet delivery, including but not limited to subscription services.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS RELATING TO the actual or potential delivery of movies, video games, or other media to customers over cable networks, including but not limited to video on demand.

**REQUEST FOR PRODUCTION NO. 7:**

All DOCUMENTS RELATING TO actual or potential methods known to BLOCKBUSTER for renting DVDs, movies, video games, or other media on a subscription basis.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS RELATING TO research conducted by or on behalf of BLOCKBUSTER in connection with its design, development, implementation and operation of BLOCKBUSTERONLINE, including without limitation trade research, market research, and consumer research.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS RELATING TO actual or potential competition between BLOCKBUSTER's IN-STORE and ON-LINE rental services, including but not limited to strategic plans, forecasts, projections, business plans, reports, analyses and research.

**REQUEST FOR PRODUCTION NO. 10:**

All DOCUMENTS RELATING TO DVDRentalCentral, including without limitation the potential and actual acquisition, and operation, of DVDRentalCentral.

**REQUEST FOR PRODUCTION NO. 11:**

All DOCUMENTS RELATING TO the total revenue that BLOCKBUSTER has realized, directly or indirectly, from its operation of BLOCKBUSTERONLINE.

**REQUEST FOR PRODUCTION NO. 12:**

All of BLOCKBUSTER's income statements since January 1, 2000.

**REQUEST FOR PRODUCTION NO. 13:**

All of BLOCKBUSTER's balance sheets since January 1, 2000.

**REQUEST FOR PRODUCTION NO. 14:**

All of BLOCKBUSTER's profit and loss statements since January 1, 2000.

**REQUEST FOR PRODUCTION NO. 15:**

All income statements RELATING TO BLOCKBUSTERONLINE.

**REQUEST FOR PRODUCTION NO. 16:**

All balance sheets RELATING TO BLOCKBUSTERONLINE.

**REQUEST FOR PRODUCTION NO. 17:**

All profit and loss statements RELATING TO BLOCKBUSTERONLINE.

379754.01

**REQUEST FOR PRODUCTION NO. 18:**

All of BLOCKBUSTER's quarterly and annual audited financial statements and annual reports, including all corresponding notes and schedules, since January 1, 2000.

**REQUEST FOR PRODUCTION NO. 19:**

DOCUMENTS sufficient to describe fully BLOCKBUSTER's recordkeeping and accounting methods, books and records as they relate to BLOCKBUSTERONLINE.

**REQUEST FOR PRODUCTION NO. 20:**

All DOCUMENTS RELATING TO potential and actual marketing and advertising plans for BLOCKBUSTERONLINE.

**REQUEST FOR PRODUCTION NO. 21:**

All DOCUMENTS constituting advertising and promotional materials for BLOCKBUSTERONLINE that describe or refer to the methods by which BLOCKBUSTER rents items to customers.

**REQUEST FOR PRODUCTION NO. 22:**

All DOCUMENTS RELATING TO the preferences of customers in using or choosing among any products or services offered or developed by BLOCKBUSTERONLINE, DVDRentalCentral, NETFLIX, or any other company in the business of the ON-LINE rental of DVDs, movies, video games, or other media, including without limitation any reports or studies.

**REQUEST FOR PRODUCTION NO. 23:**

All DOCUMENTS RELATING TO the design, methodology, operation, effectiveness, or success of NETFLIX's ON-LINE rental service, including, without limitation, any analyses, engineering, design, or laboratory notebooks, drawings, block diagrams, specifications, design reviews, schematics, flow charts, minutes of design reviews, publications, notes, memoranda or correspondence, describing or referring to NETFLIX's ON-LINE rental service.

**REQUEST FOR PRODUCTION NO. 24:**

All DOCUMENTS RELATING TO the design, development, testing, or implementation of the BLOCKBUSTERONLINE service, including, without limitation, any engineering, design, or laboratory notebooks, drawings, block diagrams, functional specifications, design reviews,

9

1   schematics, flow charts, minutes of design reviews, declarations, publications, notes,

2   memoranda, correspondence, invention disclosure forms, customer specifications, source code,

3   customer requests, or prototypes of any invention, Beta versions, or components of

4   BLOCKBUSTERONLINE.

5   **REQUEST FOR PRODUCTION NO. 25:**

6          DOCUMENTS and things sufficient fully to describe each version of

7   BLOCKBUSTERONLINE's website from the date of launch to the present, including but not

8   limited to product and system descriptions, functional specifications, network architectures,

9   screenshots and presentation materials.

10  **REQUEST FOR PRODUCTION NO. 26:**

11         DOCUMENTS and things sufficient fully to describe the structure or architecture of the

12  software used to operate, support, or maintain BLOCKBUSTERONLINE, including block

13  diagrams, data structure diagrams, system architecture diagrams, database layouts, and source

14  code.

15  **REQUEST FOR PRODUCTION NO. 27:**

16         DOCUMENTS and things sufficient fully to describe the structure or architecture of the

17  hardware used to operate, support, or maintain BLOCKBUSTERONLINE, including types of

18  hardware used and connectivity between the various pieces of hardware.

19  **REQUEST FOR PRODUCTION NO. 28:**

20         DOCUMENTS and things sufficient fully to describe all rental methods used or practiced

21  by BLOCKBUSTERONLINE from inception to the present.

22  **REQUEST FOR PRODUCTION NO. 29:**

23         DOCUMENTS and things sufficient fully to describe all rental methods used or practiced

24  by DVDRentalCentral from inception to the present.

25  **REQUEST FOR PRODUCTION NO. 30:**

26         DOCUMENTS and things sufficient fully to describe all membership plans offered by

27  BLOCKBUSTERONLINE from inception to the present.

28

10

379754.01

**REQUEST FOR PRODUCTION NO. 31:**

All DOCUMENTS RELATING TO BLOCKBUSTERONLINE technology developed in whole or in part by third parties, including without limitation agreements, licenses, permissions, term sheets, memoranda of understanding, letters of intent, specifications, technical descriptions, and correspondence.

**REQUEST FOR PRODUCTION NO. 32:**

DOCUMENTS sufficient to describe fully the corporate organization of BLOCKBUSTER and each of its divisions, subdivisions, units, subsidiaries or affiliates, including but not limited to organizational charts, personnel directories, telephone directories, and electronic mail user and address lists.

**REQUEST FOR PRODUCTION NO. 33:**

DOCUMENTS sufficient to identify each and every BLOCKBUSTER officer, manager, director, agent, and employee who had responsibility for, or who was assigned to implement, the design, research, development, testing, and operation of BLOCKBUSTERONLINE.

**REQUEST FOR PRODUCTION NO. 34:**

All DOCUMENTS RELATING TO agreements between BLOCKBUSTER and any consultant, including but not limited to ACCENTURE, IBM, and David Perkovich, to provide consultation services or products to BLOCKBUSTER relating to the development or operation of BLOCKBUSTERONLINE.

**REQUEST FOR PRODUCTION NO. 35:**

All DOCUMENTS exchanged between BLOCKBUSTER and any consultant, including but not limited to ACCENTURE, IBM, and David Perkovich, in connection with any agreement to provide consulting services or products to BLOCKBUSTER relating to the development or operation of BLOCKBUSTERONLINE.

**REQUEST FOR PRODUCTION NO. 36:**

DOCUMENTS sufficient to identify the employees, contractors, or agents of any consultant, including but not limited to ACCENTURE, IBM and DVDRentalCentral, who provided any information or performed any service for BLOCKBUSTER in connection with the

11

1  design, research, development, testing, marketing, and operation of BLOCKBUSTERONLINE.

2  **REQUEST FOR PRODUCTION NO. 37:**

3      All DOCUMENTS RELATING TO the consideration by BLOCKBUSTER, or by any

4  consultant retained in connection with developing or operating BLOCKBUSTERONLINE, of

5  NETFLIX's ON-LINE rental system, products, services, website, or methods.

6  **REQUEST FOR PRODUCTION NO. 38:**

7      All DOCUMENTS RELATING TO the consideration by BLOCKBUSTER, or by any

8  consultant retained in connection with developing or operating BLOCKBUSTERONLINE, of

9  any NETFLIX patents or patent applications.

10  **REQUEST FOR PRODUCTION NO. 39:**

11      DOCUMENTS sufficient to show when BLOCKBUSTER, or any consultant retained by

12  BLOCKBUSTER in connection with BLOCKBUSTERONLINE, first became aware of each of

13  the PATENTS-IN-SUIT.

14  **REQUEST FOR PRODUCTION NO. 40:**

15      All DOCUMENTS RELATING TO the patentability of any claim of the PATENTS-IN-

16  SUIT including without limitation, any study, analysis, review, conclusions, or opinions, whether

17  written or oral.

18  **REQUEST FOR PRODUCTION NO. 41:**

19      All DOCUMENTS RELATING TO the validity or invalidity of any claim of the

20  PATENTS-IN-SUIT, including without limitation, any study, analysis, review, conclusions,

21  research, investigation, or opinions, whether written or oral.

22  **REQUEST FOR PRODUCTION NO. 42:**

23      All DOCUMENTS RELATING TO the novelty or lack thereof of any claim of the

24  PATENTS-IN-SUIT, including without limitation, any study, analysis, review, conclusions,

25  research, investigation, or options, whether written or oral.

26  **REQUEST FOR PRODUCTION NO. 43:**

27      All DOCUMENTS RELATING TO the obviousness or non-obviousness of any claim of

28  the PATENTS-IN-SUIT, including without limitation, any study, analysis, review, conclusions,

1    research, investigation, or opinions, whether written or oral.

2    **REQUEST FOR PRODUCTION NO. 44:**

3      All DOCUMENTS RELATING TO the enforceability or non-enforceability of any claim

4    of the PATENTS-IN-SUIT, including without limitation, any study, analysis, review,

5    conclusions, research, investigation, or opinions, whether written or oral.

6    **REQUEST FOR PRODUCTION NO. 45:**

7      All DOCUMENTS RELATING TO actual or potential infringement or non-infringement

8    of any claim of the PATENTS-IN-SUIT by BLOCKBUSTERONLINE, including without

9    limitation, any study, analysis, review, conclusions, research, investigation or opinions, whether

10    written or oral.

11    **REQUEST FOR PRODUCTION NO. 46:**

12      All DOCUMENTS RELATING TO any opinion of legal counsel with respect to

13    infringement, non-infringement, validity, invalidity, enforceability, interpretation or scope of any

14    claim of the PATENTS-IN-SUIT, including without limitation any oral or written options or

15    advice.

16    **REQUEST FOR PRODUCTION NO. 47:**

17      All DOCUMENTS RELATING TO any COMMUNICATION between

18    BLOCKBUSTER, or anyone acting on its behalf, and any other third party about the

19    patentability, validity, enforceability, scope, or infringement by BLOCKBUSTERONLINE of

20    any claim of the PATENTS-IN-SUIT.

21    **REQUEST FOR PRODUCTION NO. 48:**

22      All DOCUMENTS RELATING TO any COMMUNICATION, study, analysis, review,

23    conclusions, or opinions, whether written or oral, regarding any of the NCR PATENTS.

24    **REQUEST FOR PRODUCTION NO. 49:**

25      All DOCUMENTS RELATING TO any COMMUNICATION, study, analysis, review,

26    conclusions, or opinions, whether written or oral, as to United States Patent. No. 5,459,306,

27    issued on October 17, 1995, entitled "Method and System for Delivering On Demand,

28    Individually Targeted Promotions."

1  **REQUEST FOR PRODUCTION NO. 50:**

2     All DOCUMENTS RELATING TO any comparison of the functions, features, or

3  characteristics of BLOCKBUSTERONLINE with any of the functions, features, or

4  characteristics of NETFLIX's system.

5  **REQUEST FOR PRODUCTION NO. 51:**

6     All DOCUMENTS RELATING to any comparison of the functions, features, or

7  characteristics of BLOCKBUSTERONLINE with any claim of the PATENTS-IN-SUIT.

8  **REQUEST FOR PRODUCTION NO. 52:**

9     All DOCUMENTS RELATING to any comparison of the functions, features, or claims

10  of the NCR PATENTS with any claim of the PATENTS-IN-SUIT.

11  **REQUEST FOR PRODUCTION NO. 53:**

12     All DOCUMENTS RELATING to any comparison of the functions, features, or claims

13  of United States Patent. No. 5,459,306, issued on October 17, 1995, entitled "Method and

14  System for Delivering On Demand, Individually Targeted Promotions," with any claim of the

15  PATENTS-IN-SUIT.

16  **REQUEST FOR PRODUCTION NO. 54:**

17     All DOCUMENTS RELATING TO any patent, literature or prior art search conducted

18  with respect to either of the PATENTS-IN-SUIT.

19  **REQUEST FOR PRODUCTION NO. 55:**

20     All DOCUMENTS RELATING TO any COMMUNICATIONS between

21  BLOCKBUSTER and NETFLIX.

22  **REQUEST FOR PRODUCTION NO. 56:**

23     DOCUMENTS sufficient to describe fully BLOCKBUSTER's electronic mail, electronic

24  mail backup, and electronic mail deletion policies.

25  **REQUEST FOR PRODUCTION NO. 57:**

26     DOCUMENTS sufficient to describe fully each of BLOCKBUSTER's document

27  retention policies in effect between January 1, 2003 to the present.

28

**REQUEST FOR PRODUCTION NO. 58:**

All DOCUMENTS RELATING TO BLOCKBUSTER's expenditures to develop and implement BLOCKBUSTERONLINE.

**REQUEST FOR PRODUCTION NO. 59:**

All DOCUMENTS RELATING TO BLOCKBUSTER's expenditures to maintain and operate BLOCKBUSTERONLINE from launch to the present.

**REQUEST FOR PRODUCTION NO. 60:**

All DOCUMENTS RELATING TO BLOCKBUSTER'S consideration(s) of acquiring NETFLIX, including without limitation any COMMUNICATION, plan, report, analysis and research.

**REQUEST FOR PRODUCTION NO. 61:**

All DOCUMENTS RELATING TO any actions taken by BLOCKBUSTER RELATING TO the potential acquisition of NETFLIX, including without limitation any plans or financial arrangements.

**REQUEST FOR PRODUCTION NO. 62:**

All DOCUMENTS RELATING TO BLOCKBUSTER'S consideration of selling BLOCKBUSTERONLINE to any company, including without limitation any COMMUNICATION, plan, report, analysis, or research.

**REQUEST FOR PRODUCTION NO. 63:**

All DOCUMENTS RELATING TO the possibility of BLOCKBUSTER'S obtaining a license to any of the PATENTS-IN-SUIT from NETFLIX, including without limitation any COMMUNICATION, plan, report, analysis, or research.

**REQUEST FOR PRODUCTION NO. 64:**

All DOCUMENTS referred to or described on Pages 72 through 77 of BLOCKBUSTER's July 28, 2006 Supplemented Initial Disclosures as documents that may BLOCKBUSTER may use to support its claims and defenses.

**REQUEST FOR PRODUCTION NO. 65:**

All DOCUMENTS RELATING to the categories of damages and the computation

15

1    thereof described on pages 77 through 79 of BLOCKBUSTER's July 28, 2006 Supplemented

2    Initial Disclosures.

3    **REQUEST FOR PRODUCTION NO. 66:**

4          All DOCUMENTS on Page 79 of BLOCKBUSTER's July 28, 2006 Supplemented Initial

5    Disclosures as documents supporting Blockbuster Inc.'s damages.

6    **REQUEST FOR PRODUCTION NO. 67:**

7          All DOCUMENTS RELATING TO BLOCKBUSTER's allegation in its ANSWER,

8    ¶ 88, that "[t]he relevant product market . . . is the market for ON-LINE DVD rentals and related

9    subscription services," including without limitation all documents that tend to support or

10   contradict that allegation.

11   **REQUEST FOR PRODUCTION NO. 68:**

12         All DOCUMENTS RELATING TO the market(s) in which ONLINE DVD rental

13   companies such as BLOCKBUSTERONLINE and NETFLIX compete or may compete,

14   including without limitation any reports, analyses, studies, or statements made by

15   BLOCKBUSTER, or on its behalf, concerning such market(s) or market definitions.

16   **REQUEST FOR PRODUCTION NO. 69:**

17         All DOCUMENTS RELATING TO the identity or characteristics of actual or

18   prospective competitors with ONLINE DVD rental companies, such as

19   BLOCKBUSTERONLINE and NETFLIX, including without limitation any reports, analyses,

20   studies, or statements made by BLOCKBUSTER, or on its behalf, concerning actual or

21   prospective competition from IN-STORE rentals, new or used DVD sales, Broadband Internet,

22   or video on demand.

23   **REQUEST FOR PRODUCTION NO. 70:**

24         All DOCUMENTS RELATING TO BLOCKBUSTER's allegation in its ANSWER,

25   ¶ 88, that "the relevant geographical market is the United States and its territories as a whole,"

26   including without limitation all documents that tend to support or contradict that allegation.

27   **REQUEST FOR PRODUCTION NO. 71:**

28         All DOCUMENTS RELATING TO BLOCKBUSTER's allegation in its ANSWER,

1    ¶ 89, that "throughout the relevant time period up to and including the present, Netflix has had

2    market power in the relevant product and geographical markets," including without limitation all

3    documents that tend to support or contradict that allegation.

4    **REQUEST FOR PRODUCTION NO. 72:**

5        All DOCUMENTS RELATING TO BLOCKBUSTER's allegation in its ANSWER,

6    ¶ 90, that "Netflix's share of the relevant product and geographical markets exceed 65%,"

7    including without limitation all documents that tend to support or contradict that allegation.

8    **REQUEST FOR PRODUCTION NO. 73:**

9        All DOCUMENTS RELATING TO BLOCKBUSTER's allegation in its ANSWER,

10   ¶ 91, that "should Netflix succeed in inducing BLOCKBUSTERONLINE to exit the relevant

11   market, Netflix would again be without significant competition in that market," including

12   without limitation all documents that tend to support or contradict that allegation.

13   **REQUEST FOR PRODUCTION NO. 74:**

14       All DOCUMENTS RELATING TO the identity of all companies operating in the

15   "relevant product market," as alleged by BLOCKBUSTER in its ANSWER, ¶ 88.

16   **REQUEST FOR PRODUCTION NO. 75:**

17       All DOCUMENTS RELATING TO the market share of each company operating in the

18   "relevant product market," as alleged by BLOCKBUSTER in its ANSWER ¶ 88, "throughout

19   the relevant time period up to and including the present," as alleged by BLOCKBUSTER in its

20   ANSWER, ¶ 89.

21   **REQUEST FOR PRODUCTION NO. 76:**

22       All DOCUMENTS RELATING TO BLOCKBUSTER's allegations in its ANSWER,

23   ¶¶ 111-12, that Netflix "acted with the specific intent to monopolize the relevant market,"

24   including without limitation all documents that tend to support or contradict that allegation.

25   **REQUEST FOR PRODUCTION NO. 77:**

26       All DOCUMENTS RELATING TO BLOCKBUSTER's allegation in its ANSWER,

27   ¶¶ 113-14, that Netflix has a dangerous probability of success of monopolizing the relevant

28   market, including without limitation all documents that tend to support or contradict that

1    allegation.

2    **REQUEST FOR PRODUCTION NO. 78:**

3        All DOCUMENTS RELATING TO actual or potential substitutes for ON-LINE DVD

4    rentals, including without limitation any analyses, reports or surveys.

5    **REQUEST FOR PRODUCTION NO. 79:**

6        All DOCUMENTS RELATING TO BLOCKBUSTER's allegation in its ANSWER,

7    ¶ 93, that "Netflix has engaged in monopolization in the relevant market during the relevant time

8    period," including without limitation all documents that tend to support or contradict that

9    allegation.

10   **REQUEST FOR PRODUCTION NO. 80:**

11       All DOCUMENTS RELATING TO any alleged injury to competition in any relevant

12   market that BLOCKBUSTER alleges was caused by any alleged antitrust violation committed by

13   NETFLIX.

14   **REQUEST FOR PRODUCTION NO. 81:**

15       All DOCUMENTS RELATING TO BLOCKBUSTER's allegation in its ANSWER,

16   ¶ 107, that "Netflix has succeeded in restraining competition in the relevant market during the

17   relevant time period," including without limitation all documents that tend to support or

18   contradict that allegation.

19   **REQUEST FOR PRODUCTION NO. 82:**

20       All DOCUMENTS RELATING TO BLOCKBUSTER's allegation in its ANSWER,

21   ¶ 107, that NETFLIX's alleged conduct will "deter other potential competitors from entering the

22   relevant market," including without limitation all documents that tend to support or contradict

23   that allegation.

24   **REQUEST FOR PRODUCTION NO. 83:**

25       All DOCUMENTS RELATING TO any damages BLOCKBUSTER alleges it has

26   suffered or will suffer as a result of any alleged antitrust violation committed by NETFLIX.

27   **REQUEST FOR PRODUCTION NO. 84:**

28       All DOCUMENTS RELATING TO BLOCKBUSTER'S actual or potential use of any

18

379754.01

1    method used by NETFLIX to rent DVDs to customers.

2    **REQUEST FOR PRODUCTION NO. 85:**

3    All DOCUMENTS RELATING TO the actual or potential effect of competition from

4    NETFLIX on BLOCKBUSTER's profits or revenues from in-store rentals.

5    **REQUEST FOR PRODUCTION NO. 86:**

6    All DOCUMENTS RELATING TO the actual or potential effect of competition from

7    NETFLIX on BLOCKBUSTER's profit or revenues from sales of DVDs.

8    **REQUEST FOR PRODUCTION NO. 87:**

9    All DOCUMENTS RELATING TO the actual or potential effect of the launch of

10    BLOCKBUSTERONLINE on BLOCKBUSTER's profits or revenues from IN-STORE rentals.

11    **REQUEST FOR PRODUCTION NO. 88:**

12    All DOCUMENTS RELATING TO the actual or potential effect of raising or lowering

13    the sale price of new or used DVDs on BLOCKBUSTER's profits or revenues from IN-STORE

14    DVD rentals.

15    **REQUEST FOR PRODUCTION NO. 89:**

16    All DOCUMENTS RELATING TO BLOCKBUSTER's promotion in its IN-STORE

17    locations of BLOCKBUSTERONLINE.

18    **REQUEST FOR PRODUCTION NO. 90:**

19    All DOCUMENTS RELATING TO price competition with NETFLIX.

20    **REQUEST FOR PRODUCTION NO. 91:**

21    All DOCUMENTS RELATING TO the actual or potential effect of subscription plan

22    prices offered, or to be offered, by BLOCKBUSTERONLINE, NETFLIX, or any other ON-

23    LINE DVD rental company, on BLOCKBUSTER's profits or revenues derived from the IN-

24    STORE DVD rentals.

25    **REQUEST FOR PRODUCTION NO. 92:**

26    All DOCUMENTS RELATING TO the actual or potential effect of subscription plan

27    prices offered, or to be offered by BLOCKBUSTERONLINE, NETFLIX, or any other ON-LINE

28    DVD rental company, on BLOCKBUSTER's profits or revenues derived from the IN-STORE

19

1    DVD sales.

2    **REQUEST FOR PRODUCTION NO. 93:**

3        All DOCUMENTS RELATING TO the effect of raising or lowering the sale price of

4    new or used DVDs on BLOCKBUSTER's profits or revenues derived from

5    BLOCKBUSTERONLINE.

6    **REQUEST FOR PRODUCTION NO. 94:**

7        All DOCUMENTS RELATING TO the actual or potential effect of subscription plan

8    prices offered by NETFLIX, or by any other ON-LINE DVD rental company, on

9    BLOCKBUSTER's profits or revenues derived from BLOCKBUSTERONLINE.

10   **REQUEST FOR PRODUCTION NO. 95:**

11       All DOCUMENTS RELATING TO the actual or potential effect of on-demand

12   distribution of movies by cable television providers on BLOCKBUSTER's profits or revenues

13   derived from IN-STORE DVD rentals.

14   **REQUEST FOR PRODUCTION NO. 96:**

15       All DOCUMENTS RELATING TO the effect of distribution of movies over the internet

16   on BLOCKBUSTER's profits or revenues derived from IN-STORE DVD rentals.

17   **REQUEST FOR PRODUCTION NO. 97:**

18       All DOCUMENTS RELATING TO the effect of on-demand distribution of movies by

19   cable television providers on BLOCKBUSTER's profits or revenues derived from

20   BLOCKBUSTERONLINE.

21   **REQUEST FOR PRODUCTION NO. 98:**

22       All DOCUMENTS RELATING TO the effect of distribution of movies over the internet

23   on BLOCKBUSTER's profits or revenues derived from BLOCKBUSTERONELINE.

24   **REQUEST FOR PRODUCTION NO. 99:**

25       All DOCUMENTS RELATING TO BLOCKBUSTER's consideration of competitive

26   threats to BLOCKBUSTER's profits or revenues derived from IN-STORE rentals of DVDs.

27   **REQUEST FOR PRODUCTION NO. 100:**

28       All DOCUMENTS RELATING TO BLOCKBUSTER's consideration of competitive

379754.01

1     threats to BLOCKBUSTER's profits or revenues derived from BLOCKBUSTERONLINE.

2     **REQUEST FOR PRODUCTION NO. 101:**

3         All DOCUMENTS RELATING TO each business transaction, if any, that

4     BLOCKBUSTER contends was not consummated because of this litigation.

5     **REQUEST FOR PRODUCTION NO. 102:**

6         All DOCUMENTS RELATING TO each business transaction, if any, that

7     BLOCKBUSTER contends was not consummated because of the PATENTS-IN-SUIT.

8

9     Dated: August  31 , 2006                   KEKER & VAN NEST, LLP

10

11                                   By: _____

12                                     JEFFREY R. CHANIN
                                  Attorneys for Plaintiff

13                                   NETFLIX, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NETFLIX'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO BLOCKBUSTER
CASE NO. C 06 2361 WHA

379754.01

**PROOF OF SERVICE**

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

On August 31, 2006, I served the following document(s):

**NETFLIX'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO BLOCKBUSTER**

by **COURIER**, by placing a true and correct copy in a sealed envelope addressed as shown below, and dispatching a messenger from Worldwide Network, whose address is 350 S. Figueroa Street, Los Angeles, California 90071, with instructions to hand-carry the above and make delivery to the following during normal business hours, by leaving the package with the person whose name is shown or the person authorized to accept courier deliveries on behalf of the addressee.

Marshall B. Grossman, Esq.
William J. O'Brien, Esq.
Alschuler Grossman Stein & Kahan LLP
1620 26th Street, 4th Floor, North Tower
Santa Monica, CA 90404-4060

Executed on August 31, 2006, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_Diane Blais Miller_
DIANE BLAIS MILLER

PROOF OF SERVICE
CASE NO. C 06 2361 WHA

377665.01