# EXHIBIT H

LAW OFFICES
# KEKER & VAN NEST
LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

EUGENE M. PAIGE
EPAIGE@KVN.COM

September 13, 2006

**VIA FACSIMILE**

William J. O'Brien, Esq.
Alschuler Grossman Stein & Kahan LLP
1620 26th Street, 4th Floor, North Tower
Santa Monica, CA 90404-4060
Facsimile: 310-907-2000

Re:  *Netflix, Inc. v. Blockbuster, Inc.*, Case No. C-06-2361 WHA;
United States District Court for the Northern District of California

Dear Bill:

Thank you for taking the time to speak with me today. I believe that we have made some progress and hope that the parties can reach accord on the issues we discussed. I set forth my understandings of our discussions below, and ask that you let me know at your earliest convenience if I have misunderstood in any way.

**Access of In-House Counsel To AEO Documents.** Turning first to the stipulated protective order issues, Netflix would prefer that documents that are shown to in-house counsel such as Mr. Stevenson or Mr. Hyman be maintained at the offices of outside counsel, and that they be viewed only there. However, Netflix understands the distance between your offices and Mr. Stevenson's office may make that impractical. Netflix therefore proposes that AEO materials accessed by in-house counsel, whether from document productions or as part of briefing, be posted on a secure, read-only document depository site for viewing. That proposed solution should take care of Mr. Stevenson's concerns about not being able to see complete versions of briefs or critical AEO documents, while still providing appropriate protection by ensuring that the parties' competitively sensitive documents do not end up on the competitor's premises in an untethered fashion. Our IT department is certainly willing to assist with setting up such a depository if need be.

**Protective Order Provisions for Source Code.** With respect to protections for source code, it appears that a line limitation on printing source code may not work. However, as discussed, Netflix believes that a more stringent limitation on when source code can be copied or

380323.01

William O'Brien, Esq.
September 13, 2006
Page 2

printed is required than simply when the expert believes that printing or copying would be useful for the task at hand. Printing or copying only when it is to be used in an actual brief or expert report would seem to be the easiest bright-line rule for both parties to abide by, and also seems pragmatically workable, since the case will not turn on source code. If Blockbuster cannot agree to that proposal, please provide Blockbuster's proposed language for when printing or copying would be appropriate so that Netflix may consider it.

**Patent Prosecution.** I understand that Blockbuster wants a definition less stringent for the fields in which patent prosecution is barred than all patents. Netflix proposes, instead of the "online rental services" proposed by Blockbuster, any "patents on or relating to the ordering of, management of, or delivery of content through the mail or over an electronic network." Please let me know if that definition would be acceptable to Blockbuster.

**Non-Party Productions Pursuant to Subpoena.** With regards to treatment of non-party productions pursuant to subpoena, the parties appear to be in agreement that such productions should be treated as AEO for a certain time after receipt by the opposing party, so that there is a chance to designate confidential information contained in those productions. However, the parties have not agreed on the length of time to be granted for that purpose. We discussed the possibility of a sliding scale of days whereby, depending on the bulk of documents, the opposing party could have between 5 and 15 business days for designation. Please let me know whether that proposal would be acceptable.

**Use of Documents at Depositions of Non-Party Witnesses.** Blockbuster's proposal regarding allowing non-party witnesses to be shown at deposition documents produced by that non-party regardless whether they were listed as an author or recipient is acceptable to Netflix in principle. As discussed, however, Netflix would like to see the wording that Blockbuster proposes for that provision.

**Meyer Deposition Date.** I now understand that Blockbuster is potentially still interested in going forward on September 25th with Mr. Meyer's deposition. As both that date and the September 22nd date are fast approaching, I would ask that you confirm one of those dates immediately, or alternatively let me know that October dates are needed, so that all involved can set their schedules.

Turning to Netflix's objections to Blockbuster's subpoenas to non-parties, my understanding is that Blockbuster is going to consider narrowing some of the categories of documents requested, as discussed below.

**All of Netflix's Financial Documents (Request Number 1).** Netflix does not believe that all of the financial documents that may have been sent to its business partners could possibly be relevant to this case. For example, documents about revenues from sales of used DVDs, to the extent they were in the possession of business partners, would certainly not have any bearing on any issue in the case. I understand from our conversation that Blockbuster is taking the

William O'Brien, Esq.
September 13, 2006
Page 3

position that it is not aware of anything that Netflix does as part of its business that is not relevant to the case in terms of possible use in a damages model. Given that these documents are being sought by its direct competitor, Netflix believes that attenuated theories of relevance based on possible uses for damages are insufficient to justify the production of every single financial document called for by this overbroad request. The parties plainly have a disagreement here, and Netflix asks that Blockbuster reconsider narrowing its request for financial documents to those that could in fact be relevant to the issues in this case.

**All of Netflix's Business Plans (Request Number 2/Request Number 5).** Both of these requests appear to be of a piece, in that they are fishing expeditions by Blockbuster into any business plans whatsoever that Netflix may have shared in confidence with its business partners, whether past, present, or future, and whether they relate in any way to the business methods at issue in this case. Blockbuster's suggestion that Netflix should state the nature of irrelevant future plans that would be covered by this definition, but should not be revealed, is self-defeating; Netflix cannot safeguard its competitively sensitive information by sharing the nature of that information with one of its competitors. I understand that Blockbuster has agreed to see if these two requests could be narrowed to encompass materials that could be relevant to the case.

**Netflix's Intellectual Property (Request Number 4).** Netflix does not believe that documents relating to its intellectual property other than the patents-in-suit are relevant, and in our conversation I did not get the impression that Blockbuster had any particular reason to believe that Netflix's copyrights or trademarks were in any way relevant to the case. I understand that Blockbuster will consider narrowing this request by eliminating the final clause.

**Prior Art Documents With No Date Limitation (Request Number 8).** The materials that Blockbuster seeks here appear designed to relate to what Netflix allegedly knew about prior art. However, because no temporal limit is imposed, the request would appear literally to call for every document regarding what Netflix does today. I understand that Blockbuster will consider limiting this request so that it excludes documents relating to what Netflix does or has done after April 28, 1999.

**So-Called "Throttling" Documents (Request Numbers 16-17 and 1-7 in Gutride Safier Subpoena).** Blockbuster has taken the position that these documents are relevant because it will claim that Netflix's allegedly deceptive practices represent anticompetitive conduct. As I noted in our conversation, there is nary a hint of that anywhere in either the counterclaims that Blockbuster originally filed or the counterclaims that are now operative. Accordingly, that argument does not serve as a hook for seeking these documents. With respect to Blockbuster's argument that so-called "throttling" demonstrates that Netflix did not reveal the "best mode" of practicing the method disclosed in its patents, that appears similarly to be little more than a fig leaf on Blockbuster's attempt to gather documents that it believes would embarrass Netflix.

**Timing of Netflix's Motion for Protective Order.** As I noted on the phone this morning, I am going to be traveling tomorrow, and in a deposition on Friday. Accordingly, it

380323.01

William O'Brien, Esq.
September 13, 2006
Page 4

may be difficult for us to confer over the next few days on these issues. As also stated, our extension of time for the "non-waiver" stipulation between the parties expires this Friday. I appreciate that Blockbuster is willing to extend that non-waiver stipulation to and including next Friday, September 22nd, and hereby accept that offer. However, as we also discussed, there is a second factor to must be taken into account in filing a motion, which is that non-parties (whose short-fuse subpoena return dates have already passed) may begin producing documents pursuant to the subpoenas. Moreover, it will take a certain amount of time for a motion to come on for hearing, during which time non-parties may feel pressured to produce their documents. Accordingly, in order to address these concerns, Netflix asks that Blockbuster agree to two further points. First, that Blockbuster will treat any documents received from non-parties as AEO until such time as Netflix has had at least the five calendar days that Blockbuster currently proposes to designate the documents for confidentiality (Netflix believes that period to be too short for purposes of a final agreement, but is willing to agree to it for purposes of avoiding dispute over an interim stipulation). Second, that Blockbuster will agree to stipulate that the hearing on a motion for protective order, if any, that eventually is filed can be noticed for October 20 (which is the date that a motion filed this Friday could be noticed), with the parties to confer on a mutually agreeable briefing schedule working backwards from that noticed hearing date. If Blockbuster is willing to stipulate to those two additional points, Netflix would not need to file a motion on Friday. Please let me know at your earliest convenience whether Blockbuster is willing to stipulate to those two points.

      Thank you for your attention to these matters, and please do not hesitate to contact me should you wish to discuss them further.

                          Sincerely,

                          Eugene M. Paige

380323.01