1  KEKER & VAN NEST, LLP
   JEFFREY R. CHANIN - #103649
2  DARALYN J. DURIE - #169825
   710 Sansome Street
3  San Francisco, CA 94111-1704
   Telephone: (415) 391-5400
4  Facsimile: (415) 397-7188

5  Attorneys for Plaintiff
   NETFLIX, INC.
6

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11 | NETFLIX, INC., a Delaware corporation, | Case No. C 06 2361 WHA |
|---|---|
12 | Plaintiff, | **NETFLIX'S NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER RE: NON-PARTY SUBPOENAS** |
13 | v. | |
14 | BLOCKBUSTER, INC., a Delaware corporation, DOES 1-50, | Date: December 8, 2006<br>Time: 9:30 a.m.<br>Judge: Hon. Joseph C. Spero<br>Room: Courtroom A, 15th Floor |
15 | | |
16 | Defendant. | |

17

_____
NETFLIX'S MOTION FOR PROTECTIVE ORDER
CASE NO. C 06 2361 WHA

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................................ ii

NOTICE OF MOTION.........................................................................................................................1

PRELIMINARY STATEMENT ..........................................................................................................1

FACTS .................................................................................................................................................5

ARGUMENT........................................................................................................................................7

      A.      Blockbuster Seeks To Obtain From Non-Parties Documents Unrelated To Its Claims, But Useful For Its Competition with Netflix. .................................7

      B.      Blockbuster's Demand for Information About So-Called "Throttling" Is Irrelevant To Any Issue In the Case, and is Intended Only To Embarrass Netflix. ..................................................................................................11

CONCLUSION...................................................................................................................................14

**TABLE OF AUTHORITIES**

Dart Industrial Co. v. Westwood Chemical Co.
    649 F.2d 646 (9th Cir. 1980) .......................................................................................7

Del Campo v. Kennedy
    236 F.R.D. 454 (N.D. Cal. 2006) ................................................................................7

Fonar Corp. v. General Electric Co.
    107 F.3d 1543, 1549 (Fed. Cir. 1997) ..................................................................12, 13

Moon v. SCP Pool Corp.
    232 F.R.D. 633 (E.D. Cal. 2005) ..............................................................................11

**FEDERAL STATUTES**

Fed. R. Civ. P. 26(c) .................................................................................................................7

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on December 8, 2006, at 9:30 a.m. before the Honorable Joseph C. Spero, in Courtroom A, 15th Floor of the United States Court House located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff Netflix, Inc. ("Netflix") will, and hereby does, move the Court for a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points of Authorities below; the declarations of Jeffrey R. Chanin, Eugene M. Paige, Charlotte Falla, and Neil Hunt in support of this motion; all pleadings and papers filed herein; oral argument of counsel; and any other matter that may be submitted at the hearing.

**PRELIMINARY STATEMENT**

On April 4, 2006, plaintiff Netflix, Inc. ("Netflix") sued Blockbuster, Inc. ("Blockbuster") for its deliberate infringement of Netflix's patented business model and system for the on-line rental of DVDs. Lacking any legitimate non-infringement defense, Blockbuster counter-attacked, claiming that Netflix engaged in a *Walker Process* fraud by deliberately withholding prior art from the Patent & Trademark Office in order to procure an invalid patent, and had filed this suit as sham infringement litigation. While such a response unfortunately could be expected from Blockbuster, the 800-pound gorilla in the movie-rental business, Blockbuster's accompanying scorched-earth discovery tactics directed at numerous, non-party Netflix business partners to end-run Netflix have overstepped the line. Netflix seeks a protective order pursuant to Federal Rule of Civil Procedure 26(c) to safeguard Netflix's confidential business information from overly intrusive discovery, to prevent undue harassment of Netflix and its business partners, and to bring reason and reasonable limits to discovery in this case before it spirals out of hand.

On August 25, 2006, the week before the Labor Day Holiday, Blockbuster served 18 subpoenas on non-party entities and professionals with whom Netflix does business or with whom Netflix has litigated, ranging from the movie studios whose movies Netflix purchases and rents to customers, to law firms that have represented Netflix, to a law firm that was adverse to

Netflix in unrelated consumer litigation. These pre-Labor Day subpoenas are incredibly broad, and for the most part were issued with return dates that provided a scant 14 calendar days to object or comply. The subpoenas were issued prior to the entry of a protective order covering the designation and treatment of confidential information in this case, and called for the return of documents prior to the time that any such order would be entered.

Blockbuster's *modus operandi* has now been made plain. Netflix is Blockbuster's key competitor. But, rather than seek competitive Netflix information from Netflix in the first instance -- which would enable Netflix to object, where appropriate -- Blockbuster seeks to end-run Netflix by subpoenaing reams of Netflix's competitive information that has no plausible relevance to this case from non-parties. Some of the requests also seek information regarding a Netflix practice of allocating DVDs among customers where demand outstrips supply that has nothing whatsoever to do with the patent claims or *Walker Process* counterclaims in this case, but which was the subject of an unrelated consumer class action. Blockbuster's gamesmanship in sending out short-fuse subpoenas to non-parties broadly seeking vast swaths of documents that it has *not even so much as requested from Netflix itself*, many of which contain confidential, competitive information that is not relevant to any issue in this case, and some of which are simply designed to harass and embarrass Netflix, should be rejected.

Netflix therefore requests that this Court enter a protective order to protect the non-parties and Netflix from the overreaching nature of some of Blockbuster's overbroad and irrelevant document requests. The non-party document requests (15 out of a total of more than 100 demands) to which Netflix objects herein on grounds of over breadth, burden, and relevance (as framed), are the following:

**Subpoenas to NBC Universal, Yahoo, Sony Pictures, Paramount Pictures, The Walt Disney Company, Warner Bros., Best Buy, Fox Entertainment, AOL, and Microsoft:**[1]

No. 1. *All* financial statements, revenue statements, or financial or business projections received from NETFLIX.

---

[1] A true and correct copy of Blockbuster's subpoena to Sony Pictures Entertainment, Inc., the requests contained in which are substantively identical to the other nine entities listed here, is attached as Exhibit B to the Declaration of Eugene M. Paige in Support of Netflix's Motion for Protective Order ("Paige Decl."). *See* Paige Decl. ¶ 4 & Ex. B.

No. 2. *All* DOCUMENTS evidencing, reflecting, or referring to NETFLIX's online business plans, business models, business proposals, strategies or projections.

No. 4. *All* DOCUMENTS evidencing, reflecting, or referring to COMMUNICATIONS with NETFLIX, or information received from NETFLIX about . . . any intellectual property owned or claimed by Netflix.

No. 5. *All* DOCUMENTS evidencing, reflecting, or referring to the history, design, development, features, or operations of any online rental service ever proposed, planned, or operated by Netflix.

No. 8. *All* DOCUMENTS evidencing, reflecting or referring to any use, practice, description, disclosure, or knowledge by NETFLIX of any of the following:

   a. Distribution or circulation of video or films on a subscription basis;

   b. Distribution or circulation of music or audio on a subscription basis;

   c. Distribution or circulation of books on a subscription basis;

   d. Use of waiting lists, wish lists or reservation lists for video or item rental;

   e. A movie rental queue or other item rental queue, including, without limitation, any ordered list, associated with a customer, of movies or items for rent, whether in electronic digital form or otherwise.

   f. Movie rental in which a customer was not required to return movies within a specified time;

   g. Movie rental with no late fee;

   h. A rental agreement that provided for a periodic fee;

   i. Rental of movies in which the number of movies delivered to the customer and not yet returned did not exceed a specified number;

   j. In response to receiving back any item provided to a customer, selecting one or more other items for shipment to the customer; or

   k. Providing rental items based on the order of a list established by a customer.

No. 9. *All* COMMUNICATIONS with NETFLIX, or DOCUMENTS received from NETFLIX, that refer to any of the following:

   a. Any subscription methods, systems, and publications prior to NETFLIX's Marquee Program or prior to April 28, 1999;

   b. HBO, Showtime, or any subscription cable or satellite television service or pay television service;

  c. TiVo;

  d. Webvan, Home Grocer.com, or any Internet grocery service;

  e. Amazon.com;

  f. Buy.com;

  g. eBay; or

  h. Priceline.

No. 16. *All* DOCUMENTS evidencing, reflecting, or referring to COMMUNICATIONS with NETFLIX, or information received from NETFLIX, about CHAVEZ V. NETFLIX.

No. 17. *All* DOCUMENTS evidencing, reflecting, or referring to any use by NETFLIX of any practices known or described as "throttling," including, without limitation, any variation in the speed or priority of fulfilling a customer's rental request based, in whole or in part, in the number or frequency of items rented by the customer.

**Subpoena to Gutride Safier LLP:**[2]

No. 1. *All* DOCUMENTS filed or lodged with the court in CHAVEZ v. NETFLIX, served on any party, person, or entity as part of CHAVEZ v. NETFLIX, or produced for inspection, formally or informally, in connection with that case.

No. 2 *All* interrogatories, requests for production, and requests for admission served in CHAVEZ v. NETFLIX and all responses thereto, including all DOCUMENTS produced.

No. 3. *All* transcripts or other records of any discovery, hearings, or other proceedings in CHAVEZ v. NETFLIX.

No. 4. *All* DOCUMENTS evidencing, reflecting, or referring to COMMUNICATIONS between the parties in CHAVEZ v. NETFLIX or their respective counsel.

No. 5. *All* DOCUMENTS evidencing, reflecting, or referring to terms or conditions of any settlement of CHAVEZ v. NETFLIX.

No. 6. *All* DOCUMENTS evidencing, reflecting, or referring to settlement negotiations concerning CHAVEZ v. NETFLIX.

No. 7. (same as number 17 above)

No. 8. *All* DOCUMENTS evidencing, reflecting, or referring to COMMUNICATIONS with NETFLIX or information received from NETFLIX.

---

[2] A true and correct copy of this subpoena is attached as Exhibit D to the Paige Declaration. *See* Paige Decl. ¶ 6 & Ex. D.

# FACTS

Netflix filed this action on April 4, 2006, alleging that Blockbuster's on-line rental methods and system infringed two of Netflix's United States Patents, Nos. 7,024,381 ("the '381 Patent") and 6,584,450 ("the '450 Patent"). On June 13, 2006, Blockbuster responded with counterclaims alleging that Netflix had obtained its patents fraudulently and was engaging in sham litigation to enforce them in violation of the antitrust laws -- so-called *Walker Process* and sham litigation claims. Shortly thereafter, Blockbuster served requests on Netflix to produce 134 categories of documents relating to its invalidity defenses and antitrust counterclaims. *See* Paige Decl. ¶ 2 & Ex. A. Notably, the document requests served on Netflix did not seek the overbroad discovery of "all Netflix financial statements," "all Netflix business plans," "any rental service ever proposed or planned by Netflix," or "all communications about any intellectual property owned or claimed by Netflix," that Blockbuster has demanded from subpoenaed non-parties, who may have no or little interest in safeguarding confidential Netflix information from overbroad discovery by Netflix's foremost competitor.

On the evening of Friday, August 25th, Blockbuster gave notice that it had issued 18 subpoenas to non-parties who either have business dealings with Netflix, have represented Netflix, or have litigated against Netflix. *See* Paige Decl. ¶ 3. The vast majority of these subpoenas demanded the production of documents within two weeks, on September 8, 2006, just after the Labor Day Holiday. *See id.*

Blockbuster's third-party document requests are numerous, and in some cases breathtakingly overbroad. Blockbuster's subpoenas to Netflix's law firms, for example, contain no less than *108 document requests*. *See id.* at ¶ 5 & Ex. C. Blockbuster's subpoenas to Netflix's business partners likewise contain vastly overbroad requests, such as for "all financial statements, revenue statements, or financial or business projections received from NETFLIX," and "all DOCUMENTS evidencing, reflecting, or referring to COMMUNICATIONS with NETFLIX, or information received from NETFLIX about, . . . any intellectual property owned or claimed by Netflix," and even "all DOCUMENTS evidencing, reflecting, or referring to COMMUNICATIONS with NETFLIX, or information received from NETFLIX." These

requests evince no effort whatsoever by Blockbuster to narrow the requests to categories of information relevant to Netflix's patent infringement claims or to Blockbuster's *Walker Process*/sham litigation counterclaims and defenses, which categories are, in fact, covered by Blockbuster's more specific requests. During meet and confer discussions about these requests, Blockbuster's counsel could not even articulate what relevant information Blockbuster was seeking that was not already covered by Blockbuster's other, narrower requests, or that could not be obtained from Netflix with appropriately narrowed requests. *See* Declaration of Jeffrey R. Chanin in Support of Netflix's Motion for Protective Order ("Chanin Decl.") at ¶ 3.

Blockbuster's subpoenas also seek to dredge up past, but settled, claims alleged in a consumer class-action relating to Netflix's alleged failure to disclose that, <u>after</u> the patents in suit were applied for, Netflix instituted a practice to vary the speed or priority of fulfilling a customer's rental request in the event that demand for a DVD title outstripped supply based on the number or frequency of items rented by its customers, a practice that the consumer attorneys derogatorily characterized as "throttling." *See* Paige Decl. ¶ 6 & Ex. D. As set forth below, however, Blockbuster has not alleged "throttling" as the basis for any counterclaim or defense in either its initial or First Amended Answer and Counterclaims, and neither the consumer lawsuit, nor any practice to vary the speed or priority with which Netflix fulfills a customer's rental request based on a customer's rental frequency, bears any relevance whatsoever to *any* other claim or defense asserted in this case.

The parties have engaged in substantial meet and confer discussions beginning on September 7, 2006 regarding the over breadth and irrelevancy of the requests in the subpoenas objected to herein. *See* Paige Decl. ¶¶ 7-10. As of the filing of this Motion, and notwithstanding several telephonic discussions, followed by an in-person meet and confer on September 22, 2006, followed by two more telephonic conferences, Blockbuster has been unwilling to withdraw or narrow the 15 requests at issue in this Motion. *See* Chanin Decl. ¶ 5. Netflix, therefore, asks this Court to issue a protective order providing that Blockbuster withdraw certain of its overbroad requests to non-parties, and narrow others as set forth herein. Such an order is necessary to (i) ease the burden of collection and production upon the non-parties that have been

1  subpoenaed, (ii) protect Netflix from harassing discovery of its confidential, but irrelevant

2  information, and (iii) save Netflix from the burden of having to review and designate numerous

3  documents protected by third parties that contain no relevant information or where any relevant

4  information could be obtained through narrower requests.

5        This Motion was originally scheduled to be noticed for November 17 to accommodate

6  Blockbuster's counsel.  Subsequently, the parties agreed to notice this motion for December 8 so

7  that all discovery motions could be heard on the same date.  The parties have agreed that the

8  subpoenaed third parties need not produce any documents until at least ten business days after

9  this Motion is decided.  *Id.* ¶ 6 & Ex. A.

## ARGUMENT

11       This Court has the authority to issue orders controlling discovery "to protect a party or

12 person from annoyance, embarrassment, oppression, or undue burden or expense," including

13 orders that require that certain "discovery not be had" or that "confidential . . . commercial

14 information not be revealed or be revealed only in a designated way."  Fed. R. Civ. P. 26(c); *see*

15 *also Del Campo v. Kennedy*, 236 F.R.D. 454 (N.D. Cal. 2006) ("Defendants have standing as a

16 party to show good cause why the court should issue a protective order. . . . Defendants have

17 moved alternatively for a protective order under Rule 26(c) as a basis to challenge the subpoena

18 served on non-party Safeway.  Accordingly, Defendants have standing to bring this motion.").

19 Moreover, the Ninth Circuit has expressly recognized that restrictions on discovery "may be

20 broader when a nonparty is the target of discovery."  *Dart Indus. Co. v. Westwood Chem. Co.*,

21 649 F.2d 646, 649 (9th Cir. 1980).  As explained below, good cause surely exists for the order

22 that Netflix requests by way of this motion.

23 **A.  Blockbuster Seeks To Obtain From Non-Parties Documents Unrelated To Its Claims, But Useful For Its Competition with Netflix.**

24

25       Blockbuster's subpoenas to Netflix's studio and business partners contain far reaching

26 demands for documents that are likely to contain Netflix's competitive plans, financial

27 information, know-how, and other competitive information, including:

28       •       All of Netflix's on line business plans, business proposals, strategies and

projections;

- All of Netflix's financial statements, revenue statements, or financial or business projections;

- Any online rental service ever proposed or planned by Netflix;

- All Netflix know-how regarding the distribution of videos or films on a subscription basis;

- All communications with Netflix about any subscription cable or satellite television service, or pay television service;

- All communications with Netflix about any intellectual property it owns or claims;

- How Netflix allocates movies among its customers when demand outstrips supply; and

- All communications with Netflix on any subject whatsoever.

*See* Paige Decl. ¶ 11.

Blockbuster apparently determined that it would reserve overbroad requests like these for subpoenas to non-parties with whom Netflix does business, rather than to Netflix itself -- the party which has the most immediate interest in maintaining the confidentiality of Netflix's information and safeguarding it from misuse by its direct competitor.

Whether Blockbuster was hoping that the subpoenaed parties would not bother to object, or would simply turn over all the documents they possess before a protective order could be entered, Blockbuster's overbroad requests are oppressive, annoying, and will impose undue burden and expense on the non-parties and on Netflix, while exposing irrelevant, but competitive Netflix confidential information to scrutiny by its key competitors (or its counsel). This Court should not countenance Blockbuster's tactics and should issue a protective order that permits Netflix a reasonable opportunity to designate its information subpoenaed from non-parties by its key competitor.

The requests to which Netflix objects are far from targeted at Netflix's patent claims or patent prosecution, and they encompass far more than might lead to the discovery of admissible evidence to prove Blockbuster's *Walker Process*/sham-litigation antitrust counterclaims, which are premised on Netflix's alleged deliberate failure to disclose to the PTO prior art believed by

1 Netflix to be material to patentability.

2     Blockbuster has demanded from Netflix's business partners *all* "financial statements,
3 revenue statements, or financial and business projections" received from Netflix, and *all* of
4 Netflix's "online business plans, business models, business proposals, strategies or projections,"
5 and documents relating to "*any* online rental service *ever proposed*, planned or operated by
6 Netflix," and *all* communications with Netflix relating to "*any* intellectual property owned or
7 claimed by Netflix," and the like. *See* Paige Decl. Ex. B at Request Nos. 1, 2, 4, and 5.

8     Blockbuster also broadly demands that the non-parties produce a large number of
9 documents relating to all manner of things that Netflix is aware of or does, without limiting the
10 time frame for such requests to a relevant time period. *See* Paige Decl. Ex. B at Request No. 8.
11 Multi-part Request No. 8, for example, might be relevant if it sought information relating to
12 Netflix's on-line rental practices prior to April 28, 1999 (possibly to prove an "on-sale" bar), or
13 to what Netflix later knew during its prosecution of the patents about potentially material prior
14 art existing prior to April 28, 1999, but Blockbuster's Request No. 8 is not so limited. Instead, it
15 literally encompasses nearly everything known to or done by Netflix up to the present day, thus
16 rendering it grossly overbroad.

17     While it is possible that some iota of information relevant to Netflix's claims and
18 Blockbuster's defenses and counterclaims might be found among the materials responsive to
19 these overbroad requests, numerous other requests in Blockbuster's subpoenas, to which Netflix
20 is *not* objecting, more narrowly request such information. These include, for example,
21 Blockbuster's requests for communications about Netflix's patents or patent applications;
22 information received from Netflix a year or more before the April 28, 2000 patent application
23 date relating to prior art; Netflix's own potential use and disclosure or sale of the inventions; and
24 Netflix's knowledge of potentially material prior art. *See, e.g.*, Paige Decl. Ex. B at Request
25 Nos. 6, 7, 8, 11, and 12. The overbroad requests to which Netflix objects, however, amount to a
26 burdensome, ocean-wide fishing expedition by Blockbuster -- Netflix's direct competitor -- into
27 Netflix's competitive information.

28     The over breadth of the document requests to which Netflix objects is plain on the face of

1  the requests themselves.  As Netflix attorney Charlotte Falla explains, the types of documents

2  responsive to these overbroad requests possessed by Netflix's business partners under

3  agreements of confidentiality would include Netflix's future plans for the delivery of programs

4  and movies; data about Netflix's sales of used DVDs; information about the revenue-sharing

5  agreements that are in place between Netflix and the studios; discussions of the effectiveness of

6  Netflix's promotional campaigns; and prototypes of features that Netflix may use on its website

7  in the future -- none of which are relevant to this case, but all of which could be put to

8  competitive advantage were Blockbuster to obtain it.  *See* Declaration of Charlotte Falla in

9  Support of Netflix's Motion for Protective Order ("Falla Decl.") ¶ 4.  Netflix cannot provide

10 more detail about this sort of competitive information without frustrating the very purpose of the

11 protective order it seeks.  *See* Falla Decl. ¶ 5.

12        Netflix's future plans for the delivery of program and movie content, and the proposed

13 features that may in the future be added to Netflix's website, have no conceivable relevance to

14 this case.  This litigation is about the business-method patents Blockbuster is currently infringing

15 (and that Blockbuster claims Netflix wrongfully obtained), not about what Netflix plans to do

16 next.  Similarly, the patents at issue claim methods and systems for renting DVDs through a

17 subscription model, not for selling used DVDs.  The terms of revenue sharing that exist between

18 Netflix and the movie studios who have rights to the DVDs that Netflix (and Blockbuster) rent,

19 though surely of interest to Blockbuster, in no way concerns whether Blockbuster is infringing

20 Netflix's patents, or whether Netflix obtained those patents wrongfully.  Similarly, Blockbuster

21 has failed to articulate how the results of promotions conducted by Netflix in the past are

22 relevant to this case.

23        Netflix anticipates that Blockbuster will claim that all of these sorts of documents could

24 in some way be relevant to calculating Netflix's damages from Blockbuster's infringement, but

25 information needed to calculate damages can be obtained by far less intrusive means.  For

26 example, while Netflix's revenue-share payments to movie studios make up a part of Netflix's

27 costs, Netflix is a public company, and its overall costs -- which *would* be relevant to calculating

28 Netflix's damages -- can be discovered from public documents, or from other records possessed

1  by Netflix that do not reveal Netflix's individual agreements and terms struck with the same
2  movie studios from whom Blockbuster obtains DVDs.[3]

3        The harm that would come to Netflix from having these confidential business
4  arrangements revealed to Blockbuster is manifest: it would provide Netflix's main competitor
5  with reams of information about the manner in which Netflix seeks to compete with it, Netflix's
6  future business plans, and the terms and conditions of agreements that it has reached with the
7  studios with which both companies deal.  Perhaps less obvious, but just as much a harm, is the
8  fact that being forced to comply with these overbroad subpoenas would impose heavy burdens
9  on those studios that do business with Netflix.  *See* Falla Decl. ¶ 6.  That would potentially chill
10 the relationship between the companies.  Moreover, the movie studios, retailers, and ISPs that
11 Blockbuster has subpoenaed should not be expected to champion the protection of Netflix's
12 competitively sensitive, but irrelevant, information from being reviewed by Netflix's competitor.
13 Blockbuster should first have requested the information, or a relevant subset thereof, from
14 Netflix itself, so that Netflix could protect its competitive interests, and avoid undue oppression
15 of its business partners by a litigation adversary.  *See, e.g.*, *Moon v. SCP Pool Corp.*, 232 F.R.D.
16 633, 638 (E.D. Cal. 2005) ("Since plaintiffs have not shown they have attempted to obtain these
17 documents from defendant, the Court finds that, at this time, requiring nonparty KSA to produce
18 these documents is an undue burden on nonparty KSA").

19       To remedy this situation, the proposed protective order provides that Blockbuster must
20 withdraw Request Nos. 1, 2, and 5 from its subpoenas to Netflix's movie studio, retailer and ISP
21 business partners, and must narrow Requests 4, 8 and 9 as described in the proposed order.

**B.    Blockbuster's Demand for Information About So-Called "Throttling" Is Irrelevant To Any Issue In the Case, and is Intended Only To Embarrass Netflix.**

24       Each of Blockbuster's subpoenas to Netflix's movie studio, retailer and ISP business
25 partners, and that to the Gutride Safier law firm, seeks documents relating to litigation recently

---

[3] Such information cannot be relevant to Blockbuster's alleged damages should it prove its *Walker Process* claim, as Blockbuster has not been deterred from entering the market by reason of Netflix's patents, nor can it prove any other damages from the information it seeks, should Netflix's patents have been wrongfully obtained.

1  resolved by Netflix captioned *Chavez v. Netflix*, as well as documents relating to the allegations
2  in *Chavez* that Netflix's system of allocating DVDs between customers when demand outstrips
3  supply amounts to "throttling." Throttling is a derogatory term coined by the *Chavez* plaintiffs to
4  describe varying the "speed or priority of fulfilling a customer's rental request based, in whole or
5  in part, on the number or frequency of items rented by the customer." *See* Paige Decl. Ex. B, at
6  Request No. 17. Whether or not Netflix varies the speed or priority of fulfilling a customer's
7  rental request based, in whole or in part, on the frequency of DVDs rented by the customer,
8  however, has no conceivable relevance to this case, and Blockbuster's claims of relevance are
9  baseless.
10      When asked to explain any possible relevance in meet and confer discussions,
11 Blockbuster first claimed that the requested documents could be relevant to a "best mode" patent
12 invalidity defense. *See* Chanin Decl. ¶ 4. However, the best mode inquiry involves the question
13 whether, "<u>at the time an applicant filed an application</u> for a patent, he or she had a best mode of
14 practicing <u>the invention</u>," and if so, "whether the best mode was disclosed in sufficient detail to
15 allow one skilled in the art to practice it." *Fonar Corp. v. General Electric Co.*, 107 F.3d 1543,
16 1548 (Fed. Cir. 1997) (emphasis added). Blockbuster's "best mode" relevance argument fails
17 because the information it seeks would not tend to prove either of the underscored elements of a
18 best mode defense. Netflix takes them up in reverse order.
19      First, Netflix's "invention" does not include so-called "throttling"; none of the method or
20 system claims in the Netflix patents in suit is directed towards the manner in which DVDs might
21 be allocated between customers in the event that demand for a particular item exceeds the supply
22 of that item, nor are there any asserted claims directed to the speed with which an item should be
23 delivered under any circumstances. Since Netflix did not claim to have invented, and did not
24 seek to patent, any method or system for varying the speed or priority of a customer's rental
25 request based on the frequency of a customer's DVD rental, it had no obligation to disclose the
26 "best mode," or indeed any mode for doing so. Though Blockbuster claims relevance to "best
27 mode," it comes as no surprise that Blockbuster's "throttling" requests are in no way limited to
28 the applicable time, but instead seek documents relating to an alleged practices of allocation

existing at any time, and more broadly to a lawsuit challenging Netflix's allocation practices filed long after the patent application date.[4]

Second, even if, *arguendo,* Netflix had claimed a mode of allocation or speed of delivery, the only time period that could possibly be relevant to a best mode defense, as a matter of law, is the time prior to the date the patent application was filed.  The application date for both patents-in-suit was April 28, 2000.  As of and prior to that date, Netflix had no practice at all to vary the speed or priority of fulfilling a customer's rental request based, in whole or in part, on the number or frequency of items rented by the customer (providing one very good reason why no patent claim or claim element was directed to such an invention).  *See* Declaration of Neil D. Hunt in Support of Netflix's Motion for Protective Order at ¶ 3**.**  Given that Netflix described no claim or claim element in its patents for *any* mode of allocating scarce DVDs, and did not practice the allocation mode as to which Blockbuster has issued numerous document requests, Blockbuster has no basis to subpoena such documents from non-parties (or Netflix), except to obtain information that Blockbuster might try to use to embarrass Netflix.

Finally, the discovery that Blockbuster seeks from non-parties supposedly to unearth a possible "best mode" defense is far too broad.  If what Blockbuster seeks is evidence that Netflix failed to disclose its "best mode" for throttling, it can surely get that through discovery of Netflix's source code used to implement Netflix's methodology at the time of the patent application; it has no need to troll through files of the Gutride law firm or subpoena Netflix's business partners to discover such facts.  "As a general rule, where software constitutes part of a best mode of carrying out an invention, description of such a best mode is satisfied by disclosure of the functions of the software."  *Fonar*, 107 F.3d at 1549.  In short, even if Netflix's allocation practices were conceivably relevant to a "best mode" defense in this case, Blockbuster has again sought to discover the needle by demanding the haystack.  Blockbuster does not need the Gutride firm to produce "all documents evidencing, reflecting, or referring to communications with Netflix or information received by Netflix," without regard to subject matter, in order to prove

---

[4] Should discovery be permitted (and it should not be in light of the lack of any claim to have invented the practice that Blockbuster seeks to discover), it should be limited to information

1  "best mode" or any other matter in this lawsuit.

2      Blockbuster has also claimed, without further explanation, that Netflix's alleged practices
3  relating to so-called "throttling" may be relevant to Blockbuster's *Walker Process* or sham
4  litigation counterclaims.  Chanin Decl. ¶ 4.  However, both these counterclaims are based on
5  alleged withholding of known, material prior art from the Patent Office during prosecution of the
6  patents in suit -- they have nothing whatsoever to do with the *Chavez* suit or "throttling," which
7  are not so much as even mentioned in either Blockbuster's original or First Amended Answer
8  and Counterclaims.  Therefore, Blockbuster's argument for the alleged relevance on this ground
9  also plainly fails.

10      Even aggressive counter-attacks by a patent-infringement defendant must have some
11  limits.  Given the utter lack of relevance to this case of so called "throttling" information, the
12  Court should order that Blockbuster withdraw Requests 16 and 17 to the subpoenaed studios,
13  retailers and ISPs, and Requests 1-8 issued to the Gutride Safier firm.

14  **CONCLUSION**

15      For all of the foregoing reasons, this Court should enter the order proposed by Netflix to
16  exercise appropriate control over discovery in this case, to protect irrelevant Netflix confidential
17  information from disclosure to its key competitor, and to restrain Blockbuster from imposing
18  undue burdens on non-parties and Netflix.

19  Dated:  November 3, 2006                                  Respectfully submitted,

20                                                               KEKER & VAN NEST, LLP

21

22
                                          By:  _____/s/  Jeffrey R. Chanin_____
23                                                     Jeffrey R. Chanin
                                                   Attorneys For Plaintiff NETFLIX, INC.
24

25

26

27

---

28  about Netflix's practices prior to April 28, 2000.