1  KEKER & VAN NEST, LLP
   JEFFREY R. CHANIN - #103649
2  DARALYN J. DURIE - #169825
   ASHOK RAMANI - #200020
3  710 Sansome Street
   San Francisco, CA 94111-1704
4  Telephone: (415) 391-5400
   Facsimile: (415) 397-7188
5
   Attorneys for Plaintiff
6  NETFLIX, INC.

7
                          UNITED STATES DISTRICT COURT
8
                        NORTHERN DISTRICT OF CALIFORNIA
9

10

11 NETFLIX, INC., a Delaware corporation,     Case No. C 06 2361 WHA (JCS)

12                        Plaintiff,          **PLAINTIFF NETFLIX, INC.'S NOTICE
                                              OF MOTION AND MEMORANDUM OF
13       v.                                   POINTS AND AUTHORITIES IN
                                              SUPPORT OF ITS MOTION TO
14 BLOCKBUSTER, INC., a Delaware              COMPEL THE PRODUCTION OF
   corporation, DOES 1-50,                    DOCUMENTS FROM BLOCKBUSTER,
15                                            INC.**
                          Defendant.
16                                            **Date:** December 8, 2006
                                              **Time:** 9:30 a.m.
17                                            **Judge:** Hon. Joseph C. Spero

18
                                              Complaint filed:    April 4, 2006
19

20

21

22

23

24

25

26

27

28

PLAINTIFF NETFLIX, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM BLOCKBUSTER, INC.
CASE NO. C 06 2361 WHA (JCS)

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ..........................................................................................................................1

I. INTRODUCTION .....................................................................................................................1

II. FACTUAL BACKGROUND ....................................................................................................1

III. ARGUMENT .............................................................................................................................4

    1. Blockbuster Has Wrongly Refused To Produce Certain Documents Relating To Blockbuster Online ............................................4

        a. Blockbuster Should Produce Documents Identifying and Relating To the Consultants Who Designed and Implemented the Blockbuster Online Method and System ...................................................................................................5

        b. Blockbuster Should Produce Documents About Its Blockbuster Online Hardware and Software ..................................7

        c. Blockbuster Should Produce Documents Relating To Blockbuster Online Technology Developed By Third Parties ....................................................................................................9

        d. Blockbuster Should Produce Documents Related To Internal Discussions and Analysis of Whether To Promote Blockbuster Online In Its Brick-and-Mortar Stores ..................................................................................................10

        e. Blockbuster Should Produce Complete Explanations of its Accounting Methods for Blockbuster Online ..........................10

        f. Blockbuster Should Not Unilaterally Limit Production of Documents to those "Sufficient To Reasonably Describe." ..............................................................................................11

    2. Blockbuster Should Produce its Responsive Documents Forthwith. ..................................................................................................13

IV. CONCLUSION .......................................................................................................................14

i

PLAINTIFF NETFLIX, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM BLOCKBUSTER, INC.
CASE NO. C 06 2361 WHA (JCS)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Burlington N. & Santa Fe Ry. Co. v. United States Dist. Court*,
    408 F.3d 1142, 1148-49 (9th Cir. 2005) (quoting Fed. R. Civ. P. 26(f) .................................... 4

**Federal Cases**

Federal Rule of Civil Procedure 37 ................................................................................................ 1

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on December 8, 2006, at 9:30 a.m. before the Honorable Joseph C. Spero, in Courtroom A, 15th Floor of the United States Court House located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff Netflix, Inc. will, and hereby does, move the Court for an order compelling further responses to its requests for production of documents from Defendant Blockbuster Inc. pursuant to Federal Rule of Civil Procedure 37.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points of Authorities below; the declaration of Eugene M. Paige in support of this motion; all pleadings and papers filed herein; oral argument of counsel; and any other matter that may be submitted at the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

By this motion Netflix, Inc. ("Netflix") seeks, pursuant to Rule 37 of the Federal Rules of Civil Procedure, to compel from Blockbuster Inc. ("Blockbuster") production of documents responsive to Netflix's First Set of Requests for the Production of Documents. Blockbuster has provided inadequate responses to many of Netflix's requests.

The deficiencies in Blockbuster's responses, if left unremedied, will deprive Netflix of relevant and responsive information as described in detail below. Using a variety of techniques—from rephrasing Netflix's requests so as to produce different documents than those requested, to announcing that it will unilaterally filter the documents it produces to Netflix to provide only those that Blockbuster decides will "reasonably describe" the information requested—Blockbuster has attempted to limit its production of relevant documents that Netflix needs to prove its infringement claims, and to defend against Blockbuster's antitrust counterclaims.

**II.     FACTUAL BACKGROUND**

In 1999 Netflix invented a new way to rent DVDs to customers on a subscription basis over the Internet. The novel method and systems invented by Netflix to implement on-line, subscription movie rentals transformed Netflix from a struggling on-line start-up into a popular

1

PLAINTIFF NETFLIX, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM BLOCKBUSTER, INC.
CASE NO. C 06 2361 WHA (JCS)

1  and commercially successful company.  Netflix's new on-line method permitted subscribers to
2  create, prioritize and reprioritize their own personal list of desired DVDs on-line, which Netflix
3  would then use as a dynamic "queue" to deliver a set number (depending on the subscription) of
4  movies to the subscriber, which movies the subscriber could keep and watch at the subscriber's
5  leisure without incurring a late fee, and then return to Netflix in exchange for the next available
6  movie in the queue.  The U.S. Patent and Trademark Office awarded Netflix two patents on its
7  method and system, U.S. Patent No. 7,024,381 ("the '381 Patent") and U.S. Patent No.
8  6,584,450 ("the '450 Patent").

9  Years after Netflix pioneered this business method and system, and just after Netflix's
10  '450 patent issued, Blockbuster, the 800-pound gorilla in the movie rental industry, launched a
11  business it called "Blockbuster Online."  Blockbuster Online mimicked virtually every aspect of
12  Netflix's patented business method, including the dynamic, prioritized queue and the use of
13  subscription plans with no late fees.  In so doing, Blockbuster infringed the '381 Patent and the
14  '450 Patent.

15  Netflix sued Blockbuster for patent infringement on April 4, 2006.[1]  Blockbuster counter
16  attacked by filing antitrust counterclaims against Netflix based upon Netflix's filing of this
17  infringement suit, claiming that Netflix was attempting to monopolize what Blockbuster has
18  characterized as the market for online DVD rentals through sham litigation and the assertion of
19  fraudulently procured patents.

20  Netflix served its First Set of Requests for the Production of Documents on Blockbuster
21  on August 31, 2006.  Declaration of Eugene M. Paige in Support of Netflix's Motion to Compel
22  ("Paige Decl."), Ex. A.  In this first set of Requests, Netflix mainly sought to gain information
23  about the development, promotion and operating characteristics of Blockbuster Online, the
24  business that infringes Netflix's patents.  Thus, Netflix seeks to discover, among other things,
25  documents that would snow whether Blockbuster or its consultants studied or reverse engineered
26  Netflix's website in attempt to copy Netflix, or whether they developed specifications for

27  ―――――――――――――――――
28  [1] First Amended Complaint for Patent Infringement and Demand for Jury Trial ¶¶ 8, 9, 10, 13, 14, & 15.

2

PLAINTIFF NETFLIX, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM BLOCKBUSTER, INC.
CASE NO. C 06 2361 WHA (JCS)

1  Blockbuster Online that duplicated all, or critical aspects of, Netflix's systems?

2      Understanding the genesis of Blockbuster Online is critical to Netflix's case, as it will
3  demonstrate how and why Blockbuster came to implement a business method and system that so
4  closely resembles (indeed, appears to duplicate) Netflix's patented business method and system.
5  The how and why questions relate directly to the issues of infringement, both actual and
6  deliberate (as alleged), as well as non-obviousness.  Copying is a secondary consideration that is
7  taken into account in determining whether a patent is non-obvious.  Copying is also an important
8  factor in deciding whether infringement has been willful.

9      Netflix's Requests for Production at issue in this motion seek documents about the
10 creation and operation of Blockbuster Online, as well as Blockbuster's interactions with the
11 consultants (Accenture, IBM and others) who Blockbuster retained to create, implement and
12 operate Blockbuster Online.  Netflix requested that Blockbuster produce documents that would
13 identify each of the consultants who aided in the design, research and operation of Blockbuster
14 Online, as well as the documents exchanged between Blockbuster and its consultants relating to
15 these issues.  In order to discover and prove, through Blockbuster's own documents, how
16 Blockbuster's infringing service works, Netflix has also requested Blockbuster to produce
17 documents that will fully describe the software and hardware Blockbuster uses to implement
18 Blockbuster Online.  Netflix also requested production of Blockbuster documents regarding
19 financial matters, both to discover and prove the damages Netflix has suffered as a result of
20 Blockbuster's infringement, and to defend against Blockbuster's own claim that it suffered
21 damages, including lost profits, from alleged antitrust violations by Netflix.

22     Blockbuster served its objections and responses to Netflix's requests for production on
23 October 2, 2006.  Paige Decl. Ex. B.  Counsel for Netflix sent a detailed letter to counsel for
24 Blockbuster on October 9, 2006, requesting that Blockbuster provide more fulsome responses.
25 Paige Decl. Ex. C.  The parties met and conferred in person on these issues on October 13, 2006.
26 Paige Decl. ¶ 5.  Thereafter, Blockbuster and Netflix have held follow-up telephonic meet-and-
27 confer sessions during which most, but not all, of the issues raised at the outset were resolved.
28 Letters memorializing those meet-and-confer sessions are attached to the Paige Declaration as

1  Exhibits D and E.  The issues that remain are outlined in a joint letter signed by both counsel for
2  Netflix and counsel for Blockbuster, a copy of which is attached to the Paige Declaration as
3  Exhibit F.  This Motion describes why Netflix is entitled to the discovery documents that
4  Blockbuster still refuses to produce.

5                             **III.    ARGUMENT**

6      Discovery exists as a mechanism "for making relevant information available to the
7  litigants . . . Thus the spirit of the rules is violated when advocates attempt to use discovery tools
8  as tactical weapons rather than to expose the facts and illuminate the issues."  *Burlington N. &*
9  *Santa Fe Ry. Co. v. United States Dist. Court*, 408 F.3d 1142, 1148-49 (9th Cir. 2005) (quoting
10 Fed. R. Civ. P. 26(f) advisory committee's notes).  Judge Alsup's Supplemental Order to Order
11 Setting Initial Case Management Conference in Civil Cases ("Supplemental Order") further
12 seeks to increase the efficiency of the discovery process by requiring that the parties state
13 affirmatively, in a written response, "the full extent to which they will produce materials, and
14 shall, promptly after the production, confirm in writing that they have produced *all* such
15 materials so described that are locatable after a diligent search of *all* locations at which such
16 materials might plausibly exist."  Supplemental Order at ¶ 13.

17     As set forth with greater specificity below, Blockbuster has not complied with the letter
18 or the spirit of these discovery standards in many of its responses to Netflix's Requests for
19 Production.  In response to many of Netflix's requests, for example, Blockbuster has failed to
20 commit to producing the materials which Netflix has requested, in some cases offering to
21 produce different documents.  Blockbuster has also failed to commit to producing all documents
22 within a category, leaving Netflix to guess how Blockbuster has exercised its selection decisions
23 and whether responsive documents are being withheld or not.

24     **1.    Blockbuster Has Wrongly Refused To Produce Certain Documents Relating To Blockbuster Online**
25

26     As explained above, information about Blockbuster Online -- both how it works and how
27 it was conceived and developed -- is critical to Netflix's patent infringement allegations.
28 Blockbuster, however, has sought to limit the production of several categories of its documents

4

PLAINTIFF NETFLIX, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM BLOCKBUSTER, INC.
CASE NO. C 06 2361 WHA (JCS)

1  relating to Blockbuster Online.

        **a.    Blockbuster Should Produce Documents Identifying and Relating To the Consultants Who Designed and Implemented the Blockbuster Online Method and System**

4  Netflix has sought documents that would identify all the consultants who developed,
designed and helped implement Blockbuster Online. Netflix has reason to believe that consultants retained by Blockbuster were primarily responsible for developing, architecting and implementing Blockbuster Online, though Blockbuster may have provided some specifications for the system. In Request 36, Netflix asked that Blockbuster provide documents sufficient to identify all such consultants. *See* Paige Decl. Ex. A, Request No. 36.

Blockbuster initially responded that it would only provide documents identifying employees of specific consulting firms (Accenture and IBM) and consultant David Perkovich. *Id*. Ex. B, Response to Request No. 36. Subsequently, Blockbuster indicated that it would be willing to provide documents relating to <u>more than</u> just these three named consultants. However, it has not yet committed to providing documents relating to <u>all</u> its consultants. Blockbuster now says it need not produce the requested information because it is unclear whether, for example, photocopying vendors would be considered "consultants." But, this is just a pretext. First off, Blockbuster did not object to Request 36 either on grounds that the term "consultants" was vague, or that the categories of consultants to be identified was vague (though it objected to other terms in the Request on vagueness grounds). Second, Netflix has stated that Blockbuster should utilize a reasonable definition of the term "consultant" limited, as identified in Netflix's request, to consultants who consulted regarding the "design, research, development, testing, marketing and operation of" Blockbuster Online (which would exclude photocopying vendors). *See* Paige Decl. Ex. E at 2.

Blockbuster has also unilaterally limited its response to Request 36 to identifying only those consulting personnel who had "significant involvement" with Blockbuster Online. Yet this affords Blockbuster unbridled discretion to determine what information it will produce to Netflix in response to this Request, with the risk that a relevant individual may not be identified. For example, it is possible that an employee of one of Blockbuster's consultants had only an

5

PLAINTIFF NETFLIX, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM BLOCKBUSTER, INC.
CASE NO. C 06 2361 WHA (JCS)

1  insubstantial role relative to others in the engagement, but that such employee suggested that
2  Blockbuster should mimic some aspect of Netflix's business methods.  Blockbuster's current
3  limitation on its response would allow it to avoid producing documents identifying such a
4  person.
5      Blockbuster's response to Request 34 suffers from a similar infirmity.  In Request 34,
6  Netflix asks for Blockbuster's agreements with the consultants it hired to provide consulting
7  services or products relating to the development or operation of Blockbuster Online.  *See* Paige
8  Decl. Ex. A, Request No. 34.  Blockbuster responded that it will only produce documents
9  "sufficient to reasonably describe any agreements by Blockbuster, Inc. for consulting services"
10 provided by the named consultants, rather than the agreements and related documents themselves
11 for all such consultants.  *See* Paige Decl. Ex. B, Response to Request No. 34.  Aside from the
12 fact that Blockbuster should produce documents for all of its consultants rather than just the
13 consultants listed by name in the Request whose identities Netflix already knows, producing only
14 those documents that Blockbuster unilaterally decides are sufficient to "reasonably describe" its
15 agreements is insufficient.  It could very well be that the agreements themselves, or an addendum
16 to an agreement, or email correspondence clarifying or commenting on the scope of the work
17 agreed to be done, would disclose important information, or lead to the discovery of such
18 information.  Again, Blockbuster could withhold an agreement, addendum, clarification, or other
19 responsive documents based on its unilateral decision that it has already produced enough
20 documents "reasonably to describe" the terms and conditions of the consulting agreement
21 between the parties.
22     Likewise, Netflix asks in Request 35 for all documents exchanged between Blockbuster
23 and its consultants in connection with their consulting engagement with Blockbuster to develop
24 or operate Blockbuster Online.  *See* Paige Decl. Ex. A, Request No. 35.  Blockbuster again did
25 not commit to provide any documents from consultants not affiliated with the consulting
26 companies specifically named by Netflix, and it refused to produce <u>all</u> of the documents that
27 were exchanged between itself and any of its consultants.  Again, Blockbuster agreed only to
28 produce "documents sufficient to reasonably describe" the "services" that were rendered.  *See*

1  Paige Decl. Ex. B, Response to Request No. 35.  That is not what Netflix asked for by a long
2  stretch.
3        Blockbuster does not explain why producing the actual documents exchanged between
4  itself and the consultants would be "unduly" burdensome.  Presumably such documents would be
5  maintained by the specific group(s) within Blockbuster that worked with the consultants, and
6  Netflix believes the period of development encompassed by this request is relatively short—less
7  than two years.  Most certainly, Netflix's Request 35 is no more burdensome than Blockbuster's
8  Requests 33 and 35 to Netflix, wherein it asked Netflix to produce all materials that refer to TiVo
9  or Amazon over an eight year period, or its Requests 9 and 18 to Netflix business partners like
10  Yahoo! for all documents constituting communications with Netflix about eight topics, and all
11  documents evidencing communications with Netflix, or information received from Netflix, about
12  Blockbuster (with no further limitation) over an eight year period.  *See*, *e.g.* Blockbuster's
13  Subpoena to Yahoo!, Inc., August 26, 2006.  Blockbuster has maintained that it does not want to
14  provide routine, repetitive emails going back and forth between it and IBM, the consultants who
15  assertedly maintain the website today.  But, Netflix has offered to exclude such repetitive
16  communications from the scope of the Request, if Blockbuster can describe them.  Given that
17  offer, and subject only to that exception, Blockbuster should be ordered to produce all of the
18  actual documents that have been exchanged between itself and its consultants, not merely a
19  hand-selected subset of those documents that Blockbuster deems "reasonably sufficient."

20        **b.    Blockbuster Should Produce Documents About Its Blockbuster Online Hardware and Software**
21

22        Blockbuster's refusal to produce potentially relevant documents relating to the operation
23  and structure of Blockbuster Online can be seen in Blockbuster's responses to Requests 26 and
24  27.  In Request 26, Netflix asked Blockbuster for documents sufficient to fully describe the
25  software used by Blockbuster Online.  *See* Paige Decl. Ex. A, Request No. 26.  Blockbuster
26  responds that it will produce only documents "sufficient to reasonably describe the software used
27  for Blockbuster Online's website."  *See* Paige Decl. Ex. B, Response to Request No. 26.
28  Netflix's infringement claims, however, are not limited to Blockbuster's website or webserver

7
PLAINTIFF NETFLIX, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM BLOCKBUSTER, INC.
CASE NO. C 06 2361 WHA (JCS)

1  software.  Certain functions of Blockbuster Online which correspond with elements of Netflix's
2  patent claims may well be, and likely are, carried out in software or hardware that Blockbuster
3  may not consider to be a part of its "website."  For example, certain patent claims call for
4  "electronically updating" the movie rental queue.  Netflix has no way of knowing whether
5  documents describing Blockbuster's "website" software would show how Blockbuster Online
6  electronically updates its queue.  Blockbuster's attempt to limit its production to documents
7  relating to its website, and to documents that it decides "reasonably describe" such software,
8  deprive Netflix of the opportunity to demonstrate, through Blockbuster's own documents, how
9  certain portions of Blockbuster's website software, or other Blockbuster software, operate to
10 infringe Netflix's patents.
11         Likewise, in response to Request 27, Netflix has requested documents sufficient fully to
12 describe the hardware used to operate, support, and maintain Blockbuster Online.  *See* Paige
13 Decl. Ex. A, Request No. 27.  Blockbuster has committed to provide only documents that will be
14 "sufficient to reasonably describe the general nature of the hardware used" to operate its website.
15 *See* Paige Decl. Ex. B, Response to Request No. 27.  Once more, Netflix needs to discover
16 documents detailing how Blockbuster Online's hardware works in order fully to prepare its
17 patent infringement case, and this will most likely entail more than just documents describing the
18 hardware used to run the website alone, such as the web server(s).  As but one example, some of
19 Netflix's patent claims describe the computer-implemented step of "causing [a] selected movie
20 to be delivered to the customer."  Netflix has no way of knowing whether Blockbuster's
21 infringing system performs that function through its webserver or through other computer
22 hardware means.
23         Blockbuster has taken the position that Netflix must "clarify" these Requests.  Netflix has
24 already done what it can to set reasonable limitations, given its lack of intimate knowledge as to
25 how Blockbuster constructs its infringing system and utilizes its hardware and software.
26 Netflix's software and hardware requests already were limited to documents "sufficient to fully
27 describe" these systems, rather than seeking all documents relating to such systems.  Netflix also
28 has already stated both that it does not expect Blockbuster to produce documentation of standard

8

1  business software, like Microsoft Office, that might be used as a part of its operating systems.

2  Blockbuster, therefore, should be compelled to produce documents responsive to

3  Netflix's Requests 26 and 27 without further limitation.

4       **c.    Blockbuster Should Produce Documents Relating To Blockbuster Online Technology Developed By Third Parties**

5

6  Blockbuster has also refused to produce documents related to Blockbuster Online

7  technology that was developed by third parties.  Netflix asked for such documents in Request 31,

8  including "agreements, licenses, permissions, term sheets, memoranda of understanding, letters

9  of intent, specifications, technical descriptions, and correspondence."  *See* Paige Decl. Ex. A,

10 Request No. 31.  In subsequent conferences and correspondence, Netflix agreed to limit the

11 documents sought by this Request to those "sufficient to fully describe" Blockbuster Online's

12 third party-developed technology, including the listed subcategories of documents rather than

13 insisting on production of all such documents.  However, Blockbuster has insisted on limiting its

14 production to those documents that Blockbuster decides are "sufficient to <u>reasonably describe the

15 development of</u> Blockbuster Online."  (emphasis added)  *See* Paige Decl. Ex. B, Response to

16 Request No. 31.

17 Blockbuster's proffered response does not address what Netflix's Request 31 seeks:

18 documents relating to the <u>technologies</u> developed by third parties that Blockbuster Online has

19 licensed or otherwise obtained.  A decision by Blockbuster to pay for various patented or

20 otherwise protected technologies used in its system, and the amount paid, would be evidence the

21 jury could consider in deciding whether Blockbuster had a motive to willfully infringe Netflix's

22 patents, which cover some of the most important features of Blockbuster Online.  Moreover, to

23 the extent that Blockbuster takes the position that damages in this case should be set at a

24 reasonable royalty, rather than an award of lost profits, Netflix will need to discover the range of

25 royalties or license fees paid, and the relative importance to its system of, any other third-party

26 technology that Blockbuster has obtained.  Documents sufficient to only reasonably describe the

27 development of Blockbuster Online will not provide the necessary information.

28

9

PLAINTIFF NETFLIX, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM BLOCKBUSTER, INC.
CASE NO. C 06 2361 WHA (JCS)

         **d.    Blockbuster Should Produce Documents Related To Internal Discussions and Analysis of Whether To Promote Blockbuster Online In Its Brick-and-Mortar Stores**

Blockbuster has failed to commit to producing all of its documents constituting or relating to internal discussions that are responsive to Request 89.  This Request seeks documents relating to Blockbuster's promotion of Blockbuster Online in its bricks-and-mortar stores -- discussions that could demonstrate that Blockbuster personnel believe that Blockbuster Online competes in the same market as brick-and-mortar movie rental stores.  Blockbuster has taken a different position in its antitrust counterclaims where it seeks to prove that Netflix has "market power."  There, Blockbuster has claimed that the "relevant market" for purposes of its antitrust counterclaims is "the market for online DVD rentals and other subscription services," whereas Netflix believes the relevant market includes in-store movie rentals.  *See* Answer to First Amended Complaint & Counterclaims ¶ 90 (D.I. 43) (filed 9/11/06).  Blockbuster initially committed to produce documents sufficient to show only the promotions themselves, but not documents "relating to" those promotions as Netflix requested.  *See* Paige Decl. Ex. B, Response to Request No. 89.  Blockbuster's response would omit key documents such as discussions between Blockbuster executives of whether in-store promotion of Blockbuster Online should be undertaken, and what effect such promotion might have on overall revenues, or specifically revenues from brick-and-mortar rentals.  Although Blockbuster has indicated that it may be willing to produce <u>some</u> internal discussions of the issues relating to promotion of Blockbuster Online in its brick-and-mortar stores, it should be required to produce documents relating to such promotions so that Netflix can defend against Blockbuster's counterclaims.

         **e.    Blockbuster Should Produce Complete Explanations of its Accounting Methods for Blockbuster Online**

In Request 19, Netflix has sought documents fully describing Blockbuster's recordkeeping and accounting methods, books and records as they relate to Blockbuster Online. *See* Paige Decl. Ex. A, Request No. 19.  Blockbuster at first offered only to produce its publicly filed Forms 10-Q and 10-K, *see* Paige Decl. Ex. B, Response to Request No. 19.  Subsequently Blockbuster agreed to produce quarterly and annual financial statements for Blockbuster Online.

1  But these are far short of what Netflix has requested.  Simply producing a sampling of periodic
2  reports themselves, without also producing Blockbuster's underlying books, records and
3  documents that will fully explain how the reports and underlying books and records are
4  constructed and kept, does not provide Netflix with what it is seeking (and would render this
5  Request duplicative of several other Requests for financial documents as to which Blockbuster
6  has agreed to produce).  Request 19 seeks documents explaining Blockbuster's accounting
7  methods for its online division, where Blockbuster has only agreed to produce [some of] the
8  numbers that result from such methods.  Netflix and its experts need to understand the details of
9  Blockbuster's recordkeeping and accounting methods fully to evaluate the financial records that
10 Blockbuster is producing.  Publicly filed information and aggregations of figures will not give
11 Netflix what it needs in that regard and will greatly impede Netflix's ability to calculate Netflix's
12 lost profits and any unjust enrichment that Blockbuster has enjoyed through its infringement.
13 Netflix also needs document of Blockbuster's accounting methodology to determine
14 Blockbuster's profit margins for Blockbuster Online, which is key to both to constructing an
15 appropriate reasonable royalty analysis and to defending against Blockbuster's claim that it has
16 lost profits as a result of alleged antitrust violations by Netflix.

### f. Blockbuster Should Not Unilaterally Limit Production of Documents to those "Sufficient To Reasonably Describe."

19         Endeavoring to discover all relevant information on certain issues in this case, Netflix has
20 requested either <u>all</u> documents falling within a specific category, or documents sufficient <u>to</u>
21 <u>describe fully</u> certain information.  While in response to some Requests, Blockbuster has
22 committed to producing its responsive documents, Blockbuster has stated in response to many
23 requests that it will limit production to documents that are (in its unilateral judgment) sufficient
24 to *reasonably describe* the information, or a subset of the information, sought by Netflix.  In
25 Netflix's Request 8, for example, Netflix asked Blockbuster to produce its documents relating to
26 research conducted by Blockbuster in connection with the design, development, implementation
27 and operation of its infringing Blockbuster Online service, including trade research, market
28 research, and consumer research.  *See* Paige Decl. Ex. A, Request No. 8.  In response,

11

PLAINTIFF NETFLIX, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM BLOCKBUSTER, INC.
CASE NO. C 06 2361 WHA (JCS)

1   Blockbuster committed to produce only documents that it deemed "sufficient to reasonably
2   describe" such research, as distinct from either the research itself or the documents relating
3   thereto that Netflix requested.  *See* Paige Decl. Ex. B, Response to Request No. 8.  Netflix has no
4   way of knowing what documents, and therefore what responsive information in other such
5   documents, Blockbuster might withhold based upon its contention that documents "sufficient to
6   reasonably describe" a matter have otherwise been produced.  For example, Blockbuster could
7   decide that the documents it has produced reasonably describe the research it commissioned, but
8   not produce the research analysis or conclusions relating to such research, for example, that
9   consumers in a research study thought Netflix's patented business method provided the best
10  consumer experience, (and documents concluding therefore that Blockbuster should copy
11  Netflix).  As another example, Blockbuster could limit production to documents reasonably
12  describing that it engaged in research to determine the impact an online rental service with no
13  late fees would have on Blockbuster's in-store rental revenues, but not documents concluding
14  that the on-line rental of movies would adversely impact such revenues or cause customers to
15  stop renting (which would be relevant in determining whether there is but one DVD rental
16  market, or distinct on-line and in-store markets).

17       Limited responses of this sort violate Judge Alsup's Supplemental Order, as well as
18  providing Blockbuster a tactical opportunity to withhold relevant documents that Netflix has
19  rightfully requested.  Judge Alsup requires that each party set out the extent to which they are
20  producing materials and confirm in writing after production that they have produced all such
21  materials.  Vague promises that documents "sufficient to reasonably describe" will be produced
22  (or have been produced) frustrate the purpose of this Supplemental Order, since "all" in this
23  context is a matter of subjective judgment; Blockbuster could confirm that it has produced all
24  such documents, but neither Netflix nor this Court would have any basis to verify such a
25  confirmation.

26       Blockbuster, therefore, should be ordered to produce all documents in its possession
27  responsive to Netflix Requests 7-10, 21, 24-25, 28-36, 58-59, 67-74, 76-79, 81-82, 90 and 101-
28  102, not just those "sufficient to reasonably describe" the sub-categories of information that

1  Blockbuster has agreed to provide.

2      **2.**    **Blockbuster Should Produce its Responsive Documents Forthwith.**

3      As the Court is aware, the parties took some time to negotiate the terms of a protective
4  order for the production of documents in this case, and eventually required the Court's assistance
5  to finalize the protective order.  Once that order was entered, counsel for Netflix requested that
6  Blockbuster commit to a date certain upon which the parties would exchange the confidential
7  and attorneys' eyes only documents that each had been withholding from production pending
8  entry of a suitable protective order.  Netflix served its document requests on August 31, over two
9  months ago, and the cut-off for fact discovery in this case is on April 27, 2007, less than five
10 months away.  As of today, Blockbuster still has not been willing to commit to a date upon
11 which to engage in a mutual exchange of documents.  Although Blockbuster claims in the joint
12 letter that it has already produced documents responsive to Netflix's requests, the only
13 production it has made thus far in the case are documents connected with its initial disclosures --
14 which were made long before Netflix even served its requests for production.  Blockbuster has
15 previously confirmed that it was withholding documents that it deemed confidential or attorneys'
16 eyes only from its initial disclosure production, and it has yet to produce any of those documents,
17 despite the entry of a protective order in this case.  As this case is rapidly moving toward the
18 completion of fact discovery, with many depositions remaining to be taken, Netflix respectfully
19 requests that the Court order Blockbuster to produce all its documents responsive to Netflix's
20 document requests forthwith.

21 ///
22 ///
23 ///
24 ///
25
26
27
28

### IV.   CONCLUSION

For the foregoing reasons, Netflix respectfully requests that this Court compel Blockbuster to produce its responsive documents, as described above and in the accompanying proposed order.

Dated:  November 3, 2006

KEKER & VAN NEST, LLP

By:      /s/  Jeffrey R. Chanin
Jeffrey R. Chanin
ATTORNEYS FOR PLAINTIFF
NETFLIX, INC.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ................................................................................................................. 1

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND .......................................................................................... 1

III. ARGUMENT ................................................................................................................... 4

    1. Blockbuster Has Wrongly Refused To Produce Certain Documents Relating To Blockbuster Online ............................................... 4

        a. Blockbuster Should Produce Documents Identifying and Relating To the Consultants Who Designed and Implemented the Blockbuster Online Method and System ................................................................................................... 5

        b. Blockbuster Should Produce Documents About Its Blockbuster Online Hardware and Software .................................. 7

        c. Blockbuster Should Produce Documents Relating To Blockbuster Online Technology Developed By Third Parties ...................................................................................................... 9

        d. Blockbuster Should Produce Documents Related To Internal Discussions and Analysis of Whether To Promote Blockbuster Online In Its Brick-and-Mortar Stores ...................................................................................................... 10

        e. Blockbuster Should Produce Complete Explanations of its Accounting Methods for Blockbuster Online .......................... 10

        f. Blockbuster Should Not Unilaterally Limit Production of Documents to those "Sufficient To Reasonably Describe." ................................................................................................. 11

    2. Blockbuster Should Produce its Responsive Documents Forthwith. ................................................................................................... 13

IV. CONCLUSION ............................................................................................................. 14

i

PLAINTIFF NETFLIX, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM BLOCKBUSTER, INC.
CASE NO. C 06 2361 WHA (JCS)

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Burlington N. & Santa Fe Ry. Co. v. United States Dist. Court*,
    408 F.3d 1142, 1148-49 (9th Cir. 2005) (quoting Fed. R. Civ. P. 26(f)) .................................... 4

### Federal Cases

Federal Rule of Civil Procedure 37 ................................................................................................ 1