1  ALSCHULER GROSSMAN STEIN & KAHAN LLP
   Marshall B. Grossman (No. 35958)
2  William J. O'Brien (No. 99526)
   Tony D. Chen (No. 176635)
3  Dominique N. Thomas (No. 231464)
   The Water Garden
4  1620 26th Street
   Fourth Floor, North Tower
5  Santa Monica, CA  90404-4060
   Telephone:  310-907-1000
6  Facsimile:  310-907-2000
   Email:  mgrossman@agsk.com
7          wobrien@agsk.com
           tchen@agsk.com
8          dthomas@agsk.com

9  Attorneys for Defendant and Counterclaimant,
   Blockbuster Inc.

10                  UNITED STATES DISTRICT COURT

11               NORTHERN DISTRICT OF CALIFORNIA

12

13

14  NETFLIX, INC., a Delaware corporation,       CASE NO. C 06 2361 WHA (JCS)

15          Plaintiff,                           **BLOCKBUSTER'S MOTION TO
                                                 COMPEL FURTHER RESPONSES
16      vs.                                      TO ITS FIRST SET OF REQUESTS
                                                 FOR PRODUCTION; SUPPORTING
17  BLOCKBUSTER INC., a Delaware corporation,    MEMORANDUM**
    DOES 1-50,
18                                               **[Supporting Declaration of William J.
           Defendants.                           O'Brien and Proposed Order filed
19                                               concurrently]**

20  AND RELATED COUNTER ACTION.                  Date:        December 8, 2006
                                                 Courtroom: A, 15th Floor
21                                               Time:        9:30 a.m.
                                                 Judge:       Hon. Joseph C. Spero
22
                                                 Complaint Filed:  April 4, 2006
23

24

25

26

27

28

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP          909666_9 DOC                  MOTION TO COMPEL FURTHER RESPONSES
                                                        TO REQUESTS FOR PRODUCTION
                                                            C 06 2361 WHA (JCS)

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

ISSUES TO BE DECIDED ............................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 2

I.     INTRODUCTION ................................................................................................................ 2

II.    FACTUAL BACKGROUND ............................................................................................. 5

     A.    Netflix's Patents and Infringement Suit Against Blockbuster ................................ 5

     B.    Blockbuster's Defenses and Counterclaims.............................................................. 7

     C.    Blockbuster's Requests for Production ..................................................................... 8

     D.    Netflix's Responses.................................................................................................... 9

     E.    Efforts at Compromise Resolution ......................................................................... 10

III.   THE WITHHELD DOCUMENTS ARE HIGHLY RELEVANT , AND THEIR
     IMPORTANCE OUTWEIGHS ANY "BURDEN" CLAIMED BY NETFLIX.............. 11

     A.    Blockbuster Is Entitled to Liberal Discovery on Its Defenses and
           Counterclaims ........................................................................................................ 11

     B.    Documents Concerning Related Applications and Patents Are Crucial to
           Blockbuster's Defenses and Counterclaims.......................................................... 14

     C.    Documents Disclosing Prior Art Known to Netflix Are Important to
           Blockbuster's Defenses and Counterclaims.......................................................... 17

     D.    Documents Concerning Netflix's Selection and Delivery Methods and
           Plans Are Important to Blockbuster's Best-Mode Defenses................................. 20

IV.   NETFLIX HAS WAIVED ITS OBJECTIONS BY FAILING TO TIMELY
     ASSERT THEM .............................................................................................................. 22

V.    CONCLUSION ................................................................................................................ 24

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

909666_9 DOC

i

MOTION TO COMPEL FURTHER RESPONSES
TO REQUESTS FOR PRODUCTION
C 06 2361 WHA (JCS)

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Brown & Williamson Tobacco Corp. v. Philip Morris, Inc.*
  229 F.3d 1120 (Fed. Cir. 2000)................................................................. 11

*Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*
  394 F.3d 1348 (Fed. Cir. 2005)................................................................. 12

*Davis v. Fendler*
  650 F.2d 1154 (9th Cir. 1981).................................................................. 22

*Eureka Fin. Corp. v. Hartford Accident & Indem. Co.*
  136 F.R.D. 179 (E.D. Cal. 1991).............................................................. 23

*Marx v. Kelly, Hart & Hallman, P.C.*
  929 F.2d 8 (1st Cir. 1991)........................................................................ 22

*Merck & Co., Inc. v. Danbury Pharmacal, Inc.*
  873 F.2d 1418 (Fed. Cir. 1989)................................................................ 12

*Molins PLC v. Textron, Inc.*
  48 F.3d 1172 (Fed. Cir. 1995).................................................................. 12

*Nobelpharma AB v. Implant Innovations*
  141 F.3d 1059 (Fed. Cir. 1998)............................................................ 13, 14

*Papst Motoren GMbH & Co. v. Kanematsu-Goshu (U.S.A.), Inc.*
  629 F. Supp. 864 (S.D.N.Y. 1986)............................................................ 14

*Professional Real Estate Investors v. Columbia Pictures Industries, Inc.*
  508 U.S. 49 (1993)................................................................................... 12

*Richmark Corp. v. Timber Falling Consultants*
  959 F.2d 1468 (9th Cir. 1992)................................................................... 22

*Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*
  204 F.3d 1368 (Fed. Cir. 2000)................................................................ 12

*Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*
  382 U.S. 172 (1965)........................................................................... 12, 13

## FEDERAL STATUTES AND RULES

Sherman Act § 2, 15 U.S.C. § 2 ............................................................... 8, 12

35 U.S.C. § 103 ............................................................................................. 7

35 U.S.C. § 103(a) ...................................................................................... 11

35 U.S.C. § 112, ¶ 1 ................................................................................ 7, 13

35 U.S.C. § 253 .......................................................................................... 20

Fed. R. Civ. P. 26(a)(1)(b) ......................................................................... 10

Fed. R. Civ. P. 26(b)(1) .............................................................................. 11

Fed. R. Civ. P. 26(b)(5).............................................................................. 1

Fed. R. Civ. P. 34(b) .................................................................................. 22

Fed. R. Civ. P. 37(a)(2)(A) ...................................................................... 1, 11

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

909666_9 DOC                              ii                    MOTION TO COMPEL FURTHER RESPONSES
                                                                   TO REQUESTS FOR PRODUCTION
                                                                      C 06 2361 WHA (JCS)

# TABLE OF AUTHORITIES
## (continued)

                                                                                        **Page**

Fed. R. Civ. P. 37(a)(2)(B)...................................................................................... 1, 11

# OTHER AUTHORITIES

WILLIAM W. SCHWARTZER, ET AL., FEDERAL CIVIL PROCEDURE BEFORE TRIAL
    § 11:785 at 11-83 (2006).......................................................................... 22

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

909666_9 DOC                          iii                          MOTION TO COMPEL FURTHER RESPONSES
                                                                   TO REQUESTS FOR PRODUCTION
                                                                   C 06 2361 WHA (JCS)

1   TO PLAINTIFF AND COUNTER-DEFENDANT, NETFLIX, INC., AND ITS ATTORNEYS

2   OF RECORD:

3           PLEASE TAKE NOTICE that, on December 8, 2006, at 9:30 a.m. or as soon

4   thereafter as the matter may be heard, in Courtroom A, 15th Floor, 450 Golden Gate Avenue, San

5   Francisco, CA 91402, before the Honorable Joseph C. Spero, United States Magistrate Judge,

6   Defendant and Counterclaimant, Blockbuster Inc., will move pursuant to Federal Rules of Civil

7   Procedure 37(a)(2)(A)-(B) and 26(b)(5) for an order compelling Plaintiff and Counterdefendant,

8   Netflix, Inc., to produce further documents and tangible things in accordance with Blockbuster's

9   First Set of Requests for Production to Netflix.  Support for this motion is provided by the

10  attached Memorandum of Points of Authorities, the concurrently-filed Declaration of William J.

11  O'Brien and exhibits to that declaration, all pleadings and papers filed and to be filed herein, the

12  oral argument to be presented by counsel, and any other matter that may be submitted at or prior

13  to the hearing.

**ISSUES TO BE DECIDED**

15      1.      Whether Netflix should be required to produce documents and tangible

16  things that it has refused to produce in response to Blockbuster's First Set of Requests for

17  Production:

18          a.      Documents related to Netflix patents and applications or to patent

19      rights related to Blockbuster Online or Netflix (Requests Nos. 3-5, 10-16, 46-49, and 52-

20      54);

21          b.      Documents related to Netflix's preferential selection methodologies

22      known as "throttling" (Requests Nos. 24-26 and 128-29);

23          c.      Documents related to preferential treatment of Netflix by the Postal

24      Service in practicing the patents-in-suit (Requests Nos. 130-32); and

25          d.      Documents related to relevant prior art known to Netflix (Requests

26      Nos. 32, 34-36, 55-57, 67-71, 73-74, 78-81, 86, 88-90, 93-100, 105, 113-17, and 119).

27      2.      Whether Netflix has waived its objections to the entirety of Blockbuster's

28  First Set of Requests for Production – including privilege and work-product objections – by

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

909666_9 DOC                        1              MOTION TO COMPEL FURTHER RESPONSES
                                                   TO REQUESTS FOR PRODUCTION
                                                   C 06 2361 WHA (JCS)

1  failing to timely assert such objections.

2  **MEMORANDUM OF POINTS AND AUTHORITIES**

3  **I.    INTRODUCTION**

4          The Court should order Netflix to produce highly relevant documents that it is

5  refusing to produce. Netflix's objections that these documents are irrelevant and that

6  Blockbuster's requests are not reasonably calculated to lead to discovery of admissible evidence

7  are plainly wrong. Sham is actually a more apt description. The four categories of documents

8  that Netflix is withholding on grounds of supposed irrelevancy and undue burden are in fact

9  highly relevant:

10                  1.      Netflix is withholding prior art that disclosed features claimed by

11          Netflix in its patents-in-suit. Such prior art is crucial to Blockbuster's defense that

12          Netflix's patent claims are invalid for obviousness in view of prior art, as well as

13          Blockbuster's defense that Netflix's patents are unenforceable because of Netflix's failure

14          to disclose known material prior art to the U.S. Patent and Trademark Office in obtaining

15          the patents-in-suit. Such prior art is also important for Blockbuster's declaratory-

16          judgment counterclaims and to Blockbuster's antitrust counterclaims asserting that Netflix

17          fraudulently obtained the patents-in-suit by concealing known prior art and that Netflix

18          has baselessly asserted the resulting patents in bad-faith, sham litigation.[1]

19                  2.      Netflix is withholding documents regarding patents and patent

20          applications that are related to the patents-in-suit procedurally or in content, including

21          related submissions to the Patent Office, actions issued by the Patent Office on such

22          patents and applications, and prior art submitted to or cited by the Office in connection

23          with them. Netflix is even refusing to produce any evidence that it has withheld prior art

24          in connection with other patent applications. Such documents are important to

25          Blockbuster's obviousness and inequitable conduct defenses and its declaratory judgment

26          and antitrust counterclaims.

---

27  [1] This Court has upheld the sufficiency of Blockbuster's specifically-pleaded allegations of

28  inequitable conduct, fraudulent patenting, and sham litigation on the part of Netflix. (*See* O'Brien Decl. ¶ 29 & Ex. O (Order Denying Netflix's Motion to Dismiss).)

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

909666_9 DOC                                    2                    MOTION TO COMPEL FURTHER RESPONSES
                                                                    TO REQUESTS FOR PRODUCTION
                                                                    C 06 2361 WHA (JCS)

1          3.       Netflix is withholding documents related to its methodologies of

2    preferentially selecting movies for customers, including the preferential-selection

3    techniques known as "throttling," which were the subject of a recent-settled class action

4    lawsuit against Netflix.[2] These documents are important to Blockbuster's defense that

5    some or all claims of the patents-in-suit are invalid because Netflix failed to disclose in its

6    patent applications what Netflix regarded as the "best mode" for practicing selection of

7    movies or other rental items as claimed in the patents-in-suit.

8          4.       Netflix is withholding documents related to any special

9    arrangements that it has made with the U.S. Postal Service for delivering movies by mail.

10   Such documents are important to Blockbuster's defense that some or all claims of the

11   patents-in-suit are invalid because Netflix failed to disclose in its patent applications what

12   it regarded as the best mode for distributing movies or other rental items.[3]

13          Netflix's attempt to prevent discovery of these important documents is designed to

14   mask its pattern of concealment begun when Netflix filed its first patent application in April

15   2000. Despite its clear and acknowledged duty to disclose all known material prior art to the

16   Patent Office, Netflix failed to disclose *even a single item of prior art* in obtaining the first of the

17   patents-in-suit, the '450 patent. Netflix continued its pattern of concealment in obtaining its

18   second patent-in-suit, the '381 patent. Despite distracting and overwhelming the Patent Examiner

19   with over one hundred items of purported, often marginal prior art references, Netflix continued

20   to conceal highly material prior art patents owned by NCR. Netflix withheld the NCR patents

21   even though it was actively engaged in a dispute with NCR about whether Netflix itself was

22   infringing those patents – a dispute that led to filing of a declaratory judgment case in this Court

23   by Netflix and infringement counterclaims by NCR.[4]

_____

[2] Basically, "throttling" is the practice of giving priority to less-frequent users of Netflix's service
over more-frequent users in selecting movies to send them. Netflix was alleged to have carried
out throttling without notice to its subscribers and contrary to representations that Netflix made
about its service. (*Id.*, ¶ 35 & Ex. S.) In settlement of the class action, Netflix agreed to
discontinue throttling and provide compensation. (*Id.*, ¶ 37 & Ex. U.)
[3] *Id.*, ¶¶ 39-41 & Exs. V - W [Grubb email and Cook Article].)
[4] Netflix contends that its online DVD rental business practices every claim of the '450 and '381
patents. (Preliminary Infringement Contentions at 3 (filed July 13, 2006).) This is the same
business that NCR accused Netflix of infringing the NCR patents. (Answer & Countercl. ¶¶ 48-

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

909666_9.DOC                           3                          MOTION TO COMPEL FURTHER RESPONSES
                                                                    TO REQUESTS FOR PRODUCTION
                                                                    C 06 2361 WHA (JCS)

1      This Court has already held that, based on these and other facts alleged in

2   Blockbuster's Answer and Counterclaims, Blockbuster has specifically and adequately alleged

3   defenses of inequitable conduct and patent misuse as well as antitrust counterclaims for

4   fraudulent patenting and sham litigation. (Order Denying Netflix's Motion to Dismiss (Doc. 40)

5   at 2:21-23.) Netflix, however, denies most of Blockbuster's allegations. While admitting – as it

6   must – that it failed to disclose any prior art for the '450 patent and that it knew but failed to

7   disclose the NCR patents, Netflix denies that it also knew about and failed to disclose other prior

8   art as alleged by Blockbuster, denies that the prior art that it failed to disclose was material,

9   denies that Netflix knew of the materiality of the undisclosed prior art, and denies that Netflix

10   intended to deceive the Patent Office. (O'Brien Decl. ¶¶ 26-28.) Yet, Netflix refuses to provide

11   discovery on these various issues, claiming such discovery is irrelevant. Blockbuster is pursuing

12   discovery to, among other things, obtain further prior art, obtain additional support for its

13   invalidity defenses such as obviousness and failure to disclose best modes, identify additional

14   information that Netflix concealed from the Patent Office, and obtain additional evidence of

15   Netflix's knowledge and intent in failing to disclose prior art, in fraudulently obtaining the

16   patents-in-suit, and in baselessly asserting them against Blockbuster.

17      Netflix's assertion that it would be too burdensome for it to locate and produce the

18   requested documents is not only legally unfounded but fundamentally unfair to Blockbuster, to

19   other companies engaged in online rental or other subscription rental businesses, and to the

20   public, which has a strong interest in having the validity of the sweepingly broad patents asserted

21   by Netflix in this case – as well as Netflix's deceptive conduct in obtaining the patents – fully and

22   fairly litigated. In bringing this case, Netflix is attempting to shut down Blockbuster Online – a

23   major business, in which Blockbuster Inc. has invested millions of dollars – as well as seeking a

24   presumably large amount in alleged lost profits, royalties, treble damages, and attorneys' fees.[5]

25   In addition to its potential impact on Blockbuster, Netflix's infringement claim, if successful,

26   _____

27   50.) Despite this controversy – ongoing during the pendency of ***both*** Netflix patent applications –
Netflix failed to disclose the NCR patents to the Patent Office at ***any*** time. (*Id.*)

28   [5] Netflix has indicated that it is seeking both alleged lost profits and royalties, but it has not
disclosed anything about the amounts sought or calculation of damages. (*Id.*, ¶ 32.)

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

909666_9 DOC                4                MOTION TO COMPEL FURTHER RESPONSES
TO REQUESTS FOR PRODUCTION
C 06 2361 WHA (JCS)

1   would have a significant adverse effect on consumers, who benefit from the competition that

2   Netflix is attempting to eliminate through this litigation. Indeed, Netflix lowered its prices after

3   Blockbuster entered the online DVD rental market. (*Id.*, ¶ 93 & Ex. M.) This Court has

4   pointedly observed that, as a result of Netflix's obtaining and asserting the patents-in-suit,

5   "Blockbuster may be forced out of the market, which would cede to Netflix virtually complete

6   control of the online-DVD market." (Order Denying Netflix's Motion to Dismiss at 10:7-9.)[6]  In

7   view of the important interests of the public, of Blockbuster, and of other competitors, it is unfair

8   and unreasonable for Netflix to argue that it would be too much trouble to provide full discovery

9   concerning relevant prior art, the validity of the patents-in-suit, and whether Netflix engaged in

10   inequitable conduct in obtaining those patents.

11          Besides the clear lack of merit of Netflix's objections, the Court should order

12   production of the withheld documents because Netflix waived all objections to Blockbuster's

13   requests for production by failing to timely assert such objections. Despite email confirmation of

14   service of the requests and despite knowledge of them on the part of Netflix's counsel, Netflix

15   failed to serve a timely written response and failed to request or receive an extension of time.

16   Netflix thereby waived all objections, including privilege and work-product objections. In view

17   of this waiver, Netflix should be ordered to produce ***all*** documents requested by Blockbuster,

18   without withholding documents based on privilege or work-product protection.

19   **II.     FACTUAL BACKGROUND**

20          **A.     Netflix's Patents and Infringement Suit Against Blockbuster**

21          The video rental business has been in existence for decades. With the advent of

22   the Internet era, it became commonplace to create e-commerce versions of existing bricks-and-

23   mortar businesses, and the video rental business was no exception. In 1998, Netflix began renting

24   videos online, taking advantage of the just-introduced DVD format, which permitted videos to be

25   mailed much more economically than was possible using VHS cassettes.

26          Subscription video and audio rental programs were in existence long before

27   ─────────────

[6] Indeed, through its '450 patent, Netflix claims exclusive rights in subscription rentals of ***any*** "items" – not just movies – even subscription rental methods that do not use the Internet, or, in some cases, do not even use a computer. (*Id.*, Ex. M at ¶ 53, Exs. A-B to Ex. L.)

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

909666_9 DOC                              5                    MOTION TO COMPEL FURTHER RESPONSES
                                                                  TO REQUESTS FOR PRODUCTION
                                                                      C 06 2361 WHA (JCS)

1    Netflix. In 1999, Netflix introduced a subscription program of its own, offering it as an

2    alternative to paying per-disk fees. In April 2000, Netflix applied for a patent, broadly claiming

3    subscription rentals, not only of movies, but of any kind of "item" whatsoever. Netflix's named

4    inventors (including its CEO, Reed Hastings) and its patent attorneys were under a legal and

5    ethical "duty of candor" to disclose to the Patent Office all prior art material to the claimed

6    "invention." However, Netflix disclosed *no prior art whatsoever* in connection with its original

7    patent application. After a cursory examination, Netflix received U.S. Patent No. 6,584,450 on

8    June 24, 2003. (O'Brien Decl. ¶ 24 & Ex. M at ¶ 25.)

9        Although Netflix failed to disclose any prior art in obtaining the '450 patent,

10    Netflix *was* aware of material prior art. Netflix's judicial admissions in another case establish

11    that – before issuance of the '450 patent – Netflix (including Reed Hastings personally) was

12    aware of nine relevant patents owned by NCR. Indeed, NCR had already asserted that these

13    patents covered the very Netflix online DVD rental business that Netflix was engaged in

14    patenting. But Netflix concealed the NCR patents from the Patent Office. (*Id.*, Ex. M at ¶¶ 44-

15    56.)

16        For almost three years after its issuance, Netflix apparently took no action at all to

17    enforce its blatantly overbroad and procedurally defective '450 patent. During this period,

18    Blockbuster decided to enter the online DVD rental business. Blockbuster Online began

19    operation in August 2004, but Netflix took no action to assert its '450 patent against

20    Blockbuster – not even a letter or phone call. Netflix's CEO even acknowledged to Blockbuster's

21    then General Counsel that the '450 patent was a "joke." (*Id.*, Ex. M at ¶ 40.)

22        Before issuance of the '450 patent, Netflix had also filed a "continuation"

23    application, which ultimately resulted in the second of the two patents-in-suit, U.S. Patent

24    No. 7,024,381. With the '450 patent in its pocket, Netflix dramatically altered course, inundating

25    the Patent Office with more than one hundred prior art references for the '381 patent. But even

26    then, Netflix still concealed the NCR patents from the Patent Office. Even after its dispute with

27    NCR reached the point where Netflix filed a declaratory judgment suit against NCR, Netflix

28    continued to withhold all information about the NCR patents from the Patent Office. As has been

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

909666_9 DOC                6                MOTION TO COMPEL FURTHER RESPONSES
TO REQUESTS FOR PRODUCTION
C 06 2361 WHA (JCS)

stated by this Court:

> Netflix disclosed absolutely *no* prior art in applying for the '450 patent. Shortly after that patent issued, Netflix suddenly bombarded the PTO examiner with over one hundred references in support of the '381 patent (but not the NCR patents). This is so even though the same law firm prosecuted both patent applications, and even though the same named inventors were responsible for both applications. For Netflix's later patent, the PTO examiner would have needed to swim through a morass of references and then go beyond that morass to find the NCR patents.

(Order Denying Netflix's Motion to Dismiss at 8:21-28 (original emphasis).)

The '381 patent issued on April 4, 2006. That same day, Netflix filed this lawsuit, alleging that Blockbuster Online infringes both the '450 and '381 patents. Netflix asked for an injunction against continued operation of Blockbuster Online, as well as compensatory damages. Netflix further asked for treble damages and attorneys' fees, claiming that Blockbuster's alleged infringement is willful.

**B.    Blockbuster's Defenses and Counterclaims**

In response, Blockbuster has asserted multiple defenses, as well as declaratory-judgment and antitrust counterclaims. The defenses and counterclaims to which the discovery sought in this motion is relevant are many, including:

1.    Obviousness Defenses:  Blockbuster contends that Netflix's patent claims are invalid for obviousness under 35 U.S.C. § 103 in view of prior art that disclosed the features recited in Netflix's claims.

2.    Inequitable-Conduct Defenses:  Blockbuster contends that Netflix's patents are unenforceable because Netflix failed to disclose prior art that it knew about and knew to be material. Blockbuster alleges that, in failing to disclose this art, Netflix acted with the intent to deceive the Patent Office.

3.    Best-Mode Defenses:  Blockbuster contends that some or all of Netflix's patent claims are invalid under 35 U.S.C. § 112, ¶ 1, because, in applying for its patents, Netflix failed to disclose what it regarded as the best way or "mode" of practicing the claimed invention. For example, Blockbuster contends that Netflix failed to disclose

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

909666_9 DOC                    7                    MOTION TO COMPEL FURTHER RESPONSES
TO REQUESTS FOR PRODUCTION
C 06 2361 WHA (JCS)

1    its best mode for selecting movies or other rental items to be provided to customers,

2    because Netflix omitted any reference to prioritization among preferences of different

3    customers – including Netflix's practices known as "throttling," which were the subject of

4    a recently-settled class action lawsuit against Netflix. As another example, Netflix failed

5    to disclose any particular methodology for mail delivery of movies or other items, even

6    special arrangements with the Postal Service have been important to Netflix's success.

7              4.      Declaratory-Judgment Counterclaims:  Blockbuster has

8    counterclaimed for a declaratory judgment that all the claims of Netflix's patents-in-suit

9    are invalid for reasons including anticipation, obviousness, and failure to disclose best

10   modes and are unenforceable because of Netflix's failure to disclose known, material prior

11   art.

12             5.      Antitrust Counterclaims:  Blockbuster alleges that Netflix has

13   violated Section 2 of the Sherman Antitrust Act by fraudulently obtaining the two patents-

14   in-suit and by asserting them in sham litigation.

15   **C.    Blockbuster's Requests for Production**

16             Blockbuster's First Set of Requests for Production to Netflix were delivered to the

17   offices of Netflix's counsel on July 11, 2006. Netflix's written responses (including any

18   objections) were due on August 10, 2006, and production of the requested documents was set for

19   August 14, 2006, at 10:00 a.m., at the offices of Blockbuster's counsel. (O'Brien Decl. ¶ 4 &

20   Ex. A.)

21             On July 11, the same day that they served the Requests and Blockbuster's First Set

22   of Interrogatories, Blockbuster's counsel sent an email to Netflix attorney Daralyn Durie,

23   notifying her of the service and attaching copies of the Requests and Interrogatories. The email

24   also gave Ms. Durie a special "heads-up" that Blockbuster needed this discovery before the

25   August 17 hearing on Netflix's motion to dismiss. In closing, Blockbuster's counsel stated, "[i]f

26   there are any problems we will need to address with regard to the discovery requests, I would

27   appreciate your contacting me as early as possible about them." (*Id.* ¶¶ 5-6 & Ex. B.)

28             Netflix's counsel never responded to this email, even though Blockbuster's

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

909666_9 DOC                                    8                    MOTION TO COMPEL FURTHER RESPONSES
                                                                     TO REQUESTS FOR PRODUCTION
                                                                     C 06 2361 WHA (JCS)

1    counsel reminded them of it when Netflix requested and received a brief extension of time to

2    answer Blockbuster's Interrogatories. Netflix never requested or obtained an extension of time

3    with regard to Blockbuster's Requests for Production. However, Netflix failed to serve any

4    written responses by the August 10 deadline. (*Id.* ¶¶ 7-12.)

5            Blockbuster's First Set of Requests for Production includes 134 requests. (*Id.*,

6    ¶ 15 & Ex. A.) The requests and responses at issue in this motion are set forth in Paragraphs __

7    through ___ of the accompanying Declaration of William J. O'Brien, grouped by subject matter

8    for the convenience of the Court. They include:

9            ▪    Documents related to Netflix patents and applications as well as to patent

10                rights related to Blockbuster Online and Netflix – including documents

11                disclosing prior art related to such patents and applications, their

12                patentability or unpatentability, and any failures by Netflix or certain

13                persons involved in obtaining the patents-in-suit to disclose prior art

14                (Requests Nos. 3-5, 10-16, 46-49, and 52-54).

15           ▪    Documents related to Blockbuster's defense of invalidity because of

16                Netflix's failure to disclose "best modes" having to do with its preferential

17                selection methodologies known as "throttling" (Requests Nos. 24-26 and

18                128-29).

19           ▪    Documents related to Blockbuster's best-mode defense having to do with

20                methodologies for mail delivery (Requests Nos. 130-32).

21           ▪    Documents related to prior art known to Netflix (Requests Nos. 32, 34-36,

22                55-57, 67-71, 73-74, 78-81, 86, 88-90, 93-100, 105, 113-17, and 119).

23   These requests are highly relevant to Blockbuster's defenses of anticipation, obviousness, and

24   inequitable conduct, as well as to Blockbuster's antitrust and declaratory-judgment counterclaims.

25       **D.    Netflix's Responses**

26           As noted, Netflix's time for serving a written response expired on August 10,

27   2006, but Netflix neither served a response by that date nor requested an extension of time.

28   Instead, Netflix served an untimely written response on August 14, asserting repetitive and

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

909666_9.DOC                    9                    MOTION TO COMPEL FURTHER RESPONSES
                                                     TO REQUESTS FOR PRODUCTION
                                                     C 06 2361 WHA (JCS)

1  unmeritorious boilerplate objections to every one of Blockbuster's 134 Requests (O'Brien Decl.

2  ¶ 15 & Ex. E).[7]  As one illustration of Netflix's lack of discrimination or restraint in objecting, it

3  objected even to Request No. 133, which merely asked for the items that Netflix had listed in its

4  Initial Disclosures as Rule 26(a)(1)(b) documents – in other words as, "documents . . . that are in

5  the possession, custody or control of [Netflix] and that [it] may use to support its claims and

6  defenses. . . ." (Fed.R.Civ.P. 26(a)(1)(b).)  Netflix also objected to producing, and refused to

7  produce, relevant patent filings, prior art that disclosed features claimed in the patents-in-suit, and

8  other highly relevant documents.  (O'Brien Decl. ¶ 15 & Ex. E.)

9          Netflix's *untimely* written responses also asserted the attorney-client privilege and

10  work product doctrine in response to every single one of Blockbuster's Requests.

11      **E.**    **Efforts at Compromise Resolution**

12          As noted, Blockbuster's counsel contacted Netflix's counsel about Blockbuster's

13  First Set of Requests for Production on July 11, 2006, the same day they were served.

14  Blockbuster's counsel again contacted Netflix's counsel about the Requests on August 11, 2006,

15  31 days after service.  Thereafter, counsel for the parties conferred extensively about issues

16  related to Netflix's Responses to the Requests.  These discussions have included telephone

17  conferences between William O'Brien and Dominique Thomas of Alschuler Grossman Stein &

18  Kahan LLP and Leo Lam, Eugene Paige, and Ashok Ramani of Keker & Van Nest LLP,

19  extensive correspondence between counsel, and an in-person meeting between William O'Brien

20  and Jeffrey Chanin of Keker & Van Nest on October 13, 2006, in San Francisco, with Marshall

21  Grossman participating by telephone.  (O'Brien Decl. ¶¶ 17-21 & Exs. G-K.)

22          During the course of these conferences and communications, counsel made

23  progress on a number of issues.  However, the parties have been unable to reach agreement on the

24  Requests for Production addressed in this motion.  (*Id.*)

25

26  _____

[7] On August 4, Netflix requested and received an extension of its time to respond to Blockbuster's
First Set of Interrogatories.  The interrogatory responses were initially due on August 10, the
27  same date when the written responses were due  As Blockbuster's counsel confirmed by email on
that date, the extension was limited to the interrogatory responses.  (O'Brien Decl. ¶¶ 8-11 &
28  Ex. C.)

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

909666_9 DOC                          10

MOTION TO COMPEL FURTHER RESPONSES
TO REQUESTS FOR PRODUCTION
C 06 2361 WHA (JCS)

1  **III.    THE WITHHELD DOCUMENTS ARE HIGHLY RELEVANT , AND THEIR**
2       **IMPORTANCE OUTWEIGHS ANY "BURDEN" CLAIMED BY NETFLIX.**

3       A.    **Blockbuster Is Entitled to Liberal Discovery on Its Defenses and**
              **Counterclaims.**

4             Parties may request and obtain discovery regarding any relevant, non-privileged

5  subject matter. Fed. R. Civ. P. 26(b)(1). "It is not ground for objection that the information

6  sought will be inadmissible at the trial if the information sought appears reasonably calculated to

7  lead to the discovery of admissible evidence." *Id*; *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 30

8  n.15 (1984).

9             An order compelling document production is appropriate where a recalcitrant party

10 refuses to produce such documents. Fed. R. Civ. P. 37(a)(2)(A)-(B). Netflix has refused to

11 comply with numerous requests to produce highly relevant and non-privileged documents,

12 making it necessary for Blockbuster to seek an order compelling production.

13            For example, most of the requests with which Netflix is refusing to comply are

14 crucial to Blockbuster's defenses of obviousness based on prior art. Under the patent laws, "A

15 patent may not be obtained though the invention is not identically disclosed or described [in prior

16 art], if the differences between the subject matter sought to be patented and the prior art are such

17 that the subject matter as a whole would have been obvious at the time the invention was made to

18 a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C.

19 § 103(a). The most common method for proving the obviousness of a patent claim is, first, to

20 show that each of the features or elements recited in the claim was well known in prior art, and,

21 second, to show that it would have been obvious to a person of ordinary skill in the relevant field

22 to combine those elements as recited in the claim. Under current Federal-Circuit precedent, this

23 requires, not only a showing of the prior art and its contents, but also "a showing of a suggestion,

24 teaching, or motivation to combine the prior art references . . . ." *Brown & Williamson Tobacco*

25 *Corp. v. Philip Morris, Inc.*, 229 F.3d 1120, 1124 (Fed. Cir. 2000). Accordingly, Blockbuster has

26 propounded requests reasonably calculated to identify prior art that disclosed features claimed in

27 the patents-in-suit, to establish the various contexts and combinations which such features

28

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

909666_9 DOC                                11                  MOTION TO COMPEL FURTHER RESPONSES
                                                                  TO REQUESTS FOR PRODUCTION
                                                                        C 06 2361 WHA (JCS)

1   appeared in the prior art, and to obtain evidence supporting the obviousness of combining prior-

2   art features as claimed by Netflix – including, for example, evidence of the extent and nature of

3   the use and knowledge of such features in the prior art.

4            Requested documents being withheld Netflix are also crucial to Blockbuster's

5   defense that the patents-in-suit are unenforceable because of inequitable conduct. "Inequitable

6   conduct includes affirmative misrepresentation of a material fact, failure to disclose material

7   information, or submission of false material information, coupled with an intent to deceive."

8   *Semiconductor Energy Lab. Co. v. Samsung Elecs Co.*, 204 F.3d 1368, 1373 (Fed. Cir. 2000)

9   (*quoting Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995)). "Intent need not,

10   and rarely can, be proven by direct evidence." *Merck & Co., Inc. v. Danbury Pharmacal, Inc.*,

11   873 F.2d 1418, 1422 (Fed. Cir. 1989). "[I]n the absence of a credible explanation, intent to

12   deceive is generally inferred from the facts and circumstances surrounding a knowing failure to

13   disclose material information." *Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*, 394

14   F.3d 1348, 1354 (Fed. Cir. 2005). Accordingly, Blockbuster has requested documents showing

15   Netflix's knowledge of relevant prior art as well as documents reasonably calculated to lead to

16   discovery of admissible evidence concerning Netflix's knowledge of the materiality of such prior

17   art and Netflix's intent in failing to disclose such art to the Patent Office.

18            The documents being withheld by Netflix are also critical to Blockbuster's

19   antitrust counterclaims. These counterclaims are well asserted on each of two independent

20   grounds: fraudulent patenting under *Walker Process Equipment, Inc. v. Food Machinery &*

21   *Chemical Corp.*, 382 U.S. 172, 173-77 (1965), and sham litigation under *Professional Real Estate*

22   *Investors v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60-62 (1993). (*See* Answer &

23   Countercl. ¶¶ 93-108, 110-117; *see also id.* ¶¶ 16-92.) "[T]he maintenance and enforcement of a

24   patent obtained by fraud on the Patent Office may be the basis of an action under § 2 of the

25   Sherman Act . . . ." *Walker Process*, 382 U.S. at 173-77. Blockbuster has alleged all the

26   elements required to hold a party liable for such fraudulent patenting: (1) knowing and willful

27   misrepresentation of facts to the Patent Office (or fraudulently omitting to disclose them); (2) an

28   intent to deceive; (3) materiality of the misrepresentation or omission, in that the patent would not

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

909666_9 DOC

12

MOTION TO COMPEL FURTHER RESPONSES
TO REQUESTS FOR PRODUCTION
C 06 2361 WHA (JCS)

1    otherwise have issued; (4) the patentee's awareness of the fraud when bringing suit; and (5) the

2    other standard elements to establish an antitrust violation. *See Nobelpharma AB v. Implant*

3    *Innovations*, 141 F.3d 1059, 1069-70 (Fed. Cir. 1998). (*See* Answer & Countercl. ¶¶ 16-117.) A

4    "fraudulent omission" to disclose known, material prior art supports liability under *Walker*

5    *Process. Nobelpharma,* 141 F.3d at 1070. Indeed, "[a] fraudulent omission can be just as

6    reprehensible as a fraudulent misrepresentation." *Id.* The documents that Netflix is withholding

7    related to prior art, to Netflix's knowledge of prior art, and to failures of Netflix, its named

8    inventors, or its patent attorneys to disclose prior art are highly relevant to Blockbuster's *Walker*

9    *Process* counterclaims.

10    "Sham litigation" provides another ground for antitrust liability, where a patent

11    infringement suit is "both ***objectively*** baseless and ***subjectively*** motivated by a desire to impose

12    collateral, anti-competitive injury rather than to obtain a justifiable remedy." *Nobelpharma*, 141

13    F.3d at 1071 (emphasis in original). It is sufficient that a suit is "based on a theory of either

14    infringement or validity that is objectively baseless" and that the suit was "subjectively brought in

15    bad faith." *Id.* at 1072. Blockbuster alleges both of these elements, including specifically that

16    "Netflix's infringement lawsuit against Blockbuster . . . is both objectively and subjectively

17    baseless," that Netflix "has acted . . . in bad faith . . . and without belief in the merit of its claims,"

18    and that Netflix "is using its . . . sham infringement litigation against Blockbuster to restrain

19    competition by . . . attempting to induce Blockbuster to leave the relevant market, attempting to

20    damage Blockbuster's ability to compete in the relevant market and attempting to deter other

21    potential competitors from entering the market." (Answer & Countercl. ¶¶ 102-03, 106.) The

22    documents being withheld by Netflix are important to Blockbuster's sham litigation claims as

23    well as its *Walker Process* fraudulent patenting claims.

24    In addition, a number of the requests with which Netflix is refusing to comply

25    directly relate to Blockbuster's best-mode defenses. A patent is required by law to "set forth the

26    best mode contemplated by the inventor of carrying out his invention." 35 U.S.C. § 112, ¶ 1. In

27    determining whether a patent claim is invalid for failure to comply with the best-mode

28    requirement, among other things, "the fact-finder must determine whether at the time an applicant

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

909666_9.DOC                13                MOTION TO COMPEL FURTHER RESPONSES
TO REQUESTS FOR PRODUCTION
C 06 2361 WHA (JCS)

1   filed an application for patent, he or she had a best mode practicing the invention, which is a

2   subjective determination." *Nobelpharma*, 141 F.3d at 1064. In support of its best-mode defenses

3   in this case, Blockbuster has requested documents reasonably calculated to lead to discovery of

4   admissible evidence about whether the Netflix inventors had "best modes" that they failed to

5   disclose.

6           **B.    Documents Concerning Related Applications and Patents Are Crucial to
                    Blockbuster's Defenses and Counterclaims.**

7

8           In Requests Nos. 3-5, 10-16, 46-49, and 52-54, Blockbuster requested documents

9   connected with any patent or application related to the patents-in-suit, to patent rights in

10  Blockbuster Online, or to patent rights in Netflix's allegedly-patented online rental business. In

11  recent Court filings, Netflix held out evidence from documents of this type as the gold standard

12  for proving inequitable conduct or fraudulent patenting. Indeed, Netflix unsuccessfully attempted

13  to have Blockbuster's inequitable conduct and patent misuse defenses and its antitrust

14  counterclaims dismissed in part because Blockbuster did not then have evidence of materiality

15  and intent derived from proceedings on such related patents or applications, foreign or domestic.

16  (O'Brien Decl. ¶¶ 29-31 & Ex. P.) Now, however, Netflix is attempting to withhold just such

17  crucial evidence, refusing to produce documents related to any patent or application other than the

18  patents-in-suit themselves and, in some cases, refusing to produce anything at all. (*Id.*, ¶ 56.)

19          Contradicting the representations that Netflix made to this Court in moving to

20  dismiss Blockbuster's defenses and counterclaims, Netflix now objects that "documents relating

21  to its patents and/or applications other than the patents-in-suit . . . have no relevance to any issue

22  in this case." But as Netflix told the Court in unsuccessfully moving for dismissal, proceedings

23  with respect to related applications and patents are in fact highly relevant to Blockbuster's

24  inequitable-conduct defense and antitrust counterclaims. *See, e.g., Papst Motoren GMbH & Co.*

25  *v. Kanematsu-Goshu (U.S.A.), Inc.*, 629 F. Supp. 864, 870 n.2 (S.D.N.Y. 1986)(*cited in* Netflix's

26  Reply in Support of Its Motion to Dismiss at 6 n.5). For example, Netflix itself noted, in

27  upholding allegations of fraudulent patenting, "the court in *Papst* noted that the claimant

28  specifically alleged that (1) a patent examiner working on a companion patent application had

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

909666_9 DOC                          14                 MOTION TO COMPEL FURTHER RESPONSES
                                                          TO REQUESTS FOR PRODUCTION
                                                          C 06 2361 WHA (JCS)

1    discussed the omitted prior-art patent with prosecution counsel, and (2) prosecution counsel in

2    fact referred to the omitted prior-art patent in an amendment while prosecuting the companion

3    application."

4           All of Blockbuster's requests for documents concerning patent applications and

5    patents related to the patents-in-suit (any "SUBJECT PATENT OR APPLICATION")[8] are highly

6    relevant to Blockbuster's defenses of invalidity and inequitable conduct, as well as to its

7    counterclaims. These requests are reasonably calculated to lead to discovery of admissible

8    evidence concerning, among other things, relevant prior art, Netflix's knowledge of prior art, the

9    materiality of the prior art, Netflix's knowledge of that materiality, and Netflix's deceptive and

10   fraudulent intent in obtaining the '450 and '381 patents without disclosing such prior art, as well

11   as Netflix's bad faith in asserting its invalid and unenforceable patents against Blockbuster.

12         For example, Request No 3 asks for materials submitted to or received from the

13   Patent Office in connection with any SUBJECT PATENT OR APPLICATION, Request No. 4

14   asks for Netflix's files for any such patent or application, and Request No. 5 asks for materials

15   concerning attempts to license any such application or patent. These requests are reasonably

16   calculated to uncover relevant prior art, evidence concerning materiality of such art, and evidence

17   of Netflix's knowledge and intent in failing to disclose such art.

18         Request No. 10 asks for materials regarding the scope of any such patent or

19   application – information that is relevant to infringement as well as to validity and inequitable

20   conduct. Request No. 11 asks for materials concerning the patentability or unpatentability of any

21   such patent or application, and Request No. 13 asks for materials regarding the patentability or

22   unpatentability of methods, apparatuses and computer-readable media used by Netflix (all of

23   which are subjects of claims of the patents-in-suit). Requests Nos. 13 and 14 ask for

24   communications between Netflix and Blockbuster (including Blockbuster's former General

25   Counsel, Edward Stead) about any SUBJECT PATENT OR APPLICATION. These Requests

26   are reasonably calculated to elicit admissions by Netflix (such as the admission by Netflix's CEO

27
28

[8] This term is defined to include patents and applications that derive from or claim priority of any of the same patent applications as the patents-in-suit as well as those in which Netflix claims or discloses subject matter that overlaps with the patents-in-suit. (Ex. A at 4.)

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

909666_9 DOC        15       MOTION TO COMPEL FURTHER RESPONSES
TO REQUESTS FOR PRODUCTION
C 06 2361 WHA (JCS)

1  to Mr. Stead that the '450 patent is a "joke") as well as to disclose any admissions that Netflix

2  claims have been made by Blockbuster.

3        Request No. 15 asks for communications about patent rights, licenses or

4  infringement related to Blockbuster Online. It is reasonably calculated to lead to discovery of

5  admissible evidence concerning Blockbuster's defenses of laches and estoppel as well as the other

6  defenses and counterclaims referred to above. Request No. 16 asks for materials concerning

7  patent rights, licenses or infringement related to Netflix. This request is reasonably calculated to

8  lead to discovery of admissible evidence because Netflix purports to practice all the asserted

9  claims of the patents-in-suit. Indeed, NCR's infringement claim against Netflix has already

10  yielded highly material prior art, as well as proof that Netflix knew about that art during the

11  pendency of its patent applications and strong evidence of Netflix's deceptive and fraudulent

12  intent in withholding that art from the Patent Office. The Court prominently cited this

13  information in upholding the sufficiency Blockbuster's defenses and counterclaims. However,

14  Blockbuster learned of this information only because it was contained in the Court file for the

15  litigation between Netflix and NCR. By refusing to produce any documents in response to

16  Request No. 16, Netflix is attempting to withhold any similar information related to other prior art

17  patents.

18        Netflix is also attempting to withhold or inappropriately limit discovery of

19  important documents requested in Requests Nos. 46-49 and 52-54.[9] These requests focus even

20  more specifically on prior art arising from proceedings on any SUBJECT PATENT OR

21  APPLICATION, as well as asking for documents relating to any failure of Netflix to disclose

22  prior art in connection with such patents or applications. For example, Request No. 46 asks for

23  materials concerning submission of prior art by Netflix for such applications or patents. Evidence

24  that Netflix submitted prior art in connection with a related U.S. or foreign application but

25  withheld that art in obtaining the '450 or '381 patent would be classic "smoking gun" evidence of

---

[9] Netflix's responses attempt to limit its production of the documents requested in Requests
Nos. 46 and 52 to documents specifically related to the patents-in-suit, excluding documents
related to any other SUBJECT PATENT OR APPLICATION. Netflix's responses indicate that it
is withholding all documents asked for in the remainder of these requests.

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

909666_9 DOC                    16                    MOTION TO COMPEL FURTHER RESPONSES
                                                      TO REQUESTS FOR PRODUCTION
                                                      C 06 2361 WHA (JCS)

1  inequitable conduct and fraudulent patenting. Yet Netflix is attempting to withhold just such

2  evidence.

3     In Requests Nos. 47-48, Blockbuster asks for evidence about any failure or

4  omission to submit prior art to the U.S. Patent and Trademark Office in connection with the very

5  patents-in-suit in this case, yet Netflix refuses to provide even that information. Netflix also

6  refuses to produce documents asked for in Request No. 50, evidencing failures or omissions by

7  Netflix to submit prior art to the Patent Office in connection with any other SUBJECT PATENT

8  OR APPLICATION. In Request No. 52, Blockbuster asks for documents evidencing any reason

9  or justification for submittal or non-submittal of prior art in connection with any such patent or

10 application – a request that is reasonably calculated to lead either to discovery of evidence of

11 Netflix's deceptive intent or to inform Blockbuster of evidence that Netflix is likely to offer in

12 opposition to a finding of deceptive intent.

13    Requests Nos. 53 and 54 ask for documents concerning any failure or omission by

14 Netflix or of Netflix's named inventors, patent attorneys, and others involved in prosecution of

15 the applications for the patents-in-suit (any "PERSON UNDER A DUTY OF CANDOR") to

16 submit prior art or other information to a Patent Office. These requests are reasonably calculated

17 to lead to discovery of admissible evidence concerning Netflix's intent in failing to disclose

18 known prior art. For example, if Netflix has previously been cited by the U.S. Patent and

19 Trademark Office or a foreign patent office for withholding relevant prior art, Netflix's

20 arguments that it lacked deceptive intent in failing to disclose prior art for the patents-in-suit here

21 would be severely weakened, if not demolished altogether. Netflix should not be permitted to

22 conceal such critical information.

23   **C.**  **Documents Disclosing Prior Art Known to Netflix Are Important to**
      **Blockbuster's Defenses and Counterclaims.**

24

25    As explained above, discovery of prior art and Netflix's knowledge of prior art is

26 central to Blockbuster's defenses and counterclaims asserting that Netflix's patents-in-suit are

27 invalid because of anticipation and obviousness, that the patents-in-suit are unenforceable

28 because of Netflix's failure to disclose prior art, and that Netflix fraudulently obtained the

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

909666_9 DOC      17     MOTION TO COMPEL FURTHER RESPONSES
TO REQUESTS FOR PRODUCTION
C 06 2361 WHA (JCS)

1    patents-in-suit by failing to disclose known prior art to the Patent Office. However, Netflix has

2    repeatedly asserted unfounded objections that requests asking for prior art known to Netflix are

3    "oppressive" or "overly broad and unduly burdensome . . . ." Indeed, Netflix repeatedly objects

4    that it is "oppressive" for Blockbuster to ask for prior art that discloses features recited in the

5    claims of the very patents on which Netflix is suing Blockbuster. (O'Brien Decl. ¶ 59 & Ex. E.)

6         Netflix also repeatedly objects that, by asking for prior art that disclosed features

7    claimed in Netflix's patents, "Blockbuster seeks thereby to require Netflix to construe a claim

8    element [and] seeks to impose upon Netflix a duty to come forward with a claim construction

9    well prior to the date provided for in Court's Case Management Order and the Local Rules of this

10   Court . . . ." (Id. ¶ 56 & Ex. E.) This objection implies that Netflix is somehow entitled to deny

11   Blockbuster discovery concerning relevant prior art until after claim construction is concluded.

12   Such a position is plainly improper and is wholly inconsistent with the Case Management Order

13   and Local Rules, which impose no such limit on discovery and have required Blockbuster to state

14   its preliminary invalidity contentions before claim construction.

15        Netflix has improperly refused to comply fully – or, in most cases, to comply at

16   all – with 36 Blockbuster requests seeking documents concerning prior art. In some cases, the

17   requested documents relate to specified categories of prior art businesses. In others, the requests

18   ask for prior art that disclosed features recited by Netflix itself in claims of the patents-in-suit.

19        For example, in Requests Nos. 32 and 34, Blockbuster seeks evidence of Netflix's

20   knowledge of certain types of prior art, namely subscription cable, satellite or pay television

21   services and online grocers. The requests provide examples within each of these two categories,

22   including HBO, Showtime, Webvan, and Home Grocer.com. Netflix maintains that it will

23   produce only those documents relating to the expressly named business entities. This response is

24   inadequate. Contrary to Netflix's assertions, the documents sought in Requests No. 32 and 34 are

25   clearly identified, require no speculation, and should be produced in full.

26        Requests Nos. 35 and 36 seek documents concerning Amazon.com and eBay and

27   Netflix's knowledge of these online businesses. Netflix has objected that the requests include

28   "personal minutia" within their scope, such as purchase orders of its employees from

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

909666_9 DOC                    18          MOTION TO COMPEL FURTHER RESPONSES
                                            TO REQUESTS FOR PRODUCTION
                                            C 06 2361 WHA (JCS)

1    Amazon.com or eBay. Blockbuster has offered to exclude from the requests any items actually

2    purchased over Amazon or eBay and to limit these requests to PERSONS UNDER A DUTY OF

3    CANDOR, as defined the requests. Although these offers should have alleviated Netflix's

4    concern, Netflix continues to refuse to produce relevant and non-privileged documents.

5         Netflix has also refused to comply with numerous requests for prior art disclosing

6    various features recited in claims of Netflix's patent-in-suit. Like the other prior-art-related

7    requests, these requests are aimed at obtaining documents essential to Blockbuster's defenses and

8    counterclaims.[10]   It is grossly unfair for Netflix to assert the validity of patent claims reciting

9    these features – and to sue Blockbuster for infringing these claims – while refusing to turn over

10   prior art that disclosed claimed features. Having put the validity and enforceability of its patents

11   at issue by suing Blockbuster for alleged infringement of them, Netflix cannot legitimately

12   complain of the "burden" of turning over such relevant prior art.

13        Netflix is refusing to produce prior art that disclosed claimed features even when

14   they are the *only* features that might patentably distinguish claims of the patents-in-suit from

15   other claims and are therefore indispensable to analyzing the validity of those claims. For

16   example, according to Netflix's own Preliminary Infringement Contentions, a rental agreement

17   that provides for a periodic fee is the only feature distinguishing Claim 34 of Netflix's '381 patent

18   from Claim 1 of that patent. (O'Brien Decl. ¶¶ 56-59 & Ex. A to Ex. R at 13.) Netflix asserts the

19   validity of Claim 34 – and is suing Blockbuster for allegedly infringing Claim 34 – but, in its

20   response to Request for Production No. 67, Netflix refuses to provide prior art disclosing the sole

21   feature supposedly distinguishing that claim from Claim 1. Similarly, five claims of the '381

22   patent and eight claims of the '450 patent incorporate by reference all of the features recited in

23   other claims and differ from those other claims only in reciting delivery of a movie or other rental

24   item by mail. (*Id.* ¶¶ 33-34 & Exs. A-B to Ex R.) Five additional claims of the '381 patent differ

25   from the preceding claims only by adding that, when delivered by mail, the movies are on optical

26   media. (*Id.*) Yet, in response to Requests Nos. 80, 81, and 117, Netflix refuses to produce prior

27

28   [10] These include Requests Nos. 55-57, 67-71, 73-74, 78-81, 86, 88-90, 93-100, 105, 113-17, and
      119.

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

909666_9 DOC                            19                MOTION TO COMPEL FURTHER RESPONSES
                                                          TO REQUESTS FOR PRODUCTION
                                                          C 06 2361 WHA (JCS)

1    art disclosing the only features distinguishing these claims from other claims.

2    If features recited in claims of the patents-in-suit were widely known in the prior

3    art, this is no doing of Blockbuster's. It was Netflix's choice to recite such features in its patent

4    claims, just as it has been Netflix's choice to sue Blockbuster for alleged infringement of such

5    claims. If Netflix now finds it inconvenient to collect and produce prior art disclosing the

6    features that it chose to claim, Netflix is free to surrender the claims reciting such features, under

7    35 U.S.C. § 253. Alternatively, Netflix could stipulate that such features do not contribute to the

8    patentability of its claims and need not be taken into account in proving their invalidity.

9    However, Netflix has made it clear that it has no intention of making any such contention.

10   Instead, Netflix intends to keep such claims in force and continue to sue Blockbuster for allegedly

11   infringing them, forcing Blockbuster to prove that inclusion of the recited features was obvious.

12   Having chosen to put these features at issue, Netflix cannot evade discovery about them.[11]

13   **D.    Documents Concerning Netflix's Selection and Delivery Methods and Plans Are Important to Blockbuster's Best-Mode Defenses.**

14

15   Netflix has improperly refused to produce any documents whatsoever in response

16   to Requests Nos. 24-26 and 128-29, which are reasonably calculated to lead to discovery of

17   evidence relevant to Blockbuster's best-mode defenses as well to uncover evidence of Netflix's

18   anticompetitive conduct and intent that would be relevant to Blockbuster's antitrust

19   counterclaims.

20   In Requests Nos. 24-26, Blockbuster asks for documents related to a recently-

21   settled class action lawsuit, *Frank Chavez v. Netflix, Inc.*, Superior Court of California for the

22   City and County of San Francisco Case No. CGC-04-434884, including documents served and

23   produced in that case, communications between the respective parties and counsel, and

24   documents concerning settlement negotiations. These documents are reasonably calculated to

25   lead to discovery of admissible evidence because the subject matter of the *Chavez* class action

26   [11] As an accommodation, Blockbuster has agreed to limit Requests Nos. 55, 69, 79, 90, 99, 100,
27   105, 113 and 114 to documents and things sufficient to fully describe the prior art referred to in
     those requests and Netflix's knowledge of that art. The other requests referred to above that ask
28   for prior art disclosing claimed features are already expressly limited to materials "sufficient to
     fully describe" such matters.

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

909666_9 DOC                    20                    MOTION TO COMPEL FURTHER RESPONSES
                                                     TO REQUESTS FOR PRODUCTION
                                                     C 06 2361 WHA (JCS)

1  was a practice engaged in by Netflix known as "throttling." (O'Brien Decl. ¶¶ 35-38 & Ex. S.)

2  Blockbuster's understanding is that Netflix's "throttling" was alleged to include giving

3  preferential treatment to lower-volume users over higher-volume users in selecting movies for

4  Netflix's customers. (*Id.*)

5          If Netflix was either using or planning to use such throttling (or any generally

6  similar practices or techniques) when it applied for the patents-in-suit, it was required to disclose

7  such practices or techniques in the patents. But the patents contain no such disclosure. (*See id.*,

8  ¶ 38.) For example, every claim of Netflix's '381 patent requires "causing to be delivered to [a]

9  customer up to a specified number of movies based upon the order of [a] list" and, "in response to

10 one or more delivery criteria being satisfied, selecting another movie based upon the order of the

11 list and causing the selected movies to be delivered to the customer . . . ." (*Id.*, Ex. A to Ex. L.)

12 If the Netflix inventors had in mind a best mode for selecting movies to be delivered to a

13 customer, then these claims are all invalid under § 112, ¶ 1, for failure to disclose that best mode.

14         Blockbuster's Requests Nos. 128 and 129 ask for materials concerning "throttling"

15 by Netflix on or before the filing dates of the applications or the respective patents-in-suit. (*Id.*

16 ¶ 44 & Ex. A.) These requests are directly relevant to Blockbuster's best-mode defenses for the

17 same reasons explained above. Yet Netflix is refusing to produce any documents in response to

18 these Requests as well.

19         Requests Nos. 130-32 ask for documents reasonably calculated to lead to

20 discovery of admissible evidence with regard to another of Blockbuster's best-mode defenses,

21 which is that Netflix failed to disclose best modes for delivery of items by the Postal Service. All

22 of the claims of the '381 patent require "causing [movies] to be delivered to [a] customer . . . ,"

23 and all of the claims of the '450 patent require "providing" items to a customer. (*Id.*, Ex. A to Ex.

24 L.) Further, numerous claims of the patents-in-suit specifically require delivery "by mail" or

25 "delivery by mail on . . . optical media." (*Id.*) The patents-in-suit refer to delivery by mail, but

26 they fail to disclose any particular methods or techniques for mail delivery. (*Id.*)

27         Published information suggests that Netflix made important special arrangements

28 for handling of its mail by the Postal Service. Netflix even hired a former Postmaster General.

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

909666_9.DOC                    21        MOTION TO COMPEL FURTHER RESPONSES
                                          TO REQUESTS FOR PRODUCTION
                                          C 06 2361 WHA (JCS)

1    (*Id.* ¶¶ 39-41 & Exs. V-W.) Requests Nos. 130-32 ask for documents concerning any preferential

2    sorting or handling of Netflix mail, related communications, and communications between former

3    Postmaster General William J. Henderson and the U.S. Postal Service concerning Netflix, which

4    is now his employer. Netflix has refused to produce any documents in response to these requests.

5    It should be ordered to provide full responses to them, as well as to Blockbuster's other requests

6    related to best modes.

7    **IV.    NETFLIX HAS WAIVED ITS OBJECTIONS BY FAILING TO TIMELY ASSERT THEM.**

8

9    Netflix has waived all objections – including privilege objections – by failing to

10   file a written response to Blockbuster's First Set of Requests for Production within thirty days

11   after service of the Requests, as was required by Rule 34(b) of the Federal Rules of Civil

12   Procedure.[12] Rule 34(b) requires that written responses to a document request be served within

13   30 days of the service of the request. Blockbuster served its requests on July 11, 2006, making

14   Netflix's written responses due on August 11, 2006. Netflix did not serve its written responses

15   until August 14, 2006, three days after that deadline. (O'Brien Decl. ¶¶ 5, 12, 14 & Exs. A, E.)

16   By failing to timely respond to Blockbuster's Requests, Netflix has waived all objections. *See,*

17   *e.g., Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992)(holding

18   that a "failure to object to discovery requests within the time required constitutes a waiver of any

19   objection"); *see also Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981) (holding that the

20   failure to object to interrogatories within the allotted time constitutes a waiver of any objection of

21   privilege). "Failure to make a timely and specific objection to a discovery request waives any

22   objection based on privilege." WILLIAM W. SCHWARTZER, ET AL., FEDERAL CIVIL PROCEDURE

23   BEFORE TRIAL § 11:785 at 11-83 (2006). "If the responding party fails to make a timely

24   objection, he may be held to have waived any or all of his objections." *Marx v. Kelly, Hart &*

25   *Hallman, P.C.*, 929 F.2d 8, 12 (1st Cir. 1991); *see Eureka Fin. Corp. v. Hartford Accident &*

26   ---

[12] Additionally, some of Netflix's privilege and work-product objections are frivolous on their
27   face, as when Netflix objects on privilege grounds to producing documents that were submitted to
or received from the Patent Office. (Requests Nos. 1-3.) Obviously, documents sent to Netflix
28   by the Patent Office could not be privileged, nor could Netflix maintain a privilege in documents
it provided to the Patent Office.

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

909666_9 DOC                                22                MOTION TO COMPEL FURTHER RESPONSES
TO REQUESTS FOR PRODUCTION
C 06 2361 WHA (JCS)

1    *Indem Co*, 136 F.R.D. 179, 182–85 (E.D. Cal. 1991) (blanket objection waived privilege and

2    work-product protection).

3            Netflix's counsel have attempted to avoid its clear waiver of objections by making

4    a series of mistaken or irrelevant assertions about why Netflix failed to serve a timely written

5    response. These have ranged from denying that the written responses were due on August 10 to

6    saying that Netflix's counsel misunderstood that date and then trying to somehow blame

7    Blockbuster's counsel for failing to correct their misunderstanding. Contrary to his later

8    assertions, it was not until August 11 that Netflix's counsel Leo Lam first told Blockbuster's

9    counsel he believed that the written response deadline was on August 14 rather than August 10.

10   Blockbuster's counsel would certainly have corrected his error if Mr. Lam had mentioned it

11   earlier, but his belief that he did so is entirely wishful thinking, just like his earlier assertion that

12   the August 4 email from Blockbuster's counsel had said that the written responses were not due

13   until August 14. (O'Brien Decl. ¶¶ 12-16 & Ex. D.)

14           In any case, responsibility for tracking and complying with the written response

15   deadline lay entirely with Netflix, not Blockbuster. Counsel cannot blame their opponents for

16   their own failure to note such obvious facts as the date of service and requested production date of

17   Blockbuster's requests. Having failed to timely object, and failed to provide the required

18   privilege-log information, Netflix has waived all objections.

19

20

21

22

23

24

25

26

27

28

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

909666_9.DOC                    23                    MOTION TO COMPEL FURTHER RESPONSES
                                                      TO REQUESTS FOR PRODUCTION
                                                      C 06 2361 WHA (JCS)

## V.    CONCLUSION

For the foregoing reasons, the Court should grant Blockbuster's Motion to Compel Further Discovery Responses and order Netflix to produce documents responsive to Blockbuster's First Set of Requests for Production as provided in Blockbuster's proposed order.

DATED: November 3, 2006                ALSCHULER GROSSMAN STEIN & KAHAN LLP


By_____/s/_____
   William J. O'Brien
   Attorneys for Defendant and Counterclaimant,
   Blockbuster Inc.

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

909666_9 DOC                    24        MOTION TO COMPEL FURTHER RESPONSES
                                          TO REQUESTS FOR PRODUCTION
                                          C 06 2361 WHA (JCS)