# EXHIBIT H

# ALSCHULER GROSSMAN STEIN & KAHAN LLP
### ATTORNEYS AT LAW

WILLIAM J. O'BRIEN
ATTORNEY AT LAW
WOBRIEN@AGSK.COM
Direct Dial: 310-255-9033
Direct Fax: 310-907-2033

OUR FILE NUMBER
12460-206704

August 31, 2006

BY EMAIL AND FACSIMILE

Eugene M Paige, Esq
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 94111-1704

Re:  *Netflix, Inc v Blockbuster, Inc*
     U.S. District Court, N.D. Cal., Case No. C-06-2361 WHA

Dear Gene:

This is to confirm the extensive telephone conference that Dominique Thomas and I had with you late yesterday afternoon on outstanding discovery issues. The subjects we discussed were Netflix's responses to Blockbuster's First Set of Request for Production, Netflix's Responses to Blockbuster's First Set of Interrogatories, the protective order for this case, the deposition of Eric Meyer, and the production of confidential documents under Federal Rules of Civil Procedure 26(a)

## Responses to Requests for Production

During our conference, I emphasized to you that production of the documents and tangible things requested by Blockbuster was due on August 14 – more than two weeks ago – and that Blockbuster demands immediate production of the requested documents To date, Blockbuster has received no such production whatsoever I explained that Blockbuster will have no choice but to file a motion to compel production if this problem cannot be resolved in the very near future

I also asked you to tell me when Netflix will produce documents requested by Blockbuster I pointed out that I have repeatedly asked Leo Lam to provide such a date and that Blockbuster has now been waiting three weeks to be given a date for production of even the non-confidential documents that it has requested. During our conversation, you confirmed that you are unable to commit to a date by which Netflix will produce the non-confidential documents requested by Blockbuster (let alone the confidential ones)

During our conference, I reaffirmed Blockbuster's position that Netflix waived all objections to the requests for production when it failed to serve a timely written response. I further stated that, if Netflix nonetheless asserts privilege objections, it should immediately

Eugene M Paige, Esq.
August 31, 2006
Page 2

provide Blockbuster with a privilege log.[1] You said that you are not presently able to provide a date by which Netflix will give Blockbuster a privilege log.

I pointed out that Blockbuster needs a privilege log for use in preparing a motion to compel production of documents. Based on events to date, it appears that Blockbuster will find it necessary to file such a motion in the very near future. Blockbuster is entitled to receive an explanation of the scope of, and bases for, Netflix's privilege objections before preparing and filing motion papers. As I advised you, if Netflix fails to provide a privilege log in time for Blockbuster to address the log in its motion papers, Blockbuster may assert this delay as an additional reason why Netflix has waived privilege objections.[2]

In your colleague Leo Lam's letter to me of yesterday, August 30, Leo failed to specify any date by which Netflix will provide Blockbuster with a privilege log, merely saying (on Page 3 of his letter) that "Netflix will be producing a privilege log in due course, upon the completion of its review of documents for privilege." During yesterday's telephone conference, you confirmed that you are presently unable to provide a date by which Blockbuster will receive a privilege log.

During our conference, I requested clarification of the extent to which Netflix proposes to withhold documents requested by Blockbuster based on any of Netflix's objections. You confirmed our understanding of the third bullet-point on Page 3 of Leo Lam's letter of yesterday, in which Leo states that "Netflix is committing to produce all of its responsive non-privileged documents ... in response to Requests where it has committed to production, with but a few exceptions ..."

First, you confirmed that what Leo refers to as the "Requests where [Netflix] has committed to production" include all the requests as to which Netflix's responses include a statement that "Netflix will produce all non-privileged, responsive documents so described ..." You confirmed that the requests as to which Netflix has *not* "committed to production" are those in response to which Netflix has not made a statement that it will produce documents. These consist of the requests in response to which Netflix says, "Netflix is not willing to undertake to

---

[1] At a minimum, the log should detail all items being withheld based on privilege or work-product objections, specify the bases on which such objections are being asserted, and provide related information such as the authors and recipients of each applicable document.

[2] During our conversation, you suggested that the contents of Netflix's privilege log may need to be designated as confidential. As I stated, it seems unlikely to me that any such designation would be necessary or appropriate. I see no reason why confidentiality of documents listed on a privilege log would necessitate designating the log itself as confidential. If Netflix takes the position that some portions of its privilege log truly qualify as confidential, Netflix should nevertheless immediately provide Blockbuster with all other privilege log entries.

Eugene M Paige, Esq
August 31, 2006
Page 3

discern a reasonable interpretation of, and engage in a corresponding search for documents responsive to, the Request as currently phrased" (for example, Request No. 56) and requests in response to which Netflix merely states objections without any further statement (for example, Request No. 25)

You also confirmed our understanding of what Leo Lam's letter refers to as the "few exceptions" to Netflix's stated intent to produce all non-privileged documents responsive to the requests as to which Netflix has "committed to production." You confirmed that these "few exceptions" consist solely of the three sub-points beginning in the middle of Page 3 of Leo's letter of yesterday.

You confirmed that the first of the three exceptions listed by Leo applies only to Requests Nos 32 and 34. Leo asserts in his letter that these requests require Netflix "to speculate what other businesses may fall into broad categories where only a few examples are named." He stated that, "[i]n response to those Requests, Netflix has stated that it will only search for and produce documents relating to the expressly named business entities." We disagree with this position. The documents sought in Requests Nos 32 and 34 are clearly identified, require no speculation, and should be produced in full.

You confirmed that the second exception listed in Leo's letter applies only to Requests Nos 35 and 36, which Leo contends request "personal minutiae." In an attempt to accommodate the concerns expressed by Leo and by you about the breadth of Requests Nos. 35 and 36, I offered to narrow their scope in several respects.

- First, I offered to narrow them by treating their references to "knowledge of Amazon com [or eBay] by NETFLIX or any PERSON UNDER A DUTY OF CANDOR" to refer only to knowledge of Amazon com or eBay by any "PERSON UNDER A DUTY OF CANDOR" (as defined in the requests)

- Second, I offered to exclude from the requests any items actually purchased over Amazon or eBay [3]

- Third, I offered to narrow the requests by agreeing that, if a particular "PERSON UNDER A DUTY OF CANDOR" has received multiple documents of the same type, each of which provides only the same

---

[3] Although it was not our intention to include such items in the first place, you expressed concern that they might fall within the scope of Requests Nos 35 and 36.

Eugene M Paige, Esq
August 31, 2006
Page 4

information about Amazon or about eBay, Netflix may produce only the earliest such document received by each such person.[4]

You said that you will discuss these offers with others at your firm and will let me know whether Netflix will provide full responses to Request Nos 35 and 36 as narrowed in the ways I have offered

The third exception listed in Leo's letter has to do with requests for what Leo describes as "information that relates to all of [Netflix's] patents and patent applications . ." In reality, however, the requests to which Leo is referring ask for documents related only to any "SUBJECT PATENT OR APPLICATION" as defined in the requests. During our conference, I provided a further explanation of why documents related to such patents and applications are highly relevant and important to Blockbuster's claims and defenses [5]

In response to your assertion that the requests' definition of "SUBJECT PATENT OR APPLICATION" is broad, I offered to narrow the portion of the definition that you cited, which includes "any U S , foreign, or international patent application in which Netflix has or had an interest that discloses or claims any features recited in a claim of either or both of the '450 or '381 patents " I offered to narrow this portion of the definition by excluding the reference to "disclos[ing]" features as opposed to claiming them. I explained why Blockbuster needs and is entitled to documents concerning the prosecution of Netflix applications that claim features also claimed in the subject '450 or '381 patents. You said that you would explore whether Netflix will agree to produce the requested documents subject to the narrowing I offered [6]

By way of further confirmation, we discussed Requests Nos 21-23, which ask for documents related to the *Netflix v. NCR* case. Reviewing the next-to-last bullet-point on Page 3 of Leo Lam's letter, you confirmed our understanding that Netflix will produce all non-privileged documents that Blockbuster asked for in Requests Nos. 21-23. You said that Leo's reference to documents "uncovered after a reasonable and diligent search" should not be interpreted as indicating that there is any special issue with regard to Netflix's undertaking to search for these

---

[4] This offer is intended to deal with the example you gave of a person who has received multiple recommendation emails from Amazon.com

[5] I further explained this point in my letter of August 25 to Daralyn Durie concerning the requests for production. In that letter, I quoted Netflix's own arguments to the Court in this case illustrating the importance of proceedings on related patents

[6] As you acknowledged during our conference, all of my offers to narrow requests are contingent upon Netflix's agreement to produce the documents called for by such narrowed requests, and, in the absence of such agreement, Blockbuster retains all rights to seek enforcement of the requests as originally framed

Eugene M Paige, Esq
August 31, 2006
Page 5

documents  You confirmed that the search for such documents will include all files for the *Netflix v NCR* litigation at Netflix and at your firm, which represented Netflix in that litigation.

We also discussed the requests to which Netflix has refused to respond, such as Blockbuster's requests for prior art disclosing various features recited in claims of Netflix's asserted '450 and '381 patents  In his letter of yesterday, Leo Lam specifically cited the request related to prior-art "computer-implemented rental of movies to a customer" (which is Request No 55)  I explained why Blockbuster needs and is entitled to the documents requested in this request and the other prior-art-related requests

One objection raised by Leo was that Request No 55 would encompass "every document related to Netflix's internal operations of any kind prior to April 28, 1999    " To alleviate this concern, I offered to narrow the request – insofar as it applies to Netflix's rental services – to documents and things sufficient to fully describe all features of Netflix's service at any time prior to April 28, 1999.

During our call, you continued to argue that Request No. 55 is overbroad. You suggested, for example, that it would encompass Netflix employees' membership cards for video rental stores that used computers prior to April 28, 1999  In response, I offered to limit Request No  55 – insofar as it applies to membership cards – to those cards possessed by "PERSONS UNDER A DUTY OF CANDOR" (as defined in the requests)

During our call, we were not able to reach agreement on Request No 55 or on Blockbuster's many other requests for documents related to prior art  It appears to us that such an agreement will be unattainable if Netflix maintains its position that it would be too burdensome to conduct a thorough or extensive search for documents in its possession reflecting prior art disclosures of the individual features recited in Netflix's claims  Obtaining such documents is of vital importance for Blockbuster's prior-art-related defenses and counterclaims.

The subject matter of Request No 55 provides a case in point  While Netflix complains that it would be burdensome for it to provide full documentation of the prior art that it knows about related to "computer-implemented rental of movies to a customer," it was Netflix's choice to insert this feature into its patent claims, making this feature a potential basis for the supposed patentability of Netflix's claimed invention.[7] You made it clear that Netflix will not stipulate in this case that the claim language in question did not contribute to the patentability of Netflix's claimed invention  Netflix is not entitled to have it both ways by

---

[7] While you noted that the particular feature in Request No. 55 is taken from the preambles of Netflix claims rather then from the main body of the claims, you also stated that you do not know whether Netflix will take the position that such preamble language constitutes a claim limitation.

Eugene M Paige, Esq
August 31, 2006
Page 6

preserving the right to argue that claimed features contribute to the patentability and validity of its claims while simultaneously withholding documents showing that such features were prevalent in the prior art, showing the combinations in such features appeared in the prior art, and providing other information highly pertinent to Blockbuster's invalidity and inequitable conduct defenses and its counterclaims  Blockbuster therefore continues to demand production of all documents requested in Request No 55 and in Blockbuster's other requests asking for prior-art-related documents, as well as the other requests with which Netflix is refusing to comply

Having discussed the foregoing points, you agreed with us that our conference on the request for production was complete  In summary, Blockbuster's position is as follows:

1       Blockbuster demands immediate production of all the documents that it has requested;

2       Blockbuster demands that Netflix immediately provide a privilege log,

3       If Netflix is not going to immediately produce the requested documents, Blockbuster requests that Netflix immediately specify a date by which it will produce at least all non-confidential documents requested by Blockbuster;

4       If Netflix is not going to immediately provide a privilege log, Blockbuster requests that Netflix immediately specify a date by which it will do so; and

5       Blockbuster requests that Netflix promptly state whether, if Blockbuster limits requests as I offered during our conference, Netflix will produce all documents requested in the requests as so limited

<u>Responses to Interrogatories</u>

During our conference call, we also discussed Netflix's responses to Blockbuster's First Set of Interrogatories

One of the issues discussed was the extent to which Netflix is withholding information based on objections to the interrogatories  In this regard, we reviewed the second full paragraph on Page 2 of Leo Lam's letter of yesterday  You confirmed Leo's statement in that paragraph that "Netflix is not withholding information based on objections to the vague and ambiguous nature of Blockbuster's interrogatories "

I also asked you about the last sentence of that same paragraph, where Leo says, "we have interpreted 'aware' to refer to when an employee or agent of Netflix had the particular art brought to his or her attention " I asked you to confirm that this language is not intended to

Eugene M Paige, Esq
August 31, 2006
Page 7

suggest that awareness for purposes of the interrogatory answers is limited to awareness caused by another person as opposed to awareness acquired in some other manner. As you phrased it, my question is whether there is a difference between something being "brought" to the attention of a Netflix employee or agent and having something "come to" that person's attention. You stated that you did not believe there was any such difference but that you will confirm this and let us know

We next discussed Netflix's refusal to identify the specific dates when it became aware of each of the 71 separate prior art references lumped together in Paragraph 8 of Attachment A to Netflix's interrogatory responses. I explained why Blockbuster needs that information and is entitled to receive it. As I explained, Blockbuster is not obligated to passively accept Netflix's factual assertions. In order to conduct a meaningful investigation and discovery concerning the truth or falsity of Netflix's positions, we need to know specifically what those positions are. For example, to evaluate Netflix's assertions about when it learned of prior art, we need to know the specific dates when the events in question supposedly occurred, whether Netflix supposedly found out about particular items of prior art at the same time or at different times, the order in which Netflix claims to have learned about them, and so forth, so that we can evaluate the internal consistency of Netflix's assertions, ask witnesses about the specific facts asserted, and evaluate the consistency of Netflix's assertions with other available information and evidence. Any supposed burden entailed in providing this important information is trivial in comparison to the importance of this case and to the claims that Netflix is asserting against Blockbuster. While continuing to assert that providing specific dates for each of the 71 references would be burdensome, you stated that you will consult with others about our position and advise us whether Netflix will provide the requested dates

We also discussed Netflix's refusal to provide any explanation of how it first became aware of the 71 references referred to Paragraph 8 of Attachment A to its interrogatory responses. Netflix has asserted that this information is privileged. As I explained, however, Blockbuster does not believe that there could be any privilege justifying a complete refusal to provide any information about how Netflix became aware of such prior art. As I further explained, Blockbuster believes that Netflix is required to state the basis for assertion of any privilege with respect to such information

We also discussed the following statement on Page 2 of Leo Lam's letter of yesterday:

> "With respect to Blockbuster's contention that Netflix's privilege objection regarding the circumstances under which the 71 references were uncovered is unfounded, Netflix would be willing to consider providing a further response if Blockbuster would stipulate that it will not

Eugene M Paige, Esq.
August 31, 2006
Page 8

claim waiver of any applicable privilege based on such a further response."

I agreed that, if Netflix promptly provides a further response on this point, Blockbuster will not claim that the further response waives any privilege. Obviously, as you agreed, Blockbuster would maintain all of its existing positions about waiver of privilege objections as well as waiver of other objections. You said that you will find out whether and when Netflix will provide a further response on this basis and that you will let us know by Friday (sooner if possible)

I asked you whether, besides Netflix's refusal to say how it obtained the 71 prior art references, Netflix is withholding any other information requested in Blockbuster's interrogatories based on privilege objections. You said that you do not believe so but that you will confirm this.

I emphasized that we need to hear back from you right away with regard to outstanding issues as to the interrogatories, including whether Netflix will provide the specific dates when it became aware of the 71 prior art references. I asked that you respond by Friday. You said that you will attempt to do so and that you will respond "promptly."

We agreed that we have fully discussed the issues with regard to the interrogatories. In summary, Blockbuster's positions are as follows:

1. Netflix should provide a verified supplemental response stating the specific dates on which it first became aware of each of the 71 prior art references referred to in Paragraph 8 of Attachment A;

2. Netflix's supplemental response should also provide an explanation of how it first became aware of each of these prior art references (and Netflix may provide further information on this subject without thereby waiving privilege objections);

3. If Netflix does not provide a full explanation of how it first became aware of each of the 71 references, Netflix should provide a supplemental response stating the basis on which Netflix claims that any such information is privileged;

4. Netflix should confirm that it is not withholding, on privilege grounds, any information other than how it became aware of the 71 prior art references and confirm the other points referred to above; and

5. We need to hear back from you right away as to each of these points

Eugene M Paige, Esq
August 31, 2006
Page 9

### Protective Order

We discussed arrangements for obtaining a protective order in this case. You indicated that you have reviewed Blockbuster's proposed protective order, which I sent to Netflix's counsel Monday night. Confirming Daralyn Durie's letter of August 28, you confirmed that Netflix's counsel will send us Netflix's proposed protective order today, August 31

You confirmed that Netflix's draft will delete Blockbuster's proposed provision for one in-house attorney per side to review access to "Attorney's Eyes Only" information and will add a provision providing special protection for source code You also indicated that Netflix's draft may differ from Blockbuster's draft with regard to the initial treatment of deposition proceedings and transcripts I explained that, during my conversions with Leo Lam about the protective order, he ultimately expressed agreement with Blockbuster's position that depositions and transcripts should not be treated as confidential until so designated on the record or by written notice You said that you had been not been aware of these discussions and will let me know Netflix's position on this point by today.

We also discussed the issue of whether there should be oral argument on the protective order issues. I referred to my email of Monday night to Daralyn Durie on how to proceed in view of the parties' disagreement about whether oral argument is appropriate. In my email, I suggested to Daralyn that the parties present their respective positions on this point in the joint stipulation and let the Magistrate Judge decide whether to have a hearing You said that you will respond to me on this proposal by today.

### Eric Meyer Deposition

During our conference call, I raised with you the deposition of Eric Meyer As you know, we have subpoenaed Mr Meyer for a deposition on Friday, September 8. As I explained, we wish to depose Mr Meyer before our deadline for answering the First Amended Complaint, which is Monday, September 11

You asked why we did not consult with Netflix's counsel before serving Mr Meyer with the subpoena. We relied upon and followed Local Rule 30-1, which states, "A party noticing a deposition of a witness who is not a party or affiliated with a party must also meet and confer about scheduling, but may do so *after serving the non-party witness with a subpoena*" (Emphasis added) Additionally, please bear in mind that I have been waiting since August 18 to consult with Daralyn Durie and Leo Lam about discovery issues

During our call, you suggested that Netflix's counsel are not likely to be able to "squeeze in" a deposition of Mr Meyer on September 8. Please let us know Netflix's position on this date right away, including what alternative dates Netflix proposes if it objects to having the

Eugene M Paige, Esq
August 31, 2006
Page 10

deposition on September 8 and whether, if we set a new date after September 8, Netflix will stipulate to postpone the deadline for the Answer and Counterclaims accordingly [8]

### Rule 26(a) Documents

During our conference, you raised questions about production of documents under Rule 26(a) of the Federal Rules of Civil Procedure.

You asked me to confirm that Blockbuster is presently withholding confidential Rule 26(a) documents pending entry of a protective order. I confirmed that that is the case  As I explained, before producing such documents, Blockbuster wishes to have the protection of a court order, not a mere agreement

You also asked me about the Rule 26(a) documents that Netflix has designated as confidential but unilaterally provided to Blockbuster's counsel, requesting that they be treated consistently with the protective order that we have been discussing. To be specific, Blockbuster's counsel will treat these documents consistently with the provisions regarding "Confidential" (but not "Attorney's Eyes Only") documents in the proposed protective order that we furnished to Netflix's counsel Monday night. If this is not acceptable to Netflix, please notify me immediately

Finally, you asked about production by Netflix of Rule 26(a) documents that Netflix considers "Attorney's Eyes Only"  I do not have authority to agree to the condition imposed by Netflix that no Blockbuster in-house counsel may review such documents  As you know, such a condition is contrary to the position that Blockbuster is strenuously maintaining and wishes to submit to the Magistrate Judge for decision as soon as possible

---

[8] During our conversation, you raised the question whether Netflix should be required to reply to Blockbuster's Answer and Counterclaims within 10 days of the Court's order denying Netflix's motion to dismiss  As this is a new and separate issue, we agreed to discuss it later, after an opportunity to reflect

Eugene M Paige, Esq
August 31, 2006
Page 11

       At the end of our conversation, we agreed that we have fully conferred about these matters. Thank you for your cooperation with regard to the conference. Please let me hear back from you about the pending issues at the earliest possible moment.

                                     Very truly yours,

                                       William J O'Brien

WJO:js

cc:    Jeffrey Chanin, Esq
        Leo Lam, Esq
        Daralyn Durie, Esq

904781_1 DOC