# EXHIBIT I

LAW OFFICES
# KEKER & VAN NEST
L.L.P.

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188

LEO L. LAM
LLAM@KVN.COM

August 30, 2006

**By Email & Facsimile**

William O'Brien, Esq.
Alschuler Grossman Stein & Kahan LLP
1620 26th Street, 4th Floor, North Tower
Santa Monica, CA 90404-4060
Facsimile: 310-907-2000

    Re: *Netflix, Inc. v. Blockbuster, Inc.*, Case No. C-06-2361 WHA (N.D. Cal.)

Dear Bill:

    I write in response to your multiple letters to Daralyn Durie, which we received after the close of business this past Friday.

    As an initial matter, your insistence that we must discuss the matters in your letters "right away" is puzzling, given that until your letter Blockbuster had offered no response to the proposals regarding the protective order that I provided over a week ago. Also, on Monday a week ago, Gene Paige from my office wrote you requesting that Blockbuster provide the allegedly confidential documents it has been withholding from its initial disclosures; we have yet to receive any response to that letter either.

    In order to permit discovery to move forward, Netflix has repeatedly offered to make its attorneys' eyes only documents available to Blockbuster on an outside-counsel's-eyes only basis pending entry of a protective order. Yet Blockbuster has evinced no interest in entering into such a stipulation. Given all of these circumstances, we cannot but view your insistence on an "immediate" response as a tactical one. We are nonetheless willing to meet and confer promptly in good faith on any issues you raise.

    We do not agree with Blockbuster's various arguments that Netflix waived objections to Blockbuster's discovery requests. As explained in my previous correspondence, we had understood that Netflix's responses to both Blockbuster's document requests and interrogatories were due at noon on Monday, August 14. Our understanding in that regard should have been clear from our communications. Your current claim that a careful parsing of your email response to my request for an extension until August 14 would have revealed that you were only agreeing to an extension on the interrogatory response confirms that Blockbuster knew Netflix was expecting to respond to its Requests for Production on August 14, and simply chose to try to gain

William O'Brien
August 30, 2006
Page 2

tactical advantage (as it is doing now), rather than clarify that the document responses were due on the earlier date of August 10. We also do not understand what prejudice Blockbuster could have suffered from receiving Netflix's objections on August 14 rather than August 10.

The lack of prejudice is even more true with respect to the amended interrogatory responses that Netflix submitted. As you know, Netflix's responses and objections to Blockbuster's interrogatories were served, as agreed, by noon on Monday, August 14. The minor amendment a few hours later to include objections based on privilege and work product could not possibly have caused Blockbuster any prejudice. Given that the original responses were timely as you concede, and that the amendment merely clarified the unsurprising fact that Netflix objects to disclosing privileged information, we see no basis for yet another claim that Netflix's objections have been waived.

Turning to the substance of Netflix's interrogatory responses, Netflix is not withholding information based on objections to the vague and ambiguous nature of Blockbuster's interrogatories. Although the literal terms of the interrogatories are so extensive as to encompass anyone who had any connection whatsoever with Netflix's patent applications, such as the assistants who typed words onto paper, we have interpreted them to call for the identity of those who influenced the substantive content of the applications at issue. Likewise, we have interpreted "aware" to refer to when an employee or agent of Netflix had the particular art brought to his or her attention.

Regarding Blockbuster's demand that Netflix provide "exact" dates between August and October 2003 when Netflix became aware of each of 71 separate items cited in its interrogatory response, we can see no possible relevance to knowing the "exact" dates within that time frame, let alone relevance sufficient to justify imposing the hefty burden of attempting to determine such exact dates for each of the 71 items. Netflix's response already states that Netflix became aware of those items in the three-month span between August and October of 2003, after the '450 Patent issued, and well before the '381 Patent issued. We cannot discern any possible difference made by whether item 51 on the list was discovered, hypothetically, on August 1 or September 17 -- or upon any particular date within the identified period. If Blockbuster can plausibly explain the importance of knowing an exact date within that short time period for any particular reference, we would be willing to consider attempting to obtain such information. With respect to Blockbuster's contention that Netflix's privilege objection regarding the circumstances under which these 71 references were uncovered is unfounded, Netflix would be willing to consider providing a further response if Blockbuster would stipulate that it will not claim waiver of any applicable privilege based on such a further response.

With respect to Blockbuster's complaints about Netflix's responses to its document requests, Netflix is (as expressly and repeatedly stated in the responses) willing to meet and confer with you on those objections. A meaningful meet and confer requires more than just a conclusory statement that all of Netflix's objections are boilerplate and meritless. Gene Paige is willing to discuss the objections at any time that is mutually convenient.[1] In any event, I will endeavor generally to address some of the specific complaints raised in your letter now:

---

[1] For your information, Daralyn Durie and I are on business travel most of this week.

William O'Brien
August 30, 2006
Page 3

- Netflix's objections to producing privileged materials in response to Request Nos. 1-3 are not "unfounded on their face." Attorneys were involved in the prosecution of the patents and it should come as no surprise that copies of materials that were at one point either sent to or received from the PTO could potentially have privileged communications or information subsequently written on or about them.

- Netflix will be producing a privilege log in due course, upon the completion of its review of documents for privilege.

- While Blockbuster complains on the one hand that it cannot tell where Netflix is committing to produce documents and where Netflix is not, the very next complaint in the letter (that Netflix has not committed to produce documents in response to certain requests) contradicts that claim of uncertainty. Netflix has endeavored to state clearly in each instance where it is committing to produce documents responsive to a particular request. The responses make clear that Netflix is committing to produce all of its responsive non-privileged documents (or, in cases where Blockbuster requested documents sufficient to fully describe, documents sufficient to fully describe the subject matter at issue) in response to Requests where it has committed to production, with but a few exceptions that Netflix has delineated in its responses:

    - Netflix objected, *inter alia*, to being required to speculate what other businesses may fall into broad categories where only a few examples are named (*e.g.*, Request Nos. 32 and 34). In response to those Requests, Netflix has stated that it will only search for and produce documents relating to the expressly named business entities.

    - Netflix objected, *inter alia*, to producing personal minutiae that might literally be responsive to a request (*e.g.*, Request Nos. 35 and 36). In response to those Requests, Netflix has stated that it will not search for and produce that minutiae.

    - Netflix objected, in response to numerous Requests, to producing information that relates to all of its patents and patent applications (discussed further below).

- Although Netflix has a very different view from Blockbuster's as to the relevance of the documents called for by Request Nos. 21-23, please be aware that despite believing that those documents are not relevant to this action, as stated in the response to each Request, Netflix is committing to produce all responsive, non-privileged documents that are uncovered after a reasonable and diligent search.

- Netflix cannot, and will not, agree to Blockbuster's demand that it produce, in essence, all documents related to all of Netflix's other patent applications that are currently pending, without regard either to the subject matter of the applications

William O'Brien
August 30, 2006
Page 4

or the relevance of the documents relating in some way to those applications. Blockbuster, a direct competitor of Netflix, may not use discovery to engage in a fishing expedition to learn of any and all patent applications that Netflix may have filed, and what invention Netflix claims in each application. The competitive harm of such a disclosure, along with the burden of searching for and producing all documents relating in any way to such applications, far outweighs whatever marginal relevant information, if any, such patent prosecution materials might provide. While Netflix will not accede to a fishing expedition regarding its patent applications, we believe that Blockbuster's request for certain references disclosed in connection with those applications, as set out in its letter, could be satisfied through a more narrowly tailored request. Without conceding either the materiality of such materials to the patent-in-suit, or the relevance of the information sought to any claims or counterclaims in this case, Netflix is willing to consider producing documents sufficient to describe prior art references that Netflix or its agents may have disclosed to the PTO, or may have been made aware of in the course of prosecuting patent applications other than the patents-in-suit, so long as the time period is relevant and other irrelevant, but competitively sensitive, information is protected.

- Finally, the argument that literally dozens of Blockbuster's requests are targeted at "prior art that discloses features recited in the claims" of the patents-in-suit is mistaken and seeks to impose unnecessary burdens on Netflix. What Blockbuster has done is to take snippets of the claim language, ignore their context, and then demand all documents relating to those snippets. Take, for example, Blockbuster's selection of a snippet from the preamble to certain of the patent claims to frame a demand that Netflix produce all documents predating April 28, 1999 relating to "any computer-implemented rental of movies to a customer." Divorced from its place within the rest of the claim language, what does this mean? Taken literally, it would demand every document relating to Netflix's internal operations of any kind prior to April 28, 1999, since Netflix used a computer to implement the rental of movies to customers (though not the patented rental method, which implements a specific method). Moreover, by 1999, virtually all movie rental companies used a computer in some way to implement rentals to customers. Does this request call for any documents that may relate to a conventional brick-and-mortar video store that happens to use computers in order to check out or charge movie rentals to customers, or to keep track of inventory? Such information is irrelevant to this case, or is of such marginal relevance as compared to the burden of identifying and locating it as to outweigh the likelihood that this will lead to the discovery of admissible evidence that Netflix has not already produced. Moreover, it would be difficult, if not impossible, to develop a reasonable search protocol to uncover documents that would relate to such snippets from the patents.

If you have any further questions as to what Netflix has or has not agreed to produce in response to any specific Request, or otherwise wish to confer about the responses, please contact Gene Paige.

William O'Brien
August 30, 2006
Page 5

     In sum, Netflix is willing to meet and confer further with Blockbuster on specific objections and responses in order to obviate any need for court intervention. However, the tone of your letters, sent late on a Friday evening with accompanying demands of "immediate" production, suggests that Blockbuster is interested in attempting to file a motion to compel without engaging beforehand in a good faith meet and confer process. I hope that Blockbuster will not attempt to file any motions without first engaging in a meaningful attempt to discuss and address the objections that Netflix has interposed, and its response herein.

                                                    Very truly yours,

                                                    Leo L. Lam