# EXHIBIT M

Dockets.Justia.com

1  ALSCHULER GROSSMAN STEIN & KAHAN LLP
   Marshall B. Grossman (No. 35958)
2  William J. O'Brien (No. 99526)
   Tony D. Chen (No. 176635)
3  Dominique N. Thomas (No. 231464)
   The Water Garden
4  1620 26th Street
   Fourth Floor, North Tower
5  Santa Monica, CA  90404-4060
   Telephone:  310-907-1000
6  Facsimile:  310-907-2000
   Email:  mgrossman@agsk.com
7          wobrien@agsk.com
           tchen@agsk.com
8          dthomas@agsk.com

9  Attorneys for Defendant and Counterclaimant,
   Blockbuster Inc.

10

11                  UNITED STATES DISTRICT COURT

12                NORTHERN DISTRICT OF CALIFORNIA

13  NETFLIX, INC., a Delaware corporation,    CASE NO. C 06 2361 WHA

14              Plaintiff,                    **ANSWER TO FIRST
                                             AMENDED COMPLAINT;**
15       vs.                                 **COUNTERCLAIMS**

16  BLOCKBUSTER INC., a Delaware             **DEMAND FOR JURY TRIAL**
    corporation, DOES 1-50,
17                                           Complaint Filed:  April 4, 2006
                Defendants.
18

19  BLOCKBUSTER INC., a Delaware
    corporation,
20
                Counterclaimant,
21
         vs.
22
    NETFLIX, INC., a Delaware corporation,
23
                Counterclaim Defendant.
24

25                          **ANSWER**

26       Blockbuster Inc. ("Blockbuster") responds as follows to the First

27  Amended Complaint for Patent Infringement ("Complaint") filed against it by

28  Netflix, Inc. ("Netflix").

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

1      1.      Answering paragraph 1, Blockbuster admits the allegations about

2   Netflix's corporate status and principal place of business, as well as Netflix's

3   website address and that it has for some time been renting DVDs on a subscription

4   basis. Except as expressly admitted, Blockbuster lacks knowledge or information

5   sufficient to form a belief as to the truth of the allegations of paragraph 1 and

6   thereon generally and specifically denies the allegations thereof.

7      2.      Answering paragraph 2, Blockbuster admits that it is a Delaware

8   corporation; that its principal place of business is in Dallas, Texas; that it has a

9   registered agent for service as stated in paragraph 2; that Blockbuster launched

10  Blockbuster Online in 2004; that it has described Blockbuster Online in words

11  similar to those in paragraph 2; that it is registered to do business in the State of

12  California; and that it has conducted business in California and in this District.

13  Except as expressly admitted, Blockbuster lacks knowledge or information

14  sufficient to form a belief as to the truth of the allegations of paragraph 2 and

15  thereon generally and specifically denies the allegations thereof.

16     3.      Answering paragraph 3, Blockbuster admits that this action

17  arises under 35 U.S.C. § 101 *et seq.* and that this Court has subject-matter

18  jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). Blockbuster denies that Netflix

19  has any meritorious claims against Blockbuster. Except as expressly admitted and

20  denied, Blockbuster generally and specifically denies the allegations of

21  paragraph 3.

22     4.      Answering paragraph 4, Blockbuster admits that this Court has

23  personal jurisdiction over Blockbuster and that Blockbuster regularly conducts

24  business in this District. Blockbuster denies that it has committed any act of patent

25  infringement. Except as expressly admitted and denied, Blockbuster generally and

26  specifically denies the allegations of paragraph 4.

27     5.      Answering paragraph 5, Blockbuster does not contest venue in

28  this case and admits that it regularly conducts business in this District. Blockbuster

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL
C 06 2361 WHA

1  denies that it has committed any act of patent infringement. Except as expressly

2  admitted and denied, Blockbuster generally and specifically denies the allegations

3  of paragraph 5.

4      6.    Answering paragraph 6, Blockbuster admits the allegations

5  thereof.

6            **ANSWER TO FIRST CAUSE OF ACTION**

7        **(Alleging Infringement of U.S. Patent No. 7,024,381)**

8      7.    Answering paragraph 7, Blockbuster admits that Netflix is listed

9  on the '381 patent as its assignee; that the number, title, and issuance date of the

10  patent are as stated in paragraph 7; and that a copy of the '381 patent was attached

11  as Exhibit A to the copy of the Complaint served on Blockbuster. Blockbuster

12  lacks knowledge or information sufficient to form a belief as to the truth of the

13  allegation that Netflix is the "sole and exclusive owner" of the '381 patent, and

14  Blockbuster thereon denies that allegation. Blockbuster admits and alleges that the

15  scope of each of the numbered claims of the '381 patent is as stated in those

16  respective claims, and Blockbuster denies that paragraph 7 accurately sets forth the

17  scope of the patent. Except as expressly admitted and denied, Blockbuster

18  generally and specifically denies the allegations of paragraph 7.

19      8.    Answering paragraph 8, Blockbuster generally and specifically

20  denies the allegations thereof. Without limiting the generality of the foregoing

21  denial, Blockbuster denies that it has violated 35 U.S.C. § 271(a) and denies that it

22  has infringed any rights of Netflix under the '381 patent, whether under § 271(a) or

23  any other provision of the patent laws.

24      9.    Answering paragraph 9, Blockbuster denies generally and

25  specifically the allegations thereof. Without limiting the generality of the foregoing

26  denial, Blockbuster denies that it has violated 35 U.S.C. § 271(b) or (c) and denies

27  that it has infringed any rights of Netflix under the '381 patent, whether under

28  § 271(b), § 271(c), or any other provision of the patent laws.

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

2

ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL
C 06 2361 WHA

10.    Answering paragraph 10, Blockbuster admits that it has known of the '381 patent since Blockbuster received Netflix's original complaint in this case. Except as expressly admitted and denied, Blockbuster generally and specifically denies the allegations of paragraph 10. Without limiting the generality of the foregoing denial, Blockbuster further denies that it has infringed or is infringing the '381 patent, whether willfully, deliberately, or in any manner whatsoever; denies that Netflix has suffered or will suffer any injury whatsoever – whether irreparable or otherwise – due to any infringement by Blockbuster; and denies that Netflix is entitled to an injunction or to any other relief, order, or judgment against Blockbuster whatsoever.

## ANSWER TO SECOND CAUSE OF ACTION

### (Alleging Infringement of U.S. Patent No. 6,584,450)

11.    Answering paragraph 11 of the Complaint, Blockbuster repeats its foregoing responses to paragraphs 1 through 10.

12.    Answering paragraph 12 of the Complaint, Blockbuster admits that Netflix is listed on the '450 patent as its assignee; that the number, title, and issuance date of the patent are as stated in paragraph 12; and that a copy of the '450 patent was attached as Exhibit B to the copy of the Complaint served on Blockbuster. Blockbuster lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Netflix is the "sole and exclusive owner" of the '450 patent and, on that basis, Blockbuster denies that allegation. Answering the remainder of paragraph 12, Blockbuster admits and alleges that the scope of each of the numbered claims of the '450 patent is as stated in those respective claims, and Blockbuster denies that paragraph 12 accurately sets forth the scope of the patent. Except as expressly admitted and denied, Blockbuster generally and specifically denies the allegations thereof.

13.    Answering paragraph 13, Blockbuster denies generally and specifically the allegations thereof. Without limiting the generality of the foregoing

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

3

ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL
C 06 2361 WHA

1  denial, Blockbuster denies that it has violated 35 U.S.C. § 271(a) and denies that it

2  has infringed any rights of Netflix under the '450 patent, whether under § 271(a) or

3  any other provision of the patent laws.

4       14.   Answering paragraph 14, Blockbuster denies generally and

5  specifically the allegations thereof. Without limiting the generality of the foregoing

6  denial, Blockbuster denies that it has violated 35 U.S.C. § 271(b) or (c) and denies

7  that it has infringed any rights of Netflix under the '450 patent, whether under

8  § 271(b), § 271(c), or any other provision of the patent laws.

9       15.   Answering paragraph 15, Blockbuster admits that it knew of the

10  '450 patent before Netflix commenced this case. Except as expressly admitted and

11  denied, Blockbuster generally and specifically denies the allegations of

12  paragraph 15. Without limiting the generality of the foregoing denial, Blockbuster

13  further denies that it has infringed or is infringing the '450 patent, whether

14  willfully, deliberately, or in any manner whatsoever; denies that Netflix has

15  suffered or will suffer any injury whatsoever – whether irreparable or otherwise –

16  due to any infringement by Blockbuster; and denies that Netflix is entitled to an

17  injunction or to any other relief, order, or judgment against Blockbuster

18  whatsoever.

19  **ALLEGATIONS COMMON TO BLOCKBUSTER'S AFFIRMATIVE**

    **DEFENSES AND COUNTERCLAIMS**

20

21  **BACKGROUND**

22       16.   In its Complaint, Netflix alleges that Blockbuster's online DVD

23  rental service infringes two U.S. patents, Nos. 6,584,450 (the '450 patent)

24  and 7,024,381 (the '381 patent). Blockbuster denies Netflix's allegations of

25  infringement, as set forth herein. In addition, Blockbuster sets forth affirmative

26  defenses that both the '450 patent and the '381 patent are invalid and unenforceable

27  and that Netflix's Complaint is barred by patent misuse, laches, and estoppel.

28  Blockbuster also counterclaims against Netflix, under federal antitrust laws, for

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

4

ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL
C 06 2361 WHA

1    monopolizing and attempting to monopolize the DVD rental market through

2    fraudulent patenting and sham litigation.  Additionally, Blockbuster counterclaims

3    for a Court judgment declaring that Blockbuster has not violated any patent rights

4    of Netflix.

5            17.    The patents asserted by Netflix fail to describe any technology

6    that was not already widely known and in general use well before any purported

7    inventions of Netflix.  Instead, the patents merely describe use of existing

8    technology to practice business methods for renting movies and other items to

9    customers.  The business of renting movies, as well as renting other items, was

10   widely known long before any purported invention by Netflix.  So was renting on a

11   subscription basis.  From at least the mid-1990s, it was obvious to adapt "brick-

12   and-mortar" businesses to the Internet – as Netflix did with Blockbuster's highly

13   popular movie rental business.  The advent of the DVD format in the late 1990s

14   provided the opportunity to send and receive video disks by mail at a far lower cost

15   than VHS videotapes, which increased the economic feasibility of renting movies

16   over the Internet.  Netflix merely exploited an obvious market opportunity created

17   by developments in Internet and DVD technology, which had been entirely the

18   work of others.  Netflix is not entitled to monopolize the resulting opportunities to

19   rent DVDs over the Internet.

20          18.    The '450 patent asserted by Netflix is particularly broad and is

21   not even limited to DVD or movie rental.  It purports to cover stated methods for

22   renting any and all "items" whatsoever.  Nor are the '450 patent claims limited to

23   online rentals.  They could cover in-store rentals having nothing to do with the

24   Internet.

25          19.    While the claims of the later '381 patent require rental of

26   "movies" and use of the Internet, along with other limitations, they too are directed

27   to rental business methods and, like the claims of the '450 patent, are overbroad and

28   invalid, as set forth below.

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

5

ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL
C 06 2361 WHA

1    20.    Various claims of the '450 and '381 patents recite additional

2    features related to subscription rental and to implementing online subscription –

3    such as a "queue" of desired items.  However, none of the claims is properly

4    patentable in view of the business methods that others had already used before

5    Netflix and the teachings of publications, products, and patents that predated

6    Netflix's purported inventions (all as defined in 35 U.S.C. § 102 and collectively

7    referred to as "prior art").  Blockbuster is informed and believes and thereon alleges

8    that the '450 and '381 patents mostly or entirely claim subject matter that was

9    already known and used by others before Netflix.  Such "anticipation" by prior art

10    renders some or all of Netflix's patent claims invalid because they lack the novelty

11    required by 35 U.S.C. § 102.  Blockbuster is informed and believes and thereon

12    alleges that the patent claims are also invalid because the matter claimed was

13    obvious under 35 U.S.C. § 103, as well as for other reasons alleged below.

14    21.    Blockbuster is in the process of identifying and locating prior art

15    that illustrates and contributes to the invalidity of the patents asserted by Netflix.

16    Examples include:

17    a.    Prior art subscription methods, systems, and publications,

18    ranging from libraries for the blind and other subscription libraries to cable

19    and satellite television services and pay television services such as HBO and

20    Showtime, as well as TiVo and other video and film subscription services;

21    b.    Prior art video rental stores and related methods, systems,

22    and publications, including long-standing and widely-known practices in the

23    video rental industry, such as the use of waiting or reservation lists for out-of-

24    stock videos;

25    c.    Prior art video rental on a subscription basis with no due

26    dates and no late fees, as well as related methods, systems, and publications;

27    d.    Prior art audio rental stores and services and related

28    methods, systems, and publications, including audio rental on a subscription

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

6

1  basis and the use of an ordered list – in other words, a "queue" – of items

2  desired for subscription rental;

3         e.     Prior art e-commerce businesses and related methods,

4  systems, and publications, including prior art related to the digital display,

5  selection, and ordering of items over the Internet;

6         f.     Prior art patents on the foregoing and on other material

7  subjects, including, for example, U.S. Patent No. 5,699,526 (the '526 patent),

8  assigned to NCR Corporation, entitled "Ordering and Downloading

9  Resources from Computerized Repositories," and issued on December 16,

10  1997, which disclosed, among other things, online search and retrieval based

11  on item attributes in digital form and permitting a customer to establish an

12  "interest list" of desired items; and

13         g.     Blockbuster's own prior art U.S. Patent No. 5,459,306,

14  entitled "Method and System for Delivering On Demand, Individually

15  Targeted Promotions," and issued on October 17, 1995.  This prior art patent

16  disclosed, among other things, computer-implemented automatic selection of

17  movies for potential rental to individual customers.

18      22.   As is detailed below, Netflix obtained the '450 and '381 patents

19  without disclosing to the Patent Office prior art that Netflix knew about and that

20  was material to Netflix's patent applications.  Blockbuster is informed and believes

21  and thereon alleges that, by failing to disclose such prior art, Netflix violated its

22  duty of "candor and good faith" to the Patent Office (as explained further below)

23  and that, as a result, the '450 and '381 patents are not only invalid but also

24  unenforceable based on inequitable conduct.

25  **HISTORY OF NETFLIX'S PATENTS**

26      23.   Netflix applied for the '450 patent on April 28, 2000.  The

27  application for the '450 patent was designated by Serial No. 09/561,041 and was

28  filed in the names of W. Reed Hastings, Marc B. Randolph, and Neil Duncan Hunt

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

7

ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL
C 06 2361 WHA

1  (collectively, the "Named Inventors").

2      24.   One of the Named Inventors, Reed Hastings, is the Chief

3  Executive Officer and President of Netflix, another, Marc Randolph, is former CEO

4  and President of Netflix or its predecessor entity, and the third, Neil Duncan Hunt,

5  is Netflix's Chief Product Officer.

6      25.   The '450 patent was issued on June 24, 2003.  The patent

7  purports to broadly cover stated methods for rental of any "items" as alleged above.

8  Blockbuster is informed and believes and thereon alleges that the '450 patent is

9  blatantly over-broad, anticipated, obvious, and otherwise invalid, as well as

10  unenforceable, as is described in detail below.

11      26.   Blockbuster began publicly operating its online video rental

12  service ("Blockbuster Online") in August 2004.  Although Netflix was well aware

13  of Blockbuster Online from that time forward, and was aware that Blockbuster was

14  investing millions of dollars developing and promoting Blockbuster Online, Netflix

15  did not assert the '450 patent against Blockbuster at that time or for the next

16  eighteen months.  Throughout that time and up through the date on which it filed

17  this lawsuit, Netflix provided no notice or warning to Blockbuster that Netflix

18  believed Blockbuster was infringing the '450 patent.  Blockbuster is informed and

19  believes and thereon alleges that Netflix also failed to assert any infringement

20  claims during this time against any other companies then operating online DVD

21  rental business, such as Wal-Mart.

22      27.   Unbeknownst to Blockbuster and to the public at large, Netflix

23  had applied for the '381 patent on May 14, 2003, some five weeks before the '450

24  patent was issued.  Netflix filed the application for the '381 patent, Serial

25  No. 10/438,727, in the names of the Named Inventors, as a purported and sham

26  "continuation" of the application for the '450 patent.

27      28.   Information about the second application was not available to

28  Blockbuster or the public at large until April 4, 2006.  It was on that date that the

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP                                    8            ANSWER TO FIRST AMENDED COMPLAINT;
                                                          COUNTERCLAIMS; DEMAND FOR JURY TRIAL
                                                          C 06 2361 WHA

1    '381 patent was issued and this very lawsuit was filed.

2         29.    Blockbuster is informed and believes and thereon alleges that

3    the '381 patent, like the '450 patent, is invalid and unenforceable for the reasons

4    alleged below.

5         30.    The following timeline illustrates key events described above:

6

7    ### Time Line: *Applications for and Issuance of*

8    *the '450 and '381 Patents*

9

10   **April 28, 2000: Netflix files application for '450 patent**

11

12

13

14

15

16

17   **May 14, 2003: Netflix files application for '381 patent**

18   **June 24, 2003: '450 patent issues**

19

20   **August 11, 2004: Blockbuster launches**    **For 33 months,**
     **"Blockbuster Online" and**              **Netflix does not**
21   **subsequently invests millions**          **disclose**
     **promoting online DVD rental**            **information about**
22                                              **pending '381**
                                                **patent and takes**
23                                              **no action to**
                                                **enforce '450 patent**
24

25

26   **April 4, 2006: '381 patent issues; Netflix sues Blockbuster the same day**

27

28   #

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

9

## NETFLIX'S DUTY OF CANDOR TO THE PATENT OFFICE

31.    Netflix's officers, employees, attorneys, assignors, and agents involved for applying for and obtaining the '450 and '381 patents (collectively, "Netflix's Applicants and Representatives") owed a legal and ethical "duty of candor and good faith" to the Patent Office under the decisional law of the United States and the regulations and procedures of the Patent Office, including 37 C.F.R. § 1.56(a).

32.    This "duty of candor and good faith" extended to all "[i]ndividuals associated with the filing and prosecution of" the patent applications that resulted in the '450 and 381 patents," 37 C.F.R. § 1.56(a), including, as to each application:

> "(1) Each inventor named in the application;
>
> (2) Each attorney or agent who prepare[d] or prosecute[d] the application; [and]
>
> (3) Every other person who [was] substantively involved in the preparation or prosecution of the application and who [was] associated with the inventor, with the assignee or with anyone to whom there [was] an obligation to assign the application."

37 C.F.R. § 1.56(c).

33.    Netflix's Applicants and Representatives who were under a duty of candor and good faith to the Patent Office in applying for and obtaining the '450 and 381 patents included the Named Inventors, the patent attorneys acting on behalf of the Named Inventors and Netflix in applying for and prosecuting the applications (the "Patent Attorneys").

34.    The duty of candor and good faith owed by Netflix's Applicants and Representatives' included a continuing obligation, at all times during the

ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL.
C 06 2361 WHA

1    pendency of either of the applications for the '450 and '381 patents, to disclose to

2    the Patent Office all prior art known to be material to a pending application.

3        35.    Netflix's Applicants and Representatives submitted a

4    declaration and power of attorney (the "Declaration") to the Patent Office in

5    support of both the application for the '450 patent and the application for the '381

6    patent. The Declaration states that it was signed by Named Inventor W. Reed

7    Hastings on September 28, 2000, by Neil Duncan Hunt on September 29, 2000, and

8    by Marc B. Randolph on October 3, 2000.

9        36.    In the Declaration, each of the Named Inventors expressly

10   "acknowledge[d] the duty to disclose information which is known to me to be

11   material to patentability in accordance with Title 37, Code of Federal Regulations,

12   Section 1.56."

13       37.    Each Named Inventor also stated in the Declaration:

14           "I hereby declare that all statements made herein of my

15           own knowledge are true and that all statements made on

16           information and belief are believed to be true; and

17           further that these statements were made with the

18           knowledge that willful false statements and the like so

19           made are punishable by fine or imprisonment, or both,

20           under Section 1001 of Title 18 of the United States Code

21           and that such willful false statements may jeopardize the

22           validity of the application or any patent issued thereon."

23   **NETFLIX'S VIOLATIONS OF THE DUTY OF CANDOR**

24       38.    Blockbuster is informed and believes and thereon alleges that

25   Netflix's Applicants and Representatives violated their legal and ethical duties of

26   candor and good faith in applying for, prosecuting applications for, and obtaining

27   the '450 and '381 patents, by engaging in inequitable and deceptive conduct as

28   alleged below.

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

11

ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL
C 06 2361 WHA

1        39.    Blockbuster is informed and believes and thereon alleges that

2    Netflix obtained the '450 and '381 patents by means of a scheme in which some or

3    all of Netflix's Applicants and Representatives manipulated and distorted the patent

4    process by inequitable conduct including:

5        a.    Obtaining an absurdly broad and invalid patent (the '450

6    patent) without proper and meaningful examination by concealing and failing

7    to disclose any prior art before the '450 patent was issued, in violation of the

8    duty of candor that was owed by Netflix's Applicants and Representatives

9    and that the Named Inventors had acknowledged under penalty of perjury;

10        b.    Failing to disclose any prior art in applying for and

11    obtaining the '450 patent, despite being aware of multiple items of prior art,

12    as alleged below, and despite their acknowledged and well-established duty

13    to disclose all known material prior art to the Patent Office;

14        c.    Prior to the issuance of the '450 patent, filing a

15    "continuation" patent application to pursue claims narrower than – and

16    therefore possibly more defensible in litigation than – the blatantly over-

17    broad claims of the '450 patent, although still broader than permitted under

18    the patent laws;

19        d.    During the pendency of the continuation application

20    (which resulted in the '381 patent), flooding the Patent Office with such a

21    large volume of prior art or possible prior art (more than 100 references) that

22    the examiners would be overwhelmed and overtaxed in their attempt to

23    examine the application;

24        e.    Under cover of its belatedly large submissions, still

25    withholding certain known and material prior art throughout the pendency of

26    the application for the '381 patent, as alleged below;

27        f.    Withholding information about the continuation

28    application from the public and from competitors until issuance of the '381

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

12

ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL
C 06 2361 WHA

1    patent;

2    g.    Foregoing assertion or enforcement of the '450 patent

3    pending issuance of the '381 patent despite actual knowledge of competitive

4    online DVD rental businesses, including Blockbuster Online;

5    h.    Deceptively lulling and enticing competitors, including

6    Blockbuster, into entering into and remaining in the online DVD rental

7    market after they reviewed the '450 patent and reasonably concluded that

8    Netflix lacked any valid and enforceable patent rights that would prevent

9    their entry into the market;

10    i.    Benefiting from the promotion of the online DVD rental

11    market by Blockbuster and other competitors and their creation of an

12    expanded group of customers interested in or accustomed to renting DVDs

13    online; and

14    j.    On the very day that the '381 patent was issued, suing

15    Blockbuster, without warning, for alleged infringement of both the '381 and

16    '450 patents.

17    40.    In January 2005, Netflix CEO and Named Inventor Reed

18    Hastings met with Blockbuster's then-Executive Vice President and General

19    Counsel, Edward Stead.  Hastings praised Blockbuster's competitive position in the

20    online rental business and asked Stead when he had figured out that Netflix's '450

21    patent was a "joke."

22    41.    It was only after having wrongfully obtained issuance of the

23    '450 patent that Netflix's Applicants and Representatives began submitting prior art

24    to the Patent Office in connection with the application for the '381 patent.

25    Ultimately, Netflix's Applicants and Representatives submitted more than 100

26    references to prior art or possible prior art in connection with the '381 patent

27    application.   Netflix's Applicants and Representatives disclosed none of these

28    references in obtaining the '450 patent, even though at least 100 of them predated

13

1  that patent and therefore could have been submitted in connection with it.

2       42.   Even after having submitted more than 100 prior art references

3  to the Patent Office, Netflix's Applicants and Representatives withheld and failed

4  to disclose other material prior art that they knew about, as alleged below.

5       43.   Blockbuster is informed and believes and thereon alleges that, in

6  engaging in all their conduct alleged herein, the Applicants and Representatives

7  were acting on behalf of Netflix and that Netflix directed, controlled, and ratified

8  their conduct.

9  **PRIOR ART CONCEALED BY NETFLIX**

10       44.   In addition to failing to disclose any of more than 100 prior art

11  references described above during the pendency of the '450 patent application,

12  Netflix's Applicants and Representatives knew about other prior art but failed to

13  disclose it to the Patent Office in connection with either of the two patent

14  applications. Such prior art included some or all of the following:

15       a.   Certain prior art United States patents purportedly owned

16      by NCR Corporation (the "NCR Patents"), which Netflix knew about while

17      both the application for the '450 patent and the application for the '381 patent

18      were pending, but which Netflix never submitted to the Patent Office;

19       b.   Certain prior art video rental stores and related methods,

20      systems, and publications, including long-standing and widely-known

21      practices in the video rental industry, such as the use of waiting or reservation

22      lists for out-of-stock videos;

23       c.   Certain prior art subscription methods, systems, and

24      publications, including cable and satellite television services and pay

25      television services such as HBO and Showtime, as well as TiVo and other

26      video and film subscription services; and

27       d.   Certain prior art e-commerce businesses and related

28      methods, systems, and publications, including prior art related to the digital

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

14

ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL
C 06 2361 WHA

1    display, selection, and ordering of items over Internet.

2        45.    The NCR Patents include, without limitation:

3            a.    The '526 patent, entitled "Ordering and Downloading

4    Resources from Computerized Repositories," which names as inventor David

5    M. Siefert, issued December 16, 1997, on an application filed August 21,

6    1996;

7            b.    U.S. Patent No. 5,951,643 (the '643 patent), entitled

8    "Mechanism for Dependably Organizing and Managing Information for Web

9    Synchronization and Tracking Among Multiple Browsers," which names as

10   inventors James A. Shelton, Michael I. Ingrassia, Jr., and Thomas M. Roland,

11   issued September 14, 1999, on an application filed October 6, 1997;

12           c.    U.S. Patent No. 5,991,791 (the '791 patent), entitled

13   "Security Aspects of Computer Resource Repositories," which names as

14   inventor David M. Siefert, issued November 23, 1999, on an application filed

15   January 10, 1997;

16           d.    U.S. Patent No. 6,026,403 (the '403 patent), entitled

17   "Computer System for Management of Resources," which names as inventor

18   David M. Siefert, issued February 15, 2000, on an application filed

19   March 24, 1994;

20           e.    U.S. Patent No. 6,169,997 (the '997 patent), entitled

21   "Method and Apparatus for Forming Subject (Context) Map and Presenting

22   Internet Data According to the Subject Map," which names as inventors

23   Karen A. Papierniak, James E. Thaisz, Luo-Jen Chiang, and Paresh B. Shah,

24   issued January 2, 2001, on an application filed April 29, 1998;

25           f.    U.S. Patent No. 6,253,203 (the '203 patent), entitled

26   "Privacy-Enhanced Database," which names as inventors Kenneth W.

27   O'Flaherty, Richard G. Stellwagen, Jr., Todd A. Walter, Reid M. Watts,

28   David A Ramsey, Adriaan W. Veldhuisen and Renda K. Ozden, issued

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

15        ANSWER TO FIRST AMENDED COMPLAINT;
          COUNTERCLAIMS; DEMAND FOR JURY TRIAL
          C 06 2361 WHA

1    June 26, 2001, on an application filed October 2, 1998;

2              g.    U.S. Patent No. 6,480,855 (the '855 patent), entitled

3    "Managing a Resource on a Network Where Each Resource Has an

4    Associated Profile with an Image," which names as inventor David M.

5    Siefert, issued November 12, 2002, on an application filed August 22, 2000;

6              h.    U.S. Patent No. 6,502,096 (the '096 patent), entitled

7    "Computerized Asset Management System," which names as inventor David

8    M. Siefert, issued December 31, 2002, on an application filed August 22,

9    2000; and

10             i.    U.S. Patent No. 6,714,931 (the '931 patent), entitled

11   "Method and Apparatus for Forming User Sessions and Presenting Internet

12   Data According to the User Sessions," which names as inventors Karen A.

13   Papierniak, James E. Thaisz, Luo-Jen Chiang, Anjali M. Diwekar, issued

14   March 30, 2004, on an application filed April 29, 1998.

15        46.    The '526 patent is prior art to both the '450 and '381 patents

16   under 35 U.S.C. § 102(b). Blockbuster is informed and believes and thereon

17   alleges that the subject matter disclosed in each of the NCR Patents is prior art to

18   both the '450 and '381 patents under, without limitation, 35 U.S.C. § 102(a) and

19   (e).

20        47.    Netflix's own admissions in a case pending in this Court,

21   *Netflix, Inc. v. NCR Corporation*, Case No. C 06 1892 ("*Netflix v. NCR*") show that

22   Netflix was well aware of the NCR Patents during the pendency and prosecution of

23   the applications for both the '450 and '381 patents. Netflix filed *Netflix v. NCR*, on

24   March 10, 2006, seeking a declaratory judgment with respect to the same NCR

25   Patents listed above. That complaint shows that, since on or about January 17,

26   2003, Named Inventor Reed Hastings, who is also the Chief Executive Officer and

27   President of Netflix, has been aware, not only that the prior art NCR Patents exist,

28   but also that NCR claims that they cover the very same online rental service

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

16

ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL
C 06 2361 WHA

1     claimed in Netflix's patents.

2          48.    Netflix's allegations in *Netflix v. NCR* include each of the

3     following admissions showing its knowledge of the NCR Patents:

4             a.     "On January 7, 2003, Bruce A. Langos, Vice President of

5     Business Operations and Intellectual Property Management at NCR, wrote to

6     Reed Hastings, the Chief Executive Officer of Netflix claiming notice [sic]

7     'that various Netflix.com offerings infringe at least the following patents

8     owned by NCR Corporation.'" (*Netflix v. NCR* Compl., ¶ 22.)

9             b.     Mr. Langos's letter "identified ten separate patents that

10     NCR claimed were infringed, and enclosed several exemplary claim charts,

11     each of which accused Netflix of infringing the claims described therein."

12     (*Id.*) These ten patents evidently included the nine NCR Patents listed above,

13     which are identified in the paragraphs immediately preceding the above-

14     quoted paragraph of Netflix's complaint in *Netflix v. NCR*. (*Id.* ¶ 22; *see id.*

15     ¶¶ 12-21.)

16             c.     NCR "even threatened to sue for an injunction should

17     Netflix not license NCR's technology . . . ." (*Id.* ¶ 22.)

18             d.     "On August 1, 2005, Mr. Langos once again wrote to

19     Mr. Hastings of Netflix concerning '[Netflix's] infringements of NCR

20     patents . . . '" and, on this occasion, Mr. Langos "enclosed updated claim

21     charts that again accused Netflix of infringing the claims described therein,

22     and threatened that should Netflix refuse to license the technology NCR was

23     'prepared to pursue other options.'" (*Id.* ¶ 23.)

24             e.     "NCR continued to press its allegations of infringement"

25     thereafter. (*Id.* ¶ 24.) NCR's counsel met with Netflix's counsel on

26     November 28, 2005, "during which meeting NCR's counsel once again

27     asserted that Netflix infringed the NCR patents, and that NCR was prepared

28     to file suit against Netflix to enforce its patents." (*Id.*)

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

17

ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL
C 06 2361 WHA

1          f.    "[O]n January 11, 2006, counsel for NCR sent via email

2     to San Francisco revised charts purporting to show that Netflix was currently

3     infringing the claims described therein." (*Id.*)

4          49.    Netflix's own complaint in *Netflix v. NCR* shows that the letter

5     bringing the prior art NCR Patents to Netflix's attention was addressed to Netflix

6     CEO and Named Inventor Reed Hastings more than six months before the '450

7     patent issued.  Although NCR expressly described its prior art patents as

8     encompassing the same online video rental service that Netflix was attempting to

9     patent, Netflix's Applicants and Representatives failed to disclose any of the NCR

10    Patents to the Patent Office.

11         50.    On March 10, 2006, prior to the issuance of the '381 patent,

12    Netflix had even filed suit against NCR over the NCR Patents, alleging that, "[b]y

13    virtue of NCR's actions, Netflix has a reasonable apprehension that NCR intends to

14    sue it for infringing the NCR patents" (*id.* ¶ 25) and that "[a]n actual and judiciable

15    controversy exists between Netflix and NCR concerning whether Netflix infringes

16    any valid claim of the NCR patents." (*Id.* ¶ 27.)

17         51.    Despite all of these alleged communications and notices from

18    NCR about the NCR Patents, the ongoing controversy alleged by Netflix over the

19    NCR Patents, and Netflix's expressed apprehension that it would be sued for

20    infringement of those patents, Netflix and its Applicants and Representatives failed

21    to disclose any of the NCR Patents to the Patent Office at any time up through and

22    including the date of issuance of the '381 patent on April 4, 2006.

23         52.    Regardless of whether the claims of the NCR Patents do in fact

24    cover online DVD rental services like those operated by Netflix and Blockbuster,

25    and regardless of whether those claims are legally valid, NCR's assertion of its

26    patents against Netflix's online rental service provided Netflix with ample notice

27    that the patents were material prior art and should be disclosed to the Patent Office

28    for its consideration in deciding whether Netflix's then-pending applications for

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

18

ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL
C 06 2361 WHA

1   patents on that service met the statutory requirements of novelty and

2   nonobviousness. Instead, even after Netflix had sued NCR over the issue of

3   whether the NCR Patents cover the same rental service Netflix was engaged in

4   patenting, Netflix and its Applicants and Representatives failed to submit the NCR

5   Patents to the Patent Office.

6          53.   The NCR patents are replete with disclosures of features that are

7   the same as or similar to features Netflix has claimed in the '450 and '381 patents.

8   To provide only a few examples:

9          a.   The '450 and '381 patents are directed to a computer-

10   implemented method and system for renting items – or sometimes, more

11   specifically, movies – to customers. Similarly, NCR's '526, '403, '791, '855,

12   and '096 patents disclose a computer-implemented method for distributing

13   items including movies and video tapes to customers. (*E.g.*, '526 patent, col.

14   2:55-57, 5:10-15 & Fig. 1B.) All nine NCR Patents disclose computer-

15   implemented methods and systems for online management and provision of

16   resources.

17          b.   Ninety-five claims of the '450 patent include "receiving

18   one or more item selection criteria that indicates one or more items that a

19   customer desires to rent . . . ." ('450 patent, Claims 1-95.) NCR's '526,

20   '403, '791, '855, and '096 patents disclose use of item selection criteria – for

21   example, a "display [that] prompts the user to request a search based on three

22   criteria (or less)." (*E.g.*, '526 patent, col. 10:57-58 & Figs. 9-11.)

23          c.   All fifty-one claims of the '381 patent include "providing

24   electronic digital information that causes one or more attributes of movies to

25   be displayed . . . ." The NCR patents disclose just such a process. Electronic

26   digital information is provided that allows resources (including movies) to be

27   selected. This causes display of "an associated PROFILE, which contains

28   descriptive information about the RESOURCE." (*E.g.*, '526 patent,

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

19

ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL.
C 06 2361 WHA

1    col. 4:42-43.)

2           d.     All claims of the '381 patent, and several claims of the

3    '450 patent, include an "item rental queue" or "movie rental queue"

4    containing items desired by a customer.  ('381 patent, Claims 1-51; '450

5    patent, Claims 7, 22, 42, 57, 72, 87.)  In the claims of the '381 patent, the

6    queue is "establish[ed] in electronic digital form, from electronic digital

7    information received over the Internet . . . ."  ('381 patent, Claims 1, 14, 24,

8    34, 44.)  NCR's '526, '791, '403, '855, and '096 patents all disclose a

9    process of establishing in electronic digital form, from electronic digital

10    information received over a computer network, a list associated with a

11    customer that indicates his or her interests in searching for resources.  (*E.g.,*

12    '526 patent, col. 18:48-49.)

13           e.     All independent claims of the '381 patent provide for

14    electronically updating a movie rental queue in response to electronic digital

15    information received from a customer over the Internet.  ('381 patent,

16    Claims 1, 14, 24, 34, 44.)  This ability to update the list is what apparently

17    makes it a so-called "dynamic queue" as touted by Netflix.  (First Am.

18    Compl. ¶ 7.)  Numerous claims of the '381 patent specifically recite updating

19    the queue by adding or deleting items.  ('381 patent, Claims 3, 4, 16, 17, 26,

20    27, 36, 37, 46, 47.)  Similarly, NCR's '526, '799, '403, '855, and '096

21    patents all disclose updating a customer's interest list via a computer

22    network, including the ability to "add or delete interests in your current

23    listing."  (*E.g.,* '526 patent, col. 18:49-51.)

24           f.     Claims of both the '450 and '381 patents include the step

25    of delivering items to a customer by mail or via a "delivery agent."  ('450

26    patent, Claims 12, 13, 27, 28, 34, 35, 62, 64, 77, 78; '381 patent, Claims 7,

27    20, 30, 40, 48.)  NCR's '526, '791, '403, '855, and '096 patents disclose

28    delivery of items electronically selected by a customer via an organization's

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

20

ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL
C 06 2361 WHA

1    "internal mail service," or a "public, common carrier . . . ." (*E.g.*, '526
2    patent, col. 15:23-27.)

3        54.    Blockbuster is informed and believes and thereon alleges that
4    the NCR Patents and all of the other prior art that Netflix's Applicants and
5    Representatives knew about and failed to disclose to the Patent Office, as described
6    above, was material to both the '450 and '381 patents.

7        55.    Blockbuster is informed and believes and thereon alleges that
8    the deceptive and inequitable conduct of Netflix and its Applicants and
9    Representatives as alleged herein occurred at locations including, without
10    limitation, Netflix's principal place of business in Los Gatos, California, and the
11    offices of Netflix's patent attorneys in San Jose, California, as well as being
12    reflected in, and implemented through, documents transmitted to the Patent Office
13    in Alexandria, Virginia.

14        56.    Blockbuster is informed and believes and thereon alleges that
15    the deceptive and inequitable conduct of Netflix and its Applicants and
16    Representatives as alleged herein occurred at times including the entire period from
17    April 28, 2000 through June 24, 2003, during which the application for the '450
18    patent was pending, and the entire period from May 14, 2003 through April 4,
19    2006, during which the application for the '381 patent was pending.

20    **NETFLIX'S DECEPTIVE INTENT**

21        57.    Blockbuster is informed and believes and thereon alleges that
22    Netflix's Applicants and Representatives knew of the materiality of the prior art
23    that they failed to disclose to the Patent Office as alleges above.

24        58.    Blockbuster is informed and believes and thereon alleges that, in
25    engaging in the deceptive and inequitable conduct alleged above, including their
26    failures to disclose material prior art, Netflix's Applicants and Representatives
27    intended to deceive the Patent Office.

28        59.    The conduct demonstrating such deceptive intent has included,

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

21

ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL
C 06 2361 WHA

1   without limitation, the acts and omissions by Netflix's Applicants and

2   Representatives as alleged above and as illustrated by the following time line:

3                **Time Line: *Illustrative Circumstances***

4                       ***of Netflix's Deceptive Intent***



*April 28, 2000: Netflix files its application for the '450 patent*

*Sept. 28-Oct. 3, 2000: Netflix inventors acknowledge, under oath, their duty to disclose prior art to the Patent Office*

*January 7, 2003: NCR notifies Netflix of claim that NCR Patents cover the system Netflix is patenting; <u>Netflix does not disclose NCR Patents to the Patent Office</u>*

*April 7, 2003: Patent Office mails Netflix notice of allowance of '450 patent*

*May 14, 2003: Netflix files application for '381 patent*

*June 24, 2003:'450 patent issues; <u>Netflix takes no action to assert it</u>*

*August 11, 2004: Blockbuster launches "Blockbuster Online" and subsequently invests millions promoting online DVD rental*

*August 1, 2005: NCR again asserts that the NCR Patents cover Netflix.*

*March 10, 2006: Netflix files suit against NCR over the NCR Patents, but <u>still does not disclose them</u> to the Patent Office*

*April 4, 2006: '381 patent issues; Netflix sues Blockbuster the same day*

*Netflix submits no prior art to the Patent Office until <u>after</u> issuance of the '450 patent*

*Netflix continues to <u>withhold other prior art</u> (including the NCR Patents) from the Patent Office*

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

22

ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL
C 06 2361 WHA

## BLOCKBUSTER'S AFFIRMATIVE DEFENSES TO NETFLIX'S COMPLAINT

### FIRST AFFIRMATIVE DEFENSE

#### (Invalidity)

60.    Blockbuster repeats all allegations of paragraphs 16 through 59 above.

61.    Either or both of the '450 and '381 patents are invalid for failure to satisfy one or more of the conditions of Title 35 of the United States Code, including, without limitation, Sections 101, 102, 103, and 112 thereof.

62.    The reasons for the invalidity of the patents include that they claim subject matter that was and is unpatentable because it had already been conceived of by others, was already publicly known, and was otherwise within one or more of the categories of prior art established by 35 U.S.C. § 102.

63.    The reasons for the invalidity of the patents also include that they claim subject matter that was and is unpatentable because it was obvious under 35 U.S.C. § 103.

64.    Blockbuster is informed and believes and thereon alleges that either or both of the '450 and '381 patents fail to set forth what the inventors regarded as the best mode for practicing the claimed inventions, in violation of 35 U.S.C. § 112, and fail to fulfill the written description requirement of §112.

65.    Blockbuster is informed and believes and thereon alleges that, depending on the constructions of the claims of the '450 and '381 patents as ultimately determined in this litigation, some or all of those claims may also fail to fulfill the definiteness requirement of 35 U.S.C. § 112.

#
#
#
#

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

23

ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL.
C 06 2361 WHA

**SECOND AFFIRMATIVE DEFENSE**

**(Unenforceability)**

66.    Blockbuster repeats all allegations of paragraphs 16 through 59 above and of Blockbuster's First and Second Counterclaims below.

67.    Blockbuster is informed and believes and thereon alleges that the '450 and '381 patents are unenforceable because of inequitable conduct in obtaining the patents.  Blockbuster's grounds for this defense include, without limitation, the failure of Netflix's Applicants and Representatives to disclose material prior art as alleged above.

68.    A reasonable examiner would have been substantially likely to consider the prior art that Netflix knew about but failed to disclose important in deciding whether to allow the applications for the '450 and '381 patents (including amendments to those applications) to issue as patents.

69.    Blockbuster is informed and believes and thereon alleges that, in failing to disclose material prior art, Netflix's Applicants and Representatives knew of the prior art and knew of its materiality to either or both of the applications for the '450 patent and the '381 patent.

70.    Blockbuster is informed and believes and thereon alleges that, in failing to disclose material prior art, Netflix's Applicants and Representatives intended to deceive the Patent Office.

**THIRD AFFIRMATIVE DEFENSE**

**(Patent Misuse)**

71.    Blockbuster repeats all allegations of paragraphs 16 through 59 above and of Blockbuster's First and Second Counterclaims below.

72.    Blockbuster is informed and believes and thereon alleges that Netflix has misused each of the '450 and '381 patents and, as a result, is barred from asserting either of them against Blockbuster.

#

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

24

ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL
C 06 2361 WHA

## FOURTH AFFIRMATIVE DEFENSE

### (Laches)

73.    Blockbuster repeats all allegations of paragraphs 16 through 59 above and of Blockbuster's First and Second Counterclaims below.

74.    Netflix has unreasonably and inexcusably delayed its assertion of the '450 patent against Blockbuster, causing material prejudice to Blockbuster. Such prejudice has included Blockbuster's expenditure of millions of dollars on its Blockbuster Online system.

75.    As a result of its delay in asserting the '450 patent, Netflix is barred from asserting some or all of its claims against Blockbuster and from obtaining any of the relief that it has requested.

76.    Blockbuster is informed and believes and thereon alleges that Netflix unreasonably and inexcusably delayed its filing and prosecution of a patent application for the subject matter claimed in the '381 patent, as part of the deceptive and manipulative scheme alleged above and that Netflix's unreasonable and unexplained delay constituted an egregious misuse of the patent system.

77.    Netflix's delay in filing and prosecuting a patent application for the subject matter claimed in the '381 patent has caused material prejudice to Blockbuster including Blockbuster's expenditure of millions of dollars on its Blockbuster Online system without notice of Netflix's claims to such subject matter or an opportunity to contest such claims.  As a result of this delay, Netflix is barred from asserting some or all of its claims against Blockbuster and from obtaining any of the relief that it has requested.

## FIFTH AFFIRMATIVE DEFENSE

### (Estoppel)

78.    Blockbuster repeats all allegations of paragraphs 16 through 59 and 74 through 77 above and of Blockbuster's First and Second Counterclaims below.

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

25

ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL
C 06 2361 WHA

1           79.    Blockbuster is informed and believes and thereon alleges that

2  Netflix is estopped by its conduct alleged herein from asserting some or all of its

3  claims against Blockbuster and from obtaining any of the relief that it has

4  requested.  Such conduct includes Netflix's deceptive and manipulative scheme

5  alleged above and the statement by Netflix's CEO to Blockbuster's Executive Vice

6  President as alleged above.

7           80.    By its conduct alleged herein, Netflix led Blockbuster to

8  reasonably infer that Netflix did not intend to enforce the '450 patent or any related

9  patent against Blockbuster.  Blockbuster reasonably relied on Netflix's conduct in,

10  without limitation, expending millions of dollars on its Blockbuster Online system

11  without notice of Netflix's claims to such subject matter or an opportunity to

12  contest such claims.  As a result, Blockbuster would be materially prejudiced by

13  enforcement of Netflix's patents against it.

14                    **COUNTERCLAIMS**

15          Blockbuster, for its counterclaims against Netflix, alleges and avers as

16  follows:

17                    **JURISDICTION**

18           81.    Blockbuster's First and Second Counterclaims assert

19  monopolization and attempted monopolization by Netflix in violation of federal

20  antitrust laws, including Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2.

21  Blockbuster seeks injunctive, monetary, and equitable relief under Sections 15 and

22  16 of the Clayton Act, 15 U.S.C. §§ 25-26.

23           82.    Blockbuster brings its Third and Fourth Counterclaims under the

24  Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, seeking declaratory

25  judgments under the patent laws of the United States, United States Code Title 35,

26  that Blockbuster has not violated and is not violating patent rights of Netflix and

27  that the '450 and '381 patents asserted by Netflix are invalid and unenforceable.

28  #

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

26

ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL
C 06 2361 WHA

1       83.   This Court has jurisdiction over the Counterclaims under 28

2  U.S.C. §§ 1331 and 1337(a) and 15 U.S.C. § 26.

3                     **VENUE**

4       84.   This Judicial District is a proper venue for adjudication of the

5  counterclaims under 15 U.S.C. § 22 and 28 U.S.C. § 1391(b) because Netflix

6  transacts business, is found, and has agents in this District and because a substantial

7  portion of the affected trade and commerce described below has been carried out in

8  this District.

9            **INTRADISTRICT ASSIGNMENT**

10      85.   This is an Intellectual Property Action subject to district-wide

11  assignment under Civil Local Rule 3-2(c).

12                  **THE PARTIES**

13      86.   Blockbuster is a Delaware corporation with its principal place of

14  business in Dallas, Texas.  Blockbuster is duly registered and authorized to conduct

15  business in the State of California.  Blockbuster owns and operates an online DVD

16  rental service known as "Blockbuster Online," which is accessible from

17  Blockbuster's website, www.blockbuster.com.  Blockbuster Online rents DVDs on

18  a subscription basis to customers throughout the United States.

19      87.   Netflix is a Delaware corporation with its principal place of

20  business in Los Gatos, California.  Netflix owns and operates a DVD rental

21  business through its website, www.netflix.com, renting DVDs on a subscription

22  basis to customers throughout the United States.

23            **INTERSTATE COMMERCE**

24      88.   Netflix has substantially affected interstate commerce by

25  illegally monopolizing, and attempting to monopolize, the relevant market, as

26  alleged below.

27  #

28  #

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP
27
ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL
C 06 2361 WHA

89.    Throughout the period from at least April 28, 2000, through the present (the "relevant time period"):

a.    Netflix rented and distributed substantial numbers of DVDs in a continuous and uninterrupted flow of commerce across state lines and throughout the United States;

b.    Netflix distributed rental DVDs and received returns of rental DVDs across state lines and through the United States mails;

c.    Netflix solicited and entered into DVD rental contracts, obtained DVD rental orders, received payments for DVD rentals, and promoted its online DVD rental service over the Internet, across state lines, and using interstate telephone lines; and

d.    Netflix employed the Internet, interstate telephone lines, and the United States mails in furtherance of its monopolization and attempt to monopolize the relevant market, as alleged below.

## RELEVANT MARKET

90.    The relevant product market with respect to Blockbuster's First and Second Counterclaims is the market for online DVD rentals and related subscription services. The relevant geographical market is the United States and its territories as a whole.

91.    Blockbuster is informed and believes and thereon alleges that, throughout the relevant time period up to and including the present, Netflix has had market power in the relevant product and geographical markets.

92.    Blockbuster is informed and believes and thereon alleges that Netflix's share of the relevant product and geographical markets exceeds 65%.

93.    Following Blockbuster Online's entry into the relevant product and geographical markets, Netflix lowered its online DVD rental prices. Blockbuster is informed and believes and thereon alleges that Netflix's price reduction was in response to Blockbuster Online's own prices, which were lower

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

28

ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL
C 06 2361 WHA

1  than Netflix's prices.  Blockbuster is informed and believes and thereon alleges

2  that, should Netflix succeed in inducing Blockbuster Online to exit the relevant

3  market, Netflix would again be without significant competition in that market.

4  ## FIRST COUNTERCLAIM

5  **(Monopolization in Violation of Section 2 of the Sherman Antitrust Act)**

6          94.    Blockbuster repeats all allegations of paragraphs 16 though 93

7  above.

8          95.    Blockbuster is informed and believes and thereon alleges that

9  Netflix has engaged in monopolization in the relevant market during the relevant

10  time period, in violation of Section 2 of the Sherman Antitrust Act.  Blockbuster is

11  informed and believes and thereon alleges that Netflix's acts of unlawful

12  monopolization have included procuring either or both of the '450 and '381 patents

13  by knowing and willful fraud and baselessly asserting them in bad faith in sham

14  litigation against Blockbuster.

15          96.    Blockbuster is informed and believes and thereon alleges that

16  the knowing and willful fraud by Netflix and its Applicants and Representatives in

17  procuring the '450 and '381 patents has included all of their deceitful conduct

18  alleged above, including:

19          a.    The Named Inventors' representations to the Patent

20      Office in applying for the '450 and '381 patents that the Named Inventors

21      were aware of their duty to disclose known material prior art, implicitly also

22      representing that they had complied with or would comply with this duty;

23          b.    The intentional and fraudulent concealment from the

24      Patent Office by Netflix's Applicants and Representatives that, despite their

25      well-established and acknowledged duty of candor and good faith, they had

26      no intention of disclosing, and had not disclosed, all known material prior art;

27          c.    The intentional and fraudulent concealment from the

28      Patent Office by Netflix's Applicants and Representatives of known, material

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

29

ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL.
C 06 2361 WHA

1   prior art, as alleged above; and

2            d.    Their intentional and fraudulent concealment from the

3   Patent Office of the deceptive scheme in which they were engaged in

4   applying for and obtaining the '450 and '381 patents, as alleged above.

5        97.    Blockbuster is informed and believes and thereon alleges that

6   Netflix and its Applicants and Representatives, in applying for the '450 patent and

7   at all times thereafter through the issuance of the '381 patent, intentionally,

8   fraudulently and materially deceived the Patent Office in knowing violation of their

9   legal and ethical duties of candor and good faith to the Patent Office as alleged

10  above.

11       98.    For example, despite the Named Inventors' express

12  acknowledgment of their obligation to disclose material prior art, they disclosed no

13  prior art whatsoever to the Patent Office during the pendency of the application for

14  the '450 patent.

15       99.    Having obtained issuance of the '450 patent, Netflix's

16  Applicants and Representatives thereafter began submitting prior art to the Patent

17  Office in connection with the application for the '381 patent and ultimately

18  submitted a total of more than 100 references. Blockbuster is informed and

19  believes and thereon alleges that Netflix's Applicants and Representatives

20  submitted this plethora of prior art or purported prior art for the purpose and with

21  the intention of confusing, distracting, misleading, and overtaxing the Patent Office

22  personnel charged with examining the application for the '381 patent.

23       100.   Throughout the pendency of the application for the '381 patent,

24  even after having submitted more than 100 prior art references to the Patent Office,

25  Netflix's Applicants and Representatives from the Office withheld other material

26  prior art that they knew about, as alleged above.

27       101.   Blockbuster is informed and believes and thereon alleges that, in

28  making and submitting the declarations and representations referred to above, and

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

30

ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL.
C 06 2361 WHA

1  in concealing and failing to disclose the material prior art and other material facts

2  referred to above, Netflix's Applicants and Representatives intended to deceive the

3  Patent Office and intended, by such fraud and deception, to obtain a patent to which

4  they were not otherwise entitled. In the alternative, Blockbuster is informed and

5  believes and thereon alleges that Netflix's Applicants and Representatives

6  intentionally disregarded their obligations to the Patent Office with a state of mind

7  so reckless with respect to the consequences of their conduct that it was the legal

8  equivalent of expressly fraudulent intent.

9      102.  Blockbuster is informed and believes and thereon alleges that, in

10  issuing the '450 and '381 patents, the Patent Office justifiably relied on the

11  foregoing misrepresentations, concealment, and omissions of material prior art and

12  other material facts by Netflix's Applicants and Representatives and that the Office

13  would not otherwise have issued those patents.

14      103.  Blockbuster is informed and believes and thereon alleges that

15  Netflix knows of the fraudulent origin, invalidity, and unenforceability of the '450

16  and '381 patents and that, in asserting the patents against Blockbuster – as well as

17  in any other past, present or future attempts to enforce the patents – Netflix has

18  been, is, and will be acting with full knowledge of the patents' fraudulent origin,

19  invalidity, and unenforceability.

20      104.  Blockbuster is informed and believes and thereon alleges that

21  Netflix's infringement lawsuit against Blockbuster is a sham and is both objectively

22  and subjectively baseless for reasons including the suit's lack of any reasonable

23  merit, and Netflix's lack of any probable cause for bringing it, in view of, without

24  limitation, the clear invalidity and unenforceability of the patents as alleged above,

25  all of which is known to Netflix.

26      105.  Blockbuster is informed and believes and thereon alleges that

27  Netflix, in filing this lawsuit, in prosecuting this lawsuit up to the present date, and

28  in any and all prosecution of this lawsuit hereafter, has acted, is acting, and will be

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

31

ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL
C 06 2361 WHA

1  acting in bad faith, as a mere sham, and without belief in the merits of its claims.

2  Blockbuster is informed and believes and thereon alleges that Netflix, has been, is,

3  and, in any and all prosecution of this lawsuit hereafter, will be using this lawsuit to

4  conceal an attempt to directly interfere with Blockbuster's business relationships

5  and business, to monopolize the relevant market, and to conceal by deceit Netflix's

6  maintenance of that monopoly.

7           106.  As examples of Netflix's bad faith, Blockbuster is informed and

8  believes and thereon alleges that, at the time of filing this lawsuit, Netflix knew,

9  and now knows:

10               a.      That the blatantly over-broad '450 patent was and is

11          invalid because its claims were anticipated by – and obvious in view of –

12          prior art that Netflix had failed to disclose to the Patent Office during the

13          pendency of the application for the '450 patent;

14               b.      The '450 patent was and is unenforceable because

15          Netflix's Applicants and Representatives had withheld known, material prior

16          art from the Patent Office in prosecuting the application that resulted in the

17          '450 patent; and

18               c.      As alleged above, even Netflix's own CEO, Reed

19          Hastings, who is also a Named Inventor on the patent, described the '450

20          patent as a "joke."

21           107.  Netflix has market power in the relevant market as alleged

22  above.

23           108.  Blockbuster is informed and believes and thereon alleges that

24  Netflix has used and is using its '450 and '381 patents and its sham infringement

25  litigation against Blockbuster to restrain competition by, without limitation,

26  attempting to induce Blockbuster to leave the relevant market, attempting to

27  damage Blockbuster's ability to compete in the relevant market, and attempting to

28  deter other potential competitors from entering the market.

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

32

ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL
C 06 2361 WHA

1          109.   Blockbuster is informed and believes and thereon alleges that

2    Netflix has succeeded in restraining competition in the relevant market during the

3    relevant time period by fraudulently obtaining and asserting the '450 and '381

4    patents and by filing and prosecuting its sham infringement litigation against

5    Blockbuster.  Netflix's monopolistic conduct as alleged herein is already harming

6    competition by causing Blockbuster to devote substantial resources to the defense

7    of this patent infringement action.  Blockbuster is informed and believes and

8    thereon alleges that Netflix's monopolistic conduct is further harming, or will

9    further harm, competition by deterring other potential competitors from entering the

10    relevant market.

11          110.   As a direct and proximate result of Netflix's acts of

12    monopolization, Blockbuster has suffered damages including attorneys' fees and

13    litigation expenses required to defend against Netflix's infringement lawsuit.

14    Blockbuster is informed and believes and thereon alleges that other damages

15    directly and proximately resulting from Netflix's monopolistic conduct include lost

16    profits and lost goodwill sustained or to be sustained by Blockbuster as well as

17    harm to other competitors or would-be competitors in the relevant market and to

18    online DVD rental consumers.  Blockbuster is informed and believes and thereon

19    alleges that it and others will suffer additional such damages in the future suffer if

20    Netflix continues its monopolistic conduct, including its assertion of fraudulently

21    obtained patents and its sham litigation.

22    #

23    #

24    #

25    #

26    #

27    #

28    #

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

33

ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL
C 06 2361 WHA

## SECOND COUNTERCLAIM
### (Attempted Monopolization in Violation of Section 2
### of the Sherman Antitrust Act)

111.  Blockbuster repeats all allegations of paragraphs 16 though 110 above.

112.  Blockbuster is informed and believes and thereon alleges that Netflix has attempted to monopolize the relevant market during the relevant time period, in violation of Section 2 of the Sherman Antitrust Act.  Blockbuster is informed and believes and thereon alleges that Netflix's acts of attempted monopolization have included procuring either or both of the '450 and '381 patents by knowing and willful fraud and baselessly asserting them in bad faith in sham litigation against Blockbuster.

113.  Blockbuster is informed and believes and thereon alleges that, in fraudulently obtaining and asserting the '450 and '381 patents as alleged herein, Netflix has acted with the specific intent to monopolize the relevant market.

114.  Blockbuster is informed and believes and thereon alleges that, in filing and prosecuting its sham infringement litigation against Blockbuster as alleged herein, Netflix has acted with the specific intent to monopolize the relevant market.

115.  Blockbuster is informed and believes and thereon alleges that Netflix's attempts to monopolize the relevant market, as alleged herein, have had and now have a dangerous probability of success.

116.  Blockbuster is informed and believes and thereon alleges that Netflix has had market power in the relevant product and geographical markets, throughout the relevant time period or, in the alternative, that Netflix has a dangerous probability of success of obtaining such market power.

117.  Blockbuster is informed and believes and thereon alleges that, if successful, Netflix's monopolistic conduct as alleged herein would harm

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

34

ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL
C 06 2361 WHA

1  competition in the relevant market by depriving consumers of the increased output,

2  broader choice, and lower prices that would result from competition on the merits.

3      118.  Blockbuster is informed and believes and thereon alleges that, if

4  Netflix succeeded in its attempt to cause Blockbuster Online to exit from the

5  relevant market because of fraudulently-obtained patents and sham litigation,

6  Netflix would obtain a virtually complete monopoly in the relevant market.

7      119.  As a direct and proximate result of Netflix's acts of attempted

8  monopolization, Blockbuster has suffered damages including, without limitation,

9  attorneys' fees and litigation expenses required to defend against Netflix's

10  infringement lawsuit.  Blockbuster is informed and believes and thereon alleges that

11  other damages directly and proximately resulting from Netflix's acts of attempted

12  monopolization include lost profits and lost goodwill sustained or to be sustained

13  by Blockbuster as well as harm to other competitors or would-be competitors in the

14  relevant market and to online rental consumers.  Blockbuster is informed and

15  believes and thereon alleges that it and others will suffer additional such damages in

16  the future suffer if Netflix continues its acts of attempted monopolization, including

17  its assertion of fraudulently obtained patents and its sham litigation.

18                        **THIRD COUNTERCLAIM**

19              **(Declaratory Judgment as to the '450 Patent)**

20      120.  Blockbuster repeats all allegations of paragraphs 16 though 119

21  above.

22      121.  A case and actual controversy exists between Blockbuster and

23  Netflix with regard to infringement, validity, and enforceability of the '450 patent

24  as a result of Netflix's filing of this case against Blockbuster, contending that

25  Blockbuster's Blockbuster Online service infringes the '450 patent and seeking an

26  injunction and monetary award based on that contention.

27      122.  Blockbuster contends that it and its Blockbuster Online service

28  do not infringe and have not infringed any valid claim of the '450 patent as properly

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

35

ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL
C 06 2361 WHA

1    construed, whether directly or through inducement of infringement or contributory

2    infringement.

3              123.  Blockbuster contends that the '450 patent is invalid for reasons

4    including, without limitation, each of the reasons alleged above.

5              124.  Blockbuster contends that the '450 patent is unenforceable for

6    the each of the reasons alleged above and in view of the conduct of Netflix and its

7    Applicants and Representatives as alleged above including, without limitation, their

8    failures to disclose known, material prior art to the Patent Office.

9              125.  Blockbuster has no adequate remedy at law.

10                          **FOURTH COUNTERCLAIM**

11                   **(Declaratory Judgment as to the '381 Patent)**

12             126.  Blockbuster repeats all allegations of paragraphs 16 though 119

13    above.

14             127.  A case and actual controversy exists between Blockbuster and

15    Netflix with regard to infringement, validity, and enforceability of the '381 patent

16    as a result of Netflix's filing of this case against Blockbuster, contending that

17    Blockbuster's Blockbuster Online service infringes the '381 patent and seeking an

18    injunction and monetary award based on that contention.

19             128.  Blockbuster contends that it and its Blockbuster Online service

20    do not infringe and have not infringed any valid claim of the '381 patent as properly

21    construed, whether directly or through inducement of infringement or contributory

22    infringement.

23             129.  Blockbuster contends that the '381 patent is invalid for reasons

24    including, without limitation, each of the reasons alleged above.

25             130.  Blockbuster contends that the '381 patent is unenforceable for

26    the each of the reasons alleged above and in view of the deceptive conduct of

27    Netflix and its Applicants and Representatives as alleged above including, without

28    limitation, their failures to disclose known, material prior art to the Patent Office.

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP                                            36                          ANSWER TO FIRST AMENDED COMPLAINT;
                                                                                 COUNTERCLAIMS; DEMAND FOR JURY TRIAL.
                                                                                 C 06 2361 WHA

1      131.  Blockbuster has no adequate remedy at law.

2                          **PRAYER FOR RELIEF**

3      Blockbuster respectfully requests judgment as follows:

4           1.      That Netflix recover nothing by its Complaint;

5           2.      For a declaratory judgment determining and declaring:

6                  a.      That Blockbuster has not violated, and is not violating,

7      any rights of Netflix under the '450 patent or '381 patent;

8                  b.      That each claim of the '450 and '381 patents is invalid;

9      and

10                 c.      That the '450 and '381 patents are unenforceable;

11          3.      For compensatory damages according to proof;

12          4.      Determining that this is an "exceptional" case and awarding

13     Blockbuster its attorneys' fees and expenses under 35 U.S.C. § 285 or on any other

14     applicable ground;

15          5.      For costs of suit;

16          6.      For pre-and post-judgment damages on all amounts awarded to

17     Blockbuster; and

18          7.      For general relief.

19

20     DATED: Sept. 11, 2006      ALSCHULER GROSSMAN STEIN & KAHAN LLP

21

22                              By_____/S/_____
                                    William J. O'Brien
23                                  Attorneys for Defendant and Counterclaimant,
                                    Blockbuster Inc.
24

25

26

27

28

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP                                37           ANSWER TO FIRST AMENDED COMPLAINT;
                                                      COUNTERCLAIMS; DEMAND FOR JURY TRIAL
                                                      C 06 2361 WHA

## DEMAND FOR JURY TRIAL

Under Rule 38(b) of the Federal Rules of Civil Procedure and Civil Local Rule 3-6 of the United States District Court for the Northern District of California, Blockbuster hereby demands a trial by jury of all issues properly triable by jury.

DATED: Sept. 11, 2006    ALSCHULER GROSSMAN STEIN & KAHAN LLP


By_____/S/_____
William J.O'Brien
Attorneys for Defendant and Counterclaimant,
Blockbuster Inc.

38

ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL
C 06 2361 WHA

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that the following listed persons, association of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject mater in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

        Blockbuster Inc.

        Netflix, Inc.

DATED: Sept. 11, 2006    ALSCHULER GROSSMAN STEIN & KAHAN LLP

By      /S/
      William J. O'Brien
      Attorneys for Defendant and Counterclaimant,
      Blockbuster Inc.

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

39

ANSWER TO FIRST AMENDED COMPLAINT;
COUNTERCLAIMS; DEMAND FOR JURY TRIAL
C 06 2361 WHA