KEKER & VAN NEST, LLP
JEFFREY R. CHANIN - #103649
DARALYN J. DURIE - #169825
ASHOK RAMANI - #200020
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Plaintiff
NETFLIX, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETFLIX, INC., a Delaware corporation,<br><br>                                            Plaintiff,<br><br>          v.<br><br>BLOCKBUSTER, INC., a Delaware corporation, DOES 1-50,<br><br>                                            Defendant. | Case No. C 06 2361 WHA (JCS)<br><br>**NETFLIX'S OPPOSITION TO DILBECK'S MOTION FOR LEAVE TO INTERVENE**<br><br>Date:   December 7, 2006<br>Time:   8:00 a.m.<br>Dept:   Courtroom 9, 19th Floor<br>Judge: Hon. William H. Alsup |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...........................................................................................ii, iii

PRELIMINARY STATEMENT ......................................................................................1

FACTS ........................................................................................................................2

ARGUMENT.................................................................................................................3

A.    Dilbeck's Proposed Complaint Fails To State A Claim; Therefore, Intervention Would Be Futile and Should Be Denied. .............................................3

      1.    Dilbeck's Allegations Regarding Netflix's Mere Procurement of its Patents Do Not State A *Walker Process* Claim ..................................4

      2.    Dilbeck's Conclusory and Equivocal Allegations of Attempted Enforcement Prior to the Lawsuit Against Blockbuster Are Contradicted By His Own Pleading.......................................................5

      3.    The Only Actual Enforcement Action Ever Undertaken By Netflix, This Suit Against Blockbuster, Cannot Have Caused Injury to Consumers.....................................................................................7

B.    Dilbeck's Proposed Class Action Should Not Be Permitted To Disrupt The Schedule for This Litigation ...............................................................8

C.    If Intervention Were To Be Granted, the Resultant Antitrust Claims Should Be Stayed.................................................................................13

CONCLUSION.............................................................................................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abbott Labs v. Teva Pharmaceuticals USA, Inc.*
    432 F. Supp. 2d 408 (D. Del. 2006)....................................................................5

*ASM America, Inc. v. Genus, Inc.*
    No. 01-2190 EDL, 2002 U.S. Dist. LEXIS 1351, at *18-*19
    (N.D. Cal. Jan. 9, 2002)………………………………………………………14

*Baxter Int'l Inc. v. Cobe Lab., Inc.*
    No. 89 C 9460, 1992 U.S. Dist. LEXIS 5660, at *14
    (N.D. Ill. Apr. 7, 1992) ………………………………………………………14

*Cadam, Inc. v. Adage, Inc.*
    No. 86-2146-T, 1987 U.S. Dist. LEXIS 16090
    (D. Mass. Feb. 25, 1987)..........................................................................14

*Carter v. Variflex, Inc.*
    101 F. Supp. 2d 1261 (C.D. Cal. 2000) ......................................................8

*Chip-Mender, Inc. v. Sherwin-Williams Co.*
    No. C 05-3465 PJH, 2006 U.S. Dist. LEXIS 2176
    (N.D. Cal. Jan. 3, 2006) ......................................................................8

*EEOC v. Victoria's Secret Stores, Inc.*
    No. 02-6715, 2003 U.S. Dist. LEXIS 1290 ..........................................3

*Endsley v. City of Chicago*
    230 F.3d 276 (7th Cir. 2000) ......................................................................6

*Holmes v. Boal*
    No. 04-2591-CM, 2005 U.S. Dist. LEXIS 18972
    (D. Kan. Aug. 22, 2005) ......................................................................3

*Howard Hess Dental Laboratories, Inc. v. Dentsply International, Inc.*
    424 F.3d 363 (3d Cir. 2005)..........................................................................13

*Hydril Co., L.P. v. Grant Prideco, L.P.*
    385 F. Supp. 2d 609 (S.D. Tex. 2005) ..................................................4, 6

*In re Buspirone Antitrust Litigation*
    185 F. Supp. 2d 363 (S.D.N.Y. 2002)........................................................5

*In re Cardizem CD Antitrust Litigation*
    200 F.R.D. 297 (E.D. Mich. 2001) ......................................................13

*In re Relafen Antitrust Litigation*
    218 F.R.D. 337 (D. Mass. 2003)..........................................................13

*In re Warfarin Sodium Antitrust Litigation*
    214 F.3d 395 (3d Cir. 2000)..........................................................................13

*Lucero v. City of Albuquerque*
        140 F.R.D. 455 (D.N.M. 1992).............................................................3

*McMahon v. Pier 39 Limited Partnership*
        No. C 01-01125 CRB, 2001 U.S. Dist. LEXIS 18730
        (N.D. Cal. Nov. 8, 2001)..................................................................7

*Medical Advocates for Healthy Air v. Johnson*
        No. C 06-0093 SBA, 2006 U.S. Dist. LEXIS 39731
        (N.D. Cal. June 2, 2006) ................................................................9

*Molecular Diagnostics Laboratoriess v. Hoffman-La Roche Inc.*
        402 F. Supp. 2d 276 (D.D.C. 2005) .................................................5

*Our Children's Foundation v. United States EPA*
        No. C, 05-05184 WHA 2006 U.S. Dist. LEXIS 30581
        (N.D. Cal. May 11, 2006) ...............................................................9

*Reiffin v. Microsoft Corp.*
        158 F. Supp. 2d 1016 (N.D. Cal. 2001) ...........................................5

*Shell Oil Co. v. American Cyanamid Co.*
        219 U.S.P.Q. 275 (S.D. Tex. 1982) ...............................................14

*Shuffle Master, Inc. v. Awada*
        No. 2:05-CV-1112-RCJ (RJJ), 2006 U.S. Dist. LEXIS 71748
        (D. Nev. Sept. 26, 2006) ................................................................7

*Simpson v. Stand 21, S.A.*
        32 U.S.P.Q. 2d 1848 (S.D. Ind. 1994) ..........................................14

*Unitherm Food System, Inc. v. Swift-Eckrich, Inc.*
        375 F.3d 1341 (Fed. Cir. 2004)....................................................4, 6


**FEDERAL STATUTES**

Fed. R. Civ. P. 23.............................................................................10

Fed. R. Civ. P. 23(b) .......................................................................13

Fed. R. Civ. P. 24(a)(2) .....................................................................9

**PRELIMINARY STATEMENT**

Earlier this year, Plaintiff Netflix, Inc. ("Netflix") sued Defendant Blockbuster Inc. ("Blockbuster") for infringing its United States patents on the novel method by which Netflix operates its DVD rental business.  In response, Blockbuster took issue with the validity of Netflix's patents, claiming that Netflix had obtained them fraudulently and was asserting them as part of an anticompetitive scheme.  This Court issued an order on August 22, 2006 holding that Blockbuster's antitrust counterclaims could state a claim for relief.

On October 11, 2006, counsel for proposed intervenor Dennis Dilbeck ("Dilbeck") filed a motion with this Court seeking to intervene in this litigation on behalf of a putative class of consumers who were allegedly harmed by Netflix's purported *Walker Process*/sham litigation anticompetitive behavior.  Such intervention by a consumer class is completely unprecedented: Netflix's counsel has not found a single instance in which a putative class representative was permitted to intervene in a patent infringement suit between private parties.  Moreover, the theory advanced in Dilbeck's proposed complaint in intervention necessarily requires Dilbeck to plead facts that, if true, would prove that Netflix wrongfully enforced its patents so as to have an effect on the marketplace causing antitrust injury.  Dilbeck's proposed complaint in intervention utterly fails to plead such facts demonstrating antitrust injury -- indeed, Dilbeck's allegations regarding Netflix's patents and Wal-Mart contradict one another.  Dilbeck's motion to intervene should be denied because the complaint in intervention fails to state a claim.

Even if Dilbeck's complaint did state a claim, by his own admission, his complaint relies on a damages theory very different from that which will be espoused by Blockbuster.  Accordingly, issues relating to Dilbeck's damages allegations and market definitions relevant to the consumer class (not to mention issues relating to the prerequisites for certification of the proposed class that Dilbeck purports to represent) will require substantial discovery not needed for the original case.  This additional discovery goes far beyond what this Court envisioned when it determined that discovery relating to Blockbuster's *Walker Process*/sham litigation antitrust counterclaims was sufficiently related to discovery on Blockbuster's inequitable conduct defense

to Netflix's patent infringement claims that the two could go forward in tandem on the schedule set forth in the CMC order.

Finally, if the Court were to disagree that intervention should be denied because of the infirmities in Dilbeck's claims, the Court should then stay all of the ancillary antitrust discovery that does not overlap with Blockbuster's inequitable conduct defense until that issue is decided. The issue of alleged fraudulent withholding will be subject to discovery and litigated as part of Blockbuster's affirmative defense of inequitable conduct. Since both Blockbuster's and the class' *Walker Process*/sham litigation antitrust claims are predicated on, and completely depend upon, the false notion that Netflix is suing to enforce patents that were obtained through fraudulent withholding of material prior art from the Patent and Trademark Office, a ruling favorable to Netflix on the validity and enforceability of its patents will obviate the need to engage in further burdensome antitrust, class certification, or class damages discovery. Should intervention be allowed and the antitrust claims not be stayed, however, the pretrial schedule and trial date will become unduly onerous due to the added burdens of class related litigation and increased discovery.

## FACTS

On April 4, 2006, Netflix sued Blockbuster for infringement of its United States Patent Nos. 6,584,450 ("the '450 Patent") and 7,024,381 ("the '381 Patent"). Two months later, on June 13, 2006, Blockbuster filed its answer to Netflix's complaint, together with a pair of counterclaims alleging that Netflix had violated the antitrust laws in asserting its patents against Blockbuster. Approximately two weeks later, this Court held a Case Management Conference at which it set a September 17, 2007 trial date, with non-expert discovery to be completed by the end of April 2007. The Court subsequently set a claim construction schedule that called for *Markman* briefs to be filed in December 2006 and January 2007, with a hearing scheduled for late January 2007.

Netflix moved to dismiss Blockbuster's putative antitrust counterclaims, or in the alternative to stay antitrust discovery pending a resolution of Netflix's claims of patent infringement and Blockbuster's defenses thereto. After a hearing on August 17, 2006, the Court

1    issued an order on August 22, 2006 denying Netflix's motion to dismiss those counterclaims, and

2    further denying the request that they be severed and discovery stayed.  In so doing, the Court

3    emphasized the "efficien[cy]" in "conduct[ing] discovery and pretrial proceedings together,"

4    given that the "issues overlap greatly" (Order at 13):

5           A determination on Blockbuster's *Walker Process* fraud
            counterclaim is closely related to a determination as to the validity
6           of the patents in suit.  The prosecution history and the omitted
            prior-art references will be relevant to both inquiries.  The same
7           evidence will also be pertinent to Blockbuster's affirmative
            defenses of inequitable conduct and patent misuse. . . . Conducting
8           discovery *on overlapping issues* in tandem will ultimately reduce
            the expenses and time of this litigation for both parties.
9
10   Order at 13-14 (emphasis added).  The Court also noted expressly that its ruling was "without

11   prejudice to either side to seek bifurcation of the trial at the pretrial conference."  *Id.*

12          According to counsel for Dilbeck, several weeks after the Order he read an account of

13   this Court's ruling and "recognized that the present parties would not (indeed, could not)

14   adequately represent Dilbeck's interests the instant counsel learned of the suit."  Mot. at 7.

15   Dilbeck's counsel filed the present motion to intervene roughly a month after reading that article.

16                                        **ARGUMENT**

     **A.    Dilbeck's Proposed Complaint Fails To State A Claim; Therefore, Intervention
17           Would Be Futile and Should Be Denied.**

18          Courts have repeatedly held that "[t]he first step in determining whether to permit

19   intervention is to establish the validity of the proposed intervenor's claims.  Obviously, if the

20   proposed complaint-in-intervention does not state a valid claim for relief, the motion must be

21   denied."  *Lucero v. City of Albuquerque*, 140 F.R.D. 455, 457 (D.N.M. 1992) (footnote omitted);

22   *see also Holmes v. Boal*, No. 04-2591-CM, 2005 U.S. Dist. LEXIS 18972, at *6 (D. Kan. Aug.

23   22, 2005) (denying motion to intervene where "proposed claims are time-barred by the

24   applicable statute of limitations"); *EEOC v. Victoria's Secret Stores, Inc.*, No. 02-6715, 2003

25   U.S. Dist. LEXIS 1290, at *3 (E.D. Pa. Jan. 14, 2003) ("The right to intervene presupposes the

26   presentation of a cognizable claim which the intervenor would have standing to pursue.").  This

27   proposed complaint in intervention fails to state a claim.

28

1.   **Dilbeck's Allegations Regarding Netflix's Mere Procurement of its Patents Do Not State A *Walker Process* Claim**

Several times in his proposed complaint, Dilbeck asserts (in a conclusory fashion) that the mere *existence* of Netflix's patents has deterred competitors from entering the market, thereby allegedly causing consumers antitrust injury. *See, e.g.*, Prop. Compl. ¶ 3 ("*The '450 and '381 Patents have deterred* and continue to deter competitors and delay the introduction of competition in the market for online DVD rentals and related subscription services."); *id.* ¶ 53 ("Netflix has used the *implicit . . . threat* of liability for infringing on the '450 and '381 Patents to exclude competitors from the market.") (emphases added).  However, black-letter Federal Circuit law makes clear that the mere existence of a patent, even if fraudulently procured, does not give rise to a *Walker Process* claim.  "Strictly speaking, a *Walker Process* claim is premised upon 'the <u>enforcement</u> of a patent procured by fraud on the Patent Office.'"  *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 375 F.3d 1341, 1357-58 (Fed. Cir. 2004), *rev'd on other grounds*, 126 S. Ct. 980 (2006) (emphasis added).  The Federal Circuit has held that "as a matter of Federal Circuit antitrust law, the standards that we have developed for determining jurisdiction in a Declaratory Judgment Action of patent invalidity also define the minimum level of 'enforcement' necessary to expose the patentee to a *Walker Process* claim for attempted monopolization."  *Id.* at 1358.  Thus, "if the patentee has done nothing but obtain a patent in a manner that the plaintiff believes is fraudulent, the courts lack jurisdiction to entertain either a Declaratory Judgment Action or a *Walker Process* claim."  *Id.*

Courts have relied on the Federal Circuit's *Unitherm* holding to dismiss on the pleadings purported *Walker Process* claims that were not predicated on actual enforcement of the patents. *See, e.g.*, *Hydril Co., L.P. v. Grant Prideco, L.P.*, 385 F. Supp. 2d 609, 612 (S.D. Tex. 2005) (dismissing *Walker Process* claim; "[b]ecause Hydril has failed to allege enforcement activity which would create an objectively reasonable apprehension that Grant Prideco intended to enforce the '631 Patent against Hydril, Plaintiffs have failed to allege the minimum level of enforcement necessary to state a *Walker Process* claim against Grant Prideco").  Here, Dilbeck's

bare pleading that Netflix deterred or delayed market entry by the mere existence of the '450 and '381 Patents is wholly insufficient to give rise to his *Walker Process* claim.

None of the cases that Dilbeck cites in support of his purported standing to bring *Walker Process* claims are to the contrary. In each cited case, a defendant had actively sought to enforce its rights in the patent(s) at issue, and indeed many of the actions taken had direct effect on consumers in the marketplace. For example, in *Molecular Diagnostics Labs. v. Hoffman-La Roche Inc.*, 402 F. Supp. 2d 276 (D.D.C. 2005), the plaintiff made express allegations of actual litigation commenced on the patent by the patentee: it claimed that "defendants stifled competition by, among other things, enforcing the '818 patent through affirmative litigation." *Id.* at 279 n.3. Likewise, *Abbott Labs. v. Teva Pharmaceuticals USA, Inc.*, 432 F. Supp. 2d 408 (D. Del. 2006), involved would-be competitors who were allegedly locked out of the market by the assertion of a patent allegedly procured by fraud, which assertion prevented the FDA from approving their application to market a generic version of a drug. "Such exclusion from the market is 'precisely the type of injury that the antitrust laws were intended to prevent,' because it reflects an injury to competition." *Id.* at 431. And *In re Buspirone Antitrust Litigation*, 185 F. Supp. 2d 363 (S.D.N.Y. 2002), did not deal with a claim of fraud on the Patent Office at all. Instead, it ruled on a claim that a pharmaceutical company had fraudulently listed a patent in the "Orange Book." *See id.* at 373. Such a listing, the Court found, plainly creates the possibility of antitrust injury, as it requires competitors wishing to market a comparable drug to make certain certifications before obtaining FDA approval. In each of those cases, unlike here, there were allegations of antitrust conduct beyond the mere procurement of a patent.

2.  **Dilbeck's Conclusory and Equivocal Allegations of Attempted Enforcement Prior to the Lawsuit Against Blockbuster Are Contradicted By His Own Pleading**

Dilbeck makes only two allegations that Netflix attempted to enforce its patents prior to suing Blockbuster. First, Dilbeck asserts "on information and belief" that, prior to suing Blockbuster, Netflix attempted to enforce its patents against competitors and thereby exclude them from the market. *E.g.*, Prop. Compl. ¶ 53. Such a conclusory statement without any supporting facts is insufficient to state a claim. *See, e.g.*, *Reiffin v. Microsoft Corp.*, 158 F. Supp.

2d 1016, 1033 (N.D. Cal. 2001) (dismissing putative antitrust claims; "[t]o survive a motion to dismiss in an antitrust case, therefore, a plaintiff must do more than simply paraphrase the language of the antitrust laws or state in conclusory terms that a defendant has violated those laws").

Second, Dilbeck makes the conclusory claim (again based on information and belief) that "Netflix used the '450 and '381 Patents to induce Wal-Mart Stores, Inc. to withdraw from the Relevant Market."  Prop. Compl. ¶ 55.  At the same time, however, Dilbeck pleads factual allegations that Wal-Mart entered the alleged relevant market in June of 2004 (after the '450 Patent issued) and left the alleged relevant market in June of 2005 (before the '381 Patent issued).  *See id.*  Dilbeck's proposed complaint properly acknowledges that "the '450 Patent was issued on June 23, 2003 and the '381 Patent was issued on April 4, 2006."  *Id.* ¶ 1.  Dilbeck's conclusory statement, on information and belief, that Netflix used its patents to induce Wal-Mart to withdraw is disproven by these other facts he has pleaded, which also subjects his claims to dismissal.  *See Endsley v. City of Chicago*, 230 F.3d 276, 284 (7th Cir. 2000) ("[A] plaintiff may plead himself out of court by including factual allegations which, if true, show that his legal rights were not invaded.").

Dilbeck's factual pleading that Wal-Mart actually entered the alleged relevant market a year after issuance of Netflix's '450 Patent plainly disproves his conclusory claim that Walmart was induced to withdraw by reason of that patent.  Moreover, no facts are alleged that Netflix "used" the '450 Patent in any way to cause Wal-Mart to withdraw.  To plead a *Walker Process* claim predicated on a decision by Wal-Mart either to delay market entry or leave the alleged relevant market, Dilbeck would have to plead facts showing that Netflix had actually threatened to enforce the '450 Patent against Wal-Mart, or had otherwise engaged in some enforcement activity that would have created a reasonable apprehension on Wal-Mart's part that Netflix would do so.  *Unitherm*, 375 F.3d at 1358; *Hydril*, 385 F. Supp. 2d at 612.  Dilbeck has not pleaded such facts, and cannot do so, as no such threats of enforcement were ever made.  Absent facts showing some threat of enforcement of the '450 Patent relating to Wal-Mart, there is no predicate for any *Walker Process* claim based on the '450 Patent.

1    Dilbeck's factual allegation that the '381 Patent did not issue until nearly *a year after*

2    Wal-Mart had exited the alleged relevant market also disproves his conclusory claim that Netflix

3    used the '381 Patent to induce Wal-Mart to withdraw. *See, e.g.*, *Shuffle Master, Inc. v. Awada*,

4    No. 2:05-CV-1112-RCJ (RJJ), 2006 U.S. Dist. LEXIS 71748, at *13 (D. Nev. Sept. 26, 2006)

5    (dismissing *Walker Process* claim when "its '325 application has not yet been issued a patent,

6    and therefore, Shuffle Master has no ability to assert patent rights in it or to bring an enforcement

7    action"). Not even having been issued the '381 Patent before Wal-Mart withdrew, it is factually

8    impossible for Netflix to have committed any *Walker Process* violation relating to Wal-Mart by

9    reason of the yet-to-be issued '381 Patent.

10    Similarly, Dilbeck has pleaded no facts showing any threats of enforcement against

11    Blockbuster prior to the filing of this lawsuit. Blockbuster, the party who would know if any

12    threats of enforcement were made, has expressly pleaded in this litigation that Netflix made no

13    such threats prior to filing this lawsuit. *See* Blockbuster Ans. & Counterclaims ¶ 26 ("[U]p

14    through the date on which it filed this lawsuit, Netflix provided no notice or warning to

15    Blockbuster that Netflix believed Blockbuster was infringing the '450 Patent."); *see also id.*

16    ("Blockbuster is informed and believes and thereon alleges that Netflix also failed to assert any

17    infringement claims during this time against any other companies then operating online DVD

18    rental business, such as Wal-Mart.").

19    Thus, Dilbeck's complaint-in-intervention is left with only one enforcement effort by

20    Netflix that could possibly be used as a predicate for his *Walker Process* claim -- this lawsuit

21    against Blockbuster. But Dilbeck's claim based on this suit fails for lack of any antitrust injury,

22    as explained below.

23    **3.    The Only Actual Enforcement Action Ever Undertaken By Netflix, This Suit Against Blockbuster, Cannot Have Caused Injury to Consumers.**

24

25    In order to state a claim under the antitrust laws sufficient to survive a motion to dismiss

26    under Rule 12(b)(6), Dilbeck must plead that he has suffered antitrust injury. *See, e.g.*,

27    *McMahon v. Pier 39 Limited Partnership*, No. C 01-01125 CRB, 2001 U.S. Dist. LEXIS 18730,

28    at *10 (N.D. Cal. Nov. 8, 2001) (failing to allege antitrust injury, that is, "any injury to

7

competition," is a "fatal absence" in an antitrust claim); *Carter v. Variflex, Inc.*, 101 F. Supp. 2d 1261, 1268 (C.D. Cal. 2000) ("Proving antitrust injury is an essential element of a private cause of action under the antitrust laws."). Because Dilbeck's proposed complaint-in-intervention does not and cannot properly allege antitrust injury from the current litigation, his proposed intervention would be futile and should be denied by this Court.

These is no anti-trust injury from this lawsuit, nor has Dilbeck pleaded any facts to support such injury, because the lawsuit has not caused Blockbuster to withdraw from the alleged relevant market, nor has it caused any alleged effect on consumer prices. Since Netflix filed suit, Blockbuster has continued to operate its infringing on-line rental service in precisely the manner Blockbuster operated it prior to Netflix filing suit. Dilbeck has asserted no facts to the contrary. Nor has Dilbeck pleaded facts demonstrating that this enforcement action has in any way raised consumer prices or otherwise caused antitrust injury to consumers.

In light of the fact that Dilbeck has not alleged (nor can allege) that Blockbuster has withdrawn or otherwise ceased to compete in the market in response to Netflix's patent suit, or that consumer prices have risen as a result of this lawsuit, Dilbeck has failed to plead facts that would establish the essential element of antitrust injury. Netflix's mere assertion of presumptively valid patents in this litigation alone does not give rise to antitrust injury. *Cf. Chip-Mender, Inc. v. Sherwin-Williams Co.*, No. C 05-3465 PJH, 2006 U.S. Dist. LEXIS 2176, at *13 (N.D. Cal. Jan. 3, 2006). Dilbeck's proposed complaint thus fails to state a claim.

**B.    Dilbeck's Proposed Class Action Should Not Be Permitted To Disrupt The Schedule for This Litigation**

Even if, *arguendo*, Dilbeck's proposed complaint in intervention did successfully state a claim, Dilbeck's request for permissive intervention should be denied because, unless the class case were stayed following intervention, it would throw the schedule of this case off track and thereby greatly prejudice the original parties' right to a timely determination of their dispute. Dilbeck makes a half-hearted argument for intervention as of right under Federal Rule of Civil Procedure 24(a), asserting in a footnote that his antitrust claims "*could* meet the elements of mandatory intervention under Rule 24(a)." Mot. at 8 n.6 (emphasis added). Dilbeck's

1    equivocation is wise; whatever the outcome of Blockbuster's claims, the ruling would not be

2    binding on him, and therefore he cannot demonstrate that any ruling in this case would "impair

3    or impede [his] ability to protect [his] interest." Fed. R. Civ. P. 24(a)(2). Nor, for that matter, is

4    it plausible that Blockbuster would be any less aggressive than Dilbeck in attempting to prove

5    that Netflix's patents are invalid or unenforceable, such that Dilbeck's interest in demonstrating

6    invalidity or unenforceability would not be "adequately represented by existing parties." *Id.*

7        Dilbeck's motion should therefore be evaluated as a motion for permissive intervention

8    under Rule 24(b). As this Court has recognized, "[i]n deciding such a motion, a court must

9    consider whether intervention would 'unduly delay or prejudice the adjudication of the rights of

10   the original parties.'" *Our Children's Foundation v. United States EPA*, No. C 05-05184 WHA,

11   2006 U.S. Dist. LEXIS 30581, at *19 (N.D. Cal. May 11, 2006) (Alsup, J.) (denying permissive

12   intervention); *see also Medical Advocates for Healthy Air v. Johnson*, No. C 06-0093 SBA, 2006

13   U.S. Dist. LEXIS 39731, at *10 (N.D. Cal. June 2, 2006) ("The issue of prejudice to existing

14   parties is the *most important* consideration in deciding whether a motion for intervention is

15   untimely.") (emphasis added). In this case, Dilbeck's motion should be denied because

16   intervention would place a heavy burden on the parties and would almost certainly delay the

17   adjudication of this case, which has a fact discovery cut-off of April 27, 2007 and is set for trial

18   on September 17, 2007. Dilbeck's counsel's belated appraisal that it might be advantageous to

19   him to inject a class action into this lawsuit is insufficient reason to grant a motion to intervene

20   that would very likely (absent a stay) deprive the parties of their trial date.

21       In its ruling on Netflix's motion to dismiss or stay Blockbuster's counterclaims, this

22   Court permitted discovery on Blockbuster's *Walker Process*/sham litigation antitrust

23   counterclaims to proceed contemporaneously with discovery relating to validity and inequitable

24   conduct on the premise that the discovery on those issues would be largely overlapping, and

25   therefore would not prejudice Netflix's right to bring its infringement claims to trial on

26   September 17, 2007. The proceedings required to litigate and take discovery regarding the issues

27   raised by the proposed complaint in intervention, however, would be hugely burdensome and

28   distracting. Consumer class actions such as Dilbeck's typically take months, if not years, to

prepare for trial, and would most likely force this litigation off track were intervention granted. Dilbeck essentially concedes this in his motion to intervene:  he claims only that he "can meet *many* of the deadlines" in the Court's Case Management Order.  Mot. at 6 (emphasis added). The deadline that Dilbeck does not believe that he can meet is the most significant one.  He apparently concedes that the discovery he seeks could not be completed by the April 27 cutoff, but instead "contends" that he "can complete discovery by June 30, 2007." *Id.*  However, this Court has already fixed the deadline for filing dispositive motions more than two weeks before that date, on June 14, 2007.  Moreover, Dilbeck's assumption that *he* could complete discovery by June 30, 2007 presupposes that all the prerequisites to bringing a class action set forth in Fed. R. Civ. P. 23 could be adjudicated without any discovery on class issues by Netflix, and in a tiny fraction of the time normally dedicated to such issues.  Until then, the status of Dilbeck's proposed class, and whether it would be bound by any rulings in this case, would be uncertain. Allowing Dilbeck to intervene, therefore, would severely jeopardize the existing pretrial schedule, or would place an undue and unreasonable burden on the original parties were the schedule to be kept.  *Cf. Medical Advocates*, 2006 U.S. Dist. LEXIS 39731 at *11 (denying intervention when doing so would require either necessitating "a continuance of the [summary judgment] hearing date" or allowing intervention, but denying the intervenor "the opportunity to file a brief").

Moreover, although on the one hand Dilbeck claims that the issues he seeks to litigate are largely overlapping with those already present in the case, on the other he argues at length that his theory of damages is different than, and in some ways precisely the opposite of, the theory he expects Blockbuster will champion.  *See* Mot. at 8.  Based on their respective pleadings, about the only thing upon which Blockbuster and Dilbeck appear to agree is that Netflix did not disclose to the PTO certain prior art references that they allege Netflix knew of but supposedly withheld deliberately in order to hoodwink the PTO examiner.  In contrast, Dilbeck plans to show that consumer prices for online DVD rental services "incorporated" and continue to incorporate "a monopolistic overcharge" by reason of Netflix's enforcement of its allegedly unenforceable patents, a theory he concedes Blockbuster will not advance.  *Id.*  Thus, Dilbeck

10

NETFLIX'S OPPOSITION TO DILBECK'S MOTION FOR LEAVE TO INTERVENE
CASE NO. C 06 2361 WHA (JCS)

will "advance[] the interests of the proposed class by proving that the competitive price [for online DVD rentals] was *lower*" than the price that has in fact been charged in the marketplace (presumably during the period of Netflix's alleged enforcement). *Id.* Dilbeck also anticipates that contrary to the class' position, "Blockbuster's incentive is to prove that the competitive price was *higher* during" the same period. *Id.* Put bluntly, both of these things cannot be true. Dilbeck and Blockbuster will also likely disagree regarding the time period of enforcement alleged by Dilbeck, since Blockbuster maintains there was no enforcement against Blockbuster until this suit was filed. In short, the parties would necessarily be forced to expend additional discovery in this case relating to Dilbeck's damages theory based on his "overcharge," "competitive price," and enforcement period assumptions.

Intervention would also necessitate substantial discovery relating to the Rule 23 factors. Such discovery, however, would distract the parties from the task of taking and completing the enormous amount of discovery that has already been occasioned by the inclusion of Blockbuster's antitrust claims. In addition to their initial disclosures to date, Blockbuster has propounded 134 document requests upon Netflix, Netflix has propounded 102 document requests on Blockbuster, and no less than 21 subpoenas have been issued to non-parties, some of which include over 100 document requests.

After protracted meeting and conferring over the terms of a Protective Order, and briefing and a hearing thereon, Magistrate Judge Spero entered an Order on October 23, 2006, only three weeks ago. While this should finally pave the way for full production of documents by the parties and by more than a dozen non-parties subpoenaed in this case, there now remains less than six months within which to complete factual discovery. But much is to be done before April 27, 2007. The parties have three discovery motions pending. During the same period, the parties will be engaging in depositions (up to 20 per side) and in claim construction proceedings. As a practical matter, this leaves no time also to engage in Rule 23(b) proceedings, not to mention class discovery.

The class that Dilbeck seeks to represent, as pleaded in the proposed complaint in intervention, is extremely broad. (Vastly overbroad in Netflix's opinion.) Dilbeck claims

adequately to represent "all persons who subscribed to Netflix's DVD rental service . . . during the four year period prior to the filing of the motion to intervene." Prop. Compl. ¶ 64. Yet that proposed class includes persons who subscribed from October 2002-June 22, 2003, before the '450 Patent even issued, and years before the patent was first asserted against anyone. Though Dilbeck's theory of antitrust injury for *any* Netflix customer is meritless (as discussed in Part A, *supra*), plainly a Netflix customer who subscribed in October 2002, but who discontinued his or her subscription when neither of the patents-in-suit was in existence, let alone asserted, stands differently under Dilbeck's theory than a customer who became a subscriber after this lawsuit was filed. Prior to briefing and a hearing on whether the prerequisites for class certification have been satisfied, issues such as this pertaining to Dilbeck's proposed class definition, as well as pertaining to the adequacy of the proposed lead plaintiff and lead counsel would need to be discovered.

There is little, if anything, of value that Dilbeck's intervention would add to this case to offset the disruption it would almost certainly occasion. Blockbuster plainly has as much (or a greater) incentive as Dilbeck to attempt to prove that Netflix's patents were obtained improperly. On this point, Dilbeck does not even try to suggest that Blockbuster would not do all that it could to prevail. At most, Dilbeck argues that his intervention is needed to protect the discrete interests of consumers. But, apart from Dilbeck's accusation that the parties to this case are likely to engage in a "collusive settlement," Mot. at 9, he cannot point to any potential ruling that could have an adverse and binding effect on the consumer class he seeks to represent. And Dilbeck cites no case suggesting that the mere future possibility of a "collusive settlement" is grounds for intervention by a putative class that might be affected by such a possible settlement. Indeed, were that the case, it would justify consumer intervention in virtually *any* patent litigation. The cases Dilbeck does cite, far from showing that his participation is needed to prevent a collusive settlement, actually demonstrate instead that plaintiffs are quite able to litigate over supposedly collusive settlements after those agreements have been inked. Each of the consumer cases

1    Dilbeck cites involve *post-settlement* suits against pharmaceutical manufacturers that allegedly

2    entered into anticompetitive agreements in the settlement of litigation.[1]

3    **C.    If Intervention Were To Be Granted, the Resultant Antitrust Claims Should Be
         Stayed.**

4

5        As described in detail in Part B, *supra*, allowing the consumer antitrust class action that

6    Dilbeck seeks to inject into this case would require the litigation of numerous additional class

7    issues set forth in Fed. R. Civ. P. 23(b), and, if that hurdle were passed, would demand extensive

8    discovery regarding prices, market structures, and consumer damages that will add to the

9    discovery required by Blockbuster's antitrust counterclaims.  If this Court were to take the

10   unprecedented step of permitting a putative class representative to intervene in patent litigation

11   between two competitors, it should at the least stay all the class proceedings and the ancillary

12   antitrust discovery that does not involve the issue of alleged deliberate withholding, which

13   overlaps with Blockbuster's inequitable conduct claim.  Blockbuster's antitrust claims require a

14   great deal of factual and expert discovery unrelated to prior art, such as discovery into the

15   structure of the relevant product markets; whether there exists a distinct "online" DVD rental

16   market in which Netflix can assert market power; whether there are geographic submarkets (such

17   that subscribers who are located a relatively large distance from Netflix service hubs would

18   regard other services as better substitutes for what Netflix offers); and (according to

19   Blockbuster's view of relevance) discovery relating to long-since settled consumer class action

20

21   [1] The slew of cases that Dilbeck cites in support of the notion that both purchasers and
22   competitors can recover damages in antitrust cases are beside the point here, because each
     involved circumstances in which the purchasers had clearly suffered antitrust injury.  *See, e.g.*,
23   *Howard Hess Dental Labs, Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 378 (3d Cir. 2005)
     (purchasers allegedly victims of price-fixing conspiracy); *In re Relafen Antitrust Litig.*, 218
24   F.R.D. 337, 343 (D. Mass. 2003) (purchasers alleged that sham litigation resulting in 30 month
     Hatch-Waxman stay deprived them of ability to purchase generic drugs); *In re Cardizem CD*
25   *Antitrust Litig.*, 200 F.R.D. 297, 310 (E.D. Mich. 2001) (purchasers alleged that agreement
     between branded and generic drug makers had locked other generic drug makers who had sought
26   to enter out of the market).  Some cases he cites, on the other hand, do not even deal with
     damages.  *See, e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395, 402 (3d Cir. 2000)
27   (determining that district court erred in denying a class standing to seek injunctive relief).  Here,
     Dilbeck's conclusory (and contradictory) allegations regarding how Netflix's alleged *Walker-*
28   *Process*/sham litigation conduct caused alleged antitrust injury to a consumer class are
     insufficient to survive a motion to dismiss.

13

1  allegations regarding the manner in which Netflix allocates scarce or popular DVDs among its

2  subscribers, as well as Netflix's dealings with the United States Postal Service.

3          "It is a common practice in federal court to stay antitrust counterclaims until after the trial

4  of the invalidity issue." *ASM America, Inc. v. Genus, Inc.*, No. 01-2190 EDL, 2002 U.S. Dist.

5  LEXIS 1351, at *18-*19 (N.D. Cal. Jan. 9, 2002).  Indeed, the *Manual for Complex Litigation*

6  *(Fourth)* advises that "[d]eferral of claims asserting unfair competition or antitrust until

7  resolution of the patent issues frequently results in the claims' voluntary dismissal or settlement."

8  *Id.* § 33.23, at 617.  Netflix recognizes that this Court has previously declined to stay discovery

9  relating to Blockbuster's antitrust counter-claims.  But the addition of another party bringing

10  separate antitrust claims based upon a different theory of damages would be the straw that breaks

11  the camel's back.  *See Simpson v. Stand 21, S.A.*, 32 U.S.P.Q.2d 1848 (S.D. Ind. 1994) (staying

12  antitrust claims that were brought both as counterclaims against patentee-plaintiff and as third-

13  party claims against third-party defendants).

14          The issue of market definition would become all the more critical if a nationwide class of

15  consumers seeking their alleged damages were added to the case, as those damages would likely

16  be alleged to be far greater than any supposed damages that Blockbuster could ever attempt to

17  claim from a patent enforcement action that, to date, has had no effect on Blockbuster.

18  Definition of the relevant product market involves an inquiry that "has traditionally been one

19  requiring extensive discovery -- expert and lay."  *Cadam, Inc. v. Adage, Inc.*, No. 86-2146-T,

20  1987 U.S. Dist. LEXIS 16090, at *10 (D. Mass. Feb. 25, 1987) (granting motion to sever and

21  stay counterclaims).

22          Finally, although the Court has made no decision yet regarding bifurcation, the additional

23  issues that would be injected into a trial if Dilbeck and Blockbuster were permitted to present

24  their separate antitrust claims would radically increase "the overwhelming burden that is placed

25  on the jury of simultaneously trying both a patent case and an antitrust case."  *Baxter Int'l Inc. v.*

26  *Cobe Lab., Inc.*, No. 89 C 9460, 1992 U.S. Dist. LEXIS 5660, at *14 (N.D. Ill. Apr. 7, 1992)

27  (severing and staying antitrust counterclaims); *see also Shell Oil Co. v. American Cyanamid Co.*,

28  219 U.S.P.Q. 275 (S.D. Tex. 1982) ("The burden placed on a trier of fact, be it judge or jury, in a

1  case involving patent validity, patent infringement, patent misuse, unfair competition, antitrust

2  violations, and an unlawful interference with contractual relationships, is at best a heavy one to

3  bear."). This proposed intervenor would bring utter confusion to the jury by seeking to advance

4  a damages theory that flatly contradicts that which is already present in the case.

5        As explained in Part B, *supra*, it is simply not plausible that Netflix could respond to all

6  of Blockbuster's document and deposition discovery, conduct the discovery necessary to mount

7  a defense to Blockbuster's antitrust counterclaims, engage in Rule 23(b) proceedings, and then

8  deal with Dilbeck's damages discovery in the time remaining for fact discovery in this case,[2] yet

9  still have the case trial-ready in September of 2007. Accordingly, were the Court to permit

10  Dilbeck to intervene and file his proposed complaint, it should at a minimum stay discovery on

11  all of the ancillary antitrust issues that Blockbuster and Dilbeck seek to discover, allowing both

12  Netflix's infringement case and Blockbuster's invalidity/inequitable conduct defenses to be tried

13  first, in a timely fashion. Only if, after that trial, Netflix's patents are found to be invalid or

14  unenforceable, should this case proceed to discovery and trial on issues of market definition,

15  market power and antitrust injury.

16  **CONCLUSION**

17        For the foregoing reasons, Dilbeck's motion for leave to intervene should be denied.

18

19  Dated: November 16, 2006              KEKER & VAN NEST, LLP

20

21

22  By:       /s/ Jeffrey R. Chanin
                  Jeffrey R. Chanin

23                    Attorneys for Plaintiff
                  NETFLIX, INC.

24

25

26

27

28  [2] Indeed, as discussed above, Dilbeck concedes that he will not be able to meet the present fact discovery cutoff.