IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NETFLIX, INC.,

    Plaintiff,

v.

BLOCKBUSTER, INC.,

    Defendant.
                                  /

No. C 06-02361 WHA

**ORDER DENYING INTERVENTION**

    In this patent-infringement action, Dennis Dilbeck moves to intervene pursuant to FRCP 24. Because Dennis Dilbeck's proposed intervention would cause prejudice and undue delay to the original parties, his motion for leave to intervene is **DENIED**.

**STATEMENT**

    Plaintiff Netflix, Inc. filed the instant patent-infringement suit against defendant Blockbuster, Inc. The two patents-in-suit, U.S. Patent No. 6,584,450 and U.S. Patent No. 7,024,381, described methods of renting items, particularly for ordering digital video discs via the internet (but not transmitting them via internet).

    Since 1999, Netflix has rented movies on DVD on a subscription basis through its website, www.netflix.com. The services in question do not transmit files over the internet to users; they only allow users to subscribe to selected DVDs over the internet, which are then physically provided to users. Blockbuster is a competitor, having also rented DVDs for many years. Until 2004, Blockbuster's rentals were conducted in traditional brick-and-mortar stores.

On August 11, 2004, Blockbuster launched "Blockbuster Online," a service that provided for the rental of DVDs over the internet through its website www.blockbuster.com (Answer ¶ 30). Wal-Mart Stores, Inc. provided a similar DVD-rental service through the internet from June 2004 to June 2005 (Proposed Compl. ¶ 55).

Netflix filed its application for the '450 patent on April 28, 2000. According to Blockbuster, Netflix did not disclose any prior art at all in the application (Answer ¶ 39(b)). On May 14, 2003, while the '450 application was still pending, Netflix filed a continuation application that ultimately became the '381 patent. At first, Netflix allegedly did not disclose any prior art in connection with the '381 application.

On June 14, 2003, the '450 patent issued. It described a "method and apparatus for renting items" and stated 100 claims, some of which were specifically drawn to a method for the rental of movies. After the '450 patent issued, Netflix allegedly flooded the PTO with over 100 prior-art references in support of the '381 application, none of which had been disclosed during the prosecution of the '450 patent (Answer ¶¶ 39(d), 44). Moreover, according to Blockbuster, Netflix knowingly omitted certain material references in conjunction with *both* patent applications (*id.* at ¶¶ 44–45). Both patents named the same inventors and were prosecuted by the same lawyers. Both patents were assigned to Netflix.

Wal-Mart launched its online-DVD-rental service in June of 2004. Allegedly, Netflix used the '450 and '381 patents to induce Wal-Mart to withdraw from the market by June 2005 (Proposed Compl. ¶ 55). Blockbuster entered the online-DVD-rental market in August 2004. Thereafter, in January 2005, Netflix's chief executive officer, Reed Hastings, and Blockbuster's then executive vice president Edward Stead purportedly met (Answer ¶ 40). During that meeting, Hastings allegedly "praised Blockbuster's competitive position in the online rental business and asked Stead when he figured out that Netflix's '450 patent was a 'joke.'" (*ibid.*).

On the day the '381 patent issued, April 4, 2006, Netflix filed the instant lawsuit alleging infringement against Blockbuster of the two patents in issue. On June 13, Blockbuster filed its answer and counterclaims. Blockbuster alleged that Netflix violated Section 2 of the

2

Sherman Antitrust Act by committing knowing, willful fraud on the Patent and Trademark Office when applying for the two patents in suit, and by asserting these patents in bad faith sham litigation. Blockbuster also listed the affirmative defenses of inequitable conduct and patent misuse in its answer.

Netflix filed a motion to dismiss Blockbuster's antitrust counterclaims. An order denied Netflix's motion on August 22, 2006, holding that Blockbuster had adequately pleaded its antitrust claims. On September 8, 2006, an article appeared on the website www.law.com describing the lawsuit between Netflix and Blockbuster. Movant Dennis Dilbeck's counsel saw the article. Neither Dilbeck nor his counsel had known of Netflix's patents or the instant lawsuit until the article was published (Dilbeck Decl. ¶ 1–2). Dilbeck filed this motion to intervene on October 11, 2006.

**ANALYSIS**

Proposed intervenor Dilbeck now moves to intervene in the present action on behalf of a consumer class of all Netflix DVD-rental subscribers during the four years prior to the filing of Dilbeck's motion. He asks leave to intervene as of right under FRCP(a)(2), and alternatively, leave to intervene with permission under FRCP 24(b)(2). In substance, Dilbeck and his counsel wish to include a consumer class action as a tag-along to the antitrust defenses and counterclaims alleged by a competitor against Netflix.

**1.     FRCP 24(a)(2).**

Intervention as of right is appropriate "when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately protected by the parties." FRCP 24(a). Even if Blockbuster should lose on each of its antitrust claims against Netflix, Dilbeck would still be able to bring his own antitrust complaint against Blockbuster. The disposition of Blockbusters's claims would not foreclose any claims Dilbeck may later bring against Netflix. Dilbeck has effectively said as much in his briefs, stating that he would file his own consumer

3

class action suit against Netflix if this motion is denied. Dilbeck has no right to intervene because any judgment herein will not prejudice any separate or later action by him.

### 1. FRCP 24(b)(2).

A district court may grant permissive intervention where the applicant demonstrates "(1) an independent ground for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or fact in common." FRCP 24(b)(2); *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996). However, "even if an applicant satisfies those requirements, the district court has discretion to deny permissive intervention." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). "In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." FRCP 24(b)(2).

Where intervention would undermine the efficiency of the litigation process, a petition for permissive intervention may be denied. *United States v. Washington*, 86 F.3d 1499, 1504 (9th Cir. 1996) (holding that denying leave to intervene for complicating the issues and prolonging litigation was not abuse of discretion.) Admittedly, there is some logic in Dilbeck's proposal – he basically wants to ride for free on the antitrust work that will be done by Blockbuster and its counsel. But it is not as simple as that. Dilbeck would add a layer of class certification proceedings. It is doubtful that this could be done with notice effected and opt-outs registered before the discovery cutoff. It would be unfair to Netflix to require it to complete discovery without knowing the scope of its consumer adversary and potential exposure, not to mention the layer of extra litigation expense. The class certification procedures would require consideration of possible other class claimants and who would be the best class counsel, as allowed by new FRCP 23(g).

In addition, new substantive issues would be injected. For example, a *competitor* like Blockbuster faces different antitrust issues from *consumers* like Dilbeck. The economics of the damages theories for consumers, for example, would add a layer of complexity over and above the issues Blockbuster must litigate. Proof of consumer damages would require a wholly

4

different set of economic facts. Finding these facts would likely require different experts and third-party discovery requests. Another difference would likely lie in how the product market and the geographic markets are to be defined.

To try to shoehorn these additional issues into the existing discovery program is simply unworkable. These new issues would double the amount of work to be done in this already complex action. Too, if Blockbuster and Netflix settled their differences, we would be left with only Dilbeck. He could no longer take a free ride. His counsel would have to pay his own way. The tail would wag the dog.

Dilbeck argues that he should be allowed to intervene to prevent Blockbuster and Netflix from entering into a collusive settlement. First, this argument is speculative because Dilbeck admits in his briefs that he has heard of no talk of settlement. Second, allowing a nationwide consumer class action claim to intervene as an antitrust watchdog in a patent infringement case is without precedent. Finally, even if Blockbuster and Netflix settle, and even if that settlement is anticompetitive, Dilbeck or any other subscriber can still bring their own antitrust action to challenge the settlement. Settlement of the patent action will not need court approval. If the original parties do seek court approval, any such approval would presumably be without prejudice to third-party rights, such as those Dilbeck wishes to assert.

Netflix argues at length that Dilbeck's intervention is futile as it does not state a claim. This order need not reach that issue. Because of the prejudice to the original parties to this action, this order also need not reach the issues of independent grounds for jurisdiction and common questions of fact and law. Accordingly, Dilbeck will not be permitted to intervene.

**CONCLUSION**

In short, this action started out as a patent case between two competitors. To allow the intervention would bog this case down and wholly transform it to something far different. The

5

1  original plaintiff is entitled to have its case heard as originally pled within a reasonable time.

2  Dilbeck's motion for leave to intervene is **DENIED**.

3      **IT IS SO ORDERED.**

5  Dated: December 7, 2006

                                        WILLIAM ALSUP
                                        UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California