KEKER & VAN NEST, LLP
JEFFREY R. CHANIN - #103649
DARALYN J. DURIE - #169825
ASHOK RAMANI - #200020
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Plaintiff and Counterclaim Defendant,
NETFLIX, INC.

ALSCHULER GROSSMAN STEIN & KAHAN LLP
MARSHALL B. GROSSMAN - #35958
WILLIAM J. O'BRIEN - #99526
TONY D. CHEN - #176635
DOMINIQUE N. THOMAS - #231464
The Water Garden
1620 26th Street
Fourth Floor, North Tower
Santa Monica, CA  90404-4060
Telephone:  310-907-1000
Facsimile:  310-907-2000

Attorneys for Defendant and Counterclaimant,
BLOCKBUSTER INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETFLIX, INC., a Delaware corporation,<br><br>                                        Plaintiff,<br><br>        v.<br><br>BLOCKBUSTER, INC., a Delaware corporation, DOES 1-50,<br><br>                                        Defendant.<br><br>_____<br><br>AND RELATED COUNTERCLAIMS | Case No. C 06 2361 WHA (JCS)<br><br>**STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY DISPUTES**<br><br>Hearing Date:    Jan. 12, 2007<br>Time:                9:30 A.M.<br>Courtroom:       A, 15th Floor<br>Magistrate Judge:   Joseph C. Spero<br><br>Complaint Filed:    April 4, 2006 |

Plaintiff and Counter-Defendant, Netflix, Inc., and Defendant and Counterclaimant, Blockbuster Inc., through their respective counsel of record, hereby stipulate and agree as follow:

## I.   BACKGROUND

### A.   Efforts at Out-of-Court Resolution

1.   On November 3, 2006, Netflix filed a motion to compel further responses from Blockbuster to Netflix's First Set of Requests for Production and a motion for a protective order as to certain Blockbuster document subpoenas to third-parties, and, on the same date Blockbuster filed a motion to compel further responses from Netflix to Blockbuster's First Set of Requests for Production.  (These three motions are collectively referred to hereafter as the "Subject Motions.")  The Subject Motions are currently scheduled for hearing on January 12, 2007.

2.   In addition to meeting and conferring in person and by telephone prior to the filing of the Subject Motions, counsel for Netflix and Blockbuster conferred about them further, in person, on November 15 and December 8, 2006.  The conferences on November 15 and December 8 were attended by Jeffrey R. Chanin and Eugene Paige of Keker & Van Nest LLP, counsel for Netflix, and by Marshall B. Grossman and William J. O'Brien of Alschuler Grossman Stein & Kahan LLP, counsel for Blockbuster.

3.   During the course of the November 15 and December 8 conferences, counsel made strenuous efforts to resolve the numerous points of contention in the Subject Motions.  They have succeeded in resolving the large majority of those issues, as is reflected in Sections II-V of this Stipulation.  Sections II-V list issues on which the parties have reached agreement and which no longer require the attention of the Court.  Section VI of this Stipulation lists the only remaining issues as to the Subject Motions.

### B.   Conditions of Stipulation

4.   In order to facilitate compromise on the Subject Motions, Netflix and Blockbuster have agreed that the compromises reflected in Sections II-IV of this stipulation will

not prejudice or in any way limit the ability of either side to request discovery in the future, whether from each other or from third parties.  Except as provided in Section V, the parties' agreements in this Stipulation to limit certain discovery requests, to forego certain discovery, and to accept certain responses as sufficient shall not be used as bases for objecting to any future requests for the same or similar discovery, nor to argue against the discoverability of such matters in the event of any future request.

5.      Additionally, a party's agreement in this Stipulation to produce certain documents or tangible things (collectively, "documents") shall not be construed as a representation or admission concerning the existence of any such document or of the party's possession, custody, or control of any such document.  Instead, any provision in this Stipulation requiring production of documents shall be interpreted as requiring that the party in question diligently search for such documents and produce all such documents that are found as a result of such a search, subject to objections based on attorney-client privilege or work-product protection and subject to each party's right to designate information as "Confidential" or "Confidential – Attorneys' Eyes Only" under the Protective Order in this case.

6.      Notwithstanding any provision of this Stipulation to the contrary, each party reserves all rights that it may have to withhold documents based on the attorney-client privilege or attorney work-product protection.  No provision of Sections II-V of this Stipulation shall be construed as waiving or limiting a party's ability to object or withhold documents based on attorney-client privilege or attorney work-product protection.

## II.      AGREEMENTS ON BLOCKBUSTER'S MOTION TO COMPEL

7.      Subject to the conditions set forth in Section I B of this Stipulation, Blockbuster and Netflix have reached agreement as set forth in Sections II-IV below on each of the Subject Motions.

8.      In response to Blockbuster's Requests for Production Nos. 3-5, 10-16, 46-49, and 52-54, Netflix has agreed to produce, and Blockbuster has agreed to accept:

a.      The following documents from the prosecution histories of Netflix

patent applications other than for the Netflix patents-in-suit:

(1)     All references to or discussions of any matter that is prior art to the patents-in-suit, including any Information Disclosure Statements submitted by or on behalf of the applicant(s) that list any matter published, in use, or on sale before April 28, 2000, and any citations by the Patent Office of any prior art published, in use, or on sale before April 28, 2000;

(2)     All descriptions of any mode by which Netflix practiced the steps claimed in the patents-in-suit prior to April 28, 2000; and

(3)     All descriptions of modes considered by Netflix prior to April 28, 2000, for practicing any of the steps claimed in the patents-in-suit;

b.     All documents constituting, recording, referring to, or evidencing COMMUNICATIONS between W. Reed Hastings and Edward Stead concerning any SUBJECT PATENT or APPLICATION, with each of the foregoing terms that appears in all capital letters having the definition stated in Blockbuster's First Set of Requests for Production;

c.     All documents constituting, recording, referring to, or evidencing COMMUNICATIONS between NETFLIX and BLOCKBUSTER concerning any SUBJECT PATENT or APPLICATION, with each of the foregoing terms that appears in all capital letters having the definition stated in Blockbuster's First Set of Requests for Production;

d.     All documents constituting, recording, referring to, or evidencing COMMUNICATIONS concerning any patent rights, patent license, or patent infringement related to Blockbuster Online, with each of the foregoing terms that appears in all capital letters having the definitions set forth in Blockbuster's First Set of Requests for Production;

e.     All documents referring or relating to any communication from a third party that accused Netflix of infringement of a patent that predates April 2000 or

that invited Netflix to license any such patent;

      f.     All documents referring or relating to any instance in which Netflix has requested that another person or entity take a license to any of Netflix's patents; and

      g.     All documents that show any consideration or discussion of whether any information about prior art should be, should not be, should have been or should not have been submitted to the Patent and Trademark Office.

     9.     In response to Blockbuster's Requests for Production Nos. 24-26, 128 and 129, Netflix has agreed to produce, and Blockbuster has agreed to accept, all documents referring or relating to any variation in the speed or priority of fulfilling a customer's rental request based, in whole or in part, in the number or frequency of items rented by the customer, insofar as such documents either existed prior to April 28, 2000, or refer or relate to such a practice that existed prior to April 28, 2000.

     10.     In response to Blockbuster's Requests for Production Nos. 130-32, Netflix has agreed to produce, and Blockbuster has agreed to accept, all documents that relate to preferential sorting or handling of any mail to or from Netflix by the United States Postal Service prior to April 28, 2000.

     11.     In response to Blockbuster's Requests for Production Nos. 32, 34-36, 55-57, 67-71, 73-74, 78-81, 86, 88-90, 93-100, 105, 113-117, and 119, Netflix has agreed to produce, and Blockbuster has agreed to accept:

      a.     All documents that Netflix has previously committed to produce in its responses to Blockbuster's Requests;

      b.     Documents sufficient to fully describe any disclosure, practice, or use, prior to April 28, 1999, of any online rental of movies (as the term "movies" is used in U.S. Patent No. 7,024,381);

      c.     Documents sufficient to fully describe any disclosure, practice, or use, before April 28, 1999, of any rental of anything using what the patents-in-suit refer

4

to as "Max Out" (including any arrangement limiting the number of items a customer can have rented at a time) or what the patents-in-suit refer to as "Max Turns" (including any arrangement that limits the number of items that a customer can exchange during a period of time);

        d.     Documents sufficient to fully describe any disclosure, practice, or use of delivery of movies by mail before Netflix began its original business;

        e.     Documents sufficient to fully describe any disclosure, practice, or use of delivery of audio or video discs by mail before Netflix began its original business; and

        f.     Documents sufficient to fully describe any disclosure, practice, or use of rental of DVDs before Netflix began its original business.

## III.    AGREEMENTS ON NETFLIX'S MOTION TO COMPEL

12.    In response to Netflix's Requests for Production Nos. 34-36, Blockbuster has agreed to produce, and Netflix has agreed to accept, Blockbuster's agreements with consultants for the development of each version of Blockbuster Online, as well as any modifications to and correspondence discussing those agreements; any lists naming consultant personnel who worked on the development of each version of Blockbuster Online; all documents exchanged with consultants in connection with the development of each version of Blockbuster Online; and all market research documents relating to Blockbuster Online up until June 30, 2006.

13.    In response to Netflix's Requests for Production Nos. 26 and 27, Blockbuster has agreed to produce, and Netflix has agreed to accept, documents sufficient to fully describe the computer hardware and software used for Blockbuster Online, including computer hardware and software used for Blockbuster Online's distribution centers.  Blockbuster shall not be required to produce documents related to common business software (for example, Microsoft Office or Adobe Acrobat) or individualized documentation such as invoices or packing lists for specific computers or components.

14.    In response to Netflix's Request for Production No. 31, Blockbuster has

STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY DISPUTES
CASE NO. C 06 2361 WHA (JCS)

agreed to produce, and Netflix has agreed to accept, documents sufficient to describe computer or Web technology, software, or hardware that was developed by third parties that implements or assists in the implementation of any of the steps performed in the claims of Netflix's patents, as well as the terms of any license agreements and amounts paid by Blockbuster for the right to use that technology.  For purposes of the claimed steps relating to delivery by mail, this means computer or Web software, hardware or technology that implements or assists in the implementation of placing DVDs into envelopes intended for delivery by mail or of sorting, assembling, or transporting such envelopes up to the time they leave a Blockbuster distribution center.  Blockbuster shall not be required to produce documents related to common business software (for example, Microsoft Office or Adobe Acrobat) or individualized documentation such as invoices or packing lists for specific computers or components.

15.     In response to Netflix's Request for Production No. 19, Blockbuster has agreed to produce, and Netflix has agreed to accept, documents sufficient to show the manner in which Blockbuster accounts for Blockbuster Online.

16.     In response to Netflix's Request for Production No. 89, Blockbuster has agreed to produce, and Netflix has agreed to accept, exemplars of in-store promotions of Blockbuster Online, as well as all documents reflecting internal discussions of how Blockbuster Online will affect Blockbuster's in-store business.

17.     In response to Netflix's Requests for Production Nos. 7-10, 21, 24-25, 28-36, 58-59, 67-74, 76-79, 81-82, 90, and 101-102, Blockbuster has agreed to provide revised statements of the documents that it is committing to produce in response to Netflix's requests, and such revised statements will not include the limitation that the documents to be produced are what Blockbuster considers to be "sufficient to reasonably describe."

///
///
///
///

**IV.      AGREEMENTS ON NETFLIX'S MOTION FOR A PROTECTIVE ORDER**

   **A.      Subpoenas to NBC Universal, Yahoo!, Sony Pictures, Paramount Pictures, The Walt Disney Company, Warner Bros., Best Buy, Fox Entertainment, AOL, and Microsoft (collectively, the "Studio and Internet Subpoenas")**

18.      Netflix moved for a protective order regarding Categories 1, 2, 4, 5, 8, 9, 16 and 17 of the Studio and Internet Subpoenas.  Blockbuster agrees to limit those enumerated categories as is set forth below, and Netflix withdraws its motion for a protective order with regard to those categories as so limited, based on Blockbuster's agreement that it will seek discovery of such enumerated categories of documents from Netflix first.

19.      Should Blockbuster issue document requests to Netflix seeking the documents referred to in, and as limited by, this Section IV that have been sent to any of the third-party recipients of the Studio and Internet Subpoenas (collectively, the "Subpoena Recipients"), Netflix will respond by producing responsive documents sent to the Subpoena Recipients, together with a declaration under penalty of perjury from a Netflix representative stating that Netflix has made inquiry of the persons who would have had communications with the Subpoena Recipient as to the existence, identity, and location, if any, of the documents Netflix has provided to the Subpoena Recipient.  The declaration shall identify (by production serial number by applicable) the responsive documents that were determined, after a reasonable search, to have been provided by Netflix to the Subpoena Recipient.  Blockbuster may thereafter show those documents to the applicable Subpoena Recipient and inquire as to whether the Subpoena Recipient obtained any other responsive documents referred to in, and as limited by, this Section IV from Netflix.

20.      Netflix shall not object to or seek a protective order or other bar or limitation with respect to Blockbuster's discovery from any Subpoena Recipient of documents referred to in this Section IV that have not been produced to Blockbuster by Netflix and identified in a declaration as provided above, except on grounds, if any exist, that the discovery would violate attorney-client privilege or work-product protection.

21.      Categories 1 and 2 of the Studio and Internet Subpoenas are limited to

7

DOCUMENTS (as that term is defined in the subpoenas) that refer, in whole or in part, to Netflix's online DVD rental service. The phrase "financial statements" shall mean income statements, balance sheets, statements of retained earnings, and statements of changes in financial position.

22. The phrase "NETFLIX PATENTS AND APPLICATIONS or any intellectual property owned or claimed by Netflix," as used in Category 4 of the Studio and Internet Subpoenas, is limited to mean:

    a. The patents-in-suit in this case, U.S. Patents Nos. 6,584,450 and 7,024,381;

    b. The applications that resulted in the patents-in-suit, U.S. Patent Applications Serial Nos. 09/561,041 and 10/438,727 (collectively, the "Subject Applications");

    c. Any United States, foreign, or international patent application that claimed priority of either of the Subject Applications or any application from which either of the Subject Applications claims priority; and

    d. Any Netflix patent or application that is referred to in a document but is not specifically identified in a document.

23. Category 5 of the Studio and Internet Subpoenas is limited as follows:

    a. Category 5 is limited to documents received or dated on or before April 28, 2000; and

    b. The phrase "any online rental service," as used in Category 5, is limited to any online subscription rental service.

24. Categories 8 and 9 of the Studio and Internet Subpoenas are limited to documents and communications that evidence, reflect, or refer to:

    a. Any use by Netflix before April 28, 1999, of one or more matters identified in Categories 8 and 9; or

    b. Any knowledge by Netflix at any time up through April 4, 2006, of

1    any disclosure or use of one or more matters identified in Categories 8 and 9 that

2    occurred or began prior to April 28, 1999.

3    **V.    REMAINING ISSUES FOR DECISION**

4         25.     The only issues raised by the Subject Motions that remain for decision by

5    the Court are as follows:

6              a.     The portion of Netflix's motion for a protective order directed to

7    Categories Nos. 16 and 17 of the Studio and Internet Subpoenas; and

8              b.     The portion of Netflix's motion for a protective order directed to

9    Blockbuster's document subpoena to the Gutride Safier law firm.

10        26.     The parties respectfully request that the Court proceed to decide these

11   remaining issues according to the following procedure:

12             a.     The parties will submit a joint letter setting forth their respective

13   positions on each of the issues no later than January 5, 2007, and

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28

b.      The parties respectfully request that the Court conduct a hearing on these issues on the presently scheduled hearing date of January 12, 2007, at 9:30 a.m.

Dated:  December 15, 2006          KEKER & VAN NEST, LLP


By:  ___/S/_____
Eugene M. Paige
Attorneys for Plaintiff and Counterclaim Defendant,
NETFLIX, INC.

Dated: December 15, 2006          ALSCHULER GROSSMAN STEIN & KAHAN LLP


By:  ___/S/_____
William J. O'Brien
Attorneys for Defendant and Counterclaimant,
BLOCKBUSTER INC.


**PURSUANT TO STIPULATION, IT SO ORDERED.**

Dated:  December 18, 2006      _____
HONORABLE JOSEPH C. SPERO
UNITED STATES MAGISTRATE JUDGE

STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY DISPUTES
CASE NO. C 06 2361 WHA (JCS)