1   ALSCHULER GROSSMAN STEIN & KAHAN LLP
    Marshall B. Grossman (No. 35958)
2   William J. O'Brien (No. 99526)
    Tony D. Chen (No. 176635)
3   Dominique N. Thomas (No. 231464)
    The Water Garden
4   1620 26th Street
    Fourth Floor, North Tower
5   Santa Monica, CA  90404-4060
    Telephone:  310-907-1000
6   Facsimile:  310-907-2000
    Email:  mgrossman@agsk.com
7           wobrien@agsk.com
            tchen@agsk.com
8           dthomas@agsk.com

9   Attorneys for Defendant and Counterclaimant,
    Blockbuster Inc.

10
                    UNITED STATES DISTRICT COURT
11
                  NORTHERN DISTRICT OF CALIFORNIA
12

13
    NETFLIX, INC., a Delaware corporation,          CASE NO. C 06 2361 WHA
14
                        Plaintiff,                   **BLOCKBUSTER'S BRIEF ON CLAIM
15                                                   CONSTRUCTION**
            vs.
16                                                   [Supporting Declaration of William J.
    BLOCKBUSTER INC., a Delaware corporation,        O'Brien filed Concurrently]
17  DOES 1-50,
                                                     Hearing Date:     January 31, 2007
18                      Defendants.                  Time:             1:30 p.m.
                                                     Judge:            William Alsup
19
                                                     Complaint Filed:  April 4, 2006
20  AND RELATED COUNTER ACTION.

21

22

23

24

25

26

27

28

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

1    I.      **INTRODUCTION**

2              This case will determine whether Netflix is entitled under the patent laws to an

3    effective monopoly on online video rental or whether competitors like Blockbuster Online are

4    entitled to join Netflix in bringing long-established practices from the bricks-and-mortar video

5    rental industry to the Internet.  Contrary to the tone affected in Netflix's brief, there is nothing

6    inherently wrongful about "copying" features of an existing business.  If there were, Blockbuster

7    would be the aggrieved party here, because of the many features that Netflix copied from

8    Blockbuster's longstanding and preeminent rental business.  But such a rule would undermine our

9    free enterprise system, which encourages and depends upon aggressive competition.  As much as

10   Netflix would like to have an effective monopoly on online video rental, its patent rights are

11   circumscribed by all of the requirements of law, including requirements such as novelty, non-

12   obviousness, and disclosure of best modes, as well as Netflix's duty to disclose all known

13   material prior art to the Patent Office in obtaining the patents-in-suit.[1]

14             From the first sentence of its brief, Netflix paints a misleading picture of its so-

15   called inventions, claiming that Netflix "revolutionized the move-rental industry" with a "novel"

16   approach, and going on to describe this supposedly novel approach as "separat[ing] the selection,

17   rental, and viewing of movies."  (Netflix Br. at 1:2-12.)  What Netflix is describing is

18   subscription rental of videos, which (like subscription rental of audio tapes and books) was in

19   practice long before Netflix.  So too was use of a list of items desired by a subscriber.  At most,

20   Netflix's supposed inventions amount to nothing more than applying this well-known business

21   model to the Internet.[2]

22             This Court's construction of the patent claims will provide an essential baseline

23   against which to measure the claims and defenses in this case.  For example, the meaning of the

24   _____

     [1] In order to prevail against Blockbuster, Netflix must also prove that Blockbuster Online fulfils
25   all of the requirements ("limitations") of one or more patent claims.  Contrary to Netflix's
     unsupported assertion (*see* Netflix Br. at 1:14-15), Blockbuster has not conceded with the claims
26   of the patents-in-suit cover Blockbuster Online.  Clearly, some do not.  Whether or not others
     cover Blockbuster Online may depend on claim constructions, such as the construction of "based
27   upon the desired order."  (*See* § IV, *infra*.)
     [2] Netflix also presents a misleading picture of Blockbuster's alleged copying.  For example,
28   Netflix quotes from a draft document prepared by IBM, but the statements quoted do not refer to
     matters covered by Netflix's patents.  (*See* Ramani Dec., Ex. 8 at 2.4.)

                                                1                    BLOCKBUSTER'S BRIEF ON CLAIM
                                                                                    CONSTRUCTION
                                                                                    C 06 2361 WHA

1    claims of the patents-in-suit is essential for comparing those claims to what was already in the

2    prior art – including identification of any combinations and modifications of prior art that would

3    have resulted in the claimed subject matter.[3]  The meaning of the claims is also important to

4    deciding materiality of prior art that Netflix knew about but withheld to the patent office, the

5    "best modes" for practicing the claimed invention (which Netflix was required to disclose in its

6    patent applications under 35 U.S.C. § 112, ¶ 1), and, of course, for determining whether

7    Blockbuster Online is covered by one or more of Netflix's patent claims.  When these issues

8    come before the Court, it will quickly become evident that Netflix has no valid case against

9    Blockbuster.

10            As just one example, the obviousness of Netflix's patent claims will be readily

11   apparent.  Netflix says in its brief that the patents are "deceptively simple," arguing that any

12   appearance of obviousness is merely "hindsight."  (Netflix Br. at 3:4.)[4]  However, this effort to

13   obscure the obviousness of its patents is completely hollow.  For example, Netflix cites its patent

14   claim limitations requiring that a "customer submit[] 'item selection criteria' to the rental

15   provider."  (Netflix Br. at 3:4-5.)  As described by Netflix, "these criteria may specify particular

16   movie titles, or they may relate more generally to the desired items' subject matter – action

17   movies, for example, or movies directed by Bernardo Bertolucci."  (*Id.* at 3:5-6.)  But the

18   obviousness of a customer telling a rental provider what movie the customer wants to rent is not

19   ─────────────────────

20   [3] A patent claim is obvious if it could be replicated through an obvious combination of features in
     the various items of relevant prior art or an obvious modification of such prior art.  *Ormco Corp.*
21   *v. Align Tech., Inc.*, 463 F.3d 1299, 1307-08 (Fed. Cir. 2006); *Dystar Textilfarben GmbH v. C.H.*
     *Patrick Co.*, 464 F.3d 1356, 1360 (Fed. Cir. 2006).  A patent claim may also be obvious on its
     face in view of "the nature of the problem to be solved."  *Ormco Corp.*, 463 F. 3d at 1308;
22   *Dystar*, 464 F.3d at 1366; *Alza Corp. v. Mylan Labs., Inc.*, 464 F.3d 1286, 1290-91 (Fed. Cir.
     2006).  Netflix's patent claims are obvious and invalid under either approach.
23   [4] Netflix inaccurately cites a passage from the transcript from the oral argument before the
     Supreme Court in the case *KSR International v. Teleflex Inc.* (No. 04-1350) for the proposition
24   that "[t]he most innovative solutions are often those that, with the benefit of hindsight, seem the
     most obvious."  (Netflix Br. at 3n.1.)  Chief Justice Roberts made no such statement during the
25   oral argument.  Also, the statement that the Chief Justice did make, as cited and quoted by
     Netflix, is taken out of context.  The Chief Justice was merely summing-up the argument in favor
26   of the existing Federal-Circuit obviousness standard and, read in context, was clearly not
     expressing agreement with that argument or that standard.  On the contrary, the Chief Justice later
27   called the standard "worse than meaningless . . . ."  (O'Brien Decl., Ex. A; (*KSR* transcript) at 40;
     *see also id.* at 9, 41(statements by Justices that the Federal Circuit's present "teaching-suggestion-
28   motivation" standard for obviousness is incomprehensible, "gobbledygook," and "irrational").)

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP                                    2                    BLOCKBUSTER'S BRIEF ON CLAIM
                                                                            CONSTRUCTION
                                                                              C 06 2361 WHA

1  "deceptive," nor is such a step obvious only in hindsight.  Communication of what the customer

2  wants is not only obvious but, indeed, a necessity for any viable rental business.[5]

3      Netflix also touts its so-called "queue."  (Netflix Br. at 3:13-21.)  As will be

4  explained below, this "queue" merely records what movies or other items a customer wishes to

5  receive.  Netflix fails to explain how else an Internet rental provider is supposed to know what

6  movies to ship to its subscription rental customers.  Here again, the obviousness of this feature

7  has nothing to do with hindsight but is inherent in "the nature of the problem to be solved."

8  Netflix asserts that the queue is "dynamic" – but this means nothing more than that the customer

9  can add and delete items from the queue and change the order in which items appear.  It would be

10  absurd to ask a customer to list desired items without allowing such updates.[6]  Netflix adds that

11  its "invention" allowed it to eliminate late fees, but some of the prior-art subscription rental

12  services did not have late fees either.

13      In its proposed claim constructions, Netflix attempts to raise the bar for

14  Blockbuster's obviousness defenses and other defenses of invalidity and unenforceability by

15  systematically narrowing claim limitations to less than their stated scope.  For example, Netflix

16  construes "electronically updating" as requiring that updating be performed by the "provider's

17  computer(s)," construes "computer-implemented" as requiring use of "provider computer(s)," and

18  construes a "periodic fee" as being limited to a subscription fee.  Netflix also inserts references to

19  "the customer" and "the provider" where no such restrictions are stated or implied in the claims.

20  (*See* §§IV-V, VII-X *infra*.)[7]  While Blockbuster believes that Netflix's patent claims are invalid

21  and unenforceable under any construction, those determinations should be based on the claims as

22  written and issued, not as retroactively narrowed by Netflix.

23      Netflix's proposed claim constructions are appealingly brief, but that brevity has

---

24  [5] Just walking up to a rental counter and telling the clerk what movie one wants would constitute submission of "item selection criteria."

25  [6] Illustrating Netflix's reliance on obvious features, it calls Blockbuster Online "a Netflix clone"

26  just because Blockbuster "allows customers to prioritize movies in the order in which the customer would like to receive them, and the customer may update the queue by adding, deleting, or changing the movie order."  (Netflix Br. at 4.20-23.)

27  [7] The exception to this systemic broadening has to do with "based upon the order of the list."

28  Netflix attempts to broaden that limitation to encompass selection criteria and techniques never referred to in the patents-in-suit.  (*See* § VI, *infra*.)

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

3

BLOCKBUSTER'S BRIEF ON CLAIM
CONSTRUCTION
C 06 2361 WHA

1  been achieved at the expense of clarity and completeness.  For example, Netflix construes

2  "item/movie rental queue" without defining "item" or "movie," "ordered list" without defining

3  "list" or "order," "electronically updating" without defining "electronic" (instead changing the

4  subject to "computer(s)"), "computer-implemented" without defining "computer," and "periodic

5  fee" without defining "fee."  Because Blockbuster has attempted to provide complete definitions

6  of the terms to be construed, its proposed constructions are necessarily longer and – at first

7  glance – more complicated.  In reality, however, Netflix's constructions are – to borrow a

8  phrase – "deceptively simple."  Because of their lack of explicitness, adoption of Netflix's

9  constructions would create the risk of failing to resolve the parties' underlying disputes about

10  claim scope and merely replacing the need to construe claim language with a need to construe

11  language of the construction order.  Blockbuster's proposed constructions, although longer, are

12  intended to assist the Court in achieving a clear and final resolution of the relevant issues of claim

13  scope.  They should be adopted by the Court.

## II.    OVERVIEW OF THE PATENTS IN SUIT

15      Netflix alleges that Blockbuster's online DVD rental service infringes two U.S.

16  patents, Nos. 6,584,450 (the '450 patent) and 7,024,381 (the '381 patent).  These patents do not

17  describe any technology that was not already widely known and in general use well before any

18  purported inventions of Netflix.  Instead, the patents merely describe use of preexisting

19  technology – including the Internet – to practice the preexisting business of subscription rental of

20  movies and other items to customers.  From at least the mid-1990s, it was obvious to adapt

21  "brick-and-mortar" businesses to the Internet – as Netflix did with Blockbuster's highly popular

22  movie rental business.  The advent of the DVD format in the late 1990s provided the opportunity

23  to send and receive video disks by mail at a far lower cost than VHS videotapes, which increased

24  the economic feasibility of renting movies over the Internet.  Netflix merely exploited an obvious

25  market opportunity created by developments in Internet and DVD technology, which had been

26  entirely the work of others.

27      Netflix applied for the '450 patent on April 28, 2000.  The patent application was

28

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

4

BLOCKBUSTER'S BRIEF ON CLAIM
CONSTRUCTION
C 06 2361 WHA

1    filed in the names of W. Reed Hastings, Marc B. Randolph, and Neil Duncan Hunt.  Hastings is

2    the Chief Executive Officer and President of Netflix, Randolph is its former CEO and President,

3    and Hunt is Netflix's Chief Product Officer.

4                The '450 patent was issued on June 24, 2003, after a three-year pendency but only

5    a cursory examination.  From the outset, the examination was hindered by the failure of Netflix,

6    its inventors, and its patent attorneys to submit even a single prior art reference to the Patent

7    Office in applying for and obtaining the '450 patent, even though they were under a legal and

8    ethical "duty of candor and good faith" to disclose all known material prior art, 37 C.F.R.

9    § 1.56(a)-(c), and even though the named inventors submitted a declaration expressly

10   acknowledging this duty.  This occurred even though Netflix and its named inventors – including

11   Netflix CEO Reed Hastings – were demonstrably aware of relevant prior art.  For example,

12   Hastings has repeatedly stated in the press that his inspiration for Netflix's subscription service

13   consisted of (1) being charged a large late fee by a conventional video rental store and (2) his

14   subscription gym membership.  (O'Brien Decl., Exs. B-C.)  However, Hastings disclosed neither

15   the video store nor the gym's subscription program to the Patent Office, denying the Office the

16   opportunity to consider whether a "person of ordinary skill" would have found the same

17   inspiration that Hastings did in this combination of prior art.  Additionally, Hastings and Netflix

18   failed to disclose important prior-art NCR patents, even though they were well aware of those

19   patents and even though NCR had advised them that its patents covered the very same

20   subscription rental service that Netflix was engaged in patenting.  (*See id.*, Ex. D at ¶ 22; *see also*

21   *id.* ¶¶ 12-21.)

22               Early on, the Patent Examiner became distracted by Netflix's own website, citing

23   it as invalidating prior art.  (*See id.*, Ex. E.)  Netflix submitted declarations stating that its

24   subscription rental service had begun less than a year before it filed its patent application and

25   therefore was not prior art.  (*See, e.g.*, Ramani Decl., Ex. 3.)  The Office ultimately allowed 100

26   extremely broad claims to issue in the '450 patent.  These claims cover most if not all

27   subscription rental methods.  The '450 patent claims are not limited to movies; most cover rental

28   of any "items" whatsoever.  Nor are they limited to online rentals.  They could cover in-store

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP                                               5                          BLOCKBUSTER'S BRIEF ON CLAIM
                                                                                                CONSTRUCTION
                                                                                              C 06 2361 WHA

1   rentals having nothing to do with the Internet.  Ironically, Netflix treats the business-method

2   subject matter of its patents as providing special assurances of quality.  (*See* Netflix Br. at 4:12-

3   15.)  On the contrary, widespread concerns about the quality of issued business-method patents

4   has been expressed by, among others, the National Academy of Sciences, the Federal Trade

5   Commission, and at least four Justices of the Supreme Court, who have referred to the "suspect

6   validity" of such patents.  *eBay v. Merc Exchange, L.L.C.*, 126 S. Ct. 1837, 1842-43 (2006)

7   (Justice Kennedy concurring, joined by Justices Stevens, Sutter and Breyer).

8          On May 14, 2003, shortly before the '450 patent was issued.  Netflix filed the

9   application for the '381 patent, in the names of the same inventors, as a "continuation" of the

10  application for the '450 patent.  In contrast to its conduct in obtaining the '450 patent, Netflix

11  submitted more than 100 items of possible prior art to the Patent Office in connection with the

12  '381 patent.  Still, Netflix did not disclose all known material prior art.  For example, Netflix

13  continued to withhold the NCR patents even after NCR repeatedly charged Netflix with

14  infringing those patents and even after Netflix filed a declaratory-judgment case over them.  (*See*

15  O'Brien Decl., Ex. D at ¶¶ 22-23, 25, 27.)

16         In comparison to the '450 patent claims, Netflix narrowed the 51 claims of the

17  '381 patent by limiting them to rental of "movies" and requiring use of the Internet.  Otherwise,

18  the '381 patent broadly claims a subscription rental methodology similar to that claimed in the

19  '450 patent.  In the only formal Office Action on Netflix's application for the '381 patent, the

20  Examiner largely relied on an assertion that Netflix's claim invention was devoid of technological

21  content and therefore not patentable.  (O'Brien Decl., Ex. F.)  Until about that time, although the

22  Federal Circuit had held that business methods were patentable, the Patent Office was still

23  resisting issuance of pure business method patents.  *See State St. Bank & Trust Co. v. Signature*

24  *Fin. Group, Inc.*, 149 F.3d 1368, 1375-78 (Fed. Cir. 1998); *Ex parte Lundgren*, Appeal No. 2003-

25  2088, 2004 WL 3561262 at *1-5, 76 U.S.P.Q. 2d 1385 (Bd. Pat. App. & Inter. 2004).  Thereafter,

26  the Office retreated from that position, *id.*, and issued the '381 patent accordingly.[8]

---

[8] The Supreme Court has not yet reviewed the Federal Circuit's determination that business
methods are patentable.  At least three Justices have opined that the Federal Circuit's standard for
patentable subject matter, if "taken literally," is contrary to Supreme-Court precedent.  *See Lab.*

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

BLOCKBUSTER'S BRIEF ON CLAIM
CONSTRUCTION
C 06 2361 WHA

1    All of the claims of the '381 patent require a "movie rental queue," which is

2  described in those claims as being "associated with a customer" and as "comprising an ordered

3  list indicating two or more movies for renting to the customer . . . ." ('381 Pat., Claims 1, 14, 24,

4  34, 44 (hereafter, "all independent claims").)  The '381 patent's heavy emphasis on the "queue"

5  represents a departure from Netflix's original patent application, which contained only one brief

6  reference to a "queue," and from the '450 patent, which recites a "queue" in only six dependent

7  claims out of the 100 claims of that patent.  ('450 Pat., 4:54-58 & Claims 7, 22, 42, 57, 72, 87.)

8  **III.    APPLICABLE LAW**

9       A.    **The Most Important Tool in Construction Is the Language of the Claims**
10           **Themselves.**

11           As the Federal Circuit has recently reaffirmed, "[i]t is a 'bedrock principle' of

12  patent law that 'the claims of a patent define the invention to which the patentee is entitled the

13  right to exclude.' *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc)

14  (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed.

15  Cir. 2004)); *see also Vitronics Corp. v. Conceptronic, Inc.,*  90 F.3d 1576, 1582 (Fed. Cir. 1996)

16  ("we look to the words of the claims themselves . . . to define the scope of the patented

17  invention), *quoted in Phillips*, 415 F.3d at 1312.  In this regard, the Federal Circuit has followed

18  the precedents of the Supreme Court, which "made clear that the claims are 'of primary

19  importance, in the effort to ascertain precisely what it is that is patented.'"  *Phillips*, 415 F.3d at

20  1312 (quoting *Merrill v. Yeomans*, 94 U.S. 568, 570 (1877)).  "Because the patentee is required to

21  "define precisely what his invention is,' . . . "it is 'unjust to the public, as well as an evasion of

22  the law, to construe it in a manner different from the plain import of its terms." *White v. Dunbar*,

23  119 U.S. 47, 52 (1886); *see also Continental Paper Bag Co. v. Eastern Paper Bag Co.*, 210 U.S.

24  405, 419 (1908) ("the claims measure the invention"); *Aro Mfg. Co. v. Convertible Top*

25  *Replacement Co.*, 365 U.S. 336, 339 (1961) ("the claims made in the patent are the sole measure

26  of the grant").

27  *Corp. of Am. Holdings v. Metabolite Labs., Inc.*, 126 S.Ct. 2921, 2928 (2006) (Justice Breyer
dissenting from dismissal of cert. as improvidently granted, joined by Justices Stevens and
28  Souter).

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

7

BLOCKBUSTER'S BRIEF ON CLAIM
CONSTRUCTION
C 06 2361 WHA

1    The words of a claim "are generally given their ordinary and customary meaning."

2    *Vitronics*, 90 F.3d at 1582, *quoted in Phillips*, 415 F.3d at 1312.  This "ordinary and customary

3    meaning of a claim term is the meaning that the term would have to a person of ordinary skill in

4    the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent

5    application."  *Phillips*, 415 F.3d at 1312; *Innova*, 381 F.3d at 1116 ("A court construing a patent

6    claim seeks to accord a claim the meaning it would have to a person of ordinary skill in the art at

7    the time of the invention").

8    "Other claims of the patent in question, both asserted and unasserted, can also be

9    valuable sources of enlightenment as to the meaning of the claim term."  *Phillips*, 415 F.3d at

10   1314 (citing *Vitronics*, 90 F.3d at 1582).  "Because claim terms are normally used consistently

11   throughout the patent, the usage of a term in one claim can often illuminate the meaning of the

12   same term in other claims."  *Phillips*, 415 F.3d at 1314 (citing *Rexnord Corp. v. Laitram Corp.*,

13   274 F.3d. 1336, 1342 (Fed. Cir. 2001), and *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d. 1146,

14   1159 (Fed. Cir. 1997)).  "Differences among claims can also be a useful guide in understanding

15   the meaning of particular claim terms."  *Phillips*, 415 F.3d at 1314 (citing *Laitram Corp. v.

16   Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991)).  "For example, the presence of a dependent

17   claim that adds a particular limitation gives rise to a presumption that the limitation in question is

18   not present in the independent claim."  *Phillips*, 415 F.3d at 1314 (citing *Liebel-Flarsheim Co. v.

19   Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004).)

20   **B.   Constructions Should Not Read-in the Preferred Embodiment from the
21         Specification.**

22   Because a patent is an "integrated document," its written description and drawings

23   (sometimes referred to as the "specification") should be considered in claim construction.

24   However, the teachings of the specification do not substitute for the claims in defining the scope

25   of the patent.  *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995)

26   ("The written description part of the specification itself does not delimit the right to exclude.

27   That is the function and purpose of claims."), *quoted in Phillips*, 415 F.3d at 1312.  On the

28   contrary, the specification, in providing "embodiments" (examples) of how to practice the

BLOCKBUSTER'S BRIEF ON CLAIM
CONSTRUCTION
C 06 2361 WHA

1   patented invention, is likely to describe features narrower than those encompassed by some or all

2   of the claims. "Although the specification often describes very specific embodiments of the

3   invention, we have repeatedly warned against confining the claims to those embodiments."

4   *Phillips*, 415 F.3d at 1323 (citing *Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364,

5   1369 (Fed. Cir. 2005) (claims may embrace "different subject matter than is illustrated in the

6   specific embodiments in the specification").) "To avoid importing limitations from the

7   specification into the claims, it is important to keep in mind" the purposes of the specification,

8   which are "to teach and enable those of skill in the art to make and use the invention and to

9   provide a best mode for doing so. . . . One of the best ways to teach a person of ordinary skill in

10  the art how to make and use the invention is to provide an example of how to practice the

11  invention in a particular case." *Phillips*, 415 F.3d at 1323 (citing *Spectra-Physics, Inc. v.*

12  *Coherent, Inc.*, 827 F.2d 1524, 1533 (Fed. Cir. 1987)).

13          Accordingly, in using the specification to assist in claim construction, the Court

14  should carefully distinguish between examples provided in the specification, on the one hand, and

15  the scope of particular claims, on the other. It is also essential to distinguish between using the

16  specification to illuminate the meaning of particular terms used in the claims and using the

17  specification to impose limitations not stated in a claim. As explained by the Federal Circuit, "the

18  line between construing terms and importing limitations can be discerned with reasonable

19  certainty and predictability if the court's focus remains on understanding how a person of

20  ordinary skill in the art would understand the claim terms." *Phillips*, 415 F.3d at 1323.

21  **C.      The Court Should Not Construe Selected Terms as Containing Limitations**
            **that Appear Only Elsewhere in the Claims.**

22

23          In order to provide a proper foundation for further proceedings in this case, the

24  Court should be careful not to import into the construction of a particular word or phrase a

25  limitation that actually appears elsewhere in a claim. Among other things, the extent to which

26  claim features were already present in the prior art may be obscured if features recited in one

27  portion of a claim are treated as having been repeated elsewhere. For example, imagine a patent

28  claim that recites five elements, four of which were disclosed in a one item of prior art, while the

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

9

BLOCKBUSTER'S BRIEF ON CLAIM
CONSTRUCTION
C 06 2361 WHA

1    remaining element was disclosed in another item of prior art. The claim is invalid if it would

2    have been obvious to combine these five elements from the two items of prior art. The analysis

3    would be distorted, however, if each element were defined to require separately-recited features

4    of another element. In that case, it might appear that none of the elements of the claim were

5    disclosed in prior art, when in reality all of them were.

6        **D.    Netflix's Self-Serving Statements During Prosecution Are Entitled to Little, if**
7            **Any, Weight.**

8            While the prosecution history of a patent is relevant to claim construction, it is

9    entitled to less weight than the claim language or the teachings of the specification. "[B]ecause

10   the prosecution history represents an ongoing negotiation between the PTO and the applicant,

11   rather than the final product of that negotiation, it often lacks the clarity of the specification and

12   thus is less useful for claim construction purposes." *Phillips*, 415 F.3d at 1317. Self-serving

13   statements by Netflix during prosecution should be received with particular care – especially

14   when there was no direct response to them from the Patent Examiner. Otherwise, a patentee

15   could undermine the essential notice function of the patent claims through unilateral statements.

16       **E.    Claim Preambles Are Limiting Only When Needed to Breathe Meaning into**
         **the Claims.**

17           As a matter of longstanding patent law, the "preamble" of a claim (the portion that

18   precedes the colon), generally does ***not*** limit the scope of the claim. Accordingly, the references

19   to a "computer-implemented" method and "computer-implemented" steps in the claim preambles

20   of the patents-in-suit do not constitute claim limitations. (*See* § VIII A, *infra*.) A preamble is

21   considered limiting only if the claim cannot be read independently of it. *See, e.g., Bell Commc'ns*

22   *Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995). "It is well settled

23   that if the body of the claim sets out the complete invention, and the preamble is not necessary to

24   give life, meaning and vitality to the claim, then the preamble is of no significance to claim

25   construction because it cannot be said to constitute or explain a claim limitation." *Altiris, Inc. v.*

26   *Symantec Corp.*, 318 F.3d 1363, 1371 (Fed. Cir. 2003) (quoting *Schumer v. Lab. Computer Sys.,*

27   *Inc.*, 308 F.3d 1304, 1310 (Fed. Cir. 2002)).

28

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

10

BLOCKBUSTER'S BRIEF ON CLAIM
CONSTRUCTION
C 06 2361 WHA

1    For example, in *Apple Computer, Inc. v. Articulate Systems, Inc.*, 234 F.3d 14, 21-

2    22 (Fed. Cir. 2000), the Federal Circuit held that a patent's claims were not limited by a preamble

3    and that the claims were therefore invalid as anticipated by a prior art method.  The preamble

4    recited detailed structure.  ("in a computer display system having a central processing unit (CPU)

5    coupled to a display such that data is displayed on said display in a plurality of windows, a

6    method for displaying said windows and operating upon said windows and said data in said

7    windows by a user, comprising the steps of: . . . .".)  In contrast, the preambles of the '381 and

8    '450 patent claims are far less detailed, referring generally to "computer-implemented" methods

9    and steps.  In view of *Apple*, the much more general preambles of the patents-in-suit should not

10   be regarded as limitations.

11   ## IV.    "ITEM/MOVIE RENTAL QUEUE"

12

13

| Blockbuster Construction | Netflix Construction |
|---|---|
| Two or more items/movies for future rental or possible future rental, or the names or other representations of two or more such items/movies. Thus: <br> ***"item rental queue":*** Two or more things of any kind for future rental or possible future rental, or the names or other representations of any two or more such things. <br> ***"movie rental queue":*** Two or more movies for future rental or possible future rental, or the names or other representations of any two or more such movies.  For purposes of this definition, "movies" means anything consisting in whole or in part of moving pictures – for example, and without limitation, any motion pictures, television series, documentaries, cartoons, music videos, video recordings of concert performances, instructional programs, or educational programs. | Sequence of movies/items used by a rental provider to determine which movies/items to deliver |

24   ### A.    Netflix Improperly Conflates the Claimed "Queue" with the "Ordered List" Comprised in the Queue.

25

26   In criticizing Blockbuster's proposed construction of "queue," Netflix improperly

27   lumps together the "queue" with the related but separate concept of an "ordered list."  The claims

28   of the '381 patent state that the claimed "queue . .  compris[es] an ordered list . . . ."  ('381 Pat.,

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

11

BLOCKBUSTER'S BRIEF ON CLAIM
CONSTRUCTION
C 06 2361 WHA

1    all independent claims.)  Blockbuster does not dispute that the items in the "ordered list" must be

2    in some kind of order.[9]  But Blockbuster differs from Netflix in not imposing the same

3    requirement on the "queue" as well.  Blockbuster's construction is supported by several principles

4    of claim construction.

5    First, Blockbuster's construction avoids redundancy.  *See Jack Guttman, Inc. v.*

6    *Kopykake Enters., Inc.*, 302 F.3d 1352, 1357 (Fed. Cir. 2002) (departing from the ordinary

7    meaning of terms within a claim to avoid redundancy); *see also Dow Chem. Co. v. U.S.*, 226 F.3d

8    1334, 1341-42 (Fed. Cir. 2000) (construing claims to avoid redundancy between an independent

9    claim and a dependent claim).  If the definition of "queue" as used in the claims of the '381 patent

10   already requires that the queue consists of items arranged in order, then it is pointless for the

11   claims to go on to say that the queue "compris[es]" (that is, includes) an "ordered list."

12   Second, Blockbuster's construction is supported by principles of claim

13   differentiation.  *See, e.g., Dow*, 226 F.3d at 1341-42; *Karlin Tech., Inc. v. Surgical Dynamics,*

14   *Inc.*, 177 F.3d 968, 971-72 (Fed. Cir. 1999); *Tate Access Floors, Inc. v. Interface Architectural*

15   *Res., Inc.*, 279 F.3d 1357, 1370 (Fed. Cir. 2002) ("where the patentee meant to constrict the claim

16   to one and only one particular layer, he said so clearly").  While the claims of the '381 patent

17   specify that the "queue" includes an "ordered" list, the claims of the '450 patent that recite a

18   "queue" contain no such requirement.  They state only that the "queue" contains two or more

19   entries.  ('450 Pat., Claims 7, 22, 42, 57, 72, 87.)  This too suggests that, while items in a "queue"

20   may be in order, they need not be.

21   Third, Claim 39 of the '381 patent recites "determining the order or the two or

22   more movies indicated by the movie rental queue based upon preferences of the customer."  If

23   movies in the queue are inherently in order, as Netflix argues, then it is difficult to divine the

24   purpose of the additional step recited in Claim 39.

25   Fourth, the specifications of the patents-in-suit teach a methodology that would not

26   necessarily result in items in the queue being in a particular order.  The specifications' only

---

[9] In the sense that they are "arranged so that one or more of the items is before or after one or more other items."  (§ V, *infra*.)

27

28

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

12

BLOCKBUSTER'S BRIEF ON CLAIM
CONSTRUCTION
C 06 2361 WHA

1    description of how a queue may be created is the extremely short reference to creating a queue

2    from a customer's "item selection criteria."  ('450 Pat., 4:54-58 ("The one or more item selection

3    criteria provided by customer 102 to provider 104 indicate the particular items that customer 102

4    desires to rent from provider 104.  Thus, the item selection criteria define that customer-specific

5    order queue that is fulfilled by provider 104").)  The specifications state that such "[i]tem

6    selection criteria may specify any type of item attributes and the invention is not limited to

7    particular item attributes."  (*Id.*, 4:60-62.)  Such item attributes functioning as item selection

8    criteria "may include any attributes that describe, at least in part, movies, games or music that

9    customers . . . desire to rent."  (*Id.*, 8:43-45.)

> For example, customers 502 may specify item selection criteria that
> include horror movies release[d] in 1999 and let provider 504
> ***automatically select*** horror movies that were released in 1999.  As
> another example, customers 502 may specify item selection criteria
> that include adventure movies starring Harrison Ford.

13   (*Id.*, 8:54-60 (emphasis added).)  No process is described in the patents – nor is any apparent –

14   that would necessarily place into order items automatically added to a queue in this manner.

15   These examples help explain why some but not all of a queue as claimed in the patents-in-suit

16   might be in order – yielding a queue that only "compris[es]" rather than "consists of" an ordered

17   list."  This also explains why items in a queue might need to be subsequently placed into order as

18   recited in Claim 39 of the '381 patent.

19           Blockbuster's construction is also supported by a declaration provided to the

20   Patent Office by named inventor Neil Duncan Hunt, in which Hunt described the "rental queue"

21   as "a mechanism . . . for establishing a ***set*** of specified movies from which initial and subsequent

22   movies were rented."  (Ramani Decl., Ex. 3 at ¶ 4 (emphasis added).)  Hunt's description of a

23   queue as a "set" of items rather than an ordered list is consistent with Blockbuster's proposed

24   construction of "queue" and reinforces the distinction between the queue itself and the ordered

25   list as recited in the patent claims.

26           Netflix attempts to bolster its proposed construction of "queue" by citing

27   dictionary definitions that are inapplicable to the queue as recited in the patent claims and

28   described in the patent specifications.  For example, Netflix cites a computer-science definition

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP                                    13                    BLOCKBUSTER'S BRIEF ON CLAIM
                                                                          CONSTRUCTION
                                                                          C 06 2361 WHA

1    that limits a "queue" to a first in-first out (FIFO) arrangement.  (*See* Netflix Br. at 8:11-13 ("A

2    data structure that consists of a list of records such that records are added at one end and removed

3    from the other")).)  Notably, however, Netflix has not proposed to limit "queue" to such a FIFO

4    arrangement.  If it did, Blockbuster could not infringe the claims – and Netflix would not be

5    practicing them.  As Netflix's own former Chief Information Officer has testified, Netflix's so-

6    called "queue" does not qualify as such under the FIFO definition.  (O'Brien Decl., Ex. G at 37:1-

7    8, 38:15-24.)  Netflix's citation to such a definition is therefore unavailing.

8            **B.    The Court Should Define "Item" and "Movie."**

9            For completeness in defining "movie/item rental queue," the Court should define

10   "item" and "movie."  Blockbuster's proposed construction defines an "item" as a "thing."  This is

11   in accordance with the ordinary English meaning of "item."  (O'Brien Decl., Ex. H.)  It is also in

12   accordance with the specification of the patents-in-suit, which state that, "[a]s used herein, the

13   term 'items' refers to any commercial goods that can be rented to customers."  ('450 Pat., 4:1-3.)

14           Blockbuster's proposed construction of "movie" also accords with both the

15   ordinary meaning of that word and with usage in the patent-in-suit.  Blockbuster defines "movies"

16   as "anything consisting in whole or in part of moving pictures . . . ."  (*See* O'Brien Decl., Ex. I.)

17   The specific examples provided by Blockbuster in its proposed construction (motion pictures,

18   television series, *etc.*) are taken verbatim from Claim 13 of the '381 patent.

19           **C.    The Use of the "Ordered List" to Provide Movies Is Separately Claimed and
20                   Should Not Be Imported into the Definition of "Queue."**

21           Netflix attempts to insert into the definition of "the movie rental queue" and "item

22   rental queue" the requirement that such queues be "used by a rental provider to determine which

23   movies/items to deliver."  However, there is nothing about these terms that requires such use.  On

24   the contrary, claims in the patents go on to specify the manner in which the ordered list comprised

25   in the queue is used – saying, in separate paragraphs, that movies are "caus[ed] to be

26   delivered . . . based upon the order of the list" and that one or more further movies are "select[ed]

27   based upon the order of the list and caus[ed] to be delivered to the customer . . . ."  ('381 Pat., all

28   independent claims.)  Inserting similar requirements into the definition of "queue" would

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

14

BLOCKBUSTER'S BRIEF ON CLAIM
CONSTRUCTION
C 06 2361 WHA

1    gratuitously complicate the definition, would cause confusion between the definition of "queue"

2    and the description of how a "queue" is used, and would hinder comparison of the claimed

3    features to the prior art.  (*See* § III C, *supra*.)[10]

4    **V.    "ORDERED LIST"**

5

| Blockbuster Construction | Netflix Construction |
|---|---|
| Names or other representations of two or more items, arranged so that one or more of the items is before or after one or more other items. | List specifying the customer's desired rental order |

8    **A.    Netflix Proposes to Construe "Ordered List" Without Defining Either**
9    **"Order" or "List."**

10    Netflix foregoes defining either of the two words contained in the term "ordered

11    list" and instead inserts a gratuitous requirement concerning the list's content, which has nothing

12    to do with the meaning of those words.  In contrast, Blockbuster proposes a construction that

13    reflects the ordinary meaning of the words "ordered" and "list" and is consistent with their usage

14    in the context of the patents-in-suit.

15    The adjective "ordered," of course, is related to the verb "to order," which is

16    defined as "to put in order: ARRANGE . . . ."  (O'Brien Decl., Ex. J.)  Blockbuster's proposed

17    construction reflects the breadth of this concept, requiring that the items in the list be "arranged so

18    that one or more of the items is before or after one or more other items."

19    A typical definition of "list" is "a simple series of words or numerals (as the names

20    of persons or objects . . . ."  (*Id.*, Ex. K.)  Blockbuster has followed the ordinary meaning of "list"

21    by requiring "names or other representations of two or more items . . . ."  The Court should adopt

22    Blockbuster's proposed construction.

23    **B.    The Patent Claims Do Not Limit the "Ordered List" to a List in the**
       **Customer's Desired Rental Order.**

24    The claims of the '381 patent do not specify any particular order that is required

25    for an "ordered list."  If it had been desired to limit the "ordered list" to some particular "order," it

---

[10] For example, Netflix's proposed construction would distort the analysis of prior art that disclosed a queue but did not use it in the manner claimed by Netflix.  Netflix's construction would create the impression that, rather than supplying some but not all of the claimed elements, such prior art did not even supply a queue.

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

15

BLOCKBUSTER'S BRIEF ON CLAIM
CONSTRUCTION
C 06 2361 WHA

1   would have been easy to say so.  Instead, the '381 patent claims say only that the "ordered list

2   indicat[es] two or more movies for renting to the customer . . . ."  ('381 Pat., all independent

3   claims.)

4          Nor do the patent specifications specially define the terms "ordered" or "list."  In

5   fact, neither word is found in the specifications of the patents-in-suit.  The word "order" appears

6   in two passages in the specifications, but these passages merely describe an illustrative

7   embodiment and do not limit the kinds of "order" that may be used in practicing the patents.  On

8   the contrary, the specification says that "[c]ustomers 502 *may* also specify an order or priority for

9   the specified item selection criteria.  For example, customers 502 *may* specify specific movie

10  titles and the order in which they want to receive them."  ('381 Pat., 7:27-30 (emphasis added);

11  *see also id.*, 8:34-36 ("The movie selection criteria *may* also specify an order or priority in which

12  customer 502 wishes to rent the movies." (emphasis added)).)  These passages specify that the

13  particular order referred to is optional by using the word "may."  Also, other passages in the

14  specification indicate that the rental items need not be ordered in the customer's desired rental

15  order.  The specification teaches that, instead of specifying desired items, customers "may

16  provide various attributes and allow provider 504 to ***automatically select*** particular movies . . .

17  that satisfy the attributes specified."  (*Id.*, 7:17-21 (emphasis added).)  If they are in any order at

18  all, such automatically selected movies would not be in "the customer's desired rental order."

19  Further, Claim 39 of the '381 patent, which depends from independent Claim 34, recites

20  "determining the order of the two or more movies . . . based upon preferences of the customer."

21  Claim 39 would be meaningless surplusage if Claim 34 and the other, similarly worded

22  independent claims already required that the listed movies be arranged in such an order.  For all

23  these reasons, Netflix's attempt to limit an "ordered list" to that one particular type of order

24  should be rejected.

25

26

27

28

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

16

BLOCKBUSTER'S BRIEF ON CLAIM
CONSTRUCTION
C 06 2361 WHA

## VI.    "BASED UPON THE ORDER OF THE LIST" AND "BASED ON/IN THE DESIRED ORDER"

| Blockbuster Construction of "Based Upon the Order of the List" | Netflix Construction |
|---|---|
| In the same sequence as that of the "ordered list" referred to earlier in the claim. | so as to provide the next-available movie(s) in the order specified by the list |
| **Blockbuster Construction of "Based on/in the Desired Order"** | **Netflix Constructions** |
| In the same sequence in which any person wants the items to be provided. | "based on the desired order":  so as to provide the next-available movie(s) in the rental sequence specified by the customer<br><br>"in the desired order":  in the rental sequence specified by the customer |

### A.    Netflix's Proposed Construction of "Based Upon the Order of the List" Is Indefinite and Lacks Required Support in the Specification.

Every claim of the '381 patent requires two specified uses of the "ordered list" compromised in the "movie rental queue":

> Causing to be delivered to the customer up to a specified number of movies ***based upon the order of the list***; [and]
>
> in response to one or more delivery criteria being satisfied, selecting another movie ***based upon the order of the list*** and causing the selected movie to be delivered to the customer . . . .

('381 Pat., all independent claims.)  In addition, four dependent claims of the '450 patent use "based on the desired order" or "in the desired order."  ('450 Pat., Claims 4, 5, 19, 20.)

Atypically, Netflix argues for a broad interpretation here, hoping to capture Blockbuster's movie selection methodology – and Netflix's own methodology – even if they use factors besides the order of the list to determine which available movies to ship to a customer. Netflix argues that, "[f]or items to be ordered 'based upon' a desired order means that the desired order is used in ordering the items, ***but need not determine the order exclusively***."  (Netflix Br. at 15:4-5 (emphasis added).)

One of several deficiencies in this argument is that it is inconsistent with Netflix's actual proposed construction of "based upon the order of the list" as set forth in the Joint Claim Construction Statement and in the table in Netflix's brief, which is, "so as to provide the next-

BLOCKBUSTER'S BRIEF ON CLAIM
CONSTRUCTION
C 06 2361 WHA

1  available movies(s) in the order specified by the list." That construction indicates that the result

2  of the claimed process must be to provide at least available movies (or at least available "in" the

3  order of the list – which is inconsistent with Netflix's arguments that the order of the list need

4  only be one factor in the selection.

5  Netflix's argument that the order of the list need only be one of a number of

6  factors in this selection is also contrary to the teachings of the specifications, which provide no

7  reference whatsoever to use of any other factor. Adoption of Netflix's proposed construction

8  would therefore invalidate the claims of the '381 patent for violation of the "written description"

9  requirement of 35 U.S.C. § 112, ¶ 1, which mandates that a patent application convey "with

10  reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in

11  possession of the invention." *Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir.

12  1991). There is absolutely nothing in Netflix's original application (or in the patent specification

13  reflecting it) to indicate that named inventors were in possession of any selection methodology

14  using factors other than the order of the list.

15  In addition, Netflix's proposed construction is contrary to the dictionary

16  definitions cited by Netflix itself. Netflix cites definitions of a "base" as "a main ingredient" or

17  "a chief constituent." (Netflix Br. at 15:5-9.) Netflix, however, ignores the critical words "main"

18  and "chief" in these definitions. This is no oversight, but an implicit admission that, in the

19  context of the patents-in-suit, there is no meaningful way to permit consideration of other factors

20  while ensuring that the order of the list would indeed remain the "main" or "chief" factor.

21  Certainly, the patent specification provides no explanation of how additional factors could be

22  used in this manner or how to determine whether the order of the list is or is not the "main" or

23  "chief" factor in a multi-factor selection process.

24  In the absence of any discernable standard for making such a determination, a

25  claim construction that permitted use of other factors as long as the order of the list was the

26  "main" or "chief" factor would render the claims of the '381 patent invalid for indefiniteness

27  under 35 U.S.C. § 112, ¶ 2, which requires that a patent conclude with "one or more claims

28  ***particularly pointing out*** and ***distinctly claiming*** the subject matter which the applicant regards

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

18

BLOCKBUSTER'S BRIEF ON CLAIM
CONSTRUCTION
C 06 2361 WHA

as his invention." (Emphasis added.) Analysis of whether claim language is indefinite "focuses on whether the claims, as interpreted in view of the written description, adequately perform their function of notifying the public of the [scope of the] patentee's right to exclude." *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1379 (Fed. Cir. 2000). "[I]t is well-established that the determination of whether a claim is invalid as indefinite 'depends on whether those skilled in the art would understand the scope of the claim when the claim is read in light of the specification.'" *Atmel Corp. v. Information Storage Devices, Inc.*, 198 F.3d 1374, 1378 (Fed. Cir. 1999) (quoting *North Am. Vaccine, Inc. v. Am. Cyanamid Co.*, 7 F.3d 1571, 1579 (Fed. Cir. 1993)). Lacking guidance from the claim language or the specification, no one attempting to understand the scope of Netflix's patent rights would know how to determine what is or is not a "main" or "chief" factor in determining what movie or other item to provide to a customer, and the claims would fail to perform their required function of explaining the patent's scope.[11]

**B.      Blockbuster Offers the Only Construction Consistent with the Claims and Specification.**

Blockbuster's proposed construction is intended to reflect the only method referred to in the patents for selecting movies "based upon the order of the list," which is to use the order of the list as the ***sole factor*** in determining which movies to select for a particular customer. This is the only definition that is supported by an adequate written description in the patent and is the only definition sufficiently definite to be enforceable.

Netflix argues that Blockbuster's proposed construction is contrary to case law concerning use of different terminology within patent claims. (*See* Netflix Br. at 15:14-23.) But the cases cited by Netflix do not support its position. *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1373 (Fed. Cir. 2004), involved use of two different terms "in close proximity in the same claim." Even in that context, the court held that there was no "conclusive" presumption that the terms had different meanings – and the Court ultimately treated the terms as

---

[11] If the Court feels that such a construction is any way mandated, then the proper solution would be to determine that the claims of the '381 patent are indefinite and invalid for that reason. "A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Personalized Media Commc'ns, L.L.C. v. U.S. ITC*, 161 F.3d 696, 705 (Fed. Cir. 1998).

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

BLOCKBUSTER'S BRIEF ON CLAIM
CONSTRUCTION
C 06 2361 WHA

1    synonyms. *See id.* at 1373-74.  In the other case cited by Netflix, *Innova*, 381 F.3d at 1119, the

2    court said only that it may under some circumstances be "permissible" to infer that the use of

3    differing terms reflects different intended meanings.  But there too, the Court declined to rely on

4    such an inference and instead construed the different terms similarly.  *See id.* at 1119-20.  The use

5    of slightly different terms in some of the claims of the '381 and '450 patents should be no more

6    conclusive than the use of different terminology in *Bancorp* and *Innova*.

7            The same considerations referred to above in connection with construing "based

8    upon the order of the list" as used in the '381 patent apply to the limitations "based upon the

9    desire order" and "in the desired order" as they appear in claims of the '450 patent.  Despite the

10   slight differences in wording, the teachings of the patents-in-suit and the absence of any

11   disclosure or definition of an alternative methodology mandate interpretation of these limitations

12   as requiring that the "desired order" be the sole factor in determining which movie or other item

13   to select for and provide to a customer.[12]

14

15   **VII.    "ELECTRONICALLY UPDATING"**

16

17
| Blockbuster Construction | Netflix Construction |
| --- | --- |
| Changing information (including making corrections), using, in whole or in part, any electronic device.  For purposes of this definition, an "electronic" device is any device that uses a flow of electrons in a vacuum, in gaseous media, or in a semiconductor. | the provider's computer(s) changing |

21           Although every claim of the '381 patent requires "electronically updating the

22   movie rental queue," the specification does not contain even a single use of "electronically" or

23   "updating."  Blockbuster and Netflix apparently agree that "updating" should be interpreted to

24   _____

25   [12] As an additional point, Netflix argues that the "desired order" should be construed as "the rental sequence specified by the customer."  Limiting the "desired order" in this manner would narrow the term beyond its express meaning and would conflict with the claim language saying that the "desired order" is "indicated by the . . . item selection criteria . . . ." ('450 Pat., Claims 4, 5, 19. 20.)  While such criteria "may" include an order specified by a customer (*id.*, 8:60-61), the specification also teaches that items may be automatically selected based on attributes, such as dates, genres, and actors.  (*See id.*, 8:50-60.)  Such criteria would not necessarily reflect any order desired by the customer.

20

1    encompass any "changing." However, Netflix improperly construes "electronically," substituting

2    a reference to "the provider's computer(s)." This construction departs from the plain meaning of

3    "electronically," both by limiting it to use of computers and by further requiring that these be

4    solely the rental provider's computers. Both those changes are unsupported. First, the term

5    "electronically" is manifestly broader than the term such as "computer-implemented," and the

6    patent claims show that Netflix was quite capable of specifically reciting computers and

7    computer-implementation when desired.[13] Further, there is nothing about the "electronically

8    updating" language to justify limiting it solely to use of a provider's computer. The specification

9    describes use of both provider computers and customer computers. (*See* '381 Pat., Fig. 6 & 2:49-

10   56) Further, "[t]he invention . . . is not limited to a particular hardware or software

11   implementation." (*Id.*, 10:16-20.) While Netflix argues that using a provider's computer would

12   be "logical" (Netflix Br. at 20:21), that hardly makes it mandatory and does not support reading

13   such a limitation into the simple term "electronically updating." Instead, "electronically" should

14   be construed in accordance with its plain meaning. (*See* O'Brien Decl., Exs. L-N.)[14]

15   **VIII.   CONSTRUCTION OF "COMPUTER-IMPLEMENTED METHOD/STEPS"**

16

| Blockbuster Construction | Netflix Construction |
|---|---|
| A method/steps accomplished using, in whole or in part, a programmable device that can store, retrieve, and process information. Thus: ***"computer-implemented method"***: A process or procedure accomplished using, in whole or in part, a programmable device that can store, retrieve, and process information. ***"computer-implemented steps"***: Actions, proceedings, or measures accomplished using, in whole or in part, a programmable device that can store, retrieve, and process information. | '381: Method using provider computer(s) to facilitate each step; '450: Use of provider computer(s) to facilitate each step |

---

[13] Notably, however, Netflix chose to recite computer-implementation only in claim preambles rather than in the body of its claims. (*See* § VIII A, *infra*.)

[14] Additionally, it is incorrect for Netflix to argue that, unless "electronically" is construed to require that the updating be accomplished ***solely*** by using an electronic device, the word would somehow be read entirely out of the claims. (*See* Netflix Br. at 20:23-26.) Netflix's argument absurdly suggests that a customer who receives a print advertisement for a new movie and then adds that movie to his or her queue over the Internet is not "electronically updating" the queue.

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

**A.    Netflix's Preambles Are Not Necessary to Breathe Meaning into the Claims.**

As described above, claim preambles are not construed as limiting the claims except where the preambles is "necessary to give life, meaning and vitality to the claim" – as where the body of the claim refers to features recited in the preamble.  (*See* § III E, *supra* (quoting *Altiris*, 318 F.3d at 1371).)  The preambles of the '450 and '381 patents do not meet this requirement.  There is nothing recited in the body of the patent claims that depends for its meaning on the preambles.  Nor is the purported "invention" of the '450 and '381 patents limited to computer-implemented methods.  The specification of the '450 patent recites several "approach[es]" and "aspect[s]" (in other words, embodiments) of the invention.  Some are computer-implemented (*e.g.*, '450 Pat., 2:1-12), while others are not (*see id.*, 1:49-56, 57-67).  Moreover, the specifications of both patents assert that the invention is not limited to rental over the Internet, but applies also to "conventional" (brick-and-mortar) rental stores:

> In the foregoing specification, the invention has been described as applicable to an implementation anticipating Internet based ordering and mail or other long-distance delivery of the items, where the special advantages of the method are very attractive.  However ***the same invention may be applied in a more conventional video, games, or music rental-store setting***, where subscription customers may be allowed rentals of a specified number of movies, games, or music selections at any time, and/or in one subscription period, without rental return due dates, in exchange for a periodic rental subscription fee.

('450 Pat., 14:24-34; '381 Pat., 12:54-64 (emphasis added).)

Netflix argues that "clear reliance" on a preamble to distinguish the prior art during prosecution may transform the preamble into a claim limitation.  (Netflix Br. at 19:15-25 (citing *Catalina Mktg. Int'l, Inc., v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002)).)  However, in the case cited by Netflix, the Court did ***not*** treat the preamble as a limitation, despite statements by the applicant during prosecution.  *See Catalina*, 289 F.3d at 810 ("[W]hile the applicants stated during prosecution that their invention involved terminals 'located in stores' for the dispensing of coupons 'on-site,' such statements, without more, do not indicate a clear reliance on the preamble to distinguish the prior art . . .").  The same result is appropriate here,

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

22

BLOCKBUSTER'S BRIEF ON CLAIM
CONSTRUCTION
C 06 2361 WHA

1  where there was also no such "clear reliance."[15]

2   **B.    If "Computer-Implemented" Is Construed as a Limitation, It Should Not Be**
3   **Construed as Requiring That Every Step Be Wholly Performed by a**
    **Computer.**

4        In addition to treating the preamble as limiting, Netflix attempts to narrow its

5  meaning by limiting it to use of "provider computer(s)" and by requiring such that such

6  computers be used to "facilitate each step."  Neither restriction is appropriate.  First, there is

7  nothing in the preambles or elsewhere in the claims to require that the computer or computers

8  being referred to are solely those of the rental provider.  Second, there is no persuasive reason to

9  construe the preamble, even if limiting, as requiring use of a computer for "each step."  On the

10 contrary, claims of the both the '450 and '381 patents recite steps that would not be performed by

11 a computer, such as delivering movies or other items to the customer by mail, delivering items to

12 the customer by a "delivery agent," and delivering movies by mail on optical media.  ('381 Pat.,

13 Claims 7, 8, 20, 21, 30, 31, 40, 41, 48, 49; '450 Pat., Claims 12, 13, 27, 28, 34, 35, 47, 48, 62, 63,

14 77, 78, 92, 93, 99, 100.)[16]

15 **IX.    "PERIODIC FEE"**

16

17
| Blockbuster Construction | Netflix Construction |
|---|---|
| An amount incurred, paid or charged at regular intervals for a service – for example, and without limitation, an hourly, daily, monthly, or annual fee. | Fee to be paid per subscription period for the right to rent |

19        Blockbuster's construction of "periodic fee" merely follows the plain meaning of

20 these words, which are nowhere defined in the patents.  A "fee" is "a sum incurred or charged for

21 a service."  (O'Brien Decl., Ex. Q.)  "Periodic" means "occurring or recurring at regular

22 _____

23 [15] Netflix cites a single reference to "computer technology and the Internet" in a 19-page reply
document that its patents attorneys submitted in prosecuting the application for the '381 patent.
24 The cited passages do not even refer to any preamble, let alone "clear[ly] rel[y]" on it.  The
Internet is recited in the body of the claims of the '381 patent, not their preambles.  Netflix cites
nothing to indicate that either the patent attorneys or the Examiner even considered the preamble
25 in distinguishing prior art.  (*See* Ramani Decl., Ex. 12 at 12, 16, *cited in* Netflix Br. at 19:4-23.)
[16] Netflix attempts to make its construction more palatable by shifting from computer
26 implementation to computer facilitation.  However, to "facilitate" – which means "make easier" –
is not the same as to "implement" – which means to "carry out or accomplish . . . ."  (O'Brien
27 Decl., Exs. O-P.)  As applied to the claims of the patents-in-suit, the concept of using computers
to "facilitate" performance of each step would be indefinite.  Indeed, in today's world, computers
28 could be considered to "facilitate" nearly everything that happens.

BLOCKBUSTER'S BRIEF ON CLAIM
CONSTRUCTION
C 06 2361 WHA

intervals . . . ." (*Id.*, Ex. R.)

In purporting to construe "period fee," Netflix provides a definition of neither of the two words used in that term.  Instead of defining the term, Netflix merely attempts to insert into it two wholly separate requirements concerning "subscription" and "the right to rent."  Both of these concepts are dealt with elsewhere in the claims.  Inserting them into the distinct concept of a "periodic fee" would accomplish nothing but to create redundancy and confusion.[17]

Netflix cites a single reference in the specification to "a periodic rental subscription fee."  (Netflix Br. at 21:12-15.)  Far from creating a special definition of "periodic fee," the express use of "rental" and "subscription" in this reference shows that the words "periodic fee," by themselves, need ***not*** refer to "rental" or "subscription."[18]  In this as in other respects, Netflix's arguments against the plain meaning of "periodic fees" fall short, and the Court should follow the plain meaning of the term.

## X.    <u>"ITEM/MOVIE/GAME SELECTION CRITERIA"</u>

| Blockbuster Construction | Netflix Construction |
|---|---|
| Any information used to choose a thing (or "item"), regardless of what person or device makes the choice. | Characteristic(s) and/or order of items/movies/games desired by the customer |

Netflix argues – without citation to any support – that "the term 'item selection criteria' does not have any ordinary meaning to a person skilled in the art."  (Netflix Br. at 22:18-20.)  Netflix admits, however, that "each of words in the phrase 'item selection criteria' are ordinary English words . . . ."  (*Id.* at 22:17-18.)  Combining these ordinary meanings provides a plain meaning for the term as a whole, which is reflected by Blockbuster's proposed construction.

Instead of following the plain meaning of the words, Netflix tries to argue that it

---

[17] For example, claims of the patents-in-suit describe subscription methodologies at some length -- reciting, for example, causing delivery of up to a specified number of movies and later delivering a further movie in response to "delivery criteria" being satisfied.  ('381 Pat., Claim 34.) Netflix's insertion of the undefined term "subscription" into the instruction of "periodic fee" would create uncertainty whether "subscription" was merely a redundant reference to the recited features or further limited the claim in some unexplained way.

[18] Netflix also argues that Blockbuster's definition of "periodic fee" would somehow be inconsistent with "a crucial part of the invention's purpose . . . ."  (Netflix Br. at 21:22-26.)  In reality, the "periodic fee," far from being "crucial," is recited in only a single claim and in only one of the two patents.  (*See* '381 Pat., Claim 34.)

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

1    has acted as its own "lexicographer" under *Anchor Wall Systems, Inc. v. Rockwood Retaining*

2    *Walls, Inc.*, 340 F.3d 1298, 1306 (Fed. Cir. 2003). *Anchor* shows otherwise, holding that "the

3    presumption in favor of the ordinary meaning of claim language" may be overcome only "where

4    the patentee chooses to be his or her own lexicographer ***by clearly setting forth a definition for a***

5    ***claim term in the specification*.**" *Anchor*, 340 F.3d at 1306 (emphasis added). In *Anchor*, the

6    Court followed the plain meaning of the claim term "mate" and ***rejected*** an argument that the

7    patentee had acted as his own lexicographer by defining that term. Even though the written

8    description of the patent said that mating "should" have a specified characteristic, the Court held

9    that this was ***not*** a definition, because it did not say that mating "must" have that characteristic.

10    *Anchor*, 340 F.3d at 1309-10.

11            Netflix's argument that it acted as its own lexicographer is even weaker than the

12    one rejected in *Anchor*. Although descriptions of various embodiments in the specifications of

13    Netflix's patents refer to item or movie selection criteria that may be desired by a customer, there

14    is no express definition of that phrase and nothing mandatory about these references. On the

15    contrary, the specification repeatedly uses the word "may," which is even less forceful than the

16    "should" that was rejected as inadequate in *Anchor*. (*See, e.g.*, '450 patent at col. 4, lns. 9-11

17    ("Customers ***may*** specify what items to rent using one or more item selection criteria . . . ."

18    (Emphasis added.).)[19]

19    **XI.**    **CONCLUSION**

20            Blockbuster's proposed constructions are in accord with the patents and principles

21    of claim construction and should be adopted by the Court.

22

23

24

25

---

[19] Netflix correctly interprets "may" where the specification says that movie selection criteria

26    "may" specify an order in which a customer whishes to rent movies. (*See* Netflix Br. at 23:7-12 ("The specification . . . makes plain that the item selection ***can, but need not,*** include an order in

27    which the customer desires to receive the items." (Emphasis added.).) But when "may" is used to refer to other attributes of item selection criteria, Netflix unaccountably changes position and

28    interprets "may" as meaning "must."

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

25

BLOCKBUSTER'S BRIEF ON CLAIM
CONSTRUCTION
C 06 2361 WHA

1    DATED: December 27, 2006          ALSCHULER GROSSMAN STEIN & KAHAN LLP

2

3                                      By_____/S/_____

4                                        William J. O'Brien
                                         Attorneys for Defendant and Counterclaimant,
5                                        Blockbuster Inc.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP                        26                    BLOCKBUSTER'S BRIEF ON CLAIM
                                                              CONSTRUCTION
                                                              C 06 2361 WHA

1

**TABLE OF CONTENTS**

2

Page

3    I.       INTRODUCTION ........................................................................................................1

4    II.      OVERVIEW OF THE PATENTS IN SUIT .........................................................4

     III.     APPLICABLE LAW ...............................................................................................7

5
              A       The Most Important Tool in Construction Is the Language of the Claims
6                     Themselves. .................................................................................................7

7             B       Constructions Should Not Read-in the Preferred Embodiment from the
                      Specification .................................................................................................8

8             C.      The Court Should Not Construe Selected Terms as Containing Limitations
                      that Appear Only Elsewhere in the Claims. ................................................9

9             D.      Netflix's Self-Serving Statements During Prosecution Are Entitled to
                      Little, if Any, Weight ................................................................................10
10
              E.      Claim Preambles Are Limiting Only When Needed to
11                    Breathe Meaning into the Claim .................................................................10

12   IV.      ITEM/MOVIE RENTAL QUEUE .......................................................................11

13            A.      Netflix Improperly Conflates the Claimed "Queue" with the "Ordered List"
                      Comprised in the Queue ..............................................................................11

14            B.      The Court Should Define "Item" and "Movie." ........................................14

15            C.      The Use of the "Ordered List" to Provide Movies Is Separately Claimed
                      and Should Not Be Imported into the Definition of "Queue." ..................14

16   V.       ORDERED LIST .....................................................................................................15

17            A.      Netflix Proposes to Construe "Ordered List" Without Defining Either
                      "Order" or "List." ......................................................................................15

18            B.      The Patent Claims Do Not Limit the "Ordered List" to a List in the
                      Customer's Desired Rental Order ...............................................................15
19
     VI       "BASED UPON THE ORDER OF THE LIST" AND "BASED ON/IN THE
20            DESIRED ORDER" .................................................................................................17

21            A.      Netflix's Proposed Construction of "Based Upon the Order of the List" Is
                      Indefinite and Lacks Required Support in the Specification .......................17

22            B.      Blockbuster Offers the Only Construction Consistent with the Claims and
                      Specification .................................................................................................19

23   VII.     "ELECTRONICALLY UPDATING" ...................................................................20

24   VIII.    CONSTRUCTION OF "COMPUTER-IMPLEMENTED METHOD/STEPS ...............21

25            A.      Netflix's Preambles Are Not Necessary to Breathe Meaning into the
                      Claims .........................................................................................................21

26            B.      If "Computer-Implemented" Is Construed as a Limitation, It Should Not Be
                      Construed as Requiring That Every Step Be Wholly Performed by a
27                    Computer .....................................................................................................23

     IX       "PERIODIC FEE" ...................................................................................................23

28

i

1

**TABLE OF CONTENTS**
(continued)

2
Page

3    X    "ITEM/MOVIE/GAME SELECTION CRITERIA" ........................................................24

4    XI    CONCLUSION ...................................................................................................................25

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

TITLE C 06 2361 BZ

1

## TABLE OF AUTHORITIES

2
**Page**

3

### FEDERAL CASES

4
*Altiris, Inc. v. Symantec Corp.*,
   318 F.3d 1363 (Fed. Cir. 2003)..................................................................12, 24

5
*Alza Corp. v. Mylan Labs., Inc.*,
   464 F.3d 1286 (Fed. Cir. 2006)..........................................................................2

6

7
*Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.*,
   340 F.3d 1298 (Fed. Cir. 2003).........................................................................27

8
*Apple Computer, Inc. v. Articulate Systems, Inc.*,
   234 F.3d 14 (Fed. Cir. 2000).............................................................................12

9
*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
   365 U.S. 336 (1961) ...........................................................................................8

10

11
*Atmel Corp. v. Information Storage Devices,
   Inc.*,
   198 F.3d 1374 (Fed. Cir. 1999).........................................................................21

12
*Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*,
   359 F.3d 1367 (Fed. Cir. 2004).........................................................................22

13
*Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*,
   55 F.3d 615 (Fed. Cir. 1995).............................................................................12

14

15
*Catalina Mktg. Int'l, Inc., v. Coolsavings.com, Inc.*,
   289 F.3d 801 (Fed. Cir. 2002)......................................................................24, 25

16
*Contintental Paper Bag Co. v. Eastern Paper Bag Co.*, 210 U.S. 405 (1908) ............................8

*CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d. 1146, 1159 (Fed. Cir. 1997)....................................9

17
*Dow Chem. Co. v. U.S.*,
   226 F.3d 1334 (Fed. Cir. 2000).....................................................................13, 14

18

19
*Dystar Textilfarben GmbH v. C.H. Patrick Co.*,
   464 F.3d 1356 (Fed. Cir. 2006)..........................................................................2

20
*eBay v. Merc Exchange, L.L.C.*,
   126 S. Ct. 1837 (2006) ......................................................................................6

21
*Ex parte Lundgren*,
   Appeal No. 2003-2088 (Bd. Pat. App. & Inter. 2004) ............................................7

22

23
*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
   381 F.3d 1111 (Fed. Cir. 2004)...................................................................7, 8, 22

24
*Jack Guttman, Inc. v. Kopykake Enters., Inc.*,
   302 F.3d 1352 (Fed. Cir. 2002).........................................................................13

25
*Karlin Tech., Inc. v. Surgical Dynamics, Inc.*,
   177 F.3d 968 (Fed. Cir. 1999)...........................................................................14

26
*KSR International v. Teleflex Inc.*
   (No. 04-1350).....................................................................................................2

27
*Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc.*,
   126 S.Ct. 2921 (2006) .......................................................................................7

28

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

iii

BLOCKBUSTER'S BRIEF ON CLAIM
CONSTRUCTION
C 06 2361 WHA

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3  *Laitram Corp. v. Rexnord, Inc.,*
    939 F.2d 1533 (Fed. Cir. 1991) ................................................................9

4  *Liebel-Flarsheim Co. v. Medrad, Inc.,*
    358 F.3d 898 (Fed. Cir. 2004) ................................................................9

5

6  *Markman v. Westview Instruments, Inc.,*
    52 F.3d 967 (Fed. Cir. 1995) ................................................................9

7  *Merrill v. Yeomans,*
    94 U.S. 568 (1877) ................................................................8

8  *Nazomi Commc'ns, Inc. v. Arm Holdings, PLC,*
    403 F.3d 1364 (Fed. Cir. 2005) ................................................................10

9  *North Am. Vaccine, Inc. v. Am. Cyanamid Co.,*
    7 F.3d 1571 (Fed. Cir. 1993) ................................................................21

10

11  *Ormco Corp. v. Align Tech., Inc.,*
    463 F.3d 1299 (Fed. Cir. 2006) ................................................................2

12  *Personalized Media Commc'ns, L.L.C. v. U.S. ITC,*
    161 F.3d 696 (Fed. Cir. 1998) ................................................................21

13  *Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005) ................................................ 7, 8, 9, 10, 11

14  *Rexnord Corp. v. Laitram Corp.,*
    274 F.3d. 1336 (Fed. Cir. 2001) ................................................................9

15

16  *Schumer v. Lab. Computer Sys., Inc.,*
    308 F.3d 1304 (Fed. Cir. 2002) ................................................................12

17  *Solomon v. Kimberly-Clark Corp.,*
    216 F.3d 1372 (Fed. Cir. 2000) ................................................................20

18  *Spectra-Physics, Inc. v. Coherent, Inc.,*
    827 F.2d 1524 (Fed. Cir. 1987) ................................................................10

19  *State St. Bank & Trust Co. v. Signature Fin. Group, Inc.,*
    149 F.3d 1368 (Fed. Cir. 1998) ................................................................7

20

21  *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.,*
    279 F.3d 1357 (Fed. Cir. 2002) ................................................................14

22  *Vas-Cath, Inc. v. Mahurkar,*
    935 F.2d 1555 (Fed. Cir. 1991) ................................................................20

23  *Vitronics Corp. v. Conceptronic, Inc.,*
    90 F.3d 1576 (Fed. Cir. 1996) ................................................................8, 9

24  *White v. Dunbar,*
    119 U.S. 47 (1886) ................................................................8

25

**FEDERAL STATUTES**

26  35 U.S.C. § 112................................................................20

27  37 C.F.R. § 1.56(a)-(c) ................................................................5

28

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

iv