| | |
|---|---|
| 1 | KEKER & VAN NEST, LLP |
| | JEFFREY R. CHANIN - #103649 |
| 2 | DARALYN J. DURIE - #169825 |
| | ASHOK RAMANI - #200020 |
| 3 | 710 Sansome Street |
| | San Francisco, CA 94111-1704 |
| 4 | Telephone: (415) 391-5400 |
| | Facsimile: (415) 397-7188 |
| 5 | |
| | Attorneys for Plaintiff |
| 6 | NETFLIX, INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETFLIX, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>BLOCKBUSTER, INC., a Delaware corporation, DOES 1-50,<br><br>Defendant. | Case No. C 06 2361 WHA (JCS)<br><br>**PLAINTIFF NETFLIX, INC.'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM BLOCKBUSTER, INC.**<br><br>**Date:** April 6, 2007<br>**Time:** 9:30 a.m.<br>**Judge:** Hon. Joseph C. Spero<br><br>Complaint filed: April 4, 2006 |

PLAINTIFF NETFLIX, INC.'S NOTICE OF MOTION AND MEMO OF P&As I/S/O ITS MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM BLOCKBUSTER, INC.
CASE NO. C 06 2361 WHA (JCS)

Dockets.Justia.com

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on April 6, 2007, at 9:30 a.m. before the Honorable Joseph C. Spero, in Courtroom A, 15th Floor of the United States Court House located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff Netflix, Inc. will, and hereby does, move the Court for an order compelling the production of documents responsive to its requests for production of documents from Defendant Blockbuster Inc. pursuant to Federal Rule of Civil Procedure 37.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities below; the declaration of Eugene M. Paige in support of this motion; all pleadings and papers filed herein; oral argument of counsel; and any other matter that may be submitted at the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

By this motion Netflix, Inc. ("Netflix") seeks, pursuant to Rule 37 of the Federal Rules of Civil Procedure, to compel from Blockbuster Inc. ("Blockbuster") production of documents responsive to Netflix's First Set of Requests for the Production of Documents. Blockbuster has failed to provide emails that it has committed to produce in response to many of Netflix's requests. Blockbuster has also failed to provide information it is expressly required to provide by Judge Alsup's Supplemental Case Management Conference Order, despite repeated requests by Netflix spanning the course of many months.

The deficiencies in Blockbuster's production, if left unremedied, will deprive Netflix of relevant and responsive information as described in detail below. As discovery is set to close in this case in late April, Netflix cannot afford to rely only on Blockbuster's assurances that it will provide the documents to which Netflix is entitled. Netflix therefore respectfully requests that this Court order Blockbuster to produce its responsive information and documents immediately.

### II. FACTUAL BACKGROUND

In 1999 Netflix invented a new way to rent DVDs to customers on a subscription basis over the Internet. The novel method and systems invented by Netflix to implement on-line,

1

PLAINTIFF NETFLIX, INC.'S NOTICE OF MOTION AND MEMO OF P&As I/S/O ITS MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM BLOCKBUSTER, INC.
CASE NO. C 06 2361 WHA (JCS)

1  subscription movie rentals transformed Netflix from a struggling on-line start-up into a popular
2  and commercially successful company.  Netflix's new on-line method permitted subscribers to
3  create, prioritize and reprioritize their own personal list of desired DVDs on-line, which Netflix
4  would then use as a dynamic "queue" to deliver a set number (depending on the subscription) of
5  movies to the subscriber, which movies the subscriber could keep and watch at the subscriber's
6  leisure without incurring a late fee, and then return to Netflix in exchange for the next available
7  movie in the queue.  The U.S. Patent and Trademark Office awarded Netflix two patents on its
8  method and system, U.S. Patent No. 7,024,381 ("the '381 Patent") and U.S. Patent No.
9  6,584,450 ("the '450 Patent").

10  Years after Netflix pioneered this business method and system, and just after Netflix's
11  '450 patent issued, Blockbuster, the 800-pound gorilla in the movie rental industry, launched a
12  business it called "Blockbuster Online."  Blockbuster Online mimicked virtually every aspect of
13  Netflix's patented business method, including the dynamic, prioritized queue and the use of
14  subscription plans with no late fees.  In so doing, Blockbuster infringed the '381 Patent and the
15  '450 Patent.

16  Netflix sued Blockbuster for patent infringement on April 4, 2006.  Blockbuster counter
17  attacked by filing antitrust counterclaims against Netflix based upon Netflix's filing of this
18  infringement suit, claiming that Netflix was attempting to monopolize what Blockbuster has
19  characterized as the market for online DVD rentals through sham litigation and the assertion of
20  fraudulently procured patents.

21  Netflix served its First Set of Requests for the Production of Documents on Blockbuster
22  on August 31, 2006. Declaration of Eugene M. Paige in Support of Netflix's Motion to Compel
23  the Production of Documents from Blockbuster, Inc. ("Paige Decl."), Ex. A.  In this first set of
24  Requests, Netflix sought to gain information about the development, promotion and operating
25  characteristics of Blockbuster Online, the business that infringes Netflix's patents.  Thus, Netflix
26  sought to discover, among other things, documents that would show whether Blockbuster or its
27  consultants studied or reverse engineered Netflix's website in attempt to copy Netflix, or whether
28

1  they developed specifications for Blockbuster Online that duplicated all, or critical aspects of,
2  Netflix's systems.

3  Understanding the genesis of Blockbuster Online is critical to Netflix's case, as it will
4  demonstrate how and why Blockbuster came to implement a business method and system that so
5  closely resembles (indeed, appears to duplicate) Netflix's patented business method and system.
6  And having access to documents such as emails that may candidly address the origins of
7  Blockbuster Online from the high-level executives who remain Blockbuster employees is
8  especially important here, as many of the lower-level personnel who were involved with
9  Blockbuster Online's launch are apparently no longer with the company.  Netflix must have
10 these documents promptly in order properly to examine Blockbuster's remaining high-level
11 executives in deposition.  Documents addressing matters regarding the origin of Blockbuster
12 Online and why it was designed the way it was relate directly to the issues of infringement, both
13 actual and deliberate (as alleged), as well as non-obviousness.  The copying that these documents
14 may confirm and reflect is a secondary consideration that is taken into account in determining
15 whether a patent is non-obvious.  Copying is also an important factor in deciding whether
16 infringement has been willful.

17 Blockbuster served its objections and responses to Netflix's requests for production on
18 October 2, 2006.  Paige Decl. Ex. B.  After engaging in a meet-and-confer process, the parties
19 filed cross-motions to compel, and the points at issue in those cross-motions were resolved by
20 way of joint stipulations filed in December of 2006 and January of 2007.  Following resolution
21 of those issues, Netflix turned to an examination of Blockbuster's document production.  At the
22 time it began to review those documents, Netflix requested that Blockbuster provide it with a
23 description of the search Blockbuster had performed.  Such a description was due at the time that
24 Blockbuster produced its documents under Paragraph 14 of Judge Alsup's Supplemental Case
25 Management Conference Order.  Yet it had not been produced when Netflix first demanded that
26 information several weeks later on December 6, 2006.  A true and correct copy of the letter
27 memorializing that demand is attached to the Paige Declaration as Exhibit C.
28

1    Because Blockbuster did not provide Netflix with the required information regarding its
2    search in response to that letter, Netflix reiterated its request for this information repeatedly, in
3    letters of December 20, 2006; January 2, 2007; January 18, 2007; and February 6, 2007.  True
4    and correct copies of each of these letters are attached to the Paige Declaration as Exhibits D - G.
5    Yet as of today's date, Blockbuster has still failed to produce this required and highly probative
6    information.  Netflix was therefore forced to review Blockbuster's document production in order
7    to get a sense of what Blockbuster had, and had not, searched for and produced.  Netflix's review
8    of Blockbuster's document production revealed many disturbing facts regarding the documents
9    Blockbuster had (and had not) produced:

- Blockbuster had not produced a single document from the files of its Chairman and CEO, Mr. John Antioco.

- Blockbuster had produced fewer than 200 documents from the files of the head of its infringing Blockbuster Online business, Mr. Shane Evangelist.  Moreover, of those documents, fewer than 100 were emails.  This came despite the fact that Mr. Evangelist is shown as copied on copious email correspondence relating to the design of Blockbuster's infringing system.

- Blockbuster had failed to produce emails among its top management discussing the implementation or operation of its infringing Blockbuster Online service.

- In the instances in which Blockbuster had produced email, Blockbuster had provided Netflix with numerous emails that reference documents that are attached to the email, but which did not have the attachments produced along with them.

- Despite the fact that documents it had produced revealed that presentations regarding its infringing Blockbuster Online business were made to its Board of Directors in 2003 and 2004, Blockbuster had not produced a single set of minutes from its Board of Directors meetings.

- Although it had committed to producing its document retention and destruction policies, Blockbuster had not produced those policies.

- Blockbuster had not produced its actual financial statements for Blockbuster Online, including the amounts that it expended in order to create its infringing service.

- Despite expressly committing to produce documents related to each version of its infringing Blockbuster Online service, Blockbuster had failed to produce any documents relating to its most recent version of the infringing service, Blockbuster's so-called "Total Access" program.

*See* Paige Decl. Exs. G - I.  In light of these many deficiencies, on February 21, 2007, counsel for Netflix, Daralyn J. Durie and Eugene M. Paige, met and conferred with counsel for Blockbuster, William J. O'Brien, in his Los Angeles offices regarding all of these issues.  *See*

4

1  Paige Decl. ¶ 11.  Although in the wake of that in-person meeting Blockbuster committed to
2  remedying some of the deficiencies that Netflix has cited above, and it purports to have done so
3  through the production of further documents over the course of the past week, it has not
4  committed to remedying all of the shortcomings in its performance.  Indeed, though Netflix has
5  specifically demanded that Blockbuster produce a description of the search it had performed and
6  explain the dearth of emails in its production, Blockbuster has said only that it was "still
7  attempting to confirm that all appropriate media were appropriately searched," Paige Decl. Ex. J
8  at 2, and later that it was "still attempting to confirm the exact situation with respect to emails,"
9  Paige Decl. Ex. L at 2.  Though Netflix made clear that Blockbuster's cryptic statements about
10 its document production left important questions unanswered, *see* Paige Decl. Ex. K at 1,
11 Blockbuster has still refused to provide an explanation for why key emails appear to be missing.
12         As required by the Court, the issues that Netflix seeks to present to the Court are outlined
13 in a joint letter signed by both counsel for Netflix and counsel for Blockbuster, a copy of which
14 is attached to the Paige Declaration as Exhibit M.  Specifically, Blockbuster continues to refuse
15 to provide either a date certain upon which Netflix will receive a description of the search it
16 performed in response to Netflix's document requests; has not committed to provide information
17 about the nature of its search for emails; and has not provided reason to believe that all relevant
18 email and attachments will in fact be produced.  This Motion discusses why Netflix is entitled to
19 the information that Blockbuster has failed to produce.

### III.   ARGUMENT

21         Discovery exists as a mechanism "for making relevant information available to the
22 litigants . . . Thus the spirit of the rules is violated when advocates attempt to use discovery tools
23 as tactical weapons rather than to expose the facts and illuminate the issues."  *Burlington N. &*
24 *Santa Fe Ry. Co. v. United States Dist. Court*, 408 F.3d 1142, 1148-49 (9th Cir. 2005) (quoting
25 Fed. R. Civ. P. 26(f) advisory committee's notes).  Judge Alsup's Supplemental Order to Order
26 Setting Initial Case Management Conference in Civil Cases ("Supplemental Order") further
27 seeks to increase the efficiency of the discovery process by requiring that the parties inform one
28 another of the nature of the search that was undertaken in response to document requests.  *See*

1  Supplemental Order ¶ 14.  Despite repeated requests from Netflix, Blockbuster has not yet
2  complied with its obligations under the Supplemental Order.  And it appears that its failure to do
3  that has prejudiced Netflix, in light of the many glaring deficiencies in Blockbuster's document
4  production that might have been addressed earlier had it provided that information.

5       As set forth with greater specificity below, Blockbuster has not complied with the letter
6  or the spirit of these discovery standards in its document production.  Blockbuster should
7  accordingly be required to provide all of the requested documents and information immediately.

8       **1.    Blockbuster Has Improperly Failed To Provide The Details Of Its Search For Responsive Documents**
9

10       Judge Alsup's Supplemental Order expressly requires that litigants provide certain
11  information regarding the search they have undertaken for documents in response to Rule 34
12  document requests.  Judge Alsup explains that this sort of information, "normally learned by
13  counsel anyway should be made available to the other side *at the time of production*, as if it were
14  a response to a standing interrogatory."  Supplemental Order ¶ 14 (emphasis added).  Despite
15  making its production in November of 2006, and in spite of multiple requests in writing by
16  Netflix since early December of 2006, Blockbuster *still* has not supplied the required information
17  to Netflix.  Instead, Blockbuster has refused -- even in the very letter setting forth its positions on
18  this motion -- to provide a date certain upon which Netflix will finally receive this required
19  foundational information.  Blockbuster's reticence has greatly hindered Netflix's ability to
20  determine whether Blockbuster has adequately complied with its discovery obligations.  Indeed,
21  Netflix was required to review all of Blockbuster's document production in order to come to the
22  conclusion that Blockbuster had not in fact performed a reasonable search and produced all
23  responsive documents in its possession, custody, or control.

24       **2.    Blockbuster Has Failed To Produce Its Responsive Email, And Has Refused To Provide Any Explanation For That Failure**
25

26       In its review of Blockbuster's document production, Netflix found that the emails
27  Blockbuster had produced seemed exclusively to deal with minutiae relating to the development
28  and design of its infringing Blockbuster Online service.  Indeed, the vast bulk of the emails that

1  Netflix located were exchanged between lower level employees and contractors, offering
2  comments on how Blockbuster Online should be designed.  Conspicuously absent from
3  Blockbuster's production were emails among its top executives regarding whether to launch the
4  infringing Blockbuster Online service; how that service should be designed if so; and discussions
5  of Blockbuster's competition with Netflix.  The chart of document custodians that Blockbuster
6  provided with its document production indicated that not a single document was produced from
7  the files of its Chief Executive Officer, John Antioco.  And a mere 191 documents were
8  produced from the head of Blockbuster's infringing Blockbuster Online service, Shane
9  Evangelist, 79 of which were emails.  Moreover, the emails that were produced from the files of
10 Mr. Evangelist (and other custodians) oftentimes indicated on their face that documents were
11 attached to them -- yet the attached documents were not to be found in Blockbuster's document
12 production.
13         Perhaps in light of these glaring deficiencies, Blockbuster's counsel has not defended
14 Blockbuster's document production.  Indeed, counsel for Blockbuster conceded at the parties'
15 meet and confer that he was under the impression that additional email documents may exist that
16 need to be produced.  In subsequent correspondence, counsel for Blockbuster stated that
17 Blockbuster was "still attempting to confirm that all appropriate media was appropriately
18 searched."  But the serious questions and concerns that Netflix has raised with Blockbuster's
19 production are not the sort of minor quibbles that Blockbuster could reasonably fail to investigate
20 as part of its own search and production and instead wait for Netflix to complain about.  They go
21 directly to the heart of what any litigant would want to see -- the emails of executives at the
22 highest levels of the company discussing matters directly relevant to issues in the case.  It may
23 well be that there is some good explanation for the absence of these documents from
24 Blockbuster's production.  Perhaps they have since been destroyed pursuant to Blockbuster's
25 document retention policy.  But Blockbuster has not provided an explanation for the dearth of
26 emails that Netflix has observed, despite Netflix's repeated entreaties for such an explanation.
27 Accordingly, Netflix respectfully requests that the Court order Blockbuster to provide such an
28

7
PLAINTIFF NETFLIX, INC.'S NOTICE OF MOTION AND MEMO OF P&As I/S/O ITS MOTION TO COMPEL THE
PRODUCTION OF DOCUMENTS FROM BLOCKBUSTER, INC.
CASE NO. C 06 2361 WHA (JCS)

explanation, and also to produce all responsive email documents that have not been produced as yet, included any attachments to those emails.

### 3. Blockbuster Should Be Ordered To Comply With Its Discovery Obligations Immediately

To be sure, in the statement of its position on these issues, Blockbuster has said that it intends to continue to work with Netflix to resolve the issues relating to its production. Yet this offer of cooperation comes only after Netflix reviewed Blockbuster's document production and made clear how seriously it took this matter by traveling to Los Angeles in order to participate in an in-person meet and confer with Blockbuster. Prior to that time, Netflix had requested in letter after unanswered letter that Blockbuster produce the basic search information to which it is entitled. Yet Blockbuster still has not produced that information to Netflix, and says in its statement of position no more than that it expects to provide that information in the next few days. Given the fact that less than two months now remain in discovery, Netflix cannot responsibly rely merely on Blockbuster's statements of future intent. The parties are even now negotiating schedules for the depositions of the executives at the highest level of their respective companies, and Netflix is entitled to have the sort of vital information likely to be found in emails prior to taking the depositions of Blockbuster's executives.

### IV.     CONCLUSION

For the foregoing reasons, Netflix respectfully requests that this Court compel Blockbuster immediately to produce the information required by Paragraph 14 of Judge Alsup's Supplemental CMC Order, including an explanation of its search for responsive email, as well as to produce any additional responsive emails from its high-level executives, including any attachments to those emails.

1  Dated: March 2, 2007                                KEKER & VAN NEST, LLP

                                                      By:    /s/ Eugene M. Paige
                                                      Eugene M. Paige
                                                      ATTORNEYS FOR PLAINTIFF
                                                      NETFLIX, INC.

# TABLE OF CONTENTS

**Page(s)**

NOTICE OF MOTION ..................................................................................................................1

I. INTRODUCTION ...........................................................................................................1

II. FACTUAL BACKGROUND ..........................................................................................1

III. ARGUMENT ...................................................................................................................5

    1. Blockbuster Has Improperly Refused To Provide The Details Of Its Search For Responsive Documents .....................................................6

    2. Blockbuster Has Failed To Produce Its Responsive Email, And Has Refused To Provide Any Explanation For That Failure ......................6

    3. Blockbuster Should Be Ordered To Comply With Its Discovery Obligations Immediately .............................................................................8

IV. CONCLUSION ................................................................................................................8

i

PLAINTIFF NETFLIX, INC.'S NOTICE OF MOTION AND MEMO OF P&As I/S/O ITS MOTION TO COMPEL
THE PRODUCTION OF DOCUMENTS FROM BLOCKBUSTER, INC.
CASE NO. C 06 2361 WHA (JCS)