1   ALSCHULER GROSSMAN
    Marshall B. Grossman  (SBN 35958)
2   William J. O'Brien  (SBN 99526)
    Tony D. Chen  (SBN 176635)
3   Dominique N. Thomas  (SBN 231464)
    The Water Garden
4   1620 26th Street
    Fourth Floor, North Tower
5   Santa Monica, CA 90404-4060
    Telephone:  (310) 907-1000
6   Facsimile:  (310) 907-2000

7   BINGHAM McCUTCHEN LLP
    Donn P. Pickett (SBN 72257)
8   Mary T. Huser (SBN 136051)
    Adrienne L. Taclas (SBN 166115)
9   Three Embarcadero Center
    San Francisco, CA 94111-4067
10  Telephone:  (415) 393-2000
    Facsimile:  (415) 393-2286
11
    Attorneys for Defendant and Counterclaimant,
12  BLOCKBUSTER INC.

13                  UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15  NETFLIX, INC., a Delaware corporation,      Case No. C 06 2361 WHA (JCS)

16                            Plaintiff,         **BLOCKBUSTER INC.'S REPONSE TO
                                                 REQUEST RE CASE MANAGEMENT**
17        v.

18  BLOCKBUSTER INC., a Delaware
    corporation, DOES 1-50,
19                                               Complaint Filed:      April 4, 2006
                              Defendant.
20
    AND RELATED COUNTERCLAIMS
21

22

23

24

25

26

27

28

1    In response to the Court's Request Re Case Management dated April 20, 2007,

2  Blockbuster Inc. ("Blockbuster") respectfully submits the following:

3  **(1)    Substantive Pre-Trial Motions (Excluding Motions In Limine Directed At
      Evidentiary Items).**

4

5    Blockbuster anticipates that it may file a motion for summary judgment with

6  respect to invalidity, non-infringement, inequitable conduct and/or plaintiff's damages theories.

   These issues are still under consideration, particularly while initial expert reports have not yet

7  been exchanged.  Motions in limine have not yet been determined.

8  **(2)    Whether The Same Jury Should Hear The Patent And Antitrust Cases.**

9    Blockbuster and Netflix recently entered into a Stipulation and Agreement

10  Regarding Antitrust Claims and Discovery Disputes whereby Blockbuster agreed not to pursue

11  its antitrust Counterclaims 1 and 2 against Netflix.  A copy of that Stipulation and Agreement

12  appears on the Court's Docket as entry 197.  In light of the Stipulation and Agreement, issue

13  number two raised by the Court is now moot.

14  **(3)    Whether The Jury Should Hear The Inequitable Conduct Case.**

15    Where, as here, the defense of inequitable conduct that will be before the Court

16  and the legal claims that will be before the jury share common factual questions, common

17  witnesses, and common exhibits, it is proper for the jury to hear evidence on the inequitable

18  conduct claim.  *See, e.g., Dippin' Dots, Inc. v. Mosey et al.*, 476 F.3d 1337, 1341-42, 1346 (Fed.

19  Cir. 2007) (affirming district court's finding of inequitable conduct where jury was presented

20  with evidence relating to invalidity *and* inequitable conduct); *3M Innovative Props. Co. v.

21  DuPont Dow Elastomers LLC*, 361 F.Supp. 2d 958, 981 (D. Minn. 2005) (denying motion for

22  bench trial on inequitable conduct, because if the "court bifurcated the inequitable conduct claim,

23  it appears the evidence would have to be introduced again, and witnesses would testify twice, at

24  least with respect to prior art issues.").

25    The defense of inequitable conduct is equitable in nature, and is a matter to be

26  resolved by the Court.  *See e.g., Cabinet Vision v. Cabnetware*, 129 F.3d 595, 600 n.4 (Fed. Cir.

27  1997); *Paragon Podiatry Lab.*, 984 F.2d at 1190.  However, the jury will determine the validity

28

BLOCKBUSTER INC.'S RESPONSE TO REQUEST RE CASE MANAGEMENT
CASE NO. C 06 2361 WHA (JCS)

SF/21711525.2/3006338-0000325413

1  of the patents-in-suit, which will involve a determination of the same facts about the omitted

2  prior art, including the NCR patents that are important to Blockbuster's inequitable conduct

3  defense.

4  **A.    There Is Substantial Overlap Of Issues Between The Defense Of Invalidity And The Inequitable Conduct Case.**

5  The evidence that goes to Blockbuster's inequitable conduct case is relevant to

6  and closely intertwined with Blockbuster's defense of invalidity.

7  **1.    Inequitable Conduct Standard**

8  "Inequitable conduct includes affirmative misrepresentations of a material fact,

9  failure to disclose material information, or submission of false information, coupled with an

10 intent to deceive." *See Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1327 (Fed. Cir. 1998).

11 Whether the misrepresented or withheld information meets a threshold level of materiality is the

12 first step in an inequitable conduct analysis, followed by a determination of whether the evidence

13 shows a threshold level of intent to deceive the PTO. *See id.* Once the thresholds have been

14 met, the court must weigh the materiality and intent in light of all the circumstances to determine

15 whether or not the conduct was so culpable that the patent should be held unenforceable. *See*

16 *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1363 (Fed. Cir. 2003).

17 To be material, withheld prior art need not have been invalidating, but withheld

18 prior art that invalidates a patent is generally highly material. One standard used in determining

19 materiality is whether a "reasonable" patent examiner would have considered it important. 37

20 C.F.R. § 1.56(a). *See also Dayco Prods., Inc.*, 329 F.3d at 1363 (quoting *Driscoll v. Cebalo*, 731

21 F.2d 878, 884 (Fed. Cir. 1984)). Failure to disclose prior art can be a material omission even if

22 the patent would have issued despite such disclosure. *See, e.g., Merck & Co., Inc. v. Danbury*

23 *Pharmacal, Inc.*, 873 F.2d 1418 (Fed. Cir. 1989). However, evidence relating to the materiality

24 of the information a patentee misrepresented or failed to disclose to the PTO largely overlap with

25 that concerning the validity of the patent claims.[1] Certainly, such evidence overlats in this case -

26

---

[1]    35 U.S.C. § 103 provides that a patent may not issue if the subject matter of the patent
27 would have been obvious to "a person having ordinary skill in the art." "While the ultimate
question of patent validity is one of law . . . the [§] 103 condition . . . lends itself to several
28 factual inquiries." *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966). These factual inquiries

3

1  - with respect, for example, to the prior art patents assigned to NCR.

2          **2.    Netflix And Its Prosecution Counsel Knowingly Failed To Disclose
                Prior Art, Including The NCR Patents, To The PTO.**

3                  Both of the patents-in suit are unenforceable because of Netflix's inequitable

4  conduct before the PTO during prosecution.  Netflix failed to disclose material references,

5  including the NCR-assigned patents, during the prosecution of them.  *See* Blockbuster's

6  Answer to First Amended Complaint at ¶¶ 44-70.  The patents-in-suit are U.S. Patent

7  No. 6,584,450 entitled "Method and Apparatus for Renting Items" ("the '450 patent") and U.S.

8  Patent No. 7,024,381 entitled "Approach for Renting Items to Customers" ("the '381 patent").

9  The named inventors of the patents-in-suit are W. Reed Hastings, Chief Executive Officer of

10  Netflix; Mark B. Randolph, former CEO and President of Netflix; and Neil Duncan Hunt,

11  Netflix's Chief Product Officer.

12                  The '450 patent issued on June 24, 2003, and the '381 patent issued on April 4,

13  2006.  Claim 1 of the '450 patent claims "[a] method for renting items to customers," while

14  Claim 1 of the '381 patent is directed to "[a] computer-implemented method for renting movies

15  to customers."

16  Netflix and its named inventors were well aware of the NCR patents during prosecution of the

17  applications for the patents-in-suit but failed, over a period of years, to disclose them to the PTO.

18  For example, one of the NCR patents is U.S. Patent No. 5,699,526 (the '526 patent), entitled

19  "Ordering and Downloading Resources from Computerized Repositories," which was issued on

20  December 16, 1997, several years before the application for the '450 patent was filed.  The NCR

21  patents are replete with disclosures of features that are the same as or similar to features Netflix

22  has claimed in the subject patents.  To provide only a few examples:

23      • Netflix's asserted patents are directed to a computer-implemented method and system for

24          renting items – or sometimes, more specifically, movies – to customers.  Similarly, NCR

25

26  _____

27  include (1) the scope and content of the prior art, (2) the difference between the prior art and the
    claims at issue, and (3) the level of ordinary skill in the pertinent art.  *See id.*  Some secondary
    considerations might also indicate the obviousness or non-obviousness of the subject matter.  *See*
28  *id.*

BLOCKBUSTER INC.'S RESPONSE TO REQUEST RE CASE MANAGEMENT
CASE NO. C 06 2361 WHA (JCS)

SF/21711525.2/3006338-0000325413

1    patents cited in Blockbuster's Answer and Counterclaims disclose a computer-

2    implemented method for distributing items including movies and video tapes to

3    customers.  (See, *e.g.*, '526 patent, col. 2:55-57, 5:10-15 & Fig. 1B.)

4    •    Ninety-five claims of Netflix's '450 patent include "receiving one or more item selection

5    criteria that indicates one or more items that a customer desires to rent . . . ."  NCR's

6    '526, '403, '791, '855, and '096 patents disclose use of item selection criteria – for

7    example, a "display [that] prompts the user to request a search based on three criteria (or

8    less)."  (*E.g.*, '526 patent, col. 10:57-58 & Figs. 9-11.)

9    •    All fifty-one claims of Netflix's '381 patent include "providing electronic digital

10    information that causes one or more attributes of movies to be displayed . . . ."  The NCR

11    patents disclose just such a process.  Electronic digital information is provided that allows

12    resources (including movies) to be selected.  This causes display of "an associated

13    PROFILE, which contains descriptive information about the RESOURCE."  (E.g.,  '526

14    patent, col. 4:42-43.)

15    •    All claims of the '381 patent, and several claims of the '450 patent, include an "item

16    rental queue" or "movie rental queue" containing items desired by a customer.  ('381

17    patent, Claims 1-51; '450 patent, Claims 7, 22, 42, 57, 72, 87.)  In the claims of the '381

18    patent, the queue is "establish[ed] in electronic digital form, from electronic digital

19    information received over the Internet . . . ."  ('381 patent, Claims 1, 14, 24, 34, 44.)

20    NCR's '526, '791, '403, '855, and '096 patents all disclose a process of establishing in

21    electronic digital form, from electronic digital information received over a computer

22    network, a list associated with a customer that indicates his or her interests in searching

23    for resources.  (E.g.,  '526 patent, col. 18:48-49.)

24    •    All independent claims of the '381 patent provide for electronically updating a movie

25    rental queue in response to electronic digital information received from a customer over

26    the Internet.  ('381 patent, Claims 1, 14, 24, 34, 44.)  Numerous claims of the '381 patent

27    specifically recite updating the queue by adding or deleting items.  ('381 patent, Claims

28

BLOCKBUSTER INC.'S RESPONSE TO REQUEST RE CASE MANAGEMENT
CASE NO. C 06 2361 WHA (JCS)

SF/21711525.2/3006338-0000325413

1    3, 4, 16, 17, 26, 27, 36, 37, 46, 47.)  Similarly, NCR's '526, '799, '403, '855, and '096

2    patents all disclose updating a customer's interest list via a computer network, including

3    the ability to "add or delete interests in your current listing."  (E.g., '526 patent, col.

4    18:49-51.)

5    •   Claims of both the '450 and '381 patents include the step of delivering items to a

6    customer by mail or via a "delivery agent."  ('450 patent, Claims 12, 13, 27, 28, 34, 35,

7    62, 64, 77, 78; '381 patent, Claims 7, 20, 30, 40, 48.)  NCR's '526, '791, '403, '855, and

8    '096 patents disclose delivery of items electronically selected by a customer via an

9    organization's "internal mail service," or a "public, common carrier . . . ."  (E.g., '526

10   patent, col. 15:23-27.)

11        Netflix's own admissions in a case filed in the Northern District of California

12   (*Netflix, Inc. v. NCR Corporation,* Case No. C-06-1892 ("*Netflix v. NCR*")), show that Netflix

13   was aware of the NCR patents during the prosecution of the applications that resulted in the '450

14   and '381 patents-in-suit.  Netflix's complaint in that action shows that named inventor Mr.

15   Hastings -- also CEO and President of Netflix -- has been aware since on or about January 17,

16   2003 of the existence of the prior art NCR patents *as well as* the fact that NCR believes that that

17   their patents cover the very same online rental service claimed in Netflix's patents.  Indeed,

18   Netflix admitted in *Netflix v. NCR* that Mr. Hastings received several letters from NCR dating as

19   early as January 7, 2003 -- more than six months before the '450 patent issued.  NCR's January

20   7, 2003 letter specifically identified ten NCR patents that were infringed by Netflix and which

21   enclosed claim charts detailing Netflix's infringement.  The NCR letter also threatened suit

22   should Netflix not license the NCR's technology.

23        Netflix admits in its complaint against NCR that it thereafter received further

24   correspondence and claim charts from NCR and met with NCR about its prior-art patents and

25   NCR's assertions of infringement by Netflix.  The dispute between Netflix and NCR over these

26   prior-art patents culminated in Netflix's suing LCR for a declaratory judgment on March 10,

27   2006 -- prior to issuance of the '381 patent -- alleging that, "[b]y virtue of NCR's actions, Netflix

28

BLOCKBUSTER INC.'S RESPONSE TO REQUEST RE CASE MANAGEMENT
CASE NO. C 06 2361 WHA (JCS)

SF/21711525.2/3006338-0000325413

1    has a reasonable apprehension that NCR intends to sue it for infringing the NCR patents"

2    (Netflix v. NCR Compl. ¶ 25) and that "[a]n actual and judiciable controversy exists between

3    Netflix and NCR concerning whether Netflix infringes any valid claim of the NCR patents."  (Id.

4    ¶ 27.)

5            Despite all of these communications and notices from NCR about the NCR

6    Patents, their ongoing controversy over the NCR Patents, and Netflix's expressed apprehension

7    that it would be sued for infringement of those patents, and its declaratory judgment action

8    against NCR, neither Netflix nor its patent counsel disclosed any of the NCR patents to the PTO

9    during the prosecution of the applications for the '450 and '381 patents.

10           Furthermore, recent depositions confirm that Netflix and its patent counsel were

11    well aware of the NCR patents during prosecution of the patents-in-suit.  For example, Netflix's

12    patent attorney – Mr. Palermo -- testified that he had reviewed the NCR patents during the time

13    period in which he prosecuted the '450 and '381 patents.

14    **B.    The Jury Will Be Required To Assess Materiality and Intent As Part of the**
              **Invalidity Findings**

15

16           In determining the validity of the patents-in-suit, the jury must decide the contents

17    of the prior art -- including the NCR patents that are the subject of Blockbuster's inequitable

18    conduct defense -- and compare the prior art to the claims of the patents-in-suit.  These same

19    facts are important to the materiality of the NCR prior art.  If the NCR patents would have

20    anticipated and/or rendered the claims of the '450 and '381 patents obvious, either alone or in

21    combination with other prior art, then they are likely to have been highly material.

22           As described above, Blockbuster asserts inequitable conduct on the ground that

23    Netflix and its patent counsel failed to disclose the NCR patents during prosecution of the '450

24    and '381 patents,.  The inequitable conduct analysis involves an inquiry regarding whether the

25    concealed NCR patents meet a threshold level of materiality, followed by a determination of

26    whether the evidence shows a threshold level of intent on the part of Netflix or its patent counsel

27    to deceive the PTO.  In short, factual determinations of what the NCR patents disclose and how

28    they compared to the claims of the patents-in-suit are keys to deciding both validity and

7

1   inequitable conduct.

2          During the trial on invalidity, Blockbuster will also be entitled to present evidence

3   about Netflix's knowledge of and concealment of the NCR patents as well as other prior art.

4   This will be relevant not only to the credibility of Netflix's inventors and other witnesses but also

5   to raise the inference that Netflix's concealed these prior art because it knew disclosure would

6   have prevented it from obtaining its patents.

7          Thus, all of the evidence relating to the NCR patents, including testimony and

8   documents regarding when Netflix and its patent counsel were first aware of these patents, the

9   litigation between Netflix and NCR relating to these patents, the substance of the NCR patents,

10  and expert testimony relating thereto are all relevant to Blockbuster's defenses of invalidity *and*

11  inequitable conduct.  Many of the same witnesses -- including the named inventors Mr. Hastings

12  and Mr. Hunt, and their patent counsel Mr. Palermo -- will need to testify about both invalidity

13  and inequitable conduct.[2]  Having the same jury that would decide the invalidity of the patents-

14  in-suit also render an advisory verdict on the issues of materiality and intent underlying the

15  inequitable conduct claim would conserve judicial and party resources, because all the evidence

16  could be presented to the Court and the jury at one time.

17         Thus, under any scenario, the jury will hear the same witnesses and evidence with

18  respect to the NCR patents, and it would be inefficient and duplicative to have that evidence

19  presented twice.

20  **C.     The Court May Also Submit the Issues of Materiality and Intent to an Advisory Jury**

21

22         Federal Rule of Civil Procedure 39(c) also provides that the Court has discretion

23  to "try any issue with an advisory jury."[3]  The Federal Circuit has expressly approved of the use

24  of an advisory jury on the issue of inequitable conduct, and has recognized that there are a

---

25  [2]    Moreover, the fact that the named inventors and their patent counsel intentionally misled
    the PTO in applying for the patents-in-suit is directly relevant to whether they should be believed

26  when they testify before the jury as to the validity of those same patents.

27  [3]    The findings by an advisory jury are not binding, for the ultimate responsibility for
    finding the facts remains with the court.  *See* Wright & Miller, 9 Fed. Prac. & Proc. Civ. 2d §

28  2335 (Trial by an Advisory Jury); *Wilson v. Prasse*, 463 F.2d 109, 116 (3d Cir. 1972).

SF/21711525.2/3006338-0000325413

1  variety of ways that a court may choose to handle the issue of inequitable conduct:

2          Some courts have reserved the entire issue of inequitable conduct
           unto themselves; some have submitted special interrogatories to
3          the jury on the facts of materiality and intent; and some have
           instructed the jury to weigh the facts of materiality and intent and
4          decide the ultimate question of inequitable conduct, as in the case
           at bar . . . . Absent a clear showing of prejudice, or failure to
5          achieve a fair trial, the district court's choice of procedure will not
           be disturbed.
6

7  *Herbert v. Lisle Corp.*, 99 F.3d 1109, 1114 (Fed. Cir. 1996); *see also Duro-Last, Inc. v. Custom*

8  *Seal, Inc.* 321 F.3d 1098, 1110 (Fed. Cir. 2003) (noting that the district court judge submitted the

9  underlying factual inquiries regarding inequitable conduct to the jury and intended the jury

10  findings to be advisory); *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, Case No. C-

11  03-1431-SBA, 2006 WL 1646108 at *2-3 (N.D. Cal. June 12, 2006) (denying motion to

12  bifurcate and finding defendant would not be unfairly prejudiced if the evidence pertaining to

13  inequitable conduct was tried to advisory jury); *Cargill, Inc. v. Sears Petroleum & Transport*

14  *Corp.*, 388 F.Supp. 2d 37, 62 (N.D.N.Y. 2005) (having advisory jury address threshold questions

15  of materiality and intent to deceive).

16          Submitting the factual issues of materiality and intent underlying the inequitable

17  conduct claim to the jury will be helpful for the Court and conserve judicial and party resources.

18  It is appropriate for a court to empanel an advisory jury where, as here, "the advice of a jury

19  would be of particular aid given the nature of the action or the proof to be submitted."

20  *N.A.A.C.P. v. AcuSport, Inc.*, 271 F.Supp. 2d 435, 470 (E.D.N.Y 2003).

21          In addition, Netflix will not be prejudiced if the evidence relating to its

22  inequitable conduct is submitted to the jury for an advisory verdict. Because the issues of the

23  materiality of the omitted prior art for purposes of the inequitable conduct analysis and the

24  validity of the patents-in-suit are significantly intertwined, the jury would necessarily hear a

25  majority of the same evidence regardless of whether the Court permitted an advisory verdict.

26

27

28

BLOCKBUSTER INC.'S RESPONSE TO REQUEST RE CASE MANAGEMENT
CASE NO. C 06 2361 WHA (JCS)

SF/21711525.2/3006338-0000325413

1

Dated: April 30, 2007                    BINGHAM MCCUTCHEN LLP

2

3                                        By: _____/s/ Donn P. Pickett_____
                                         Donn P. Pickett
4                                        Attorneys for Defendant and Counterclaimant,
                                         BLOCKBUSTER INC.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BLOCKBUSTER INC.'S RESPONSE TO REQUEST RE CASE MANAGEMENT
CASE NO. C 06 2361 WHA (JCS)

SF/21711525.2/3006338-0000325413

1

## PROOF OF SERVICE

2          I am over 18 years of age, not a party to this action and employed in the County

3  of Los Angeles, California at 355 South Grand Avenue, Suite 4400, Los Angeles, California

4  90071-3106.  I am readily familiar with the practice of this office for collection and processing

5  of correspondence for mail/fax/hand delivery/next business day delivery/electronic transmission,

6  and they are deposited that same day in the ordinary course of business.

7          On April 30, 2007, I served the attached:

8          **BLOCKBUSTER INC.'S REPONSE TO REQUEST RE
           CASE MANAGEMENT**
9

10  ☒    (BY MAIL) by causing a true and correct copy of the above to be placed in the
           United States Mail at Los Angeles, California in sealed envelope(s) with postage
11         prepaid, addressed as set forth below.  I am readily familiar with this law firm's
           practice for collection and processing of correspondence for mailing with the
12         United States Postal Service.  Correspondence is deposited with the United States
           Postal Service the same day it is left for collection and processing in the ordinary
13         course of business.

14  ☒    (BY ELECTRONIC TRANSMISSION) This document was transmitted, without
           exhibits, by electronic transmission from nichele.goitia@bingham.com and the
15         transmission was reported as complete and without error.  I then caused the
           transmitting e-mail account to properly issue a report confirming the electronic
16         transmission.

17

18

19  **Jeffrey R. Chanin, Esq.**            **Eugene M. Paige, Esq.**
    Email:  jrc@kvn.com                    Email:  emp@kvn.com
20  **Ashok Ramani, Esq.**                 **Kevin T. Reed, Esq.**
    Email:  axr@kvn.com                    Email:  kreed@kvn.com
21  **Asim M. Bhansali, Esq.**             **Leo L. Lam**
    Email:  amb@kvn.com                    Email:  leo@kvn.com
22  **Daralyn J. Durie, Esq.**             KEKER & VAN NEST, LLP
    ddurie@kvn.com                         710 Sansome Street
23  KEKER & VAN NEST, LLP                  San Francisco, CA  94111-1704
    710 Sansome Street                     Phone: 415.391.5400
24  San Francisco, CA  94111-1704          Fax: 415.397.7188
    Phone: 415.391.5400
25  Fax: 415.397.7188

26

27

28

LA/40379026.1

1         I declare that I am employed in the office of a member of the bar of this court at

2    whose direction the service was made and that this declaration was executed on April 30, 2007,

3    at Los Angeles, California.

4

5    _____

6                     Nichele M. Goitia

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA/40379026.1