# EXHIBIT 7

Dockets.Justia.com

Brian H. Polovoy (BP 4723)
Karen Hart (KH 5518)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
Telephone: (212) 848-4000

Attorneys *Pro Se*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NETFLIX, INC., a Delaware Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | No. C 06 2361 WHA (JCS) |
| v. | ) | (pending in Northern District of California) |
| | ) | |
| BLOCKBUSTER, INC., a Delaware | ) | |
| Corporation, Does 1-50, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OBJECTIONS AND RESPONSES OF NON-PARTY SHEARMAN & STERLING LLP

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, non-party Shearman

& Sterling LLP ("Shearman & Sterling") hereby objects and responds as follows to Plaintiff's

subpoena dated April 4, 2007 (the "Subpoena").

Shearman & Sterling makes this response without in any way waiving or

intending to waive, but to the contrary, intending to reserve and reserving:

    (1)    all questions as to competency, relevancy, materiality, privilege, and
admissibility as evidence for any purpose, at any trial or hearing in this
case or in any related or subsequent action or proceeding, if any, of any of
the documents produced hereunder or the subject matter thereof;

    (2)    the right to object on any ground to the use of documents produced
hereunder or the subject matter thereof, at any trial or hearing in this case
or in any related or subsequent action or proceeding;

    (3)    the right to object on any ground at any time to a demand for further
responses or document production; and

EXHIBIT 7 PAGE 60

(4)    the right at any time to revise, supplement, correct, or add to this response.

Shearman & Sterling will limit its production subject to and without waiver of the general and specific objections set forth herein.

## GENERAL OBJECTIONS

1.    Shearman & Sterling objects to the Subpoena to the extent that it seeks information or documents that are protected by the attorney-client privilege or the attorney work product doctrine, that were prepared in anticipation of litigation, that constitute or disclose mental impressions, conclusions, opinions, or legal theories of any attorney of Shearman & Sterling concerning this or any other litigation, that are protected by the privilege of self-critical analyses, any pertinent statutes dealing with privacy rights, or by any other privilege or doctrine. Such documents will not be produced. Shearman & Sterling similarly objects to Subpoena's request for testimony pursuant to Rule 30(b)(6) because Plaintiff's "Matters Upon Which Examination [is] Requested" seek privileged information and communications. Accordingly, Shearman & Sterling cannot produce a Rule 30(b)(6) witness on the matters requested.

2.    Shearman & Sterling objects to the Subpoena to the extent that it is overbroad, vague, ambiguous, capable of multiple interpretations, and otherwise seeks documents that are not relevant to the claims or defenses in this action or calculated to lead to the discovery of admissible evidence.

3.    Shearman & Sterling objects to the Subpoena to the extent that it imposes an undue burden and expense on Shearman & Sterling.

4.    Shearman & Sterling objects to the Subpoena to the extent that it purports to require Shearman & Sterling to produce documents outside its possession, custody or control.

EXHIBIT __7__ PAGE __61__

5.     Shearman & Sterling objects to the Subpoena to the extent that it calls for the production of documents concerning transactions and events other than those related to this matter, and Shearman & Sterling will not produce such documents.

6.     Shearman & Sterling objects to the Subpoena to the extent that it purports to impose obligations greater than those imposed by the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Southern District of New York.

7.     Shearman & Sterling objects to the Subpoena to the extent that it calls for the production of documents that are publicly available.

8.     Shearman & Sterling objects to the Subpoena to the extent that it calls for documents that have already been or are designated to be provided to Plaintiff by any party or subpoenaed non-party in this litigation.

9.     Shearman & Sterling objects to the Subpoena to the extent that it would require the production of documents or information as to which Shearman & Sterling owes a duty of non-disclosure to a third party.

10.     Shearman & Sterling objects to the Subpoena to the extent that it seeks documents that contain, reflect, refer or relate to confidential or proprietary information and/or trade secrets.

11.     Shearman & Sterling objects to the Subpoena to the extent that it requires the production of documents absent the entry of a confidentiality stipulation or order protecting the confidentiality of documents that may be produced.  Shearman & Sterling will only produce confidential documents subject to the terms of a mutually agreeable confidentiality stipulation or order.

EXHIBIT __7__ PAGE __62__

12.     Shearman & Sterling objects to the Subpoena to the extent that it calls for information that was not generated in the form of written or printed records or that calls for Shearman & Sterling to create or re-create printouts from electronic data compilations, on the ground that such electronic information is not reasonably accessible because of undue burden or cost.  Such documents will not be produced.

13.     Shearman & Sterling expressly reserves any rights to apply for any costs incurred in complying with the Subpoena.

14.     The specific responses set forth below are based upon information now available to Shearman & Sterling, and Shearman & Sterling reserves the right at any time to amend or supplement these responses and objections.

15.     Any decision by Shearman & Sterling to provide any documents or information notwithstanding the objectionable nature of any part of the Subpoena should not be construed as a stipulation that the material is discoverable, a waiver of Shearman & Sterling objections, or an agreement that requests for similar discovery will be treated in a similar manner.

16.     Any response or objection to the Subpoena does not mean necessarily that any documents exist or are in the possession, custody, or control of Shearman & Sterling that are responsive to any specific category of documents demanded by the Subpoena.

17.     Shearman & Sterling's failure to object to a Request in the Subpoena on a particular ground shall not be construed as any waiver of its right to object on that ground or any additional grounds.

18.     Any inadvertent production of any document shall not be deemed or construed to constitute a waiver of any rights or privilege and Shearman & Sterling reserves the

EXHIBIT 7    PAGE 63

right to demand that the Plaintiff or any other person in possession of such a document, return to it any such document, and all copies thereof, and that the Plaintiff or any other person, destroy any materials that contain information derived from any such document.

19.     The objections set forth above are hereby incorporated in each specific response set forth below, as if fully set forth therein, and shall be deemed to be continuing even though not specifically referred to.  No such objection is waived by Shearman & Sterling responding to a Request in whole or in part.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

1.     Shearman & Sterling objects to the Instructions and Definitions in the Subpoena to the extent that they purport to define terms differently that those terms are defined by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Southern District of New York or any other applicable law or rule.

2.     Shearman & Sterling objects to the definitions of "You," "Your," and "Shearman" on the grounds that they are vague and overbroad.  Shearman & Sterling will construe the terms "You," "Your," and "Shearman" to refer to Shearman & Sterling and its partners and employees who records show were involved in matters relevant to this action. Shearman & Sterling objects to the Subpoena to the extent that they purport to seek the production of "all" documents on a particular subject.  Shearman & Sterling will respond to the Subpoena based upon a reasonable search of the files of those partners and employees who records show were involved in matters relevant to this action.

3.     Shearman & Sterling objects to the definitions of "documents," "communication," and "relating" to the extent that each definition is overbroad and unduly burdensome.

EXHIBIT   7   PAGE   64

## RESPONSES AND OBJECTIONS TO SPECIFIC REQUESTS

Request No. 1:

All documents relating to communications regarding the validity or invalidity of any claim of either of the Patents-in-Suit.

Response to Request No. 1:

Shearman & Sterling objects to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine or any other applicable privilege or doctrine. Shearman & Sterling further objects to this Request on the grounds that is vague, ambiguous, overbroad, unduly burdensome, and otherwise seeks documents that are not relevant to the claims or defenses in this action or calculated to lead to the discovery of admissible evidence. Shearman & Sterling further objects to this Request to the extent that it calls for documents that have already been, or are designated to be provided to Plaintiff by any party or subpoenaed non-party in this litigation. Subject to and without waiver of the foregoing general and specific objections, Shearman & Sterling will produce, at a mutually agreed upon time, non-privileged documents in its possession, custody or control, if any, that are responsive to this Request.

Request No. 2

All documents relating to any study, analysis, review, conclusion or opinion (including opinion of counsel) by either Shearman or any other person, whether written or oral, as to the validity or invalidity of any claim of either of the Patents-in-Suit, or to the research, investigation or preparation of any such document.

Response to Request No. 2:

Shearman & Sterling objects to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine or any other applicable privilege or doctrine. Shearman & Sterling further objects to this Request on the grounds that is vague, ambiguous, overbroad, unduly burdensome, and otherwise seeks

EXHIBIT 7 PAGE 65

documents that are not relevant to the claims or defenses in this action or calculated to lead to the discovery of admissible evidence. Shearman & Sterling further objects to this Request to the extent that it calls for documents that have already been, or are designated to be provided to Plaintiff by any party or subpoenaed non-party in this litigation. Subject to and without waiver of the foregoing general and specific objections, Shearman & Sterling will produce at a mutually agreed upon time, non-privileged documents in its possession, custody or control, if any, that are responsive to this Request.

Dated: New York, New York
        April 18, 2007

SHEARMAN & STERLING LLP

By: _____
        Brian H. Polovoy (BP 4723)
        Karen Hart (KH 5518)
        599 Lexington Avenue
        New York, New York  10022-6069
        Telephone:  (212) 848-4000

Attorneys *Pro Se*

EXHIBIT  7  PAGE 66

# EXHIBIT 8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NETFLIX, INC., a Delaware corporation,

      Plaintiff,

    v.

BLOCKBUSTER INC., a Delaware corporation,
DOES 1-50,

      Defendant.

Case No.  C 06 2361 WHA (JCS)

## OBJECTIONS AND RESPONSES OF NON-PARTY BAKER BOTTS, LLP TO NETFLIX'S NOTICE OF DEPOSITION

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, non-party Baker Botts, LLP ("Baker Botts") hereby objects and responds to Plaintiff and Counter-Defendant Netflix, Inc.'s ("Netflix") Subpoena dated April 3, 2007 ("Subpoena") as follows:

### GENERAL OBJECTIONS

1.    Baker Botts, a non-party to this suit, objects to the time and place of the deposition listed in the subpoena. The subpoena states the deposition will be held on April 24, 2007 at 9:30 a.m. at Figari & Davenport, LLP, 3400 Bank of America Plaza, 901 Main Street, Dallas, Texas. Netflix failed to consult with Baker Botts about a mutually agreeable date and location for the deposition. The witness is out of town on the day set for the deposition.

2.    Baker Botts objects to the Subpoena to the extent that it seeks information or documents that are protected by the attorney-client privilege or the attorney work product doctrine, that were prepared in anticipation of litigation, that constitute or disclose mental impressions, conclusions, opinions, or legal theories of any attorney of Baker Botts concerning this or any other litigation, that are protected by the privilege of self-critical analyses, any pertinent statutes dealing with privacy rights, or by any other privilege or doctrine. Such documents will not be produced.

EXHIBIT 8  PAGE 67

3.     Baker Botts objects to the Subpoena to the extent that it is overbroad as to subject matter and time frame, vague, ambiguous, capable of multiple interpretations, and otherwise seeks documents that are not relevant to the claims or defenses in this action or calculated to lead to the discovery of admissible evidence.

4.     Baker Botts objects to the Subpoena to the extent that it imposes an undue burden and expense.

5.     Baker Botts objects to the Subpoena to the extent that it purports to require Baker Botts to produce documents outside its possession, custody or control.

6.     Baker Botts objects to the Subpoena to the extent that it purports to impose obligations greater than those imposed by the Federal Rules of Civil Procedure.

7.     The specific responses set forth below are based upon information now available to Baker Botts, and Baker Botts reserves the right at any time to amend or supplement these responses and objections.

8.     Any response or objection to the Subpoena does not necessarily mean that any documents exist or are in the possession, custody, or control of Baker Botts that are responsive to any specific category of documents demanded by the Subpoena.

9.     Baker Botts objects to the definitions of "You," "Your," and "Baker Botts" on the grounds that they are vague and overbroad.  Baker Botts will construe the terms "You," "Your," and "Baker Botts" to refer to Baker Botts and its partners and employees who records show were involved in matters relevant to this action.

10.     The objections set forth above are hereby incorporated in each specific response set forth below, as if fully set forth therein, and shall be deemed to be continuing even though not specifically referred to.  No such objection is waived by Baker Botts responding to a Request in whole or in part.

## SPECIFIC RESPONSES AND OBJECTIONS TO EXAMINATION TOPICS

### Examination Request No. 1:

All COMMUNICATIONS between BAKER BOTTS and BLOCKBUSTER regarding

2

EXHIBIT___8___ PAGE___68

the validity or invalidity of any claim of either of the PATENTS-IN-SUIT.

**Response to Request No. 1:**

Baker Botts objects to this Request to the extent that it seeks information that is protected by the attorney-client privilege, attorney work product doctrine or any other applicable privilege or doctrine. Baker Botts further objects to this Request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and otherwise seeks information that is not relevant to the claims or defenses in this action or calculated to lead to the discovery of admissible evidence.

Subject to and without waiver of the foregoing general and specific objections, Baker Botts will answer questions regarding the opinion provided to Blockbuster and communications, if any, with Blockbuster regarding the validity or invalidity of any claim of U.S. Patent No. 6,584,450.

**Examination Request No. 2:**

All studies, analyses, reviews, conclusions or opinions (including opinion of counsel) by either BAKER BOTTS or any other PERSON, whether written or oral, as to the validity or invalidity of any claim of either of the PATENTS-IN-SUIT.

**Response to Request No. 2:**

Baker Botts objects to this Request to the extent that it seeks information that is protected by the attorney-client privilege, attorney work product doctrine or any other applicable privilege or doctrine. Baker Botts further objects to this Request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and otherwise seeks information that is not relevant to the claims or defenses in this action or calculated to lead to the discovery of admissible evidence.

Subject to and without waiver of the foregoing general and specific objections, Baker Botts will answer questions regarding the opinion provided to Blockbuster and communications, if any, with Blockbuster regarding the validity or invalidity of any claim of U.S. Patent No. 6,584,450.

3

EXHIBIT 8 PAGE 69

**Examination Request No. 3:**

The efforts undertaken by BAKER BOTTS to preserve, retain, and locate DOCUMENTS responsive to this subpoena.

**Response to Request No. 3:**

Baker Botts objects to this Request to the extent that it seeks information that is protected by the attorney-client privilege, attorney work product doctrine or any other applicable privilege or doctrine. Baker Botts further objects to this Request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and otherwise seeks information that is not relevant to the claims or defenses in this action or calculated to lead to the discovery of admissible evidence.

**Examination Request No. 4:**

The manner of keeping and authenticity of any DOCUMENTS produced pursuant to this subpoena.

**Response to Request No. 4:**

Baker Botts objects to this Request to the extent that it seeks information that is protected by the attorney-client privilege, attorney work product doctrine or any other applicable privilege or doctrine. Baker Botts further objects to this Request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and otherwise seeks information that is not relevant to the claims or defenses in this action or calculated to lead to the discovery of admissible evidence.

**SPECIFIC RESPONSES AND OBJECTIONS TO DOCUMENT REQUESTS**

**Document Request No. 1:**

All DOCUMENTS RELATING TO COMMUNICATIONS regarding the validity or invalidity of any claim of either of the PATENTS-IN-SUIT.

**Response to Request No. 1:**

Baker Botts objects to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine or any other applicable privilege

EXHIBIT___8___PAGE_70_

or doctrine. Baker Botts further objects to this Request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and otherwise seeks documents that are not relevant to the claims or defenses in this action or calculated to lead to the discovery of admissible evidence. Baker Botts also objects to this Request as seeking information already within the possession, custody or control of Netflix and to the extent that such information has already been produced to Netflix.

Subject to and without waiver of the foregoing general and specific objections, Baker Botts will produce documents that evidence communications between Blockbuster and Baker Botts regarding the validity or invalidity of any claim of U.S. Patent No. 6,584,450.

**Document Request No. 2:**

All DOCUMENTS RELATING TO any study, analysis, review, conclusion or opinion (including opinion of counsel) by either BAKER BOTTS or any other PERSON, whether written or oral, as to the validity or invalidity of any claim of either of the PATENTS-IN-SUIT, or to the research, investigation or preparation of any such DOCUMENT.

**Response to Request No. 2 :**

Baker Botts objects to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine or any other applicable privilege or doctrine. Baker Botts further objects to this Request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and otherwise seeks documents that are not relevant to the claims or defenses in this action or calculated to lead to the discovery of admissible evidence. Baker Botts also objects to this Request as seeking information already within the possession, custody or control of Netflix and to the extent that such information has already been produced to Netflix.

Subject to and without waiver of the foregoing general and specific objections, Baker Botts will produce documents that evidence communications between Blockbuster and Baker Botts regarding the validity or invalidity of any claim of U.S. Patent No. 6,584,450.

EXHIBIT __8.__ PAGE __71__

DATED:  April 18, 2007

Michael L. Raiff
  State Bar No. 00784803
Daniel J. Kelly
  State Bar No. 24041229
VINSON & ELKINS L.L.P.
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Telephone: 214.220.7704
Telecopy:  214.999.7704

**ATTORNEYS FOR NON-PARTY BAKER BOTTS, LLP**


**CERTIFICATE OF SERVICE**

    This is to certify that a true and correct copy of the above and foregoing has been served by the method identified below this 18th day of April, 2007:

Jeffrey Chanin                 ***By Fax***
Daralyn J. Durie
KEKER & VAN NEST, LLP
710 Sansome Street
San Francisco, CA 94111-1704
Attorneys for Plaintiff
NETFLIX, INC.


Marshall B. Grossman        ***By Fax***
William J. O'Brien
ALSCHULER GROSSMAN LLP
1620 26th Street, 4th Floor, North Tower
Santa Monica, CA 90404
Attorneys for Defendant
BLOCKBUSTER INC.

Daniel J. Kelly


Dallas 1242806v1

6

EXHIBIT____8____PAGE__72

# EXHIBIT 9

BINGHAM McCUTCHEN LLP
Donn P. Pickett (Bar No. 72257)
Adrienne L. Taclas (Bar No. 211232)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone:  415.393.2000
Facsimile: 415.393.2286

BINGHAM McCUTCHEN LLP
Mary T. Huser (Bar No. 136051)
1900 University Avenue
East Palo Alto, CA 94303-2223
Telephone:  650.849.4400
Facsimile:  650.849.4800

ALSCHULER GROSSMAN LLP
Marshall B. Grossman (No. 35958)
William J. O'Brien (No. 99526)
Tony D. Chen (No. 176635)
Dominique N. Thomas (No. 231464)
The Water Garden
1620 26th Street
Fourth Floor, North Tower
Santa Monica, CA 90404-4060
Telephone:  310-907-1000
Facsimile:  310-907-2000

Attorneys for Defendant and Counterclaimant
BLOCKBUSTER INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETFLIX, INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>BLOCKBUSTER INC., a Delaware corporation, DOES 1-50,<br><br>        Defendant. | Case No.  C 06 2361 WHA (JCS)<br><br>**OBJECTIONS AND RESPONSES OF NON-PARTY BLAKELY, SOKOLOFF, TAYLOR & ZAFMAN, LLP** |
| AND RELATED COUNTER ACTION | |

SF/21710143.2/3006338-0000325413

EXHIBIT  9  PAGE  73

1            Pursuant to Rule 45 of the Federal Rules of Civil Procedure, non-party Blakely,

2    Sokoloff, Taylor & Zafman, ("Blakely") hereby objects and responds to Plaintiff and Counter-

3    Defendant Netflix, Inc.'s ("Netflix") Amended Subpoena dated April 5, 2007 ("Subpoena") as

4    follows:

5                                      **GENERAL OBJECTIONS**

6            1.      Blakely objects to the Subpoena to the extent that it seeks information or

7    documents that are protected by the attorney-client privilege or the attorney work product

8    doctrine, that were prepared in anticipation of litigation, that constitute or disclose mental

9    impressions, conclusions, opinions, or legal theories of any attorney of Blakely concerning this

10   or any other litigation, that are protected by the privilege of self-critical analyses, any pertinent

11   statutes dealing with privacy rights, or by any other privilege or doctrine. Such documents will

12   not be produced.

13           2.      Blakely objects to the Subpoena to the extent that it is overbroad as to

14   subject matter and time frame, vague, ambiguous, capable of multiple interpretations, and

15   otherwise seeks documents that are not relevant to the claims or defenses in this action or

16   calculated to lead to the discovery of admissible evidence.

17           3.      Blakely objects to the Subpoena to the extent that it imposes an undue

18   burden and expense.

19           4.      Blakely objects to the Subpoena to the extent that it purports to require

20   Blakely to produce documents outside its possession, custody or control.

21           5.      Blakely objects to the Subpoena to the extent that it purports to impose

22   obligations greater than those imposed by the Federal Rules of Civil Procedure and the Local

23   Rules of the United States District Court for the Northern District of California.

24           6.      The specific responses set forth below are based upon information now

25   available to Blakely, and Blakely reserves the right at any time to amend or supplement these

26   responses and objections.

27           7.      Any response or objection to the Subpoena does not necessarily mean that

28   any documents exist or are in the possession, custody, or control of Blakely that are responsive to

EXHIBIT ___9___ PAGE ___74___

1  any specific category of documents demanded by the Subpoena.

2          8.     Blakely objects to the definitions of "You," "Your," and "Blakely" on the

3  grounds that they are vague and overbroad. Blakely will construe the terms "You," "Your," and

4  "Blakely" to refer to Blakely and its partners and employees who records show were involved in

5  matters relevant to this action.

6          9.     The objections set forth above are hereby incorporated in each specific

7  response set forth below, as if fully set forth therein, and shall be deemed to be continuing even

8  though not specifically referred to. No such objection is waived by Blakely responding to a

9  Request in whole or in part.

10

11      **SPECIFIC RESPONSES AND OBJECTIONS TO EXAMINATION TOPICS**

12      **Examination Request No. 1:**

13          All COMMUNICATIONS between BLAKELY and BLOCKBUSTER regarding

14  the validity or invalidity of any claim of either of the PATENTS-IN-SUIT.

15      **Response to Request No. 1:**

16          Blakely objects to this Request to the extent that it seeks information that is

17  protected by the attorney-client privilege, attorney work product doctrine or any other applicable

18  privilege or doctrine. Blakely further objects to this Request on the grounds that it is vague,

19  ambiguous, overbroad, unduly burdensome, and otherwise seeks information that is not relevant

20  to the claims or defenses in this action or calculated to lead to the discovery of admissible

21  evidence.

22          Subject to and without waiver of the foregoing general and specific objections,

23  Blakely will answer questions about the opinion provided to Blockbuster and communications, if

24  any, with Blockbuster regarding the validity or invalidity of any claim of U.S. Patent No.

25  7,024,381.

26      **Examination Request No. 2:**

27          All studies, analyses, reviews, conclusions or opinions (including opinion of

28  counsel) by either BLAKELY or any other PERSON, whether written or oral, as to the validity

EXHIBIT___9___ PAGE 75

1   or invalidity of any claim of either of the PATENTS-IN-SUIT.

2   **Response to Request No. 2:**

3        Blakely objects to this Request to the extent that it seeks information that is

4   protected by the attorney-client privilege, attorney work product doctrine or any other applicable

5   privilege or doctrine.  Blakely further objects to this Request on the grounds that it is vague,

6   ambiguous, overbroad, unduly burdensome, and otherwise seeks information that is not relevant

7   to the claims or defenses in this action or calculated to lead to the discovery of admissible

8   evidence.

9        Subject to and without waiver of the foregoing general and specific objections,

10  Blakely will answer questions about the opinion provided to Blockbuster and communications, if

11  any, with Blockbuster regarding the validity or invalidity of any claim of U.S. Patent No.

12  7,024,381.

13  **Examination Request No. 3:**

14       The efforts undertaken by BLAKELY to preserve, retain, and locate

15  DOCUMENTS responsive to this subpoena.

16  **Response to Request No. 3:**

17       Blakely objects to this Request to the extent that it seeks information that is

18  protected by the attorney-client privilege, attorney work product doctrine or any other applicable

19  privilege or doctrine.  Blakely further objects to this Request on the grounds that it is vague,

20  ambiguous, overbroad, unduly burdensome, and otherwise seeks information that is not relevant

21  to the claims or defenses in this action or calculated to lead to the discovery of admissible

22  evidence.

23  **Examination Request No. 4:**

24       The manner of keeping and authenticity of any DOCUMENTS produced pursuant

25  to this subpoena.

26  **Response to Request No. 4:**

27       Blakely objects to this Request to the extent that it seeks information that is

28  protected by the attorney-client privilege, attorney work product doctrine or any other applicable

SF/21710143.2/3006338-0000325413                    4

EXHIBIT ___9___ PAGE ___76___

1  privilege or doctrine. Blakely further objects to this Request on the grounds that it is vague,

2  ambiguous, overbroad, unduly burdensome, and otherwise seeks information that is not relevant

3  to the claims or defenses in this action or calculated to lead to the discovery of admissible

4  evidence.

5

6  **SPECIFIC RESPONSES AND OBJECTIONS TO DOCUMENT REQUESTS**

7  **Document Request No. 1:**

8       All DOCUMENTS RELATING TO COMMUNICATIONS regarding the validity

9  or invalidity of any claim of either of the PATENTS-IN-SUIT.

10  **Response to Request No. 1:**

11       Blakely objects to this Request to the extent that it seeks documents that are

12  protected by the attorney-client privilege, attorney work product doctrine or any other applicable

13  privilege or doctrine. Blakely further objects to this Request on the grounds that it is vague,

14  ambiguous, overbroad, unduly burdensome, and otherwise seeks documents that arc not relevant

15  to the claims or defenses in this action or calculated to lead to the discovery of admissible

16  evidence. Blakely also objects to this Request as seeking information already within the

17  possession, custody or control of Netflix and to the extent that such information has already been

18  produced to Netflix.

19       Subject to and without waiver of the foregoing general and specific objections,

20  Blakely will produce documents that evidence communications between Blockbuster and

21  Blakely regarding the validity or invalidity of any claim of U.S. Patent No. 7,024,381.

22  **Document Request No. 2:**

23       All DOCUMENTS RELATING TO any study, analysis, review, conclusion or

24  opinion (including opinion of counsel) by either BLAKELY or any other PERSON, whether

25  written or oral, as to the validity or invalidity of any claim of either of the PATENTS-IN-SUIT,

26  or to the research, investigation or preparation of any such DOCUMENT.

27  **Response to Request No. 2:**

28       Blakely objects to this Request to the extent that it seeks documents that are

EXHIBIT 9 PAGE 77

1    protected by the attorney-client privilege, attorney work product doctrine or any other applicable

2    privilege or doctrine.  Blakely further objects to this Request on the grounds that it is vague,

3    ambiguous, overbroad, unduly burdensome, and otherwise seeks documents that arc not relevant

4    to the claims or defenses in this action or calculated to lead to the discovery of admissible

5    evidence.  Blakely also objects to this Request as seeking information already within the

6    possession, custody or control of Netflix and to the extent that such information has already been

7    produced to Netflix.

8         Subject to and without waiver of the foregoing general and specific objections,

9    Blakely will produce documents that evidence communications between Blockbuster and

10   Blakely regarding the validity or invalidity of any claim of U.S. Patent No. 7,024,381.

11

     DATED:  April 18, 2007

12

13                                    Bingham McCutchen LLP

14

15                              By:  _Dan Pickett / AT_____

16                                      Donna P. Pickett
                                 Attorneys for Defendant and Counterclaimant
17                                         Blockbuster Inc.

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT___9___PAGE_78___

1

## PROOF OF SERVICE

2          I am over eighteen years of age, not a party in this action, and employed in San

3    Francisco County, California at Three Embarcadero Center, San Francisco, California 94111-

4    4067. I am readily familiar with the practice of this office for collection and processing of

5    correspondence for mail/fax/hand delivery/next business day delivery, and they are deposited

6    that same day in the ordinary course of business.

7          On April 18, 2007, I served the attached:

8    OBJECTIONS AND RESONSES OF NON-PARTY BLAKELY,
     SOKOLOFF, TAYLOR & ZAFMAN, LLP

9

10   ✓    (BY FAX) by transmitting via facsimile the document(s) listed above to the fax
          number(s) set forth below on this date before 5:00 p.m.

11

12   ✓    (BY MAIL) by causing a true and correct copy of the above to be placed in the
          United States Mail at San Francisco, California in sealed envelope(s) with postage
          prepaid, addressed as set forth below. I am readily familiar with this law firm's
13        practice for collection and processing of correspondence for mailing with the
          United States Postal Service. Correspondence is deposited with the United States
14        Postal Service the same day it is left for collection and processing in the ordinary
          course of business.

15

16   ☐    (EXPRESS MAIL/OVERNIGHT DELIVERY) by causing a true and correct copy
          of the document(s) listed above to be delivered by FAX MAIL in sealed
17        envelope(s) with all fees prepaid at the address set forth below.

18   ☐    (PERSONAL SERVICE) by causing a true and correct copy of the above
          documents to be hand delivered in sealed envelope(s) with all fees fully paid to the
19        person(s) at the address(es) set forth below.

20

21   Jeffrey R. Chanin, Esq.
     Daralyn J. Durie, Esq.
22   Eugene M. Paige, Esq.
     Kevin T. Reed, Esq.
23   Keker & Van Nest, LLP
     710 Sansome Street
24   San Francisco, CA 94111-1704
     Phone: 415.391.5400
25   Fax: 415.397.7188

26

27

28

7

EXHIBIT    9    PAGE    79

1       I declare that I am employed in the office of a member of the bar of this court at

2   whose direction the service was made and that this declaration was executed on April 18, 2007,

3   at San Francisco, California.

4

5

                                        Donna M. Gilliland

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT____9____ PAGE __80__

# EXHIBIT 10

LAW OFFICES

# KEKER & VAN NEST
### LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

SUSAN J. HARRIMAN
(415) 676-2213
SHARRIMAN@KVN.COM

April 19, 2007

**VIA E-MAIL**

Michael L. Raiff
Vinson & Elkins, LLP
3700 Trammell Crow Center
2001 Ross Avenue
Dallas, TX  75201-2974

Re:    Netflix, Inc. v. Blockbuster, Inc.

Dear Mr. Raiff:

I am writing to follow up on your discussions with Gene Paige about the foundational questions pertaining to the Echostar privilege issues.  Should we be able to reach agreement with respect to these foundational questions, I propose that we submit them as stipulated facts.  On that basis, Judge Spero can use them in determining whether or not to grant or deny a motion for protective order and/or a motion to compel.

Since Baker & Botts and Blakely Sokoloff Taylor & Zafman were opinion counsel, their depositions will go forward.  Therefore, the questions below are for lawyers at Alschuler Grossman, LLP and Sherman & Sterling, LLP.  The questions should be asked of each of the attorneys in those firms who has recorded billable time on this litigation or who reviewed Netflix's patents at issue in this litigation.  The questions are as follows:

1.    Have you ever expressed any opinion on the validity of either the '450 patent or '381 patent at issue in this case?

- How often?

- When?

- To whom?

- Was that opinion expressed orally or in writing?

- If in writing, was the writing preserved?

393901.01

EXHIBIT ___10___ PAGE __81__

Michael L. Raiff
April 19, 2007
Page 2

2.    Have you ever mentioned the opinion letter written by Baker & Botts as to the validity of the '450 patent to anyone at Blockbuster?

- How often?

- When?

- To whom?

- Was that comment expressed orally or in writing?

- If in writing, was the writing preserved?

3.    Have you mentioned the opinion letter written by Blakely Sokoloff Taylor & Zafman as to the validity of the '381 patent to anyone at Blockbuster ?

- How often?

- When?

- To whom?

- Was that comment expressed orally or in writing?

- If in writing, was the writing preserved?

4.    Have you ever discussed with anyone at Blockbuster the general subject matter of the validity of the '381 patent?

- How often?

- When?

- To whom?

- Was that discussion oral or in writing?

- If in writing, was the writing preserved?

5.    Have you ever discussed with anyone at Blockbuster the general subject matter of the validity of the '450 patent?

- How often?

- When?

EXHIBIT __10__ PAGE __82__

Michael L. Raiff
April 19, 2007
Page 3

- To whom?

- Was that discussion oral or in writing?

- If in writing, was the writing preserved?

6.     Have you made any comment to anyone at Blockbuster about the evidence
       concerning the validity of the '381 patent?

- How often?

- When?

- To whom?

- Was that comment made orally or in writing?

- If in writing, was the writing preserved?

7.     Have you made any comment to anyone at Blockbuster about the evidence
       concerning the validity of the '450 patent?

- How often?

- When?

- To whom?

- Was that comment made orally or in writing?

- If in writing, was the writing preserved?

8.     Have you had any communications with anyone in your office commenting on
       conversations with Blockbuster that in any way related to the validity of the '381
       patent?

- How often?

- When?

- To whom?

- Was that communication oral or in writing?

- If in writing, was the writing preserved?

393901.01

EXHIBIT    10    PAGE    83

Michael L. Raiff
April 19, 2007
Page 4

9.    Have you had any communications with anyone in your office commenting on conversations with Blockbuster that in any way related to the validity of the '450 patent?

- How often?

- When?

- To whom?

- Was that communication oral or in writing?

- If in writing, was the writing preserved?

10.    Have you ever discussed the likelihood that either the '450 patent or the '381 patent will be found to be valid?

- How often?

- When?

- To whom?

- Was that discussion oral or in writing?

- If in writing, was the writing preserved?

We would like complete answers to these questions and a list of the people to whom the questions were posed.  With that, we likely will have a sufficient foundation that will enable us to arrive at stipulated facts and thus avoid the need for depositions.  If we cannot reach agreement on these questions or the answers thereto, we will proceed with the depositions.

Thank you for your attention to this matter.

Very truly yours,

SUSAN J. HARRIMAN

SJH:js

# EXHIBIT 11

**BINGHAM McCUTCHEN**

Ryan M. Nishimoto
Direct Phone:  (213) 680-6782
Direct Fax:    (213) 830-8656
ryan.nishimoto@bingham.com

April 18, 2007

**Via FedEx and e-mail**

Kevin T. Reed
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111-1704

**Re:  Netflix, Inc. v. Blockbuster, Inc., Case No. C 06 2361 WHA
(JCS)**

Dear Mr. Reed:

Enclosed please find documents labeled for identification, BLAKELY00001-
BLAKELY00100 from the files of Blakely, Sokoloff, Taylor & Zafman LLP and a
privilege log.  Please feel free to contact me if you have any questions.

Sincerely yours,

Ryan M. Nishimoto

Enclosures

cc:  Marshall B. Grossman (by e-mail)
     William J. O'Brien (by e-mail)
     Tony D. Chen (by e-mail)
     Dominique N. Thomas
     Jeffrey R. Chanin (by e-mail)
     Daralyn J. Durie (by U.S. mail, without enclosures)
     Eugene M. Paige (by e-mail)

Bingham McCutchen LLP
Suite 4400
355 South Grand Avenue
Los Angeles, CA
90071-3106

213.680.6400
213.680.6499 fax

bingham.com

Boston
Hartford
London
Los Angeles
New York
Orange County
San Francisco
Silicon Valley
Tokyo
Walnut Creek
Washington

EXHIBIT   11   PAGE  85

# EXHIBIT 12

Vinson&Elkins

**Daniel J. Kelly** dkelly@velaw.com
Tel 214.220.7975 Fax 214.999.7975

April 27, 2007

***Via Federal Express***
Eugene M. Paige, Esq.
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111-1704

Re:    *Netflix, Inc. v. Blockbuster Inc.*; Case No. C-06-02361 WHA; In the United
       States District Court for the Northern District of California

Dear Gene:

In response to the April 3, 2007 Subpoena served on Baker Botts, LLP by Netflix,
Inc., I am enclosing documents responsive to the document requests in the Subpoena. Those
documents have been Bates-stamped BAKER00000001-00000488, Confidential-Attorneys'
Eyes Only. Baker Botts is producing these documents without waiving the general and
specific objections listed in its Objections and Responses to Netflix's Notice of Deposition.

Regards,

Daniel J. Kelly

Enclosures
102162:7726
Dallas 1246478v1

c:    Michael L. Raiff

**Vinson & Elkins LLP Attorneys at Law** Austin Beijing Dallas
Dubai Houston London Moscow New York Tokyo Washington

Trammell Crow Center, 2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975 Tel 214.220.7700 Fax 214.220.7716
www.velaw.com

EXHIBIT 12 PAGE 86

# EXHIBIT 13

**From:** Kelly, Dan [mailto:dkelly@velaw.com]
**Sent:** Monday, April 30, 2007 8:06 PM
**To:** Gene Paige
**Cc:** Green, Vicki
**Subject:** Netflix v. Blockbuster

Dear Gene,

Following up on our conversation of this afternoon and your letter of this evening, I am attaching an additional document responsive to the document requests in the Subpoena issued to Baker Botts, LLP.   The document has been Bates-stamped BAKER00000489-582.  Baker Botts is producing this document without waiving the general and specific objections listed in its Objections and Responses to Netflix's Notice of Deposition.   Please confirm that you have received this email and the attachment.   I will be sending you the privilege log for the documents withheld by Baker Botts in a separate email.

Regards,

Dan

EXHIBIT 13  PAGE 87

# EXHIBIT 14

Hearing Transcript 4/16/2007  11:00:00 AM

1

Pages 1 - 25
United States District Court
Northern District of California
Before The Honorable William Alsup

Netflix, Incorporated,    )
                          )
         Plaintiff,       )
                          )
vs.                       )   No. C06-2361 WHA
                          )
Blockbuster, Incorporated, )
                          )
         Defendant.       )
_____)

San Francisco, California
Monday, April 16, 2007
Reporter's Transcript Of Proceedings
Appearances:
For Plaintiff:    Keker & Van Nest
                  710 Sansome Street
                  San Francisco, California  94111
             By:  Daralyn J. Durie, Esquire
                  Eugene M. Paige, Esquire
For Defendant:    Bingham McCutchen
                  Three Embarcadero Center
                  San Francisco, California  94111
             By:  Donn P. Pickett, Esquire
                  Adrienne L. Taclas, Esquire
Reported By:    Sahar McVickar, RPR, CSR No. 12963
                Official Reporter, U.S. District Court
                For the Northern District of California
                (Computerized Transcription By Eclipse)

2

1   Monday, April 16, 2007          11:00 a.m.
2          P R O C E E D I N G S
3       THE COURT:  Do you mind if we take the other matter
4   out of turn?
5       THE CLERK:  Okay.
6       THE COURT:  I got Judge Spero here, and
7   unfortunately he takes priority over you.
8       THE CLERK:  Let me tell Ms. Thys.
9       THE COURT:  They are not here?
10      THE CLERK:  No.
11      Calling civil action C06-2361, Netflix versus
12   Blockbuster.
13      Counsel, please state your appearances for the
14   record.
15      MS. DURIE:  Good morning, Your Honor.
16   Daralyn Durie and Gene Paige from Keker & Van Nest
17   for Netflix.
18      THE COURT:  Welcome back.
19      MR. PICKETT:  Good morning.  Donn Pickett and
20   Adrienne Taclas from Bingham McCutchen appearing for the first
21   time.
22      THE COURT:  Welcome to the case.
23      Your name?
24      MS. TACLAS:  Adrienne.
25      THE COURT:  How do you spell that last name?

3

1       MS. TACLAS:  T-a-c-l-a-s.
2       THE COURT:  All right.  Okay.  Welcome to both of
3   you.
4       Everybody have a seat for a minute.
5       We are here on a discovery dispute involving the
6   issue of the extent to which Netflix can get various items.
7       Now, Judge Spero is back, so this case having been
8   previously referred to him for discovery, I'm not going to
9   actually rule on this, I'm going to let you go talk to him, but
10   I do have some questions.
11      Since I spent some time on getting ready for this
12   hearing, I am going to give you the benefit of my thinking
13   because I have thought a lot about this very problem.
14      First, I have this question, in the Guidelines I say
15   that the experts have got to save their drafts.  Now, sometimes
16   the lawyers sneak around and stipulate around me on that;
17   that's okay if both sides do, but the -- what's the situation
18   here?
19      MS. DURIE:  We have reached such a stipulation, Your
20   Honor, that we will not be demanding the exchange of drafts of
21   expert opinions.
22      THE COURT:  All right.  Okay, then, have a seat.
23      Now, I'm going to tell why I think that puts us in
24   an awkward position, because here you are trying to get all
25   this information about whether or not there was an attempt to

4

1   manipulate the opinion of counsel, but the -- you agreed the
2   drafts can be destroyed.  Now, maybe the drafts you are talking
3   about were the drafts of the retained experts and not the
4   attorney experts, but maybe it's not so clear who's who.
5       MS. DURIE:  Your Honor, I think it is quite clear
6   from the stipulation that we were discussing drafts of experts
7   who would be providing expert opinion testimony at trial and
8   designated as experts, not attorneys who would be providing
9   opinions.
10      THE COURT:  Well, but those attorneys wind up
11   testifying and --
12      MS. DURIE:  Well --
13      THE COURT:  I'm not going to rule on it now, I'm
14   just saying I see it as an issue, and later on we'll have to
15   see when the chips fall on that.  This is an issue.
16      MS. DURIE:  I understand.  And let me say it, the
17   stipulation, we have reached an agreement in principle, it
18   hasn't been finalized.  And I actually just last week said we
19   should include in the stipulation language to make that
20   explicit.  It is explicitly contemplated that we are not
21   talking about attorneys retained to provide opinions, but only
22   those experts who will testify as experts under Rule 26 at
23   trial.
24      THE COURT:  Well, you are telling me you don't have
25   a done deal yet, I don't know whether you can back out of a

EXHIBIT 14 PAGE 88

5

1  verbal deal or not, but you would not want to be in the
2  position of having your expert in this case having destroyed a
3  draft absent a stipulation.
4      MS. DURIE: Absolutely. And we have not --
5      THE COURT: Because I tell the jury, I will
6  turn to the jury and say, Ms. Durie's expert destroyed the
7  drafts.
8      MS. DURIE: I understand. And we have not destroyed
9  drafts. In fact, the stipulation I think does not call for
10  drafts to be destroyed, but simply agrees that we will not
11  require production of drafts of the actual expert reports.
12      THE COURT: All right. I am just warning you both
13  that there is an issue, and try not to get crosswise with that
14  issue.
15      MS. DURIE: Understood.
16      THE COURT: Because I can just see the attorneys
17  testifying and one side saying, oh, no, they are experts and
18  the other side saying, oh, no, they are defendants.
19      Okay, have a seat.
20      MS. DURIE: Thank you.
21      THE COURT: Next, there is a problem that I see, you
22  file -- the patent issues on day one, and you file suit on day
23  one accusing them of willfulness; now how can you do that if
24  they don't even know about the patent?
25      MS. DURIE: Your Honor, we did not accuse them in

6

1  our complaint of willfully infringing the patent that issued on
2  that day. In our complaint, we accused them of willfully
3  infringing the '450 patent, which had issued some three years
4  prior to the filing of the lawsuit. We later amended our
5  complaint to add an allegation of willfulness with respect to
6  the '381.
7      THE COURT: All right.
8      There could be an issue. The reason I bring this
9  up, there could be an issue over when the opinions were issued
10  relative to the knowledge of the patent. But I have
11  misunderstood, I thought from Mr. Pickett's letter that you had
12  accused him of willfulness on day one. So I am going to just
13  let that fall to the side.
14      MS. DURIE: Not with respect to the '381 patent.
15      THE COURT: All right.
16      Okay, where does it stand on the Texas motion for
17  protective order?
18      MS. DURIE: Where it stands is that Blockbuster did
19  file a motion for a protective order in Texas. It is set -- as
20  we understand it, they have not requested any expedited
21  treatment of that motion, and therefore, it would apparently be
22  heard on a regular motion calendar.
23      We are prepared to file a motion to transfer in the
24  Texas court asking the Texas court to transfer that motion to
25  this Court, which the Texas court can do in the exercise of its

7

1  discretion if it believes that this Court is a more appropriate
2  forum for the resolution of that dispute.
3      Why we're here, in essence, was both to tee up a
4  briefing schedule, if you will, on these issues before
5  Judge Spero, but also we believe that it quite clear that
6  this motion should be heard in this court, that there is no
7  good reason for it to be heard in Texas, and that Blockbuster
8  should withdraw its motion for protective order.
9      THE COURT: Well, Mr. Pickett's letter, though, said
10  that you, yourself, maybe not you, personally, but Netflix
11  wrote letters to these witnesses saying that you were going to
12  seek relief in the Northern District of Texas.
13      MS. DURIE: Um --
14      THE COURT: That's what the letter here says.
15      MS. DURIE: I think that is perhaps ambiguous or not
16  careful phrasing.
17      We did send letters -- there are multiple entities
18  involved in the motion for protective order that was filed in
19  Texas. One is Blockbuster itself, obviously, a party to
20  litigation present here.
21      We also sent letters to various of Blockbuster's
22  counsel, copies of which are attached to our letter to this
23  Court, indicating that we expected them to preserve documents,
24  pending the Court's determination of this issue, and that we
25  were asking them to do so in accordance with existing law.

8

1      The lawyers are located all over the country.
2  Alschuler Grossman is in Los Angeles, in the Central District
3  of California; other lawyers, I believe, are both in New York
4  and Texas. We did issue subpoenas out of the various
5  jurisdictions in which those law firms may be found seeking
6  testimony and documents from them, but we never indicated that
7  we intended to litigate any issues arising from those subpoenas
8  anywhere other than here.
9      THE COURT: Well, I saw your letters, I think you
10  summarized them correctly.
11      Now, Mr. Pickett, let me turn on you for a second.
12  I don't see where you got out of those letters any statement
13  that they wanted to seek relief in the Northern District of
14  Texas.
15      MR. PICKETT: Nor do I see where in my letter to you
16  where I stated otherwise.
17      THE COURT: Look on page 2, where you say apprising
18  them of Netflix's intention to move to compel that they do not
19  accede to the discovery demands does not alter these witnesses'
20  rights to seek relief in the Northern District of Texas.
21      MR. PICKETT: Right. It says that Netflix has
22  intention to move to compel, it does not say under which
23  jurisdiction. But in any event, the Federal Rules, 26 and 30
24  and 45 all allow --
25      THE COURT: All right, all right.

EXHIBIT __14__  PAGE __89__

Hearing Transcript  4/16/2007  11:00:00 AM

9

1    MR. PICKETT:  -- the party or a court --

2    THE COURT:  I see.  I misread your --

3    MR. PICKETT:  -- to --

4    THE COURT:  I thought you were saying that they had

5    threatened to go to Texas.

6    MR. PICKETT:  No, never indicated that, never

7    intended to do so, Your Honor.

8    THE COURT:  All right, all right.

9    Now, here is another procedural point:  With respect

10   to attorney-client, I think this Court is the one that ought to

11   decide that issue.  With respect to work product vis-à-vis the

12   counsel, trial counsel in this case, I think this Court is the

13   one that should decide the issue.

14   Now, if there is some Texas or New York counsel that

15   has an independent work product issue that stands alone and

16   separate and apart from any attorney-client, I'm not so sure

17   that we are the place to have that issue resolved.

18   MS. DURIE:  Fair enough, Your Honor.  And that is

19   not at issue except in the following sense:  We think under

20   EchoStar, it's clear that we are entitled to all communications

21   with all counsel, including trial counsel, on the subject

22   matter of the opinions, and that would be the attorney-client

23   issues.

24   To the extent that there is work product tangled up

25   with those attorney-client communications, we don't think that

10

1    is a separate basis for them to resist the production of those

2    documents under Ecostar.

3    To the extent that there is uncommunicated work

4    product in the possession of the attorneys that was not

5    transmitted to the client, to Blockbuster, that is an issue

6    that we think is open under current law that the Federal

7    Circuit will be considering en banc.

8    We have not demanded the production of that

9    uncommunicated work product as of now, and, instead, all we did

10   is ask the various lawyers in question to preserve and not to

11   discard those documents in the event that at a later date the

12   Court rules that we are entitled to that uncommunicated work

13   product.

14   THE COURT:  All right.

15   Help me understand the Ecostar case, which I read

16   this morning.  Where in there does it address trial counsel as

17   opposed to the opinion counsel?

18   MS. DURIE:  Right.  So -- unfortunately, the copy

19   that I have is somewhat unhelpfully printed off-line, and so I

20   can't refer Your Honor readily to the page number in the

21   printed version of the opinion.  But the Court states, and I

22   would be happy to hand this up, "When Ecostar chose to rely on

23   the advice of" --

24   THE COURT:  Wait.  Tell me how the paragraph starts,

25   and I'll find the paragraph.

11

1    MS. DURIE:  It is right before section B of the

2    opinion.  It's -- I'm sorry, Roman numeral III, there is A and

3    B, and it's at the very end of Roman numeral III, section A.

4    THE COURT:  Okay, "Thus, when" --

5    MS. DURIE:  Correct.

6    THE COURT:  Continue on.

7    MS. DURIE:  So it says, "Thus, when Ecostar chose to

8    rely on" --

9    THE COURT:  Not so fast.  The court reporter will

10   never get it.

11   MS. DURIE:  Sorry.

12   "Thus, when Ecostar chose to rely on the advice of

13   in-house counsel, it waived the attorney-client privilege with

14   regard to any attorney-client communications relating to the

15   same subject matter, including communications with counsel

16   other than in-house counsel, which would include communications

17   with Merchant and Gould."

18   Now, the case that the Federal Circuit then cites

19   Akeva versus Mizuno Corporation, from the Middle District of

20   North Carolina.  In the Akeva case, the Court was explicit and

21   held as follows:  "All opinions received by the client relating

22   to infringement must be revealed, even if they come from

23   defendant's trial counsel."

24   THE COURT:  Well, but in that case was the

25   uninfringement opinion from trial counsel?

12

1    MS. DURIE:  I believe, Your Honor, that it was not.

2    And I don't have a copy of the Akeva case with me, I have a

3    copy of another case that cites to it and quotes that language.

4    Other courts following EchoStar, other district

5    courts, have interpreted the EchoStar opinion to extend the

6    waiver of the privilege to trial counsel, even in situations

7    where trial counsel were not on opinion counsel.  I'm looking

8    at one case from the Middle District of Illinois that so holds,

9    but, certainly, there are others.

10   Your Honor said that you didn't want to get into the

11   subject matter of this dispute, and I do think it's appropriate

12   to argue the actual scope of the waiver in a proceeding in

13   front of Judge Spero, but suffice it to say that we think it's

14   quite clear that the current state of the law under EchoStar is

15   that the scope of the waiver does extend to trial counsel.

16   That is one of the questions that is currently

17   pending en banc before the Federal Circuit, which wouldn't be

18   the case if that were not the --

19   THE COURT:  Well, the -- I can't -- I don't agree

20   with that.  The -- I think the reasons the Seagate case is

21   there is taking en banc is because some judge looked at

22   EchoStar and construed it just the way you did, and the Federal

23   Circuit says, wait a minute, are we really going that far, and

24   they think it's important enough to have that heard and decided

25   en banc.

EXHIBIT    14    PAGE    90

13

1     Now, maybe they will go that far, but maybe not.
2 It's a big step whenever you start trying to depose the trial
3 lawyer on the other side.
4     MS. DURIE: It is a big step, I agree, but I think
5 it's hard to read EchoStar in any principled way and read it
6 otherwise when the Court says that it extends to any
7 attorney-client communication.
8     THE COURT: Well, that's putting a lot of weight on
9 one word. It just says -- it just says, "any attorney-client
10 communications relating to the same subject, including
11 communications with counsel other than that in-house"; what they
12 conveniently leave out there is trial counsel.
13     So I'm not sure -- you may wind up being right, I'm
14 not saying you're not, I'm just saying I read EchoStar this
15 morning saying I just can't believe that the Keker law firm
16 would cite this. And they must say trial counsel in here
17 somewhere. So I read it twice looking for trial counsel, and I
18 never saw it.
19     MS. DURIE: It does not explicitly say trial counsel
20 because that was not the precise issue that was presented in
21 EchoStar, but I think the language and the logic of the opinion
22 extends to trial counsel. Certainly, they extended it to
23 people in the EchoStar situation other than the opinion
24 counsel. And it's not clear to me why you would extend it to
25 one group of such other attorneys and not another.

14

1     And second, as I said, a number of district courts
2 following on EchoStar have read it just that way, to extend to
3 trial counsel. And this is an issue.
4     I do want to make one observation. This is not an
5 issue that should or I think could have caught Blockbuster by
6 surprise. There have been a number of District Court opinions
7 following on EchoStar that have made the point that the waiver
8 of the privilege under EchoStar is this broad. And I think
9 that by choosing to rely on an opinion of counsel, and
10 particularly an opinion of counsel, one which was drafted the
11 day before or signed and dated the day before the exchange of
12 opinions of counsel was due and which actually explicitly cites
13 and relies on information provided by trial counsel by
14 Alschuler Grossman, I just think --
15     THE COURT: Let me ask you a question, and I'm going
16 to ask you for a clear answer, no waffling. Let's say that you
17 were to get this discovery, and let's say that the Alschuler
18 firm -- no "T" in there, Alschuler -- surprises you and
19 gives a -- and says, yes, we have been advising our client from
20 day one that this patent is totally invalid, totally, so then
21 at the trial the witness from the company gets up on the stand
22 and says not only did the outside people tell us this patent
23 was no good, our own in-house people told us it was no good,
24 and our trial counsel right over there has been telling us that
25 this patent is no good; now, I know you, you would say that

15

1 should not come in because you are going to have to
2 cross-examine, and the jury will be unduly influenced by the
3 fact that Mr. Grossman is effectively testifying. And you are
4 not going to like that, are you?
5     MS. DURIE: Well --
6     THE COURT: So you tell me now, is it admissible or
7 not?
8     MS. DURIE: Let me make an observation, and then I
9 will unambiguously answer your question.
10     My observation is that Blockbuster did not disclose
11 any opinion or anything from Alschuler Grossman that it was
12 relying on the date --
13     THE COURT: That would be easy to fix if this
14 discovery is allowed.
15     MS. DURIE: Understood.
16     If the Court is going to put me to that choice, I
17 would rather get the discovery and find out what was
18 communicated and live with the consequences of having --
19     THE COURT: So you want it to be admissible either
20 way?
21     MS. DURIE: I don't want it -- to be clear, I don't
22 want it to be admissible. And I think that the fact that they
23 did not rely on and say that they were relying on anything that
24 had been told to them by Alschuler Grossman is a reason it
25 should not be.

16

1     THE COURT: Well, the reason is that it's not very
2 clear that they are even entitled to rely on the opinion of
3 trial counsel, and therefore I can understand why they didn't
4 list that. I can't imagine anybody has ever listed the opinion
5 of trial counsel, unless they had written one beforehand that
6 had gone through the normal thing.
7     But you are not really answering my question. I'm
8 taking what you are saying is you are okay with it being
9 admitted, and you are not going to object whenever Mr. Pickett
10 stands up and asks all these questions about how Mr. Grossman
11 told him this patent was no good from day one.
12     And so now the jury is going to hear it from
13 multiple sources that this patent is no good, and you are going
14 to be complaining about how you can't cross-examine
15 Mr. Grossman because the jury loves him.
16     MS. DURIE: Let me put it this way: If the Court's
17 order finding a waiver of the privilege is conditional on our
18 agreeing that such testimony be admitted and that the client be
19 allowed to testify about what Mr. Grossman told him and
20 therefore presumably that we be entitled to cross-examine
21 Mr. Grossman at trial, I'll take that deal.
22     THE COURT: So you cagily hedged your answer.
23     MS. DURIE: Well, I'm trying to be as direct as I
24 can. I believe that under existing law we are entitled to this
25 information. And I think under existing law because they did

EXHIBIT 14 PAGE 91

17

1  not disclose that they were going to be relying on an opinion
2  from Alschuler Grossman, they shouldn't be able to.
3       THE COURT: We can fix that.
4       MS. DURIE: I understand.
5       THE COURT: If this all came out, and it was as good
6  as it probably is for them, then you are going to wind up
7  having that problem.
8       MS. DURIE: I understand what Your Honor is saying.
9  I understand that if we get the information you are going to
10  fix it, and we are proceeding notwithstanding that.
11      THE COURT: All right.
12      Here is the next thing, let me give you all some
13  thoughts about the way I would normally do this.
14      MR. PICKETT: Excuse me, Your Honor, would it be
15  appropriate for me to respond?
16      THE COURT: It will not be. Have a seat.
17      MR. PICKETT: Thought I would ask.
18      THE COURT: And you have a seat.
19      MS. DURIE: I will have a seat.
20      THE COURT: I want to tell you about how I feel
21  about some of these discovery things.
22      I think foundational questions should always be
23  answered. And I was upset to see that your law firm,
24  Mr. Pickett -- it wasn't you, it was your co-counsel, was down
25  there instructing people not to answer foundational questions.

18

1       The question did you ever get a letter on the
2  subject of X from Mr. Grossman is not privileged, it's not.
3  Now, if you were then going to say, well, what does the letter
4  say, that would be privileged for the people being --
5       MR. PICKETT: I understand the distinction.
6       THE COURT: All right, you understand it. So you
7  were entitled to get the answer to that question. It's
8  foundational. How can a judge ever rule on the privilege
9  unless we know -- so you see the point.
10      Here is another thing, I can't stand it whenever the
11  outside lawyers manipulate the opinion of counsel, that's why I
12  asked about the drafts. And as far as I'm concerned, you ought
13  to be able to have a hey day, if need be, showing that
14  Mr. Grossman manipulated the outside opinion. Maybe he didn't,
15  maybe he did it right -- or some other lawyer. Wasn't
16  Sherman and Sterling in this case somewhere?
17      MS. DURIE: Yes.
18      THE COURT: Maybe they did it very cleverly
19  through -- I don't know how it was done. If you can't get at
20  the drafts and the E-mails and all that because of your
21  stipulation, maybe you are sunk on this. But I'm just saying
22  that as a general rule I would allow wide open discovery to
23  show that the expert has been influenced by somebody so that
24  it's ridiculous to rely on that opinion because it's been
25  manipulated.

19

1       Now, on the other hand, ordinarily, I would be
2  prejudiced against allowing you to discover what Mr. Grossman
3  says privately to his own client because there are any number
4  of reasons why even though he may think the patent is invalid
5  he can say, look, is a jury going to understand this? Is a
6  jury going to understand the thing with the ribbons and all
7  that? And even though I'm telling you that the patent is
8  invalid a jury may not fully understand it. It's technical.
9       There are any number of reasons that go beyond the
10  scope of the merits as to why a lawyer might give advice to a
11  client that might be misconstrued as saying, well, the
12  patent -- we're going to lose this case, but we're going to
13  lose the invalidity issue.
14      So I'm troubled by that. And I want you to factor
15  that into your briefing in front of Judge Spero. Certainly,
16  things that are just work product, that middle category that
17  was laid out, to me, if a law firm has been keeping stuff
18  completely to themselves and work product that they never share
19  with the expert, they never share with the client, that ought
20  to be never touched unless there is a huge good reason to do
21  that. So that second category that was in EchoStar I think
22  ought to be beyond the pale.
23      Now, they ought to keep it and preserve it in case
24  I'm wrong and the Court goes the other way. So the
25  preservation is fine, but I would be very much surprised if any

20

1  judge ever ordered that to be produced.
2       I think the depositions ought to be going forward to
3  lay down the foundation. It could be -- I had this happen to
4  me many times in practice, that we fight over nothing. Turns
5  out that when you ask the right questions, there is no letter.
6  There is no letter on the subject. There was no advice on the
7  subject. Because your side was directing not to answer, no one
8  knows whether there is anything worth fighting about. Those
9  foundational points, that -- including privilege logs, ought to
10  be produced. I don't know how Sherman and Sterling fits in
11  here, but if they were giving opinions the same thing applies
12  there.
13      These are my thoughts, having read these materials,
14  because I didn't know until an hour ago that Judge Spero was
15  back from his vacation and I thought I had to do this order.
16  But now that he is back, I think it's better that he take
17  charge of this.
18      Now, we are not going to stay this case on account
19  of the Seagate case. You are going to have to find some
20  solution or we go forward, and I just run the risk of getting
21  reversed. I don't think I'll get reversed. I'll make the best
22  decision I can. But I will not let grass grow under our feet.
23  There is no such thing as a stay, as Ms. Durie knows from
24  another case. Once you file a lawsuit here, we are going to
25  move it along.

21

1   Our case is set for when, September?

2   MS. DURIE: Yes, Your Honor.

3   THE COURT: You are going to have a trial.

4   MR. PICKETT: I just want to understand, if I could;

5   there is a difference between staying a case, which we are not

6   seeking, and carving out a privilege issue, which if we were

7   forced to produce trial counsel opinions and work product, it

8   would be irreparable injury.

9   THE COURT: That is a good point.

10   MR. PICKETT: That's exactly why Seagate, the

11   district court judge allowed discovery in Seagate. It went up

12   on a petition for mandamus, and Seagate stayed not the case,

13   the Federal Circuit stayed not the case, but just that sliver

14   of the case having to do with discovery.

15   There is an oral argument set on June 7 in Seagate,

16   and that is why Judge White and Magistrate Judge Lloyd stayed

17   that piece of discovery in a case last month that was before

18   them --

19   THE COURT: No, let's be clear. We can stay the

20   actual act of producing it.

21   MR. PICKETT: Yeah.

22   THE COURT: But forgetting the foundational material

23   to find out what we are fighting over is worth getting done.

24   That's not going to waive anything.

25   MR. PICKETT: I completely agree with that. I think

22

1   we are in agreement, actually.

2   THE COURT: When the day comes that we're -- that

3   part of the discovery could be stayed to the last minute, and

4   then we may have to make a last minute decision. But what I'm

5   telling you is we will not stay the trial in September so we

6   can hang around to see how that issue comes out. We will find

7   a way to deal with it.

8   MR. PICKETT: Understood.

9   MS. DURIE: Understood.

10   THE COURT: All right, so what I think you ought to

11   do now -- just a second.

12   I guess it's best just to let me ask you to go down

13   with Judge Spero and work out your own briefing schedule with

14   him. Here we are near the end of the discovery period, and I

15   don't know where you are on discovery.

16   I don't know if anybody has in mind asking for a

17   trial continuance, but you will have to have an extremely good

18   reason as to ask for a trial continuance. We can't allow the

19   Federal Circuit's calendar to -- or the Ninth Circuit's

20   calendar or anyone else's calendar. The fact that they might

21   change the law or -- on some issue of discovery, we have a

22   calendar to run, so we have to go forward and find a way to

23   either work around this problem or for me to make the decision

24   that winds up being the same one that they make.

25   Maybe it will be decided. Will -- you think -- when

23

1   do you think the Seagate decision will be decided, Mr. Pickett?

2   MR. PICKETT: They have set the hearing date for

3   June 7. There is an extraordinary amount of interest in that

4   decision because district courts are split, frankly, not just

5   two ways, but at least three different ways on the subject.

6   And there are a number of cases backed up waiting for that

7   opinion to come down. A lot of articles and so forth, so a lot

8   of attention.

9   THE COURT: I should say one other thing while I'm

10   on the subject of giving you my advisory opinions.

11   If it turns out that you win this issue,

12   Mr. Pickett, by that I mean you don't have to produce the

13   material, then your side will be under an absolute injunction

14   during the trial never to imply to the jury at all, at all,

15   that the defense counsel have given the client this advice.

16   And even the way in which the client answers the

17   question about their good faith could not imply that any such

18   thing has occurred, because then that would be opening the door

19   in a most unfair way, you withheld the evidence and then you

20   want the jury to think the evidence is there. I would never

21   allow that.

22   MR. PICKETT: Right.

23   THE COURT: And I would give very strong remedial

24   instructions to the jury if that were to occur.

25   MR. PICKETT: I think that's among the reasons they

24

1   kept trial counsel's opinion, counsel separate --

2   THE COURT: But I'm saying that the client itself

3   cannot answer those questions in a way, unless

4   cross-examination opens it up, cannot answer those questions in

5   such a way as to imply that there has been consistent advice

6   from trial counsel. That would be a big no-no.

7   MR. PICKETT: No.

8   THE COURT: I've done all the damage I can do today,

9   and now I'm going to turn you over to Judge Spero.

10   Can you continue to meet with them and work out a

11   schedule?

12   JUDGE SPERO: Sure. Can I use your jury room?

13   THE COURT: You can do that.

14   Now let's go back to the Jones Day case.

15   (Proceedings adjourned at 10:50 a.m.)

---o0o---

EXHIBIT___14___PAGE_93

Hearing Transcript  4/16/2007  11:00:00 AM

25

CERTIFICATE OF REPORTER

I, Sahar McVickar, Official Court Reporter for the

United States Court, Northern District of California, hereby

certify that the foregoing proceedings were reported by me, a

certified shorthand reporter, and were thereafter transcribed

under my direction into typewriting; that the foregoing is a

full, complete and true record of said proceedings as bound by

me at the time of filing.  The validity of the reporter's

certification of said transcript may be void upon disassembly

and/or removal from the court file.

_____

Sahar McVickar, RPR, CSR No. 12963

April 16, 2007

EXHIBIT____14____PAGE__94__

# EXHIBIT 15

LAW OFFICES

# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

DOROTHY R. McLAUGHLIN
DMCLAUGHLIN@KVN.COM

April 9, 2007

**VIA PDF & U.S. MAIL**

Barton E. Showalter
2001 Ross Avenue
Dallas, Texas 75201-2980

Re:     *Netflix v. Blockbuster, Inc., Case No. C-06-2361 WHA*

Dear Mr. Showalter:

Keker and Van Nest serves as counsel for Netflix. I write with regard to the subpoena that was served on you last Wednesday in the above-mentioned case.

Netflix sued Blockbuster in April 2006 for infringement of two of Netflix's patents: U.S. Patent No. 6,584,450 (the "'450 Patent") and U.S. Patent No. 7,024,381 (the "'381 Patent") (collectively "the patents in suit"). Netflix alleges, among other things, that Blockbuster has infringed and is infringing these patents willfully.

As a defense to Netflix's charge of willfulness, Blockbuster seeks to rely upon—and has produced to us—opinions of counsel regarding the '450 and '381 patents. Blockbuster has thus waived the attorney-client privilege and, to some extent, the work product protection that previously shielded from discovery documents related to these opinions. *See In re Echostar Commc'ns. Corp.*, 448 F.3d 1294, 1304 (Fed. Cir. 2006). Specifically, the Federal Circuit noted in *Echostar* that three categories of documents are relevant to waiver related to an advice-of-counsel defense:

1. documents that embody a communication between the attorney and client concerning the subject matter of the case, such as a traditional opinion letter;
2. documents analyzing the law, facts, trial strategy, and so forth that reflect the attorney's mental impressions but were not given to the client; and
3. documents that discuss a communication between attorney and client concerning the subject matter of the case but are not themselves communications to or from the client.

393299.01

EXHIBIT 15 PAGE 95

Bart E. Showalter
April 9, 2007
Page 2

*See id.* at 1302 (citation omitted). The Federal Circuit held that upon assertion of the advice-of-counsel defense the attorney-client privilege and work product immunity are waived with regard to categories one and three above. *Id.* at 1304.

The state of the law with regard to the scope of the waiver articulated in *Echostar* may change, given the Federal Circuit's decision to rehear en banc *In re Seagate Technology, LLC.* Misc. No. 830, 2007 WL 196403, at *1 (Fed. Cir. Jan. 26, 2007). The en banc ruling may either widen or narrow the scope of Blockbuster's waivers. The Federal Circuit's decision in *Echostar*, however, establishes the current state of the law and remains binding unless and until it is overturned by the Federal Circuit en banc. *Fed. Nat.'l Mortgage Ass'n. v. United States*, 469 F.3d 968, 972 (Fed. Cir. 2006) ("A panel of this court is bound by prior precedential decisions unless and until overturned *en banc*.") (quotation marks and citation omitted).

We intend to enforce the law as it currently exists and are therefore expecting production of documents described in categories one and three above. Additionally, we ask that you please preserve all documents described in category two because that information may become discoverable before this case is over.

Our deadline to file a motion to compel is April 19, 2007. We would like to avoid unnecessary motion practice regarding these documents. Please let me know in writing by Friday, April 13 whether you will produce the documents that you are required to produce to Netflix under *Echostar*, as discussed above. Feel free to contact me with any questions at 415-391-5400.

Sincerely,

Dorothy R. McLaughlin

DRM

EXHIBIT 15 PAGE 96

# EXHIBIT 16

LAW OFFICES

# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

DOROTHY R. MCLAUGHLIN
DMCLAUGHLIN@KVN.COM

April 9, 2007

**VIA PDF & U.S. MAIL**

Edwin H. Taylor
Blakely Sokoloff Taylor & Zafman LLP
1279 Oakmead Parkway
Sunnyvale, California 94085-4040

Re:    *Netflix v. Blockbuster, Inc., Case No. C-06-2361 WHA*

Dear Mr. Taylor:

Keker and Van Nest serves as counsel for Netflix. I write with regard to the subpoena that was served on you last Wednesday in the above-mentioned case.

Netflix sued Blockbuster in April 2006 for infringement of two of Netflix's patents: U.S. Patent No. 6,584,450 (the "'450 Patent") and U.S. Patent No. 7,024,381 (the "'381 Patent") (collectively "the patents in suit"). Netflix alleges, among other things, that Blockbuster has infringed and is infringing these patents willfully.

As a defense to Netflix's charge of willfulness, Blockbuster seeks to rely upon—and has produced to us—opinions of counsel regarding the '450 and '381 patents. Blockbuster has thus waived the attorney-client privilege and, to some extent, the work product protection that previously shielded from discovery documents related to these opinions. *See In re Echostar Commc'ns. Corp.*, 448 F.3d 1294, 1304 (Fed. Cir. 2006). Specifically, the Federal Circuit noted in *Echostar* that three categories of documents are relevant to waiver related to an advice-of-counsel defense:

1.  documents that embody a communication between the attorney and client concerning the subject matter of the case, such as a traditional opinion letter;
2.  documents analyzing the law, facts, trial strategy, and so forth that reflect the attorney's mental impressions but were not given to the client; and
3.  documents that discuss a communication between attorney and client concerning the subject matter of the case but are not themselves communications to or from the client.

393177.01

EXHIBIT 16 PAGE 97

Edwin H. Taylor
April 9, 2007
Page 2

*See id.* at 1302 (citation omitted).  The Federal Circuit held that upon assertion of the advice-of-counsel defense the attorney-client privilege and work product immunity are waived with regard to categories one and three above.  *Id.* at 1304.

The state of the law with regard to the scope of the waiver articulated in *Echostar* may change, given the Federal Circuit's decision to rehear en banc *In re Seagate Technology, LLC.*  Misc. No. 830, 2007 WL 196403, at *1 (Fed. Cir. Jan. 26, 2007).  The en banc ruling may either widen or narrow the scope of Blockbuster's waivers.  The Federal Circuit's decision in *Echostar*, however, establishes the current state of the law and remains binding unless and until it is overturned by the Federal Circuit en banc.  *Fed. Nat.'l Mortgage Ass'n. v. United States*, 469 F.3d 968, 972 (Fed. Cir. 2006) ("A panel of this court is bound by prior precedential decisions unless and until overturned *en banc*.") (quotation marks and citation omitted).

We intend to enforce the law as it currently exists and are therefore expecting production of documents described in categories one and three above.  Additionally, we ask that you please preserve all documents described in category two because that information may become discoverable before this case is over.

Our deadline to file a motion to compel is April 19, 2007.  We would like to avoid unnecessary motion practice regarding these documents.  Please let me know in writing by Friday, April 13 whether you will produce the documents that you are required to produce to Netflix under *Echostar*, as discussed above.  Feel free to contact me with any questions at 415-391-5400.

Sincerely,

Dorothy R. McLaughlin

DRM

EXHIBIT 16 PAGE 98

# EXHIBIT 17

*NETFLIX, INC. V. BLOCKBUSTER, INC.*
USDC, Northern District of California
Case No. C 06 2361

## BLAKELY, SOKOLOFF, TAYLOR & ZAFMAN
## PRIVILEGE LOG

| DOC NO. | DATE | AUTHORS | RECIPIENTS | DESCRIPTION | PRIVILEGE |
|---|---|---|---|---|---|
| 1 | March 2007 | Thomas Webster<br>Ed Taylor<br>Bill O'Brien | Thomas Webster<br>Ed Taylor<br>Bill O'Brien<br>Conny Willesen | Various internal e-mail correspondence & attachments reflecting attorney mental impressions | Work product |
| 2 | n/a | n/a | n/a | Portions of prosecution history with attorney notes reflecting attorney mental impressions | Work product |
| 3 | n/a | n/a | n/a | Various prior art, with attorney notes reflecting attorney mental impressions | Work product |
| 4 | n/a | n/a | n/a | Markman Order, with attorney notes reflecting attorney mental impressions | Work product |
| 5 | n/a | n/a | n/a | Patent-in-suit, with attorney notes reflecting attorney mental impressions | Work product |
| 6 | n/a | n/a | n/a | Research/case law, which reflects attorney research concerning opinion letter to client | Work product |
| 7 | n/a | n/a | n/a | Attorney notes reflecting attorney mental impressions | Work product |
| 8 | n/a | n/a | n/a | Partial draft opinion reflecting attorney mental impressions | Work product |

LA\40378153.3/3006338-0000325413

EXHIBIT 17 PAGE 99

# EXHIBIT 18

*NETFLIX, INC. V. BLOCKBUSTER, INC.*
USDC, Northern District of California
Case No. C 06 2361

## BLAKELY, SOKOLOFF, TAYLOR & ZAFMAN
## AMENDED PRIVILEGE LOG

| DOC NO. | DATE | AUTHOR | RECIPIENT | CC | DESCRIPTION | PRIVILEGE |
|---|---|---|---|---|---|---|
| 1. | 3/27/07 | Thomas Webster | Ed Taylor | | Email communication reflecting Blakely attorney mental impressions. | WP |
| 2. | 3/27/07 | Thomas Webster | Ed Taylor | | Attachment-Draft opinion letter | WP |
| 3. | 3/27/07 | Thomas Webster | Ed Taylor, Conny Willesen | | Email communication reflecting Blakely attorney mental impressions | WP |
| 4. | 3/11/07 | Thomas Webster | Ed Taylor | | Email communication reflecting Blakely attorney mental impressions with attachment | WP |
| 5. | 3/10/07 | Thomas Webster | Ed Taylor | | Email communication reflecting Blakely attorney mental impressions | WP |
| 6. | 3/9/07 | Thomas Webster | Ed Taylor | | Email communication reflecting Blakely attorney mental impressions with attachment. | WP |
| 7. | 3/4/07 | Thomas Webster | Ed Taylor | | Email Chain - Communication reflecting Blakely attorney mental impressions | WP |
| 8. | 3/4/07 | Thomas Webster | Ed Taylor | | Email Chain - Communication reflecting Blakely attorney mental impressions | WP |
| 9. | 3/4/07 | Thomas Webster | Ed Taylor | | Email Chain - Communication reflecting Blakely attorney mental impressions | WP |
| 10. | 3/3/07 | Thomas Webster | Ed Taylor | | Email Chain - Communication reflecting Blakely attorney mental impressions | WP |
| 11. | 3/3/07 | Thomas Webster | Ed Taylor | | Email Chain - Communication reflecting Blakely attorney mental impressions | WP |
| 12. | 3/3/07 | Bill O'Brien | Ed Taylor | | Email communication re patent-in-suit | AC; WP |
| 13. | n/a | Ed Taylor | | | Portions of prosecution history of patent-in-suit with Blakely attorney notes reflecting Blakely attorney mental impressions. | WP |
| 14. | n/a | Ed Taylor | | | Various prior art, with Blakely attorney notes reflecting Blakely attorney mental impressions | WP |
| 15. | n/a | Ed Taylor | | | Markman Order, with Blakely attorney notes reflecting Blakely attorney mental impressions | WP |
| 16. | n/a | Ed Taylor | | | Patent-in-suit, with Blakely attorney notes reflecting Blakely attorney mental impressions | WP |

1

PA\5220160\3\0006338-000032413

EXHIBIT __18__ PAGE __100__

*NETFLIX, INC. V. BLOCKBUSTER, INC.*
USDC, Northern District of California
Case No. C 06 2361

## BLAKELY, SOKOLOFF, TAYLOR & ZAFMAN
## AMENDED PRIVILEGE LOG

| DOC NO. | DATE | AUTHOR | RECIPIENT | CC | DESCRIPTION | PRIVILEGE |
|---|---|---|---|---|---|---|
| 17. | n/a | Ed Taylor | | | Research/case law reflecting Blakely attorney work product | WP |
| 18. | n/a | Ed Taylor | | | Blakely attorney notes reflecting Blakely attorney mental impressions | WP |

2

PA/52201601.3/3006538-0000325413

EXHIBIT __18__ PAGE __101__

# EXHIBIT 19

*NETFLIX, INC. v. BLOCKBUSTER INC.*
USDC, Northern District of California
Case No. C 06 2361

## BAKER BOTTS LLP
## PRIVILEGE AND REDACTION LOG

| DOC NO. | DATE | AUTHORS | RECIPIENTS | DESCRIPTION | PRIVILEGE |
|---|---|---|---|---|---|
| 1 | 6/26/03 | Rich Frank of Blockbuster Inc. | Bart Showalter of Baker Botts | Attorney-client email reflecting intellectual property counseling concerning Netflix patent | AC/WP |
| 2 | 7/15/03 | Kurt Pankratz of Baker Botts | Bart Showalter and Larry Carlson of Baker Botts | Internal Baker Botts email and attachment reflecting attorney mental impressions | WP |
| 3 | July and August 2003 | Kurt Pankratz of Baker Botts | | Uncommunicated work product reflecting attorney mental impressions | WP |
| 4 | 8/19/03 | Kurt Pankratz of Baker Botts | Thomas Frame of Baker Botts | Redaction of top part of BAKER00000013, Internal Baker Botts email reflecting attorney mental impressions. | WP |
| 5 | 8/29/03 | Bart Showalter of Baker Botts | Kurt Pankratz and Thomas Frame of Baker Botts | Internal Baker Botts email reflecting attorney mental impressions | WP |
| 6 | 4/6/06 | Bart Showalter of Baker Botts | Judy Norris of Blockbuster | Attorney-client email exchange reflecting legal advice unrelated to opinion of counsel rendered | AC/WP |
| 7 | 4/6/06 | Bart Showalter of Baker Botts | Kurt Pankratz of Baker Botts | Internal Baker Botts email reflecting attorney mental impressions | AC/WP |
| 8 | 4/28/06 | Dolores Skinner, Landon IP | Bart Showalter of Baker Botts | Email reflecting attorney mental impressions | AC/WP |
| 9 | 4/28/06 | Bart Showalter of Baker Botts | Kurt Pankratz and David Taylor of Baker Botts | Internal Baker Botts email reflecting attorney mental impressions | AC/WP |
| 10 | 5/9/06 | David Taylor of Baker Botts | Kurt Pankratz of Baker Botts | Internal Baker Botts email reflecting attorney mental impressions | AC/WP |

1

EXHIBIT 19 PAGE 102

| DOC NO. | DATE | AUTHORS | RECIPIENTS | DESCRIPTION | PRIVILEGE |
|---|---|---|---|---|---|
| 11 | 5/10/06 | Kurt Pankratz of Baker Botts | Bart Showalter of Baker Botts | Internal Baker Botts email reflecting attorney mental impressions | AC/WP |
| 12 | 5/12/06 | Kurt Pankratz of Baker Botts | Bart Showalter of Baker Botts | Internal Baker Botts email reflecting attorney mental impressions | AC/WP |
| 13 | 8/28/06 | Bart Showalter of Baker Botts | Doug Floyd of Blockbuster | Attorney-client email reflecting legal advice unrelated to opinion of counsel rendered | AC/WP |
| 14 | 8/31/06 | Bart Showalter of Baker Botts | Doug Floyd of Blockbuster | Attorney-client email reflecting legal advice unrelated to opinion of counsel rendered | AC/WP |
| 15 | undated | Kurt Pankratz of Baker Botts | n/a | Portion of internal draft memorandum uncommunicated to Blockbuster reflecting attorney mental impressions | AC/WP |
| 16 | undated | Bart Showalter of Baker Botts | n/a | Copy of document with hand written attorney notes reflecting attorney mental impressions | WP |

2

EXHIBIT 19 PAGE 103

# EXHIBIT 20

*NETFLIX, INC. V. BLOCKBUSTER, INC.*
USDC, Northern District of California
Case No. C 06 2361

## ALSCHULER GROSSMAN LLP
## PRIVILEGE LOG

| DOC NO. | PARTICIPANTS | DESCRIPTION | PRIVILEGE |
|---|---|---|---|
| 1. | AG/BBI | Communications between Alschuler Grossman ("AG") and Blockbuster, Inc. ("BBI") regarding opinions relating to invalidity provided by Baker Botts LLP ("Baker Botts") containing or requesting AG legal advice and/or reflecting AG attorney mental impressions | AC; WP |
| 2. | AG/Baker Botts | Communications between AG and Baker Botts regarding opinions relating to invalidity reflecting AG attorney mental impressions | AC |
| 3. | AG/BBI | Communications between AG and BBI regarding opinions relating to invalidity provided by Blakely, Sokoloff, Taylor & Zafman, LLP ("Blakely") containing or requesting AG legal advice and/or reflecting attorney mental impressions | AC; WP |
| 4. | AG/Blakley | Communications between AG and Blakely regarding opinions relating to invalidity reflecting AG attorney mental impressions and/or containing BBI confidential information | AC |
| 5. | AG | Internal AG communications regarding opinions of Baker Botts or Blakely related to invalidity reflecting AG attorney mental impressions | WP |
| 6. | AG/BBI | Communications between AG and BBI regarding various litigation defenses in connection with invalidity of the patents-in-suit containing or requesting AG legal advice and/or reflecting AG attorney mental impressions | AC; WP |
| 7. | AG | Various internal AG memoranda, notes, and documents related to litigation defenses in connection with invalidity of the patents-in-suit reflecting AG attorney mental impressions | WP |

1

SF/21710301.9/3006538-0000325413

EXHIBIT __20__ PAGE __104__

*NETFLIX, INC. V. BLOCKBUSTER, INC.*
USDC, Northern District of California
Case No. C 06 2361

## ALSCHULER GROSSMAN LLP
## PRIVILEGE LOG

| DOC NO. | PARTICIPANTS | DESCRIPTION | PRIVILEGE |
|---|---|---|---|
| 8. | AG/BBI | Communications between AG and BBI regarding preliminary invalidity contentions containing or requesting AG legal advice and/or reflecting AG attorney mental impressions | AC; WP |
| 9. | AG | Internal AG communications regarding preliminary invalidity contentions reflecting AG attorney mental impressions | WP |
| 10. | AG | Various AG internal memoranda, notes, and documents related to preliminary invalidity contentions reflecting AG attorney mental impressions | WP |
| 11. | AG/BBI | Communications between AG and BBI regarding answers and counterclaims containing or requesting AG legal advice and/or reflecting AG attorney mental impressions | AC; WP |
| 12. | AG | Internal AG communications regarding answer and counterclaims reflecting AG attorney mental impressions | WP |
| 13. | AG | Various internal AG memoranda, notes, and documents related to answer and counterclaims reflecting AG attorney mental impressions | WP |
| 14. | AG/BBI | Communications between AG and BBI regarding briefing on motion to dismiss inequitable conduct and counterclaims containing or requesting AG legal advice and/or reflecting AG attorney mental impressions | AC; WP |
| 15. | AG | Internal AG communications regarding briefing on motion to dismiss inequitable conduct and counterclaims reflecting AG attorney mental impressions | WP |

2

SF/21710301.9/3006338-0000325413

EXHIBIT __20__ PAGE __105__

*NETFLIX, INC. V. BLOCKBUSTER, INC.*
USDC, Northern District of California
Case No. C 06 2361

## ALSCHULER GROSSMAN LLP
## PRIVILEGE LOG

| DOC NO. | PARTICIPANTS | DESCRIPTION | PRIVILEGE |
|---------|--------------|-------------|-----------|
| 16. | AG | Various AG internal memoranda, notes, and documents related to briefing on motion to dismiss inequitable conduct and counterclaims reflecting AG attorney mental impressions | WP |
| 17. | AG/BBI | Communications between AG and BBI regarding prior art search firms containing or requesting AG legal advice and/or reflecting AG attorney mental impressions | AC; WP |
| 18. | AG | Internal AG communications regarding prior art search firms reflecting AG attorney mental impressions. | WP |
| 19. | AG/Prior Art Search Firms | Communications between AG and prior art search firms reflecting AG attorney mental impressions | WP |
| 20. | AG | Various internal AG memoranda, notes, and documents related to prior art search firms reflecting AG attorney mental impressions | WP |
| 21. | AG/BBI | Communications between AG and BBI regarding prior art consultants and investigators containing or requesting AG legal advice and/or reflecting AG attorney mental impressions | AC; WP |
| 22. | AG | Internal AG communications regarding prior art consultants and investigators reflecting AG attorney mental impressions | WP |
| 23. | AG/Prior Art Consultants and Investigators | Communications between AG and prior art consultants and investigators reflecting AG attorney mental impressions | WP |
| 24. | AG | Drafts of various internal AG memoranda and notes related to prior art consultants and investigators reflecting AG attorney mental impressions | WP |

3

SF21710301.9/5006338-000032S413

EXHIBIT ___20___ PAGE _106_

*NETFLIX, INC. V. BLOCKBUSTER, INC.*
USDC, Northern District of California
Case No. C 06 2361

## ALSCHULER GROSSMAN LLP
## PRIVILEGE LOG

| DOC NO. | PARTICIPANTS | DESCRIPTION | PRIVILEGE |
|---|---|---|---|
| 25. | AG/BBI | Communications between AG and BBI regarding prior art in connection with invalidity of the patents-in-suit containing or requesting AG legal advice and/or reflecting AG attorney mental impressions | AC; WP |
| 26. | AG | Internal AG communications regarding prior art in connection with invalidity of the patents-in-suit reflecting AG attorney mental impressions. | WP |
| 27. | AG | Various internal AG memoranda, notes, and documents related to prior art in connection with invalidity of the patents-in-suit reflecting AG attorney mental impressions | WP |
| 28. | AG | Internal AG communications regarding final invalidity contentions reflecting AG attorney mental impressions | WP |
| 29. | AG/BBI | Communications between AG and BBI regarding depositions of and information about current and former Netflix, Inc. ("Netflix") employees in connection with invalidity of the patents-in-suit containing or requesting AG legal advice and/or reflecting AG attorney mental impressions | AC; WP |
| 30. | AG | Internal AG communications regarding depositions of and information about current and former Netflix employees in connection with invalidity of the patents-in-suit reflecting AG attorney mental impressions | WP |
| 31. | AG | Various internal AG memoranda, notes, and documents related to depositions of and information about current and former Netflix employees in connection with invalidity of the patents-in-suit reflecting AG attorney mental impressions | WP |

4

SF/21710301.9/3006538-0000325413

EXHIBIT ___20___ PAGE 107

*NETFLIX, INC. V. BLOCKBUSTER, INC.*
USDC, Northern District of California
Case No. C 06 2361

## ALSCHULER GROSSMAN LLP
## PRIVILEGE LOG

| DOC NO. | PARTICIPANTS | DESCRIPTION | PRIVILEGE |
|---|---|---|---|
| 32. | AG/BBI | Communications between AG and BBI regarding depositions of and information about third parties in connection with invalidity of the patents-in-suit containing or requesting AG legal advice and/or reflecting AG attorney mental impressions | AC; WP |
| 33. | AG | Internal AG communications regarding depositions of and information about third parties in connection with invalidity of the patents-in-suit reflecting AG attorney mental impressions | WP |
| 34. | AG | Various internal AG memoranda, notes, and documents related to depositions of and information about third parties in connection with invalidity of the patents-in-suit reflecting AG attorney mental impressions. | WP |
| 35. | AG/BBI | Communications between AG and BBI regarding depositions of and information about current and former BBI employees in connection with invalidity of the patents-in-suit containing or requesting AG legal advice and/or reflecting AG attorney mental impressions | AC; WP |
| 36. | AG | Internal AG communications regarding depositions of and information about current and former BBI employees in connection with invalidity of the patents-in-suit reflecting AG attorney mental impressions | WP |
| 37. | AG | Various internal AG memoranda, notes, and documents related to depositions of and information about current and former BBI employees in connection with invalidity of the patents-in-suit reflecting AG attorney mental impressions | WP |

5

SF/21710301.9/3006338-000032S413

EXHIBIT ___20___ PAGE ___108___

*NETFLIX, INC. V. BLOCKBUSTER, INC.*
USDC, Northern District of California
Case No. C 06 2361

## ALSCHULER GROSSMAN LLP
## PRIVILEGE LOG

| DOC NO. | PARTICIPANTS | DESCRIPTION | PRIVILEGE |
|---|---|---|---|
| 38. | AG/BBI | Communications between AG and BBI regarding discovery requests and responses in connection with invalidity of the patents-in-suit containing or requesting AG legal advice and/or reflecting AG attorney mental impressions | AC; WP |
| 39. | AG | Internal AG communications regarding discovery requests and responses in connection with invalidity of the patents-in-suit reflecting AG attorney mental impressions | WP |
| 40. | AG | Various internal AG memoranda, notes, and documents related to discovery requests and responses in connection with invalidity of the patents-in-suit reflecting AG attorney mental impressions | WP |
| 41. | AG/BBI | Communications between AG and BBI regarding interviews of current and former BBI employees in connection with invalidity of the patents-in-suit containing or requesting AG legal advice and/or reflecting AG attorney mental impressions | AC; WP |
| 42. | AG | Internal AG communications regarding interviews of current and former BBI employees in connection with invalidity of the patents-in-suit reflecting AG attorney mental impressions | WP |
| 43. | AG | Various internal AG memoranda, notes, and documents related to interviews of current and former BBI employees in connection with invalidity of the patents-in-suit reflecting AG attorney mental impressions | WP |
| 44. | AG/BBI | Communications between AG and BBI regarding experts related to invalidity of the patents-in-suit containing or requesting AG legal advice and/or reflecting AG attorney mental impressions | AC; WP |

6

SF/21710301.9/3006538-000032S413

EXHIBIT___20___PAGE___109

*NETFLIX, INC. V. BLOCKBUSTER, INC.*
USDC, Northern District of California
Case No. C 06 2361

## ALSCHULER GROSSMAN LLP
## PRIVILEGE LOG

| DOC. NO. | PARTICIPANTS | DESCRIPTION | PRIVILEGE |
|---|---|---|---|
| 45. | AG | Internal AG communications regarding experts related to invalidity of the patents-in-suit reflecting AG attorney mental impressions | WP |
| 46. | AG | Various internal AG memoranda, notes, and documents regarding experts related to invalidity of the patents-in-suit reflecting AG attorney mental impressions | WP |

7

SF/21710301.9/3006338-0000325413

EXHIBIT __20__ PAGE __110__

# EXHIBIT 21

Received 04/17/2007 01:31PM in 01:48 on line [2] for MR1193 * Pg 2/6
04/17/2007 13:31 FAX 2147532407    MAG.JUDGE KAPLAN                        002



IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NETFLIX, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-07-MC-0036-K |
| | § | |
| BLOCKBUSTER, INC. | § | |
| | § | |
| Defendant. | § | |

## <u>ORDER</u>

Blockbuster, Inc., for itself and three of its current or former employees, has filed a motion for protective in connection with certain deposition notices and subpoenas served by Netflix, Inc.[1] At issue are depositions in a patent infringement case pending in California federal court which are scheduled to take place in Dallas, Texas during the weeks of April 9 & 16, 2007. According to Blockbuster, Netflix is using these depositions to invade the attorney-client privilege and force the disclosure of privileged communications. As an example of this improper motive, Blockbuster points to the deposition of one of its in-house attorneys, Bryan Stevenson, taken on April 10, 2007. At that deposition, counsel for Nexflix asked Stevenson: (1) whether Blockbuster retained all of its communications regarding the validity or invalidity of the patents-in-suit; (2) whether Blockbuster received any written documents from its trial counsel regarding the validity or invalidity of the patents-in-suit; and (3) whether Stevenson discussed the validity or invalidity of the patents with trial counsel prior to the deposition. (*See* Mot., Exh. D). Counsel objected to each question based on the

---

[1] The Blockbuster employees noticed for depositions are: (1) Edward B. Stead, former Executive Vice-President and General Counsel; (2) Shane Evangelist, current Senior Vice-President, and (3) Richard Allen Frank, former Vice-President. In addition, Netflix has served a Rule 30(b)(6) deposition notice on Blockbuster, who has designated Evangelist and Bryan Stevenson, one of its in-house lawyers, as corporate representatives.

EXHIBIT  21  PAGE  111

04/17/2007 13:32 FAX 2147532407    Received 04/17/2007 01:31PM in 01:48 on line [2] for MR1193 * Pg 3/6    MAG.JUDGE KAPLAN    ☑003

attorney-client privilege and instructed Stevenson not to answer. (*Id.*). In addition, Netflix has served a subpoena duces tecum on the law firm of Alschuler Grossman, LP, Blockbuster's trial counsel, seeking, *inter alia*, "[a]ll communications between Alschuler and Blockbuster regarding the validity or invalidity of any claim of either of the patents-in-suit." (*Id.*, Exh. B-5).[2]  Although Blockbuster recognizes that a limited waiver of the privilege has occurred because it asserts an "advice of counsel" defense to Netflix's claim of willful infringement, it contends that Netflix is attempting to turn that limited waiver into a wholesale waiver of the privilege as to communications with trial counsel. By this motion, Blockbuster and its witnesses seek an order relieving them of any duty to answer questions or produce documents that would divulge privileged communications with trial counsel.

The court notes that the issue of a whether a party waives the attorney-client privilege as to communications with trial counsel by relying on an "advice of counsel" defense to willful infringement is currently pending before the Court of Appeals for the Federal Circuit. *In re Seagate Technology, LLC*, Misc. No. 830, 2007 WL 196403 (Fed. Cir. Jan. 26, 2007). Blockbuster suggests, at a minimum, that the court should stay any discovery on this subject until *Seagate Technology* is decided. The court is inclined to agree, but is not inclined to prevent Netflix from deposing witnesses on issues that do not require Blockbuster to disclose privileged communications with trial counsel. Should the Federal Circuit ultimately decide that the assertion of an "advice of counsel" defense waives the attorney-client privilege as to communications with trial counsel, Netflix would be permitted to re-depose these witnesses as to such communications.

---

[2]  A similar request appears in the Rule 30(b)(6) deposition notice to Blockbuster made the basis of this motion. (*See* Mot., Exh. B-4).

EXHIBIT  21    PAGE  112

However, before any ruling is made on the motion, the court desires briefing from the parties as to whether this discovery dispute should be resolved by the presiding judge in the underlying litigation. While this court clearly has authority to rule on the motion for protective order as to the Rule 45 subpoena served on Richard Allen Frank, which was issued by the clerk of the Northern District of Texas, the same is not necessarily true as to the subpoena served on Edward B. Stead and the deposition notices to Shane Evangelist and Blockbuster--all of which were issued by or under the authority of the United States District Court for the Northern District of California. Although Blockbuster contends that this court has authority to hear this motion pursuant to Fed. R. Civ. P. 26(c) and 30(d)(4), the importance of this threshold jurisdictional issue warrants further briefing by both parties.

With these observations in mind, the attorneys are directed to make one final attempt to resolve this discovery dispute by agreement. The following orders are hereby entered to facilitate the prompt and efficient disposition of this matter:

1.    Counsel shall meet face-to-face or confer by telephone in an attempt to resolve all matters in dispute. This conference shall be held by **April 23, 2007.** Any attorney who fails to participate in this conference or negotiate in good faith will be subject to sanctions.

2.    The parties shall file a joint status report by **April 25, 2007.** This report must contain the following information: (a) the names of the attorneys who participated in the conference; (b) the date the conference was held and the amount of time the parties conferred; (c) the matters that were resolved by agreement; (d) the specific matters that need to be heard and determined; and (e) a detailed explanation of the reasons why agreement could not be reached as to those matters. As part of their joint status report, the parties shall fully brief the issue of whether this court has jurisdiction to grant a protective order in connection with the depositions of Edward B. Stead, Shane Evangelist

EXHIBIT __21__ PAGE __113__

Received 04/17/2007 01:31PM in 01:48 on line [2] for MR1193 * Pg 5/6
04/17/2007 13:32 FAX 2147532407              MAG.JUDGE KAPLAN                                      ☑005

and Blockbuster, and, if so, whether the court should exercise its discretion in favor of having the presiding judge in the underlying lawsuit decide the motion.[3] The joint status report must be signed by all participating attorneys. Any attorney who fails to sign the report will be subject to sanctions.

The purpose of a joint status report is to enable the court to determine the respective positions of each party regarding the subject matter of a discovery dispute. To this end, the parties should present their arguments and authorities in the body of the report. Supporting evidence and affidavits may be submitted in a separate appendix. If further briefing is desired before any unresolved matters are set for a hearing, the joint status report must indicate why the party requesting further briefing could not fully present its arguments and authorities in the report. The court, in its discretion, may allow further briefing upon request by any party.

The joint status report must be filed electronically in accordance with Miscellaneous Order 61, the CM/ECF Civil and Administrative Procedures Manual, and the CM/ECF User Guide. A hard copy of the joint status report and any supporting materials shall be *hand delivered* to the chambers of magistrate judge on the same day.

3.      The parties shall submit an agreed order in lieu of a joint status report if this discovery dispute is resolved. An agreed order, signed by all counsel of record, must be submitted electronically to Kaplan_Orders@txnd.uscourts.gov by **April 25, 2007.** A hard copy of the signed agreed order must be *hand delivered* to the chambers of magistrate judge on the same day.

4.      The court intends to rule on any unresolved issues based on the written submissions of the parties, including the joint status report. *See* N.D. Tex. LCivR 7.1(g) ("Unless otherwise directed by the presiding judge, oral argument on a motion will not be held."). However, the court,

---

[3] The court is also curious as to whether the Alschuler firm has filed a motion to quash the Rule 45 subpoena served by Netflix and, if so, the status of that motion.

EXHIBIT __21__ PAGE __114__

04/17/2007 13:32 FAX 2147532407          Received 04/17/2007 01:31PM in 01:48 on line [2] for MR1193 * Pg 6/6
                                         MAG. JUDGE KAPLAN                                    ☑006

in its discretion or upon the request of any party, may schedule oral argument prior to ruling on the

motion.

      SO ORDERED.

      DATED:  April 17, 2007.

                          JEFF KAPLAN
                          UNITED STATES MAGISTRATE JUDGE

EXHIBIT  21  PAGE  115