# EXHIBIT A
# (Part 2 of 2)

Dockets.Justia.com

**BAKER BOTTS** LLP

In step 606, customer 502 creates and provides movie selection criteria to provider 504 that indicates movies that customer 502 desires to rent. For example, the movie selection criteria may specify particular movie titles that customer 502 desires to rent. The movie selection criteria may also specify an order or priority in which customer 502 wishes to rent the movies. Instead of identifying particular movie titles, the movie selection criteria may specify movie preferences for customer 502, e.g., types of movies, directors, actors, or any other movie preferences or attributes. In this situation, provider 504 automatically selects particular titles that satisfy the movie selection criteria. For example, the movie selection criteria may specify a preference for action movies starring a particular actor, with a preference for "new release" movies. Provider 504 attempt to provide movies to customers 502 that best satisfy the preferences indicated by the movie selection criteria.

Column 9, line 64 – column 10, line 14 (sic). Thus movie selection criteria, like item selection criteria, broadly encompass virtually any information for identifying movies either individually or generally.

In examining Claim 14, it should be noted that the steps of this claim track identically those of Claim 1, except for the additional limitation that movies are the particular items in question both with respect to the items and the selection criteria. Thus Claim 14 simply requires the identical scope of Claim 1, except restricted to movies. That is, Claim 14 requires receiving item selection criteria that identify movies in addition to two deliveries of movies based upon these selection criteria. Just as with Claim 1, Claim 14 triggers the second delivery of movies based upon the receipt of one or more of the movies provided in the first delivery.

**Claim 15 – Games**

15.    *A method as recited in claim 1, wherein:*

*the one or more items are one or more games,*

*the one or more item selection criteria are one or more game selection criteria,*

*the step of receiving one or more item selection criteria that indicates one or more items that a customer desires to rent includes receiving one or more game selection criteria that indicates one or more games that a customer desires to rent,*

*the step of providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria*

BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY

BB01299620

**BAKER BOTTS** LLP

*Opinion of Invalidity*                    52                    March 9, 2004
*Re: U.S. Patent No. 6,584,450*

> *includes providing to the customer up to a specified number of the one or more games indicated by the one or more game selection criteria, and*

> *the step of in response to receiving any of the items provided to the customer, providing to the customer one or more other items indicated by the one or more item selection criteria, wherein a total current number of items provided to the customer does not exceed the specified number includes in response to receiving any of the games provided to the customer, providing to the customer one or more other games indicated by the one or more game selection criteria, wherein a total current number of games provided to the customer does not exceed the specified number.*

Claim 15 mirrors precisely the language of Claim 14, save for the use of "games" instead of movies. Thus Claim 15 further limits the operation of Claim 1 by specifying that the items are "games" and the selection criteria are "game selection criteria." Claim 15, by limiting the items particularly to games, likely excludes other types of items such as movies and music.

Like the term movies, *Hastings* uses the term game(s) liberally throughout the description and claims, yet does not choose to define or ascribe any special or particular meaning to this term. Other than the differentiation of games from movies and music, *Hastings* only true limitation of the term games is that they must be capable of being recorded on "nonvolatile memory." Thus the term "games(s)" is interpreted to broadly encompass any recording that, upon access, can provide some form of entertainment other than that provided by a movie or music.

The *Hastings* description does not specifically use the term "game selection criteria" except within the claims. However, the definitions and descriptions of item selection criteria and movie selection criteria make clear *Hastings'* intent to broadly define these terms. Thus game selection criteria likely encompass virtually any information for identifying games either individually or generally.

Claim 15, like Claim 14, tracks virtually identically the steps of Claim 1, save for the additional limitation that games are the particular items in question both with respect to the items and the selection criteria. Thus Claim 15 simply requires the identical scope of Claim 1, except restricted to games. That is, Claim 15 requires receiving item selection criteria that identify games in addition to two deliveries of games based upon these selection criteria. Just as with Claim 1, Claim 15 triggers the second delivery of games based upon the receipt of one or more of the games provided in the first delivery.

BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY

BB01299621

**BAKER BOTTS** LLP

### Claim 16 - Time-based Item Limit

*16.     A method for renting items to customers, the method comprising the computer-implemented steps of:*

> *receiving one or more item selection criteria that indicates one or more items that a customer desires to rent;*

> *providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria; and*

> *in response to receiving any of the items provided to the customer, providing to the customer one or more other items indicated by the one or more item selection criteria, wherein a total number of items provided to the customer within a specified period of time does not exceed a specified limit.*

Claim 16 provides a preamble and series of steps identical to those in Claim 1, with the exception of the final clause. In Claim 1, the final clause recites, "wherein a total current number of items provided to the customer does not exceed the specified number." In Claim 16, the final clause recites, "wherein a total number of items provided to the customer within a specified period of time does not exceed a specified limit." Because the remaining language of the two claims is identical, this discussion will rely upon the interpretations provided above with respect to Claim 1 without reiterating the specific details of that analysis. Like Claim 1, Claim 16 thus requires three steps: the receipt of information identifying items (step 1) and two subsequent deliveries of items indicated by that information (steps 2 and 3). The first delivery restricts the number of items provided using a limit. The second delivery triggers on the return of items from the first delivery. Unlike Claim 1, however, Claim 16 restricts the number of items provided in the second delivery only by comparison of a total number of items to a specified limit.

The restriction of the second delivery operates based on the phrase "wherein a total number of items provided to the customer within a specified period of time does not exceed a specified limit." This phrase mirrors the language from Claim 2, and thus the claim interpretation and analysis provided above for Claim 2 applies to Claim 16. That is, Claim 16 does not provide for any set limit on exchanges, but rather limits the total number of items that may be provided during a period of time.[17]

---

[17] This holds true in Claim 16 despite the fact the Claim 16 does not have the additional limitation of Claim 2 (by operation of the language in Claim 1), namely: "wherein a total current number of items provided to the customer does not exceed the specified number."

**BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY**

BB01299622

**BAKER BOTTS** L.L.P.

*Opinion of Invalidity*                                                54                                          March 9, 2004
*Re: U.S. Patent No. 6,584,450*

For example, consider Claim 16 having values for terms of: "specified number" equal to three and "specified limit" equal to four. If the first delivery provides two items to the customer, then the customer may exchange both items for the second delivery during the specified period. This comports with the requirements of Claim 16, since the total number of items provided within the specified period is four (does not exceed the specified limit). Thus in this scenario, two exchanges are permitted.

Assume the same values for the specified number and specified limit terms, but now consider a delivery of only one item in the first delivery during the specified period. The customer may now exchange the single item for up to three other items in the second delivery during the specified period. This once again comports with the requirements of Claim 16, since the specified limit permits up to four total items delivered during the time period. Thus in this scenario, up to three exchanges are permitted. This once again demonstrates that the claims do not address the exchange based limits that *Hastings* primarily discusses with respect to the Max Turns approach. However, as noted above, *Hastings* contemplates implementing the Max Turns approach using a limit on a total number of items rather than a limit on exchanges.

Therefore, the specified limit in Claim 16 is interpreted as a limit on the total number of items provided to the customer, and not as an exchange limit. Claim 16 thus requires three steps, including the receipt of information and the two deliveries. Claim 16 restricts the number of items provided in the first delivery by a first limit. Claim 16 triggers the second delivery on the return of items from the first delivery. Also, Claim 16 limits the total number of items, and thus the number of items provided in the second delivery, by a specified limit of items within a period of time.

**Claim 17 - Max Out**

17.    *A method as recited in claim 16, wherein the total current number of items provided to the customer does not exceed the specified number.*

Claim 17 further limits Claim 16 by restricting the second delivery of items based upon the limit applied in the first delivery. With the introduction of this language, Claim 17 provides for identical limitations to those in Claim 2.[18]

---

[18] Claim 17 suffers from indefiniteness, since "total current number of items" is addressed as "the" without first being introduced. *See* 35 U.S.C. § 112 ¶ 2. However, this antecedent basis problem is ignored for purposes of this discussion, since it does not speak to invalidity based upon prior art.

BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY

BB01299623

**BAKER BOTTS** LLP

*Opinion of Invalidity*                              55                          March 9, 2004
*Re: U.S. Patent No. 6,584,450*

### Claim 18 - Rollover

> 18.    *A method as recited in claim 16, further comprising if the total number of items provided to the customer within the specified period of time is less than the specified limit, then increasing the specified limit for another specified period of time.*

Claim 18 adds a step to Claim 16 with language mirroring exactly that recited in Claim 3. The interpretation and analysis of Claim 3 thus applies to Claim 18. As noted above, this additional step includes a conditional clause that is satisfied by the customer using less than the specified limit of items during the specified time period. When the conditional clause is satisfied, Claim 18 provides for "rolling over" unused portions of the limit into another time period. Therefore, in addition to the limitations provided in Claim 16, Claim 18 provides for rollover of unused portions of the specified limit into another time period.

### Claim 19 - Desired Order

> 19.    *A method as recited in claim 16, wherein*
>
> *the one or more item selection criteria indicates a desired order for the one or more items that a customer desires to rent,*
>
> *the step of providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria includes providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria in the desired order indicated by the one or more item selection criteria, and*
>
> *the step of providing to the customer one or more other items indicated by the one or more item selection criteria includes providing to the customer one or more other items indicated by the one or more item selection criteria in the desired order indicated by the one or more item selection criteria.*

Claim 19 adds further limitations to Claim 16 with language mirroring exactly that recited in Claim 4. The interpretation and analysis of Claim 4 thus applies to Claim 19. As noted above, these limitations introduce the concept of ordered delivery. Specifically, Claim 19 further limits each of the steps in Claim 16 with the introduction of "a desired order for the one or more items that a customer desires to rent." Based upon the plain language of the claim and the brief mentioning of ordered delivery in the detailed description, Claim 19 simply requires an indicated ordering of the items and adherence to this ordering during the first and second deliveries.

BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY

BB01299624

**BAKER BOTTS** LLP

*Opinion of Invalidity*                                    56                          March 9, 2004
*Re: U.S. Patent No. 6,584,450*

### Claim 20 - Skip Unavailable

*20.      A method as recited in claim 19, further comprising if a particular item from the one or more items indicated by the one or more item selection criteria is not available, then providing another item from the one or more items based upon the desired order indicated by the one or more item selection criteria.*

Claim 20 further limits Claim 19 with the introduction of a step mirroring exactly the step recited in Claim 5. The interpretation and analysis of Claim 5 thus applies to Claim 20. Therefore, as with Claim 5, Claim 20 provides for skipping unavailable items identified by the desired order and selecting alternate items. This alternate item must also be selected "based upon the desired order."

### Claim 21 - Preferred Item Attributes

*21.      A method as recited in claim 16, wherein*

*the one or more item selection criteria specifies one or more preferred item attributes,*

*the step of providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria includes automatically selecting and providing to the customer up to a specified number of one or more items that have one or more of the one or more preferred item attributes specified by the one or more item selection criteria, and*

*the step of providing to the customer one or more other items indicated by the one or more item selection criteria includes automatically selecting and providing to the customer one or more other items that have one or more of the one or more preferred item attributes specified by the one or more item selection criteria.*

Claim 21 establishes further limitations upon the item selection criteria of Claim 16, using language mirroring exactly that recited in Claim 6. The interpretation and analysis of Claim 6 thus applies to Claim 21. As noted above, the claim limitation reciting, "the one or more item selection criteria specifies one or more preferred item attributes," simply requires that the customer provide general attributes of items to be received. Moreover, the language of "automatically selecting . . . items that have one or more of the one or more preferred item attributes specified by the one or more item selection criteria" encompasses the automated selection of items based upon loosely defined attributes. That is, Claim 21 requires automated selection of particular items that satisfy attributes identifying general types of items.

BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY

BB01299625

**BAKER BOTTS** LLP

*Opinion of Invalidity*            57            March 9, 2004
*Re: U.S. Patent No. 6,584,450*

### Claim 22 - Item Rental Queue

> 22.    *A method as recited in claim 16, further comprising:*
>
> *establishing, based upon the one or more item selection criteria, an item rental queue for the customer, wherein the item rental queue contains one or more entries that specify the one or more items that the customer desires to rent; and*
>
> *in response to receiving back any of the items provided to the customer, selecting the one or more other items from the item rental queue.*

Claim 22 further limits the operation of Claim 16 with the introduction of "an item rental queue for the customer." This language mirrors exactly the language recited in Claim 7, and thus the interpretation and analysis of Claim 7 applies to Claim 22. In particular, Claim 22 adds one additional step to Claim 16 and alters the operation of the final step of Claim 16. These additional limitations provide for a rental queue and servicing of the queue in response to receiving items back from the customer. As noted above, *Hastings* evidences an intent to broadly define these terms and operations, and thus Claim 22 encompasses building the item rental queue using any appropriate information provided in the item selection criteria. Moreover, Claim 22 provides for the use of any suitable queue servicing schedule for selecting the items from the queue for delivery.

### Claim 23 - Customer Notification

> 23.    *A method as recited in claim 16, further comprising in response to receiving a customer notification, providing to the customer a second set of one or more other items indicated by the one or more item selection criteria.*

Claim 23 adds a step to those provided in Claim 16 with language mirroring exactly that recited in Claim 8. The interpretation and analysis of Claim 8 thus applies to Claim 23. In particular, the step of Claim 23 provides a third delivery of items (second set of other items) indicated by the item selection criteria, in this case triggered by "a customer notification." Similar to Claim 8, Claim 23 as originally filed further limited the broad triggering event specified in Claim 16 as originally filed. Along with the narrowing of the triggering event in Claim 16 to focus only on the return of previously delivered items, the Applicants also amended Claim 23 to add a third delivery of items triggered upon a customer notification.

Therefore, Claim 23 requires three separate deliveries of items. The first and second deliveries are governed by the steps in Claim 16. The first delivery simply provides items indicated by item selection criteria. The second delivery provides items indicated by the

**BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY**

BB01299626

**BAKER BOTTS** LLP

*Opinion of Invalidity*                                    58                            March 9, 2004
*Re: U.S. Patent No. 6,584,450*

item selection criteria and triggers upon receipt of one or more items from the first delivery. The third delivery of items, specified by Claim 23, delivers items indicated by the item selection criteria and triggers upon a customer notification. Claim 23 places no limits, such as the specified number or the specified limit, on this third delivery.

### Claim 24 - Expiration of Time

> 24.    *A method as recited in claim 16, further comprising in response to expiration of a specified amount of time, providing to the customer a second set of one or more other items indicated by the one or more item selection criteria.*

Claim 24, like Claim 23, adds another delivery to the two deliveries specified in Claim 16. Claim 24 mirrors exactly the language provided in Claim 9, and thus the interpretation and analysis of Claim 9 applies to Claim 24. Claim 24 as originally filed, like Claim 23, simply limited the broad item delivery criteria specified in Claim 16 as originally filed. When narrowing the triggering event of Claim 16, the Applicants also amended Claim 24 to provide for a third delivery of items triggered upon a specified event. In Claim 24, however, the specified triggering event for the third delivery is the "expiration of a specified amount of time."

Thus as with Claim 23, Claim 24 requires three separate deliveries of items. The steps of Claim 16 govern the first and second deliveries, and Claim 24 governs the third delivery, with the third delivery triggering upon the expiration of a specified amount of time and providing additional items specified by the originally submitted selection criteria. Claim 24 places no limits, such as the specified number or the specified limit, on this third delivery.

### Claim 25 - Specified Date

> 25.    *A method as recited in claim 16, further comprising in response to a specified date being reached, providing to the customer a second set of one or more other items indicated by the one or more item selection criteria.*

Claim 25, like Claims 23 and 24, adds another delivery to the two deliveries specified in Claim 16. Claim 25 mirrors exactly the language provided in Claim 10, and thus the interpretation and analysis of Claim 10 applies to Claim 25. Claim 25 as originally filed, like Claims 23 and 24, simply limited the broad item delivery criteria specified in Claim 16 as originally filed. When narrowing the triggering event of Claim 16, the Applicants also amended Claim 25 to provide for a third delivery of items triggered upon a specified event. In Claim 25, however, the specified triggering event for the third delivery is "a specified date being reached."

**BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY**

BB01299627

**BAKER BOTTS** LLP

*Opinion of Invalidity*                          59                          March 9, 2004
*Re: U.S. Patent No. 6,584,450*

Thus as with the previous two claims, Claim 25 requires three separate deliveries of items. The steps of Claim 16 govern the first and second deliveries, and Claim 25 governs the third delivery, with the third delivery triggering upon the occurrence of a specified date and providing additional items specified by the originally submitted selection criteria. Claim 25 places no limits, such as the specified number or the specified limit, on this third delivery.

### Claim 26 - Receipt of Fee

26.    *A method as recited in claim 16, further comprising in response to a specified fee being received, providing to the customer a second set of one or more other items indicated by the one or more item selection criteria.*

Claim 26, like the previous three claims, adds another delivery to the two deliveries specified in Claim 16. Claim 26 mirrors exactly the language provided in Claim 11, and thus the interpretation and analysis of Claim 11 applies to Claim 26. Claim 26 as originally filed, like the previous three claims, simply limited the broad item delivery criteria specified in Claim 16 as originally filed. When narrowing the triggering event of Claim 16, the Applicants also amended Claim 26 to provide for a third delivery of items triggered upon a specified event. In Claim 26, however, the specified triggering event for the third delivery is "a specified fee being received."

Thus as with the previous three claims, Claim 26 requires three separate deliveries of items. The steps of Claim 16 govern the first and second deliveries, and Claim 26 governs the third delivery, with the third delivery triggering upon receipt of a payment and providing additional items specified by the originally submitted selection criteria. Claim 26 places no limits, such as the specified number or the specified limit, on this third delivery.

### Claim 27 - Mail

27.    *A method as recited in claim 16, wherein items are provided to the customer by mail.*

Claim 27 provides a further limitation on the process for delivering items in Claim 16 using language mirroring exactly that recited in Claim 12. The interpretation and analysis of Claim 12 thus applies to Claim 27. Claim 27 details the delivery channel used for providing items to the customer, specifying that the delivery take place "by mail." As noted above, the language of this claim contemplates any delivery of items using a public carrier, such as the United States Postal Service.

BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY

BB01299628

**BAKER BOTTS** LLP

*Opinion of Invalidity*                    60                    March 9, 2004
*Re: U.S. Patent No. 6,584,450*

### Claim 28 - Delivery Agent

> 28.    *A method as recited in claim 16, wherein items are provided to the customer by a delivery agent.*

Claim 28 provides a further limitation on the process for delivering items in Claim 16 using language mirroring exactly that recited in Claim 13. The interpretation and analysis of Claim 13 thus applies to Claim 28. Claim 28 details the delivery channel used for providing items to the customer, specifying that the delivery take place "by a delivery agent." As noted above, the language of this claim will likely include any particular type of agent delivery, but presumably will exclude courier or mail delivery. Thus, for example, the language of this claim contemplates any delivery of items using a common, non-public carrier, such as United Parcel Service.

### Claim 29 - Movies

> 29.    *A method as recited in claim 16, wherein:*
>
> *the one or more items are one or more movies,*
>
> *the one or more item selection criteria are one or more movie selection criteria,*
>
> *the step of receiving one or more item selection criteria that indicates one or more items that a customer desires to rent includes receiving one or more movie selection criteria that indicates one or more movies that a customer desires to rent,*
>
> *the step of providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria includes providing to the customer up to a specified number of the one or more movies indicated by the one or more movie selection criteria, and*
>
> *the step of in response to receiving any of the items provided to the customer, providing to the customer one or more other items indicated by the one or more item selection criteria, wherein a total number of items provided to the customer within a specified period of time does not exceed a specified limit includes in response to receiving any of the movies provided to the customer, providing to the customer one or more other movies indicated by the one or more movie selection criteria, wherein a total number of items provided to the customer within a specified period of time does not exceed a specified limit.*

**BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY**

BB01299629

**BAKER BOTTS** LLP

*Opinion of Invalidity*                           61                           March 9, 2004
*Re: U.S. Patent No. 6,584,450*

Claim 29 further limits the operation of Claim 16 using language similar to that recited in Claim 14. The interpretation and analysis of Claim 14 thus applies to Claim 29. Claim 29 tracks identically the steps of Claim 16, but further specifies that the items are "movies" and the selection criteria are "movie selection criteria." In the description, *Hastings* uses these terms expansively, and thus broad interpretations attach. Thus Claim 29 simply requires the identical scope of Claim 16, except restricted to movies. That is, Claim 29 requires receiving item selection criteria that identify movies in addition to two deliveries of movies based upon these selection criteria. Just as with Claim 16, Claim 29 triggers the second delivery of movies based upon the receipt of one or more of the movies provided in the first delivery.

**Claim 30 - Games**

30.     *A method as recited in claim 16, wherein:*

*the one or more items are one or more games,*

*the one or more item selection criteria are one or more game selection criteria,*

*the step of receiving one or more item selection criteria that indicates one or more items that a customer desires to rent includes receiving one or more game selection criteria that indicates one or more games that a customer desires to rent,*

*the step of providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria includes providing to the customer up to a specified number of the one or more games indicated by the one or more game selection criteria, and*

*the step of in response to receiving any of the items provided to the customer, providing to the customer one or more other items indicated by the one or more item selection criteria, wherein a total number of items provided to the customer within a specified period of time does not exceed a specified limit includes in response to receiving any of the games provided to the customer, providing to the customer one or more other games indicated by the one or more game selection criteria, wherein a total number of items provided to the customer within a specified period of time does not exceed a specified limit.*

Claim 30 further limits the operation of Claim 16 using language mirroring exactly that recited in Claim 15. The interpretation and analysis of Claim 15 thus applies to Claim 30. Claim 30 tracks identically the steps of Claim 16, but further specifies that the items are "games" and the selection criteria are "game selection criteria." Moreover, Claim 30 mirrors

BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY

BB01299630

**BAKER BOTTS** LLP

*Opinion of Invalidity*                    62                    March 9, 2004
*Re: U.S. Patent No. 6,584,450*

precisely the language of Claim 29, save for the use of "games" instead of "movies." Thus Claim 30 further limits the operation of Claim 16 by specifying that the items are "games" and the selection criteria are "game selection criteria." Claim 30, by limiting the items particularly to games, likely excludes other types of items such as movies and music.

Claim 30, therefore, simply requires the identical scope of Claim 16, except restricted to games. That is, Claim 30 requires receiving item selection criteria that identify games in addition to two deliveries of games based upon these selection criteria. Just as with Claim 16, Claim 30 triggers the second delivery of games based upon the receipt of one or more of the games provided in the first delivery.

### Claims 31-35

This claim set recites virtually identical limitations as compared with selected claims from Claims 1-15, with the exception that Claims 31-35 address movies in particular as opposed to items in general. For example, Claim 31 recites:

> 31.   *A method for renting movies to customers, the method comprising the computer-implemented steps of:*
>
> *receiving one or more movie selection criteria from a customer that indicates one or more movies that the customer desires to rent;*
>
> *providing to the customer up to a specified number of the one or more movies indicated by the one or more movie selection criteria; and*
>
> *in response to a return of any of the movies provided to the customer, providing to the customer one or more other movies indicated by the one or more movie selection criteria, wherein a total current number of movies provided to the customer does not exceed the specified number.*

This claim almost exactly mirrors the language of Claim 1, except for the use of the word movie (or movies) in place of the word item (or items). Claim 31 and Claim 1 also have two other minor variations. The first step of Claim 31 provides for receiving one or more movie selection criteria "from a customer." Claim 1 does not include this language. The second difference in language occurs in the final step. Claim 31 triggers in response to "a return" whereas Claim 1 triggers in response to "receiving." These minor variations, however, likely will not impact the scope of the claims.

In Claim 31, the replacement of items with movies provides for a method similar to that recited in dependent Claim 14. Thus the analysis provided with respect to Claim 14 applies similarly to Claim 31, especially in light of the Applicants' assertion that Claim 31

**BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY**

BB01299631

**BAKER BOTTS** LLP

*Opinion of Invalidity*                     63                     March 9, 2004
*Re: U.S. Patent No. 6,584,450*

includes similar limitations to those recited in Claims 1-15. Specifically, during prosecution of the *Hastings* Application, the Applicants stated:

> Claims 31-35 recite limitations similar to Claims 1-15, except in the context of a method for renting movies to customers.

*Second Response*, at page 27. In light of the claim language and the statements of the Applicants, Claim 31 will likely be found to have a scope and interpretation consistent with that of Claim 14.

Claims 32, 33, 34, and 35 track almost identically the language of Claims 4, 6, 12, and 13, once again with the exception of the term movies replacing the term items. However, because the use of movies in place of items does not impact the operation of these claims, this discussion will not reiterate the analysis provided above with respect to Claims 1-15. Instead, it should be apparent that these claims have a scope consistent with that of Claims 1-15, except with respect to the provision of movies in particular instead of items in general.

### Claims 36-50

Claims 36-50 track, with virtual identity, the limitations specified in Claims 1-15. Moreover, the *Hastings* Applicants asserted this correlation during prosecution, stating:

> Claims 36-50 recite limitations similar to Claims 1-15, except in the context of a computer-readable medium.

*Second Response*, at page 27. For example, Claim 36, the independent claim of this group, recites:

> 36.    *A computer-readable medium for renting items to customers, the computer-readable medium carrying one or more sequences of one or more instructions which, when executed by one or more processors, cause the one or more processors to perform the computer-implemented steps of:*
>
>> *receiving one or more item selection criteria that indicates one or more items that a customer desires to rent;*
>
>> *providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria; and*
>
>> *in response to receiving any of the items provided to the customer, providing to the customer one or more other items indicated by the one or more item selection criteria, wherein a total current number of items provided to the customer does not exceed the specified number.*

BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY

BB01299632

**BAKER BOTTS** LLP

These claims thus differ from Claims 1-15 by addressing a computer-readable medium instead of methods. *Hastings* broadly defines the term computer-readable medium, stating:

> The term "computer-readable medium" as used herein refers to any medium that participates in providing instructions of processor 704 for execution. Such a medium may take many forms, including but not limited to, non-volatile media, volatile media, and transmission media. Non-volatile media includes, for example, optical or magnetic disks, such as storage device 710. Volatile media includes dynamic memory, such as main memory 706. Transmission media includes coaxial cables, copper wire and fiber optics, including the wires that comprise bus 702. Transmission media can also take the form of acoustic or light waves, such as those generated during radio wave and infrared data communications.

Column 12, line 39-52. Thus the term computer-readable medium takes an expansive meaning. In light of the claim language and the statements of the Applicants, Claims 36-50 have a scope consistent with that of Claims 1-15.

### Claims 51-65 and 66-80

Claims 51-65 and 66-80 address the same limitations as Claims 1-15, except in the context of two different types of apparatus. The *Hastings* Applicants asserted this correlation during prosecution, stating:

> Claims 51-65 and 66-80 recite limitations similar to Claims 1-15, except in the apparatus context.

*Second Response*, at page 28. Claim 51, in particular, recites:

> 51.    *An apparatus for renting items to customers comprising:*
>
> *one or more processors; and*
>
> *a memory communicatively coupled to the one or more processors, the memory including one or more sequences of one or more instructions which, when executed by the one or more processors, cause the one or more processors to perform the steps of:*
>
> *receiving one or more item selection criteria that indicates one or more items that a customer desires to rent;*

**BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY**

BB01299633

**BAKER BOTTS** LLP

*Opinion of Invalidity*                                65                                March 9, 2004
*Re: U.S. Patent No. 6,584,450*

> *providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria; and*

> *in response to receiving any of the items provided to the customer, providing to the customer one or more other items indicated by the one or more item selection criteria, wherein a total current number of items provided to the customer does not exceed the specified number.*

Thus Claim 51, in addition to the limitations of Claim 1, introduces various physical elements, including one or more processors and a memory maintaining one or more sequences of instructions. The *Hastings* specification details particular computer system elements for an apparatus used to implement steps such as those detailed in Claims 1-15. *See* column 11, line 47 – column 13, line 54. As with other described elements and terms, *Hastings* describes broadly the types of elements contemplated for use within such an apparatus. Thus for purposes of this analysis, the terms processor and memory are interpreted broadly to encompass virtually any computing elements that may be used to implement a physical apparatus capable of performing processing and data storage. As such, the use of these elements does not impact the scope and interpretation of the remaining elements of Claims 51-65.

Similarly, Claims 66-80 attempt to cover an apparatus performing the steps as recited in Claims 1-15. For example, Claim 66 recites:

> 66.    *An apparatus for renting items to customers comprising an item rental mechanism configured to:*

> *receive one or more item selection criteria that indicates one or more items that a customer desires to rent;*

> *provide to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria; and*

> *in response to receiving any of the items provided to the customer, providing to the customer one or more other items indicated by the one or more item selection criteria, wherein a total current number of items provided to the customer does not exceed the specified number.*

While Claim 51 introduces specific physical elements, including processors and a memory, Claim 66 simply recites precisely the same steps of Claim 1, but alters the preamble to address an apparatus instead of a method. Claims 67-80 similarly mirror the language in Claims 2-15.

As discussed above, the apparatus form of these claims will likely not affect the scope or interpretation of the steps that mirror exactly those in Claims 1-15. Therefore, Claims 66-80 will have a scope consistent with that of Claims 1-15.

BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY

BB01299634

**BAKER BOTTS** LLP

*Opinion of Invalidity*                                66                            March 9, 2004
*Re: U.S. Patent No. 6,584,450*

### Claims 81-95

Claims 81-95 mirror almost identically the language of Claims 16-30. With respect to these claims, the *Hastings* Applicants represented:

> Claims 81-95 recite limitations similar to Claims 16-30, except in the context of a computer-readable medium.

*Second Response*, at page 28. For example, Claim 81, the independent claim of this group, recites:

> 81.     *A computer-readable medium for renting items to customers, the computer-readable medium carrying one or more sequences of one or more instructions which, when executed by one or more processors, cause the one or more processors to perform the computer-implemented steps of:*
>
> *receiving one or more item selection criteria that indicates one or more items that a customer desires to rent;*
>
> *providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria; and*
>
> *in response to receiving any of the items provided to the customer, one or more item delivery criteria being satisfied, providing to the customer one or more other items indicated by the one or more item selection criteria, wherein a total number of items provided to the customer within a specified period of time does not exceed a specified limit.*

In addition to the differences between Claims 81-95 and 16-30 relating to method versus computer-readable medium claims, Claim 81 also includes an odd phrase not included in Claim 1. As noted in the discussion of the *Hastings* prosecution, the Applicants amended the claims such that every independent claim in the *Hastings* application required a triggering event of receiving previously delivered items as opposed to the broad general requirement of satisfying item delivery criteria. However, in an apparent mistake, the Applicants failed to remove the clause "one or more item delivery criteria being satisfied" from Claim 81. Thus Claim 81, unlike any of the other independent claims, includes this dangling clause. Based upon the prosecution history and upon the narrowing limitation made to this step, this step has a scope consistent with that provided for the similar language provided in Claim 16.

Thus in light of the claim language and the statements of the Applicants, Claims 81-95 have a scope consistent with that of Claims 16-30.

BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY

BB01299635

**BAKER BOTTS** LLP

*Opinion of Invalidity*                                    67                              March 9, 2004
*Re: U.S. Patent No. 6,584,450*

### Claims 96-100

Claims 96-100 provide for a computer-readable medium having a program corresponding to the methods recited in Claims 31-35, which as previously noted, correspond to selected claims in Claims 1-15.  With respect to these claims, the *Hastings* Applicants represented:

> Claims 96-100 recite limitations similar to Claims 31-35 except in the context of a computer-readable medium.

*Second Response*, at page 28.  For example, Claim 81, the independent claim of this group, recites:

> 96.    *A computer-readable medium for renting movies to customers, the computer-readable medium carrying one or more sequences of one or more instructions which, when executed by one or more processors, cause the one or more processors to perform the computer-implemented steps of:*
>
> *receiving one or more movie selection criteria from a customer that indicates one or more movies that the customer desires to rent;*
>
> *providing to the customer up to a specified number of the one or more movies indicated by the one or more movie selection criteria; and*
>
> *in response to a return of any of the movies provided to the customer, providing to the customer one or more other movies indicated by the one or more movie selection criteria, wherein a total current number of movies provided to the customer does not exceed the specified number.*

In light of the claim language and the statements of the Applicants, Claims 96-100 have a scope consistent with that of Claim 31-35 (and by extension, Claims 1-15).

BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY

BB01299636

**BAKER BOTTS** LLP

*Opinion of Invalidity*                              68                              March 9, 2004
*Re: U.S. Patent No. 6,584,450*

## IV.  DESCRIPTION OF PRIOR ART REFERENCES

Our initial research uncovered a number of relevant references, including the *Reference Guide* and the *Functional Requirements*. These related publications each detail automated systems for providing subscription services to the blind and physically handicapped. In particular, each of these documents details guidelines and requirements for implementing computer-based programs for handling circulation of various types of media to and from subscribers. A copy of the *Reference Guide* is attached as Exhibit E, and a portion of the *Functional Requirements* is attached as Exhibit F.

The United States government, in 1931, established the National Library Service for the Blind and Physically Handicapped ("NLS/BPH") as a component of the Library of Congress. The NLS/BPH administers a program that loans recorded and braille books and magazines, music scores in braille and large print, and specially designed playback equipment to residents of the United States who are unable to read or use standard print materials because of visual or physical impairment. The NLS/BPH administers the program nationally and coordinates service through a network of cooperating libraries. Cooperating libraries in the various states, the District of Columbia, Puerto Rico, Guam, and the Virgin Islands actually provide direct service to eligible individuals and institutions. These regional libraries are subsidized by federal funding (via the Pratt-Smoot Act of 1931) in combination with state funding allocations. Therefore, taxpayer money funds the services subscribed to by qualifying individuals.

As computers became available, a number of the cooperating libraries deployed computer-based systems that automated many of the circulation functions of the libraries. At some point in the late 1970's or early 1980's, the NLS/BPH decided to fund a comprehensive study of existing automated systems and to create a detailed resource guide for planning and implementing an automated circulation system. The *Reference Guide* resulted from this effort.

A.    The *Reference Guide*

The NLS/BPH contracted with the Cuadra Associates, Inc. for the preparation and publication of the *Reference Guide*. The Cuadra Associates undertook a six-month study of existing circulation systems and general requirements for implementing circulation systems to service blind and physically handicapped individuals. The Cuadra Associates compiled the information from this research and published the *Reference Guide* on May 15, 1981, some nineteen years before the filing date of *Hastings*. The Cuadra Associates then distributed this guide to regional libraries around the nation.[19] Because the *Reference Guide* was published and

---

[19] Copies of the *Reference Guide* are still maintained and readily accessible today. For example, administrators of the Texas State Library and Archives quickly identified and provided copies of the *Reference Guide* in response to general inquiries regarding the Texas automated circulation system.

**BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY**

BB01299637

**BAKER BOTTS** LLP

*Opinion of Invalidity*                  69                  March 9, 2004
*Re: U.S. Patent No. 6,584,450*

distributed to experts and libraries almost two decades before the filing date of *Hastings*, the *Reference Guide* qualifies as prior art under 35 U.S.C. § 102(b).

The *Reference Guide* states its purpose in an introduction:

> In establishing this study, it was the intention of NLS/BPH to provide its network libraries with a tool that library staff could use in automation planning, whether they elected to develop their own system or to purchase one of the commercially available systems that have been developed for use in libraries of this type.

*Reference Guide*, at page 1. The *Reference Guide* continues, stating:

> A primary use of this Guide, as foreseen by NLS/BPH, is to facilitate communications in future automation projects between library and data processing personnel, regardless of whether currently available systems are being evaluated or a new system is being designed. In interpreting this objective, we have neither prescribed a single, ideal system, nor represented the requirements associated with a single design choice. The complexity of library operation and the dynamic state of the automation art preclude any step-by-step "cookbook" approach to automation. It has been our objective, instead, to identify and describe a master set of major circulation system requirements, with a number of design considerations, and to illustrate various implementations of these requirements among currently operating systems. Library personnel will be able to use this set of requirements as a reference tool, to help them identify and select those requirements that are applicable to their own environment and service objectives, and to use the terminology and definitions as a departure point in working with data processing personnel to establish their own system specifications and/or to reflect them accurately in a request for proposal or in a request for bid.

*Reference Guide*, at pages 1-2. Thus the *Reference Guide* not only details existing and contemplated functions, but also invites designers to modify and combine these teachings as appropriate to create suitable systems.

**B.    The *Functional Requirements* and The *Texas Program***

As described above, regional libraries in the NLS/BPH are responsible for delivering services directly to individual qualifying participants. In Texas, the Texas State Library and Archives Commission in Austin serves as the regional library and provides services to qualifying individuals (the "*Texas Program*"). As of the publication date of the *Reference Guide* in 1981, the *Texas Program* relied upon punch card computer technology purchased in the

BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY

BB01299638

**BAKER BOTTS** LLP

*Opinion of Invalidity*                                   70                              March 9, 2004
*Re: U.S. Patent No. 6,584,450*

1970's. *See Reference Guide*, at A-38. By the mid 1980's, the administrators of the *Texas Program* set about upgrading the automated circulation system.

Before implementing a new computerized system, the administrators of the *Texas Program* drew up a comprehensive set of requirements based upon general guidelines established in the *Reference Guide* and the specific needs of the *Texas Program*. The resulting document, the *Functional Requirements*, was written in November 1987 and revised in December 1987. This document reflects the operation of the computerized system that was implemented to upgrade the automated circulation system of the *Texas Program*. Moreover, copies of the *Functional Requirements* are available from the *Texas Program* administrators. Just as with brochures or other information detailing the operation of publicly used systems, the *Functional Requirements* qualifies as prior art under 35 U.S.C. § 102(b), both as a publication and as direct evidence of a system in use.

BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY

BB01299639

**BAKER BOTTS** LLP

*Opinion of Invalidity*                              71                              March 9, 2004
*Re: U.S. Patent No. 6,584,450*

## V. INVALIDITY ANALYSIS

Based upon the detailed analysis of *Hastings* and the construction of its claims, we now examine the claims in light of prior art references. In this case, this includes references that were not considered by the Examiner during prosecution of the *Hastings* Application. In examining the validity of *Hastings*, we address each and every claim by applying the requirements of 35 U.S.C. § 102 and/or 35 U.S.C. § 103. As noted above, anticipation under Section 102 requires that a single prior art reference disclose, either expressly or inherently, each and every element of the claimed invention (or that a single prior art device or practice embodies each and every element). A finding of obviousness under Section 103 requires that one or more references, properly combined together, teach or suggest all elements of a claim.

In addressing the validity of claims we should first examine, if possible, how or why the Patent Office allowed the claims. In this case, the Examiner provided clear direction for the allowance of the claims in the *Hastings* Application, stating:

> The claims are allowable over the prior art of record because the prior art of record does not show or teach a method of renting items to a customer wherein the customer indicates a number of items they desire to rent, providing the customer with a specified number of those rental items, then providing the customer with additional rental items upon return of the originally provided rental items. The closest prior art *is* the Netflix web site, with was discussed in earlier Office Actions.

*Notice of Allowance*, at page 2 (sic). Therefore, the Examiner allowed all claims in Hastings, believing that the prior art did not show:

1. A customer indicating a number of items they desire to rent;

2. Providing the customer with a specified number of those rental items; and

3. Providing the customer with additional rental items upon return of the originally provided rental items.

Yet either one of the *Reference Guide* or the *Functional Requirements* unmistakably show these elements. Clearly the Examiner would not have allowed the current claims of *Hastings* under the reasoning reflected in the *Notice of Allowance* had he known of these references. While this sheds some light on the potential validity of the claims, it does not, however, substitute for a complete analysis of the claims in light of the prior art. The analysis below analyzes in detail the claims of *Hastings* in light of these prior art references that were not considered during examination.

BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY

BB01299640

**BAKER BOTTS** ᴸᴸᴾ

*Opinion of Invalidity*                    72                    March 9, 2004
*Re: U.S. Patent No. 6,584,450*

While we have reviewed the entire contents of the *Reference Guide* and the *Functional Requirements*, the following discussion will focus only on excerpts from these references that have particular relevance to aspects of the claims of *Hastings*. For the sake of relative brevity, we have not included duplicative quotations from the references. Therefore, while both the *Reference Guide* and the *Functional Requirements* disclose similar aspects of systems, much of the analysis will focus only on the teachings of the *Reference Guide*.

In the analysis that follows, we show that the *Reference Guide* alone can invalidate all of the claims in *Hastings*. The *Functional Requirements* may also be used to show such invalidity. To further support our conclusions of invalidity, the *Reference Guide* and the *Functional Requirements* may be combined as appropriate to support rejections under 35 U.S.C. § 103 as well. This combination is appropriate, since the *Reference Guide* invites individual developers to take, modify and adapt its teachings, and since the *Functional Requirements* implements a particular instantiation of a program as generally described in the *Reference Guide*. Moreover, the U.S. government provided the *Reference Guide* to the developers of the *Functional Requirements* to aid in development of the *Functional Requirements*.

**Claim 1 – Max Out**

*1.      A method for renting items to customers, the method comprising the computer-implemented steps of:*

*receiving one or more item selection criteria that indicates one or more items that a customer desires to rent;*

*providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria; and*

*in response to receiving any of the items provided to the customer, providing to the customer one or more other items indicated by the one or more item selection criteria, wherein a total current number of items provided to the customer does not exceed the specified number.*

The preamble of this claim requires that the method comprise "computer-implemented" steps for renting items to customers.[20] The *Reference Guide* provides a comprehensive overview of techniques for implementing computer-based applications to help facilitate lending of media to borrowers. For example, the *Reference Guide* states a purpose of providing "a tool that library staff could use in automation planning." *Reference Guide*, at Preface. The *Reference Guide* later articulates exactly the intention of "automation," stating:

---

[20] Here the language of the preamble is not mirrored in the claim elements, nor did the Applicants rely on the preamble during prosecution. Thus the preamble may not be a limitation.

BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY

BB01299641

**BAKER BOTTS** LLP

*Opinion of Invalidity*                73                March 9, 2004
*Re: U.S. Patent No. 6,584,450*

> Through computer-assisted circulation, it is possible to achieve objectives
> not possible within a manual operating environment, particularly one that
> is strained to capacity.

*Reference Guide*, at page 55. Thus the *Reference Guide* explicitly contemplates computer-implemented methods. Similarly, the *Functional Requirements* details particular functional aspects for a computer application that implements a specific program as generally described by the *Reference Guide*.

**A.** *receiving one or more item selection criteria that indicates one or more items that a customer desires to rent*

This step requires the receipt of information identifying any number of goods that a customer wishes to temporarily borrow. The *Reference Guide* teaches a "service profile" associated with each borrower. The *Reference Guide* provides the following high-level table of information contained within an example service profile:

```
1.2   SERVICE PROFILE INFORMATION

      1.2.01   Language(s)
      1.2.02   Reading level/grade level
      1.2.03   Subject interests
      1.2.04   Exclusion criteria
      1.2.05   Media
      1.2.06   Maximum number of books allowed
      1.2.07   Minimum number of requests needed to maintain level
               of service
      1.2.08   Service type
      1.2.09   Circulation quantities
      1.2.10   Request-only service
      1.2.11   Automatic selection acceptance
      1.2.12   Date of last service
      1.2.13   Number of items received
```

*Reference Guide*, at page 115. The *Reference Guide* describes this profile, stating:

> The elements of the Service Profile record are designed to provide data on
> how many and what types of books a borrower wants to receive, as well as
> on when the borrower wants to receive them. The Service Profile data are
> used in several circulation functions, including selection, check-out, and
> check-in.

**BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY**

BB01299642

**BAKER BOTTS** LLP

*Opinion of Invalidity*                                    74                          March 9, 2004
*Re: U.S. Patent No. 6,584,450*

*Id.* Later, the *Reference Guide* describes system requirements for receiving and maintaining such information from borrowers, stating:

> 5.1 The system must accept and store relevant data on titles that are requested by borrowers and on titles that are selected for borrowers.
>
> 5.2 The system must provide assistance to staff members in the identification of potentially suitable titles for borrowers who have titles selected on their behalf.
>
> 5.3 The system must provide for the creation and maintenance of a Request File--data on requests and selections--for use by the system at Check-Out.

*Reference Guide*, at page 177. Therefore, the system detailed in the *Reference Guide* clearly receives selection criteria identifying one or more items.

In the *Reference Guide*, it could be argued that the items in question are not items that a customer desires to "rent," since the *Reference Guide* details subscription services provided free of charge to the borrowers. This line of reasoning fails for at least three reasons. First, Claim 1 does not require payment as a condition for receiving the items. Second, the *Hastings* specification describes its services as predicated on payment for a subscription, not payment for individual rentals. The *Reference Guide* also details subscription services. In both systems, the subscription entitles the subscriber to the rental of individual items without payment for each rental. Third, while the *Reference Guide* states that the customer obtains the items free of charge to the customer, there are, without question, costs associated with the provision of these services for the blind. The government pays for these costs. There is no claim element that requires a subscription paid for by the named subscriber or by some other person. Thus, the argument that the *Reference Guide* does not anticipate the claimed system should be regarded as elevating form over substance; the *Reference Guide* teaches receiving one or more item selection criteria that indicates one or more items that a customer desires to obtain from a rental system.[21]

Similarly, the *Functional Requirements* permits a patron to specify particular items to borrow as well as to specify interest areas for automatic selection. *Functional Requirements*, at C.01, C.02, C.05, and C.06. The *Functional Requirements* details two types of contemplated techniques for identifying items, reciting:

> Request - this type of circulation is dependent on patron's communicating with the library and ordering books of their own choosing. Additionally

---

[21] At the very least, any difference between renting and borrowing is simply an obvious variation. A subscription service necessarily must be funded. Charging subscribers is one well known solution for funding. As an example, libraries often charge usage fees as a predicate for borrowing books.

**BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY**

BB01299643

**BAKER BOTTS** LLP

*Opinion of Invalidity*                               75                          March 9, 2004
*Re: U.S. Patent No. 6,584,450*

staff can order books for patrons under situations where the patron has
stated specific preferences. This readership has priority in circulation.

Automatic - this type of circulation is based on the interest areas found in
the patron file. Patrons who have requested automatic selection have
browsed through the interest areas which are of most interest to them. For
example, a patron may select Westerns and Romances; this patron would
only receive title which DBPH has assigned descriptors of Western or
Romance.

*Functional Requirements*, at C.01 (sic). Therefore, the *Functional Requirements* also
teaches receiving one or more item selection criteria that indicates one or more items that
a customer desires to rent.

> **B.**     *providing to the customer up to a specified number of the one or more*
>            *items indicated by the one or more item selection criteria*

The second step of Claim 1 requires the delivery of a limited number of the goods
identified by the customer in the first step. Specifically, this step requires delivery of only up to
a specified number of the items. The *Reference Guide* teaches:

An administrative limit is generally set to establish a ceiling on the
number of books that can be checked out to a borrower at one time.

*Reference Guide*, at page 121. And:

The number of books that are to be assigned for check-out to borrowers is
generally subject to some constraint: the maximum (or minimum) number
of books that a borrower wants to have at any one time or the maximum
number of books that the library allows a borrower to have at one time.

*Reference Guide*, at page 192. To select these books, the *Reference Guide* relies upon the
information submitted by the borrower. For example, the *Reference Guide* discloses servicing of
a "request file" listing books that a borrower wishes to receive. *Reference Guide*, at page 185.
Moreover, the *Reference Guide* teaches automatic selection based upon the general information
provided, stating:

The system must perform automatic selection of titles, according to a set
of pre-established principles, that are suitable for each borrower
designated to receive automatic selection service.

*Reference Guide*, at page 181. Therefore, the *Reference Guide* teaches providing to the customer
up to a specified number of the one or more items indicated by the one or more item selection
criteria.

BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY

BB01299644

**BAKER BOTTS** LLP

*Opinion of Invalidity*                                   76                            March 9, 2004
*Re: U.S. Patent No. 6,584,450*

        Similarly, the *Functional Requirements* teaches selecting items according to a patron's interests and providing up to a specified number of selected items. Specifically, the *Functional Requirements* discloses:

> Each patron who is in the automatic queue should have a book selection attempted for them. The system should look at the interest areas, determine the next title to be selected, compare it with the per copy file to determine availability and assign the title if copies are available.

> The system should run down each patron's record selecting titles to be checked until the automatic quota for the media has been filled.

> The system should checkout titles according to the goals specified by each interest area and the interest area from which the check-out which returned originated.

*Functional Requirements*, at C.06 (sic). Therefore, the *Functional Requirements* also teaches providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria.

    C.    *in response to receiving any of the items provided to the customer, providing to the customer one or more other items indicated by the one or more item selection criteria, wherein a total current number of items provided to the customer does not exceed the specified number*

        The third step of Claim 1 details a second delivery of items identified by the same selection criteria as used in the first delivery. Moreover, this second delivery triggers on the return of items from the first delivery and restricts the number of items provided using the limit applied in the first delivery. The *Reference Guide* contemplates a number of different type of service modes and provides a table that lists a number of sample "service types." This table provides:



BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY

BB01299645

**BAKER BOTTS** LLP

*Opinion of Invalidity*                              77                              March 9, 2004
*Re: U.S. Patent No. 6,584,450*

*Reference Guide*, at page 123. This claim implicates the teachings of the *Reference Guide* with respect to the "turn-around" service. The *Reference Guide* describes this service:

> Turn-Around Service.  Provides for circulation of a new item to a borrower for each checked-out item that is returned by that borrower.

*Reference Guide*, at page 61 (underline in original). And:

> [W]ith Turn-Around Service borrowers, the number of books to be sent at a given time matches the number of returned items, unless provision is made for some exception.

*Reference Guide*, at page 192. In the *Reference Guide*, this service once again provides for the selection and delivery of items according to the information already received from the borrower. Therefore, the *Reference Guide* teaches, in response to receiving any of the items provided to the customer, providing to the customer one or more other items indicated by the one or more item selection criteria, wherein a total current number of items provided to the customer does not exceed the specified number.

Similarly, the *Functional Requirements* details a turn-around style service.  The *Functional Requirements* teaches:

> Each day new patrons are added to the system, old patron reactivate, and currently active patrons return books.  Each action should require that an attempt at checking books out occur for each patron affected.

*Functional Requirements*, at C.04 (sic). The method that the *Functional Requirements* recites for checking out these books, as described above with respect to the first delivery, provides for selecting these books based on the previously provided information. Moreover, the method provides for limiting the number of books selected based upon a quota. Therefore, the *Functional Requirements* teaches, in response to receiving any of the items provided to the customer, providing to the customer one or more other items indicated by the one or more item selection criteria, wherein a total current number of items provided to the customer does not exceed the specified number.

Thus to summarize, this claim requires three steps: the receipt of information identifying items (step 1) and two subsequent deliveries of items indicated by that information (steps 2 and 3). The first delivery restricts the number of items provided using a limit. The second delivery triggers on the return of items from the first delivery, and also restricts the number of items provided using the limit applied in the first delivery. The *Reference Guide* and the *Functional Requirements* each taken alone expressly teach all elements of Claim 1 in detail. Therefore, Claim 1 is invalid under 35 U.S.C. § 102.

BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY

BB01299646

**BAKER BOTTS** LLP

### Claim 2 - Time-based Item Limit

> 2.      *A method as recited in claim 1, wherein a total number of items provided to the customer within a specified period of time does not exceed a specified limit.*

Claim 2 requires, in addition to the requirements of Claim 1, a limit on the number of items provided to the customer within a specified period of time. As shown in the sample service type table reproduced above, the *Reference Guide* contemplates a number of different service methods, including the turn-around service and a number of time-based (Calendar-Service) servicing schedules. The *Reference Guide* discloses aspects of these two types of service arrangements when discussing the numbers of books to provide, stating:

> The number of books that are to be assigned for check-out to borrowers is generally subject to some constraint: the maximum (or minimum) number of books that a borrower wants to have at any one time or the maximum number of books that the library allows a borrower to have at one time. These constraints can vary within a library by borrower or by service type. For example, with Turn-Around Service borrowers, the number of books to be sent at a given time matches the number of returned items, unless provision is made for some exception. For Calendar-Service borrowers, a minimum, a maximum, a fixed or a per-borrower variable number can be established and stored within the borrower's record. However, a limit in the number of books that a borrower can have at one time needs to be established for Calendar-Service borrowers, to ensure that some items are being returned while other are being mailed.

*Reference Guide*, at page 192. Therefore, for Calendar-Service borrowers, the *Reference Guide* contemplates various limits on the number of books that may be simultaneously checked-out to a borrower.

As a simple example, consider a weekly service borrower permitted to have a maximum number of three books and currently with three books checked out. After receiving returned books, the *Reference Guide* system will replace each of the received books at the beginning of the next week. This maps to Claim 2 having values of: the "specified number" and the "specified limit" both equal to three, the "specified period of time" equal to one week, and three items provided in the first delivery.

The *Reference Guide* thus teaches all elements of Claim 2. Therefore, Claim 2 is invalid under 35 U.S.C. § 102.

BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY

BB01299647

**BAKER BOTTS** LLP

*Opinion of Invalidity*                           79                              March 9, 2004
*Re: U.S. Patent No. 6,584,450*

### Claim 3 - Rollover

> 3.     *A method as recited in claim 2, further comprising if the total number of items provided to the customer within the specified period of time is less than the specified limit, then increasing the specified limit for another specified period of time.*

Claim 3 provides for rollover of unused portions of the specified limit into another time period. Claim 3 provides this rollover if the customer uses less than the specified limit of items during the specified time period. The *Reference Guide*, as previously noted, includes descriptions of existing systems. One such system, when failing to select up to the specified limit, "identifies borrowers who did not receive the expected number of books after [automatic selection] and generates a listing." *Reference Guide*, at page 189. Thus the *Reference Guide* describes the precise condition of Claim 3. With respect to this same condition, the *Reference Guide* also teaches:

> Another consideration in this area is the need for the system to provide feedback to the library staff, interactively at the terminal or in the generation of a listing, to identify those borrowers who were not assigned the expected number of items. In some systems, this problem will automatically trigger the run of automatic selection; in others, a report is generated for staff review and follow up action.

*Reference Guide*, at page 193. The *Reference Guide* further provides, with respect to the maximum number of books allowed, that:

> [T]he systems generally permit a library staff member to override the limit on a discretionary basis.

*Reference Guide*, at page 121. Therefore, the *Reference Guide* teaches all elements of Claim 3. Specifically, the *Reference Guide* teaches all of the elements of Claim 2, further comprising if the total number of items provided to the customer within the specified period of time is less than the specified limit, then increasing the specified limit for another specified period of time. Claim 3 is thus invalid under 35 U.S.C. § 102.

### Claim 4 - Desired Order

> 4.     *A method as recited in claim 1, wherein*
>
>        *the one or more item selection criteria indicates a desired order for the one or more items that a customer desires to rent,*

**BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY**

BB01299648

**BAKER BOTTS** LLP

> the step of providing to the customer up to a specified number of
> the one or more items indicated by the one or more item selection criteria
> includes providing to the customer up to a specified number of the one or
> more items indicated by the one or more item selection criteria in the
> desired order indicated by the item selection criteria, and

> the step of providing to the customer one or more other items
> indicated by the one or more item selection criteria includes providing to
> the customer one or more other items indicated by the one or more item
> selection criteria in the desired order indicated by the one or more item
> selection criteria.

Claim 4 further limits Claim 1 with the requirement of ordered delivery of items.
The *Reference Guide* provides for ordered delivery with several different mechanisms. As
previously noted, the *Reference Guide* contemplates a request file that lists items that a borrower
wishes to receive. With respect to this list, the *Reference Guide* states:

> The order in which titles are stored on the request list can affect the order
> in which they are processed during the check-out function.

*Reference Guide*, at page 127. Moreover, the *Reference Guide* contemplates maintaining a
request date for each element in this list. The *Reference Guide* explains:

> The date on which a request or a reserve is entered into the system is used
> in several ways, including the following: to establish a processing order at
> check-out . . . ...

*Id.*

The *Reference Guide* also contemplates handling delivery of magazines and
provides an entire section (at pages 163 to 169) detailing data elements for handling magazines.
Moreover, the *Reference Guide* also details borrower information for handling ordered magazine
requests, detailing the following information for such a borrower:

> <u>Issue First Received by Borrower and Date Subscription Began</u> . . . The
> Issue First Received serves to indicate with which issue (not necessarily
> the current issue) a new subscription is to begin.

*Reference Guide*, at page 135 (underline in original).

The *Functional Requirements* also contemplates ordered delivery of items. With
respect to delivery of magazines, the *Functional Requirements* states:

BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY

BB01299649

**BAKER BOTTS** ᴸᴸᴾ

*Opinion of Invalidity*                    81                    March 9, 2004
*Re: U.S. Patent No. 6,584,450*

> The system should be able to maintain the sequencing necessary to ensure that the patron continues to get the issues required, i.e. if a patron is due for the December issue of a magazine, and January issue is available, and there are no copies available of December issue, then patrons should be in queue for January issue.

*Functional Requirements*, at C.08 (sic).

Therefore, either one of the *Reference Guide* and the *Functional Requirements* teach all elements of Claim 4. Claim 4 is thus invalid under 35 U.S.C. § 102.

### Claim 5 - Skip Unavailable

> 5.      *A method as recited in claim 4, further comprising if a particular item from the one or more items indicated by the one or more item selection criteria is not available, then providing another item from the one or more items based upon the desired order indicated by the one or more item selection criteria.*

Claim 5 further limits Claim 4 by requiring that, if a particular item in the ordered list is not available, then the method provides another item based on the indicated order. Thus, for example, Claim 5 provides for skipping unavailable items in the ordered list. As noted with respect to Claim 4, the *Reference Guide* contemplates delivering items to borrowers based upon an ordered request list. Moreover, in discussing the check-out of books, the *Reference Guide* states:

> The system must determine for each title the availability of a copy, in an appropriate medium, for assignment to a particular borrower.

*Reference Guide*, at page 175. Also, in detailing the steps used by an existing system, the *Reference Guide* details various criteria for skipping entries on a request list, including a "SKIP IF NONE AVAILABLE" criterion. The *Reference Guide* explains the meaning of this criterion, stating:

> Skip any title for which there are no copies available in a medium acceptable to the borrower

*Reference Guide*, at page 209. Therefore, the *Reference Guide* contemplates skipping unavailable items in an ordered list.

Similarly, the *Functional Requirements* contemplates skipping unavailable items in an ordered list. For example, with respect to magazines, the *Functional Requirements* states:

**BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY**

BB01299650

**BAKER BOTTS** LLP

*Opinion of Invalidity*                              82                                March 9, 2004
*Re: U.S. Patent No. 6,584,450*

> The system should be able to maintain the sequencing necessary to ensure that the patron continues to get the issues required, i.e. if a patron is due for the December issue of a magazine, and January issue is available, and there are no copies available of December issue, then patrons should be in queue for January issue.

*Functional Requirements*, at C.08 (sic).

Therefore, either one of the *Reference Guide* and the *Functional Requirements* teach all elements of Claim 5. Claim 5 is thus invalid under 35 U.S.C. § 102.

### Claim 6 - Preferred Item Attributes

6.      *A method as recited in claim 1, wherein*

*the one or more item selection criteria specifies one or more preferred item attributes,*

*the step of providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria includes automatically selecting and providing to the customer up to a specified number of one or more items that have one or more of the one or more preferred item attributes specified by the one or more item selection criteria, and*

*the step of providing to the customer one or more other items indicated by the one or more item selection criteria includes automatically selecting and providing to the customer one or more other items that have one or more of the one or more preferred item attributes specified by the one or more item selection criteria.*

Claim 6 further limits Claim 1 by requiring automated selection of particular items that satisfy attributes identifying general types of items. Both the *Reference Guide* and the *Functional Requirements* directly address this functionality. The *Reference Guide* details specific techniques for enabling "Computer-Assisted Selection," with the aptly titled section on pages 181 to 184. A general requirement provided in this selection states:

> The system must perform automatic selection of titles, according to a set of pre-established principles, that are suitable for each borrower designated to receive automatic selection service.

BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY

BB01299651

**BAKER BOTTS** LLP

*Opinion of Invalidity*                                    83                        March 9, 2004
*Re: U.S. Patent No. 6,584,450*

*Reference Guide*, at page 181. To enable this automated selection, the *Reference Guide* contemplates selection criteria that indicate preferred item attributes. For example, consider the criteria listed in the "Illustrative Subject Categories" table reproduced below.

Exhibit 20. Illustrative Subject Categories

| Cincinnati Subject Categories (hierarchical classification scheme) | Pennsylvania Subject Categories Adult - 001-086 Juvenile - 087-127 |
|---|---|
| 010  Adventure (fiction) | 001  Adventure |
|    011  Animal stories | 002  Animal stories |
|    012  Classical (romance) | 003  Art |
|    013  Flight (aviation) | 004  Best sellers |
|    014  Man and nature | 005  Biography |
|    015  Sea | 006  Black literature |
|    016  . | 007  Business |
|    017  . | 008  Careers and vocations |
|    018  . | 009  Classics |
|    019  Other | 010  Current Affairs |
|    ... | 011  Entertainers |
| | 012  Family stories |
| 060  Classics (fiction) | 013  Gothic novels |
|    061  Pre-20th century | 014  Handicaps |
|    062  20th century | 015  Health |
|    063  Russian | 016  Historical novels |
|    064  (Newbury) Award winners | 017  History |
|    065  . | 018  Homemaking |
|    066  . | 019  How-to books |
|    067  . | 020  Humor |
|    068  . | |
|    069  Other | |

*Reference Guide*, at page 118. The *Reference Guide* also details specific data elements that may help in maintaining preferred attributes for use during selections. The exhibit of sample elements reproduced below details an example of the data elements that support automated selection.

BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY

BB01299652

**BAKER BOTTS** LLP

*Opinion of Invalidity*                    84                    March 9, 2004
*Re: U.S. Patent No. 6,584,450*

Exhibit 45.  Summary of Major Data Elements Used in Selection

| DATA ELEMENTS | | | NOTES |
|---|---|---|---|
| Name | Bor- rower | Book | |
| Borrower ID | x | - | Unique code that identifies borrower |
| Book ID | - | x | Unique code that identifies book title (and medium) |
| Author | - | x | |
| Language | x | x | Language of book must match a language accepted by borrower |
| Reading Grade/Level | x | x | Reading/grade level of book must be appropriate for borrower |
| Subject inter- ests/indicators | x | x | Book must be in one of borrower's spe- cified subject interest areas |
| Exclusion cri- teria/indica- tors | x | x | Book must not contain characteristics (e.g., violence, foreign accented nar- rator) that borrower finds objectionable |
| Media | x | x | Title must be available in a media accepted by borrower |
| Request-only borrowers | x | - | Books must not be selected for re- quest-only borrowers |
| Automatic se- lection ac- cepted/allowed | x | x | Automatic selection must be performed only for those borrowers who accept system-originated requests and on those books for which staff permit automatic selection |
| Notes | x | x | Staff should review supplementary in- formation on borrower service param- eters and book characteristics |
| Re-issue infor- mation | - | x | Latest version of a re-issued book must be selected; title must not be selected if borrower has read an earlier or later version of a re-issued book |
| Same title in different medium | - | x | Title must not be selected if borrower had read it in another medium |
| Number of copies available | - | x | Only titles with copies available must be selected |

*Reference Guide*, at page 183.  Therefore, the *Reference Guide* teaches all elements of Claim 6, and Claim 6 is thus invalid under 35 U.S.C. § 102.

BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY

BB01299653

**BAKER BOTTS** LLP

### Claim 7 - Item Rental Queue

7.      *A method as recited in claim 1, further comprising:*

*establishing, based upon the one or more item selection criteria, an item rental queue for the customer, wherein the item rental queue contains one or more entries that specify the one or more items that the customer desires to rent; and*

*in response to receiving back any of the items provided to the customer, selecting the one or more other items from the item rental queue.*

Claim 7 further limits the operation of Claim 1 by requiring the establishment and servicing of an item rental queue. Claim 7 thus implicates a particular list of items in some order to be delivered. As discussed above with respect to Claim 4, the *Reference Guide* contemplates establishing a request list for each borrower based on requested items. The *Reference Guide* further discloses techniques for automatically populating the request list, stating:

A system must perform the necessary matches automatically ("Automatic Selection") using multiple criteria from a borrower's interest profile to identify a set of suitable titles to be recorded for that borrower in a Request File (or assigned for immediate check-out).

*Reference Guide*, at page 182. This request list, whether manually or automatically populated, may then function as a queue that is serviced in each subsequent delivery of items. Therefore, the *Reference Guide* teaches all elements of Claim 7, and Claim 7 is thus invalid under 35 U.S.C. § 102.

### Claim 8 - Customer Notification

8.      *A method as recited in claim 1, further comprising in response to receiving a customer notification, providing to the customer a second set of one or more other items indicated by the one or more item selection criteria.*

Claim 8 adds a step to Claim 1 that provides for a third delivery of items (second set of other items) indicated by the item selection criteria. This third delivery of items triggers upon a customer notification. The *Reference Guide* describes a number of different mechanisms whereby a borrower can contact a service to request delivery of additional items. One such mechanism is defined by the "Will-Call Service." The *Reference Guide* describes this service type, stating:

**BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY**

BB01299654

**BAKER BOTTS** LLP

*Opinion of Invalidity*                              86                              March 9, 2004
*Re: U.S. Patent No. 6,584,450*

> <u>Will-Call Service.</u>  The provision of one or more items, to be circulated only when the borrower contacts the library for service.

*Reference Guide*, at page 61 (underline in original).  The *Reference Guide*, in further describing the Will-Call Service, discloses:

> The Will-Call service borrowers and on-site borrowers also pose another set of considerations relating to system requirements for flexibility and multiple modes of operation. . . . [Will-Call and other borrowers] can be thought of as having on-demand service needs.  Therefore, the library staff will want to consider whether the system is to handle groups of borrowers who are due for service <u>and</u> single borrowers in one-time or exception situations.  If on-demand service is to be provided, then the system must also provide for an online, interactive means for the library staff to request that the selection (as appropriate) and check-out functions be executed.

*Reference Guide*, at page 62.  Therefore, the *Reference Guide* contemplates on-demand requests acting as exceptions that permit item deliveries outside the scope of typical deliveries, with these deliveries triggered on customer notifications.

In addition, the *Reference Guide* permits borrowers to specify the number of books that they wish to receive, stating:

> The number of books that are to be assigned for check-out to borrowers is generally subject to some constraint: the maximum (or minimum) number of books that a borrower wants to have at any one time or the maximum number of books that the library allows a borrower to have at one time.

*Reference Guide*, at page 192.  Thus a borrower may provide a notification indicating an increased number of books to receive.  In response to such a notification, the *Reference Guide* system may then provide a delivery of additional books to satisfy the increased limit.  Therefore, the *Reference Guide* teaches all elements of Claim 8, and Claim 8 is thus invalid under 35 U.S.C. § 102.

**Claim 9 – Expiration of Time**

> 9.      *A method as recited in claim 1, further comprising in response to expiration of a specified amount of time, providing to the customer a second set of one or more other items indicated by the one or more item selection criteria.*

Claim 9 adds a step to Claim 1 that provides for a third delivery of items (second set of other items) indicated by the item selection criteria.  This third delivery of items triggers

**BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY**

BB01299655

**BAKER BOTTS** LLP

*Opinion of Invalidity*                    87                    March 9, 2004
*Re: U.S. Patent No. 6,584,450*

upon the expiration of a specified amount of time. The *Reference Guide*, as discussed above, details a calendar service whereby borrowers may receive books according to any specified frequency. *See Reference Guide*, at page 190. This inherently involves the delivery triggering upon the expiration of a specified period of time since, for example, a weekly service will inherently trigger a new delivery at the expiration of each week. Therefore, the *Reference Guide* teaches all elements of Claim 9, and Claim 9 is thus invalid under 35 U.S.C. § 102.

### Claim 10 - Specified Date

> 10.    A method as recited in claim 1, further comprising in response to a specified date being reached, providing to the customer a second set of one or more other items indicated by the one or more item selection criteria.

Claim 10 adds a step to Claim 1 that provides for a third delivery of items (second set of other items) indicated by the item selection criteria. This third delivery of items triggers upon a specified date being reached. The *Reference Guide*, as discussed above, details a calendar service whereby borrowers may receive books according to any specified frequency. *See Reference Guide*, at page 190. Therefore, the *Reference Guide* teaches all elements of Claim 10, and Claim 10 is thus invalid under 35 U.S.C. § 102.

### Claim 11 - Receipt of Fee

> 11.    A method as recited in claim 1, further comprising in response to a specified fee being received, providing to the customer a second set of one or more other items indicated by the one or more item selection criteria.

Claim 10 adds a step to Claim 1 that provides for a third delivery of items (second set of other items) indicated by the item selection criteria. This third delivery of items triggers upon receipt of a specified fee. The *Reference Guide* does not expressly detail techniques for handling payments. However, the requirement of payments or fees to release additional requested materials is well know in the art. For example, library fines typically must be paid before additional check-outs may take place. Similarly, in movie rental systems, such as those provided by Blockbuster, borrowers have for decades been required to pay for lost, damaged, or late items before renting additional items.[22] The *Reference Guide* does provide for tracking of lost, damaged, or stolen items, stating:

> In records maintained at the per-medium title level, one or more of the following changes will need to be made: . . . decrement the number of

---

[22] *Hastings* concedes this aspect of operation as prior art in the "Background of the Invention" section, at column 1, lines 21-23.

BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY

BB01299656

**BAKER BOTTS** LLP

> copies owned for a given title, to reflect those lost, stolen, or otherwise not
> available; and increment the number of copies that have been stolen, lost,
> damaged, etc.

*Reference Guide*, at page 203. While the *Reference Guide* acknowledges the potential for these events, it does not specify particular actions to take in response. However, there is inherently a fee associated with the loss or destruction of items, and this fee must be borne by either the lender or the borrower. Therefore, the *Reference Guide* inherently discloses the use of a fee as a triggering event.

Moreover, as noted above, libraries, movie rental companies, and any number of other organizations have for years charged customers for any number of different reasons, often requiring payment as a necessary condition for any additional borrowing. Therefore, it would have been obvious to one of skill in the art to require users of a system described by the *Reference Guide* to pay a fee before receiving additional items. One could argue against the obviousness of such a fee based upon secondary considerations, such as commercial success, long-felt but unsolved needs, failure of others, or unexpected results. In the present case, Netflix' relative commercial success may qualify as evidence for secondary considerations. However, the relative success of Netflix does not provide even remotely persuasive evidence that the addition of a fee to an existing system resulted in this success. The addition of the fee-based trigger is therefore obvious, and Claim 11 is invalid under 35 U.S.C. § 102 and/or 35 U.S.C. § 103.

### Claim 12 - Mail

> 12.    A method as recited in claim 1, wherein items are provided to the
> customer by mail.

Claim 12 further requires that the two deliveries of items in Claim 1 take place by mail, presumably requiring the use of a public carrier, such as the United States Postal Service. The *Reference Guide* defines a number of requirements for check-out procedures, including:

> The system must print cards, in an order that facilitates retrieval by library
> staff members of items from the shelves for use in mailing to and from a
> borrower.

*Reference Guide*, at page 196. In the library services for the blind, the mailing services are provided at no charge by the United States Postal Service. Therefore, the *Reference Guide* teaches all elements of Claim 12, and Claim 12 is thus invalid under 35 U.S.C. § 102.

BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY

BB01299657

**BAKER BOTTS** LLP

*Opinion of Invalidity*                    89                    March 9, 2004
*Re: U.S. Patent No. 6,584,450*

### Claim 13 - Delivery Agent

*13.     A method as recited in claim 1, wherein items are provided to the customer by a delivery agent.*

Claim 13 further requires that the two deliveries of items in Claim 1 take place by delivery agent, presumably requiring the use of a common, non-public carrier, such as United Parcel Service. As discussed above with respect to Claim 12, the service described by the *Reference Guide* relies upon postage free mailings using the United States Postal Service. However, this choice of carriers is dictated simply by the government subsidized nature of the shipments. It is common knowledge that multiple different options are available for shipments, and thus the use of a delivery agent in place of mail delivery represents simply an obvious variation on the disclosure of the *Reference Guide*. With respect to secondary considerations, it should be noted that Netflix relies on U.S. mail, and not a delivery agent. Thus Netflix' relative commercial success cannot be attributed to this aspect of delivery. Moreover, the simple alteration of the delivery channel in this system does not raise serious questions regarding other secondary considerations. The use of a delivery agent is thus obvious, and Claim 13 is invalid under at least 35 U.S.C. § 103.

### Claim 14 - Movies

*14.     A method as recited in claim 1, wherein:*

*the one or more items are one or more movies,*

*the one or more item selection criteria are one or more movie selection criteria,*

*the step of receiving one or more item selection criteria that indicates one or more items that a customer desires to rent includes receiving one or more movie selection criteria that indicates one or more movies that a customer desires to rent,*

*the step of providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria includes providing to the customer up to a specified number of the one or more movies indicated by the one or more movie selection criteria, and*

*the step of in response to receiving any of the items provided to the customer, providing to the customer one or more other items indicated by the one or more item selection criteria, wherein a total current number of items provided to the customer does not exceed the specified number includes in response to receiving any of the movies provided to the*

**BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY**

BB01299658

**BAKER BOTTS** LLP

> *customer, providing to the customer one or more other movies indicated by the one or more movie selection criteria, wherein a total current number of movies provided to the customer does not exceed the specified number.*

Claim 14 further limits the operation of Claim 1 by specifying that the items of Claim 1 are movies.  The *Reference Guide* describes the circulation systems with respect to a variety of different media types.  For example, the *Reference Guide*, at pages 120 to 121, details media such as disks, tapes, cassettes, and Braille books.  Moreover, the *Reference Guide* describes the flexibility of systems to handle any combination of different media.  As an example, the *Reference Guide* mentions a studied system, stating:

> For example, in the Alabama system, a set of two-character subfields is used, each of which represents one of the four media that Alabama circulates.

*Reference Guide*, at page 121.  Thus while the *Reference Guide* does not expressly call for the use of movies, such a use is inherently disclosed by the teachings of the *Reference Guide*. Moreover, even if not deemed to be inherently disclosed, the use of a system as detailed in the *Reference Guide* for the delivery of movies is simply an obvious replacement of one media type with another.  Claim 14 is thus invalid under 35 U.S.C. § 102 and/or 35 U.S.C. § 103.

### Claim 15 - Games

> 15.    *A method as recited in claim 1, wherein:*
>
> *the one or more items are one or more games,*
>
> *the one or more item selection criteria are one or more game selection criteria,*
>
> *the step of receiving one or more item selection criteria that indicates one or more items that a customer desires to rent includes receiving one or more game selection criteria that indicates one or more games that a customer desires to rent,*
>
> *the step of providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria includes providing to the customer up to a specified number of the one or more games indicated by the one or more game selection criteria, and*
>
> *the step of in response to receiving any of the items provided to the customer, providing to the customer one or more other items indicated by*

BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY

BB01299659

**BAKER BOTTS** LLP

*Opinion of Invalidity*                              91                              March 9, 2004
*Re: U.S. Patent No. 6,584,450*

> *the one or more item selection criteria, wherein a total current number of*
> *items provided to the customer does not exceed the specified number*
> *includes in response to receiving any of the games provided to the*
> *customer, providing to the customer one or more other games indicated by*
> *the one or more game selection criteria, wherein a total current number of*
> *games provided to the customer does not exceed the specified number.*

Claim 14 further limits the operation of Claim 1 by specifying that the items of Claim 1 are games. As noted above, the *Reference Guide* contemplates systems handling any number of different types of media. Thus while the *Reference Guide* does not expressly call for the use of games, such a use is inherently disclosed by the teachings of the *Reference Guide*. Moreover, even if not deemed to be inherently disclosed, the use of a system as detailed in the *Reference Guide* for the delivery of games is simply an obvious replacement of one media type with another. Claim 15 is thus invalid under 35 U.S.C. § 102 and/or 35 U.S.C. § 103.

### Claim 16 - Time-based Item Limit

> 16.    *A method for renting items to customers, the method comprising*
> *the computer-implemented steps of:*
>
>    *receiving one or more item selection criteria that indicates one or*
> *more items that a customer desires to rent;*
>
>    *providing to the customer up to a specified number of the one or*
> *more items indicated by the one or more item selection criteria; and*
>
>    *in response to receiving any of the items provided to the customer,*
> *providing to the customer one or more other items indicated by the one or*
> *more item selection criteria, wherein a total number of items provided to*
> *the customer within a specified period of time does not exceed a specified*
> *limit.*

Claim 16 provides a preamble and series of steps identical to those in Claim 1, with the exception of the final clause. Like Claim 1, Claim 16 thus requires three steps: the receipt of information identifying items (step 1) and two subsequent deliveries of items indicated by that information (steps 2 and 3). The only operational difference, as noted above, results from the final clause, which recites, "wherein a total number of items provided to the customer within a specified period of time does not exceed a specified limit." Therefore, Claim 16 limits the total number of items, and thus the number of items provided in the second delivery, by a specified limit of items that may be provided within a period of time.

BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY

BB01299660

**BAKER BOTTS** LLP

*Opinion of Invalidity*                                    92                        March 9, 2004
*Re: U.S. Patent No. 6,584,450*

As noted above with respect to Claim 2, the *Reference Guide* contemplates a number of different service methods, including calendar or time-based service arrangements. The *Reference Guide* provides that:

> For Calendar-Service borrowers, a minimum, a maximum, a fixed or a per-borrower variable number can be established and stored within the borrower's record. However, a limit in the number of books that a borrower can have at one time needs to be established for Calendar-Service borrowers, to ensure that some items are being returned while other are being mailed.

*Reference Guide*, at page 192. As demonstrated in the example shown with respect to Claim 2, these limits provide for the operation as required by the language of Claim 16. The *Reference Guide* thus teaches all elements of Claim 16. Therefore, Claim 16 is invalid under 35 U.S.C. § 102.

### Claim 17 - Max Out

> 17.    A method as recited in claim 16, wherein the total current number of items provided to the customer does not exceed the specified number.

As discussed above, Claim 17 further limits Claim 16 to provide the precise limitations recited in Claim 2. The examination of Claim 2 demonstrates that the *Reference Guide* teaches each and every one of these elements. Thus by similar reasoning, the *Reference Guide* teaches all elements of Claim 17. Therefore, Claim 17 is invalid under 35 U.S.C. § 102.

### Claim 18 - Rollover

> 18.    A method as recited in claim 16, further comprising if the total number of items provided to the customer within the specified period of time is less than the specified limit, then increasing the specified limit for another specified period of time.

Claim 18 adds a step to Claim 16 with language mirroring exactly that recited in Claim 3. The analysis above thus controls. This analysis demonstrates that the *Reference Guide* teaches each and every element of Claim 3. By similar reasoning, the *Reference Guide* teaches all elements of Claim 18. Therefore, Claim 18 is invalid under 35 U.S.C. § 102.

**BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY**

BB01299661

**BAKER BOTTS** LLP

### Claim 19 - Desired Order

19.    *A method as recited in claim 16, wherein*

*the one or more item selection criteria indicates a desired order for the one or more items that a customer desires to rent,*

*the step of providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria includes providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria in the desired order indicated by the one or more item selection criteria, and*

*the step of providing to the customer one or more other items indicated by the one or more item selection criteria includes providing to the customer one or more other items indicated by the one or more item selection criteria in the desired order indicated by the one or more item selection criteria.*

Claim 19 adds further limitations to Claim 16 with language mirroring exactly that recited in Claim 4. The analysis above thus applies to Claim 19. This analysis demonstrates that the *Reference Guide* teaches each and every element of Claim 4. Therefore, based upon similar reasoning as provided with respect to Claim 4, Claim 19 is invalid under 35 U.S.C. § 102.

### Claim 20 - Skip Unavailable

20.    *A method as recited in claim 19, further comprising if a particular item from the one or more items indicated by the one or more item selection criteria is not available, then providing another item from the one or more items based upon the desired order indicated by the one or more item selection criteria.*

Claim 20 further limits Claim 19 with the introduction of a step mirroring exactly the step recited in Claim 5. The analysis above thus controls, which demonstrates that the *Reference Guide* teaches each and every element of Claim 5. By similar reasoning, the *Reference Guide* teaches all elements of Claim 20. Therefore, Claim 20 is invalid under 35 U.S.C. § 102.

**BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY**

BB01299662

**BAKER BOTTS** LLP

*Opinion of Invalidity*                    94                    March 9, 2004
*Re: U.S. Patent No. 6,584,450*

### Claim 21 - Preferred Item Attributes

21.    *A method as recited in claim 16, wherein*

*the one or more item selection criteria specifies one or more preferred item attributes,*

*the step of providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria includes automatically selecting and providing to the customer up to a specified number of one or more items that have one or more of the one or more preferred item attributes specified by the one or more item selection criteria, and*

*the step of providing to the customer one or more other items indicated by the one or more item selection criteria includes automatically selecting and providing to the customer one or more other items that have one or more of the one or more preferred item attributes specified by the one or more item selection criteria.*

Claim 21 establishes further limitations upon the item selection criteria of Claim 16, using language mirroring exactly that recited in Claim 6. The analysis above thus controls, which demonstrates that the *Reference Guide* teaches each and every element of Claim 6. By similar reasoning, the *Reference Guide* teaches all elements of Claim 21. Therefore, Claim 21 is invalid under 35 U.S.C. § 102.

### Claim 22 - Item Rental Queue

22.    *A method as recited in claim 16, further comprising:*

*establishing, based upon the one or more item selection criteria, an item rental queue for the customer, wherein the item rental queue contains one or more entries that specify the one or more items that the customer desires to rent; and*

*in response to receiving back any of the items provided to the customer, selecting the one or more other items from the item rental queue.*

Claim 22 further limits the operation of Claim 16 with the introduction of "an item rental queue for the customer." This language mirrors exactly the language recited in Claim 7. Thus the analysis above controls, which demonstrates that the *Reference Guide* teaches each

BLOCKBUSTER INC. CONFIDENTIAL -- DO NOT COPY

BB01299663

**BAKER BOTTS** LLP

*Opinion of Invalidity*                             95                        March 9, 2004
*Re: U.S. Patent No. 6,584,450*

and every element of Claim 7. By similar reasoning, the *Reference Guide* teaches all elements of Claim 22. Therefore, Claim 22 is invalid under 35 U.S.C. § 102.

### Claim 23 – Customer Notification

> 23.    *A method as recited in claim 16, further comprising in response to receiving a customer notification, providing to the customer a second set of one or more other items indicated by the one or more item selection criteria.*

Claim 23 adds a step to those provided in Claim 16 with language mirroring exactly that recited in Claim 8. The analysis above thus controls, which demonstrates that the *Reference Guide* teaches each and every element of Claim 8. By similar reasoning, the *Reference Guide* teaches all elements of Claim 23. Therefore, Claim 23 is invalid under 35 U.S.C. § 102.

### Claim 24 – Expiration of Time

> 24.    *A method as recited in claim 16, further comprising in response to expiration of a specified amount of time, providing to the customer a second set of one or more other items indicated by the one or more item selection criteria.*

Claim 24, like Claim 23, adds another delivery to the two deliveries specified in Claim 16. Claim 24 mirrors exactly the language provided in Claim 9. Thus the analysis above controls, which demonstrates that the *Reference Guide* teaches each and every element of Claim 9. By similar reasoning, the *Reference Guide* teaches all elements of Claim 24. Therefore, Claim 24 is invalid under 35 U.S.C. § 102.

### Claim 25 – Specified Date

> 25.    *A method as recited in claim 16, further comprising in response to a specified date being reached, providing to the customer a second set of one or more other items indicated by the one or more item selection criteria.*

Claim 25, like Claims 23 and 24, adds another delivery to the two deliveries specified in Claim 16. Claim 25 mirrors exactly the language provided in Claim 10. Thus the analysis above controls, which demonstrates that the *Reference Guide* teaches each and every element of Claim 10. By similar reasoning, the *Reference Guide* teaches all elements of Claim 25. Therefore, Claim 25 is invalid under 35 U.S.C. § 102.

**BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY**

BB01299664

**BAKER BOTTS** LLP

*Opinion of Invalidity*                    96                    March 9, 2004
*Re: U.S. Patent No. 6,584,450*

### Claim 26 – Receipt of Fee

> 26.    *A method as recited in claim 16, further comprising in response to a specified fee being received, providing to the customer a second set of one or more other items indicated by the one or more item selection criteria.*

Claim 26, like the previous three claims, adds another delivery to the two deliveries specified in Claim 16. Claim 26 mirrors exactly the language provided in Claim 11. Thus the analysis above controls. This analysis demonstrates that the use of a fee is either inherent or is merely an obvious variation of the teachings of the *Reference Guide*, and that the *Reference Guide* thus teaches or suggests all elements of Claim 11. By similar reasoning, the *Reference Guide* teaches or suggests all elements of Claim 26. Therefore, Claim 26 is invalid under 35 U.S.C. § 102 and/or 35 U.S.C. § 103.

### Claim 27 – Mail

> 27.    *A method as recited in claim 16, wherein items are provided to the customer by mail.*

Claim 27 provides a further limitation on the process for delivering items in Claim 16 using language mirroring exactly that recited in Claim 12. The analysis above thus controls, which demonstrates that the *Reference Guide* teaches each and every element of Claim 12. By similar reasoning, the *Reference Guide* teaches all elements of Claim 27. Therefore, Claim 27 is invalid under 35 U.S.C. § 102.

### Claim 28 – Delivery Agent

> 28.    *A method as recited in claim 16, wherein items are provided to the customer by a delivery agent.*

Claim 28 provides a further limitation on the process for delivering items in Claim 16 using language mirroring exactly that recited in Claim 13. The analysis above thus controls, which demonstrates that the *Reference Guide* teaches each and every element of Claim 13. By similar reasoning, the *Reference Guide* teaches or suggests all elements of Claim 28. Therefore, Claim 28 is invalid under 35 U.S.C. § 103.

**BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY**

BB01299665

**BAKER BOTTS** LLP

*Opinion of Invalidity*                              97                              March 9, 2004
*Re: U.S. Patent No. 6,584,450*

### Claim 29 - Movies

29.     *A method as recited in claim 16, wherein:*

*the one or more items are one or more movies,*

*the one or more item selection criteria are one or more movie selection criteria,*

*the step of receiving one or more item selection criteria that indicates one or more items that a customer desires to rent includes receiving one or more movie selection criteria that indicates one or more movies that a customer desires to rent,*

*the step of providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria includes providing to the customer up to a specified number of the one or more movies indicated by the one or more movie selection criteria, and*

*the step of in response to receiving any of the items provided to the customer, providing to the customer one or more other items indicated by the one or more item selection criteria, wherein a total number of items provided to the customer within a specified period of time does not exceed a specified limit includes in response to receiving any of the movies provided to the customer, providing to the customer one or more other movies indicated by the one or more movie selection criteria, wherein a total number of items provided to the customer within a specified period of time does not exceed a specified limit.*

Claim 29 further limits the operation of Claim 16 using language mirroring exactly that recited in Claim 14. The analysis above thus controls, which demonstrates that the *Reference Guide* teaches each and every element of Claim 14. By similar reasoning, the *Reference Guide* teaches all elements of Claim 29. Therefore, Claim 29 is invalid under 35 U.S.C. § 102.

### Claim 30 - Games

30.     *A method as recited in claim 16, wherein:*

*the one or more items are one or more games,*

*the one or more item selection criteria are one or more game selection criteria,*

**BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY**

BB01299666

**BAKER BOTTS** LLP

> *the step of receiving one or more item selection criteria that indicates one or more items that a customer desires to rent includes receiving one or more game selection criteria that indicates one or more games that a customer desires to rent,*
>
> *the step of providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria includes providing to the customer up to a specified number of the one or more games indicated by the one or more game selection criteria, and*
>
> *the step of in response to receiving any of the items provided to the customer, providing to the customer one or more other items indicated by the one or more item selection criteria, wherein a total number of items provided to the customer within a specified period of time does not exceed a specified limit includes in response to receiving any of the games provided to the customer, providing to the customer one or more other games indicated by the one or more game selection criteria, wherein a total number of items provided to the customer within a specified period of time does not exceed a specified limit.*

Claim 30 further limits the operation of Claim 16 using language mirroring exactly that recited in Claim 15. The analysis above thus controls, which demonstrates that the *Reference Guide* teaches each and every element of Claim 15. By similar reasoning, the *Reference Guide* teaches all elements of Claim 30. Therefore, Claim 30 is invalid under 35 U.S.C. § 102.

### Claims 31-35

As noted above, Claims 31-35 recite virtually identical limitations as compared with selected claims from Claims 1-15, with the exception that Claims 31-35 address movies in particular as opposed to items in general. Moreover, the Applicants asserted during prosecution that these claims recite limitations similar to Claims 1-15, except in the context of a method for renting movies to customers. Since Claim 14 recites a method with respect to movies, Claims 31-35 simply restate limitations already analyzed above with respect to Claims 1-15. As all of Claims 1-15 are invalid in light of the *Reference Guide* and/or the *Functional Requirements*, Claims 31-35 are similarly invalid in light of the *Reference Guide* and/or the *Functional Requirements* 35 under U.S.C. § 102 and/or 35 U.S.C. § 103.

### Claims 36-50

As noted above, Claims 36-50 track, with virtual identity, the limitations specified in Claims 1-15. Claims 36-50, however, address these limitations in the context of a computer-

**BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY**

BB01299667

**BAKER BOTTS** LLP

*Opinion of Invalidity*                        99                        March 9, 2004
*Re: U.S. Patent No. 6,584,450*

readable medium, as was asserted by the Applicants during prosecution. The *Reference Guide* and the *Functional Requirements* each disclose systems for implementation in software for execution on computer systems. Therefore, even if the preamble is considered a limitation, each of these two references inherently teaches techniques to provide any disclosed limitations using one or more sequences of instructions embodied in a computer-readable medium and capable of execution by a computer system. Thus as Claims 1-15 are all invalid in light of the *Reference Guide* and/or the *Functional Requirements*, Claims 31-35 are similarly invalid in light of the *Reference Guide* and/or the *Functional Requirements* under 35 U.S.C. § 102 and/or 35 U.S.C. § 103.

### Claims 51-65 and 66-80

Claims 51-65 and 66-80 address the same limitations as Claims 1-15, except in the context of two different types of apparatus. Also, the *Hastings* Applicants asserted this correlation of the claims during prosecution. The *Reference Guide* and the *Functional Requirements* each disclose systems for implementation in software for execution on computer systems. The *Reference Guide* also includes an appendix that, in part, details equipment used in existing computer systems that have implemented various circulation systems. For example, at appendix A-38, the study of the existing Texas program revealed:

The system was developed by State Library data processing specialists, who worked with Regional Library staff and IBM consultants. During its first four years of operation, the Library ran the system off-site, sharing an IBM mainframe computer owned by another state agency. In 1975, the State Library acquired its own IBM mainframe computer system, which includes:

- IBM 360/40 computer (384K memory), with DOS operating system

- 18 IBM 2314 disk units (25.7MB each)

- 2 IBM 2401 9-track tape drives (1600 bpi)

- 12 Telex 277D CRT terminals (baud rate not available)

- 1 IBM 1403 printer (1100 lines per minute)

- 1 IBM 2540 card reader (1000 cards per minute)

The circulation system is programmed in COBOL and IBM Assembly. It requires 532K memory and 350MB disk storage to operate efficiently.

BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY

BB01299668

**BAKER BOTTS** LLP

*Reference Guide*, at A-38. The *Reference Guide* thus explicitly contemplates physical elements such as those called for in the claims of *Hastings*. The apparatus form of these claim will likely not affect the scope or interpretation of the steps that mirror exactly those in Claims 1-15. Therefore, Claims 51-65 and 66-80, just like Claims 1-15, are invalid in light of the *Reference Guide* and/or the *Functional Requirements* under 35 U.S.C. § 102 and/or 35 U.S.C. § 103.

### Claims 81-95

Claims 81-95 mirror almost identically the language of Claims 16-30, and the *Hastings* Applicants represented the similarity of limitations in these claim groups during prosecution. Also, as discussed above, the minor variation of claim language resulting from an apparent mistake will likely not affect the scope or interpretation of the claims. Therefore, Claims 81-95, just like Claims 16-30, are invalid in light of the *Reference Guide* and/or the *Functional Requirements* under 35 U.S.C. § 102 and/or 35 U.S.C. § 103.

### Claims 96-100

Claims 96-100 provide for a computer-readable medium having a program corresponding to the method recited in Claims 31-35 (and Claims 31-35, as previously noted, correspond to selected claims in Claims 1-15). The *Reference Guide* and the *Functional Requirements* each disclose systems for implementation in software for execution on computer systems. Therefore, even if the preamble is considered a limitation, each of these two references inherently teaches techniques to provide any disclosed limitations using one or more sequences of instructions embodied in a computer-readable medium and capable of execution by a computer system. Thus as Claims 1-15 and 31-35 are all invalid in light of the *Reference Guide* and/or the *Functional Requirements*, Claims 96-100 are similarly invalid in light of the *Reference Guide* and/or the *Functional Requirements* under 35 U.S.C. § 102 and/or 35 U.S.C. § 103.

BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY

**BAKER BOTTS** LLP

*Opinion of Invalidity*                    101                    March 9, 2004
*Re: U.S. Patent No. 6,584,450*

# VI. CONCLUSION

   *Hastings* issued on an application filed in 2000. The Examiner reviewed this application almost exclusively with respect to two tangentially related patent references. In allowing the *Hastings* Application, the Examiner identified specific elements of the claims that he believed were not shown by the prior art. The *Reference Guide* and the *Functional Requirements*, published in 1981 and 1987, respectively, each expressly teach these specific elements identified by the Examiner. Further, the *Reference Guide* and the *Functional Requirements* teach all important disclosed and claimed aspects of *Hastings*. We conclude, based on the detailed analysis above, that a court and/or properly instructed jury would find all claims of *Hastings* invalid under 35 U.S.C. § 102 and/or 35 U.S.C. § 103 based upon the *Reference Guide* and/or the *Functional Requirements*.

   We reach this conclusion only after performing a detailed review of *Hastings*, its prosecution file history, and relevant prior art both cited and not cited during prosecution. Despite this conclusion, Blockbuster should know that litigation is, by its nature, filled with uncertainty, and it is impossible to predict its outcome with precise accuracy. Therefore, while we believe that a court and/or properly instructed jury will agree with our opinion that the *Hastings* claims are invalid, we cannot guarantee that result.

   This opinion considers only the issued claims of Unites States Patent No. 6,584,450. There may be, now or in the future, related domestic and foreign counterpart applications and issued patents that relate to *Hastings*.[23] However, the conclusions as to the invalidity of claims in *Hastings* may apply to claims of similar scope in related domestic and foreign counterpart applications and issued patents. Please notify us of any such related applications or patents of which you become aware so that we may properly analyze any relevant claims.

   It is important to note that Blockbuster did not ask for, nor did we perform, any analysis regarding the scope of claims in patent references uncovered during our search. Blockbuster did not ask for, nor did we perform, a comprehensive search of prior art. Moreover, even given unlimited time and budget, an exhaustive search of the prior art is virtually impossible for many reasons, such as due to destroyed publications that cannot be replaced or the inability to retrieve or evaluate prior art references located in foreign countries. However, the speed and ease with which we uncovered the *Reference Guide* and the *Functional Requirements*, as well as the known existence of similar automated media lending programs in at least 49 other states, strongly suggest that many other invalidating references exist. Therefore, we ask that you make us aware of any such information that you may discover and permit us to update this opinion as appropriate.

---

[23] This is unlikely, however, since the U.S. Patent and Trademark Office has no record of any pending applications claiming the benefit of *Hastings*, and since statements made during prosecution of *Hastings* likely preclude any foreign patent rights.

**BLOCKBUSTER INC. CONFIDENTIAL -- DO NOT COPY**

BB01299670

**BAKER BOTTS** LLP

*Opinion of Invalidity*                    102                    March 9, 2004
*Re: U.S. Patent No. 6,584,450*

        This letter is furnished to you solely for the benefit of Blockbuster's management in connection with its internal consideration as to whether any claims of *Hastings* are valid. The opinions expressed in this letter may not be used or relied upon for any other purpose and or by any other person or entity without our prior written consent. This opinion should not be used to make investment decisions.

        This document constitutes an attorney-client communication, and the information and opinions are subject to a claim of attorney-client privilege. This document also contains information that may be subject to a claim of work product immunity. Additionally, this document contains information that is considered confidential and proprietary. Please understand that disclosure of this letter to third parties may waive the attorney-client privilege as to the issues addressed in this letter and could subject you to various kinds of liability. Thus to protect the privileged and confidential status of this document, we advise you to limit distribution of this document in rendering legal advice to only those employees of Blockbuster who will rely on this opinion in formulating business decisions.

        Sincerely,

*BAKER BOTTS, LLP*

BAKER BOTTS L.L.P.

cc: Edward B. Stead, Executive Vice President, General Counsel and Executive Vice President Business Development (w/ exhibits)

BLOCKBUSTER INC. CONFIDENTIAL – DO NOT COPY

BB01299671