# EXHIBIT B

Dockets.Justia.com

# BLAKELY SOKOLOFF TAYLOR & ZAFMAN

### A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

TELEPHONE (408) 720-8300

FACSIMILE  (408) 720-8383

BSTZ_MAIL@BSTZ.COM

WWW.BSTZ.COM

INTELLECTUAL PROPERTY LAW

SILICON VALLEY

1279 OAKMEAD PARKWAY
SUNNYVALE, CALIFORNIA 94085-4040

OTHER OFFICES

LOS ANGELES, CA
ORANGE COUNTY/COSTA MESA, CA
DENVER, CO
PORTLAND/BEAVERTON, OR
SEATTLE, WA

March 29, 2007

Shane Evangelist
Senior V.P. and General Manager
Blockbuster Online
1201 Elm Street
Dallas, TX  75275

*Attorney-Client Privileged Communication*

RE:    U.S. Patent No. 7,024,381 entitled "Approach for Renting Items to Customers."

Dear Shane:

In response to your request, we conducted an analysis on the validity of U.S. Patent No. 7,024,381 (hereinafter "the '381 patent"). For the reasons set forth below, it is our opinion that all claims of the '381 patent are invalid.

We reached this conclusion after reviewing the '381 patent, the prosecution history of the '381 patent, the Claim Construction Order from the ongoing litigation[1] on the '381 patent and prior art, including prior art not considered by the U.S. Patent and Trademark Office ("PTO") during the prosecution of the '381 patent. A summary of the '381 patent and the prior art is provided below. For your reference, a copy of the '381

---

[1] *Netflix Inc. v. Blockbuster Inc.*, No. C 06 2361 (N.D. Calif.).

BB01309443

# BLAKELY SOKOLOFF TAYLOR & ZAFMAN

### A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

patent is attached as Appendix A. When issued, the '381 patent indicated Netflix, Inc. as its owner.

It should be noted that this letter does not necessarily discuss every reason why the claims of the '381 patent are invalid. Once we concluded that a claim was invalid for one or more reasons, we did not perform additional analysis. Thus, there may be other reasons why the claims of the '381 patent are invalid or not enforceable. Furthermore, we did not consider infringement issues.

## I.    OVERVIEW OF THE PRIOR ART TO THE '381 PATENT

The '381 patent describes methods for renting items over a computer network. In particular, the claims of the '381 patent are directed to a computerized method for renting movies to customers.   An overview of the prior art is helpful for an understanding of our opinion and frames our opinion in the context of the prior art as it then existed.

Before April 28, 2000, the earlier filing date that the '381 application[2,3] is entitled to, renting items to customers through a mail order method was well known.[4]   In addition, prior to April 28, 2000, network-based computer systems were used to automate the process of renting items to customers. One patent ('594 patent)[5] describes a network-based computer system for the "rental, purchase, use, attendance, or trying

---

[2] The patent application resulting in the '381 patent is referred to as the '381 application.
[3] The '381 application was filed on May 14, 2003 and is a continuation of an earlier-filed application, filed on April 28, 2000. The '381 application is entitled to the filing date of the earlier-filed patent application (April 28, 2000). Thus, for determining what is prior art, we used April 28, 2000 as the critical date.
[4] See, e.g., Appendix B.
[5] U.S. Patent 5,898,594.

*Attorney-Client Privileged Communication*

BB01309444

# BLAKELY SOKOLOFF TAYLOR &ZAFMAN

A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

of things or activities made available through an electronic catalog. The '594 patent states:

> At step 206, the customer either designates selections for rental or purchase from the reservation or shopping list, returns to the category select screen 115 to select more items, or completes the transaction.[6]

It goes on to state how "the invention can be applied to services available on public networks such as the internet and the world wide web."[7]   In another prior art document[8], Web pages are illustrated with data fields for entering titles of books to rent online. This page is set forth later in this opinion.

In fact, Netflix provided an Internet-based movie rental service more than a year prior to April 28, 2000. (Since it was more than a year before April 28, 2000, Netflix's own activities are prior art to the '381 patent.)  Netflix began renting DVDs over the Internet in 1998 using a "pay-per-rental" model.

One mail order process of particular relevance is described in *Learning is Easy . . . With Audio Cassettes*, Tape Rental Library, Inc. (hereinafter "Tape Rental").[9] Tape Rental describes a process for renting audio cassettes in which a customer is initially provided with a catalog of available audio cassettes.[10] The customer submits a numbered list of cassettes that they wish to rent (referred to as a "Time Saver List") to the rental service. The rental service then selects cassettes from the list and mails the cassettes to the customer.  As the customer returns each cassette, the rental service mails a new cassette

---

[6] '594 patent, column 10, line 66 – column 11, line 2.
[7] '594 patent, column 12, lines 22-24.
[8] *Books on Tape® On-Line Order Form* (1997) (Bates Stamped BB00012211-18 in the current litigation).
[9] Appendix B; we do not know the earliest date that this service was available. We rely on the investigation made by your litigation counsel (Alschuler Grossman LLP) that this service is prior art to the '381 patent.
[10] Appendix B, p. 1.

-3-

*Attorney-Client Privileged*
*Communication*

BB01309445

# BLAKELY SOKOLOFF TAYLOR & ZAFMAN
### A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

from the list to the customer. If a particular cassette on the list is not available, the next cassette from the list is selected.

Tape Rental also allows a customer to enter into an annual subscription service under which the user pays an annual fee and is permitted to retain up to two cassettes at any given time.[11] When the user mails back one or two cassettes, the rental service mails the user the next one or two cassettes on the user's list, if they are available. As mentioned above, if a cassette is not available, the next alternate selection from the list is mailed to the user. The rental service does not require cassettes to be returned within a specified time period. Rather, the customer need only return cassettes as soon as the customer is finished using them. Tape Rental also provides its customers with a catalog of cassettes whereby the customer could make the user's list.

Thus, prior to the filing date of the '381 application, it was known to rent items over the Internet. It was also known to establish a rental list for renting items comprised of a list specified by the customer through the mail. If a particular item on the list was not available, then other customer selections from the rental list were sent.

## II.    OVERVIEW OF THE '381 PATENT

### A.    <u>Subject Matter of the '381 patent</u>

As mentioned above, the '381 patent describes computer-implemented methods for renting items to customers. This is illustrated by Figure 6 of the '381 patent, reproduced below.

---

[11] Appendix B, p. 13-15.

-4-

*Attorney-Client Privileged*
*Communication*

BB01309446

# BLAKELY SOKOLOFF TAYLOR & ZAFMAN

### A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

**FIG. 6**



First, as shown in Figure 6, the customer enters into a movie rental agreement with the provider (step 604 of Figure 6). Then the customer provides movie selection criteria to the provider (step 606 of Figure 6).

The customers provide this "item selection criteria" to the provider over a link which may be "any medium for transferring data."[12] The item selection criteria indicate

---

[12] Column 2, line 51.

-5-

*Attorney-Client Privileged Communication*

BB01309447

# BLAKELY SOKOLOFF TAYLOR & ZAFMAN

### A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

"the particular items that customer 102 desires to rent from provider 104"[13] and are used by the provider to "define a customer-specific order queue that is fulfilled by provider 104."[14] The order queue may include a list of titles in the "order in which [the customers] want to receive them."[15] In all of the claims of the '381 patent, the "items" are movies and the customer provides the selection criteria to the provider over the Internet (e.g. by logging into a server operated by the provider).[16]

Once the movie rental queue is established, up to a specified number of movies are delivered to the customer (step 608 of Figure 6). Subsequently, in response to "one or more delivery criteria" being satisfied, such as the return of a movie to the provider (step 610 of Figure 6), additional movies are delivered to the customer (e.g. steps 612 and 608 of Figure 6). As described in the '381 patent:

> According to the "Max Out" approach, up to a specified number of items may be rented simultaneously to a customer. Thus, the "Max Out" approach establishes the size of an inventory of items that may be maintained by customers. The specified number of items may be specific to each customer or may be common to one or more customers. In the present example, if the specified number of items is three, then up to three items may be rented simultaneously by provider 104 to customer 102. If the specified number of items are currently rented to customer 102 and the specified item delivery criteria triggers the delivery of one or more additional items, then those items are not delivered until one or more items are returned by customer 102 to provider 104.[17]

Additionally, the '381 patent describes that the movie rental queue may be updated by the user at any time. As recited in the '381 patent, "[i]tem selection criteria

---

[13] Column 3, lines 23-24.
[14] Column 3, lines 25-26.
[15] Column 7, lines 29-30.
[16] *See, e.g.,* column 2, lines 53-56. *See also* col. 7, lines 5-9 and Claim 1 at column 13, lines 6 and 10-11.
[17] Column 4, lines 3-16.

-6-

*Attorney-Client Privileged*<br>*Communication*

BB01309448

# BLAKELY SOKOLOFF TAYLOR & ZAFMAN
### A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

may be changed at any time to reflect changes in items that customers desire to rent from a provider."[18]

Figure 2 of the '381 patent is reproduced immediately below.

## FIG. 2



This figure is described as follows in the '381 patent:

The approach just described for renting items to customers is now described with reference to a flow diagram 200 of Figure 2. After starting in step 202, in step 204, customer 102 creates item selection criteria. In step 206, customer 102 provides the item selection criteria to provider 104. In step 208, in response to provider 104 receiving the item selection criteria from customer 102, provider 104 provides one or more items indicated by the item selection criteria to customer 102. The process is complete in step 210.[19]

---

[18] Column 3, lines 32-34.
[19] '381 patent, column 3, lines 11-19.

*Attorney-Client Privileged Communication*

BB01309449

# BLAKELY SOKOLOFF TAYLOR&ZAFMAN
### A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

Later in this opinion it will be important to recall that the customer creates and supplies the selection criteria. There is no discussion in the '381 patent of the provider causing these attributes to be displayed on the user's computer, or anywhere else for that matter.

B.    Summary of the Prosecution History of the '381 patent

The '381 patent issued on April 4, 2006 name W. Reed Hastings, Marc B. Randolph, and Neil Duncan Hunt as the inventors and Netflix as its owner. The '381 application, as mentioned earlier, is a continuation of a U.S. patent application filed on April 28, 2000, now issued as U.S. Patent 6,584,450.

The '381 application initially included a total of 51 claims. Netflix filed two Preliminary Amendments prior to the examination of the claims of the '381 application. In the first Preliminary Amendment, filed September 30, 2003, Netflix amended claims 10, 27, and 44 and added Claims 52-54. In the second Preliminary amendment, filed September 10, 2004, Netflix cancelled Claims 1-54 and added Claims 55-94. Independent Claims 55, 65, 75, and 85, contained similar limitations. Claim 55, the broadest independent claim, read as follows:

*Attorney-Client Privileged Communication*

BB01309450

# BLAKELY SOKOLOFF TAYLOR &ZAFMAN
### A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

55.    A computer-implemented method for renting movies to customers, the method comprising:

establishing, from information received over the Internet, a movie rental queue associated with a customer comprising an ordered list indicating two or more movies for renting to the customer;

causing to be delivered to the customer up to a specified number of movies based upon the movie rental queue;

in response to receipt of a movie previously delivered to the customer, selecting a movie based upon the movie rental queue and causing the selected movie to be delivered to the customer; and

in response to information received from the customer over the Internet, updating the movie rental queue.[20]

The PTO on October 29, 2004, rejected all claims of the '381 application under 35 U.S.C. § 101 as being directed to non-statutory subject-matter and under 35 U.S.C. § 103 as being unpatentable over *Kleiman*, US Patent No. 5,959,945.  Specifically, with respect to *Kleiman*, the PTO Examiner stated:

Kleiman discloses distributing over the Internet from a central location a specified number of music plays or videos, e.g. cols. 5-6, lines 59-21.  Kleiman does not specifically disclose selecting a movie based upon the rental queue.

Official Notice is taken that selecting a movie/book based upon a rental queue was common knowledge in the library art prior to Applicant's filing date.

To have provided a video, i.e. movie, based upon a rental queue as recited in the claim language for Kleiman would have been obvious to one of ordinary skill in the art in view of Official Notice.  The motivation for having done such would have been to incorporate common knowledge and extremely well known item rental procedures with the system of

---

[20] Preliminary Amendment (Sept 10, 2004), p.2.

-9-

*Attorney-Client Privileged Communication*

BB01309451

# BLAKELY SOKOLOFF TAYLOR & ZAFMAN

A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

Kleiman. It is noted that Applicant's intended use, e.g. for renting, do not positively recite claim limitations that are given great patentable weight.[21]

In response to these rejections, Netflix on January 31, 2005, amended the independent claims in substantially the same manner and added new Claims 95-105. By way of example, Claim 55 was amended as follows:[22] (The underlining indicates the changes to the claims made on January 31, 2005.)

55. A computer-implemented method for renting movies to customers, the method comprising:

providing electronic digital information that causes one or more attributes of movies to be displayed;

establishing, in electronic digital form, from electronic digital information received over the Internet, a movie rental queue associated with a customer comprising an ordered list indicating two or more movies for renting to the customer;

causing to be delivered to the customer up to a specified number of movies based upon [[the movie rental queue]] the order of the list;

in response to [[receipt of a movie previously delivered to the customer]] one or more delivery criteria being satisfied, selecting [[a]] another movie based upon the order of the list and causing the selected movie to be delivered to the customer; and

in response to other electronic digital information received from the customer over the Internet, electronically updating the movie rental queue.

In response to the rejections under 35 U.S.C. § 101, Netflix argued, among other things, that the claims cover "[t]echnology [which] is used to provide electronic digital information that causes attributes of movies to be displayed to the user."[23] In response

---

[21] Office Action (Oct 29, 2004), p. 3.
[22] Underlines indicate limitations added by Netflix and brackets indicate limitations deleted by Netflix.
[23] Reply to Office Action (Jan 31, 2005), p.12.

*Attorney-Client Privileged*
*Communication*

BB01309452

# BLAKELY SOKOLOFF TAYLOR & ZAFMAN
### A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

to the rejections under 35 U.S.C. § 103, Netflix argued that Kleiman did not teach or suggest features recited in the claims including "in response to one or more delivery criteria being satisfied, selecting another movie based upon the order of the list and causing the selected movie to be delivered to the customer"[24] or "an ordered queue or list."[25]

Prior to receiving the next communication from the PTO, Netflix submitted a letter to the Examiner on October 17, 2005 in which it argued, among other things, that the claims were allowable over two additional prior art references, "Kenton Library" and "JP-9231279-A" (a Japanese patent application). With respect to JP-9231279-A, Netflix argued that the claims were distinguishable from this reference because the reference "has no provision for providing electronic digital information that causes one or more attributes of movies to be displayed, as claimed."[26] In addition, Netflix argued that the combination of Kenton Library and JP-9231279-A "would not provide for providing electronic digital information that causes one or more attributes of movies to be displayed." (Remarkably, as will be discussed later, the '381 patent does not provide for displaying the attributes to the customer.)

The Examiner mailed a Notice of Allowability on January 17, 2006 allowing Claims 55-105, which were renumbered as claims 1-51 of the '381 patent. The '381 patent issued on April 4, 2006.

---

[24] Reply to Office Action (Jan 31, 2005), p. 14.
[25] Reply to Office Action (Jan 31, 2005), p. 15.
[26] Letter to Examiner (Oct 17, 2005), p. 6.

*Attorney-Client Privileged Communication*

BB01309453

# BLAKELY SOKOLOFF TAYLOR & ZAFMAN

A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

## III.    LEGAL ANALYSIS

### A.    The Manner of Determining Invalidity

1.    Criteria Applied to Assess Patent Invalidity Over Prior Art

(a)    General Concepts Related to Patent Invalidity

"Prior art" generally refers to technology and information publicly available before the date of the invention. This includes patents, other publications, services and products in public use.[27]

A patent claim is invalid as "anticipated" by prior art if each and every element (or limitation) of the claim is disclosed in a single prior art publication, service or product, either expressly or inherently.[28] Even if all the claim elements are not found in a single prior art source, the patent claim may be invalid based on "obviousness" if the differences(s) between the claimed invention and the prior art would have been obvious to a person of ordinary skill in the art at the time the invention was made. Clear and convincing evidence is needed to show that claims of a patent are invalid.

Below, we have concluded that the claims of the '381 patent are obvious in view of the prior art. One principle noted by the Supreme Court in *Graham v. John Deere*[29], a leading case on obviousness, is that a mere change in the materials or form of the prior art is insufficient to overcome the non-obviousness requirement of the patent law. As the Court noted in *Graham*:

> [Thomas] Jefferson did not believe in granting patents for small details, obvious improvements, or frivolous devices. His writings evidence his insistence upon a high level of patentability. As a member of the patent board for several years, Jefferson saw clearly the difficulty in 'drawing a

[27] 35 U.S.C. § 102.
[28] *See, e.g.*, 35 U.S.C. § 102.
[29] *Graham v. John Deere Co.*, 383 U.S. 1 (1966).

-12-

*Attorney-Client Privileged Communication*

BB01309454

# BLAKELY SOKOLOFF TAYLOR & ZAFMAN
### A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

line between things which are worth to the public the embarrassment of an exclusive patent and those which are not.' The board on which he served sought to draw such a line and formulated several rules which are preserved in Jefferson's correspondence.[30]

Jefferson's correspondence referred to above by the Supreme Court reads, in pertinent part:

> [A] change of material should not give title to a patent. As the making a plowshare of cast rather than of wrought iron; a comb of iron instead of horn or ivory . . .

> [A] mere change of form should give no right to a patent, as a high quartered shoe instead of a low one; a round hat instead of a three square, or a square bucket instead of a round one.[31]

Under a similar line of analysis, a federal circuit court in *Digitronics Corp. V. New York Racing Association*[32], addressed the question of whether improvements in an electronic system for processing data from ticket issuing machines, such as those used in racetrack totalisator systems, were obvious. In holding the claims to be obvious, this Court noted that:

> Appellant's contribution to the totalisator business involved simply upgrading of a well-defined, existing data processing system by converting some components of the tote system from electromechanical to solid state data processing.

> . . . Thus we have here the routine seeking of business by a qualified data processing "system" house, <u>followed by the routine application of then-current state of the art data processing technology to the updating of an existing data processing system of known and defined functional characteristics</u>.[33] (emphasis added).

---

[30] *Graham*, 383 U.S. 1, 9-10.
[31] *Graham*, 383 U.S. 1, 9 n.3 (citing VI Writings of Thomas Jefferson (Washington ed.), at 181-182 (1814).
[32] 553 F.2d 740 (2d Cir. 1977).
[33] At 747.

-13-

*Attorney-Client Privileged Communication*

BB01309455

# BLAKELY SOKOLOFF TAYLOR &ZAFMAN
### A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

The Court went on to note the distinction between the "predictable result" of the improvements to the totalisator system, resulting from the use of solid state data processing hardware with "synergistic" results that would not necessarily be obvious to one of skill in the art:

> Here, however, the benefits that accrued from the replacement of electromechanical by solid state electronic means - increased accuracy, speed, compactness, flexibility, reliability, and economy - were, as Judge Dooling found, nothing more than the recognized advantages of electronic upgrading of a data processing system.[34]

Thus, under these principles, merely changing known prior art techniques to a new form that performs the same function is insufficient to overcome the requirements of 35 U.S.C. § 103.

> (b)    Special Considerations When Assessing the
>        Validity of "Business Method" Patents

The '381 patent is a "business method" patent.[35] Thus, a discussion of the law and PTO regulations applied to assess the patentability of business method patents will be helpful for an understanding of our opinion.

In *State Street Bank and Trust Co. v. Signature Financial Group, Inc*, the Federal Circuit Court rejected the argument that computer-implemented business methods constitute non-statutory subject matter.[36] The Federal Circuit stated that "[w]hether the

---

[34] At 747.

[35] Specifically, the '381 patent was classified by the PTO under Class 705 (Electronic Commerce), Subclass 26 (E-Shopping). Patents classified under Class 705 are "business method" patents.

[36] *State Street Bank and Trust Co. v. Signature Financial Group, Inc.*, 149 F.3d 1368, (Fed. Cir. 1998) [hereinafter State Street], *cert. denied*, 119 S. Ct. 851 (1999). The Court reversed a decision of a

-14-                    ***Attorney-Client Privileged
                       Communication***

BB01309456

# BLAKELY SOKOLOFF TAYLOR &ZAFMAN
### A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

patent's claims are too broad to be patentable is not to be judged under § 101 [related to non-statutory subject matter], but rather under §§ 102, 103 and 112." Even assuming that the claims at issue were too broad, the court held that breadth of claims has "nothing to do with whether what is claimed is statutory subject matter."[37] The court also noted that its holding related to the statutory nature of methods of doing business was consistent with the PTO's 1996 Examination Guidelines for Computer Related Inventions. These state that a claim directed to a method of doing business should be treated as any other method claim.[38]

Thus, computer-implemented "business method" patents are analyzed using similar standards for patentability as other computer-implemented method patents. In this regard, it has long been understood that providing an automatic means to replace a manual activity which accomplishes the same result is not sufficient to distinguish over the prior art.[39] This line of analysis has been adopted in the PTO's Manual of Patent Examining Procedure ("MPEP").[40] In addition, the PTO currently employs a special set of guidelines for evaluating computer-implemented business methods, which explicitly state that a claim directed to a computerized implementation of a known business method is not patentable under § 103. For example, in

---

Massachusetts District Court which held that the patent at issue was invalid for claiming non-statutory subject matter under 35 U.S.C. § 101.

[37] State Street Bank at 1375-77.

[38] Examination Guidelines, 61 Fed. Reg. 7478, 7479 (1996).

[39] See In re Venner, 46 CCPA 754, 758, 262 F.2d 91, 95, 121 USPQ 193, 194 (CCPA 1958) ("Furthermore, it is well settled that it is not 'invention' to broadly provide a mechanical or automatic means to replace a manual activity which has accomplished the same result."). See also In re Rundell, 18 CCPA 1290, 48 F.2d 958 (CCPA 1931).

[40] MPEP 2144.04 Legal Precedent as Source of Supporting Rationale [R-1] . . . III. AUTOMATING A MANUAL ACTIVITY (citing to In re Venner in which "[t]he court held that broadly providing an automatic or mechanical means to replace a manual activity which accomplished the same result is not sufficient to distinguish over the prior art.").

-15-                    *Attorney-Client Privileged*
                        *Communication*

BB01309457

# BLAKELY SOKOLOFF TAYLOR&ZAFMAN

A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

*FORMULATING AND COMMUNICATING REJECTIONS UNDER 35 U.S.C. 103 FOR APPLICATIONS DIRECTED TO COMPUTER-IMPLEMENTED BUSINESS METHOD INVENTIONS (IV) (B) Examples of Rationale Statements Logically Reasoned From Sources Other Than a Reference,* Example 10 provides a rejection for Internet-based system in which:

> there is no enhancement found in the claimed step other than the known advantage of increased speed. The end result is the same as compared to the manual method. . . . It would have been obvious to a person of ordinary skill in the art at the time of the invention to automate the step of determining proposed transactions that could improve the portfolio because this would speed up the determining step which is purely known and expected result from automation of what is known in the art.

### 2.    Person of Ordinary Skill in the Art

The *Graham* case requires us to consider obviousness through the eyes of a person of ordinary skill in the art. In the case of the '381 patent, two separate art fields must be considered. First, since the patent deals with computer technology and the Internet, a person of ordinary skill in the art must be skilled in the field of computer technology and the Internet. Second, the '381 patent deals with the rental of items over the Internet. The person of ordinary skill in the art must know rental practices of items such as movies.

In *Dann v. Johnston,*[41] the Supreme Court was faced with a very similar question, namely the determination of a person of ordinary skill in the art in two fields. In the Dann case, the invention involved machine systems for automatic record-keeping of bank checks and deposits. The Court summarized the invention as:

> While respondent's patent application pertains to the highly esoteric field of computer technology, the basic functioning of his invention is not difficult to comprehend. Under respondent's system a bank customer

---

[41] 425 U.S. 219 (1976)

-16-

*Attorney-Client Privileged Communication*

BB01309458

# BLAKELY SOKOLOFF TAYLOR &ZAFMAN
### A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

> labels each check that he writes with a numerical category code corresponding to the purpose for which the funds are being expended. For instance, 'food expenditures' might be a category code "123," "fuel expenditures" a category coded "124," and "rent" still another category coded "125."

> Thus, when the time comes for the bank customer's regular periodic statement to be rendered, the programmed computer sorts out the entries in the various categories and produces a statement which groups the entries according to category and which gives subtotals for each category.

The Court went on to describe the person of ordinary skill in the art needed for determining obviousness as follows:

> In making the determination of "obviousness," it is important to remember that the criterion is measured not in terms of what would be obvious to a layman, but rather what would be obvious to one 'reasonably skilled in [the applicable] art.' ...In the context of the subject matter of the instant case, it can be assumed that such a hypothetical person would have been aware both of the nature of the extensive use of data processing systems in the banking industry and of the system encompassed in the Dirks patent. While computer technology is an exploding one, '[i]t is but an evenhanded application to require that those persons granted the benefit of a patent monopoly be charged with an awareness' of that technology.

The court went on to conclude that the patent was invalid for obviousness stating:

> The gap between the prior art and respondent's system is simply not so great as to render the system nonobvious to one reasonably skilled in the art.

Consequently, for purposes of evaluating the obviousness or non-obviousness of the claims in the '381 patent, we assume that the person of ordinary skill in the art is one knowledgeable in computer systems and the Internet. In the time frame of the '381 application (2000), such person would have at least one college degree in electrical

*Attorney-Client Privileged Communication*

BB01309459

# BLAKELY SOKOLOFF TAYLOR & ZAFMAN
## A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

engineering or computer science and several years of practical experience with computers and the Internet. Additionally, this person would be knowledgeable in the methods for renting items to customers. We believe such person would be an experienced businessman knowledgeable in all aspects of renting items such as movies, or the like, to customers either through retail chains, mail order, or the Internet.

3.    Criteria Applied to Assess the Adequacy of
the Written Description for Issued Patent Claims

The patent laws require that what is claimed in an issued patent claim must be supported by a written description in the patent application originally filed for the patent.[42] The patent application as originally filed must describe the claimed invention in such a manner that one of skill in the art would reasonably understand that the inventor was "in possession" of the invention at the time the application was filed.[43] To be "in possession" of the claimed subject matter, the originally-filed application must disclose all of the limitations of the patent claim. It is not enough to say "one of ordinary skill would know to add the omitted material." In this regard, The Federal Circuit Court stated:

> While the meaning of terms, phrases, or diagrams in a disclosure is to be explained or interpreted from the vantage point of one skilled in the art, all the limitations must appear in the specification. The question is not

---

[42] Specifically, 35 USC § 112 requires first that the specification:

> shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains...to make and use the same... 35 USC §112, ¶1.

Additionally the statute requires that the specification:

> shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention. 35 USC §112, ¶2.

[43] See, e.g., Vas-Cath v. Mahurkar, 935 F.2d 1555, 1563 (Fed. Cir. 1991).

*Attorney-Client Privileged
Communication*

BB01309460

# BLAKELY SOKOLOFF TAYLOR&ZAFMAN

A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

whether a claimed invention is an obvious variant of that which is disclosed in the specification. Rather, a prior application itself must describe an invention, and do so in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought. ...One shows that one is 'in possession' of *the invention* by describing *the invention,* with all its claimed limitations, not that which makes it obvious. ...A description which renders obvious the invention for which an earlier filing date is sought is not sufficient. ...

Lockwood's expert averred that the disclosed terminal in the former application 'can be connected' to multiple vendors and that, although the latter application only 'discusses the use of a television set and a keypad at a consumer's home,' it would have been apparent to one skilled in the art that Lockwood also envisioned the use of a 'terminal' containing a video disk player. That does not solve Lockwood's problem. Lockwood claimed a distinct invention from that disclosed in the specification. It is not sufficient for purposes of the written description requirement of §112 that the disclosure, when combined with the knowledge in the art, would lead one to speculate as to modifications that the inventor might have envisioned, but failed to disclose.[44]

Thus, for a claim to be valid under 35 U.S.C. § 112, <u>every element</u> of that claim must be explicitly described in the specification.

## B.    <u>Validity Analysis</u>

1.    In the two following sections we set forth our analysis which concludes that: (i) all the claims are obvious in view of the prior art and hence

---

[44] Lockwood v. American Airlines, 107 F.3d 1565, 1572 (Fed. Cir. 1997). *See also* Jepson v. Coleman, 314 F.2d 533, 536 (CCPA 1963) (describing how it is "not a question of whether one skilled in the art might be able to construct the patentee's device from the teachings of the disclosure . . . Rather, it is a question of whether the application necessarily discloses that particular device."); Manual of Patent Examining Procedure, 8th Ed, Rev. 4 (Oct. 2005) § 2163(I) ("An applicant shows possession of the claimed invention by describing the claimed invention with all of its limitations using such descriptive means as words, structures, figures, diagrams, and formulas that fully set forth the claimed invention." (citing Lockwood, 107 F.3d 1565, 1572)).

-19-

*Attorney-Client Privileged Communication*

BB01309461

# BLAKELY SOKOLOFF TAYLOR&ZAFMAN

A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

invalid, and (ii) all the claims are invalid because they claim subject matter not described, specifically the displaying of attributes.

2.     The Claims of the '381 Patent are Invalid Under 35 U.S.C. § 103
       Because They Claim a Computerized Implementation of a Known
       Prior Art Business Process

The '381 patent has a total of fifty-one claims with five independent claims (Claim 1, 14, 24, 34 and 44). In our opinion, all of the claims of the '381 patent are invalid under 35 U.S.C. § 103 for obviousness based on *Learning is Easy . . . With Audio Cassettes,* Tape Rental Library, Inc. (the "Tape Rental" of Appendix B). The Tape Rental service was discussed earlier in the Prior Art Section of this letter. Although Tape Rental describes a manual mail-order process for renting audio cassettes, rather than a computer-implemented rental process, the underlying rental process is the same. The computer-implemented claims of the '381 patent are obvious in view of the known manual service of Tape Rental.

Attached as Appendix C are claim charts showing the elements of the '381 patent claims in the left-hand column. In the right-hand column, the corresponding activity of Tape Rental supports our opinion that the claim is obvious in view of Tape Rental. We have drawn a line through those words in the claim which solely go to the computer implementation of the rental service of the claim. For instance, we have drawn a line through words such as "computer implemented," "electronic digital," and "Internet" in order to allow better focus on the underlying method of the claim. As pointed out above, the fact that a prior art method is implemented in a computer form does not, of itself, make the method patentable.

-20-

*Attorney-Client Privileged Communication*

BB01309462

# BLAKELY SOKOLOFF TAYLOR & ZAFMAN
### A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

As described above in the Tape Rental service, a catalog is sent to customers containing various attributes of audio cassettes, covering a wide variety of subjects and speakers. "Subjects" and "speakers" specifically mentioned in Tape Rental service are two attributes. A rental list or queue is sent to customers, and customers are permitted to send a complete list of the cassettes they wish to the tape rental company. Tape Rental (the tape provider) then sends the cassettes to the customer as the customer returns each cassette. When a cassette is not available from the customer's list, another cassette is sent from the list. Tape Rental describes an annual subscription service in which up to two tapes at a time may be retained by a user. The user is able to change, cancel or add to the user's list at any time.

The issue here is whether it would be obvious to a person of ordinary skill in the art, knowing of the Tape Rental service, to implement a corresponding service for renting movies using the Internet. Recall that a person of ordinary skill in the art, for this obviousness consideration, is someone skilled with computers and the Internet, as well as a person acquainted with the rental of items. It is our opinion that to such a person it would be obvious in view of Tape Rental to rent movies over the Internet in the manner set forth in the claims of the '381 patent.

In this connection, we note that no unexpected result is obtained from using the Internet to complete the transactions of supplying movies to customers. The '381 patent makes it clear that the customer provides one or more criteria to the provider over a "link 106."[45] :

> ...Examples of link 106 include, without limitation, a network such as a LAN, WAN or the Internet, a telecommunications link, a wire or optical link or a wireless connection. [46]

---

[45] '381 patent, column 2, line 51.
[46] '381 patent, column 2, lines 53-56.

-21-

*Attorney-Client Privileged Communication*

BB01309463

# BLAKELY SOKOLOFF TAYLOR & ZAFMAN
### A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

From this we see that the '381 patent does not describe any unusual result from using the Internet, in fact, any link may be used including a wire.

Similarly, there is no unusual or unexpected result from supplying movies using the service as opposed to supplying audio cassettes. Again, the '381 patent discusses, for the most part, supplying "items" such as suggested by the title of the '381 patent, "Approach for Renting Items to Customers." Even the term "movies," according to claim 13 of the '381 patent, can include "motion pictures, television series, documentaries, cartoons, music videos, video recordings of concert performances, instructional programs, and educational programs." The Court in its Claim Construction Order explicitly held that "the term 'movie,' as used in the patents, was intended to include media such as documentaries, television series, cartoons, music videos, concert performance films, and educational programs."[47] Movies, as used in the claim, includes many forms of recorded material, and there appears to be no benefit to providing these materials as opposed to a audio cassette. Looked at another way, we see no reason why the claim becomes non-obvious because a movie is provided rather than an audio cassette.

Below we review claim 1 in a narrative form to assist in understanding our analysis as presented in the Claim Charts of Appendix C.

The preamble to claim 1 reads:

> A ~~computer implemented~~ method for renting movies to customers, the method comprising:

As mentioned earlier, we have placed a line through the "computer implemented" and like terms in order to focus on the rental method, aside from its computer aspects. The

---

[47] Claim Construction Order, p. 6.

-22-

*Attorney-Client Privileged*
*Communication*

BB01309464

# BLAKELY SOKOLOFF TAYLOR &ZAFMAN
A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

preamble simply requires a method for renting movies to customers. Tape Rental describes a method for renting audio cassettes to customers. See, for example, page 1 of Appendix B.

The first element of claim 1 reads:

> providing ~~electronic digital~~ information that causes one or more attributes of movies to be displayed;

In Tape Rental, a catalog is sent to the user containing various attributes of video cassettes. For example, Tape Rental mentions a wide variety of <u>subjects</u> and <u>speakers</u>. As discussed earlier, we believe there is no meaningful difference in providing information on audio cassettes versus information on movies.

The next element of claim 1 requires:

> establishing~~, in electronic digital form, from electronic digital information received over the Internet,~~ a movie rental queue associated with a customer comprising an ordered list indicating two or more movies for renting to the customer;

Similarly, Tape Rental provides:

> A new selection card will be sent provided with each cassette you receive or use our convenient time saver list. Many of our customers find it convenient to send us a list of the cassettes they wish to hear. We will send a cassette from the list as you return each cassette. Of course you may change, cancel or add to your list at any time.[48]

Tape Rental has a list corresponding to a movie rental queue associated with the customer, and this is an ordered list in that it is numbered as shown in Appendix B.

---

[48] See Appendix B.

*Attorney-Client Privileged Communication*

BB01309465

# BLAKELY SOKOLOFF TAYLOR & ZAFMAN

### A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

This interpretation of this claim element of the '381 patent is consistent with the interpretation the Court gave in its Claim Construction for this element of the claim.

The next element of the claim requires:

> causing to be delivered to the customer up to a specified number of movies based upon the order of the list;

Tape Rental describes that a specific number of cassettes are delivered to the customer based on the order of the list, and if a particular cassette is not available, the next cassette will be delivered.

The next element of the claim states:

> in response to one or more delivery criteria being satisfied, selecting another movie based upon the order of the list and causing the selected movie to be delivered to the customer; and

The delivery criteria described in the '381 patent includes customer return of an item. In Tape Rental, a new cassette from the order list is sent to the user as the user returns each cassette. Thus, the return of the cassette causes a new cassette to be sent, and this satisfies the limitation of the claim for one or more delivery criteria.

The last element of the claim, set forth below, allows the customer to update the rental queue.

> in response to other ~~electronic digital~~ information received from the customer ~~over the Internet, electronically~~ updating the movie rental queue.

As mentioned above, in Tape Rental, the user "may change, cancel or add to [the user's list] at any time."

Thus, every step in claim 1 is found in Tape Rental when the "computer implemented" words are ignored. As mentioned earlier, simply implementing a

*Attorney-Client Privileged Communication*

BB01309466

# BLAKELY SOKOLOFF TAYLOR & ZAFMAN

A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

manual process into a computerized process does of itself not make an invention. There is nothing, in our opinion, that is non-obvious about implementing Tape Rental over the Internet and supplying movies instead of audio cassettes. Clearly, this would be obvious to a person of ordinary skill in the art.

In summary, as set forth in the Claim Charts (Appendix C), it is our opinion that all of the claims of the '381 patent are obvious and therefore invalid in view of Tape Rental under 35 U.S.C. § 103.

   3.    The Claims of the '381 Patent are Invalid Under 35 U.S.C. § 112
         Because They Contain a Limitation not Disclosed in the '381
         Application

The claims of the '381 patent are also invalid because they include a limitation not supported by the '381 application.[49]  In particular, the claims of the '381 patent require "providing electronic digital information that causes one or more attributes of movies to be displayed."  Significantly, the claim language of providing the attributes to the user was added to the claims to make them allowable.  Recall that to render the claims allowable over the Examiner's non-statutory subject matter rejection under 35 U.S.C. § 101, Netflix argued that, among other things, the claims cover "[t]echnology [which] is used to provide electronic digital information that causes attributes of movies to be displayed to the user."[50]  In a subsequent letter to the Examiner, Netflix argued that the amended claims were non-obvious in view of the prior art because the prior art "would not provide for providing electronic digital information that causes one or more

---

[49] As mentioned, the '381 application was a continuation of a previously-filed application, filed on April 28, 2000.  When we refer to the "'381 application," for purposes of this section we include the specification of the previously-filed application, including its original claims.
[50] Reply to Office Action (Jan 31, 2005), p.12.

-25-

*Attorney-Client Privileged*
*Communication*

BB01309467

# BLAKELY SOKOLOFF TAYLOR & ZAFMAN

A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

attributes of movies to be displayed."[51]  Thus, this limitation was a significant addition to the claims which ultimately resulted in the issuance of the '381 patent.  However, the '381 application has no description of "attributes" of movies being displayed to the user or of "electronic digital information" causing "attributes" to be displayed.

In the '381 patent, "attributes" can include title, director name, year of release, etc.[52]  This means that the claimed method for renting movies requires the provider provide information that causes, for instance, the title "Gone with the Wind" to be displayed to the user.  Yet there is no description in the '381 patent describing that such information is stored by the provider, or is sent to the customer.  Rather, in the '381 application (and '381 patent) the description is that the customer or user provides the information that causes the title, for example, to be displayed.  Throughout the '381 patent, it is emphasized that the customer or user provides the attributes.

The only discussion of a "display" in the '381 patent is related to the general description of a computer system: "Computer system 700 may be coupled via bus 702 to a display 712, such as a cathode ray tube (CRT), for displaying information to a computer user."[53]  The '381 patent also describes a graphical user interface through which a user may <u>submit</u> attributes to the rental provider:

> <u>Customers 502 create and provide item selection criteria to provider 504</u> over links 506 and 510 and the Internet 508. The invention is not limited to any particular approach for <u>specifying and providing item selection criteria to provider 504</u>. For example, according to one embodiment, customers 502 provide item selection criteria to provider 504 in one or more data files. According to another embodiment, <u>customers 502 log onto a web site of provider 504 and use a graphical user interfaced (GUI)</u>

---

[51] Letter to Examiner (Oct 17, 2005), p. 6.
[52] See, e.g. '381 patent, column 7, lines 10-18.
[53] '381 patent, column 10, lines 39-41.

-26-

*Attorney-Client Privileged Communication*

BB01309468

# BLAKELY SOKOLOFF TAYLOR&ZAFMAN

### A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

> to specify attributes of the movies and music that customers desire to rent
> from provider 504. (emphasis added).[54]

There is nothing in this quotation from the '381 patent describing that the customer gets "attributes of movies" for display. It is the customer that specifies the attributes. In the '381 patent, the user specifies the attributes for movies and, in response, the rental provider rents movies to the user based on those attributes. The provider does not automatically send the title "Gone with the Wind" to the user's computer for display. This aspect of the rental process (in which the user provides the information and attributes to the rental provider) is consistent throughout the specification of the '381 patent. For example, referring to the process illustrated in Figure 2 of the '381 patent:

> . . . After starting in step 202, in step 204, customer 102 creates item
> selection criteria. In step 206, customer 102 provides the item selection
> criteria to provider 104. In step 208, in response to provider 104 receiving
> the item selection criteria from customer 102, provider 104 provides one or
> more items indicated by the item selection criteria to customer 102. The
> process is complete in step 210.

> 2. Item Selection Criteria

> The one or more item selection criteria provided by customer 102 to
> provider 104 indicate the particular items that customer 102 desires to rent
> from provider 104. Thus, the item selection criteria define a customer-
> specific order queue that is fulfilled by provider 104. According to one
> embodiment, the item selection criteria specify attributes of items to be
> provided by provider 104 to customer 102. Item selection criteria may
> specify any type of item attributes and the invention is not limited to
> particular item attributes. Examples of item attributes include, without
> limitation, identifier attributes, type attributes and cost attributes. Item

---

[54] '381 patent, column 6, line 66 – column 7, line 9.

-27-

*Attorney-Client Privileged*
*Communication*

BB01309469

# BLAKELY SOKOLOFF TAYLOR&ZAFMAN
## A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

> selection criteria may be changed at any time to reflect changes in items
> that customers desire to rent from a provider. (emphasis added).[55]

Again, here there is nothing describing that the provider sends electronic digital information to the customers causing titles, or the like, to be displayed to the customer to allow, for example, for the customer to select from the titles.

Allowing a user to log into a web site and "specify attributes" of movies is quite different from a provider "providing electronic digital information that causes one or more attributes of movies to be displayed" for the user. In the former case, the user is required to provide information that causes attributes (e.g. the title) of desired movies to be displayed to the user on the user's CRT monitor, e.g. by typing on a keyboard which in turn displays the title of the movie in a GUI form that the user is filling out. The '381 patent describes that these attributes are then used by the provider to create the "ordered list" of movie selections on behalf of the user. This is not the same as the rental provider taking the initial step of providing, for example, a list of titles to be displayed on the user's computer.

---

[55] '381 patent, column 3, lines 13-35. *See also*, column 8, lines 30-32 (referring to Figure 6, "[i]n step 606, customer 502 creates and provides movie selection criteria to provider 504 that indicates movies that customer 502 desires to rent. For example, the movie selection criteria may specify particular movie titles that customer 502 desires to rent." (emphasis added)); and, column 7, lines 17-32:

> Customers 502 may identify specific movies or music by the item selection criteria, or may provide various attributes and allow provider 504 to automatically select particular movies and music that satisfy the attributes specified. For example, customers 502 may specify item selection criteria that include horror movies released in 1999 and let provider 504 automatically select horror movies that were release in 1999. As another example, customers 502 may specify item selection criteria that include adventure movies starring Harrison Ford. Customers 502 may also specify an order or priority for the specified item selection criteria. For example, customers 502 may specify specific movie titles and the order in which they want to receive them. As another example, customers 502 may specify that they want to receive a particular number of movies of different types. (emphasis added).

-28-

*Attorney-Client Privileged Communication*

BB01309470

# BLAKELY SOKOLOFF TAYLOR ℘ ZAFMAN
### A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

We also recognize that in actual business, Netflix may send a list of, for example, newly released movies for the user to browse. However, for unknown reasons, Netflix chose not to describe in the '381 application the provider providing such information. Therefore, although it may be Netflix's actual business practice, it is not what Netflix chose to describe in its patent and therefore not relevant to the issue.

The display of the attribution is not inherent in what is described in the '381 patent. The Court of Customs and Patent Appeals has stated that "Inherency...may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient."[56] The element must have been *necessarily* present or implicit in the original disclosure. It is not enough that it might have been present.[57] The rental provider taking the initial step of providing, for example, a list of titles to be displayed to the user is not <u>necessarily</u> present or implicit. See, for example, the Books on Tape On-Line Order Form (Bates Number BB00012212) which shows the user providing the information into a blank form.

---

[56] *Hansgirg v. Kemmer*, 102 F. 2d 212, 214 (CCPA 1939).
[57] *See. e.g., Chisolm* § 11.04[4][a] *In re Robertson*, 169 F. 3d (Fed. Cir. 1999) quoting *In re Oelrich*, 666 F. 2d 578,581 (CCPA 1981). ("Inherency, however, may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient.").

-29-                    *Attorney-Client Privileged*
                        *Communication*

BB01309471

# BLAKELY SOKOLOFF TAYLOR&ZAFMAN

A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

**Rental Book Order**

Order 10 books (or parts of multi-part books), get an 11th one FREE. All website orders will
receive an additional 5% DISCOUNT from our normal catalog prices.
*Note: descriptions and prices will appear once the Total Order button is pressed.*

Catalog No    Title                                    Rental

The courts strictly adhere to the rule that claims may be no broader than the supporting disclosure. In Gentry Gallery[58], an often cited case, Gentry claimed a sectional sofa with controls on a console between reclining seats. The court found that Gentry's patent did not support claims in which the location of the recliner controls is other than on the console. When one claims something that is not described, the claims are invalid. This makes good common sense. Inventors should not be able, years after they file their application, to add steps or elements to their claims that they did not originally describe. Looked at another way, if providing the attributes to the customers so that they can be displayed was so important as to allow Netflix to distinguish their claims over the prior art, shouldn't they have put it in their application?

We need not consider whether "providing electronic digital information that causes one or more attributes of movies to be displayed" would have been obvious to one of ordinary skill in the art. As described above, this is not the test articulated by the

---

[58] 134 F. 3d 1473 (Fed. Cir. 1998).

-30-

*Attorney-Client Privileged
Communication*

BB01309472

# BLAKELY SOKOLOFF TAYLOR &ZAFMAN
### A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

courts or the USPTO.[59]  Rather, to comply with the Written Description requirement of the patent law, the specification must describe "the claimed invention with all of its limitations using such descriptive means as words, structures, figures, diagrams, and formulas that fully set forth the claimed invention."[60]

In summary, because the '381 application did not describe the limitation of "providing electronic digital information that causes one or more attributes of movies to be displayed," as recited in all of the claims of the '381 patent, the claims of the '381 patent are invalid for lack of a written description under 35 U.S.C. § 112, ¶1.  The law is clear; one cannot claim something that is not described in the patent application.

## IV.    CONCLUSION

As set forth in the claim chart above, it is our opinion that claims 1-51 of the '381 patent are invalid under 35 U.S.C. § 103 based on Tape Rental.  In addition, in our opinion, claims 1-51 of the '381 patent are invalid under 35 U.S.C. § 112, ¶1 based on the lack of a written description.

Please do not hesitate to contact us if you have any questions concerning this opinion.

Very truly yours,

BLAKELY, SOKOLOFF, TAYLOR & ZAFMAN, LLP

Edwin H. Taylor

---

[59] See, e.g., Lockwood, supra note 43, at 1572.  See also Manual of Patent Examining Procedure, 8th Ed, Rev. 4 (Oct. 2005) § 2163(I).
[60] Lockwood (emphasis added).

-31-

*Attorney-Client Privileged Communication*

BB01309473