# EXHIBIT C

Dockets.Justia.com

# Vinson&Elkins

# Facsimile

Daniel J. Kelly dkelly@velaw.com
Tel 214.220.7975 Fax 214.999.7975

| From: | Date: | Client/Matter No. |
|---|---|---|
| Dan Kelly | April 11, 2007 | BLO425/52004 |

| Regarding: | Number of Pages | Hard Copy Follows |
|---|---|---|
| | *87* (inc. cover page) | No |

| To: | Fax: | Phone: |
|---|---|---|
| **Jeffrey R. Chanin** **Daralyn J. Durie** Keker & Van Nest, LLP | 415.397.7188 | 415.391.5400 |
| **Marshall B. Grossman** Alschuler Grossman LLP | 310.907.2000 | 310.907.1000 |

Message:

**Confidentiality Notice:** The information contained in this FAX may be confidential and/or privileged. This FAX is intended to be reviewed initially by only the individual named above. If the reader of this TRANSMITTAL PAGE is not the intended recipient or a representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this FAX or the information contained herein is prohibited. If you have received this FAX in error, please immediately notify the sender by telephone and return this FAX to the sender at the below address. Thank you.

**Vinson & Elkins LLP Attorneys at Law**
Austin Beijing Dallas Dubai Houston London
Moscow New York Shanghai Tokyo Washington

Trammell Crow Center, 2001 Ross Avenue, Suite 3700
Dallas, TX 75201-2975
Tel 214.220.7700 Fax 214.220.7716 www.velaw.com

# Vinson&Elkins

**Daniel J. Kelly** dkelly@velaw.com
Tel 214.220.7976  Fax 214.999.7976

April 11, 2007

***Via Hand Delivery***
Ms. Karen Mitchell, Clerk
Northern District of Texas
14A20 Earle Cabell Federal Bldg.
1100 Commerce Street
Dallas, TX 75242-1003

> Re:  *Netflix, Inc. v. Blockbuster, Inc.*; Misc. Docket No. _____; In the United
> States District Court for the Northern District of Texas, Dallas, Division

Dear Ms. Mitchell:

Please find enclosed the original and two (2) copies of the Motion and Brief For Protection and Objections and Responses of Blockbuster Inc., Shane Evangelist, Edward Stead, and Richard A. Frank to Plaintiff Netflix, Inc.'s Third Amended Notice of 30(b)(6) Deposition of Blockbuster, Amended Notice of Deposition of Shane Evangelist, Amended Notice of Deposition and Subpoena of Edward Stead, and Amended Notice of Deposition and Subpoena of Richard Frank. Also enclosed is our Firm check in the amount of $39.00 for filing of same.

Please return a file-stamped copy to me via the courier delivering same. Thank you for your assistance.

Very truly yours,

Daniel J. Kelly

102162:7726
Dallas 1239731v1
enclosures

c:     Jeffrey R. Chanin, Esq. and Daralyn J. Durie, Esq. (w/enclosure) *(via fax)*
       Marshall B. Grossman, Esq. (w/enclosure) *(via fax)*

Vinson & Elkins LLP Attorneys at Law Austin Beijing Dallas
Dubai Houston London Moscow New York Tokyo Washington

Trammell Crow Center, 2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975 Tel 214.220.7700 Fax 214.220.7716
www.velaw.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

NETFLIX, INC.

              **Plaintiff,**        MISC. DOCKET NO._____

v.

BLOCKBUSTER INC.

              **Defendant.**

## MOTION AND BRIEF FOR PROTECTION AND OBJECTIONS AND RESPONSES OF BLOCKBUSTER INC., SHANE EVANGELIST, EDWARD STEAD, AND RICHARD A. FRANK TO PLAINTIFF NETFLIX, INC.'S THIRD AMENDED NOTICE OF 30(B)(6) DEPOSITION OF BLOCKBUSTER, AMENDED NOTICE OF DEPOSITION OF SHANE EVANGELIST, AMENDED NOTICE OF DEPOSTION AND SUBPOENA OF EDWARD STEAD, AND AMENDED NOTICE OF DEPOSITION AND SUBPOENA OF RICHARD FRANK

Michael L. Raiff
  State Bar No. 00784803
Daniel J. Kelly
  State Bar No. 24041229
VINSON & ELKINS L.L.P.
3700 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas 75201-2975
Telephone: 214.220.7704
Telecopy:  214.999.7704

**ATTORNEYS FOR MOVANTS**

## TABLE OF CONTENTS

I.     INTRODUCTION............................................................................................. 1

II.    FACTUAL BACKGROUND ............................................................................ 2

III.   ARGUMENT AND AUTHORITIES ............................................................... 7

       A.     This Court Has The Authority And Should Hear This Discovery
              Dispute Because The Depositions Are Taking Place In The
              Northern District of Texas........................................................................ 8

       B.     Netflix Is Improperly Seeking to Invade The Attorney-Client
              Privilege By Seeking All Communications Between Blockbuster
              And Its Trial Counsel.  This Court Should Deny That Discovery.
              Alternatively, This Court Should Stay Any Discovery On That
              Issue Pending The Federal Circuit's En Banc Ruling In Re Seagate
              Technology.............................................................................................. 9

       C.     Netflix Is Also Improperly Seeking To Invade The Work-Product
              Immunity By Seeking Trial Counsel's Work Product.  This Court
              Should Deny That Discovery.  Alternatively, This Court Should
              Stay Any Discovery On That Issue Pending The Federal Circuit's
              En Banc Ruling In Re Seagate Technology. ........................................... 12

IV.    SPECIFIC RESPONSES AND OBJECTIONS TO DOCUMENT
       REQUESTS TO MR. STEAD AND MR. FRANK............................................. 14

       A.     Requested Materials of Mr. Stead .......................................................... 14

       B.     Requested Materials of Mr. Frank .......................................................... 15

V.     CONCLUSION ............................................................................................... 17

## TABLE OF AUTHORITIES

### CASES

*Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294 (Fed. Cir. 2001) ..................................................................................................................... 9

*Ampex Corp. v. Eastman Kodak Co., No. Civ. A. 04-1373-KAJ*, 2006 WL. 1995140 (D. Del. July 17, 2006) ................................................................................... 11

*Autobytel, Inc. v. Dealix Corp.*, 455 F. Supp. 2d 569 (E.D. Tex. 2006) ....................................... 10

*Avago Technologies General IP Pte. Ltd. v. Elan Microelectronics Corp.*, No. C04-05385 RMW (HRL), 2007 WL 841785 (N.D. Cal. Mar. 20, 2007) ................... 12, 14

*EchoStar Commc'ns Corp.*, 448 F.3d 1294 (Fed. Cir. 2006) .................................................. 10, 13

*Hickman v. Taylor*, 329 U.S. 495 (1947) ................................................................................. 13

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004) ............................................................................................................... 9

*Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763 (7th Cir. 2006) ............................................ 13

*Netflix, Inc. v. Blockbuster Inc.*, No. C 06-02361 WHA, 2006 WL 2458717 (N.D. Cal. Aug. 22, 2006) .................................................................................................. 4

*Seagate Technology*, 2007 WL. 196403 (Fed. Cir. Jan. 26, 2007) ........................................... 11, 13

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) .......................................................... 9

### STATUTES

Fed. R. Civ. P. 26(c) ...................................................................................... 1, 7, 8, 9

Fed R. Civ. Pr. 30(d)(4) .................................................................................... 1, 7, 8

Fed. R. Civ. P. 45(c)(2)(B) .......................................................................... 1, 8, 14, 17

TO THE HONORABLE COURT:

Under Federal Rules of Civil Procedure 26(c), 30(d), and 45(c)(2)(B), Defendant/Counter-Plaintiff Blockbuster Inc. ("Blockbuster") for itself and Bryan Stevenson and Shane Evangelist, current employees of Blockbuster, and Edward Stead and Richard Frank, former employees of Blockbuster, three of whom having served or now serving as attorneys for Blockbuster (collectively, "Blockbuster"), file this their Motion for Protection and Brief and Objections and Responses to Netflix, Inc.'s ("Netflix"): (1) Third Amended Notice of 30(b)(6) Deposition of Blockbuster, Inc., (2) Amended Notice of Deposition of Shane Evangelist, (3) Amended Notice of Deposition and Subpoena for documents of Edward Stead, and (4) Amended Notice of Deposition and Subpoena for documents of Richard A. Frank.

## I.    INTRODUCTION

Blockbuster moves the Court for its protection from Netflix's unfounded attempt to invade the attorney-client privilege and force disclosure of admittedly attorney-client communications. There are both ongoing and upcoming depositions noticed by Netflix of several party and third-party depositions in Dallas in a patent infringement action against Blockbuster pending in California. By its questioning – including the questions Netflix asked Bryan Stevenson, in-house counsel at Blockbuster, during his deposition on April 10 and its questions of Edward Stead, the company's former General Counsel, on April 11 – and its notices, Netflix seeks to transform Blockbuster's reliance on the advice of its patent counsel to defend against Netflix's claim of willful patent infringement into a sweeping and unwarranted waiver of the attorney client privilege with the very lawyers who are defending the patent infringement case, lawyers who have never provided any opinion on the validity of the patents at issue. Blockbuster seeks relief from this Court to

1

halt this unjustified intrusion into these privileged communications. Blockbuster has not waived privilege communications with its trial counsel. Its only waiver is the opinion of invalidity provided by its outside patent counsel. Although the case authority is split on the extent of the waiver, it will soon be clarified by the Federal Circuit. Until that time, no waiver with trial counsel should be found because the harm will have been done and is irremediable should the Federal Circuit hold there is no such sweeping waiver, as is expected.

## II.    FACTUAL BACKGROUND

The video rental business has been in existence for decades and, with the advent of the Internet, video rental over the Internet has emerged. Netflix entered the Internet DVD subscription business in 1999. Blockbuster has rented DVDs for many years in its stores throughout the United States and, more recently, Blockbuster began renting DVDs over the Internet. In April 2000, Netflix applied for a patent, broadly claiming subscription rentals, not only for movies, but also for any kind of "item." In its patent application for this alleged "invention," Netflix failed to disclose any prior art whatsoever, despite the existence of substantial prior art and its legal and ethical duty of candor to the United States Patent and Trademark Office. On June 24, 2003, after a cursory Patent Office examination, Netflix received a patent, U.S. Patent No. 6,584,450 (the '450 patent) for this so-called invention. Before the issuance of the '450 patent, Netflix had also filed a "continuation" application, which ultimately resulted in the issuance of a second Netflix patent, U.S. Patent No. 7,024,381 (the '381 patent). This time Netflix disclosed over 100 items of prior art, thus flooding the patent office. Notably, on neither occasion did Netflix disclose prior art patents in favor of NCR, even though both during the applications for the first and second patents NCR made a claim of

2

patent infringement against Netflix. Moreover, before the second Netflix patent issued, Netflix sued NCR for declaratory relief that it was not infringing on the NCR patents.

On March 9, 2004, Richard Frank, then Senior Vice President of Blockbuster, and Edward B. Stead, then Executive Vice President and General Counsel of Blockbuster, received an opinion letter from Baker Botts L.L.P. on the invalidity of the '450 patent. In the letter, Baker Botts concluded that all claims of the '450 patent are invalid based on previously published documents. Also, in and around 2003 and 2004, in anticipation of a patent infringement lawsuit by Netflix, Blockbuster consulted with the law firm of Shearman & Sterling, LLP about claims and defenses in potential litigation with Netflix. As a consequence, Shearman & Sterling prepared litigation analysis for Blockbuster.

On April 4, 2006, nearly two years after Blockbuster entered the online rental market and on the same day that the '381 patent issued, Netflix filed suit against Blockbuster in the Northern District of California, alleging Blockbuster's online DVD rental services infringed the '450 patent and the then just-issued '381 patent. Netflix has also alleged that Blockbuster's infringement of these two patents was (and continues to be) willful. Blockbuster denies Netflix's allegations of infringement and willful infringement. Blockbuster has asserted that the '450 and '381 patents are invalid and unenforceable and that Netflix's suit is barred by patent misuse, laches, and estoppel. Blockbuster has also asserted counterclaims against Netflix, under federal antitrust laws, for its fraudulent patenting and sham litigation. Blockbuster retained the law firm of Alschuler Grossman LLP, located in Los Angeles, California, to defend Blockbuster in the Netflix suit pending in the Northern District of California.

On August 22, 2006, the district court for the Northern District of California denied Netflix's motion to dismiss Blockbuster's antitrust counterclaims and denied Netflix's motion to strike Blockbuster's affirmative defenses of inequitable conduct and patent misuse. *See Netflix, Inc. v. Blockbuster Inc.*, No. C 06-02361 WHA, 2006 WL 2458717 (N.D. Cal. Aug. 22, 2006). A true and correct copy of that decision is attached at Tab A.

On March 29, 2007, Shane Evangelist, Senior Vice President and General Manager of Blockbuster Online, received an opinion letter from the intellectual property law firm of Blakely Sokoloff Taylor & Zafman, located in Silicon Valley, California, on the invalidity of the '381 patent. In that letter, the Blakely firm concluded that all claims of the '381 patent are likewise invalid. The following day, on March 30, 2007, in support of its advice-of-counsel defense to Netflix's charges of willful infringement, Blockbuster – through its counsel, Alschuler Grossman LLP -- produced to Netflix the opinion letters on the invalidity of the '450 and '381 patents. The Alschuler Grossman firm had no role in the filing or prosecution of the patents in dispute and they did not prepare the opinion letters on the invalidity of the patents at issue. Rather, since the time Netflix filed this suit, the Alschuler Grossman firm has only served as Blockbuster's trial counsel in this litigation. *See* Declaration of Marshall B. Grossman, attached at Tab B. Netflix and Blockbuster are currently engaged in extensive discovery and depositions and document production is ongoing.

Netflix has now unleashed a slew of deposition notices and subpoenas for depositions of current and former Blockbuster employees noticed to occur in Dallas, Texas during the weeks of April 9 and 16. In doing so, Netflix improperly seeks to

invade the attorney-client privilege and force these Blockbuster witnesses to reveal, to the extent they occurred, all conversations with trial counsel about Blockbuster's litigation strategy in this case. Indeed, on April 10, during the 30(b)(6) deposition of Bryan Stevenson, in-house counsel at Blockbuster, Netflix's counsel asked a series of questions about privileged communications Mr. Stevenson had with Blockbuster's trial counsel. A true and correct copy of excerpts from the rough transcript of Bryan Stevenson's April 10, 2007 deposition is attached hereto at Tab D. For example, among other questions, Netflix asked Mr. Stevenson, whether "[p]rior to Blockbuster's decision to waive the attorney-client privilege with respect to the '450 patent, did Blockbuster receive any written documents from Alschuler Grossman [Blockbuster's trial counsel] regarding the validity or invalidity of the '450 patent?" Tab D at 170. In addition, Netflix's counsel asked Mr. Stevenson whether he "discuss[ed] the validity or invalidity of the '450 and '381 patents" when he met with his trial counsel to prepare for his deposition. Tab D at 176-77. Blockbuster's counsel instructed Mr. Stevenson not to answer those questions not only because they were beyond the scope of his 30(b)(6) deposition on document retention issues, but also because they concerned privileged communications with his counsel. Likewise, Netflix also has sought to invade the attorney-client privilege through its questioning of Mr. Stead on April 11.

The following summarizes the other depositions scheduled to occur in Dallas that Netflix has noticed thus far:

- **30(b)(6) Deposition Notice**

On April 4, 2007, Netflix served Blockbuster with its Third Amended Notice of a 30(b)(6)Deposition of Blockbuster, Inc. A true and correct copy of that 30(b)(6) Notice

5

is attached as Exhibit 4 to the Declaration of Marshall B. Grossman at Tab B. Netflix's 30(b)(6) Notice lists nine different topics. Notably, topic Nine concerns, "All COMMUNICATIONS between BLOCKBUSTER and its counsel, including but not limited to in-house counsel; Alschuler Grossman, LLP and its predecessor firms; Baker Botts, LLP; Blakely Sokoloff Taylor & Zafman, LLP; and/or Shearman & Sterling, LLP, regarding the validity or invalidity of any claim of either of the PATENTS-IN-SUIT." (emphasis in original). Blockbuster designated two witnesses, Mr. Stevenson and Mr. Evangelist, Senior Vice President of Blockbuster and General Manger of Blockbuster Online, as 30(b)(6) witnesses. As discussed above, Mr. Stevenson has already testified and answered questions about Blockbuster's efforts to retain and locate documents in response to Netflix's document requests to Blockbuster (topic 8). Mr. Evangelist will address topics 1-7. Netflix will now depose Mr. Evangelist in Dallas on those topics during the week of April 16.

- **Shane Evangelist Deposition Notice**

Netflix will also depose Mr. Evangelist in his individual capacity the week of April 16 in Dallas. On March 28, 2007, Netflix served a deposition notice for the deposition of Mr. Evangelist. A true and correct copy of that Notice is attached as Exhibit 2 to the Declaration of Marshall B. Grossman at Tab B.

- **Edward Stead Deposition Subpoena and Document Request**

On March 28, 2007, Netflix issued a subpoena to Mr. Stead, Blockbuster's former general counsel, requiring him to appear at his deposition on April 11, 2007 in Dallas. The subpoena also included a document request seeking a very broad category of documents, including privileged documents. A true and correct copy of the subpoena

6

served on Mr. Stead is attached hereto as Exhibit 1 to the Declaration of Marshall B. Grossman at Tab B. A list of Blockbuster's and Mr. Stead's specific objections to those document requests are set forth below in Section IV of this Motion.

- **Richard Frank Deposition Subpoena and Document Request**

On April 6, 2007, Netflix issued a subpoena for Mr. Frank, former Vice President of Blockbuster, to appear at his deposition on April 20, 2007 in Dallas. The subpoena for Mr. Frank also included a document request seeking a very broad category of documents, including privileged documents. A true and correct copy of the subpoena served on Mr. Frank is attached as Exhibit 3 to the Declaration of Marshall B. Grossman at Tab B. A list of Blockbuster's and Mr. Frank's specific objections to those document requests are set forth below in Section IV of this Motion.

As Blockbuster did during Mr. Stevenson's deposition, to the extent Netflix asks questions relating to any privileged communications Blockbuster employees (or former employees) had with trial counsel, Blockbuster (and counsel for the witness) will instruct the witness not to answer any of those questions until and unless this Court rules otherwise. Similarly, Blockbuster (and counsel for the witness) will instruct the witness not to answer any other questions that Netflix asks that improperly invade the attorney-client privilege (*i.e.*, questions that go beyond the narrow waiver made by Blockbuster when it produced the opinion letters in support of its advice-of-counsel defense).

### III.    ARGUMENT AND AUTHORITIES

Blockbuster and Messrs. Evangelist, Stevenson, Stead, and Frank respectfully request a protective order under Rules 26(c) and 30(d)(4), relieving them from any obligation to answer any questions that improperly invade the attorney-client privilege.

Blockbuster and Messrs. Stead and Frank also object under Rule 45(c)(2)(B), to the subpoenas served on Messrs. Stead and Frank.

**A.   This Court Has The Authority And Should Hear This Discovery Dispute Because The Depositions Are Taking Place In The Northern District of Texas.**

Blockbuster seeks relief from this Court to halt Netflix's unwarranted intrusion into privileged attorney-client communications between Blockbuster and its trial counsel. Netflix is engaging in these abusive discovery tactics in this District and irreparable harm will be done if Netflix is allowed to continue to inquire into these privileged communications. Federal Rule of Civil Procedure 26(c) provides, in pertinent part, that, "Upon motion by a party or by the person from whom discovery is sought,...the court in which is the action is pending *or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires* to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the disclosure or discovery not be had;...(4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters...." (emphasis added). Similarly, Rule 30 (d)(4) provides that, "At any time during a deposition, on motion of a party or of the deponent and upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party, the court in which the action is pending *or the court in the district where the deposition is being taken* may order the officer conducting the examination to cease forthwith from taking the deposition, or may limit the scope and manner of the taking of the deposition as provided in Rule 26(c)." (emphasis added).

Blockbuster is entitled to seek relief from this Court because Netflix has chosen to engage in this improper and abusive discovery in the Northern District of Texas. Fed. R. Civ. P. 26(c) and 30(d)(4).

> **B.**      **Netflix Is Improperly Seeking to Invade The Attorney-Client Privilege By Seeking All Communications Between Blockbuster And Its Trial Counsel. This Court Should Deny That Discovery. Alternatively, This Court Should Stay Any Discovery On That Issue Pending The Federal Circuit's *En Banc* Ruling *In Re Seagate Technology.***

Court after court recognizes the critical importance of the attorney-client privilege. *See, e.g., Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) ("The privilege recognizes that sound legal advice or advocacy serves the public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client"). As the Supreme Court noted, the attorney-client privilege encourages "full and frank communication between attorneys and their clients." *Id.*; *see also Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1344 (Fed. Cir. 2004) ("There should be no risk of liability in disclosures to and from counsel in patent matters; such risk can intrude upon full communication and ultimately the public interest in encouraging open and confident relationships between client and attorney."). Netflix, in its gambit in this District, seeks to eviscerate the attorney-client privilege and turn Blockbuster's limited waiver of privilege into a wholesale waiver of the privilege as to "ALL Communications between BLOCKBUSTER and its counsel, including but not limited to in-house counsel; Alschuler Grossman, LLP." Tab B, Exhibit 4; *see also* Tab D, excerpts from Mr. Stevenson's April 10, 2007 deposition. This Court should reject Netflix's ploy.

Federal Circuit law governs this discovery dispute because it implicates "substantive patent law." *See Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265

F.3d 1294, 1307 (Fed. Cir. 2001). Again, Blockbuster obtained invalidity opinions from

Baker Botts LLP on the '450 patent and from Blakely Sokoloff Taylor & Zafman on the

'381 patent. Blockbuster's trial counsel produced these two opinion letters to Netflix to

support Blockbuster's advice-of-counsel defense to Netflix's claim of willful

infringement.   Contrary to Netflix's assertion, any resulting waiver of privilege by

Blockbuster was limited, however. Because it is the accused infringer's state of mind

that is at issue in any determination of willfulness, discovery into privileged and

protected documents and information may proceed only to the extent that the privileged

and protected material was actually communicated by or to the accused infringer in

connection with opinion counsel's preparation and delivery of the opinion. *See, e.g.,*

*Autobytel, Inc. v. Dealix Corp.*, 455 F.Supp.2d 569, 572 (E.D. Tex. 2006) (Davis, J.)

("When a defendant asserts an advice-of-counsel defense, the defendant waives the

privilege as to both attorney-client communications and communicated work product

regarding the subject matter of the opinion because such documents are evidence of a

relevant and non-privileged fact, namely what the defendant knew about infringement")

(citing *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1302-03 (Fed. Cir. 2006)). The

waiver does not extend to trial counsel. Blockbuster has not waived the privilege with its

trial  counsel.    Moreover,  to  the  extent  Netflix  seeks  any  in-house  counsel

communications and communicated work product where Blockbuster's in-house counsel

acted as a "conduit" for Blockbuster's trial counsel, Blockbuster has not waived privilege

as to any of those communications either. *See Autobytel, Inc.*, 455 F.Supp.2d at 576 ("To

hold otherwise would effectively allow discovery of trial-counsel communications and

work product merely because of how privileged trial-counsel documents were disseminated to [defendant]'").

Netflix's deposition notices, subpoenas, and the questions Netflix's counsel asked during the deposition of Mr. Stevenson far exceed the recognized limitation of the waiver. Indeed, at least one other court that has looked at this issue held that the Federal Circuit's decision in *EchoStar* could not be read to imply a broad waiver of the privilege. *See Ampex Corp. v. Eastman Kodak Co.*, No. Civ. A. 04-1373-KAJ, 2006 WL 1995140 (D. Del. July 17, 2006) (not reported in F.Supp.2d) (rejecting plaintiff's contention that under *EchoStar* an advice-of-counsel defense in a patent case effects a wholesale waiver of the privilege and that plaintiff was entitled to all of defendant's attorney-client communications with its trial counsel). As the Court in *Ampex* observed, the Federal Circuit did not intend "a wholesale revision of the historical understanding of the attorney-client privilege." *Id.* at *3.

Alternatively, this Court should stay any discovery on the issue of whether Blockbuster has waived the attorney-client privilege as to trial counsel by having produced these two opinion letters because the Federal Circuit has recently granted *en banc* review on that exact question. *In re Seagate Technology, LLC*, 2007 WL 196403 (Fed. Cir. Jan. 26, 2007) (considering the question of whether a party's assertion of the advice-of-counsel defense to willful infringement extends waiver of the attorney-client privilege to communications with trial counsel). In *Seagate*, the defendant, Seagate, asserted the advice-of-counsel defense and relied on opinions related to infringement, invalidity, and enforceability in defense of plaintiff's willful infringement claim. The opinion counsel and litigation counsel were separate and independent. The plaintiff

sought discovery of all communications pertaining to these subjects and even depositions of the lead trial lawyers for the defendant. The defendant asserted privilege for its communications with trial counsel. The magistrate and district court required Seagate to produce all communications with trial counsel concerning infringement, invalidity, and enforceability – "even if it is communicated in the context of trial preparation." *See* Petition for a Writ of Mandamus, 2007 WL 903947 (quoting district court order). Seagate filed a petition for writ of mandamus with the Federal Circuit, which decided *sua sponte* to hear the matter *en banc*. The Federal Circuit has ordered a stay of discovery in that case pending its resolution of this important question. This Court should do the same.

If this Court permits discovery on communications with trial counsel prior to the Federal Circuit's ruling in *In re Seagate*, Blockbuster will suffer irreparable harm and prejudice if the Federal Circuit rules that the assertion of the advice-of-counsel defense does not extend the waiver of privilege to communications with trial counsel. *See Avago Technologies General IP Pte. Ltd. v. Elan Microelectronics Corp.*, No. C04-05385 RMW (HRL), 2007 WL 841785 (N.D. Cal. Mar. 20, 2007) (deferring ruling on whether defendant waived attorney-client and work product immunity over all communications with trial counsel until the Federal Circuit rules on *In Re Seagate*).

C.     **Netflix Is Also Improperly Seeking To Invade The Work-Product Immunity By Seeking Trial Counsel's Work Product. This Court Should Deny That Discovery. Alternatively, This Court Should Stay Any Discovery On That Issue Pending The Federal Circuit's *En Banc* Ruling *In Re Seagate Technology*.**

Netflix's questioning of Mr. Stevenson, its 30(b)(6) Notice, and some of the document requests and questions of Mr. Stead (see below, Request 5) and Mr. Frank (see below, Requests 1 and 2) are also so broadly phrased that they seek discovery of trial

counsel's work product. As with the attorney-client privilege, the courts have zealously guarded the attorney work-product immunity. *See Hickman v. Taylor*, 329 U.S. 495, 510 (1947) (stating that files and mental impressions of an attorney that are prepared in the course of legal duties are "outside the arena of discovery and contravenes public policy underlying the orderly prosecution and defense of legal claims"); *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 767-68 (7th Cir. 2006) ("The work-product doctrine shields materials that are prepared in anticipation of litigation from the opposing party, on the theory that the opponent shouldn't be allowed to take a free ride on the other party's research, or get the inside dope on that party's strategy"). The Federal Circuit, in *In re Echostar*, also recognized the importance of the work-product immunity because it "promotes a fair and efficient adversarial system by protecting the attorney's thought processes and legal recommendations from the prying eyes of his or her opponents." 448 F.3d at 1301.

Here, Netflix should not be entitled to discovery of any of Blockbuster's trial counsel's work product because trial counsel did not prepare either of the opinion letters Blockbuster requested concerning the '450 and '381 patents. *See* Declaration of Bryan Stevenson at Tab C. Moreover, in any event, the Federal Circuit is also addressing this same issue of waiver as to work product in the *In re Seagate* proceedings. *In re Seagate Technology*, 2007 WL 196403 (Fed. Cir. Jan. 26, 2007) (considering the question of whether a party's assertion of the advice-of-counsel defense to willful infringement extends to waiver of the work-product immunity). Again, as with communications with trial counsel, Blockbuster would be prejudiced if this Court permits discovery of trial counsel's work product before the Federal Circuit addresses that issue. The Court should

delay any discovery on that matter until the Federal Circuit answers this question.  *See Avago Technologies General IP Pte. Ltd.*, 2007 WL 841785, at *1 (deferring ruling on whether defendant waived work product immunity for all communications with trial counsel until the Federal Circuit rules on *In Re Seagate*).

## IV.  SPECIFIC RESPONSES AND OBJECTIONS TO DOCUMENT REQUESTS TO MR. STEAD AND MR. FRANK.

Blockbuster, Messrs. Stead and Frank incorporate their general arguments above regarding the Motion for Protection into their Specific Responses and Objections, made pursuant to Rule 45(c)(2)(B),[1] to Netflix's document requests to Mr. Stead and Mr. Frank that are set forth below.

### A.  Requested Materials of Mr. Stead

*1. All documents relating to your work with Blockbuster on BlockbusterOnline, or any online rental service operated, or to be developed, owned, acquired, or operated by Blockbuster.*

<u>Response to Request 1:</u>  Blockbuster and Mr. Stead object to Request 1 to the extent that it seeks material that is subject to attorney-client privilege and the work product doctrine, and that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Moreover, Blockbuster and Mr. Stead object to this request because it is overly broad and duplicative of discovery that Netflix has already directed to Blockbuster.

*2. All documents relating to Netflix, including but not limited to Netflix's online rental methods, user experience, website design, and patents.*

<u>Response to Request 2:</u>  Blockbuster and Mr. Stead object to Request 2 to the extent that it seeks material that is subject to attorney-client privilege and the work product doctrine, and that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Moreover, Blockbuster and Mr. Stead object to this request because it is overly broad and duplicative of discovery that Netflix has already directed to Blockbuster.

---

[1] Rule 45(c)(2)(B) provides that a person commanded to produce documents may "within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objections to producing any or all of the designated materials…If objection is made, the party serving the subpoena shall not be entitled to inspect, copy…except pursuant to an order of the court by which the subpoena was issued."

*3. All documents relating to services, consultation, or other work product provided by Accenture, IBM or other third party consultants to Blockbuster in connection with BlockbusterOnline or any online rental service operated, or to be developed, owned, acquired, or operated by Blockbuster.*

Response to Request 3: Blockbuster and Mr. Stead object to Request 3 to the extent that it seeks material that is subject to attorney-client privilege and the work product doctrine, and that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Moreover, Blockbuster and Mr. Stead object to this request because it is overly broad and duplicative of discovery that Netflix has already directed to Blockbuster.

*4. All documents relating to analyses of the market in which Blockbuster and Netflix operate as well as of participants in that market, including Blockbuster and Netflix themselves.*

Response to Request 4: Blockbuster and Mr. Stead object to Request 4 to the extent that it seeks material that is subject to attorney-client privilege and the work product doctrine, and that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Moreover, Blockbuster and Mr. Stead object to this request because it is overly broad and duplicative of discovery that Netflix has already directed to Blockbuster.

*5. All documents relating to Netflix, Inc. v. Blockbuster, Inc., Case No. C-06-2361 (WHA), currently pending in the United States District Court for the Northern District of California.*

Response to Request 5: Blockbuster and Mr. Stead object to Request 5 to the extent that it seeks material that is subject to attorney-client privilege and the work product doctrine, and that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Netflix is not entitled to discover the mental impressions and other work product of Blockbuster's trial counsel in this case. Moreover, Blockbuster and Mr. Stead object to this request because it is overly broad and duplicative of discovery that Netflix has already directed to Blockbuster.

*6. Documents sufficient to show the reasons for your departure from Blockbuster.*

Response to Request 6: Blockbuster and Mr. Stead object to Request 6 to the extent that it seeks material that is subject to attorney-client privilege and the work product doctrine, and that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

## B.    Requested Materials of Mr. Frank

*1. All documents, including but not limited to communications relating to the validity or invalidity of any claim of either of the patents-in-suit.*

Response to Request 1: Blockbuster and Mr. Frank object to Request 1 to the extent that it seeks material that is subject to attorney-client privilege and the work product doctrine, and that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Netflix is not entitled to discover the mental impressions and other work product of Blockbuster's trial counsel in this case. Moreover, Blockbuster and Mr. Frank object to this request because it is overly broad and duplicative of discovery that Netflix has already directed to Blockbuster.

*2. All documents relating to any study, analysis, review, conclusion or opinion (including opinion of counsel) by either Richard A. Frank or any other person, whether written or oral, as to the validity or invalidity of any claim of either of the patents-in-suit, or to the research, investigation or preparation of any such document.*

Response to Request 2: Blockbuster and Mr. Frank object to Request 2 to the extent that it seeks material that is subject to attorney-client privilege and the work product doctrine, and that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Netflix is not entitled to discover the mental impressions and other work product of Blockbuster's trial counsel in this case. Moreover, Blockbuster and Mr. Frank object to this request because it is overly broad and duplicative of discovery that Netflix has already directed to Blockbuster.

*3. All communications relating to agreements to license any patents owned or controlled by NCR.*

Response to Request 3: Blockbuster and Mr. Frank object to Request 3 to the extent that it seeks material that is subject to attorney-client privilege and the work product doctrine, and that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Moreover, Blockbuster and Mr. Frank object to this request because it is overly broad and duplicative of discovery that Netflix has already directed to Blockbuster.

*4. All documents reflecting royalties paid by third parties to NCR relating to any NCR intellectual property.*

Response to Request 4: Blockbuster and Mr. Frank object to Request 4 to the extent that it seeks material that is subject to attorney-client privilege and the work product doctrine, and that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Moreover, Blockbuster and Mr. Frank object to this request because it is overly broad and duplicative of discovery that Netflix has already directed to Blockbuster.

*5. All documents relating to agreements to resolve any claims of infringement of any patents owned or controlled by NCR.*

<u>Response to Request 5:</u>  Blockbuster and Mr. Frank object to Request 5 to the extent that it seeks material that is subject to attorney-client privilege and the work product doctrine, and that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Moreover, Blockbuster and Mr. Frank object to this request because it is overly broad and duplicative of discovery that Netflix has already directed to Blockbuster.

## V.    CONCLUSION

For these reasons, Blockbuster for itself and Bryan Stevenson, Shane Evangelist, Edward Stead, and Richard Frank respectfully moves the Court under Rules 26(c) and 30(d) for protection and objects to the subpoenas of Messrs. Stead and Frank under Rule 45(c)(2)(B).   Blockbuster and Messrs. Stevenson, Evangelist, Stead, and Frank are entitled to a protective order relieving them of answering any questions that would divulge any attorney-client communications with Blockbuster's trial counsel or having to produce any work-product or attorney-client documents concerning Blockbuster's trial counsel.

Respectfully submitted,

Michael L. Raiff
  State Bar No. 00784803
Daniel J. Kelly
  State Bar No. 24041229
VINSON & ELKINS L.L.P.
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Telephone: 214.220.7704
Telecopy:  214.999.7704

**ATTORNEYS FOR MOVANTS**

17

## CERTIFICATE OF CONFERENCE

During depositions on April 10 and 11, 2007, counsel for Movants, Michael Raiff, had conversations with Netflix's counsel, Eugene Paige, concerning deposition questions that improperly invaded the attorney-client privilege and work product privilege. Netflix's counsel disagreed with Mr. Raiff's instructions to the witness and Netflix's lawyer stated that he believes there has been a broader waiver. As a consequence, under Local Rule 7.1(b), the parties could not reach agreement on the issues reflected in this Motion.

Dated: April 11, 2007

By: _____ _with permission_

Michael L. Raiff
Attorney for Movants

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been served by the method identified below this 11th day of April, 2007:

Jeffrey Chanin                                    ***By Fax***
Daralyn J. Durie
KEKER & VAN NEST, LLP
710 Sansome Street
San Francisco, CA 94111-1704
Attorneys for Plaintiff
NETFLIX, INC.


Marshall B. Grossman                           ***By Fax***
William J. O'Brien
ALSCHULER GROSSMAN LLP
1620 26th Street, 4th Floor, North Tower
Santa Monica, CA 90404
Attorneys for Defendant
BLOCKBUSTER INC.

_____
Daniel J. Kelly


Dallas 1239079v.1

# TAB A



Slip Copy                                                                                    Page 1

Slip Copy, 2006 WL 2458717 (N.D.Cal.), 2006-2 Trade Cases P 75,484
(Cite as: Slip Copy)

C
Briefs and Other Related Documents
Netflix, Inc. v. **Blockbuster**, Inc.N.D.Cal.,2006.
United States District Court,N.D. California.
NETFLIX, INC., Plaintiff,
v.
BLOCKBUSTER, INC., Defendant.
**No. C 06-02361 WHA.**

Aug. 22, 2006.

Jeffrey R. Chanin, Asim M. Bhansali, Daralyn J.
Durie, Kevin Thayer Reed, Leo L. Lam, Keker &
Van Nest LLP, San Francisco, CA, for Plaintiff.
Marshall B. Grossman, The Water Garden, Tony D.
Chen, Dominique Naomi Thomas, William J.
O'Brien, Alschuler Grossman Stein & Kahan, Santa
Monica, CA, for Defendant.

**ORDER DENYING NETFLIX'S MOTION TO
DISMISS; MOTION TO STRIKE; AND
MOTION TO BIFURCATE**
WILLIAM ALSUP, District Judge.

**INTRODUCTION**

*1 In this patent-infringement action, plaintiff
Netflix, Inc. moves to dismiss antitrust
counterclaims by defendant **Blockbuster**, Inc., and
moves to strike **Blockbuster's** affirmative defenses
of inequitable conduct and patent misuse. In the
alternative, Netflix moves to bifurcate proceedings
on **Blockbuster's** counterclaims and to stay
discovery on the counterclaims pending resolution
of Netflix's patent-infringement claims. This order
holds that Blockbuster adequately pled its antitrust
counterclaims and affirmative defenses for purposes
of surviving dismissal and striking. Furthermore,
given the relationship between the issues presented
by Netflix's claims and **Blockbuster's**
counterclaims, this order finds that neither
bifurcation nor a discovery stay is warranted at this
time. Accordingly, Netflix's motions are **Denied.**

**STATEMENT**

Netflix is the holder of the two patents in suit,
which described methods for renting items, in
particular for ordering digital video discs via the
Internet (but not transmitting them via the Internet).
Netflix's first patent, U.S. Patent No. 6,584,450 ("
the 450 patent"), issued on June 23, 2003. Its
second patent, U.S. Patent No. 7,024,381 ("the 381
patent"), issued on April 4, 2006. The same
inventors and prosecuting lawyers were involved
with both patents, and both patents were assigned to
Netflix.

Since 1999, Netflix has rented movies on DVDs on
a subscription basis through its website,
www.netflix.com. **Blockbuster** has also rented
DVDs for many years. Until 2004, Blockbuster's
rentals were conducted in traditional
brick-and-mortar stores. On August 11, 2004,
Blockbuster launched "Blockbuster Online," which
provided for the rental of DVDs over the Internet
through its website www.blockbuster.com (Answer
¶ 30).

Netflix filed its application for the 450 patent on
April 28, 2000. According to **Blockbuster**, Netflix
did not disclose *any* prior art in conjunction with
the application (Answer ¶ 39(b)). On May 14,
2003, while the 450 application was still pending,
Netflix filed a continuation application that
ultimately became the 381 patent. At first, Netflix
allegedly still did not disclose any prior art in
conjunction with the 381 application.

On June 14, 2003, the 450 patent issued. The 450
patent described a "method and apparatus for
inventing items." The patent stated 100 claims.
Claim 1 of the patent described (col. 14, lines
43-55):
A method for renting items to customers, the
method comprising the computer-implemented
steps of:
receiving one or more item selection criteria that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                     Page 2

Slip Copy, 2006 WL 2458717 (N.D.Cal.), 2006-2 Trade Cases P 75,484
(Cite as: Slip Copy)

indicates one or more items that a customer desires to rent;

providing to the customer up to a specified number of the one or more items indicated by the one or more item selection criteria; and

in response to receiving any of the items provided to the customer, providing to the customer one or more other items indicated by the one or more item selection criteria, wherein a total current number of items pro-vided to the customer does not exceed the specified number.

*2 Claims 14, 29, 49, 65, 79, 94, and 96 of the 450 patent all described iterations of the claimed method adjusted to the rental of movies.

After the 450 patent issued, Netflix allegedly flooded the PTO with over 100 prior-art references in support of the 381 application, none of which had been disclosed during the prosecution of the 450 patent (Answer ¶¶ 39(d), 44).

Moreover, according to **Blockbuster**, Netflix omitted certain material references in conjunction with *both* patent applications (*id.* at ¶¶ 44-45). Most notably, Netflix purportedly omitted reference to certain patents owned by NCR Corporation, four of which were issued before the 450 application, describing methods on topics such as "Ordering and Downloading Resources from Computerized Repositories" (*id.* ¶ 45).[FN*] These NCR patents were not included in the one hundred prior art references submitted with the 450 application. Netflix has initiated litigation against NCR in this district court, seeking a declaratory judgment for non-infringement of NCR's patents. *Netflix, Inc. v. NCR Corp.*, CV No. 06-1892 EDL. According to **Blockbuster**, the pleadings in that litigation show that Netflix was on notice of the existence of NCR's patents since at least 2003, when NCR sent **Netflix** a request to cease infringement (Answer ¶ 48) (citing complaint in *Netflix v. NCR* ).

        FN* This order takes judicial notice of the nine NCR patents submitted by Netflix (RJN Exhs. A-I). *See* Fed.R.Evid. 201.

As stated, Blockbuster launched its own

online-movie-rental service in August 2004, after the issuance of the 450 patent but during the pendency of the 381 application. Thereafter, in January 2005, **Netflix's** chief executive officer Reed Hastings and **Blockbuster's** then executive vice president Edward Stead purportedly met (Answer ¶ 40). During that meeting, Hastings allegedly " praised **Blockbuster's** competitive position in the online rental business and asked Stead when he had figured out that Netflix's 450 patent was a 'joke' " (*ibid.*).

On April 4, 2006, the 381 patent issued. This second patent described "approach for renting items to customers." Claim 1 of 51 claims described (col. 13, lines 6-23):

A computer-implemented method for renting movies to customers, the method comprising:

providing electronic digital information that causes one or more attributes of movies to be displayed;

establishing, in electronic digital form, from electronic digital information received over the Internet, a movie rental queue associated with a customer comprising an ordered list indicating two or more movies for renting to the customer;

causing to be delivered to the customer up to a specified number of movies based upon the order of the list;

in response to one or more delivery criteria being satisfied, selecting another movie based upon the order of the list and causing the selected movie to be delivered to the customer; and

in response to other electronic digital information received from the customer over the Internet, electronically updating the movie rental queue.

*3 On the very day that the 381 patent issued, April 4, 2006, **Netflix** filed the instant lawsuit alleging infringement by **Blockbuster** of the two patents in issue. On June 13, Blockbuster filed its answer and counterclaims. **Blockbuster** counterclaimed that Netflix violated Section 2 of the Sherman Antitrust Act by committing knowing willful fraud on the Patent and Trademark Office when applying for the two patents in issue, and by asserting these patents in bad faith in sham litigation. Among Blockbuster's affirmative defenses, Blockbuster listed the defenses of inequitable conduct and patent misuse.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                Page 3

Slip Copy, 2006 WL 2458717 (N.D.Cal.), 2006-2 Trade Cases P 75,484
(Cite as: Slip Copy)

## ANALYSIS

Netflix now moves to dismiss **Blockbuster's** counterclaims for violation of the Sherman Act. **Netflix** also moves to strike **Blockbuster's** affirmative defenses of inequitable conduct and patent misuse. In the alternative, Netflix moves to bifurcate its patent claims from Blockbuster's antitrust counterclaims for all purposes including discovery and trial.

### 1. Motion to Dismiss.

A motion to dismiss under FRCP 12(b)(6) tests for legal sufficiency of the claims alleged in the complaint. A complaint should not be dismissed " unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). On the other hand, " conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co* ., 83 F.3d 1136, 1140 (9th Cir.1996).

### A. *Walker Process* Claim.

"As a general rule, behavior conforming to the patent laws oriented towards procuring or enforcing a patent enjoys immunity from the antitrust laws." *Unitherm Food Sys., Inc. v. Swift Eckrich, Inc.,* 375 F.3d 1341, 1356 (Fed.Cir.2004), *rev'd in part on other grounds,* 126 S.Ct. 980 (2006). "But this immunity is hardly absolute. Nearly forty years ago, the Supreme Court recognized that an inventor who obtains a patent by defrauding the patent office deserves no immunity." Such antitrust claims are known as *Walker Process* claims, referring to the Supreme Court's decision in *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.,* 382 U.S. 172, 176 (1965). In order to " ' achiev[e] a suitable accommodation in this area between the differing policies of the patent and antitrust laws,' a distinction must be maintained between patents procured by 'deliberate fraud' and those rendered invalid or unenforceable for other

reasons." *Nobelpharma AB v. Implant Innovations, Inc.,* 141 F.3d 1059, 1069 (Fed.Cir.1998) (quoting *Walker Process,* 382 U.S. 178-79 (Harlan, J., concurring)).

In order to succeed on a claim of *Walker Process* fraud, the antitrust claimant must demonstrate:
(1) obtained the patent by knowingly and willfully misrepresenting facts to the PTO;
(2) the party enforcing the patent was aware of the fraud when bringing suit;
*4 (3) independent and clear evidence of deceptive intent;
(4) a clear showing of reliance, *i.e.,* that the patent would not have issued but for the misrepresentation or omission; and
(5) the necessary additional elements of an underlying violation of the antitrust laws.

*Nobelpharma,* 141 F.3d at 1068-71.

"Like all fraud-based claims, *Walker Process* allegations are subject to the pleading requirements of Fed.R.Civ.P. 9(b)." *Medimmune, Inc. v. Genentech, Inc.,* 427 F.3d 958, 967 (Fed.Cir.2005). "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. Proc. 9(b); *see also Vess v. Ciba-Geigy Corp.,* 317 F.3d 1097, 1106 (9th Cir.2003).

The parties dispute the standard for pleading materiality in the *Walker Process* context. It is clear from the Federal Circuit's precedent, however, that a party claiming *Walker Process* fraud, must plead with particularity the materiality of the references which the patent applicant omitted, by presenting particularized allegations that "but for" the omissions, the PTO would not have granted the patent.

Netflix cites *Makor Issues & Rights, Ltd. v. Tellabs, Inc.,* 437 F.3d 588 (7th Cir.2006), for the proposition that materiality must be pled with exacting particularity. *Makor* is neither controlling nor persuasive. That opinion addressed the pleading requirements under the Private Securities Litigation

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                     Page 4

Slip Copy, 2006 WL 2458717 (N.D.Cal.), 2006-2 Trade Cases P 75,484
**(Cite as: Slip Copy)**

Reform Act of 1995, not under FRCP 9(b). As *Makor* made clear, "the PSLRA essentially returns the class of cases it covers to a very specific version of fact pleading-one that exceeds even the particularity requirement of Federal Rule of Civil Procedure 9(b)." *Id.* at 594.

In contrast, as the Federal Circuit noted, "[w]e have consistently explained that *Walker Process* fraud is a variant of common law fraud." *Unitherm,* 375 F.3d at 1358. What *Walker Process* and FRCP 9(b) require, accordingly, is that **Blockbuster** identify with particularity the reference or group of references that, but for their omission from **Netflix's** patent applications, the PTO would not have granted the applications. *See, e.g., Grid Sys. Corp. v. Texas Instruments Inc.,* 771 F.Supp. 1033, 1039 (N.D.Cal.1991) (for *Walker Process* claim, party must allege that "but for the fraud the affected patents would not have issued").

A party need not plead the intent element of its *Walker Process* claim with particularity. Instead, "it is the 'circumstances' constituting the fraud that must be alleged with specificity." *Competitive Techs. v. Fujitsu Ltd.,* 286 F.Supp.2d 1118, 1149 (N.D.Cal.2003).

* * *

With these principles in mind, this order holds that **Blockbuster** sufficiently pled its *Walker Process* claim for purposes of surviving the motion to dismiss. **Blockbuster** alleged with particularity that **Netflix** knew of certain material prior-art references prior to its two patent applications, but nevertheless failed to disclose the references. The circumstances allow for an inference of fraudulent intent and that, but for these material omissions, the patents would not have issued.

**\*5** *First,* **Blockbuster** adequately alleged that **Netflix** failed to identify the NCR patents during the prosecution of either patent in suit. The misrepresentation underlying a *Walker Process* claim may be "either a fraudulent misrepresentation or a fraudulent omission." *Nobelpharma,* 141 F.3d at 1070.

*Second,* **Blockbuster** also properly pled, for purposes of this motion to dismiss, that **Netflix** was aware of the existence of the NCR patents, but nevertheless failed to point the references out to the PTO examiner. Three of these patents issued before the 450 application. Netflix had a duty to investigate the relevant prior art for purposes of its applications. Beyond this, Netflix's statements during its currently pending litigation against NCR suggest that Netflix knew of these NCR patents by 2003, before the 450 patent issued.

*Third,* **Blockbuster** adequately alleged that but for the omission of the NCR patents from **Netflix's** patent applications, the patents in suit would not have issued.

Netflix tries to isolate one paragraph from **Blockbuster's** counterclaims to conclude that **Blockbuster** failed to meet the materiality requirement. In paragraph 53 of its answer, **Blockbuster** alleged:
**Blockbuster** is informed and believes and thereon alleges that the NCR Patents and all of the other prior art that **Netflix's** Applicants and Representatives knew about and failed to disclose to the Patent Office, as described above was material to both the 450 and 381 patents.

Standing alone this allegation would be too pithy to satisfy FRCP 9(b). But this is only a portion of the other detailed allegations contained in Blockbuster's answer. In paragraph 45, **Blockbuster** described in detail the subject matter of the nine NCR patents omitted from Netflix's applications for the two patents in suit. **Blockbuster** adequately identified the links between the technology claimed in the NCR patents and the **Netflix** patents. As stated, Netflix's patents are directed to a computer-implemented method of renting items. Similarly, NCR's patents were directed to similar computer-implemented methods. For example, NCR's U.S. Patent No. 5,699,526, issued on December 16, 1997, summarized the invention as follows (RJN Exh. A, col. 2, lines 55-67):The present invention discloses a system for managing resources, comprised of multiple servers and one or more PCs coupled to the servers. The servers are grouped into local servers and regional servers,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                              Page 5

Slip Copy, 2006 WL 2458717 (N.D.Cal.), 2006-2 Trade Cases P 75,484
(Cite as: Slip Copy)

wherein each of the local servers stores resources, and each of the regional servers stores profiles of the resources. The profiles contain descriptive information about the resources stored on the local servers. The local and regional servers are linked together so that profiles and resources can electronically transferred there between. A PC coupled to server can view profiles stored in the regional servers, and then electronically order delivery of any resource described in a profile viewed by the PC.

*6 Just as Netflix's patents described methods for selecting preferred items (in particular DVDs) to be delivered to a computer user, so too NCR's above patent described a system of selecting preferred resources that would then be delivered to a computer user. Accordingly, **Blockbuster** has adequately identified, for purposes of this motion to dismiss, prior art that the PTO examiner could have found to anticipate or render obvious the purported inventions disclosed in **Netflix's** patents.

**Blockbuster** also alleged that **Netflix** is currently seeking a declaratory judgment of non-infringement with respect to the NCR patents articulated above, further suggesting that the NCR patents were potentially invalidating references (Answer at ¶¶ 47, 48(c)-(d)). "[E]ven after Netflix had sued NCR over the issue of whether the NCR Patents cover the same rental service Netflix was engaged in patenting, Netflix and its Applicants and Representatives failed to submit the NCR Patents to the Patent Office" (id. at ¶ 52). Although Netflix's declaratory-relief action against NCR does not automatically mean that the NCR patents are invalidating-prior art, the controversy lends support for finding that NCR's patents could have rejected Netflix's patent applications had the PTO examiner known about the NCR patents.

Moreover, Netflix disclosed absolutely *no* prior art in applying for the 450 patent. Shortly after that patent issued, Netflix suddenly bombarded the PTO examiner with over one hundred references in support of the 381 patent (but not the NCR patents). This is so even though the same law firm prosecuted both patent applications, and even though the same named inventors were responsible

for both applications. For Netflix's later patent, the PTO examiner would have needed to swim through a morass of references and then go beyond that morass to find the NCR patents.

Accordingly, **Blockbuster** concluded that "in issuing the 450 and 381 patents, the Patent Office justifiably relied on the foregoing misrepresentations, concealment, and omissions of material prior art and other material facts by Netflix's Applicants and Representatives and that the Office would not otherwise have issued those patents" (Answer at ¶ 100). The total weight of these allegations cumulatively satisfies the requirement under FRCP 9(b) that Blockbuster plead with particularity the "but for" causation underlying its *Walker Process* claim.

*Fourth,* **Blockbuster** sufficiently alleged circumstances constituting **Netflix's** fraudulent intent, consistent with the dictates of FRCP 9(b). **Blockbuster** alleged, as a non-exhaustive list: That **Netflix** failed to disclose the NCR patents to the PTO examiner despite knowing of their existence; that Netflix failed to disclose any prior-art materials until after the issuance of the 450 patent; that Netflix thereafter filed a barrage of prior-art references with the 381 application only months later; and that **Netflix's** own CEO referred to the 450 patent as a "joke." This is more than sufficient particularity at this point in the litigation.

*7 Netflix relies heavily on *MedImmune Inc. v. Genentech Inc.,* CV 03-2567 MRP (C.D.Cal. Dec. 24, 2003) (Br.Exh.A), in which our sister district found that MedImmune failed to sufficiently plead fraudulent intent for its *Walker Process* claim. The *Genentech* decision, of course, is not controlling. It is also not persuasive. At least for purposes of this dismissal motion, **Blockbuster** has alleged independent facts giving rise to an inference of **Netflix's** fraudulent intent to omit and thereby deceive the PTO examiner. In contrast, in *Genentech,* MedImmune simply alleged that there was an omission without other supporting circumstances of fraud. Not so here.

*Finally,* there appears to be no contest that, having found that Blockbuster adequately alleged the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                              Page 6

Slip Copy, 2006 WL 2458717 (N.D.Cal.), 2006-2 Trade Cases P 75,484
**(Cite as: Slip Copy)**

above elements, Blockbuster has also sufficiently alleged the components of an underlying antitrust violation under Section 2 of the Sherman Act. A claim of monopolization under Section 2 of the Sherman Act, requires that a plaintiff allege: "(1) [p]ossession of monopoly power in the relevant submarket; (2) willful acquisition or maintenance of that power; and (3) causal antitrust injury." *Forsyth v. Humana, Inc.,* 114 F.3d 1467, 1475 (9th Cir.1997).

**Blockbuster** alleged that "Netflix's share of the relevant product and geographical markets exceeds 65%" (Answer ¶ 90). **Blockbuster** also alleged that Netflix has sought to maintain its market power by lowering its online DVD rental prices. Allegedly, "Netflix's price reduction was in response to **Blockbuster** Online's own prices, which were lower than Netflix's prices" (*id.* at ¶ 91). As a result of Netflix's purported monopolistic conduct, **Blockbuster** may be forced out of the market, which would cede to Netflix virtually complete control of the online-DVD market.

### B. Sham Litigation.

Blockbuster also sufficiently pled "sham litigation" as an independent basis for its antitrust counterclaims. "Conduct prohibited under antitrust law includes bringing suit to enforce a patent with knowledge that the patent is invalid or not infringed, and the litigation is conducted for anti-competitive purposes. In such events the antitrust immunity of *Noerr-Pennington* ... does not apply to those who seek redress through judicial process." *C.R. Bard, Inc. v. M3 Systems, Inc.,* 157 F.3d 1340, 1368 (Fed.Cir.1998) (internal citations omitted). Where, as here, the alleged anti-competitive behavior consists of bringing a single sham lawsuit, the two findings necessary are that: "(1) the lawsuit must be objectively meritless such that 'no reasonable litigant could expect success on the merits' and (2) it must be found that ' the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor.' " *Ibid.* (quoting *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 60 (1993)); *see also Kottle v. N.W.*

*Kidney Centers,* 146 F.3d 1056, 1060 (9th Cir.1998) ; *Cal. Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 512-13 (1972). "[T]o invoke 'sham' exception the claimant must show 'some abuse of process,' and requiring clear and convincing evidence of bad faith[ ], sham litigation requires more than a failed legal theory." *C.R. Bard,* 157 F.3d at 1368 (quoting *Handgards, Inc. v. Ethicon, Inc.,* 743 F.2d 1282, 1288 (9th Cir.1984)).

*\*8 The objective component of **Blockbuster's** sham-litigation claim is that Netflix purportedly brought this action on the basis of clearly invalid and overbroad patents. If the above allegations about omitted prior-art references, flooding, and withholding prior art from the PTO examiner are proven, plaintiff may demonstrate the requisite abuse of process to succeed on a sham-litigation claim.

Moreover, **Blockbuster** has adequately identified potential bad faith on the part of **Netflix**. **Blockbuster** alleged that Netflix's own CEO considered the 450 patent a "joke." **Blockbuster** also identified with particularity material prior art in the NCR patents, which **Netflix** apparently knew about but failed to disclose during either patent-application process. Again, if proven, these allegations could amount to an antitrust violation.

Blockbuster pled enough facts at this point to overcome dismissal on its *Walker Process* and sham-litigation claims. Netflix will, of course, be entitled to raise its arguments again on summary judgment. Resolution of the claims at this juncture, however, is premature.

### 2. Motion to Strike Affirmative Defenses.

Netflix also moves to strike **Blockbuster's** affirmative defenses of inequitable conduct and patent misuse. Pursuant to a motion under FRCP 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FRCP 12(f) is a vehicle by which to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                              Page 7

Slip Copy, 2006 WL 2458717 (N.D.Cal.), 2006-2 Trade Cases P 75,484
(Cite as: Slip Copy)

issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.,* 697 F.2d 880, 885 (9th Cir.1983). Motions to strike are viewed negatively because of the limited import of the pleadings under the Federal Rules. Accordingly, "motions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsystems, Inc.,* 758 F.Supp. 1335, 1339 (N.D.Cal.1991) (citations omitted).

**A. Inequitable Conduct.**

"Patent applicants are required to prosecute patent applications with candor, good faith, and honesty." *Semiconductor Energy Lab. Co., Ltd. v. Samsung Elecs. Co., Ltd.,* 204 F.3d 1368, 1373 (Fed.Cir.2000) (citing *Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1178 (Fed.Cir.1995)). "[I]nequitable conduct includes affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Ibid.* (internal citation omitted). "The alleged infringer, whether a defendant in a patent infringement suit or a declaratory judgment plaintiff, must demonstrate by clear and convincing evidence both that the information was material and that the conduct was intended to deceive."

The defense of inequitable conduct is subject to the heightened pleading requirements for fraud claims under FRCP 9(b). *See Ferguson Beauregard/Logic Controls v. Mega Sys., LLC,* 350 F.3d 1327, 1344 (Fed.Cir.2003) ("inequitable conduct, while a broader concept than fraud, must be pled with particularity").

**\*9** As stated above, **Blockbuster** pled with sufficient particularity that **Netflix** withheld material prior-art references from the PTO, despite being aware of the existence of those references. Those allegations are also sufficient to support Blockbuster's affirmative defense of inequitable conduct. As **Netflix** concedes, **Blockbuster** need only plead fraudulent intent with respect to the inequitable conduct claim generally. Blockbuster has done so.

**B. Patent Misuse.**

Likewise, Blockbuster adequately alleged patent misuse as an affirmative defense to infringement. As the Federal Circuit has explained:
The defense of patent misuse arises from the equitable doctrine of unclean hands, and relates generally to the use of patent rights to obtain or to coerce an unfair commercial advantage. Patent misuse relates primarily to a patentee's actions that affect competition in unpatented goods or that otherwise extend the economic effect beyond the scope of the patent grant.

*C.R. Bard,* 157 F.3d at 1372 (citing *Mallinckrodt, Inc. v. Medipart, Inc.,* 976 F.2d 700, 703-04 (Fed.Cir.1992)). "Patent misuse is viewed as a broader wrong than antitrust violation because of the economic power that may be derived from the patentee's right to exclude." Accordingly, "misuse may arise when the conditions of antitrust violation are not met."

Given that Blockbuster adequately alleged *Walker Process* fraud and sham litigation for purposes of surviving dismissal, it follows that Blockbuster has satisfied the lower standard for pleading patent misuse. At this juncture, striking the defense is unwarranted.

**3. Bifurcation and Discovery Stay.**

Netflix argues that even if dismissal is inappropriate, the Court should bifurcate this litigation into two phases. **Netflix** accordingly moves to proceed on its claims for patent infringement and defer all proceedings on **Blockbuster's** antitrust claims. **Netflix** argues the Court should postpone not only trial on **Blockbuster's** counterclaims, but also stay all discovery on the antitrust counterclaims until resolution of the infringement claims. This order rejects Netflix's request to bifurcate and stay discovery.

Courts have broad discretion under FRCP 42(b) to bifurcate trials. The rule provides:
The court, in furtherance of convenience or to avoid

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                     Page 8

Slip Copy, 2006 WL 2458717 (N.D.Cal.), 2006-2 Trade Cases P 75,484
**(Cite as: Slip Copy)**

prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

"One of the purposes of Rule 42(b) is to permit deferral of costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues." *Ellingson Timber Co. v. Great N. Ry. Co.,* 424 F.2d 497, 499 (9th Cir.1970). "It is the interest of efficient judicial administration that is to be controlling under the rule, rather than the wishes of the parties." Wright & Miller, *Federal Practice and Procedure,* § 2388 (2d ed. pocket part 2006). "With respect to both discovery and trial," the moving party has the "burden of proving that the bifurcation will promote judicial economy and avoid inconvenience or prejudice to the parties." *Spectra-Physics Lasers, Inc. v. Uniphase Corp.,* 144 F.R.D. 99, 101 (N.D.Cal.1992).

**\*10** It will be more efficient in this action to conduct discovery and pretrial proceedings together. The issues overlap greatly. A determination on Blockbuster's *Walker Process* fraud counterclaim is closely related to a determination as to the validity of the patents in suit. The prosecution history and the omitted prior-art references will be relevant to both inquiries. The same evidence will also be pertinent to Blockbuster's affirmative defenses of inequitable conduct and patent misuse.

Netflix has not demonstrated that it will suffer prejudice if the proceedings go forward together. Conducting discovery on overlapping issues in tandem will ultimately reduce the expenses and time of this litigation for both parties. So will consolidating pretrial proceedings. Allowing both side's cases to go forward now will preserve the option of both being tried together. To rule the other way would foreclose this option.

Netflix relies on *In re Innotron Diagnostics,* 800 F.2d 1077, 1084 (Fed.Cir.1986), for the proposition that there is a "now-standard practice of separating for trial patent issues and those raised in an antitrust counterclaim." Of course, we are a long way from trial now. The immediate task is discovery. By allowing both sides to develop their cases we will be in a better position later to decide the extent to which both cases should be tried to a jury.

Although this order finds bifurcation unwarranted at this juncture, this ruling is without prejudice to either side to seek bifurcation of the trial at the pretrial conference. It may be that the evidence discovered ultimately justifies handling the trial by chapters. For purposes of pretrial proceedings, however, **Netflix's** claims and **Blockbuster's** counterclaims are to proceed in tandem.

### CONCLUSION

For the foregoing reasons, Netflix's motion to dismiss, motion to strike, and motion to bifurcate are all **Denied.**

**IT IS SO ORDERED.**

N.D.Cal.,2006.
Netflix, Inc. v. Blockbuster, Inc.
Slip Copy, 2006 WL 2458717 (N.D.Cal.), 2006-2 Trade Cases P 75,484

Briefs and Other Related Documents (Back to top)

• 2007 WL 412565 (Trial Pleading) Netflix's Claim-Construction Reply Brief (Jan. 10, 2007) Original Image of this Document (PDF)
• 2006 WL 4003222 (Trial Motion, Memorandum and Affidavit) Blockbuster's Brief on Claim Construction (Dec. 27, 2006)
• 2006 WL 3725096 (Trial Pleading) Netflix's Opening Claim-Construction Brief (Dec. 6, 2006) Original Image of this Document (PDF)
• 2006 WL 3847568 (Trial Motion, Memorandum and Affidavit) Dennis Dilbeck's Consolidated Reply in Support of His Motion for Leave to Intervene (Nov. 27, 2006) Original Image of this Document (PDF)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 2458717 (N.D.Cal.), 2006-2 Trade Cases P 75,484
**(Cite as: Slip Copy)**

• 2006 WL 3725097 (Trial Motion, Memorandum and Affidavit) Blockbuster's Opposition to Motion to File Class-Action Complaint in Intervention (Nov. 16, 2006) Original Image of this Document (PDF)
• 2006 WL 3761515 (Trial Pleading) Joint Claim Construction and Prehearing Statement (Nov. 15, 2006)
• 2006 WL 3847567 (Trial Filing) Joint Claim Construction and Prehearing Statement (Nov. 15, 2006) Original Image of this Document (PDF)
• 2006 WL 3227308 (Trial Motion, Memorandum and Affidavit) Blockbuster's Motion to Compel Further Responses to Its First Set of Requests for Production; Supporting Memorandum (Nov. 3, 2006)
• 2006 WL 3761514 (Trial Motion, Memorandum and Affidavit) Blockbuster's Motion to Compel Further Responses to its First Set of Requests for Production; Supporting Memorandum (Nov. 3, 2006)
• 2006 WL 3852242 (Verdict, Agreement and Settlement) Stipulation Requesting Withdrawal of Docket Entries #68, 69, and 70 (Nov. 3, 2006)
• 2006 WL 3193483 (Verdict, Agreement and Settlement) Stipulation Requesting Withdrawal of Docket Entry #62 (Oct. 26, 2006)
• 2006 WL 2870415 (Trial Pleading) Reply to Defendant's Counterclaims (Oct. 2, 2006) Original Image of this Document (PDF)
• 2006 WL 2882312 (Trial Motion, Memorandum and Affidavit) Reply to Defendant's Counterclaims (Oct. 2, 2006) Original Image of this Document (PDF)
• 2006 WL 3223655 (Trial Motion, Memorandum and Affidavit) Reply To Defendant's Counterclaims (Oct. 2, 2006) Original Image of this Document (PDF)
• 2006 WL 2922078 (Trial Pleading) Proposed Complaint in Intervention (Oct. 2006) Original Image of this Document (PDF)
• 2006 WL 2726598 (Trial Pleading) Answer to First Amended Complaint; Counterclaims (Sep. 11, 2006) Original Image of this Document (PDF)
• 2006 WL 2920538 (Trial Pleading) Answer to First Amended Complaint; Counterclaims (Sep. 11, 2006) Original Image of this Document (PDF)
• 2006 WL 2283445 (Trial Motion, Memorandum and Affidavit) Netflix's Reply in Support of its

Motion to Dismiss or, Alternatively, to Bifurcate and Stay Blockbuster's Antitrust Counterclaims and to Strike Affirmative Defenses (Aug. 3, 2006) Original Image of this Document (PDF)
• 2006 WL 2223766 (Trial Motion, Memorandum and Affidavit) Blockbuster's Opposition to Netflix's Motion to Dismiss or, Alternatively, to Bifurcate and Stay Antitrust Counterclaims and to Strike Affirmative Defenses of Unenforceability and Patent Misuse (Jul. 27, 2006) Original Image of this Document (PDF)
• 2006 WL 2223765 (Trial Pleading) First Amended Complaint for Patent Infringement and Demand for Jury Trial (Jul. 26, 2006) Original Image of this Document (PDF)
• 2006 WL 2223767 (Trial Pleading) First Amended Complaint for Patent Infringement and Demand for Jury Trial (Jul. 26, 2006) Original Image of this Document (PDF)
• 2006 WL 2281441 (Trial Motion, Memorandum and Affidavit) Plaintiff Netflix Inc.'s Request for Judicial Notice in Support of its Motion to Dismiss Antitrust Counterclaims and Affirmative Defenses (Jul. 6, 2006) Original Image of this Document (PDF)
• 2006 WL 2922077 (Trial Motion, Memorandum and Affidavit) Plaintiff Netflix's Notice of Motion and Motion to Dismiss or, Alternatively, to Bifurcate and Stay Defendant Blockbuster's Antitrust Counterclaims and to Strike Affirmative Defenses of Unenforceability and Patent Misuse (Jul. 6, 2006) Original Image of this Document (PDF)
• 2006 WL 1716660 (Trial Pleading) Answer to Complaint; Counterclaims (Jun. 13, 2006) Original Image of this Document (PDF)
• 2006 WL 1862082 (Trial Pleading) Answer to Complaint; Counterclaims (Jun. 13, 2006) Original Image of this Document (PDF)
• 2006 WL 1887015 (Trial Pleading) Answer (Jun. 13, 2006)
• 2006 WL 2186655 (Trial Pleading) Answer to Complaint; Counterclaims (Jun. 13, 2006) Original Image of this Document (PDF)
• 2006 WL 1307250 (Trial Pleading) Complaint for Patent Infringement and Demand for Jury Trial (Apr. 4, 2006) Original Image of this Document (PDF)
• 2006 WL 1526921 (Trial Pleading) Complaint for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 10

Slip Copy, 2006 WL 2458717 (N.D.Cal.), 2006-2 Trade Cases P 75,484
(Cite as: Slip Copy)

Patent Infringement and Demand for Jury Trial
(Apr. 4, 2006) Original Image of this Document
(PDF)
• 3:06cv02361 (Docket) (Apr. 4, 2006)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB B

## DECLARATION OF MARSHALL B. GROSSMAN

I, Marshall B. Grossman, declare:

1.    I make this declaration on the basis of personal knowledge. If called to testify as a witness, I would and could testify competently to the matters stated herein.

2.    I am a lawyer in the law firm of Alschuler Grossman LLP, located in Los Angeles, California. I am one of the attorneys in our law firm defending Blockbuster, Inc. in litigation filed by Netflix, Inc. now pending in the United States District Court, Northern District of California, Case No. C062 361 WHA.

3.    The subject of the litigation is two patents issued to Netflix, Inc. and Netflix's claims against Blockbuster that it infringed on each of these two patents. Among Blockbuster's defenses is the defense that the patents are invalid and were procured through fraud on the United States Patent Office.

4.    Our law firm, Alschuler Grossman LLP, had no role whatsoever in the filing or prosecution of the subject patents or any role whatsoever in connection with these patents until it was retained to defend the subject litigation shortly after it was filed. The litigation was filed on April 4, 2006, the date when the second of the two patents was issued.

5.    At no time to my knowledge has Blockbuster ever waived the attorney-client privilege with respect to any communications between it and our law firm.

6.    Ed Stead, Esq. is the former general counsel of Blockbuster. Netflix has served him with a subpoena to appear at his deposition which is now scheduled to occur on April 11, 2007 in Dallas, Texas. A true and correct copy of the subpoena and document request served upon Mr. Stead is attached hereto as Exhibit 1.

7.    Netflix has noticed the deposition of Shane Evangelist of Blockbuster for April 13, 2007 in Dallas, Texas. Mr. Evangelist is the Senior Vice President of Blockbuster and General Manager of Blockbuster online, the online operations of Blockbuster. A true and correct copy of the notice of that deposition is attached hereto as Exhibit 2.

8.    Netflix has also noticed the deposition of Richard Frank for April 20, 2007 in Dallas, Texas. Mr. Frank is the former Vice President of Blockbuster. A true and correct copy of the subpoena and document request served on Mr. Frank is attached hereto as Exhibit 3.

9.    Netflix has served a Rule 30(b)(6) Notice of Deposition on Blockbuster and scheduled that deposition for April 13, 2007. At the end of the day on April 4, 2007, Netflix served a "Third Amended Notice of Deposition on Blockbuster, Inc. Pursuant to Fed. R. Civ. P. 30(B)(6)," noting the deposition date of April 12, 2007. Mr. Evangelist has been designated as one of the 30(b)(6) representative of Blockbuster and is scheduled to testify as such on April 12, 2007. A true and correct copy of this "Third Amended Notice" is attached hereto as Exhibit 4. Blockbuster has also designated Bryan Stevenson, in-house counsel at Blockbuster, to address one of the topics in Netflix's 30(b)(6) notice: Blockbuster's efforts to retain and locate documents in response to Netflix's document requests to Blockbuster.

10.    Netflix's Third Amended Notice lists among the "Topics for Examination" the following subject:

> "All COMMUNICATIONS between BLOCKBUSTER and its counsel, including but not limited to in-house counsels; Alschuler Grossman, LLP and its predecessor firms; Baker Botts, LLP; Blakely Sokoloff Taylor & Zaffman, LLP; and/or Sherman & Sterling, LLP,

2

regarding the validity or invalidity of any claim of either
of the PATENTS-IN-SUIT."

11.    Also, late in the day on April 4, 2007, our law firm was served
with a subpoena issued out of the Central District of California requiring our firm
to testify and produce documents in the subject litigation. A true and correct copy
of the subpoena is attached hereto and marked as Exhibit 5.

12.    The deposition is designated as a 30(b)(6) deposition.

13.    Exhibit 1 to our subpoena to our firm is a schedule titled
"Matters Upon Which Examination Requested." Each and every one of the topics
is directed to communications between Blockbuster and this law firm "regarding
the validity or invalidity of any claim of either of the PATENTS-IN-SUIT."

14.    Any communications which our law firm has ever had, if any,
with Blockbuster "regarding the validity or invalidity of any claim of either of the
PATENTS-IN-SUIT" were limited to the defense of the litigation and are protected
by the attorney-client privilege. Our law firm is duty bound to respect that
privilege and hold the privilege inviolate and we intend to do so. At no time has
Blockbuster ever authorized us to waive or in any way compromise the attorney-
client privilege and relationship which it has with our law firm.

15.    We have provided no legal opinions to Blockbuster concerning
the validity of invalidity of any patent.

I declare under penalty of perjury and under the laws of the United
States of America that the foregoing is true and correct.

Executed this 9th day of April, 2007 at Santa Monica, California.

Marshall B. Grossman

Dallas 1239199v1

4

# EXHIBIT 1

KEKER & VAN NEST, LLP
JEFFREY R. CHANIN - #103649
DARALYN J. DURIE - #169825
ASHOK RAMANI - #200020
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Plaintiff
NETFLIX, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETFLIX, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>BLOCKBUSTER, INC., a Delaware corporation, DOES 1-50,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No. C 06 2361 WHA (JCS)<br><br>**AMENDED NOTICE OF DEPOSITION OF EDWARD STEAD**<br><br>Date:   April 11, 2007<br>Time:   9:30 a.m.<br>Place:  Figari & Davenport, LLP<br>        3400 Bank of America Plaza<br>        901 Main Street<br>        Dallas, Texas 75202<br><br>Complaint filed:   April 4, 2006 |

1    **TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

2         **PLEASE TAKE NOTICE** that, pursuant to Rules 30 and 45 of the Federal Rules of

3    Civil Procedure, Plaintiff, Netflix, Inc. ("Netflix"), by and through its attorneys, will take the

4    deposition of Edward B. Stead, 3704 Stratford Avenue, Dallas, Texas, 75205, telephone:

5    (214) 522-7456, beginning at 9:30 a.m. on April 11, 2007 and continuing from day to day until

6    completed, except for weekends and holidays. Such deposition will take place at the offices of

7    Figari & Davenport, LLP, 3400 Bank of America Plaza, 901 Main Street, Dallas, Texas 75202,

8    telephone (214) 939-2000, or such other time and place as may be mutually agreed upon by

9    counsel.

10        **PLEASE TAKE FURTHER NOTICE** that, pursuant to Federal Rule of Civil

11   Procedure 30(b)(2), the deposition will be taken before a notary public or other officer

12   authorized by the law to administer oaths and will be recorded both stenographically and by

13   sound-and-visual means (i.e., by videotape). Furthermore, provision will be made for real-time

14   monitoring using LiveNote™ or similar means. Netflix reserves the right to use these recordings

15   at the time of trial.

16        A copy of the subpoena for Edward B. Stead's deposition is attached to this notice. Mr.

17   Stead is asked to produce documents and tangible things as set forth in Attachment A to the

18   Subpoena.

19

20   Dated: March 28, 2007                                    KEKER & VAN NEST, LLP

21

22

23                                                           By: _____
                                                                 KEVIN T. REED
24                                                               Attorneys for Plaintiff
                                                                 NETFLIX, INC.
25

26

27

28

AO-88 (Rev. 11/94) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

_____ NORTHERN __ DISTRICT OF CALIFORNIA _____

NETFLIX, INC., a Delaware corporation

v.

BLOCKBUSTER, INC., a Delaware
corporation, DOES 1-50

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] C 06 2361 WHA (JCS)
United States District Court
Northern District of California

TO: EDWARD B. STEAD
3704 Stratford Avenue
Dallas, TX 75205

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
| Figari & Davenport, LLP, 3400 Bank of America Plaza, 901 Main Street, Dallas, Texas 75202 (214)393-2099 | April 11, 2007 9:30 a.m. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A

| PLACE | DATE AND TIME |
| --- | --- |
| Figari & Davenport, LLP, 3400 Bank of America Plaza, 901 Main Street, Dallas, Texas 75202 (214)393-2000 | March 23, 2007 10:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
| --- | --- |
| Attorneys for Plaintiff NETFLIX, INC. | March 28, 2007 |

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER
KEVIN T. REED, KEKER & VAN NEST, 710 Sansome Street, San Francisco, CA 94111
(415) 391-5400

(See Rule 45, Federal Rules of Civil Procedure, parts C & D on reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AO-88

AO 88 (Rev. 11/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                   DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to

the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or the demanding party to contest the claim.

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

# ATTACHMENT A TO SUBPOENA

## DEFINITIONS

As used herein, unless otherwise stated, the terms listed below shall be defined as follows:

1.    "YOU" and "YOUR" refers to EDWARD B. STEAD and his agents, representatives, attorneys, associates, and/or all other persons acting, or purporting to act, on his behalf.

2.    "BLOCKBUSTER" mean Blockbuster, Inc., its parents, subsidiaries, divisions, affiliates, assigns, successors, acquired assets, business units, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, associates, and/or all other persons acting, or purporting to act, on its behalf.

3.    "BLOCKBUSTERONLINE" refers to Blockbuster's online rental service, its predecessors (including, but not limited to, Film Caddy) and successors.

4.    "NETFLIX" means Netflix, Inc., its parents, subsidiaries, divisions, affiliates, predecessors, assigns, successors, acquired assets, business units, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, associates, and/or all other persons acting, or purporting to act, on its behalf.

5.    "IBM" refers to International Business Machines Corp., its parents, subsidiaries, divisions, affiliates, predecessors assigns, successors, acquired assets, business units, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, associates, and/or all other persons acting, or purporting to act, on its behalf.

6.    "ACCENTURE" refers to Accenture, Inc., its parents, subsidiaries, divisions, affiliates, predecessors assigns, successors, acquired assets, business units, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, associates, and/or all other persons acting, or purporting to act, on its behalf.

7.    "PERSON" means individual, individuals, entity, or entities, including, but not limited to, firms, associations, organizations, corporations, partnerships, joint ventures, trusts, or

1

other collective organization or entity, any federal, state, or local government or governmental

agency, and any foreign government or foreign government agency or other organization

recognizable at law, and the "acts" of a person, are defined to include the acts of directors,

officers, owners, members, employees, agents or attorneys acting on the person's behalf.

     8.    "DOCUMENT" means any original and every non-identical copy or reproduction

of any document, thing, writing, or record, including but not limited to: any written, printed,

typed, or other graphic matter of any kind or nature; any physical object or thing; all mechanical,

magnetic, digital, or electric sound or video recordings or transcripts thereof; any retrievable

data, communication (including, but not limited to, electronic mail), information, or statistics

contained on any memory device or other information storage and retrieval systems (whether

stored, encoded, taped, or coded electrostatically, electromagnetically, optically, digitally, or

otherwise); and also, without limitation, agreements, books, catalogs, charts, compilations,

conversations, correspondence, descriptions, diagrams, diaries, directives, drawings, electronic

recordings, facsimile transmissions, files, films, graphs, inspection reports, interoffice

memorandums, instructions, letters, maps, measurements, memoranda, minutes, motion pictures,

notes, notebooks, notices, pamphlets, periodicals, photocopies, photographs, plans, plats,

proposals, publications and published or unpublished speeches or articles, recordings, records,

sampling results, laboratory reports, reports, reproductions, samples, schedules, sketches,

specifications, statements, studies, summaries, surveys, telecopies, telegrams, telephone call

slips, transcripts of telephone conversations, test results, transcripts, videotapes, worksheets, and

working papers, wherever located. "DOCUMENT" also means all copies of documents, by

whatever means made (including, but not limited to, carbon, handwritten, microfilmed,

telecommunicated, photostatic, or xerographic copies), and includes all non-identical copies

(whether different from the original because of any alterations, notes, comments, or other

material contained thereon, attached thereto, or otherwise). "DOCUMENT" also includes any

and all data compilations from which information can be obtained.

     9.    The term "DOCUMENT" also includes any document which did exist, but, as of

2

the date of response and production, has been destroyed, lost, misplaced, or is otherwise unavailable. For any such DOCUMENT, to the extent possible, YOU should identify the DOCUMENT by date, subject matter, author, addressee, and persons to whom the DOCUMENT was distributed; state whether the DOCUMENT was lost, destroyed, or misplaced; and state the name and address of the person who last had custody of or knowledge of the existence of the DOCUMENT.

10.     The term "RELATING TO" is to be construed in the broadest sense to mean information (1) referring to, describing, evidencing, constituting, or otherwise discussing in any way the subject matter identified in a request; (2) which contains or comprises any communication (including representations, requests, demands, studies, analyses, and the like) referred to in the request; or (3) which discusses, mentions, or refers to, whether directly or indirectly, the subject matter of the request.

11.     The terms "AND" and "OR" shall be understood as either conjunctive or disjunctive, whichever is more inclusive in content.

12.     The terms "ANY" and "ALL" shall be considered to include "each and every."

13.     The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of a noun or pronoun so used, and vice versa. Any pronoun shall be construed to refer to the masculine, feminine, or neuter gender, as in each case is most appropriate.

## INSTRUCTIONS

1. These requests apply to ALL DOCUMENTS in YOUR possession, custody, or control at the present time or coming into YOUR possession, custody, or control prior to the date of the production.

2.     If no DOCUMENTS are responsive to a particular request, YOU should state that no responsive DOCUMENTS exist.

3.     For ANY responsive DOCUMENTS or things withheld from production based on ANY ground, including privilege, YOU should provide a written statement or log setting forth:

3

(a) the author(s) of the DOCUMENT;

(b) the nature of the DOCUMENT (e.g., letter, memorandum, chart);

(c) the identity of ALL person(s) who received copies of the DOCUMENT;

(d) the date of the DOCUMENT;

(e) a brief description of the subject matter of the DOCUMENT; and

(f) the legal ground upon which YOU rely in withholding the DOCUMENT.

In addition, for each author, addressee, or recipient, YOU should provide the person's full name, title, and employer or firm, and denote each attorney with an asterisk. For each DOCUMENT or portion of a DOCUMENT withheld on the grounds of privilege, YOU should state the general subject matter of each DOCUMENT, the number of pages of the DOCUMENT, and a description that, although not revealing privileged information, provides sufficiently detailed information to assess the applicability of the privilege claimed. For each DOCUMENT withheld under a claim of work-product privilege, YOU should state whether YOU assert that the DOCUMENT was prepared in anticipation of litigation and, if so, identify the litigation. ANY pages or portions of a DOCUMENT as to which no privilege is claimed should be produced, and if only portions of a DOCUMENT are withheld on the basis of privilege, the withheld portions should be indicated by stamp or other marking showing redaction.

    4.     ALL DOCUMENTS requested are to be produced in the same file or other organizational environment in which they are maintained. For example, a DOCUMENT that is part of a file, docket, or other grouping should be physically produced together with ALL other DOCUMENTS from that file, docket, or grouping, in the same order or manner of arrangement as the original. Alternatively, as to each DOCUMENT and thing produced in response hereto, YOU should identify the request that the DOCUMENT is responsive to. In responding to these requests, YOU should produce DOCUMENTS as they are kept in their original condition (e.g., DOCUMENTS that were stapled, clipped, or otherwise fastened together should be produced in that form).

4

5.      If YOU object to any request, YOU should state with specificity ALL grounds for
the objection.

6.      If any DOCUMENT cannot be produced in full, YOU should produce the
DOCUMENT to the extent possible and specify YOUR reasons for being unable to produce the
remainder.

7.      If any responsive DOCUMENTS have been destroyed or lost, YOU should set
forth the content of the DOCUMENT, the location of ANY copies of the DOCUMENT, and the
date of the destruction or loss, and YOU should identify the person who ordered or authorized
the destruction or who is responsible for the loss.

8.      To the extent required by Rule 26(e) of the Federal Rules of Civil Procedure,
YOU should promptly produce ANY additional DOCUMENTS requested herein that becomes
known to YOU after YOUR initial production of DOCUMENTS in response to these requests.

## REQUESTED MATERIALS

1.      ALL DOCUMENTS RELATING TO YOUR work with BLOCKBUSTER on
BLOCKBUSTERONLINE, or any online rental service operated, or to be developed, owned,
acquired, or operated by BLOCKBUSTER.

2.      ALL DOCUMENTS RELATING TO NETFLIX, including but not limited to
NETFLIX'S online rental methods, user experience, website design, and patents.

3.      ALL DOCUMENTS RELATING TO services, consultation, or other work
product provided by ACCENTURE, IBM or other third party consultants to BLOCKBUSTER in
connection with BLOCKBUSTERONLINE or any online rental service operated, or to be
developed, owned, acquired, or operated by BLOCKBUSTER.

4.      ALL DOCUMENTS RELATING TO analyses of the market in which
BLOCKBUSTER and NETFLIX operate as well as of participants in that market, including
BLOCKBUSTER and NETFLIX themselves.

5.      ALL DOCUMENTS RELATING TO *Netflix, Inc. v. Blockbuster, Inc.*, Case No.

5

C-06-2361 (WHA), currently pending in the United States District Court for the Northern District of California.

       6.       DOCUMENTS sufficient to show the reasons for YOUR departure from BLOCKBUSTER.

6

**PROOF OF SERVICE**

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

On March 28, 2007, I served the following document(s):

**AMENDED NOTICE OF DEPOSITION OF EDWARD STEAD**

☑   by regular **UNITED STATES MAIL** by placing a true and correct copy in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for collection and processing of correspondence for mailing. According to that practice, items are deposited with the United States Postal Service at San Francisco, California on that same day with postage thereon fully prepaid. I am aware that, on motion of the party served, service is presumed invalid if the postal cancellation date or the postage meter date is more than one day after the date of deposit for mailing stated in this affidavit.

William J. O'Brien, Esq.
Alschuler Grossman LLP
1620 26th Street, 4th Floor, North Tower
Santa Monica, CA 90404-4060

Executed on March 28, 2007, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

*Diane Blais Miller*

DIANE BLAIS MILLER

# EXHIBIT 2

1   KEKER & VAN NEST, LLP
    JEFFREY R. CHANIN - #103649
2   DARALYN J. DURIE - #169825
    ASHOK RAMANI - #200020
3   710 Sansome Street
    San Francisco, CA 94111-1704
4   Telephone: (415) 391-5400
    Facsimile: (415) 397-7188
5
    Attorneys for Plaintiff
6   NETFLIX, INC.

7                       UNITED STATES DISTRICT COURT

8                      NORTHERN DISTRICT OF CALIFORNIA

9

10  NETFLIX, INC., a Delaware corporation,     Case No. C 06 2361 WHA (JCS)

11                          Plaintiff,         **AMENDED NOTICE OF DEPOSITION
                                               OF SHANE EVANGELIST**
12             v.
                                               Date:      April 13, 2007
13  BLOCKBUSTER, INC., a Delaware              Time:      9:30 am
    corporation, DOES 1-50,                    Place:     Figari & Davenport, LLP
14                                                        3400 Bank of America Plaza
15                          Defendant.                    901 Main Street
                                                          Dallas, Texas 75202
16
    AND RELATED COUNTERCLAIMS               Complaint filed:    April 4, 2006
17

18

19

20

21

22

23

24

25

26

27

28

389498.01

1     **TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

2     **PLEASE TAKE NOTICE** that, pursuant to Rule 30 of the Federal Rules of Civil

3 Procedure, Plaintiff, Netflix, Inc. ("Netflix"), by and through its attorneys, will take the

4 deposition of Shane Evangelist, beginning at 9:30 a.m. on April 13, 2007 and continuing from

5 day to day until completed, except for weekends and holidays. Such deposition will take place at

6 the offices of Figari & Davenport, LLP, located at 3400 Bank of America Plaza, 901 Main

7 Street, Dallas, Texas 75202, telephone (214) 939-2000 or such other time and place as may be

8 mutually agreed upon by counsel.

9     **PLEASE TAKE FURTHER NOTICE** that, pursuant to Federal Rule of Civil

10 Procedure 30(b)(2), the deposition will be taken before a notary public or other officer

11 authorized by the law to administer oaths and will be recorded both stenographically and by

12 sound-and-visual means (i.e., by videotape). Furthermore, provision will be made for real-time

13 monitoring using LiveNote™ or similar means. Netflix reserves the right to use these recordings

14 at the time of trial.

15

16 Dated: March 28, 2007                KEKER & VAN NEST, LLP

17

18

19                        By: _____
                             KEVIN T. REED

20                              Attorneys for Plaintiff
                             NETFLIX, INC.

21

22

23

24

25

26

27

28

389498.01

1
## PROOF OF SERVICE

2 I am employed in the City and County of San Francisco, State of California in the office of a

3 member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van

4 Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

5 On March 28, 2007, I served the following document(s):

6 **AMENDED NOTICE OF DEPOSITION OF SHANE EVANGELIST**

7 ☑   by regular UNITED STATES MAIL by placing a true and correct copy in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for collection and

8   processing of correspondence for mailing. According to that practice, items are deposited with the United States Postal Service at San Francisco, California on that same day with postage thereon fully prepaid. I

9   am aware that, on motion of the party served, service is presumed invalid if the postal cancellation date or the postage meter date is more than one day after the date of deposit for mailing stated in this affidavit.

10

11
William J. O'Brien, Esq.

12 Alschuler Grossman LLP
1620 26th Street, 4th Floor, North Tower

13 Santa Monica, CA 90404-4060

14

15 Executed on March 28, 2007, at San Francisco, California.

16 I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

17

18

19 _Diane Blais Miller_
DIANE BLAIS MILLER

20

21

22

23

24

25

26

27

28

# EXHIBIT 3

1   KEKER & VAN NEST, LLP
    JEFFREY R. CHANIN - #103649
2   DARALYN J. DURIE - #169825
    ASHOK RAMANI - #200020
3   710 Sansome Street
    San Francisco, CA 94111-1704
4   Telephone: (415) 391-5400
    Facsimile: (415) 397-7188
5
    Attorneys for Plaintiff
6   NETFLIX, INC.

7                   UNITED STATES DISTRICT COURT

8                  NORTHERN DISTRICT OF CALIFORNIA

9

10  NETFLIX, INC., a Delaware corporation,        Case No. C 06 2361 WHA (JCS)

11                                 Plaintiff,     AMENDED NOTICE OF DEPOSITION
                                                  OF RICHARD A. FRANK
12              v.
                                                  Date:      April 20, 2007
13  BLOCKBUSTER, INC., a Delaware                 Time:      9:30 a.m.
    corporation, DOES 1-50,                       Place:     Figari & Davenport LLP
14                                                           3400 Bank of America Plaza
                                   Defendant.                901 Main Street
15                                                           Dallas, TX 75202
16
    AND RELATED COUNTERCLAIMS                     Complaint filed:      April 4, 2006
17

18

19

20

21

22

23

24

25

26

27

28

1      **TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

2          **PLEASE TAKE NOTICE** that, pursuant to Rules 30 and 45 of the Federal Rules of

3    Civil Procedure, Plaintiff, Netflix, Inc., by and through its attorneys, will take the deposition of

4    Richard Allen Frank, 10041 Ferndale Road, Dallas, Texas 75238, telephone: (214) 348-3093,

5    beginning at 9:30 a.m. on April 20, 2007 and continuing from day to day until completed, except

6    for weekends and holidays. Such deposition will take place at the offices of Figari & Davenport,

7    LLP, 3400 Bank of America Plaza, 901 Main Street, Dallas, Texas 75202, telephone (214) 939-

8    2000, or such other time and place as may be mutually agreed upon by counsel.

9          **PLEASE TAKE FURTHER NOTICE** that, pursuant to Federal Rule of Civil

10   Procedure 30(b)(2), the deposition will be taken before a notary public or other officer

11   authorized by the law to administer oaths and will be recorded both stenographically and by

12   sound-and-visual means (i.e., by videotape). Furthermore, provision will be made for real-time

13   monitoring using LiveNote™ or similar means. Netflix reserves the right to use these recordings

14   at the time of trial.

15         A copy of the subpoena for Richard A. Frank's deposition is attached to this notice. Mr.

16   Frank is asked to produce the documents and tangible things as set forth in Attachment A to the

17   Subpoena.

18   Dated: April 6, 2007                          KEKER & VAN NEST, LLP

19

20                                        By:

21                                              KEVIN T. REED
                                                Attorneys for Plaintiff
22                                              NETFLIX, INC.

23

24

25

26

27

28

                                            1

04/06/2007 14:29 FAX 4153977188          KEKER & VAN NEST LLP                    ☑004

AO 58 (Rev. 11/94) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

__NORTHERN__   DISTRICT OF __TEXAS__

NETFLIX, INC., a Delaware corporation

### SUBPOENA IN A CIVIL CASE

v.

BLOCKBUSTER, INC., a Delaware
corporation, DOES 1-50

Case Number:¹ C 06 2361 WHA (JCS)
United States District Court
Northern District of California

TO:  Richard Allen Frank
     10041 Ferndale Road
     Dallas, TX 75238   (214) 348-3083

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to
   testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in
   the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Figari & Davenport LLP, 3400 Bank of America Plaza | April 20, 2007 |
| 901 Main St., Dallas, TX 75202  (214) 939-2000 | 9:30 a.m. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
   place, date, and time specified below (list documents or objects):
See Attachment A for list of requested materials.

| PLACE | DATE AND TIME |
|---|---|
| Figari & Davenport, LLP, 3400 Bank of America Plaza | April 19, 2007 |
| 901 Main St., Dallas, TX 75202   (214) 939-2000 | 10:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated,
the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorneys for Plaintiff NETFLIX, INC. | April 6, 2007 |
| ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER | |
| KEVIN T. REED, KEKER & VAN NEST LLP, 710 Sansome Street | |
| San Francisco, CA 94111  (415) 391-5400 | |

(See Rule 45, Federal Rules of Civil Procedure, parts C & D on reverse)

AO 88 (Rev. 11/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
               DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to

the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or the demanding party to contest the claim.

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## ATTACHMENT A

### DEFINITIONS AND INSTRUCTIONS

1.    "YOU" and "YOUR" refers to Richard A. Frank and his agents, representatives, attorneys, associates, and/or all other persons acting, or purporting to act, on his behalf.

2.    "PERSON" means individual, individuals, entity, or entities, including, but not limited to, firms, associations, organizations, corporations, partnerships, joint ventures, trusts, or other collective organization or entity, any federal, state, or local government or governmental agency, and any foreign government or foreign government agency or other organization recognizable at law, and the "acts" of a person, are defined to include the acts of directors, officers, owners, members, employees, agents or attorneys acting on the person's behalf.

3.    "PATENTS-IN-SUIT" means any of the following, both individually and collectively:

    i.  United States Patent No. 7,024,381, entitled "Approach for Renting Items to Customers," which names as inventors W. Reed Hastings, Marc B. Randolph, and Neil Duncan Hunt, issued April 4, 2006, on an application filed May 14, 2003;

    ii.  United States Patent No. 6,584,450, entitled "Method and Apparatus for Renting Items," which names as inventors W. Reed Hastings, Marc B. Randolph, and Neil Duncan Hunt, issued June 24, 2003, on an application filed April 28, 2000;

    iii.  United States Patent Application No. 10/438,727, filed May 14, 2003; and

    iv.  United States Patent Application No. 09/561,041, filed April 28, 2000.

4.    "NCR" as used herein means NCR Corporation, its subsidiaries, divisions, predecessor and successor companies, affiliates, parents, any joint venture to which it may be a party, and/or each of its employees, agents, officers, directors, representatives, consultants, accountants and attorneys, including any person who served in any such capacity at any time.

5.    "DOCUMENTS" shall have the broadest meaning that Rule 34 of the Federal Rules of Civil Procedure allows, including any writings, drawings, graphs, charts, photographs,

1

1  phonorecords, tape recordings, notes, diaries, calendars, checkbooks, books, papers, accounts,

2  electronic or videotape recordings, email, and any computer-generated, computer-stored, or

3  electronically-stored matter, and other data compilations from which information can be obtained

4  and translated, if necessary, into reasonably useable form, including documents and translated, if

5  necessary, into reasonably useable form, including documents stored on laptop computers,

6  personal digital assistants (PDAs), Blackberrys and other similar devices.

7       6.    "COMMUNICATION" means any provision, receipt, or exchange of any

8  information in any manner or form, including any oral, telephonic, written, electronic or other

9  means of communication.

10      7.    "RELATING TO" means in whole or in part constituting, containing,

11  concerning, discussing, referring, describing, analyzing, identifying, evidencing, or stating.

12      8.    The singular form of a word should be interpreted as plural wherever necessary to

13  bring with the scope of the request any information that might otherwise be construed to be

14  outside its scope.

15      9.    The words "and" and "or" should be construed either disjunctively or

16  conjunctively wherever necessary to bring within the scope of this request any information that

17  might otherwise be construed to be outside its scope.

18      10.   In responding to these Requests, YOU are required to furnish all documents that

19  are available to YOU, including documents in the possession, custody or control of YOUR

20  attorneys, officers, agents, employees, accountants, consultants, representatives, or any persons

21  directly or indirectly employed by or connected with YOU or YOUR attorneys or anyone else

22  subject to YOUR control. All documents that are responsive, in whole or in part, to any portion

23  of these Requests shall be produced in their entirety, including all attachments.

24      11.   All documents should be produced as they are kept in the ordinary course of

25  business or should be organized and labeled to correspond to the specific requests to which they

26  are responsive. All documents should be produced in any file folder or carton in which they

27  have been maintained, and should be stored, clipped, stapled, or otherwise arranged in the same

28  form and manner in which they were found.

2

1    12.    If and to the extent that YOU object to any request, state with specificity all

2    grounds for any such objection.

3    13.    If YOU assert any claim of privilege to object to any request, and YOU do not

4    respond based upon that asserted privilege, state or identify with respect to each such privilege

5    objection: (a) the privilege upon which YOU are relying; and (b) with respect to any specific

6    document(s) as to which YOU assert a privilege, provide a privilege log corresponding to all

7    such documents.

8                              <u>**REQUESTED MATERIALS**</u>

9    1.    All DOCUMENTS, including but not limited to COMMUNICATIONS,

10   RELATING TO the validity or invalidity of any claim of either of the PATENTS-IN-SUIT.

11   2.    All DOCUMENTS RELATING TO any study, analysis, review, conclusion or

12   opinion (including opinion of counsel) by either Richard A. Frank or any other PERSON,

13   whether written or oral, as to the validity or invalidity of any claim of either of the PATENTS-

14   IN-SUIT, or to the research, investigation or preparation of any such DOCUMENT.

15   3.    All COMMUNICATIONS RELATING TO agreements to license any patents

16   owned or controlled by NCR.

17   4.    All DOCUMENTS reflecting royalties paid by third parties to NCR relating to

18   any NCR intellectual property.

19   5.    All DOCUMENTS RELATING TO agreements to resolve any claims of

20   infringement of any patents owned or controlled by NCR.

21

22

23

24

25

26

27

28

                                          3

### PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

On April 6, 2007, I served the following document(s):

### AMENDED NOTICE OF DEPOSITION OF RICHARD A. FRANK

by **FACSIMILE TRANSMISSION (PERSONAL) AND UNITED STATES MAIL**, by transmitting via facsimile a true and correct copy on this date. The transmission was reported as complete and without error. Additionally, a true and correct copy was placed in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for collection and processing of correspondence for mailing. According to that practice, items are deposited with the United States Postal Service at San Francisco, California on that same day with postage thereon fully prepaid. I am aware that, on motion of the party served, service is presumed invalid if the postal cancellation date or the postage meter date is more than one day after the date of deposit for mailing stated in this affidavit.

Marshall B. Grossman, Esq.
William J. O'Brien, Esq.
ALSCHULER GROSSMAN LLP
1620 26th Street, 4th Floor, North Tower
Santa Monica, CA 90404-4060
Fax: 310/907-2033
mgrossman@alschuler.com
wobrien@alschuler.com

Executed on April 6, 2007, at San Francisco, California.

I, Roseann Cirelli, declare under penalty of perjury under the laws of the United States that the above is true and correct.

*Roseann Cirelli*
ROSEANN CIRELLI

1

# EXHIBIT 4

1   KEKER & VAN NEST, LLP
    JEFFREY R. CHANIN - #103649
2   DARALYN J. DURIE - #169825
    ASHOK RAMANI - #200020
3   710 Sansome Street
    San Francisco, CA 94111-1704
4   Telephone: (415) 391-5400
    Facsimile: (415) 397-7188
5
    Attorneys for Plaintiff
6   NETFLIX, INC.

7
                    UNITED STATES DISTRICT COURT
8
                  NORTHERN DISTRICT OF CALIFORNIA
9

10
    NETFLIX, INC., a Delaware corporation,      Case No. C 06 2361 WHA (JCS)
11
                              Plaintiff,        THIRD AMENDED NOTICE OF
12                                              DEPOSITION OF BLOCKBUSTER, INC.
          v.                                    PURSUANT TO FED. R. CIV. P. 30(B)(6)
13
    BLOCKBUSTER, INC., a Delaware               Date:      April 12, 2007
14  corporation, DOES 1-50,                     Time:      9:30 am
                                                Place:     Figari & Davenport, LLP
15                            Defendant.                    3400 Bank of America Plaza
                                                           901 Main Street
16                                                         Dallas, Texas 75202
    AND RELATED COUNTERCLAIMS
17                                              Complaint filed:       April 4, 2006

18

19

20

21

22

23

24

25

26

27

28

1     **TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

2          **PLEASE TAKE NOTICE** that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil

3     Procedure, Plaintiff, Netflix, Inc. ("Netflix"), by and through its attorneys, will take the

4     deposition of Blockbuster, Inc. ("Blockbuster"), beginning at 9:30 a.m. on April 12, 2007 and

5     continuing from day to day until completed, except for weekends and holidays. Such deposition

6     will take place at the offices of Figari & Davenport, LLP, 3400 Bank of America Plaza, 901

7     Main Street, Dallas, Texas 75202, telephone (214) 939-2000, or such other time and place as

8     may be mutually agreed upon by counsel.

9          Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Blockbuster is hereby

10    advised that it is required to designate one or more officers, directors, managing agents or other

11    persons who consent and are most knowledgeable to testify on its behalf with respect to the

12    deposition topics described in Schedule A to this Notice of Deposition. The person or persons so

13    designated shall testify as to matters known or reasonably available to Blockbuster.

14         Blockbuster is requested to identify in writing to Netflix, on or before March 12, 2007,

15    the one or more officers, directors, managing agents, or other persons who consent to testify on

16    its behalf and the subject matters on which each person will testify.

17         **PLEASE TAKE FURTHER NOTICE** that, pursuant to Federal Rule of Civil

18    Procedure 30(b)(2), the deposition will be taken before a notary public or other officer

19    authorized by the law to administer oaths and will be recorded both stenographically and by

20    sound-and-visual means (i.e., by videotape). Furthermore, provision will be made for real-time

21    monitoring using LiveNote™ or similar means. Netflix reserves the right to use these recordings

22    at the time of trial.

23

24    Dated: April 3, 2007                              KEKER & VAN NEST, LLP

25

26

27                                                      By: _____
                                                         **KEVIN T. REED**
28                                                       Attorneys for Plaintiff
                                                         NETFLIX, INC.

                                              1
THIRD AMENDED NOTICE OF FED R. CIV. P. 30(b)(6) DEPOSITION OF BLOCKBUSTER, INC.

## SCHEDULE A

## I. DEFINITIONS

1.      "BLOCKBUSTER" means Blockbuster, Inc., and each of its divisions, subsidiaries, departments, predecessor and successor companies, affiliates, parents, any joint venture to which it may be a party, and/or each of its past and present employees, agents, officers, directors, representatives, consultants, accountants and attorneys, including without limitation BLOCKBUSTERONLINE as defined herein.

2.      "BLOCKBUSTERONLINE" refers to BLOCKBUSTER'S online rental services, (including, but not limited to, services operated in the United Kingdom), their predecessors (including, but not limited to, Film Caddy and Blockbuster "Rental by Post") and successors.

3.      "NETFLIX" as used herein means Netflix, Inc., its subsidiaries, divisions, predecessor and successor companies, affiliates, parents, any joint venture to which it may be a party, and/or each of its employees, agents, officers, directors, representatives, consultants, accountants and attorneys, including any person who served in any such capacity at any time.

4.      "ACCENTURE" as used herein means Accenture, Inc., its subsidiaries, divisions, predecessor and successor companies, affiliates, parents, any joint venture to which it may be a party, and/or each of its employees, agents, officers, directors, representatives, consultants, accountants and attorneys, including any person who served in any such capacity at any time.

5.      "IBM" as used herein means International Business Machines Corporation, its subsidiaries, divisions, predecessor and successor companies, affiliates, parents, any joint venture to which it may be a party, and/or each of its employees, agents, officers, directors, representatives, consultants, accountants and attorneys, including any person who served in any such capacity at any time.

6.      "IMC2" refers to IMC2 GP LLC (d/b/a $IMC^2$), its parents, subsidiaries, divisions, affiliates, assigns, successors, acquired assets, business units, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, associates, and/or all other persons acting, or purporting to act, on its behalf.

7.      "MINTER & REID" refers to Minter & Associates, Inc. (d/b/a "Minter & Reid"

2

1  and/or "The Firestarters"), its parents, subsidiaries, divisions, affiliates, assigns, successors,

2  acquired assets, business units, and any present or former officers, directors, trustees, employees,

3  agents, representatives, attorneys, associates, and/or all other persons acting, or purporting to act,

4  on its behalf.

5      8.    "PATENTS-IN-SUIT" refers to United States Patent Nos. 7,024,381 and

6  6,584,450, both individually and collectively.

7      9.    "COMMUNICATION" means any provision, receipt, or exchange of any

8  information in any manner or form, including any oral, telephonic, written, electronic or other

9  means of communication.

10      10.    The connectives "and" and "or" shall be construed either disjunctively or

11  conjunctively as necessary to bring within the scope of the discovery request all responses that

12  might otherwise be construed to be outside of its scope.

13  ## II. TOPICS FOR EXAMINATION

14      1.    The design, development, and operation of BLOCKBUSTERONLINE.

15      2.    The role played by and contributions of any third party in the design,

16  development, operation, and administration of BLOCKBUSTERONLINE, including without

17  limitation ACCENTURE, IBM, MINTER & REID, and IMC2.

18      3.    Evaluation, analysis, use, and/or testing of NETFLIX by BLOCKBUSTER.

19      4.    When and how BLOCKBUSTER first became aware of the PATENTS-IN-SUIT.

20      5.    Agreements, including without limitation license agreements, royalty agreements,

21  indemnification agreements, sales agreements, agreements concerning patents and related

22  applications, trade secrets, research and development agreements, design agreements, and/or

23  distribution agreements, and any payments made pursuant to such agreements, that address

24  BLOCKBUSTERONLINE entered into between BLOCKBUSTER and any person.

25      6.    The identities and any competitive analyses of all competitors in the market in

26  which NETFLIX and BLOCKBUSTER operate.

27      7.    Any damages that BLOCKBUSTER contends that it has suffered as a result of

28  NETFLIX'S acquisition or assertion of either of the PATENTS-IN-SUIT.

THIRD AMENDED NOTICE OF FED. R. CIV. P. 30(B)(6) DEPOSITION OF BLOCKBUSTER, INC.

8.    The efforts undertaken by BLOCKBUSTER to retain and locate documents, including without limitation email, in support of BLOCKBUSTER'S Fed. R. Civ. P. 26 Initial Disclosures and in response to NETFLIX'S document requests to BLOCKBUSTER.

9.    All COMMUNICATIONS between BLOCKBUSTER and its counsel, including but not limited to in-house counsel; Alschuler Grossman, LLP and its predecessor firms; Baker Botts, LLP; Blakely Sokoloff Taylor & Zafman, LLP; and/or Shearman & Sterling, LLP, regarding the validity or invalidity of any claim of either of the PATENTS-IN-SUIT.

THIRD AMENDED NOTICE OF FED R. CIV. P. 30(b)(6) DEPOSITION OF BLOCKBUSTER, INC.

## PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

On April 4, 2007, I served the following document(s):

**THIRD AMENDED NOTICE OF DEPOSITION OF BLOCKBUSTER, INC. PURSUANT TO FED. R. CIV. P. 30(B)(6)**

by **FACSIMILE TRANSMISSION (PERSONAL) AND UNITED STATES MAIL,** by transmitting via facsimile a true and correct copy on this date. The transmission was reported as complete and without error. Additionally, a true and correct copy was placed in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for collection and processing of correspondence for mailing. According to that practice, items are deposited with the United States Postal Service at San Francisco, California on that same day with postage thereon fully prepaid. I am aware that, on motion of the party served, service is presumed invalid if the postal cancellation date or the postage meter date is more than one day after the date of deposit for mailing stated in this affidavit.

Marshall B. Grossman, Esq.
William J. O'Brien, Esq.
ALSCHULER GROSSMAN LLP
1620 26th Street, 4th Floor, North Tower
Santa Monica, CA 90404-4060
Fax: 310/907-2033

Executed on April 4, 2007, at San Francisco, California.

I, Diane Blais Miller, declare under penalty of perjury under the laws of the United States that the above is true and correct.

*Diane Blais Miller*

DIANE BLAIS MILLER

# EXHIBIT 5

04-04-07    15:34    FROM-                                                T-966    P 011/017    F-144

AO 88 (Rev. 11/94) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

### CENTRAL   DISTRICT OF CALIFORNIA

NETFLIX, INC., a Delaware corporation

v.

BLOCKBUSTER, INC., a Delaware
corporation, DOES 1-50

**SUBPOENA IN A CIVIL CASE**

Case Number: ¹ C 06 2361 WHA (JCS)
United States District Court
Northern District of California

TO: Alschuler Grossman LLP
    1620 26th Street, 4th Floor, North Tower
    Santa Monica, CA 90404-4060   (310) 907-1000

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to
testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in
the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Caldwell, Leslie, Proctor & Pettit, P.C. (213)629-9040 1000 Wilshire Blvd., Ste. 600, Los Angeles, CA 90017 | April 23, 2007 9:30 a.m. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
place, date, and time specified below (list documents or objects):
See Attachment A for topics of examination (Exhibit I) and list of requested
materials (Exhibit II)

| PLACE | DATE AND TIME |
|---|---|
| Caldwell, Leslie, Proctor & Pettit, P.C. 1000 Wilshire Blvd., Ste. 600, Los Angeles, CA 90017 (213) 629-9040 | April 18, 2007 10:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated,
the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorneys for Plaintiff NETFLIX, INC. | April 4, 2007 |

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER
KEVIN T. REED, KEKER & VAN NEST LLP, 710 Sansome Street
San Francisco, CA 94111 (415) 391-5400

(See Rule 45, Federal Rules of Civil Procedure, parts C & D on reverse)

¹ If action is pending in district other than district of issuance, state district under case number.                          AO-88

04-04-07    15:34    FROM-                                        T-968  P 012/017  F-144

AO 88 (Rev. 11/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|

SERVED

SERVED ON (PRINT NAME) | MANNER OF SERVICE

SERVED BY (PRINT NAME) | TITLE

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to

the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or the demanding party to contest the claim.

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## ATTACHMENT A

### DEFINITIONS AND INSTRUCTIONS

1.    "YOU," "YOUR," and "ALSCHULER" mean Alschuler Grossman, LLP and any of its domestic and foreign predecessors, successors, parents, subsidiaries, divisions, affiliates, partnerships, joint ventures, or other entities within their operation or control, and their respective present and former general and limited partners, members, managers, officers, directors, employees, attorneys, agents and advisors, and anyone acting on their behalf.

2.    "BLOCKBUSTER" means Blockbuster, Inc., its parents, subsidiaries, divisions, affiliates, assigns, successors, acquired assets, business units, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, associates, and/or all other persons acting, or purporting to act, on its behalf.

3.    "PATENTS-IN-SUIT" means any of the following, both individually and collectively:

       i.    United States Patent No. 7,024,381, entitled "Approach for Renting Items to Customers," which names as inventors W. Reed Hastings, Marc B. Randolph, and Neil Duncan Hunt, issued April 4, 2006, on an application filed May 14, 2003;

      ii.    United States Patent No. 6,584,450, entitled "Method and Apparatus for Renting Items," which names as inventors W. Reed Hastings, Marc B. Randolph, and Neil Duncan Hunt, issued June 24, 2003, on an application filed April 28, 2000;

     iii.    United States Patent Application No. 10/438,727, filed May 14, 2003; and

     iv.    United States Patent Application No. 09/561,041, filed April 28, 2000.

4.    "DOCUMENTS" shall have the broadest meaning that Rule 34 of the Federal Rules of Civil Procedure allows, including any writings, drawings, graphs, charts, photographs, phonorecords, tape recordings, notes, diaries, calendars, checkbooks, books, papers, accounts, electronic or videotape recordings, email, and any computer-generated, computer-stored, or electronically-stored matter, and other data compilations from which information can be obtained

1

1    and translated, if necessary, into reasonably useable form, including documents and translated, if

2    necessary, into reasonably useable form, including documents stored on laptop computers,

3    personal digital assistants (PDAs), Blackberrys and other similar devices.

4         5.    "COMMUNICATION" means any provision, receipt, or exchange of any

5    information in any manner or form, including any oral, telephonic, written, electronic or other

6    means of communication.

7         6.    "RELATING TO" means in whole or in part constituting, containing,

8    concerning, discussing, referring, describing, analyzing, identifying, evidencing, or stating.

9         7.    The singular form of a word should be interpreted as plural wherever necessary to

10   bring with the scope of the request any information that might otherwise be construed to be

11   outside its scope.

12        8.    The words "and" and "or" should be construed either disjunctively or

13   conjunctively wherever necessary to bring within the scope of this request any information that

14   might otherwise be construed to be outside its scope.

15        9.    In responding to these Requests, you are required to furnish all documents that are

16   available to you, including documents in the possession, custody or control of your attorneys,

17   officers, agents, employees, accountants, consultants, representatives, or any persons directly or

18   indirectly employed by or connected with you or your attorneys or anyone else subject to your

19   control. All documents that are responsive, in whole or in part, to any portion of these Requests

20   shall be produced in their entirety, including all attachments.

21        10.   All documents should be produced as they are kept in the ordinary course of

22   business or should be organized and labeled to correspond to the specific requests to which they

23   are responsive. All documents should be produced in any file folder or carton in which they

24   have been maintained, and should be stored, clipped, stapled, or otherwise arranged in the same

25   form and manner in which they were found.

26        11.   If and to the extent that you object to any request, state with specificity all

27   grounds for any such objection.

28

04/11/2007 04:47 FAX
☑ 078/087

04-04-07    15:35    FROM-                    T-988    P 016/017    F-144

1      12.    If you assert any claim of privilege to object to any request, and you do not

2 respond based upon that asserted privilege, state or identify with respect to each such privilege

3 objection: (a) the privilege upon which you are relying; and (b) with respect to any specific

4 document(s) as to which you assert a privilege, provide a privilege log corresponding to all such

5 documents.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**3**

ATTACHMENT A TO 30(B)(6) SUBPOENA TO ALSCHULER GROSSMAN, LLP
CASE NO. C 06 2361 WHA (JCS)

## EXHIBIT I

## MATTERS UPON WHICH EXAMINATION REQUESTED

Pursuant to the provisions of Rule 30(b)(6) of the Federal Rules of Civil Procedure, you are hereby directed to designate one or more officers, directors, managing agents, or other persons designated by ALSCHULER who consent to testify as to the matters set forth below:

1.      All COMMUNICATIONS between ALSCHULER and BLOCKBUSTER regarding the validity or invalidity of any claim of either of the PATENTS-IN-SUIT.

2.      All studies, analyses, reviews, conclusions or opinions (including opinion of counsel) by either ALSCHULER or any other PERSON, whether written or oral, as to the validity or invalidity of any claim of either of the PATENTS-IN-SUIT.

3.      The efforts undertaken by ALSCHULER to preserve, retain, and locate DOCUMENTS responsive to this subpoena.

4.      The manner of keeping and authenticity of any DOCUMENTS produced pursuant to this subpoena.

4

382986.01



04-04-07   15:35   FROM-                                    T-368   P 017/017   F-144

## EXHIBIT II

### DOCUMENTS REQUESTED

1.   All DOCUMENTS RELATING TO COMMUNICATIONS regarding the validity or invalidity of any claim of either of the PATENTS-IN-SUIT.

2.   All DOCUMENTS RELATING TO any study, analysis, review, conclusion or opinion (including opinion of counsel) by either ALSCHULER or any other PERSON, whether written or oral, as to the validity or invalidity of any claim of either of the PATENTS-IN-SUIT, or to the research, investigation or preparation of any such DOCUMENT.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

5

392986.01

# TAB C

## DECLARATION OF BRYAN P. STEVENSON

I, Bryan P. Stevenson, declare:

1.    I make this declaration on the basis of personal knowledge. If called to testify as a witness, I would and could testify competently to the matters stated herein.

2.    I am an in-house attorney at Blockbuster Inc. and am primarily responsible for the Netflix v. Blockbuster patent infringement litigation pending in the United States District Court for Northern District of California.

3.    On April 10, 2007, I was deposed by counsel for Netflix in Dallas as a 30(b)(6) witness on document retention issues at Blockbuster. During my deposition, Netflix's counsel asked me a series of questions relating to privileged communications I had with Blockbuster's outside counsel, including Alschuler Grossman, Blockbuster's trial counsel in this litigation. I followed my counsel's instructions and did not answer those questions because they were beyond the scope of my 30(b)(6) deposition and because they were directed at privileged attorney-client communications.

4.    I understand that Netflix has served legal process on former Blockbuster in-house counsel, including Ed Stead, its former general counsel and Richard Frank, its former Vice President and Senior Corporate Counsel. In addition, Netflix has served Blockbuster with an Amended 30(b)(6) Notice of Deposition in which Netflix states it will inquire, as Netflix's counsel did during my deposition on April 10, about, "ALL COMMNICATIONS between BLOCKBUSTER and its counsel, including but not limited to in-house counsel; Alschuler Grossman, LLP and its predecessor firms; Baker Botts, LLP; Blakely Sokoloff Taylor & Zafman, LLP; and/or Shearman & Sterling, LLP, regarding the validity or invalidity of either of the PATENTS-IN-SUIT." I also understand Netflix has served our outside independent trial counsel, Alschuler Grossman LLP

with a subpoena. The process served on Alschuler Grossman LLP seeks to require the production of documents and testimony of confidential attorney-client communications between Blockbuster and that law firm, our outside independent trial counsel.

5.    Blockbuster has never requested or received a legal opinion from Alschuler Grossman LLP regarding the validity or invalidity of any claim of any patent involved in the subject litigation.

6.    At no time has Blockbuster intended to or otherwise agreed or in fact waived attorney-client communications between it and the law firm of Alschuler Grossman LLP.

7.    I declare under penalty of perjury and under the laws of the United States of America that the foregoing is true and correct.

Executed this 11th day of April, 2007 at Dallas, Texas.

_Bryan Stevenson_
Bryan P. Stevenson

Dallas 1239211v1

2

# TAB D

STEVENSON ROUGH 4-10-07.txt

3      Q.    Prior to decided to go waive its the

4  attorney-client privilege, did Blockbuster retain all of

5  its communications regarding the validity or invalidity

6  of the '450 patents?

7            MR. RAIFF:  Let me object again that its

8  systems facts and, it is beyond the extent of scope of

9  this deposition and it asks you to reveal information

10 covered by the attorney-client privilege or the work

11 product privilege.  If you can answer based on those

12 instructions, you can.  Otherwise, I instruct you not

13 to.

14     A.    I cannot answer that question.

15     Q.    You're going to follow your counsel's

16 instructions not to answer that question?

17     A.    Yes.

18     Q.    Prior to Blockbuster's decision to waive the

19 attorney-client privilege with respect to the '450

20 patent, did Blockbuster receive any written documents

21 from Alschuler Grossman regarding the validity or

22 invalidity of the '450 patent?

23           MR. RAIFF:  I'll instruct you not to

24 answer that as well on the grounds that it is beyond the

25 scope of this deposition, assumes facts and is

                                                  199


1  privileged under attorney-client privilege and work

2  product privilege.

3      Q.    I think I'm entitled to a yes or no answer to

4  that question.

5            MR. RAIFF:  No, you're not.

6      Q.    Are you going to follow your counsel's

7  instruction not to answer?

                    Page 170

STEVENSON ROUGH 4-10-07.txt

3  any documents relatesing to the validity or invalidity

4  of the 381 patent from any outside counsel?

5           MR. RAIFF:  Same objection and struck,

6  instruct you not to answer, again the question systems

7  facts, is beyond the scope of this deposition as agreed

8  upon.  Is beyond the scope of Category 8 and is

9  requesting privileged information and is improper use of

10  this deposition and is harassing.

11     Q.  Are you going to follow his instructions?

12     A.  Yes.

13     Q.  Mr. Stevenson, what did you do to prepare for

14  your deposition here today?

15     A.  I met with counsel.

16     Q.  When did you meet with counsel?

17     A.  Yesterday.

18     Q.  With whom did you meet?

19     A.  I met with Bill O'Brien and Mike Raiff.

20     Q.  And how long did that meeting last?

21           MR. RAIFF:  I know, that's questionable

22  whether that invades said work printout and

23  attorney-client privilege.  Assume you agree that it is

24  not a waiver, I will let him answer.  Do you agree it's

25  not a waiver?

                                                206


1           MR. PAIGE:  I do.

2           MR. RAIFF:  You can answer that, if

3  you --

4     A.  Approximately 6 hours.

5     Q.  At that meeting, did you discuss the validity

6  or invalidity of either the '450 or '381 patents?

7           MR. RAIFF:  Obviously we're not going to

                        Page 176

STEVENSON ROUGH 4-10-07.txt

8  get into that because it is beyond the scopes of this

9  deposition and it is protected by the attorney-client

10  privilege and work product privileges and is harassing,

11  is an improper use of this deposition and going to

12  instruct him not to answer that question.

13     Q.   Are you going to follow that instruction?

14     A.   Yes.

15          MR. PAIGE:  Mr. Stevenson, I have no

16  further questions for you.  I thank you for your time

17  and courtesy today.

18     A.   Thank you, Gene.

19          MR. PAIGE:  Counsel?

20          MR. RAIFF:  No, we reserve any questions.

21          THE VIDEOGRAPHER:  This is the end of

22  tape 4, Volume 1 of the deposition of Bryan Stevenson.

23  Going off the record, the time is 5:35 p.m.

24          (Deposition concluded) .

25          MR. RAIFF:  It's been explained to me

                                                               207


1  that at the deposition of a third party, is my

2  understanding, it's a third party witness who has been

3  subpoenaed pursuant to rule 45, my understanding is he

4  is going to be appearing at his deposition tomorrow at

5  Vinson & Elkins, and not here at Figari Davenport.  It's

6  right down the street from where we are today.  And so I

7  didn't want there to be any confusion on where the

8  witness will be tomorrow.

9          MR. PAIGE:  And let me make clear on the

10  record that we have depositions noticed for this office

11  all week; that Bill O'Brien made a proposal to move

                           Page 177