1   BINGHAM McCUTCHEN LLP
    Donn P. Pickett (SBN 72257)
2   Mary T. Huser (SBN 136051)
    Three Embarcadero Center
3   San Francisco, CA 94111-4067
    Telephone: (415) 393-2000
4   Facsimile: (415) 393-2286

5
    Marshall B. Grossman (SBN 35958)
6   William J. O'Brien (SBN 99526)
    The Water Garden
7   1620 26th Street
    Fourth Floor, North Tower
8   Santa Monica, CA 90404-4060
    Telephone: (310) 907-1000
9   Facsimile: (310) 907-2000

10  Attorneys for Defendant and Counterclaimant,
    BLOCKBUSTER INC.

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13

14  NETFLIX, INC, a Delaware corporation          Case No. C 06 2361 WHA (JCS)

15              Plaintiff,                          **REQUEST FOR JUDICIAL NOTICE
                                                   IN SUPPORT OF MOTION FOR
16        v.                                       PROTECTIVE ORDER**

17  BLOCKBUSTER INC., a Delaware corporation,      Date:        June 8, 2007
    DOES 1-50,                                     Time:        9:30 A.M.
18                                                 Place:       A, 15th Floor
                Defendant.                          Judge:       Joseph C. Spero
19

20                                                 Complaint Filed:   April 4, 2006

21

22  AND RELATED COUNTERCLAIMS

23

24

25

26

27

28
    ACTIVE/72029414.1

1   Defendant and Counterclaimant Blockbuster Inc. ("Blockbuster") hereby requests

2   that the Court take judicial notice pursuant to Federal Rule of Evidence 201 of the following

3   document:

4       1.    Seagate Technology LLC's Petition for Writ of Mandamus to Vacate

5   Discovery Orders Compelling Disclosure of Privileged Communications of Trial Counsel, filed

6   on September 29, 2006 in the United States Court of Appeals for the Federal Circuit, in the case

7   entitled *In re Seagate Technology, LLC.*, Misc. No. 2006-830.  A true and correct copy of the

8   Petition is attached as **Exhibit A**.

9       Judicial notice of these materials is proper because the Court may judicially notice

10  publicly filed pleadings and orders.  *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th

11  Cir. 1986) (taking judicial notice of pleadings filed in separate lawsuit); *Happy Inv. Group v.*

12  *Lakeworld Properties, Inc.*, 396 F. Supp. 175, 186 n.6 (N.D. Cal. 1975) (taking judicial notice of

13  pleading filed in another case).

14      For the foregoing reasons, Blockbuster respectfully requests the Court to take

15  judicial notice of this document.

16

17  DATED:  May 25, 2007

18

19          BINGHAM MCCUTCHEN LLP

20

21      By:_____ /s Mary T. Huser_____

22          Mary T. Huser

        Attorneys for Defendant

23          BLOCKBUSTER INC.

24

25

26

27

28

**EXHIBIT A**

Misc. No. 2006 - 830

IN THE
# UNITED STATES COURT OF APPEALS
For The Federal Circuit

IN RE SEAGATE TECHNOLOGY, LLC,

*Petitioner*

**On Petition for a Writ of Mandamus to the United States
District Court for the Southern District of New York
(Hon. George B. Daniels)**

**SEAGATE TECHNOLOGY LLC'S
PETITION FOR WRIT OF MANDAMUS TO VACATE
DISCOVERY ORDERS COMPELLING DISCLOSURE
OF PRIVILEGED COMMUNICATIONS OF TRIAL COUNSEL**

TERRENCE P. MCMAHON
STEPHEN J. AKERLEY
LUCY K. KOH
MARY B. BOYLE
MCDERMOTT WILL & EMERY LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
(650) 813-5000

RAPHAEL V. LUPO
PAUL DEVINSKY
BRIAN E. FERGUSON
MCDERMOTT WILL & EMERY LLP
600 13th Street, N.W., 12th Floor
Washington, D.C. 20005-3096
(202) 756-8000

*Attorneys for Petitioner Seagate Technology, LLC*

FILED
U.S. COURT OF APPEALS FOR
THE FEDERAL CIRCUIT

SEP 2 9 2006

JAN HORBALY
CLERK

EXHIBIT A     PAGE 3

# CERTIFICATE OF INTEREST

Pursuant to Circuit Rules 21(a)(2) and 47.4(a)(1), counsel for the petitioner certifies the following:

1.    The full name of every party represented by me is:

        Seagate Technology LLC.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

        None

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:

        Seagate Technology (US) Holdings, Inc., a Delaware corporation;

        Seagate Technology HDD Holdings, Cayman Islands; and

        Seagate Technology, Cayman Islands, (STX on NYSE).

4.    The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or agency or are expected to appear in this court are:

        McDERMOTT WILL & EMERY LLP
        Terrence P. McMahon
        Stephen J. Akerley
        Lucy H. Koh
        Mary B. Boyle
        Edwin Wheeler
        Nicholas Chen
        Brian Baker
        Sabrina Chang
        Mark P. Wine
        Michael G. Oleinik
        Ray Lupo
        Paul Devinsky
        Brian Ferguson

Michael S. Sommer
Ann E. Schofield
Andrew Dallman  (no longer with firm)
Elaine M. Heal(no longer with firm)
Jennifer Ishimoto (no longer with firm)
Cora Schmid (no longer with firm)
Mitchell M. Blakely (no longer with firm)
Keaton Parekh (no longer with firm)
Lorrel A. Birnschein (no longer with firm)

ORRICK, HERRINGTON & SUTCLIFFE LLP
G. Hopkins Guy, III
Peter Bucci (no longer with firm)
David R. Jewell (deceased)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ ii

I.    RELIEF REQUESTED ............................................................... 1

II.   ISSUE PRESENTED ................................................................. 6

III.  FACTS NECESSARY TO UNDERSTAND THE ISSUE
      PRESENTED ............................................................................ 7

      A.    Opinion Counsel ............................................................ 8

      B.    Trial Counsel ............................................................... 10

      C.    Discovery Sought From Trial Counsel and Subsequent
            Proceedings................................................................. 11

IV.   REASONS WHY THE WRIT SHOULD ISSUE ..................... 14

      A.    Extension of Privilege Waiver to Separate and Independent Trial
            Counsel Would Unduly Burden the Attorney-Client Relationship
            and Violate Due Process and Other Constitutional Protections ......... 15

      B.    Seagate Did Not Automatically Waive Privilege for All Trial
            Counsel and Trial Strategy Communications Pertaining to Patent
            Infringement, Validity, and Enforceability by Asserting an Advice
            of Counsel Defense to Willful Infringement ..................................... 18

      C.    If EchoStar Meant To Extend Waiver of Privilege to Separate and
            Independent Trial Counsel, EchoStar Is in Irreconcilable Conflict
            with This Court's En Banc Decision in Knorr-Bremse...................... 19

      D.    Based on EchoStar and Other Precedent of This Court, There
            Should Be No Waiver for Privileged Communications of Separate
            and Independent Trial Counsel Where, as Here, There Are No
            Sword-and-Shield Concerns............................................................. 20

      E.    In Ampex, the Only Post-EchoStar Case To Analyze Privilege
            Waiver Law Under Facts Involving Separate and Independent Trial
            Counsel, the District Court Declined To Extend Waiver to Trial
            Counsel ........................................................................................... 23

      F.    This Court Has Rejected an "Automatic Waiver" of Privilege for
            Plaintiffs in an Analogous Context .................................................. 27

V.    CONCLUSION................................................................................. 29

EXHIBIT    A    PAGE  6

# TABLE OF AUTHORITIES

**Page**

## Cases

*Affinion Net Patents, Inc. v. Maritz, Inc.*, No. Civ. A. 04-360-JJF,
2006 WL 2096712 (D. Del. July 28, 2006) ........................................................ 23

*Akeva L.L.C. v. Mizuno Corp.*, 243 F. Supp. 2d 418 (M.D.N.C. 2003) ................. 26

*Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33 (1980) ...................................... 14

*Ampex Corp. v. Eastman Kodak Co.*, No. Civ. A. 04-1373-KAJ,
2006 U.S. Dist. LEXIS 48702 (D. Del. July 17, 2006) ................................ *passim*

*Baker v. Carr*, 369 U.S. 186, 204 (1962) ............................................................. 17

*Beck Sys., Inc. v. ManageSoft Corp.*, No. 05 C 2036, 2006 WL 2037356
(N.D. Ill. July 14, 2006) ..................................................................................... 23

*Convolve, Inc. v. Compaq Computer Corp.*, 224 F.R.D. 98 (S.D.N.Y. 2004) ...... 1, 7

*Dimick v. Schiedt*, 293 U.S. 474 (1935) ............................................................... 17

*Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340 (Fed. Cir. 2005) ...................... 22

*Genentech, Inc. v. Insmed Inc.*, No. C-04-5429 CW (EMC), 2006 U.S.
Dist LEXIS 55992 (N.D. Cal. Aug. 10, 2006) .................................................... 23

*Hickman v. Taylor*, 329 U.S. 495 (1947) .............................................................. 17

*Hunt v. Blackburn*, 128 U.S. 464 (1888) .............................................................. 16

*In re EchoStar Commc'ns Corp.*, 448 F.3d 1294 (Fed. Cir. 2006),
*reh'g and reh'g en banc denied*, 2006 U.S. App. LEXIS 17511
(Fed. Cir. July 5, 2006) ................................................................................. *passim*

*In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370 (Fed. Cir. 2001) ......................... 14

*In re Regents of the Univ. of Cal.*, 101 F.3d 1386 (Fed. Cir. 1996) ....................... 14

*Indiana Mills & Mfg., Inc. v. Dorel Indus., Inc.*, No. 1:04-cv-01102-
LJM-WTL, 2006 U.S. Dist. LEXIS 34023 (S.D. Ind. May 26, 2006),
*opinion withdrawn*, 2006 U.S. Dist. LEXIS 47852 (S.D. Ind.
July 14, 2006) .................................................................................................... 23

*Informatica Corp. v. Bus. Objects Data Integration*, No. C 02-3378
JSW (JL), 2006 WL 2038461 (N.D. Cal. July 14, 2006), *aff'd*, 2006
WL 2329460 (N.D. Cal. Aug. 9, 2006) .............................................................. 24

*Intex Recreation Corp. v. Team Worldwide Corp.*, No. Civ. A. 04-1785
PLF/DAR, 2006 WL 2023552 (D.D.C. July 14, 2006) ....................................... 24

EXHIBIT ___A___ PAGE ___7___

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383
   F.3d 1337, 1343 (Fed. Cir. 2004) ................................................................ *passim*

*Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989) ................................................. 14

*MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344 (Fed. Cir. 2005) ......... 1

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) ......................... 17

*Upjohn Co. v. United States*, 449 U.S. 383 (1980) ................................................. 6

*Zenith Radio Corp. v. United States*, 764 F.2d 1577 (Fed. Cir. 1985) .............. 28, 29

**Statutes**

28 U.S.C. § 1292(b) ............................................................................................ 13

28 U.S.C. § 1651 .......................................................................................... 1, 29

**Rules**

Fed. R. Civ. P. 30(b)(6) ...................................................................................... 15

Fed. R. Civ. P. 72(a) ............................................................................................ 13

EXHIBIT___A___PAGE__8

# I. RELIEF REQUESTED

Petitioner Seagate Technology LLC ("Seagate") respectfully requests the issuance of a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651, ordering the district court to vacate its Orders[1] which compel production of trial counsel's privileged advice on the broad subject matter of opinion counsel's formal opinions, "i.e., the infringement, validity, and enforcement of the [patents-in-suit],[2] even though there are no sword and shield concerns. These Orders flatly contradict the controlling legal principles set forth in this Court's *Knorr-Bremse* and *EchoStar* decisions.

In *Knorr-Bremse*, the *en banc* Court strongly affirmed a patent defendant's right to rely on opinions of counsel as a defense to willfulness. Moreover, the *en*

---

[1] The Orders submitted for this Court's review are Tab A, Docket No. 268, Magistrate Judge Francis' Order of May 28, 2004 (published as *Convolve, Inc. v. Compaq Computer Corp.*, 224 F.R.D. 98 (S.D.N.Y. 2004)); Tab B, Docket No. 299, Magistrate Judge Francis' Order of September 8, 2004; Tab C, Docket No. 505, District Judge Daniels' Order of July 11, 2006 denying Seagate's objections to Magistrate Judge Francis' Order of May 28, 2004; and Tab D, Docket No. 506, District Judge Daniel's Order of July 11, 2006 denying Seagate's objections to Magistrate Judge Francis' Order of September 8, 2004. This Court has indicated that it reviews collectively as the "district court's rulings" the orders of a magistrate judge together with the district judge's orders sustaining the magistrate judge's orders. *See MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1354 n.2 (Fed. Cir. 2005).

[2] Tab A at 17 (ordering production of "communications between Seagate (or its in-house counsel) and any of its attorneys, *including trial counsel*, with respect to the *subject matter of Mr. Sekimura's opinions, i.e., the infringement, validity, and enforcement of the '635, '267, and '473 patents.*"); *see also id.* at 16 ("Seagate's 'subject matter waiver' . . . extends to the entire subject matter of Mr. Sekimura's opinions – infringement, validity, and enforcement of the patents at issue.").

- 1 -

EXHIBIT __A__ PAGE _9_

*banc Knorr-Bremse* Court overruled long-standing precedent to remove

"inappropriate burdens on the attorney-client relationship"[3] to allow more

flexibility in a patent defendant's ability to rely on opinions of counsel. The

Orders Seagate seeks to vacate contradict *Knorr-Bremse* by forcing a patent

defendant to choose between an opinion of counsel defense to willfulness and

preserving the confidentiality of its communications with trial counsel regarding

the merits of its case. The Orders force this untenable choice even though the

record is undisputed that Seagate has maintained separate and independent trial and

opinion counsel at all times. The Orders give the plaintiffs a license to invade the

most sacred of attorney-client communications—those directed to *trial* strategy

and preparation. As such, taken literally, the Orders destroy Seagate's ability, not

only to adequately defend itself, but even to fairly evaluate the case by consulting

with its trial lawyers. The net effect of the Orders is to essentially deprive a patent

defendant of the ability to rely on opinions of counsel. Such a result flatly

contradicts the statement in *Knorr-Bremse* that there are no special rules for patent

litigants that unduly burden the privilege and distort the attorney-client

relationship.[4]

---

[3] *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1343 (Fed. Cir. 2004) (en banc).

[4] *See Knorr-Bremse*, 383 F.3d at 1344.

EXHIBIT __A__ PAGE __10__

The Orders also conflict with the controlling legal principles set forth in *EchoStar*[5] and other precedent. In *EchoStar*, this Court set forth the following standard for determining the scope of any waiver: "[A] district court should balance the policies to prevent sword-and-shield litigation tactics with the policy to protect work product."[6] This standard indicates that the overriding reason for a privilege waiver rule is to prevent sword-and-shield litigation tactics. In this case, there are no opinion shopping issues. There are no sword-and-shield concerns with respect to trial counsel. The record is undisputed that Seagate has maintained separate and independent litigation and opinion counsel at all times. As such, Seagate reasonably believed that waiver of the privilege associated with an advice of counsel defense would not extend to trial counsel. Under these facts, the policy balance weighs heavily on the side of protecting privilege for trial counsel, and there should be *no* discovery of privileged trial counsel communications. The district court abused its discretion in extending waiver to trial counsel's communications under the circumstances of this case.

The district court erroneously equated an assertion of an advice of counsel defense to willful infringement with the automatic waiver of privilege for the communications of trial counsel encompassing the broad subject matters of

---

[5] *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294 (Fed. Cir. 2006), *reh'g and reh'g en banc denied*, 2006 U.S. App. LEXIS 17511 (Fed. Cir. July 5, 2006).
[6] *Id.* at 1302.

EXHIBIT____A____ PAGE____11____

infringement, validity, and enforceability. According to the district court's Orders,

trial counsel's advice on the subjects of infringement, validity, and enforceability

"must be disclosed *even if it is communicated in the context of trial preparation.*"[7]

Thus, the Orders also conflict with this Court's strong policy in favor of protecting

privilege. In *Echostar*, this Court stated: "We recognize the privilege in order to

promote full and frank communication between a client and his attorney so that the

client can make well-informed legal decisions and conform his activities to the

law."[8] Similarly, in *Knorr-Bremse*, this Court *en banc* stated: "There should be no

risk of liability in disclosures to and from counsel in patent matters; such risk can

intrude upon full communication and ultimately the public interest in encouraging

open and confident relationships between client and attorney."[9]

Moreover, trial counsel cannot do its job if it cannot communicate candidly

and confidentially with its client concerning the merits of the patent case. The

Supreme Court long ago recognized the "necessity" of attorney-client privilege in

making our justice system work.[10] In the instant case, plaintiffs are demanding

discovery of files of trial counsel and deposition testimony from the most senior

---

[7] Tab A, Magistrate Judge Francis' May 28, 2004 Order at 16-17 (emphasis added).
[8] *EchoStar*, 448 F.3d at 1300-01.

[9] *Knorr-Bremse*, 383 F.3d at 1344.

[10] *See Hunt v. Blackburn*, 128 U.S. 464, 470 (1888).

EXHIBIT __A__ PAGE __12__

attorneys on Seagate's trial team. As one district court recently put it, if plaintiffs are correct that "everything [is] fair game for discovery," including everything that trial counsel says to its client about infringement, validity, and enforceability, it "demolish[es] the practical significance of the attorney-client privilege" for patent defendants.[11] The discovery sought in this case will expose the thought processes and legal strategy of defendant's trial counsel to the adversary. The exposure of defense counsel communications on substantive patent issues—communications containing the heart of trial strategy—puts an end to the patent litigation process as we know it.

Because *EchoStar* did not address the scope of the waiver as it applies to trial counsel, courts and litigants have been struggling with uncertainty regarding the law of privilege waiver as applied to trial counsel. Indeed, the *Echostar* decision set off a feeding frenzy among patentee plaintiffs, all seeking to eviscerate the hallowed protections afforded for hundreds of years under the privilege and work product protections. In the several months following *Echostar*, district courts have applied the decision to find waivers of varying scope. Several of the lower court decisions find that the waiver extends to trial counsel, but only when there is some indication either of opinion shopping or when opinion counsel

---

[11] *Ampex Corp. v. Eastman Kodak Co.*, No. Civ. A. 04-1373-KAJ, 2006 U.S. Dist. LEXIS 48702, at *6 & n.3, *10 (D. Del. July 17, 2006).

EXHIBIT A PAGE 13

and trial counsel are the same or have somehow overlapped inappropriately. None, other than the Orders at issue here, have distorted *Echostar* to compel production of trial counsel communications even when those communications relate to trial strategy.

"An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all."[12] Seagate asks this Court to clarify the law regarding the extension of privilege waiver to trial counsel and to find the district court's Orders are based on a clear error of law.

A writ is needed for Seagate to receive effective review of the Orders. Unless this Court grants the writ, Seagate will be deprived of any remedy for the district court's erroneous Orders. Once Seagate's litigation strategy has been exposed to the other side, that bell can never be unrung. Seagate respectfully asks this Court to issue a writ of mandamus instructing the district court to protect the privileged communications of trial counsel in this case.

## II. ISSUE PRESENTED

Whether an accused infringer that asserts an advice-of-counsel defense to a charge of willful infringement automatically waives attorney-client privilege and work-product protection for trial counsel communications relating to the

---

[12] *Upjohn Co. v. United States*, 449 U.S. 383, 393 (1980).

- 6 -

EXHIBIT __A__ PAGE __14__

substantive issues of infringement, validity, and enforceability, where trial counsel

and opinion counsel have been kept entirely separate and independent of one

another throughout the litigation.

## III. FACTS NECESSARY TO UNDERSTAND THE ISSUE PRESENTED

Petitioner Seagate is a defendant in *Convolve, Inc. v. Compaq Computer

Corp.*, No. 1:00-cv-05141-GBD-JCF, a civil case pending in the United States

District Court for the Southern District of New York.  Convolve, Inc. and the

Massachusetts Institute of Technology (collectively, "Convolve") filed a complaint

on July 13, 2000 alleging, among other claims, that Seagate and Compaq

Computer Corporation infringed two patents, U.S. Patent Nos. 4,916,635 (the

"'635 Patent") and 5,638,267 (the "'267 Patent"[13]).  (Tab A, Magistrate Judge

Francis' May 28, 2004 Order at 1-2.).  An amended complaint was filed January 25,

2002, adding a new patent, U.S. Patent No. 6,314,473 (the "'473 patent"), which

issued to Convolve, Inc. in November 2001.  (*Id.* at 2.)  The amended complaint

also alleged willful infringement and sought treble damages.  (*Id.*)

---

[13] The '267 patent is no longer being asserted.  *See* Tab G, Judge Daniels' Order of
July 19, 2006, dkt. no. 509, ¶ 7 ("Plaintiffs' request that their previously stated
position that infringement of the '267 Patent 'is no longer being asserted ...' be
documented is granted.").

EXHIBIT A PAGE 15

## A.    Opinion Counsel

In May 2000, Seagate retained Mr. Gerald T. Sekimura, then a partner with the law firm of Limbach & Limbach, to provide an opinion of counsel with regard to the '635 and '267 patents.  (Tab E, October 6, 2003, Declaration of Betty Ann Durham in Support of Seagate Technology LLC's Opposition to Convolve, Inc.'s Motion to Compel Discovery from Seagate ¶ 2; *see also* Tab A at 2-3.)  Mr. Sekimura provided three written opinions.

Mr. Sekimura provided Seagate with his first opinion, a preliminary written opinion of noninfringement and invalidity of the '635 and '267 patents, on July 24, 2000, only eleven days after the filing of the complaint.  (Tab E ¶ 4; Tab A at 3.) In addition to opining on the '635 and '267 patents, the only patents asserted by plaintiffs at that time, Mr. Sekimura also examined the claims of Convolve's pending International Patent Application WO 99/45535 (the "PCT application"). (Tab E ¶¶ 2, 4; Tab A at 3.)  The U.S. patent application corresponding to the PCT application issued as the '473 patent in November 2001.  (Tab E ¶ 2.)  Mr. Sekimura's July 24, 2000 written preliminary opinion concluded that the claims in the PCT application were either not infringed by Seagate and/or were invalid, but also noted that further analysis was needed because only 186 of the over 340 claims had been reviewed.  (*Id.* ¶ 4, Tab A at 3.)

EXHIBIT___A___PAGE___16___

Mr. Sekimura provided Seagate with a written final opinion of noninfringement, invalidity, and unenforceability of the '635 and '267 patents on December 29, 2000.[14] (Tab E ¶ 5; Tab A at 3.) That report also recommended that further review of the PCT application be postponed and that further review be undertaken if and when a U.S. patent were to issue. (Tab A at 3-4.) The report noted again that only 186 claims had been reviewed. (*Id.* at 4.)

Mr. Sekimura was retained again in March 2002 to provide an opinion regarding the '473 patent that issued in November 2001.[15] (Tab E ¶ 9.) Mr. Sekimura tendered a formal, written opinion of noninfringement and invalidity regarding the fifteen issued claims of the '473 patent to Seagate on February 21, 2003. (*Id.* ¶ 10; Tab A at 4.)

In early 2003, pursuant to Special Master Razzano's scheduling order in the case, Seagate informed plaintiffs of its intention to rely on Mr. Sekimura's opinions of July 24, 2000, December 29, 2000, and February 21, 2003 for an

---

[14] The discussion of unenforceability in the December 29, 2000 opinion was addressed to '267 patent, a patent which is no longer being asserted in this case. (Tab A at 3.)

[15] After the '473 patent issued in November 2001, Seagate attempted to retain Mr. Sekimura to provide an opinion. (Tab E ¶¶ 6, 7.) However, Mr. Sekimura, now with the law firm of Gray Cary, initially declined because of a potential conflict with his new firm. (*Id.* ¶ 7) The amended complaint was filed in January 2002, adding a cause of action for infringement of the '473 patent, and adding allegations of willful infringement. (*Id.* ¶ 8; Tab A at 2.) In February 2002, Seagate again sought Mr. Sekimura's advice regarding the '473 patent, and, after he cleared the conflict, in March 2002, Mr. Sekimura was retained. (Tab E ¶ 9.)

EXHIBIT __A__ PAGE __17__

advice-of-counsel defense to the claim of willful infringement. (Tab A at 5.)

Seagate disclosed the three opinions to the plaintiffs, and made Mr. Sekimura

available for a deposition. (*Id.*) All correspondence and work product were

produced from Mr. Sekimura's files, as were communications with Mr. Sekimura

in Seagate's files. (*Id.*)

## B.    Trial Counsel

Seagate initially retained Orrick, Herrington & Sutcliffe LLP ("Orrick") as

trial counsel to represent Seagate in the Convolve litigation. (*Id.* at 2.) In January

2002, Seagate retained new trial counsel, McDermott Will & Emery LLP

("McDermott"), shortly after Terrence McMahon, Seagate's lead trial counsel,

changed firms from Orrick to McDermott. (*Id.*)

Seagate's trial counsel and opinion counsel operated separately and

independently from one another. (*Id.* at 20.) Seagate has only sought and has only

received opinions outside of Seagate regarding the '635, '267, and '437 patents-in-

suit from Mr. Sekimura.[16] (Tab E ¶ 11.) It is undisputed that neither Orrick nor

McDermott had any influence over the content of Mr. Sekimura's opinions. (Tab

A at 20.) No opinions were sought or obtained from trial counsel. (Tab E ¶¶ 11-

---

[16] In October 1999 Seagate's engineers conducted an internal analysis of
Convolve's '635 and '267 patents. Seagate has produced the internal analysis
documents, and Convolve has deposed the engineers.

EXHIBIT    A    PAGE    18

12.)  Further, Seagate never sought nor received advice from trial counsel

regarding the merits of the opinions of Mr. Sekimura.  (*Id.* ¶ 13.)

### C.    Discovery Sought From Trial Counsel and Subsequent Proceedings

Plaintiffs propounded discovery aimed at piercing Seagate's attorney-client

privilege with its trial counsel and filed a motion to compel such discovery on

October 1, 2003.  (Tab A at 7.)  Plaintiffs sought to obtain

> internal communications on the same subjects as the formal
> [Sekimura] opinions, communications between Seagate and any
> attorneys on the same subjects as the formal opinions, documents
> reflecting outside counsel's opinion as to the same subjects of the
> formal opinions, documents reviewed or considered, or forming the
> basis for outside counsel's opinion as to the subject matter of the
> formal opinions, and documents reflecting when oral communications
> concerning the subjects of the opinions occurred between Compaq
> and outside counsel.

(*Id.* at 7 (quoting Convolve's memorandum in support of its motion to compel)).

Oral argument on the motion was heard on January 20, 2004, before Magistrate

Judge Francis.  (*Id.* at 12 n.4.)

On May 28, 2004, Magistrate Judge Francis issued an Order imposing a

subject matter waiver for all attorney-client communications between Seagate and

outside counsel concerning the general subject matter of Mr. Sekimura's opinions.

(Tab A.)  The May 28, 2004 order stated that Seagate had waived attorney-client

privilege for all trial counsel's communications such that

EXHIBIT A  PAGE 19

> Seagate shall produce all documents, answers to interrogatories, and deposition testimony concerning communications between Seagate (or its in-house counsel) and any of its attorneys, including trial counsel, with respect to the subject matter of Mr. Sekimura's opinions, *i.e.*, the infringement, validity, and enforcement of the '635, '267, and '473 patents.

(*Id.* at 17.)  The Order provided for in camera submission of documents that relate to trial strategy or planning advice regarding validity, infringement, and enforceability, recognizing that trial counsel would address trial strategy "in ways that [did] not implicate the advice-of-counsel defense." (*Id.*)  However, the Order provided that trial counsel's advice on the subjects of infringement, validity, and enforceability "**must be disclosed even if it is communicated in the context of trial preparation.**" (*Id.* at 16-17.) (emphasis added.)  With respect to the temporal scope of the waiver, the Order held that the privilege waiver "continues to such time as Seagate's alleged infringement ends." (*Id.* at 17).  In other words, the Order appears to give plaintiffs a license to discover virtually anything and everything communicated by Seagate's trial counsel to Seagate on the central patent issues until such time as Seagate's alleged infringement ends.

Magistrate Judge Francis issued a second order, on September 8, 2004, which provided that communications and documents of non-trial counsel, including in-house counsel,[17] must be disclosed pursuant to the May 28, 2004

---

[17] Seagate's arguments regarding trial counsel communications apply equally to such communications with in-house counsel as well as to any trial strategy

(continued...)

EXHIBIT___A___PAGE___20___

Order.[18]  (Tab B ¶ 2.)  Seagate timely objected under Fed. R. Civ. P. 72(a) to both

the May 28, 2004 and September 4, 2004 Orders, and the district court denied both

sets of objections on July 11, 2006.  (Tabs C & D.)

On July 24, 2006 Seagate wrote a letter to Magistrate Judge Francis

requesting that he stay his May 28, 2004 and September 8, 2004 orders pending

mandamus review by this Court.  (Tab F.)  Magistrate Judge Francis denied

Seagate's letter application by memo endorsement on July 26, 2006, stating, in

pertinent part, that "[p]articularly in light of the Federal Circuit's decision in

*EchoStar*, Seagate's chances of prevailing on a mandamus petition are slim." (*Id.*)

Seagate then applied to Judge Daniels for an emergency stay of the Orders on

August 1, 2006, and the court denied Seagate's motion on September 14, 2006.

(Tab H.)  On August 14, 2006, Seagate asked the district court to certify its Orders

for interlocutory appeal under 28 U.S.C. § 1292(b).  On September 27, 2006, the

district court denied Seagate's motion.  (Tab I.)

---

communications of in-house counsel.  Patent defendants should not face the
untenable Hobson's choice with either their trial counsel or in-house counsel.
[18] Magistrate Judge Francis interpreted Seagate's objections to the May 28, 2004
Order as applying only to the requirement to produce trial counsel documents and
communications and thus issued the September 8, 2004 order.

On September 26, 2006, plaintiffs requested that the Magistrate Judge compel Seagate to comply with the Orders within five business days. (Tab J.) thus, Seagate's need for immediate relief is clear.

## IV. REASONS WHY THE WRIT SHOULD ISSUE

The remedy of mandamus is limited to extraordinary situations involving a clear abuse of discretion or usurpation of judicial power. *See EchoStar*, 448 F.3d at 1297. The petitioner must show that there is no alternative relief available and that the right to relief is "clear and indisputable." *Id.* (citing *Mallard v. U.S. Dist. Court*, 490 U.S. 296, 309 (1989) and *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980)). A writ of mandamus is an appropriate remedy to prevent the wrongful exposure of privileged communications and information protected by the work-product privilege. *See id.* at 1297-98; *accord In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1388 (Fed. Cir. 1996); *In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370, 1374 (Fed. Cir. 2001).

This Court reviews a district court's determination as to the scope of a privilege waiver under an abuse of discretion standard. *See EchoStar*, 448 F.3d at 1300. In reviewing this petition, this Court will apply its own law because the issue involves the scope of waiver of attorney-client privilege and work-product immunity when a patent defendant asserts the advice-of-counsel defense in response to a charge of willful patent infringement. *See id.* at 1298.

EXHIBIT ___A___ PAGE ___22___

Petitioner meets the legal standards for the writ it seeks. The discovery orders are clearly and indisputably in error. The district court abused its discretion in finding that Seagate waived privilege and work product protection for trial counsel's confidential communications. A writ is needed to correct the district court's erroneous Orders. Unless this Court grants the writ, Seagate will have no way to remedy the errors of the district court's Orders, and privileged information will be wrongfully exposed.

A. **Extension of Privilege Waiver to Separate and Independent Trial Counsel Would Unduly Burden the Attorney-Client Relationship and Violate Due Process and Other Constitutional Protections**

The notion that *Echostar* allows the party opponent and their lawyers to see the trial strategy of their adversary creates the potential for grave abuses and harm. The attempts at and potential for grave abuses are nowhere presented more clearly than in this case. Within days of Magistrate Judge Francis' July 26, 2006 denial of Seagate's request for a stay order, Convolve's lawyers sent demands for depositions of nearly every one of Seagate's trial attorneys including Terrence P. McMahon, Stephen J. Akerley, Lucy H. Koh, Hopkins Guy and Fed. R. Civ. P. 30(b)(6) depositions of both McDermott, Will & Emery and Orrick, Herrington & Sutcliffe. These demands were accompanied by requests for production of all trial lawyer communications relating to the fundamental patent issues presented in this case, namely, noninfringement, invalidity, and unenforceability of the patents at

EXHIBIT___A___PAGE 23

issue. This is stark evidence of how the Orders prohibit the effective assistance of trial counsel, resulting in the denial of right to counsel and Due Process for Seagate and other defendants in patent cases.

The issue here is whether the right to confidential legal advice ends when an accused infringer raises the time-honored defense of reliance on opinion of counsel to willfulness. The answer must be that it does not. There are few aspects of the common law as sacred as the confidentiality that surrounds the attorney-client relationship. And with good reason. As the Supreme Court long ago recognized, the attorney-client privilege "is founded upon the *necessity*, in the interest and administration of justice" under our system, of the right to confide in one's lawyer and obtain legal advice "free from the consequences or the apprehension of disclosure." *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888) (emphasis added).

The practical effect of the Orders is that every time the words "patent", "infringement", "invalidity" or "unenforceability" are uttered by a defendant's trial counsel during the period of alleged infringement, *plaintiffs' counsel* should be invited to listen in on the conversation. The absurdity of the Orders is highlighted by the fact that in some cases such disclosures could continue up until and through trial.

The Court's Orders force Seagate to choose between reliance on advice of opinion counsel as a defense to willfulness and assistance of its trial counsel. This

- 16 -

is an unacceptable choice, particularly in a case where plaintiffs allege hundreds of

millions of dollars in damages are at stake.  Moreover, due process concerns are

heightened if this Hobson's choice is forced upon defendants.  *See, e.g., State*

*Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417-18 (2003).  Indeed, due

process of law is essentially identified with healthy adversarialism.  Article III

empowers a federal court to hear only "actual controversies" with "concrete

adverseness which sharpens the presentation of issues."  *See Baker v. Carr*, 369

U.S. 186, 204 (1962).  Moreover, the Seventh-Amendment right to jury trial has, at

its very heart, the notion of a *fair* trial, which is defeated by the inability of counsel

to consult with and advise its client confidentially.  Any restriction on jury trial

rights is subject to the utmost scrutiny.  *See Dimick v. Schiedt*, 293 U.S. 474, 486

(1935) ("any seeming curtailment of the right to a jury trial should be scrutinized

with the utmost care").  These Orders erroneously eliminate the immunity against

the disclosure of trial strategy to the adversary described in *Hickman v. Taylor*, 329

U.S. 495 (1947).

     If this Court does not instruct the district court to vacate its discovery orders,

Seagate will be forced to disclose its trial counsel's communications regarding the

core issues in the case through the period of alleged infringement to the opposing

counsel and party.  The Orders will *preclude any* communications between Seagate

and its trial counsel on the central patent issues in the case through the period of

EXHIBIT ___A___ PAGE ___25___

alleged infringement. This is an untenable position for Seagate or any patent

defendant, and it turns the defense of willfulness on its head.

**B.**    **Seagate Did Not Automatically Waive Privilege for All Trial Counsel and Trial Strategy Communications Pertaining to Patent Infringement, Validity, and Enforceability by Asserting an Advice of Counsel Defense to Willful Infringement**

Seagate has consistently asserted attorney-client privilege and work product

protection for its communications with trial counsel. The district court nonetheless

found that Seagate waived protection for communications of trial counsel

encompassing the broad subject matters of infringement, validity, and

enforceability, simply as a result of Seagate's decision to rely on advice of counsel

in response to plaintiffs' willfulness charge. Seagate finds itself in this untenable

situation even though it "followed the rules" and intentionally kept opinion counsel

and trial counsel completely separate and independent. It is undisputed that

Seagate's trial counsel played no role in selecting opinion counsel, did not

contribute to the opinion, and did not influence the drafting of the opinions in any

way. Moreover, it is undisputed that Seagate did *not* engage in opinion shopping.

There is no indication that Mr. Sekimura's opinions are anything but *bona fide*, and

no indication that Seagate's reliance on the opinions is anything but reasonable and

*bona fide*. The undisputed facts show there are no sword-and-shield concerns in

this case.

- 18 -

**C.    If *EchoStar* Meant To Extend Waiver of Privilege to Separate and Independent Trial Counsel, *EchoStar* Is in Irreconcilable Conflict with This Court's *En Banc* Decision in *Knorr-Bremse***

If the steps Seagate took are not sufficient to preserve attorney-client privilege with trial counsel, then the law obliterates attorney-client privilege for patent defendants who elect to rely on opinion letters.  Such a result cannot be squared with the cornerstone principle of *Knorr-Bremse* that there are to be no special rules in patent law that unduly burden the privilege and distort the attorney-client relationship.  *See Knorr-Bremse*, 383 F.3d at 1343.

Interpreting *EchoStar* as extending privilege waiver to separate and independent trial counsel places *Echostar* in direct conflict with the *en banc* opinion in *Knorr-Bremse*.  Indeed, it negates the entire rationale of *Knorr-Bremse*.  In *Knorr-Bremse*, the *en banc* Court plainly was attempting to allow more flexibility in the reliance or non-reliance on opinions of counsel.  To that end, *Knorr-Bremse* stated that it was overruling long-standing precedent to remove "inappropriate burdens on the attorney-client relationship."  *Id*. at 1343.  This Court could not have intended that the next step in the evolution of the law would be to allow the use of opinions only in exchange for all trial counsel communications.  Such an interpretation makes no sense.  *Knorr-Bremse* and *EchoStar* together would result in an impossible Catch-22 for patent defendants.  That is not a rational view of the law.

EXHIBIT __A__ PAGE __27__

Seagate believed, based upon decades of precedent, that, if it maintained separate trial and opinion counsel, waiver of the privilege associated with an advice of counsel defense would not extend to trial counsel. That is an entirely reasonable belief, in view of the stated purpose of privilege waiver—to prevent sword-and-shield tactics. *EchoStar* reaffirmed the law in this respect.

**D.    Based on *EchoStar* and Other Precedent of This Court, There Should Be No Waiver for Privileged Communications of Separate and Independent Trial Counsel Where, as Here, There Are No Sword-and-Shield Concerns**

Correctly read, *EchoStar* and *Knorr-Bremse* do not conflict on either law or policy. It bears emphasizing that *EchoStar* did not address the communications of trial counsel because such communications were not before the Court. The facts before the *EchoStar* Court concerned only opinion counsel. In *EchoStar*, this Court stated the general rule that when a party invokes reliance on advice of counsel as a defense to willful infringement, it waives the attorney-client privilege with regard to any attorney-client communications relating to the same subject matter. *See EchoStar*, 448 F.3d at 1299. As the *EchoStar* Court explained, privilege waiver is driven by its purpose:

> [S]elective waiver of the privilege may lead to the inequitable result that the waiving party could waive its privilege for favorable advice while asserting its privilege on unfavorable advice. In such a case, the party uses the attorney-client privilege as both a sword and a shield. ***To prevent such abuses***, we recognize that when a party defends its actions by disclosing an attorney-client communication, it waives the

EXHIBIT____A____ PAGE 28

attorney-client privilege as to all such communications regarding the same subject matter.

*Id.* at 1301 (emphasis added) (citations omitted).

That is the *only* reason that we have the privilege waiver rule. As this Court has explained, "[t]he overarching goal of waiver ... is to prevent a party from using the advice he received as both a sword, by waiving privilege to favorable advice, and a shield, by asserting privilege to unfavorable advice." *Id.* at 1303 (citations omitted). Yes, fairness requires the waiver rule. But equally for fairness reasons, the privilege waiver must be no broader than necessary to effectuate the goal of the waiver. Otherwise, the danger will be exactly the one with which Seagate is faced: an attempt by an opportunistic adversary to exercise "unfettered discretion to rummage through all of [trial counsels'] files and pillage all of their litigation strategies." *Id.* at 1303. If that is what the law in fact allows, the cure is worse than the disease.

Seagate preserved its attorney-client privilege with trial counsel. The way in which Seagate kept separate litigation and opinion counsel eliminated the specter of any sword-and-shield abuses. It would serve no beneficial purpose to extend waiver to Seagate's trial counsel, and it will compromise Seagate's litigation position. Sword-and-shield concerns are absent, so there is no basis in law or logic for finding a waiver here. This is in harmony with the statement made by this Court in *Fort James* that a court looks to a number of factors to determine a scope

- 21 -

of privilege waiver that is neither too broad nor too narrow: "There is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349-50 (Fed. Cir. 2005). It would be inconsistent to find that *EchoStar*, in contrast, set forth a *per se* rule.

In *EchoStar*, this Court stated: "[A] district court should balance the policies to prevent sword-and-shield litigation tactics with the policy to protect work product." 448 F.3d at 1302. This Court then applied a balancing analysis to the discoverability of opinion counsel's work product. What this Court did *not* say was that henceforth, there was to be a bright line rule of waiver for all communications to the client both by opinion counsel and separate trial counsel on the central patent issues. Indeed, such an automatic waiver rule would contradict *EchoStar*'s directive to the district court to balance the policies to determine whether waiver should be imposed. In applying that balance, sword-and-shield concerns are one side of the scale. If there are no sword-and-shield concerns as is the case here, there is certainly nothing to balance, and there can be no finding of waiver. Said another way, if there is nothing to balance against the policy to protect the privilege, the privilege must prevail.

EXHIBIT ___A___ PAGE _30_

It is undisputed that there are no opinion-shopping issues in this case.  Trial

counsel has done what trial counsel is supposed to do—advise on and run the

litigation.  Seagate has kept trial counsel and opinion counsel in their separate

spheres and independent of one another.  Without any specter of sword-and-shield

tactics, there is nothing to counterbalance the policy to protect privileged

communications and work product.  Under these conditions, there should be no

waiver of privilege for trial counsel communications.  Therefore, on the undisputed

record, the district court erred in finding waiver of privilege.

> **E.    In *Ampex*, the Only Post-*EchoStar* Case To Analyze Privilege
>         Waiver Law Under Facts Involving Separate and Independent
>         Trial Counsel, the District Court Declined To Extend Waiver to
>         Trial Counsel**

Since *EchoStar*, there have been a number of district court decisions

involving extension of privilege waiver to trial counsel.  However, the vast

majority of the cases involve opinion and trial counsel from the same firm.[19]  Only

---

[19]  Where trial counsel and opinion counsel overlap, the issue presented is not
solely waiver of *trial counsel*'s communications, as here, but of *opinion counsel*'s
communications as well.  As *Ampex* observed, such overlap is "an unfortunate
blending of roles that is, thankfully, rare and beyond the discussion provided here."
*Ampex*, 2006 U.S. Dist. LEXIS 48702, at *11 n.4.  The other post-*EchoStar* cases
are *Affinion Net Patents, Inc. v. Maritz, Inc.*, No. Civ. A. 04-360-JJF, 2006 WL
2096712 (D. Del. July 28, 2006); *Beck Sys., Inc. v. ManageSoft Corp.*, No. 05 C
2036, 2006 WL 2037356 (N.D. Ill. July 14, 2006); *Genentech, Inc. v. Insmed Inc.*,
No. C-04-5429 CW (EMC), 2006 U.S. Dist LEXIS 55992 (N.D. Cal. Aug. 10,
2006), *objections overruled*, dkt. no. 576 (N.D. Cal. Sept. 5, 2006); *Indiana Mills
& Mfg., Inc. v. Dorel Indus., Inc.*, No. 1:04-cv-01102-LJM-WTL, 2006 U.S. Dist.
LEXIS 34023 (S.D. Ind. May 26, 2006), *opinion withdrawn*, 2006 U.S. Dist.
LEXIS 47852 (S.D. Ind. July 14, 2006); *Informatica Corp. v. Bus. Objects Data*
(continued...)

EXHIBIT    A    PAGE 31

one case, *Ampex*, specifically analyzes how *EchoStar* applies to trial counsel when

opinion and trial counsel have been kept separate and independent.  In that case,

the district court declined to extend waiver to trial counsel.  *Ampex Corp. v.*

*Eastman Kodak Co.*, No. Civ. A. 04-1373-KAJ, 2006 U.S. Dist. LEXIS 48702, at

*9 (D. Del. July 17, 2006) (Tab K).  *Ampex* based its ruling on its understanding

that *EchoStar* **did not** authorize the district court to go so far.  *Id.* at *10-11.

In *Ampex*, the plaintiff sought all communications between Kodak and its

trial counsel "bearing on the subject of infringement" on the grounds that

"*Echostar* ... makes everything fair game for discovery."[20]  *Id.* at *2, *6.  The

*Ampex* court rejected any reading of *EchoStar* that "[a]ny time trial counsel is

talking to their client about infringement, [plaintiff] is entitled to know about it."

*Id.* at *6.

---

*Integration*, No. C 02-3378 JSW (JL), 2006 WL 2038461 (N.D. Cal. July 14,
2006), *aff'd*, 2006 WL 2329460 (N.D. Cal. Aug. 9, 2006); *Intex Recreation Corp. v.*
*Team Worldwide Corp.*, No. Civ. A. 04-1785 PLF/DAR, 2006 WL 2023552
(D.D.C. July 14, 2006).

[20]  Interestingly, the *Ampex* court noted that initially the plaintiff contended that
*EchoStar* entitled it to every communication from counsel. *Ampex*, 2006 U.S. Dist.
LEXIS 48702, at *6 n.3.  The court observed that plaintiff "backed off" that
position and asserted instead that *EchoStar*'s "core holding" was that "discovery
should not be permitted as a sword and shield" and "that principle [was] sufficient
to require disclosure of trial counsel's communication [to its adversary in the
*Ampex*] case." *Id.*

EXHIBIT_____A_____ PAGE _32_

The *Ampex* court found no indication in *EchoStar* that showed "a desire by the Court of Appeals to have every communication a client has with its trial counsel on the very subject of an infringement trial open to review by opposing counsel." 2006 U.S. Dist. LEXIS 48702, at *9. Plaintiff's reading of *EchoStar*, the court stated, "[was] far too broad and [the plaintiff's motion was] an extravagant demand at odds with the generally understood contours of the attorney-client privilege." *Id.* at *7.

Instead, the *Ampex* court explained that the "broad language" in *EchoStar* must be taken in context. The court took note that *EchoStar* did not address the issue of communications with trial counsel. 2006 U.S. Dist. LEXIS 48702, at *11. Rather, in *EchoStar*, the concern was whether EchoStar was attempting to suppress an unfavorable opinion from opinion counsel on the basis of privilege while relying on another, more favorable opinion, the classic sword-and-shield fact pattern of selective disclosure. "It is hardly surprising that the [Federal Circuit], given those facts, would call that maneuver a foul." 2006 U.S. Dist. LEXIS 48702, at *9. In agreement with Seagate's reading of *EchoStar*, the *Ampex* court identified as the controlling principle that the attorney-client privilege cannot be used as a sword and a shield: "[S]elective waiver of the privilege may lead to the inequitable result that the waiving party could waive its privilege for favorable

advice while asserting its privilege on unfavorable advice." *Id.* at *8 (citing *EchoStar*, 448 F.3d at 1301).[21]

The *Ampex* court further observed that "if all attorney-client discussions touching on the same subject were to be viewed as 'advice' or 'opinions' on a par with the legal opinions that were at issue in *Echostar*, the [*EchoStar*] court's comments would have to be understood as demolishing the practical significance of the attorney-client privilege." *Id.* at *10. Such a result would be flatly inconsistent with other portions of *EchoStar* and with the Federal Circuit's jurisprudence regarding attorney-client privilege, particularly *Knorr-Bremse*, 383 F.3d at 1344. *See id.*

The *Ampex* court is the only court since *EchoStar* to analyze privilege waiver under facts which are similar to Seagate's. Judge Jordan reached the correct result. The same outcome should apply here, and there should be no discovery of trial counsel's communications.

---

[21]  The *Ampex* court specifically addressed and rejected plaintiff's contention that *EchoStar*'s citation of the *Akeva* case established that waiver should extend to separate and independent trial counsel. *See Ampex*, 2006 U.S. Dist. LEXIS 48702, at *11 (referencing *Akeva L.L.C. v. Mizuno Corp.*, 243 F. Supp. 2d 418 (M.D.N.C. 2003)). "What [the plaintiff] Ampex ignores is that *Akeva* dealt with circumstances in which the defendant expressly relied on its trial counsel's noninfringement opinion to continue operating, while awaiting a separate opinion from another source." *Id.* (referencing *Akeva*, 243 F. Supp. 2d at 419-20). "That is not akin to the facts in [the *Ampex*] case" nor to the facts in this case. *Id.*

EXHIBIT ___A___ PAGE ___34___

**F.    This Court Has Rejected an "Automatic Waiver" of Privilege for Plaintiffs in an Analogous Context**

In the *Zenith* case, this Court rejected an automatic waiver rule for plaintiffs in an analogous context. *Zenith Radio Corp. v. United States*, 764 F.2d 1577 (Fed. Cir. 1985) (reversing orders to produce documents and other discovery). The issue in *Zenith* was whether plaintiffs may bring a claim and then "hide behind the shield of a privilege and withhold testimony that may materially aid the defense while invoking the aid of the court in prosecuting a claim." *Id.* at 1579 (citation omitted).

In *Zenith*, this Court rejected outright an approach taken by some other courts, namely, an "automatic waiver" rule. For similar reasons as in *Zenith*, no automatic waiver rule should apply here. This Court explained that attorney-client, work product, and executive communications privileges "involve subtle and sensitive questions and ordinarily should not be breached without a more penetrating analysis than the automatic waiver rule involves." *Id.* at 1580. "A party does not automatically waive these privileges, which protect the formulation of legal opinions or litigation strategy, simply by bringing suit." *Id.* Here, too, this Court should clarify that a patent defendant cannot and does not automatically waive its privileges as to all trial counsel communications simply because it raises a defense to willfulness.

The Court in *Zenith* discussed two other approaches: a balancing test, which balances the need for discovery against the need for protecting discovery, and the

EXHIBIT___A___PAGE_35_

more demanding *Hearns* test, which considers whether, among other facts, the opposing party is seeking discovery "vital to his defense." *See id.* at 1579. *Zenith*'s balancing test is similar to the balancing approach in *EchoStar*. In *Zenith*, however, this Court found it unnecessary to choose between the two remaining tests because Zenith failed to make the "strong showing of need" to breach the privilege under either test. *See id.* at 1580. This Court stated, "These matters [sought to be discovered] are tangential to and remote from the central legal issue in the case [the government's rights under certain settlement agreements]. ... [T]heir probative value is too weak to justify breaching the important privileges the government asserted ...." *Id.* at 1580-81.

*EchoStar* did not adopt an automatic waiver rule for all client communications of all counsel, including trial counsel, on infringement, validity, and enforceability. If, on the other hand, *EchoStar* marks the end of privilege (which it cannot) for trial counsel after an advice of counsel defense to willfulness, then there is no such defense going forward. No patent defendant will ever again assert reliance on an opinion letter, if it means that privilege is lost for communications with trial counsel on substantive patent issues. As observed *supra*, that is entirely inconsistent with the decision of the *en banc* Court in *Knorr-Bremse* to overrule long-standing, harsh precedent so that the law of privilege for patent cases would be brought into line with the law of privilege for other areas of law.

EXHIBIT A PAGE 36

## V. CONCLUSION

Seagate has exhausted its remedies in the district court and has no choice but to seek review from this Court. Seagate respectfully requests that this Court clarify the law and eliminate the dilemma that currently exists for Seagate and other patent defendants. For all the above reasons, the Court should issue a writ of mandamus under 28 U.S.C. § 1651 ordering the district court to vacate its Orders of July 11, 2006, May 28, 2004, and September 8, 2004 to produce Seagate's trial counsel communications protected by attorney-client privilege and work-product protection.

Dated:  September 28, 2006

Respectfully Submitted,

Raphael V. Lupo
Paul Devinsky
Brian E. Ferguson
McDermott Will & Emery LLP
600 13th Street, N.W., 12th Floor
Washington, D.C.  20005-3096
(202) 756-8000

Terrence P. McMahon
Stephen J. Akerley
Lucy H. Koh
Mary B. Boyle
McDermott Will & Emery LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
(650) 813-5000

Counsel for Petitioner Seagate Technology LLC

EXHIBIT  A  PAGE 37

1   **PROOF OF SERVICE**

2       I am over 18 years of age, not a party to this action and employed in the County

3   of Los Angeles, California at 355 South Grand Avenue, Suite 4400, Los Angeles, California

4   90071-3106.  I am readily familiar with the practice of this office for collection and processing

5   of correspondence for mail/fax/hand delivery/next business day delivery/electronic transmission,

6   and they are deposited that same day in the ordinary course of business.

7       On May 25, 2007, I served the following document:

8   **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF**
    **MOTION FOR PROTECTIVE ORDER**
9

10  ☒   (BY ELECTRONIC TRANSMISSION) These documents were transmitted, by
        electronic transmission from nichele.goitia@bingham.com and the transmission
11      was reported as complete and without error.  I then caused the transmitting e-mail
        account to properly issue a report confirming the electronic transmission.
12

13

14  **Jeffrey R. Chanin, Esq.**          **Eugene M. Paige, Esq.**
    Email:  jrc@kvn.com                 Email:  emp@kvn.com
15  **Ashok Ramani, Esq.**               **Kevin T. Reed, Esq.**
    Email:  axr@kvn.com                 Email:  kreed@kvn.com
16  **Asim M. Bhansali, Esq.**           **Leo L. Lam**
    Email:  amb@kvn.com                 Email:  leo@kvn.com
17  **Daralyn J. Durie, Esq.**           KEKER & VAN NEST, LLP
    ddurie@kvn.com                      710 Sansome Street
18  KEKER & VAN NEST, LLP               San Francisco, CA  94111-1704
    710 Sansome Street                  Phone: 415.391.5400
19  San Francisco, CA  94111-1704       Fax: 415.397.7188
    Phone: 415.391.5400
20  Fax: 415.397.7188

21

22      I declare that I am employed in the office of a member of the bar of this court at

23  whose direction the service was made and that this declaration was executed on May 25, 2007, at

24  Los Angeles, California.

25

26                              _____
                                Nichele M. Goitia
27

28

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION FOR PROTECTIVE
ORDER C 06 2361 WHA (JCS)