BINGHAM McCUTCHEN LLP
Donn P. Pickett (SBN 72257)
donn.pickett@bingham.com
Mary T. Huser (SBN 136051)
mary.huser@bingham.com
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286

Marshall B. Grossman (SBN 35958)
marshall.grossman@bingham.com
William J. O'Brien (SBN 99526)
william.obrien@bingham.com
The Water Garden
1620 26th Street
Fourth Floor, North Tower
Santa Monica, CA 90404-4060
Telephone: (310) 907-1000
Facsimile: (310) 907-2000

Attorneys for Defendant and Counterclaimant,

BLOCKBUSTER INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETFLIX, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>BLOCKBUSTER, INC., a Delaware corporation,<br><br>Defendant. | Case No. C 06 2361 WHA (JCS)<br>**NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BLOCKBUSTER'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND NON-INFRINGEMENT** |
| AND RELATED COUNTERCLAIMS | Hearing Date:    August 2, 2007<br>Time:             8:00 A.M.<br>Courtroom:        9, 19th Floor<br><br>Complaint Filed:  April 4, 2006<br>Trial Date:       September 17, 2007 |

## PUBLICLY REDACTED VERSION

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
BLOCKBUSTER'S MOTION FOR SUMARY JUDGMENT OF INVALIDITY AND NON-INFRINGEMENT
CASE NO. C 06 2361 WHA (JCS)

ACTIVE/72047111.8

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    Statement of issues to be decided ...................................................................... 2

III.   FACTS ............................................................................................................... 2

       A.    History of Subscription Rental............................................................... 4

       B.    The Netflix Patents ................................................................................ 6

       C.    Prior Art ................................................................................................. 8

             1.    Subscription Video Stores............................................................ 8

             2.    Tape Rental Library ..................................................................... 8

             3.    Reference Guide........................................................................... 8

             4.    Yoshida European Patent Application .......................................... 9

             5.    Netflix's a La Carte Service......................................................... 9

IV.    THE PRIOR ART INVALIDATES NETFLIX'S CLAIMS AS A MATTER OF
       LAW ................................................................................................................ 10

       A.    Legal Background ................................................................................ 10

       B.    The '450 Patent .................................................................................... 12

             1.    The Reference Guide, at a Minimum, Renders Obvious The
                   Claims of the '450 Patent............................................................ 12

             2.    Tape Rental Library, at a Minimum, Renders the Claims of the
                   '450 Patent Obvious.................................................................... 15

             3.    The Yoshida Patent Application, at a Minimum, Renders the
                   Claims of the '450 Patent Obvious. ............................................ 16

             4.    Prior-Art Subscription Video Rental Stores ............................... 18

       C.    The Asserted Claims in the '381 Patent Are Obvious Variations of
             Known Business Methods Using Newer Technology ............................ 18

       D.    Secondary Considerations Cannot Overcome a Strong Showing of
             Obviousness. ........................................................................................ 23

V.     BLOCKBUSTER DOES NOT INFRINGE THE ASSERTED CLAIMS OF
       NETFLIX'S PATENTS...................................................................................... 26

       A.    Blockbuster Online Does Not Impose a Specified Number Maximum
             Limit on the Number of Items Provided to Customers.......................... 27

       B.    Blockbuster Online's Selection Process Is Not Configured To Provide
             Items "in the Desired Order," "Based Upon the Desired Order," or
             "Based Upon the Order of the List."..................................................... 29

VI.    CONCLUSION................................................................................................. 30

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
BLOCKBUSTER'S MOTION FOR SUMARY JUDGMENT OF INVALIDITY AND NON-INFRINGEMENT
CASE NO. C 06 2361 WHA (JCS)

ACTIVE/72047111.8

# TABLE OF AUTHORITIES

**Page**

### Cases

*Akzo N.V. v. U.S. Int'l Trade Comm'n.*, 808 F.2d 1471 (Fed. Cir. 1986)....................10

*Alza Corp. v. Mylan Labs., Inc.*, 464 F.3d 1286 (Fed. Cir. 2006) ...............................11

*Anderson's Black Rock, Inc. v. Pavement Salvage Co.*, 396 U.S. 57 (1969) .............12

*Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557 (Fed. Cir.
    1988) ........................................................................................................................10

*DE Techs., Inc. v. Dell, Inc.*, Case No. 7:04-cv-00628, 2006 WL 335608
    (W.D. Va. Feb. 14, 2006) ........................................................................................14

*Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337 (Fed. Cir. 2007) ......................................3

*Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389
    F.3d 1370 (Fed. Cir. 2004) .....................................................................................26

*Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966)...........................10, 12

*In re Lamberti*, 545 F.2d 747 (CCPA 1976)................................................................13

*Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963 (Fed. Cir. 2006).................................25

*KSR International Co. v. Teleflex Inc.*, 127 S. Ct. 1727 ( 2007) ...........................passim

*Leapfrog Enterprises, Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157 WL
    1345333 (Fed. Cir. 2007)........................................................................11, 14, 23

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) ......................27

*Merck & Co., Inc. v. Biocraft Labs., Inc.*, 874 F.2d 804 (Fed. Cir. 1989)...................13

*Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757 (Fed. Cir. 1988) ............10, 11, 12

*Orthopedic Equip. Co. v. U.S.*, 702 F.2d 1005 (Fed. Cir. 1983) .................................10

*Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348 (Fed. Cir. 2007) ................................24, 25

*Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714 (Fed. Cir. 1991)...................................10

*Sakraida v. Ag Pro, Inc.*, 425 U.S. 273 (1976) ...........................................................12

*Ecolochem, Inc. v. So. Cal. Edison Co.*, 227 F.3d 1361 (Fed. Cir. 2000) ..................26

*Lear Siegler, Inc. v. Sealy Mattress Co.*, 873 F.2d 1422 (Fed. Cir. 1989) .................28

*Lucas Aerospace Ltd. v. Unison Indus., L.P.*, 890 F.Supp. 329 (D. Del.
    1995) ........................................................................................................................30

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) .............................................15

*Dystar Textilfarben GmbH & Co. v. C.H. Patrick Co.*, 464 F.3d 1356
    (Fed. Cir. 2006)........................................................................................................25

*Hakim v. Cannon Avent Group, PLC*, 479 F.3d 1313 (Fed. Cir. 2007).......................10

*Jeneric/Pentron, Inc. v. Dillon Co., Inc.*, 205 F.3d 1377 (Fed. Cir. 2000).................29

*Ormco Corp. v. Align Tech, Inc.*, 463 F.3d 1299 (Fed. Cir. 2006)..............................24

*Texas Instruments, Inc. v. U.S. ITC*, 988 F.2d 1165 (Fed. Cir. 1993) .........................30

i

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
BLOCKBUSTER'S MOTION FOR SUMARY JUDGMENT OF INVALIDITY AND NON-INFRINGEMENT
CASE NO. C 06 2361 WHA (JCS)

ACTIVE/72047111.8

## Statutes

35 U.S.C. § 103(a). ............................................................................................ 10

35 U.S.C.  §  103 ................................................................................................ 12

35 USC § 102 .................................................................................................... 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ii

ACTIVE/72047111.8

1                                  **NOTICE OF MOTION**

2            PLEASE TAKE NOTICE that Defendant Blockbuster Inc.'s Motion for Summary

3 Judgment of Invalidity and Non-Infringement shall be brought for hearing before the Honorable

4 William H. Alsup, United States District Court, 450 Golden Gate Avenue, San Francisco,

5 California on Thursday, August 2, 2007 at 8:00 a.m.

6                    **MEMORANDUM OF POINTS AND AUTHORITIES**

7     **I.**       **INTRODUCTION**

8            The claims in Netflix's two asserted patents are either anticipated or obvious

9 combinations of prior art, as a matter of law.  Undisputed evidence shows that Netflix merely

10 applied long-established subscription rental practices to the computer and the Internet – and did

11 so at a time when creating e-commerce versions of existing brick-and-mortar businesses was all

12 the rage.

13            As the Supreme Court recently emphasized in *KSR International Co. v. Teleflex Inc.*

14 ("*KSR*"), obviousness is a question of law, and it is determined by using common sense, not any

15 rigid formula.  *KSR* teaches that it is obvious to use known elements to perform their known

16 functions in a new context.  This case presents a classic example of just that.  Undisputed facts

17 show that the same business model that Netflix took to the Internet – and patented – existed long

18 before Netflix.

19                                     **REDACTED**

20

21            So did prior-art audio rental services and libraries, often using a list or

22 queue.  Before the Patent Office, Netflix relied on a lack of evidence of these very same features

23 to argue for allowance.

24            Now that the critical facts missing from the Patent Office proceedings have been

25 revealed,                **REDACTED**

26                                          Patenting use of computers and the Internet to

27 practice a pre-existing business method is precisely the kind of abuse that *KSR* stands against.

28

1   The record now provides ample uncontroverted facts to support the legal determination that

2   Netflix's patents are invalid.

3           Netflix's infringement claims against Blockbuster also fail as a matter of law.  To

4   overcome the Examiner's rejection of its patent claims, Netflix touted its "specified number"

5   limitation, which provided a fixed cap on the number of movies a customer could rent at one

6   time.  Yet Blockbuster Online allows its subscribers to obtain additional movies through in-store

7   exchanges and coupons, with no overall fixed limit.

8           In addition, Blockbuster Online's movie selection methodology does not just follow the

9   order of its customers' lists.  Blockbuster does not provide movies "in" or "based on the desired

10  order" of the list as construed by the Court.  Blockbuster's deviation from the order of the list is

11  so significant that it warrants a finding of non-infringement as a matter of law.

12          Netflix has been "gaming" the system for seven years now in an effort to monopolize

13  pre-existing business methods.  It is time to put an end to this ploy.  There are no material

14  disputed facts to be decided.  These claims are clearly invalid, and Blockbuster does not infringe.

15  **II.      STATEMENT OF ISSUES TO BE DECIDED**

16          1.  Are some or all of the claims of the '450 and '381 patents invalid based on

17  anticipation or obviousness as a matter of law?

18          2.  Do undisputed facts establish that Blockbuster does not infringe each of the

19  asserted claims of the patents?

20  **III.     FACTS**

21          Undisputed facts show that Netflix's claimed invention is nothing more than the

22  adaptation of an old business practice (prior-art subscription libraries and subscription rental of

23  videotapes and audiotapes) using newer technology that was commonly available and understood

24  by those in the art (as demonstrated by prior-art Internet businesses).  These facts demonstrate

25  that common sense would have led a person of ordinary skill and creativity to combine the prior

26  art with new technology to achieve the claimed invention.[1]

27  _____

[1] *See Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1343-44 (Fed. Cir. 2007) ( motivation to

28                                                        2                    (Footnote Continued on Next Page.)

1    Blockbuster's expert on anticipation and obviousness, Jason Salzetti, describes how,

2    "[b]y 1998-99, there was a flurry of activity across industries by numerous start ups and

3    established companies that were racing to build an online presence."

4    Seemingly everyone that had an Internet-based business idea was able to obtain venture capital funding to try to launch their online business. Individuals without ideas looked at everything in the offline world and considered how they could "web-enable" it. The majority of these businesses were attempts to take a product or service already available in brick and mortar store[s] and sell, rent or trade it on the web. The span the reach of the Internet appeared to offer instant access to millions of customers, dramatic cost efficiencies and unfettered growth. The euphoria during that time period had several labels, including the "Internet Revolution," the "New Economy" and "e" everything.[2]

10   One famous example of such a business was Amazon, which staked out an early

11   lead as an Internet bookstore. Netflix looked to Amazon for many of its own features.[3]

12   Companies such as Reel.com and HomeFilmFestival.com rented movies using the Internet more

13   than a year before Netflix applied for its patent.[4] So did Netflix itself.[5] Various subscription

14   services also established themselves on the Internet by the mid-1990s, including AOL, using

15   their subscription models as a way "to retain customers, measured using the metric of 'eyeballs'

16   or 'stickiness' at that time . . . ."[6] Netflix did not "invent" anything new.

17   **A.    History of Subscription Rental**

18   Subscription rental services have been in existence for centuries. In the 1700s,

19   subscription libraries were very popular, coexisting with libraries that charged per-item (a la

20   carte) rentals as well as free libraries.[7] One such prior art library offering subscription library

21   ———————————————

(Footnote Continued from Previous Page.)

combine may be found in the knowledge of one skilled in the art or in the nature of the problem to be solved).
[2] Declaration of William J. O'Brien in Support of Blockbuster, Inc.'s Motion for Summary Judgment ("O'Brien Decl."), Exh. C Expert Report of Jason Salzetti ("Salzetti Report") at 6.
[3] O'Brien Decl., Exh. E Deposition of Neil Hunt ("Hunt Depo.") at 56:19-57:8.
[4] O'Brien Decl., Exh. G; Exh. H.
[5] O'Brien Decl., Exh. F.
[6] O'Brien Decl., Exh. C, Salzetti Report at 6.
[7] O'Brien Decl., Exh. I; Richard Roehl & Hal R. Varian, "*Circulating Libraries and Video Rental Stores,*" University of Michigan, Dearbon, University of California, Berkeley, December 1996, ("Roehl & Varian").

28                                          3

1   services for the blind and disabled is described in a published prior-art "Reference Guide," which

2   describes the all of the features claimed by Netflix.[8]  Services offering books, audio, or videos by

3   subscription generally imposed some limit on the number of items any one person could have out

4   at one time or the number of items a person could receive during a specified time period.[9]  Many

5   subscription services charged a monthly or periodic fee, although some were free of charge to the

6   user.[10]

7         No later than 1983, video stores were renting movies by subscription for a monthly fee,

8   with no due dates or late fees.[11]  Subscription video rental stores in operation in the United States

9   by 1985 included, among others, Cine Club, Pop*Card, and Video Hit Parade chains.[12]

10        Subscription audio rental was also in progress by the early 1990s.[13]  Tape Rental Library

11  was renting audio training materials on a subscription basis by 1987.[14]

12        Computers were in common use for libraries and rental stores by the early 1990s.[15]  The

13  Reference Guide described computerized subscription services.[16]  Pop*Card, and Tape Rental

14  Library all used computers for their subscription rental operations.[17]  Automatic rental kiosks,

15  such as described in a European patent application by Yoshida published in 1988, conducted

16  fully computerized video rental.[18]

17        Video rental was one of the many businesses brought to the Internet in the late 1990s,

18  _____

19  [8] O'Brien Decl., Exh. Q Reference Guide at 55-56, 61, 63-67, 77, 80, 87-89, 91, 120-21, 126-27, 181-82, 190, 192-95, 203, 205, 220, 225.

20  [9] O'Brien Decl., Exh. Q Reference Guide at 192; Exh. J Deposition of Linda Verin ("Verin Depo.") at 25:15-18 (Pop*Card); Exh. P Deposition of Mark Ramm ("Ramm Depo.") at 36:14-

21  22 (Tape Rental Library).
    [10] O'Brien Decl., Exh. J Verin Depo. at 23:2-24:23; Exh. P Ramm Depo. at 7:10-8:10, 50:20-

22  51:20, Exh. W.
    [11] O'Brien Decl., Exh. J Verin Depo. at 23:2-19, 37:15-38:12;  Exh. P Ramm Depo. at 35:-36:18,

23  40:4-41:1; Exh. N; Exh. O; Exh. M.
    [12] O'Brien Decl., Exh. N; Exh. O; Exh. L; Exh. M.

24  [13] See O'Brien Decl., Exh. W.
    [14] O'Brien Decl., Exh. W.

25  [15] O'Brien Decl., Exh J Verin Depo. at 26:18-27:19; Exh. P Ramm Depo. at 19:21-20:5; Exh. Q Reference Guide at 55.

26  [16] O'Brien Decl., Exh. Q Reference Guide at 205, 220, 225.
    [17] O'Brien Decl., Exh. J Verin Depo. at 26:18-28:11; Exh. N; Exh. W; Exh. P Ramm Depo. at

27  18:16-21:23.
    [18] O'Brien Decl., Exh. R.

28                                          4

1 before Netflix's claimed invention.[19]  Among other things, successful online video rental

2 required development of a sufficient number of consumers who were connected to the Internet

3 and had become comfortable engaging in online transactions.  Large-scale rental of movies by

4 mail also required use of the DVD format, because mailing bulky VHS tapes "was too expensive

5 to be an interesting model.[20]

6

7

8

9

10                                        **REDACTED**

11

12

13

14

15                                        **REDACTED**

16      Blockbuster launched its "Blockbuster Online" subscription service in August 2004.[24]  In

17 November 2006, Blockbuster expanded the service with the "Total Access" program, which

18 allows subscribers to return their movies at local Blockbuster stores and receive free in-store

19 rentals as well as movies by mail.[25]

20

21

_____

22 [19] Netflix's own a la carte service went onto the Internet in 1998.  *See* O'Brien Decl., Exh. D
23 Deposition of Reed Hastings ("Hastings Depo.") at 74:23-75:1.
   [20] O'Brien Decl., Exh. D Hastings Depo. at 399:1-5; *see* Exh. K Deposition of Tom Adams
24 ("Adams Depo.") at 200:25-203:10.
   [21] O'Brien Decl., Exh. K Adams Depo. at 202:19-23; *see* Exh. D Hastings Depo. at 74:23-75:1;
25 422:10-14.
   [22] O'Brien Decl., Exh. E Hunt Depo. at 360:10-18.
26 [23] O'Brien Decl., Exh. K Adams Depo. at 216:23-217:17; Exh. E Hunt Depo. at 361:4-362:3.
   [24] O'Brien Decl., Exh. S Deposition of Shane Evangelist ("Evangelist Depo.") at 99:12-17,
27 100:15-19, 114:8-16.
   [25] *Id.* at 379:21-25.

28                                          5

1      **B.**    <u>**The Netflix Patents**</u>

2      Netflix applied for the '450 patent on April 28, 2000, in the names of Netflix CEO W.

3  Reed Hastings, former CEO Marc B. Randolph, and Chief Product Officer Neil Duncan Hunt.

4  Despite their legal and ethical "duty of candor and good faith" to disclose all known material

5  prior art to the Patent Office, they submitted no prior art whatsoever.[26]  The '450 patent issued on

6  June 24, 2003.[27]

7      While the '450 patent issued with 100 claims, Netflix now asserts six against Blockbuster

8  (claims 5, 7, 14, 20, 22, and 29).[28]  They are summarized as follows:

9
- Rental of any item (claims 14 and 29 are limited to movies)
- Computer implementation (Internet not required)

10
- Item selection criteria
- Items are limited to a specified number at a time or per time period.  More items

11
  are provided in response to return of previous items
- Claims 5 and 20 only – use of desired order to select items

12
- Claims 7 and 22 only – a queue

13      Although Netflix knew about Blockbuster's ownership of FilmCaddy starting in 2002 or

14  2003 and was well aware of Blockbuster Online from its inception in August 2004, Netflix

15  provided no notice or warning that it believed Blockbuster was infringing the '450 patent.[29]

16  Instead, Netflix silently pursued a "continuation" patent application.[30]  This time, Netflix buried

17  the PTO in over 100 prior art references, yet curiously failed to submit any of the prior art

18  subscription video rental or library art described here.[31]  The '381 patent issued on April 4, 2006,

19  and Netflix filed this lawsuit that same day.[32]

20      All of the '381 claims require rental of movies, use of the Internet, and a queue.  The

21

22
_____

23  [26] O'Brien Decl. Exh. D Hastings Depo. at 49:7-11.
[27] O'Brien Decl., Exh. A '450 Patent at NFLIX0000001.

24  [28] O'Brien Decl., Exh. T Deposition of Haim Mendelson ("Mendelson Depo.") at 161:1-19.
Blockbuster's expert provided evidence demonstrating that all of the claims of the '450 patent

25  are invalid.  Netflix offered no rebuttal to any other than these six.  Therefore, Blockbuster is
entitled to a ruling that all of the claims are invalid.  O'Brien Decl., Exh. C Salzetti Report at 73.

26  [29] O'Brien Decl., Exh. D Hastings Depo. at 105:3-107:16.
[30] O'Brien Decl., Exh. B '381 patent.

27  [31] *Id.* at NFLIX0000911-14.
[32] *Id.* at NFLIX0000911.

28

6

1    asserted claims (claims 1-5, 7-18, 20-28, 30-38, and 40-51)[33] are summarized as follows:

- Renting movies
- Use of the Internet, including computer implementation and use of electronic digital information
- A queue comprising an ordered list
- Providing up to a specified number based on the order of the list
- Providing another movie based on the order of the list
- Updating the list
- Independent claim 14 only – no specified return time
- Independent claim 24 only – no late fee
- Independent claim 34 – a rental agreement providing periodic fee
- Independent claim 44 – same method as claim 1 but specifying use of a computer system, telecommunications network, and memory with computer program
- Dependent claims – updating list includes additions, deletions, or changes in order; delivery by mail; delivery on optical media; customer selects movies; order determined by customer preference; outstanding movies do not exceed specified number; types of movies; delivery criteria include receipt of a movie by mail, or are indicated by electronic digital information, or electronic digital information includes selection criteria.

**C.**    **Prior Art**

While there are literally hundreds of items of highly relevant prior art that were not before the Patent Office, Blockbuster has focused on only a few for purposes of this motion. This motion will focus on the following prior art:

**1.**    **Subscription Video Stores**

Prior-art video rental stores such as Pop*Card, Cine Club and Video Hit Parade had subscription rental programs that allowed customers to rent up to a specified number of video tapes at any one time and keep them as long as they wanted without due dates or late charges.[34] Pop*Card used computers for subscription rental.[35]

**2.**    **Tape Rental Library**

Tape Rental Library provided subscription rental of audiotapes and some videotapes by mail, using a "Time Saver List" of a subscriber's desired tapes.[36] Subscribers entered into contracts under which, for a periodic fee, each subscriber was allowed a specified number of

---

[33] O'Brien Decl., Exh. T Mendelson Depo. at 160:20-161:19.
[34] O'Brien Decl., Exh. J Verin Depo. at 23:2-26:17; Exh. O; Exh. L. "Max Turns" limits were also known in the prior art. For example, Video Hit Parade allowed subscribers "one [tape] per night." *See* Exh. M.
[35] O'Brien Decl., Exh. J Verin Depo. at 26:18-28:11.
[36] O'Brien Decl., Exh. P Ramm Depo. at 107:8-108:1; Exh. U at 3.

7

1  tapes at a time.[37]  When a subscriber returned one or more tapes, TRL would mail it the next tape

2  or tapes on the subscriber's list.[38]  Although subscribers wrote down their lists on paper, the lists

3  were entered into a computer database that was used to fill orders.[39]

### 3.    Reference Guide

5  The Reference Guide describes computer-implemented library services for the blind and

6  handicapped, including rental of various media, such as disks and cassettes, and delivery by

7  mail.[40]  It describes subscription services as well as automatic selection of items from a list of

8  items desired by a user.[41]  In what the Guide calls a "Turn-Around Service," a user is sent a new

9  item once a checked out item is returned.[42]  The number of books allowed out at any time is

10  limited.[43]  In response to receiving some of them back, the library would select and ship

11  additional items from the user's list.[44]

### 4.    Yoshida European Patent Application

13  Yoshida's European Patent Application describes a computerized movie rental kiosk that

14  dispensed videotapes selected by a customer.[45]  Yoshida described a limit on the number of

15  movies a customer could have out at one time.[46]  This inherently means that, when a customer

16  had reached his or her limit, the customer could obtain another item only by returning a movie.

17  As Yoshida stated, "When the number of articles now being rented exceeds a predetermined

18  ――――――――――――――――――――

19  [37] O'Brien Decl., Exh. P Ramm Depo. at 15:7-16:4; Exh. W.
[38] O'Brien Decl., Exh. P Ramm Depo. at 15:7-17.
20  [39] O'Brien Decl., Exh. P Ramm Depo. at 18:16-19:8, 19:19-20:25; 61:12-62:18 TRL is prior art
under 35 U.S.C. § 102(b) because its service was in public use and on sale in this country from
21  1987 onward – some 13 years before the filing of the application for the '450 patent – and
because its catalogs describing such services were published over the same period of time.  *See*
22  Exh. W.
[40] O'Brien Decl., Exh. Q Reference Guide at 55-56, 61, 63-67, 77, 80, 87-89, 91, 120-21, 126-
23  27, 181-82, 190, 192-95, 203, 205, 220, 225.  The Reference Guide is prior art because it was
published almost 20 years before the application for the '450 patent was filed.  Exh. Q Reference
24  Guide.
[41] *Id.* at 55-56.
25  [42] *Id.* at 61.
[43] *Id.* at 192.
26  [44] *Id.* at 61.
[45] O'Brien Decl., Exh. R Yoshida Patent at Col. 1:6-9.  The application is prior art because it was
27  published on October 12, 1998, more than 10 years before the filing date of the '450 patent.
[46] *Id.* at Col. 2:27-33.

28                                                    8

1    number, an additional renting operation is prohibited. That is, an additional article is rented only

2    when the number of articles now being rented is below the predetermined number." [47]

3            **5.      Netflix's A La Carte Service**

4                          **REDACTED**

5                          [48] It used many of the features recited in the claims, such as

6    renting movies over the Internet, computer implementation, item selection criteria, electronic

7    digital information, a computer system, telecommunications network, and memory with

8    computer programs.[49]          **REDACTED**

9            [50]

10   **IV.      THE PRIOR ART INVALIDATES NETFLIX'S CLAIMS AS A MATTER
             OF LAW**

11       **A.    Legal Background**

12           A prior art reference anticipates a claim if it discloses "each and every element" of the

13   claimed invention.[51] In addition, a claimed invention is unpatentable if the differences between

14   it and the prior art "are such that the subject matter as a whole would have been obvious at the

15   time the invention was made to a person having ordinary skill in the art."[52] The ultimate

16   determination of whether an invention would have been obvious is a legal determination.[53]

17   "[W]here the ultimate legal conclusion of obviousness is disputed, but not the underlying facts,

18   there is no issue of fact requiring a trial, even though some facts favor obviousness, some

19   nonobviousness."[54] "A conflict in the legal opinions of experts creates no dispute of fact."[55]

20           Under section 103, the scope and content of the prior art are to be determined; differences

21

22   ───────────────────

23   [47] *Id.* at Col. 3:19-25; Col. 11:2-20.
     [48] O'Brien Decl., Exh. E Hunt Depo. at 179:17-22.
     [49] O'Brien Decl., Exh. E Hunt Depo. at 47:21-50-22, 51:4-52:4.

24   [50] O'Brien Decl., Exh. E Hunt Depo. at 47:21-50:6, 52:17-53:16, 479:23-481:7; Exh. F.
     [51] *See, e.g., Hakim v. Cannon Avent Group, PLC,* 479 F.3d 1313, 1319 (Fed. Cir. 2007) (citing

25   *Akzo N.V. v. U.S. Int'l Trade Comm'n.,* 808 F.2d 1471, 1479 (Fed. Cir. 1986).
     [52] 35 U.S.C. § 103(a).

26   [53] *KSR,* 127 S. Ct. 1727, 1745 (2007).
     [54] *Newell Cos., Inc. v. Kenney Mfg. Co.,* 864 F.2d 757, 763 (Fed. Cir. 1988), *cert. denied,* 493

27   U.S. 814 (1989).
     [55] *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.,* 853 F.2d 1557, 1564 (Fed. Cir. 1988).

28                                          9

1   between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill

2   in the pertinent art resolved.[56]  "The relevant art is defined by the nature of the problem

3   confronting the would-be inventor."[57]  Here, the "relevant" prior art includes (1) audio and video

4   rental stores or services, (2) other subscription rental programs, (3) e-commerce web sites, and

5   (4) libraries providing subscription lending methods.  At all relevant times, a person of "ordinary

6   skill in the art" of the Netflix patents would have been experienced in the field of computer

7   technology, the Internet, e-commerce and rental practices for items such as movies.[58]

8          Because patents are presumed valid, a challenger must prove invalidity by clear and

9   convincing evidence.[59]  However, this standard applies only to the "disputed facts underlying the

10  legal conclusion . . . , not the ultimate legal conclusion of obviousness itself."[60]

11         Recently, in *KSR*, the Supreme Court found it necessary to reaffirm its "earlier

12  instructions concerning the need for caution in granting a patent based on the combination of

13  elements found in the prior art . . .[as] such a combination of familiar elements according to

14  known methods is likely to be obvious when it does no more than yield predictable results."[61]

15  "In many fields . . . market demand, rather than scientific literature, will drive design trends."[62]

16  "Under the correct analysis, any need or problem known in the field  . . . and addressed by the

17  patent can provide a reason for combining the elements in the manner claimed."[63]  "Common

18  sense teaches . . . that familiar items may have obvious uses beyond their primary purposes, and

19  a person of ordinary skill often will be able to fit the teachings of multiple patents together like

20  pieces of a puzzle."[64]

21

22  _____

[56] *KSR*, 127 S.Ct. at 1734 (citing *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18
23  (1966)).
[57] *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 716 (Fed. Cir. 1991) (citing *Orthopedic Equip.*
24  *Co. v. U.S.*, 702 F.2d 1005, 1008 (Fed. Cir. 1983)).
[58] O'Brien Decl., Exh. C Salzetti Report at 4.
25  [59] *Alza Corp. v. Mylan Labs., Inc.*, 464 F.3d 1286, 1289 (Fed. Cir. 2006).
[60] *Newell*, 864 F.2d at 767.
26  [61] *KSR*, 127 S.Ct. at 1739.
[62] *Id.* at 1741.
27  [63] *Id.*
[64] *Id.*

28                                          10

1    In the wake of *KSR*, the Federal Circuit recently relied on the "common sense of those

2    skilled in the art" to affirm a finding of obviousness based on the combination of prior art

3    disclosing an old idea and newer, commonly available technology.[65]  In *Leapfrog*, the Court

4    found that the prior art which had taught letter-by-letter phonics in learning toys but lacked

5    electronic components due to its age rendered the claims obvious.  The Federal Circuit held that

6    the "claimed combination is thus the adaptation of an old idea or invention . . . using newer

7    technology that is commonly available and understood in the art . . . ."[66]  The same is true of

8    Netflix's patents.

9    Secondary considerations such as commercial success, long-felt but unsolved needs, and

10   failure by others to solve the problem or make the advance claimed by the patent at issue are to

11   be considered when making a determination on the issue of obviousness.[67]  Secondary

12   considerations are, of course, secondary.  They do not overcome a strong case of obviousness

13   based on the teachings of the prior art (including references not considered during

14   examination).[68]

15

**B.    The '450 Patent.**

16

  **1.    The Reference Guide, At A Minimum, Renders Obvious The Claims Of The '450 Patent**

17

18   This Court should find, as a matter of law, that the Reference Guide invalidates each of

19   the asserted claims of the '450 patent under 35 U.S.C. section 103.  The '450 patent "simply

20   arranges old elements with each performing the same function that it had been known to

21   perform."[69]

22                                   **REDACTED**

23

-------------------------

24   [65] *Leapfrog Enterprises, Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 2007 WL 1345333 at * 4 (Fed.

25   Cir. 2007)
     [66] *Id.* at *5.

26   [67] *Graham*, 383 U.S. at 17.
     [68] *See, e.g., Newell*, at 769.

27   [69] *See Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 281 (1976) (quoting *Anderson's Black Rock, Inc.*
     *v. Pavement Salvage Co.*, 396 U.S. 57, 60 (1969).

28                                        11

1          **REDACTED**

2                                              Thus, as Blockbuster

3   shows below, if those alleged differences are disclosed in the prior art, the claims are anticipated

4   under 35 USC § 102.  Even if not explicitly disclosed, these differences are minimal, and based

5   on common sense and well-known technology, so that the claims are obvious under section 103.

6

7

8          **REDACTED**

9

10

11      (a)    Computer-implemented step of "receiving one or more item selection criteria that
               indicates two or more items that a customer desires to rent"

12      This element of the claim refers to the customer identifying what he or she desires to rent.

13

14

15

16

17          **REDACTED**

18

19

20

21

22      _____

23      [70] O'Brien Decl., Exh. K Adams Depo. at 85:13-86:23 (claims 5 and 7); 90:18-91:14 (claim 14);

24      97:15-19 (claim 20); 97:20-98:5 (claim 22); and 98:6-98:14 (claim 29).

                **REDACTED**
25          *Id.* at 96:18-97:2.
        [71] O'Brien Decl., Exh. K Adams Depo. at 89:6-90:8.
26      [72] *Id.* at 86:11-17.
        [73] *Id.* at 88:3-11.
27      [74] *Id.* at 88:13-18.
        [75] *Id.* at 88:20-89:6.

28                                              12

1    The Reference Guide discloses limitation under any reasonable interpretation.

2                                    **REDACTED**

3        [76] There is no requirement that computers be mandated by the prior art as long as the

4    use of computer for receiving the item selection criteria is disclosed in the reference itself.[77]  In

5    fact, the Reference Guide specifically calls out the ability of the system to ". . . perform

6    automatic selection of titles, according to a set of pre-established principles that are suitable for

7    each borrower designated to receive automatic selection service."[78]

8                                    **REDACTED**

9            As this Court recognized in its claim construction order, technology has

10   not advanced to the point where computers "can physically deliver a DVD by itself," but that

11   does not mean that the step of "providing" an item to a customer is not computer implemented.[79]

12   Similarly here, if a customer walks into a store and provides information to a clerk identifying a

13   movie he wants to rent, and the clerk enters that information into the computer, the step of

14   "receiving the item selection criteria" has been computer implemented.

15           Even if this claim element was not disclosed in the Reference Guide (which it is), the

16   Reference Guide still renders the claims obvious.  It is not innovative to take a well known

17   method and computerize it when the same function "receiving the item selection criteria" is

18   performed.[80]  Indeed, as Blockbuster's invalidity expert demonstrated, using computers to send,

19   receive, display and use item selection attributes and criteria was well developed by the early

20   1990s.[81]  Video rental businesses such as Pop*Card, audio rental businesses like Tape Rental

21   _____

22   [76] *Id.* at 86:11-17.
     [77] *Merck & Co., Inc. v. Biocraft Labs., Inc.*, 874 F.2d 804, 807 (Fed. Cir. 1989)("But in a section

23   103 inquiry, 'the fact that a specific [embodiment] is taught to be preferred is not controlling,
     since all disclosures of the prior art, including in preferred embodiments, must be considered.'

24   (citing *In re Lamberti*, 545 F.2nd 747, 750 (CCPA 1976)."
     [78] O'Brien Decl., Exh. Q Reference Guide at 181.

25   [79] *See* Claim Construction Order at 18:19-20.
     [80] *Leapfrog*, 485 F.3d 1157, 2007 WL 1345333 at *4-5; *DE Techs., Inc. v. Dell, Inc.*, Case No.

26   7:04-cv-00628, 2006 WL 335608 (W.D. Va. Feb. 14, 2006) ("It is the position of the examiner,
     that to take a series of business steps implemented by EDI and perform these identical business

27   steps employing the Internet would be an obvious use of current technology.")
     [81] O'Brien Decl., Exh. C Salzetti Report at 17.

28                                          13

1    Library, libraries as disclosed in the Reference Guide, and automated kiosks like the one in the

2    Yoshida patent application used titles (as well as other attributes) to designate movies, audio

3    tapes, or books and allowed customers to select items by using at least their titles as selection

4    criteria.[82]  In fact, Netflix's prior art a la carte site offered similar computer implemented

5    attributes and item selection criteria.[83]  Thus, simply taking an old well-known method and

6    applying well known computer technology to perform the same function is not innovation.[84]

7         (b)    Rental versus borrowing

8                         **REDACTED**

9              [85]  The Court has not construed to term "rental" and need not limit it

10   only to a for profit model.[86]  Even if so construed, the Reference Guide renders the claims

11   obvious.[87]  The Reference Guide is a computerized subscription library which allows patrons to

12   identify books or other media they wish to borrow, return those materials and receive additional

13   materials up to a specified limit (in terms of time and/or number of items).[88]  This service is free

14   to the patrons but paid using government funds.  However, it would be obvious to apply the same

15   model to perform the same function while charging some type of fee for the service.

16        Libraries have rented media or books for a fee since at least the 18th Century.[89]  In

17   addition, audio books and other audio tapes have been rented for many years before Netflix's

18   invention.[90]  Numerous subscription video rental businesses operated throughout the 1980s and

19

20   ————————————

21   [82] O'Brien Decl. Exh. W; Exh. N; Exh. O; Exh. Q Reference Guide at 67; Exh. R Yoshida patent.

22   [83] O'Brien Decl. Exh. F; Exh. D Hastings Depo. at 79:15-80:13.
     [84] *See e.g., KSR*, 127 S. Ct. at 1739; *Leapfrog*, 485 F.3d 1157, 2007 WL 1345333 at *5.

23   [85] O'Brien Decl., Exh. K Adams Depo. at 90:18-93:25.
     [86] *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc) ("Although the

24   specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."), *cert. denied*, 126 S. Ct. 1332

25   (2006).
     [87] O'Brien Decl., Exh. C Salzetti Report at 31.

26   [88] O'Brien Decl., Exh. Q Reference Guide at 55-56, 61, 63-67, 77, 80, 87-89, 91, 120-21, 126-
     27, 181-82, 190, 192-95, 203, 205, 220, 225.

27   [89] O'Brien Decl., Exh. I, Roehl & Varian.
     [90] O'Brien Decl., Exh. W

28                                    14

1   early 1990s (Pop*Card and Video Hit Parade 1985; HomeFilmFestival.com 1995).[91]  To

2   combine the well known video rental techniques with the well-known library model was

3   obvious.

4         **2.**      <u>**Tape Rental Library, At A Minimum, Renders The Claims Of The '450**</u>
      <u>**Patent Obvious.**</u>

5

6

7

8

9                                    **REDACTED**

10

11

12

13

14

15         **3.**      <u>**The Yoshida Patent Application, At A Minimum, Renders The Claims Of**</u>
      <u>**The '450 Patent Obvious.**</u>

16

17

18                                   **REDACTED**

19

20   ——————————————

21   [91] O'Brien Decl., Exh. G; Exh. N; Exh. O; Exh. M. ~~REDACTED~~                        Exh. K Adams Depo. at 135:17-

22   136:18.
  [92] O'Brien Decl., Exh. K Adams Depo. at 80:2-7; 81:10-82:1 (claims 5 and 7); 98:15-99:7 (claim

23   14); 99:8-99:19 (claim 20); 99:20-100:2 (claim 22); 100:3-13 (claim 29).  He testified that it was
not clear to him whether other steps were computer implemented, but he did not offer any

24   opinion on that issue.  *Id.* at 98:23-99:3.
  [93] *Id.* at 82:2-83:5.

25   [94] *Id.* at 83:1-5.
  [95] *Id.* at 83:6-84:20.

26   [96] *Id.* at 191:15-21.
  [97] *See e.g., KSR*, 127 S. Ct. at 1739; *Leapfrog*, 485 F.3d 1157, 2007 WL 1345333 at *5.

27   [98] O'Brien Decl., Exh. K Adams Depo. at 100:14-101:7 (claims 5 and 7); 104:13-105:7 (claim
14); 105:8-18 (claim 20); 105:19-106:6 (claim 22) and 106:7-13 (claim 29).

28                                        15

1        (a)    <u>Queue</u>

2        The Yoshida patent does not disclose a queue.  However, such a feature would

3    have been obvious to a person of ordinary skill in the art.[99]  The Court has construed the term

4    queue "to mean the sequence from which the provider selects movies or items to be rented."[100]

5    Maintaining lists of titles patrons want to rent in the future is a common procedure.[101]

6        Several prior art references utilized a queue.  The Reference Guide structures its

7    data systems to capture request and reserve information, including the item identification

8    number, the date of the request, the requestor, number of items requested, and number of titles

9    held in reserve.[102]  TRL shipped two cassettes to the customer in the order they had previously

10   selected by means of a "Time Saver List."[103]

11

12   **REDACTED**

13

14

15

16       (b)    <u>"In response to receiving any of the items provided to the customer,</u>

17           <u>providing to the customer one or more other items indicated by the one or</u>
     <u>more item selection criteria. . ."</u>

18

19   **REDACTED**

20

21

22

---

23   [99] This argument applies to claims 7 and 22 only as the other asserted claims of the '450 patent do not require a rental queue.

24   [100] *See* Claim Construction Order at 9:3-4.

25   [101] O'Brien Decl., Exh. C Salzetti Report at 22.
     [102] O'Brien Decl., Exh. Q Reference Guide at 55-56, 127, 181-82.

26   [103] O'Brien Decl., Exh. P Ramm Depo. at 103:23-104:9, 153:13-154:7.
     [104] O'Brien Decl., Exh. K Adams Depo. at 181:10-182:24.

27   [105] *Id.* at 183:2-7.
     [106] *Id.* at 174:1-175:7.  Adams argued that the list was a "queue," but offered no basis for the distinction. *Id.* at 175:15-176:20.

28   16

1    **REDACTED**

2          The uncontested facts make it clear that Yoshida does disclose this element.  In

3    Yoshida, a customer is allowed to rent up to a specified number of movies.[108]  Thus, if a

4    customer has a rental limit of 2 movies, the machine will not allow the customer to take another

5    movie until one of the first two movies is returned.[109]  Yoshida describes a system by which the

6    additional rental restriction is lifted (or eliminated) once a movie is returned.[110]  Thus, as a result

7    of returning a movie, a customer is allowed to rent an additional movie.  Thus, the Yoshida video

8    rental kiosk patent satisfies the claim limitation "in response to receiving any of the items

9    provided to the customer, providing to the customer one or more other items indicated by the one

10   or more item selection criteria."

11          **4.    Prior-Art Subscription Video Rental Stores.**

12         Several prior art movie and video subscription rental services used the same

13   business model as described in the Netflix '450 patent, with the possible exception of computer

14   implementation of each step of the method.[111]  These included Pop*Card, Video Hit Parade,

15   Cine Club, among others.[112]  It would have been obvious to use a computer system to perform

16   the patented steps.[113]  Computer use was widespread and well known by 1999.[114]  In addition,

17   other prior art which performed all of the steps of the method used computers, including the

18   Reference Guide.[115]  The Netflix a la carte movie rental business over the Internet also utilized

19   computer implemented steps.[116];[117]

20   _____

21   [107] *Id.* at 101:12-102:9.
     [108] O'Brien Decl., Exh. R Yoshida patent at 2:27-33.
22   [109] *Id.* at 3:19-25; 11:2-20.
     [110] *Id.*
23   [111] O'Brien Decl., Exh. C Salzetti Report at 32.
     [112] O'Brien Decl., Exh. L; Exh M; Exh. N; Exh. O.
24   [113] O'Brien Decl., Exh. C Salzetti Report at 32.
     [114] *Id.* at 6.
25   [115] O'Brien Decl., Exh. Q Reference Guide at 181.
     [116] O'Brien Decl., Exh. F.
26   [117] Netflix may attempt to add additional arguments which their expert disavowed.  This should
     not be allowed.  *See* Case Management Order at ¶ 10 ("At trial, the direct testimony will be
27   limited to the matters disclosed in their reports").  For example, independent claim 16, upon with
     claims 20, 22 and 29 depend, includes a "Max turns" element which sets forth a limitation on the

28   _____
                              17            (Footnote Continued on Next Page.)

C.    **The Asserted Claims in the '381 Patent Are Obvious Variations of Known Business Methods Using Newer Technology**

The '381 patent claims are obvious as a matter of law based on the disclosures in the Tape Rental Library.

REDACTED

1.    "Providing electronic digital information that causes one or more movie attributes to be displayed"

This feature was obvious from the disclosures in TRL combined with basic computer and Internet technology.  Movie rental cites using the Internet also pre-dated Netflix's invention. Netflix had its own a la carte rental site in which it rented movies over the Internet charging a fee per movie.    REDACTED

In addition, there are numerous examples of Internet businesses that had been adapted from pre-existing brick and mortar business, such as Amazon and eBay.  In 1998-99, there was a strong trend toward making those adaptations.[120] Thus, a person of ordinary skill as of April 28, 1999 would have found it obvious to adapt various movie and video rental models to the Internet, including the subscription movie rental

_____

(Footnote Continued from Previous Page.)

number of items returned based on a "specified period of time."    REDACTED    This is not surprising because this concept is clearly disclosed in, at minimum, the Reference Guide.  *See* Exh. Q Reference Guide at 190, 192.

[118] O'Brien Decl., Exh K Adams Depo. at 107:5-109:15.

at 107:18-20; O'Brien Decl., Exh. B.    REDACTED    *Id.*

Adams Depo. at 108:20-109:3.    O'Brien Decl., Exh K

[119] *Id.* at 191:15-21.

[120] *Id.* at 156:10-158:7.

1   models such as Pop*Card, Video Hit Parade, Cine Club, among others.[121]  It would have been

2   obvious that, just as subscription provided an alternative to a la carte rental in brick and mortar

3   stores, it provided an alternative to a la carte Internet rental by Netflix and others.[122]  Further, it

4   would have been obvious to apply the teachings of audio subscription rental prior art and audio

5   and book library subscription models to Internet movie rental.[123]  In addition, Netflix's own prior

6   art web site displayed attributes of movies in electronic digital form.[124]

7       2.   "establishing, in electronic digital form, from electronic digital information
            received over the Internet, a movie rental queue comprising an ordered list
8           indicating two or more movies for renting to the customer"

9

10

11

12

13                          **REDACTED**

14

15

16

17

18

19       It was obvious to apply the TRL paper or email list to the Internet.  The Internet was

20   well-known in the art at the time of the invention.[132]  It would be obvious to a person of skill in

21   _____

22   [121] O'Brien Decl., Exh. C Salzetti Report at 53-54.
     [122] *Id.* at 12.
23   [123] *Id.* at 54.
     [124] O'Brien Decl., Exh. F.
24   [125] O'Brien Decl., Exh. K Adams Depo. at 109:10-23.
     [126] *Id.* at 110:7-9.
25   [127] *Id.* at 111:13-113:23.
     [128] *Id.* at 190:19-25.
26   [129] *Id.* at 191:3-10.
     [130] Id. at 191:8-21.
27   [131] Id. at 191:15-21.
     [132] O'Brien Decl., Exh. C Salzetti Report at 15-17.
28                              19

1   the art in 1999 to apply a business technique to the Internet to provide a wider customer base and

2   reduce costs associated with traditional brick-and-mortar businesses.  In fact, Mr. Hunt, one of

3   the named inventors of the '450 and '381 patents, admits that, in formulating Netflix's business

4   method, Netflix consulted a variety of other e-commerce web sites, including Amazon,

5   Reel.com, Yahoo! And AOL.[133]

6

7

8

9

10

11

12                                      **REDACTED**

13

14

15

16

17

18

19

20

21   _____

22   [133]O'Brien Decl., Exh. E Hunt Depo. at 56:19-57:8.
     [134])                    **REDACTED**
23                   O'Brien Decl., Exh. K Adams Depo. at 169:8-25.
     [135]*Id.* at 160:24-162:21.
24   [136]*Id.* at 164:6-165:11.
     [137]*Id.* at 166:7-23.
25   [138]*Id.* at 168:14-25.
     [139]*Id.* at 174:1-175:7.
26   [140]*Id.* at 172:20-24.
     [141]*Id.* at 179:11-24.
27   [142]*Id.* at 183:2-7.
     [143]*Id.* at 185:15-21.

28                                        20

1    28, 1999 to use a dynamic (updateable) queue or list of movies for rental to customers.[144]  A

2    queue was a well known way to allow people to express their preferences for items.[145]  As

3    discussed above, the TRL list could be used on the Internet which allows real time updating

4    features.                                     **REDACTED**

5                                          [146]  The Borrower's Request List in the Reference Guide allowed

6    updating. [147]

7            Common knowledge recognized that to provide customers the choice of items, it would

8    make sense to allow them to change their mind and update the list.  In developing the process to

9    operate an online subscription model, it would have been readily evident that customers on a

10   website would identify movies they wanted to rent. Upon receiving a movie or other item back

11   from the customer, the system would need to select another item to ship to the customer.  An

12   obvious solution would be to use a list.      **REDACTED**      Delivering movies in the order of

13   the list is also obvious.        **REDACTED**        Standard business process design, user

14   interface and programming practices make it obvious that in creating a list, it is obvious to

15   consider the order of the list in which to draw items.  Following the order listed is the most

16   obvious method.  Allowing a customer to add, delete or modify the list is obvious to address

17   customer satisfaction.[150]

18          While Mr. Adams did not raise any other distinctions between the '381 patent and TRL,

19   he was not asked about other independent claims.  Thus, the issues he raised in his expert report

20   are discussed below.  Mr. Adams' expert report did not address any of the dependent claims of

21   the '381 patent in his report, thus he cannot offer testimony with respect to those claims now.[151]

22   _____

23   [144] O'Brien Decl., Exh. C Salzetti Report at 61-63.
24   [145] O'Brien Decl., Exh. T Mendelson Depo. at 66:25; 72:24.
     [146] O'Brien Decl., Exh. K Adams Depo. at 190:16-191:14.
25   [147] O'Brien Decl., Exh. Q Reference Guide at 195.
     [148] O'Brien Decl., Exh. K Adams Depo. at 182:15-183:7.
26   [149] Id. at 191:3-21.
     [150] O'Brien Decl., Exh. C Salzetti Report at 55-57.
27   [151] See Case Management Order at ¶ 10 ("At trial, the direct testimony will be limited to the
     matters disclosed in their reports").

28                                              21

1    However, those are addressed briefly below as well.

2        Claims 14 and 24 require that no return time is specified.  Both the Reference Guide and

3    Tape Rental Library disclose this feature.[152]  In addition, it would have been an obvious solution

4    when faced with market pressures to modify Yoshida such that no return time was specified,

5    especially in light of other movie rental business models in use at the time of the invention.[153]

6        Claim 34 requires a rental agreement on the Internet with a periodic fee.[154]  Tape Rental

7    Library clearly discloses subscription services with various periodic fee schedules, *e.g.*, weekly,

8    yearly, etc.[155]  It would have been an obvious solution to market pressures to incorporate the

9    rental agreements with periodic fees in other movie rental businesses into the Reference Guide

10    business method.[156]  And all of these features could be adapted to the Internet in 1999.

11        Claim 44 requires  the method of claim 1 be performed by a computer system where the

12    computer is coupled to a telecommunications network and has electronic memory.[157]  Because it

13    is inherent that computers have memory and because the Internet is a telecommunications

14    network, the "additional" features in claim 44 actually require the same elements as recited in

15    claim 1.  As such, claim 44 is obvious.[158]

16        Dependent claims 2-5, 15-18, 25-28, 35-38, and 45-47 allow additions, deletions or

17    changes to the list.[159]  None of these features is innovative, basic common sense teaches to allow

18    a list to be updated, and the Reference Guide discloses each of these features.[160]

19        Claims 7-9, 20-22, 30-32, 40-42, and 48-50 allow delivery by mail or mail receipt.  This

20    practice exists in most Internet businesses and a skilled artisan would have found it a matter of

21    common sense to use mail to deliver customer selections.[161]

22

---

23    [152] O'Brien Decl., Exh. Q Reference Guide at 61; Exh. W.
[153] O'Brien Decl., Exh. C Salzetti Report at 57-58.
24    [154] O'Brien Decl., Exh. B '381 patent.
[155] O'Brien Decl., Exh. P Ramm Depo. at 15:19-21.
25    [156] O'Brien Decl., Exh. C Salzetti Report at 58-59.
[157] O'Brien Decl., Exh. B '381 patent.
26    [158] O'Brien Decl., Exh. C Salzetti Report at 59-60.
[159] O'Brien Decl., Exh. B '381 patent.
27    [160] O'Brien Decl., Exh. Q Reference Guide at 63-65 and 120-21; 127-27.
[161] O'Brien Decl., Exh. C Salzetti Report at 66-68.

28

1   Claims 10, 23, 33, 43, and 51 refer to a "specified limit" or the number of items rented

2   which is disclosed in the Reference Guide, Yoshida and TRL.[162]  Claims 11-12, which further

3   specify receipt of and providing electronic digital information, are inherent in any computer

4   implemented process.  Claim 13 simply refers to types of movies.

5           **D.      Secondary Considerations Cannot Overcome A Strong Showing Of
                       Obviousness.**
6
7           Secondary considerations of non-obviousness, even if substantial, are insufficient

8   as a matter of law to overcome a strong showing of obviousness.[163]  In addition, there must be a

    nexus between the commercial success or other secondary consideration and the claimed
9
    invention.  If the success is due to an unclaimed feature, or the feature was known in the prior
10
    art, the success is irrelevant.[164]
11
12          Netflix has failed to connect its secondary considerations to the claims of the patents in

13  suit.

14

15                               **REDACTED**

16
17          The nexus required for secondary considerations is lacking,

18  because any delay after the system was in open use could not have been caused by lack of

19  understanding of the existence of the claimed methods or how to practice them.

20          **Long Felt Need:**

                                 **REDACTED**
21

22

23  _____

24  [162] O'Brien Decl., Exh. Q Reference Guide at 61; Exh. R Yoshida patent at 2:27-33; Ex. W.
    [163] *See, e.g., Leapfrog*, 485 F.3d 1157, 2007 WL 13453333 at * 5 ("Leapfrog had provided
25  substantial evidence of commercial success, praise, and long-felt need, but that, given the
    strength of the prima facie obviousness showing, the evidence on secondary considerations was
26  inadequate to overcome a final conclusion that [the disputed claim] would have been obvious.");
    *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1372 (Fed. Cir. 2007).
27  [164] *See, e.g., Ormco Corp. v. Align Tech, Inc.*, 463 F.3d 1299, 1311-13 (Fed. Cir. 2006).
    [165] O'Brien Decl., Exh. K Adams Depo. at 226:4-230:1.
28  [166] *Id.* at 208:11-211:9.

                                          23

1                                  **REDACTED**

2

3       **Failure of Others:**

4                                  **REDACTED**

5                                                But, there is no

6 evidence that any video rental store failed because it used a subscription model.

7                                  **REDACTED**

8

9       More fundamentally, Mr. Adams fails to appreciate that "failed attempts" supporting

10 non-obviousness must be failed attempts to conceive of and reduce to practice the claimed

11 invention – not failed attempts to make a profit.[171]  If video rental companies knew about

12 subscription rental but merely chose not to practice it for business reasons, that "actually detracts

13 from [the non-obviousness] argument – and heavily so."[172]

14       **Blockbuster's Business Decisions:**

15

16

17                                    **REDACTED**

18

19

20

21

22 _____

23 [167] *Id.* at 225:22-229:19.  Use of the Internet is required by all of the '381 patent claims.
[168] *Id.* at 202:19-203:1.

24 [169] *Id.* at 143:25-144:4.
[170] *Id.* at 225:22-229:19.

25 [171] *See, e.g., Dystar Textilfarben GmbH & Co. v. C.H. Patrick Co.*, 464 F.3d 1356, 1371-72 (Fed. Cir. 2006) (calculated decision to abandon a potential new product line is not a failed attempt).

26 [172] *See id.* at 1371.
[173]O'Brien Decl., Exh. K Adams Depo. at 197:19-25.

27 [174] *See id.* at 203:11-23, 244:2-245:1.
[175] *Id.* at 204:8-12.

28                                           24

1  **REDACTED**

2  **Surprising Results:**
   **REDACTED**
3

4  His "evidence must fail because the record is devoid of what the skilled artisan

5  would have expected."[178]  Moreover, market success does not equate with surprising results.[179]

6  Netflix introduced subscription because it wanted "recurring revenues" like the monthly

7  membership fees a gym receives regardless of how many members actually show up to work

8  out.[180]  The expected – and, indeed, inherent – result of Netflix's subscription model was to

9  generate monthly fees regardless of whether its subscribers remembered to go online to rent

10  movies.

11  **Commercial Success:**

12

13
   **REDACTED**
14

15

16

17

18

19  **Acclaim:**  While Netflix has generated a host of favorable publicity, this is "typical for

20  well-funded and well-executed entrants into a new or young eCommerce category – Amazon and

21  eBay are just two examples – and does not suggest that there was anything patentable about their

22  _____

23  [176] *Id.* at 194:10-25.
   [177] *Id.* at 235:10-14.
24  [178] *See Pfizer*, 480 F.3d at 1370-71.
   [179] "'[W]hen unexpected results are used as evidence of nonobviousness, the results must be
25  shown to be unexpected compared with the closest prior art.'" *Pfizer*, 480 F.3d at 1370-71
   (quoting *Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 970 (Fed. Cir. 2006)).
26  [180] O'Brien Decl., Exh. D Hastings Depo. at 316:25-319:10.
   [181] O'Brien Decl., Exh. K Adams Depo. at 212:21-214:21.
27  [182] *Id.* at 215:23-216:11, 217:2-9.
   [183] *Id.* at 216:23-217:1.

28  25

1 approach . . . ."[184]  Mr. Adams has not cited any informed assessments of what Netflix

2 contributed to the prior art.

3      **Copying:**  Netflix suggests that Blockbuster Online  "copied" Netflix.  Such evidence is

4 "equivocal" at best.[185]  Netflix has failed to focus on patented features of the Netflix web site and

5 failed to determine Netflix had itself derived supposedly copied features from others.

6                               **REDACTED**

7                                                       He also ignored

8 innovations by Blockbuster.

9
10 **V.     BLOCKBUSTER DOES NOT INFRINGE THE ASSERTED CLAIMS OF
NETFLIX'S PATENTS**

11      "Literal infringement requires that each and every limitation set forth in a claim

12 appear in an accused product."[187]  Determination of patent infringement entails a two-step

13 analysis:  (1) the asserted claims of the patent must be properly construed to determine their

14 meaning and scope, and (2) the claims as properly construed must be compared to the allegedly

15 infringing device or method.[188]

16          **A.     Blockbuster Online Does Not Impose A Specified Number Maximum
Limit On The Number Of Items Provided To Customers.**

17      The Court has yet to construe the meaning of the term "specified number."  This

18 term should be construed to impose a maximum limit on the number of items or movies that may

19 be provided to customers.[189]  This construction is consistent with the ordinary meaning of

20 "specified number."  The ordinary dictionary meaning of the word "specify" connotes a certain,

21 defined number.[190]  It also is consistent with the specification.[191]      **REDACTED**

22 _____

23 [184] O'Brien Decl., Exh. C Salzetti Report at 71.

24 [185] *See Ecolochem, Inc. v. So. Cal. Edison Co.*, 227 F.3d 1361, 1380 (Fed. Cir. 2000), *cert. denied*, 532 U.S. 974 (2001).

25 [186] O'Brien Decl., Exh. E Hunt Depo. at 56:22-57:8, 58:7-59:21; 196:20-24..
[187] *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370 (Fed. Cir. 2004).

26 [188] *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

27 [189] The term "specified number" appears in all asserted claims of both patents.
[190] O'Brien Decl., Exh. V (The Random House Dictionary of the English Language, 2d. ed., at

28                           26
                               (Footnote Continued on Next Page.)

1                              **REDACTED**

2

3   Netflix's infringement expert agrees that "specified number" as used in the asserted claims

4   means the number defined by the rental plan that "serves as the limit for how many items will be

5   delivered to the customer," (claim 1, '450 patent) and the "upper bound on the number of movies

6   to be delivered." ('381 patent). [193]  Thus, the Court should construe the term "specified number"

7   to impose a maximum limit on the number of items provided to customers.

8           Since its inception, Blockbuster Online has provided its subscribers with monthly e-

9   coupons permitting them to rent additional movies from Blockbuster stores at no additional

10  charge.[194]
                                **REDACTED**

11                                                                                            In

12  addition, since November 2006, Blockbuster's "Total Access" program has given Blockbuster

13  Online subscribers the right to return their online rental to a Blockbuster store and receive a free

14  rental every time they do so – in addition to their specified number of online rentals.[196]  About

15  70% of subscribers use this material feature each month.[197]

16          Because Blockbuster Online's subscription plans permit, and often result, in its customers

17  receiving *more* rentals than the number specified in their rental plans, Blockbuster Online does

18  not practice the "specified number" limitation as required by the plain meaning of the claims.

19  That Blockbuster Online subscribers must go into a store to receive the additional movies (the

20  movies exceeding the "specified number" in their rental agreement) is irrelevant to the

21  infringement analysis, because it is the Blockbuster Online service that automatically provides

22  _____

     (Footnote Continued from Previous Page.)

23
     1832 ("1.  to mention or name specifically or definitely; state in detail")).
24   [191] O'Brien Decl., Exh. A '450 patent at 5:33-48.
     [192] O'Brien Decl., Exh. E Hunt Depo. at 206:20 - 207:22.
25   [193] O'Brien Decl., Exh. T Mendelson Depo. at 190:20-191:8; 193:14-24.
     [194] Confidential Declaration of J.W. Craft In Support of Blockbuster's Motion for Summary
26   Judgment of Invalidity and Non-Infringement ("Craft Decl.") at ¶ 4.
     [195] *Id.*
27   [196] *Id.* at 5.
     [197] *Id.* at 6.

28                                          27

1    the free rentals and e-coupons resulting in its subscribers receiving more movies than the

2    "specified number."  Indeed, Netflix's infringement expert conceded that, if the "specified

3    number" limitation as set forth in Claim 1 of the '450 patent applied to all movies or items

4    received by that subscriber (both via online and in store), then that would not infringe.[198]

5    Consequently, Blockbuster Online does not infringe any of the claims at issue in the patents-in-

6    suit.[199]

7            **B.**      **Blockbuster Online's Selection Process Is Not Configured To Provide Items "in the Desired Order," "Based Upon the Desired Order," or**

8                    **"Based Upon the Order of the List."**

9          All asserted claims of the '450 patent require that items be provided "in the desired

10    order" or "based upon the desired order."[200]  In addition, all of the independent claims of the

11    '381 patent require that movies be delivered or selected "based upon the order of the list."  The

12    Court has construed "in the desired order" to require that the "precise order the customer

13    selected" "***must be followed***."[201]  The Court construed "based upon the desired order" and

14    "based upon the order of the list" as allowing for "some deviation" from the exact order of the

15    customer's list, saying that this deviation "need not be strictly based on availability."[202]

16

17                               **REDACTED**

18

19 _____

20    [198] O'Brien Decl., Exh. T Mendelson Depo. at 218:23 - 219:17.

21    [199] Moreover, Netflix cannot now assert infringement under the doctrine of equivalents.  Netflix has not pursued this theory in litigation, has failed to present any evidence of infringement by

22    equivalents, and has never presented any equivalents claim in its various iterations of its Infringement Contentions.  *See Lear Siegler, Inc. v. Sealy Mattress Co.*, 873 F.2d 1422, 1425

23    (Fed. Cir. 1989) ("The evidence and argument on the doctrine of equivalents cannot merely be subsumed in plaintiff's case of literal infringement.")

24    [200] Claims 4 and 19 of the '450 patent both contain the "in the desired order" limitation, which requires that the provider send movies in the "precise order the customer selected."  Because Claims 5 and 20 are dependent, they cannot be infringed by Blockbuster if the independent

25    claims on which they depend are not infringed.  *See, e.g., Jeneric/Pentron, Inc. v. Dillon Co., Inc.*, 205 F.3d 1377, 1383 (Fed. Cir. 2000) (dependent claims cannot be infringed unless claims

26    on which they depend are infringed).

27    [201] *See* Claim Construction Order at 13-14 (emphasis added).
    [202] *Id.* at 14.
    [203] Craft Decl. at ¶ 8.

28                                28

1

2

3

**REDACTED**

4

5

6

7          With regard to the limitation "based upon the order of the list," the outcome depends on

8    the scope of the Court's determination that "some deviation" is permitted.

9

10

**REDACTED**

11

12

13          "Based upon the order of the list" should not be construed so broadly as to

14    encompass such intentional and highly material deviation from the order of the customer's list,

15    lest the words "based upon" be essentially read-out of the claims.[210]  Netflix's expert admits that

16    he doesn't know whether Blockbuster would infringe the claims of the '381 patent under a

17    construction that requires primacy of the order of the list.[211]

18

19

20

21

_____

22    [204] *Id.* at 9.
23    [205] *Id.* at 9-11.
      [206] *Id.* at 10.
24    [207] *Id.* at 11-12.
      [208] *Id.*
25    [209] *Id.* at 13.
      [210] *See Lucas Aerospace Ltd. v. Unison Indus., L.P.*, 890 F.Supp. 329, 332 (D. Del. 1995) (citing
26    *Texas Instruments, Inc. v. U.S. ITC*, 988 F.2d 1165, 1171 (Fed. Cir. 1993)) (a claim should not
      be construed in a manner that renders claim language "meaningless or superfluous).
27    [211] O'Brien Decl., Exh. T Mendelson Depo. at 168:23-169:4, 189:1-22.

28
NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
BLOCKBUSTER'S MOTION FOR SUMARY JUDGMENT OF INVALIDITY AND NON-INFRINGEMENT
CASE NO. C 06 2361 WHA (JCS)

1

## VI.    CONCLUSION

2      For these reasons, Blockbuster's Motion for Summary Judgment of Invalidity and Non-

3  Infringement should be granted.

4

Dated: June 14, 2007                    BINGHAM MCCUTCHEN LLP

5

6

7                                       By: _____
                                        Mary T. Huser
8                                       Attorneys for Defendant and Counterclaimant,
                                        BLOCKBUSTER INC.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
BLOCKBUSTER'S MOTION FOR SUMARY JUDGMENT OF INVALIDITY AND NON-INFRINGEMENT
CASE NO. C 06 2361 WHA (JCS)