# Kamber & Associates, LLC

**Ethan Preston**[*]  
Tel: (646) 964-9604

11 Broadway, 22d Floor  
New York, NY 10004

Hon. William H. Alsup  
United States District Court, Northern District of California  
450 Golden Gate Ave.  
San Francisco, CA

   Re: *In re Netflix Antitrust Litig.*, 07-00643

Your Honor:

  We are writing to respond to Netflix's letter to the Court, dated June 25, 2007.

  In order to give Netflix as much time as possible to respond to potential issues regarding the interpretation of this Order (and to ensure their own timely response to their July 16 deadline), Plaintiffs' counsel first sent an email broaching these issues to Netflix's counsel on June 18, 2007. (*See* Exhibit 1.) Plaintiffs' counsel and Netflix's counsel held two phone conferences on June 22 and June 25 to resolve these issues. Robert Shelquist participated in both these conferences and has concurred with this letter. In both these conferences, Netflix's counsel asserted that they have not found any responsive documents, nor did they anticipate finding any responsive documents.

  Netflix and its counsel interpret the Court's June 14 order that Netflix produce "all documents" as referring to those documents kept by Netflix's in-house legal department and four individuals: Reed Hasting, Leslie Kilgore, Barry McCarthy, and David Hyman. (Netflix's search also includes the documents and offices of Netflix's other law firms. Netflix has not yet disclosed the search methodology that is being used at these firms, and so that methodology is not yet before the Court.) Plaintiffs, on the other hand, interpret the Court's June 14 Order literally, and anticipate that Netflix's search would encompass, for instance, each server which stores Netflix employee's email or hosts a shared drive where other sorts of electronic documents are stored.[1] The Court's June 14 Order required Netflix to "disclose *all* documents summarizing, describing, referring to or constituting written or oral communications between Netflix . . . and Wal-Mart or Amazon . . . on the subject of the patents in suit . . . ." (Order 16) (emphasis added).

---

[*] **Not admitted in New York. Admitted in Illinois.**

[1]  Netflix's June 25 letter to the Court refers to a number of collateral issues that should have no bearing on the Court's interpretation of the June 14 Order.

  Netflix's assertion that Plaintiffs interpret "the Court's orders [to] require a search of all documents for all Netflix employees" is not quite accurate. Plaintiffs have not sought a search of all Netflix employees' personal/desktop computers, only a thorough search of those servers where multiple Netflix employees access and store documents. Likewise, Netflix's assertion that Plaintiffs believe that "Netflix is required to search backup tapes" is inaccurate; during a conference on June 22, Plaintiffs indicated that they were mindful of the expense and burden of reviewing backup tapes, and would not seek to require documents from Netflix's backup tapes at this time, instead providing Netflix the opportunity to produce relevant documents without undergoing such expense. Plaintiffs only stated was that their position that they did not waive of any claim to responsive documents on the backup tapes that were not otherwise produced by foregoing a search of backup tapes at the present time. The issue of the backup tapes is not yet before the Court.

  Finally, Netflix's counsel refers to a several collections of electronic documents which were gathered for discovery in other proceedings. While Plaintiffs appreciate the diligence and cooperative spirit shown in reviewing these collections, Netflix has not indicated the scope or parameters of the searches which resulted in these collections, and consequently Plaintiffs have no assurance that these collections might be expected to contain any documents responsive to the Court's June 14 Order.

Although Netflix asserts that the search contemplated by the June 14 Order's terms is unduly burdensome, this burden is the result of Netflix's own document system. Netflix's counsel indicated during the parties' June 25 conference that Netflix could not conduct the keyword searches its counsel contemplate with the application Netflix uses to process and store email. (*See also* Def.'s Letter Ex. A at 2. "A Boolean search with numerous search terms requires a specialized search tool. Email to be searched must first be extracted and indexed for use by the tool.") Further, Netflix's counsel also indicated that Netflix's email servers could not be mirrored and searched "offline."[2] Plaintiffs' access to evidence should not be prejudiced by the idiosyncrasies of Netflix's document systems. "[A] business which generates millions of files cannot frustrate discovery by creating an inadequate filing system so that individual files cannot readily be located." *United States v. ACB Sales & Service, Inc.*, 95 F.R.D. 316, 318 (D. Ariz. 1982) (citing *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D. Mass. 1976) (a "defendant may not excuse itself from [discovery] . . . by utilizing a system of record-keeping which conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them, thus rendering the production of the documents an excessively burdensome and costly expedition. To allow a defendant whose business generates massive records to frustrate discovery by creating an inadequate filing system, and then claiming undue burden, would defeat the purposes of the discovery rules")). "The fact that a corporation has an unwieldy record keeping system which requires it to incur heavy expenditures of time and effort to produce requested documents is an insufficient reason to prevent disclosure of otherwise discoverable information." *Wagner v. Dryvit Sys.*, 208 F.R.D. 606, 611 (D. Neb. 2001) (citing multiple cases) (cited by *Residential Constructors, LLC v. Ace Prop. & Cas. Ins. Co.*, 05-01318, 2006 U.S. Dist. LEXIS 36943, at *6-7 (D. Nev. June 5, 2006)). "It would be a dangerous development in the law if new techniques for easing the use of information become a hindrance to discovery or disclosure in litigation." *Daewoo Elecs. Co. v. United States*, 650 F. Supp. 1003, 1006 (Ct. Int'l Trade 1986).

Netflix has effectively spurned the alternatives which Plaintiffs offered to Netflix to mitigate the burdens of which it complains. If the Court does not enforce the literal letter of its June 14 Order, Plaintiffs ask the Court to reconsider narrowly-targeted, minimally burdensome discovery from Amazon and Wal-mart. Such discovery offers two judicial economies beyond the discovery mandated in the June 14 Order. First, Netflix's patent enforcement, standing alone, does not establish Plaintiffs' claims. Plaintiffs must prove an element of proximate causation beyond patent enforcement – that is, Plaintiffs have no claims unless Netflix's patent enforcement actually affected Amazon and/or Wal-mart's decisions not to compete. Second, if Plaintiffs are denied evidence of patent enforcement by Netflix, Plaintiffs must consider an appealing the Court's ruling that Plaintiffs must allege and prove patent enforcement, as well as deterrence. Consideration of such an appeal will be obviated if Plaintiffs are provided the opportunity for third-party discovery, but cannot discover evidence that the Netflix's patents deterred competition.

Sincerely,

Ethan Preston

---

[2] Netflix's counsel did not address whether the burdens they identified also applied to servers which held electronic documents other than email, and it is not clear from their letter to the Court whether that is the case.

# Exhibit 1

**From:** Ethan Preston <ep@eplaw.us>
**To:** Rees, Maura <MRees@wsgr.com>
**Cc:** Shelquist, Robert K. <rkshelquist@locklaw.com>
**Subject:** Re: Netflix Discovery
**Date:** Mon, 18 Jun 2007 11:43:19 -0500

Maura,

Plaintiffs are contemplating a motion for clarification and/or reconsideration of the Court's June 14 and 15, 2007 orders, and are obliged to seek a stipulation from Netflix under Civil L. R. 7-12 and 7-11(a).

We interpret the Court's June 15 order that Mr. Eggleton's declaration "explain[] the thoroughness of the search" for responsive documents to require a description of the search protocols used to locate responsive documents. *Cf. Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006). Plaintiffs would be satisfied with an explanation of 1) the criteria used to identify persons likely to have knowledge of potentially responsive documents, 2) the criteria used to used identify particular computer systems likely to store potentially responsive documents, 3) the criteria used to identify any other source of potentially responsive documents, and 4) the specific search protocols used to identify responsive documents from these sources (including, where applicable, keyword searches). However, Plaintiffs are open to negotiation as to other solutions for complying with the June 15 order.

Further, we interpret the Court's June 14 order to require production of all documents in a manner consistent with Fed. R. Civ. Pro. 34. Thus, we interpret the order to apply to all documents in Netflix's possession, custody or control and which Netflix has a legal right to obtain upon demand. *United States v. Int'l Union of Petroleum & Industrial Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989). Consequently, we interpret the Court's June 14 order to apply to documents maintained by Netflix's counsel. *Triple Five of Minn. v. Simon*, 212 F.R.D. 523, 527 (D. Minn. 2002); *Poole v. Textron, Inc.*, 192 F.R.D. 494, 501 (D. Md. 2000). Inasmuch as the June 14 order dismissed Plaintiffs' Cartwright Act claims for failure to adequately plead the active participation of Netflix's counsel in formulating policy decisions with its client to restrain competition, Plaintiffs assert that the June 14 order requires Netflix to search the records maintained by its counsel (specifically including Hickman Palermo Truong & Becker LLP and Keker & Van Nest LLP. Can you find out if either of these firms has their own independent counsel? If so, please let us know so we can direct our communications to such counsel and let the remaining Plaintiff's counsel know not to communicate with these firms.) We would also anticipate that responsive documents produce in the underlying *Netflix v. Blockbuster* litigation be produced to Plaintiffs for use in our case.

Finally, we interpret the June 14 order to require Netflix to produce documents as they are kept in the usual course of business. Thus, Netflix should produce responsive documents in their native file format (including any associated metadata). Our understanding is that the Court placed a premium on minimizing the discovery costs discussed in *Twombly*. Production in their native file format obviates the need to convert Netflix's responsive documents back and forth from other formats. *Cf. Williams v. Sprint/United Mgmt. Co.*, 230 F.R.D. 640, 647-654 (D. Kan. 2005); *In re Verisign Sec. Litig.*, 02-2270, 2004 U.S. Dist. LEXIS 22467, at *11-15 (N.D. Cal. Mar. 10, 2004).

I also wanted to offer to draft any confidentiality agreement which Netflix may be contemplating. We would like to have a response to issues raised in this email by June 22. The Court indicated that it would anticipate that Netflix will have to produce a privilege log, and we anticipate that significant litigation over the attorney-client privilege and the crime-fraud exception under *United States v. Zolin*, 491 U.S. 554 (1989) (at the very least with respect to the Cartwright Act claims), and want as much time as possible for a magistrate to complete *in camera* review of those documents whose attorney-client privilege is challenged, before we have to file Plaintiffs' amended complaint on July 16.

Regards,

Ethan


On Mon, 2007-06-04 at 19:15 -0700, Rees, Maura wrote:
> Will do.
>
> Maura
>
> -----Original Message-----
> From: Ethan Preston [mailto:epreston@kolaw.com]
> Sent: Monday, June 04, 2007 7:08 PM